The Hon. James P. Donohue
Chief Magistrate Judge

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

Daniel Ramirez Medina,

    Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN KELLY, Secretary of Homeland Security; NATHALIE ASHER, Director of the Seattle Field Office of U.S. Immigration and Customs Enforcement,

    Respondents.

CASE NO. 2:17-CV-00218-RSM-JPD

**DECLARATION OF MARTIN M. FLORES IN SUPPORT OF PETITIONER'S RESPONSE BRIEF RE: COURT'S FEBRUARY 14, 2017, ORDER DIRECTING SERVICE, SETTING STATUS CONFERENCE, AND SETTING BRIEFING SCHEDULE**

I, Martín M. Flores, declare as follows:

1. I have spent the last ten years acting as a consultant on cases regarding gangs.

2. I have served on approximately 700 cases and testified over 175 times, including consulting on cases arising in the immigration context. I have worked on cases involving hundreds of street gangs generally. In addition, I have consulted and researched cases that involve the Mexican Mafia, Sureños, Norteños, prison gangs, and transnational gangs and the Mexican cartels.

3. In connection with this work, I have interviewed hundreds of gang members (active, non-active, and former) and their family members, examined hundreds of police reports on gangs, reviewed gang intelligence, analyzed phone calls and tattoos, and studied and researched books, articles, magazines, and internet reports on gangs.

4. I received a B.A. in Chicano Studies, with a minor in education and anthropology, from the University of California, Berkeley. I also pursued courses in community planning and education at the University of California, Los Angeles.

5. Prior to my involvement in criminal gang cases, I founded and served as Executive Director of the Rogelio Flores Foundation, which was established in memory of my youngest brother who was killed in a drive-by shooting in 1994. We provided our services to the community of Los Angeles in a lower socioeconomic area addressing education, recreational, mentorship, and health needs of youth.

6. I also served as a Community Programs Coordinator for underserved youth in Inglewood, California, and served for over a decade as the Executive Director and Youthful Offender Director of an organization in Los Angeles to implement gang intervention and prevention programs. In this position, I participated in Gang Task Force Meetings and Subcommittees, met with law enforcement and community leaders on public safety, and advocated for at-risk youth.

7. Through my prior work and extensive testifying and case involvement experience, my areas of expertise include gang structures; gang politics; interpreting tattoos; identification of hand signs, symbols, and codes; differentiating gang-motivated crimes from personal crimes;

identifying gang members from individuals part of the same neighborhood; and other applicable areas.

8. In addition to a number of other gangs, I am familiar with the Sureños. I have studied this gang, including its tattoos and symbolism.

9. The term "paisa" is commonly used to refer to people who are recent immigrants and non-gang members. In fact, the word "paisa" is found in the name of many businesses including restaurants, tire shops, etcetera. It is shortened from the word "paisano" which translates to countryman, or an inhabitant of a rural or remote area who is usually characterized by an utter lack of sophistication and cultivation.

10. I have reviewed photographs of Mr. Daniel Ramirez Medina's tattoo, which refers to "La Paz," "BCS" and has an image of a five-pointed star.

11. In my extensive experience with gang-related symbols and tattoos, I would not identify this tattoo as gang-related. I have never seen a gang member with a similar tattoo nor would I attribute this tattoo to have any gang-related meaning.

12. In particular, this tattoo does not match any of the Sureño symbolism or tattoos that I have studied. Sureño gangs commonly have an identifier of "13" along with their gang name. Mr. Ramirez does not have any symbol of "13." This tattoo also does not match any symbolism or tattoos that I have seen among gangs that have members who refer to themselves as "paisas."

13. I have done extensive research on gangs in various counties including Tulare County where I understand that Mr. Ramirez grew up. There are no gangs in that area that have the name or symbols of "La Paz" or "BCS."

14. The five-pointed star appears to be a nautical star, an extremely common tattoo that symbolizes the sea and is very popular with the Navy servicemen and others.

15. It is my personal, educational, and professional experience that recognizes that young people who live in communities where there is gang activity have regular encounters and interactions with gang members. That does not indicate that they are gang involved, but rather a reality that exists within their respective communities. It is common to interact with a gang member

through classmates, family members, neighbors, teammates and friends of friends. This interaction by itself does not indicate gang membership nor gang association.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this sixteenth day of February, 2017, in Los Angeles, California.

By: *(signature)*

Martín M. Flores