The Hon. James P. Donohue
Chief Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL RAMIREZ MEDINA,
                    Plaintiff,
        v.
U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
                    Defendants.

Case No. 2:17-cv-00218-RSM-JPD

**FEDERAL AGENCY DEFENDANTS'
MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

Oral Argument Requested

Plaintiff Daniel Ramirez Medina ("Plaintiff") is challenging the decision of the Department of Homeland Security ("DHS" or the "Department") to issue him a Notice to Appear ("NTA") (and ultimately, the decision to commence removal proceedings), and the resulting termination of his deferred action for childhood arrivals ("DACA") and associated employment authorization. *See* Dkt. No. 78 (Count Nos. 1 & 2) (claiming that DHS's actions violate the Administrative Procedure Act ("APA") and Due Process, and seeking injunctive and declaratory relief). The Federal Agency Defendants[1] move the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

---

[1] Plaintiff is also asserting *Bivens* claims against individual federal defendants in their personal capacity. The undersigned counsel is not representing these individuals, who will be represented by separate counsel. Thus, this motion is only being filed by the Federal Agency Defendants, who are sued in their official capacity in Count Nos. 1 and 2.

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

The Court lacks jurisdiction to review Defendants' decision to pursue Plaintiff's removal and termination of Plaintiff's DACA and employment authorization, because that decision represents an exercise of unreviewable agency discretion. Additionally, this action has been filed in the wrong forum, and, to the extent Plaintiff has any cognizable claims, he must pursue them through his removal proceedings in the process Congress created to adjudicate matters intrinsic to removal proceedings.

Plaintiff argues that DHS should not have terminated his deferred action and employment authorization. *See* Dkt. No. 78. However, the termination of Plaintiff's deferred action was the result of Defendants' decision to issue a Notice to Appear, which is a necessary first step towards commencing removal proceedings against Plaintiff. 8 CFR § 1003.14(a) ("Jurisdiction vests, and proceedings commence, when a charging document is filed with the Immigration Court by the Service."). Section 1252(g) of Title 8 of the U.S. Code precludes judicial review in district court of "any cause or claim . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders . . . ." To the extent that Plaintiff has any viable legal claims arising from the "decision or action" of Defendants in this case, they must be raised initially in immigration court and then, following administrative appeal, through a petition for review filed in the Ninth Circuit Court of Appeals. *See* 8 U.S.C. § 1252(b)(9) (requiring that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" must be made through a petition for review); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (applying this statutory channeling provision in the context of a Fifth Amendment claim).

Moreover, Plaintiff has failed to state a claim because there is no requirement that DHS provide a DACA recipient with notice prior to issuing an NTA. In addition, DACA guidelines disclaim any substantive rights to employment or other benefits, and provide for termination without notice or appeal. *See* Dkt. No. 78-3 (2012 DACA Memo) at 3 ("This memorandum confers no substantive right, immigration status or pathway to citizenship"); Dkt. No. 76-3 (USCIS FAQ) at 9 ("Q:27: Can my deferred action under the DACA process be terminated

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

2

before it expires? A:27: Yes. DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion."). Thus, as a matter of law, Plaintiff lacks an administrative or a constitutionally protected interest that would support his claims. As more fully set forth below, Plaintiff's claims should be dismissed.

## BACKGROUND

### I.    Overview of Deferred Action

The Immigration and Nationality Act ("INA") charges the Secretary of DHS "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Individuals are removable if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *see* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible."); § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States . . . is deportable"). Removal is a civil, not criminal, matter. *Arizona*, 132 S. Ct. at 2499.

The federal government cannot practicably remove every removable alien. Rather, "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 132 S. Ct. at 2499. DHS, "as an initial matter, must decide whether it makes sense to pursue removal at all." *Id.* "At each stage the Executive has discretion to abandon the endeavor." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*"). As with other agencies exercising enforcement discretion, like prosecutorial discretion, DHS must balance a number of factors that are within its expertise. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is one of the ways in which DHS exercises prosecutorial discretion. Deferred action is "a regular practice" in which the Secretary exercises his prosecutorial discretion "for humanitarian reasons or simply for [his] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*,

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

3

525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) ("an act of administrative convenience to the government which gives some cases lower priority"). Through "[t]his commendable exercise in administrative discretion, developed without express statutory authorization," *AADC*, 525 U.S. at 484 (citations omitted), a removable individual may remain present in the United States so long as DHS continues to forebear.

Deferred action does not confer lawful immigration status. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058-59 (9th Cir. 2014). An individual with deferred action remains removable at any time, and DHS has the prosecutorial discretion to terminate deferred action unilaterally. *See AADC*, 525 U.S. at 484-85; *Texas v. United States*, 809 F.3d 134, 199 (5th Cir. 2015) (King, J., dissenting) (explaining that the terms "lawful presence" and "deferred action" mean "nothing more than DHS's tentative decision, revocable at any time, not to remove an individual for the time being – i.e., the decision to exercise prosecutorial discretion").[2]

On June 15, 2012, DHS issued a memorandum entitled, "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children." Dkt. No. 78-3, Pl. Exhibit C ("2012 DACA Memo"). That memorandum outlines a policy known as DACA that is available to a certain subset of individuals who are unlawfully in this country. *Id*.; s*ee* Dkt. No. 78 at ¶15. The DACA Memo expressly states, "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Dkt. No. 78-3 at 3. The memo does not address the topics of arrest by DHS or the grounds that DHS will consider in terminating deferred action.

The DACA Memo remains in effect today. *See* Dkt. No. 78-4, Pl. Exhibit D (Mem. "Enforcement of the Immigration Laws to Serve the National Interest," Feb. 20, 2017) ("2017

---

[2] The majority opinion in *Texas* also acknowledged that "'[l]awful presence' is not an enforceable right to remain in the United States and can be revoked at any time," although it added that this classification nevertheless has significant legal consequences that can give rise to a state's standing to challenge deferred action policy. *See Texas*, 809 F.3d at 148. As explained in more detail below, Plaintiff's reliance on *Texas* to support his contention that DACA provided him a protected property interest in lawful presence in the United States is incorrect. *See* Dkt. No 78 ¶ 100.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

4

Kelly Memo") at 2;[3] Exhibit A, "Q&A: DHS Implementation of the Executive Order on Border Security and Immigration Enforcement" dated February 21, 2017 (DHS Q&A) (previously filed at Dkt. No. 52-4) ("Q:30 Do these memoranda affect recipients of Deferred Action for Childhood Arrivals (DACA)? A30: No.").

Following implementation of the DACA policy, USCIS issued a document entitled, "Frequently Asked Questions." Dkt. No. 78-1, Pl. Exhibit A (USCIS FAQ). Question No. 27 asks, "Can my deferred action under the DACA process be terminated before it expires?" The answer states, "Yes. DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without Notice of Intent to Terminate, at DHS's discretion."[4] This document explains that deferred action "is a discretionary determination to defer removal of an individual" and does not confer lawful status on the individual. *See id.* at Q:1 ("DHS can terminate or renew deferred action at any time, at the agency's discretion"); *cf. id.* at Q:5 (elaborating on the distinction between "lawful presence" and "lawful status"). Lastly, the document explains that the phrase "national security or public safety threat" includes but is not

---

[3] A subsequent memorandum, dated June 15, 2017, entitled, "Rescission of November 20, 2014 Memorandum Providing for Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA")" rescinds the 2014 DAPA Memo, but leaves the 2012 DACA Memo in force, and is available at https://www.dhs.gov/sites/default/files/publications/DAPA%20 Cancellation%20Memo.pdf.

[4] In an April 17, 2015, letter to Congress responding to questions about DACA recipients with gang memberships or affiliations, DHS explained that it reviewed records for all DACA recipients and found law-enforcement-related records regarding 49 DACA recipients out of 886,638. *See* Dkt. No. 78-5, Pl. Exhibit E: Letter to Chairman Charles E. Grassley with attachment at 4 (Apr. 17, 2015). Those records were part of TECS, an information-sharing platform with data or access to different databases that include records relevant to the anti-terrorism and law enforcement mission of U.S. Customs and Border Protection and numerous other federal agencies that it supports. Of those records, USCIS reported that 13 individuals had TECS records entered after DACA adjudication, which USCIS was reviewing for possible termination. *See id.* USCIS also reported, based on ad hoc manual reports, that as of March 20, 2015, DHS terminated DACA for at least 282 requestors based on gang affiliation and/or criminal issues. *See id.* at 5. USCIS described some of the circumstances where DACA could be terminated, stating that "[w]hen a suspicion of gang affiliation comes to the attention of USCIS after the DACA request has been approved, the case is reviewed for possible termination. This information is typically communicated by ICE as result of their engagement with local law enforcement or other encounters." *Id.* at 6.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

5

1  limited to "gang membership, participation in criminal activities, or participation in activities that

2  threaten the United States." *See id.* at Q:65.

3       The instructions for the Form I-821D, entitled, "Instructions for Consideration of

4  Deferred Action for Childhood Arrivals" state on the first page, "[i]ndividuals who receive

5  deferred action will not be placed into removal proceedings or removed from the United States

6  for a specified period of time, unless the Department of Homeland Security (DHS) chooses to

7  terminate the deferral." Exhibit B, Form I-821D Instructions, January 9, 2017 version

8  (previously filed at Dkt. No. 52-7).

9       There are several ways DHS can terminate DACA for an individual. Some involve the

10  issuance of a Notice of Intent to Terminate ("NOIT") and a chance for the DACA recipient to

11  respond, but there are also means by which DACA is terminated in which the DACA recipient

12  does not have advance notice and an opportunity to respond. *See* Exhibit C, U.S. Citizenship and

13  Immigration Services, National Standard Operating Procedures, Deferred Action for Childhood

14  Arrivals ("DACA SOP") (Aug. 28, 2013); Exhibit D, DACA SOP Appendix I (Mar 1, 2016).

15       Most relevant here is the circumstance wherein U.S. Immigration and Customs

16  Enforcement ("ICE") issues an NTA, which commences removal proceedings once filed with an

17  immigration court.  ICE may issue an NTA if a disqualifying criminal offense or public safety

18  concern, deemed to be an Egregious Public Safety ("EPS") issue,[5] arises after removal has been

19  deferred under DACA. If ICE has information indicating a DACA recipient is under

20  investigation for an EPS, including suspected membership in or affiliation with a gang, ICE may

21  issue an NTA. Pursuant to the DACA SOP and Appendix I, the issuance of an NTA immediately

22  terminates DACA, with no additional notice or opportunity to respond. *Id.* USCIS then generally

23  sends a "Notice of Action" to the individual informing him that his deferred action and

24  employment authorization terminated automatically as of the date the NTA was issued.  *See*

25  Exhibit D, DACA SOP Appendix I, dated December 29, 2015.  *Id.*

26   

27  [5] *See* Exhibit E, USCIS Mem. "Revised Guidance for the Referral of Cases and Issuance of
Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens" (Nov. 7,

28  2011 ("2011 USCIS Memo").

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

## II.   Factual Background

Plaintiff alleges he first requested deferred action and work authorization pursuant to DACA in late 2013. Dkt. No. 78 at ¶ 41. He was granted deferred action and work authorization. *Id*. In 2016, Plaintiff requested renewal of DACA and was once again granted deferred action and work authorization. *Id*. at 42; Dkt. No. 78-7, Pl. Exhibit G: Form I-797, DACA grant (May 5, 2016). The approval letter states in relevant part, "Deferred action does not confer or alter any immigration status" and that "[u]nless terminated, this decision to defer removal action will remain in effect for 2 years from the date of this notice." The notice also advises that "[s]ubsequent criminal activity after your case has been deferred is likely to result in termination of your deferred action." Dkt. No. 78-7.

On February 10, 2017, ICE officers arrested Plaintiff's father. Dkt. No. 78 at ¶ 44. After that arrest, ICE officers questioned Plaintiff and took him into custody under circumstances that remain in dispute. *See id*. at ¶¶ 45-47.[6]

After being taken into custody, Plaintiff was questioned. According to the Form I-213 Record of Deportable/Inadmissible Alien, when Plaintiff was asked if he is or has been involved with any gang activity, he stated, "[n]o, not no more." Dkt. No. 78-8, Pl. Exhibit H: Record of Deportable/Inadmissible Alien at 3 (Feb. 10, 2017) ("Form I-213"). When he was questioned further about a tattoo on his forearm, he stated:

> [T]hat he used to hang out with the [Surenos] in California. Subject stated that he fled California to escape from the gangs. Subject stated that he still hangs out with the Paizas in Washington State.

*Id*.

ICE then issued an NTA, which terminated Plaintiff's deferred action and employment authorization. *See Id*.; Dkt. No. 78-9, Pl. Exhibit I: Form I-862, Notice to Appear (Feb. 10, 2017) ("2017 NTA").

On February 13, 2017, Plaintiff commenced this action with a Petition for a Writ of Habeas Corpus. Dkt. No. 1. Federal Agency Defendants moved to dismiss. Dkt. No. 52. Plaintiff

---

[6] These factual disputes are not material to resolving the present motion. The nature of this dispute has been set forth in previous filings before the Court.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

7

subsequently clarified that he was not challenging the decision to pursue his removal by issuing

an NTA, which terminated his DACA, but was only challenging his arrest and detention that

occurred prior to the decision to commence removal proceedings. *See* Dkt. No. 64 at 31-32.

Relying, in part of this representation, this Court issued a Report and Recommendation ("R&R")

that recommended denial of the motion to dismiss but that declined to recommend Plaintiff's

immediate release. *Id*. at 45-46.

The district court ordered staggered briefing on objections to this R&R. Dkt. No. 67. On

March 24, 2017, the district court ruled that Plaintiff was not entitled to an order from the Court

ordering his immediate release. Dkt. No. 69. The next day Plaintiff requested a bond hearing

before an immigration judge, which occurred the following day. Dkt. No. 72. At that time, the

immigration judge set bond, and Plaintiff was subsequently released after posting this bond. *Id*.

On April 25, 2017, the district court ordered Plaintiff to file and serve his proposed

Second Amended Complaint and that any "further briefing or action in connection with

Respondents' Objections to the Report and Recommendation is suspended, and the Clerk shall

remove the R&R from the Court's motion calendar." Dkt. 77 at ¶¶ 2, 3. As a result, briefing on

the objections to the R&R was never completed and this matter was rendered moot by Plaintiff's

Second Amended Complaint, which raised different claims than those raised in the First

Amended Complaint. *See* Dkt. No. 78 (Prayer for Relief) (arguing the termination of Plaintiff's

DACA and employment authorization document ("EAD") were in violation of the APA and due

process, and seeking, *inter alia*, injunctive and declaratory relief in the form of reinstating his

DACA and EAD). The Federal Agency Defendants move to dismiss.

## MOTION TO DISMISS LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Court may dismiss a claim based on the lack of a

cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory.

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). For purposes of the

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

8

motion, the Court reads material allegations in the complaint as admitted and the complaint is construed in plaintiffs' favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).

Generally, a court may not consider matters outside the pleadings in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(d). Doing so requires treating the motion as a request for summary judgment under Fed. R. Civ. P. 56. *Id*. However, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment . . . ." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation and internal quotation marks omitted). In particular, the Court may take judicial notice of documents that are public record.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Defendants request the Court take judicial notice of five documents filed in support of this motion that are matters of public record, and in the case of two of the documents, previously filed with this Court. *See* Exhibit A (DHS Q&A) (previously filed at Dkt No. 52-4); Exhibit B (Form I-821D Form Instructions) (previously filed at Dkt No. 52-7); Exhibit C (DACA SOP), dated August 28, 2013; Exhibit D (DACA SOP App. I), dated December 29, 2015; Exhibit E (2011 USCIS Memo), *available at* https://www.uscis.gov/sites/default/files/USCIS/Laws/ Memoranda/ Static_Files_Memoranda/NTA%20PM%20%28Approved%20as%20final% 2011-7-11%29.pdf (last visited June 20, 2017). Defendants submit Exhibits C and D as updated excerpts of Dkt. 78-6, Pl. Exhibit F.

## ARGUMENT

I.    **The Court lacks jurisdiction over Plaintiff's challenge to issuance of a Notice to Appear and termination of his DACA and employment authorization as set forth in Counts I and II (Arbitrary and Capricious Action; Unconstitutional Action).**

Not all agency actions are subject to judicial review under the APA. *See* 5 U.S.C. § 701(a) ("This chapter applies, according to the provisions thereof, except to the extent that-- (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law"); *Block v. Cmty. Nutrition Inst*., 467 U.S. 340, 345, 351 (1984) (Subsection 701(a)(1) "withdraws the cause of action to the extent the relevant statute 'preclude[s] judicial review.'").

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

9

1     In determining whether the first exception applies (whether a particular statute precludes

2    judicial review), courts look to the "express language" in the statutory provision, the structure of

3    the statutory scheme, its objectives, its legislative history, and the nature of the administrative

4    action involved. *Block*, 467 U.S. at 345; *see, e.g., Fischer v. Resolution Trust Corp.*, 59 F.3d

5    1344, 1347-48 (D.C. Cir. 1995) (statutory provision makes "clear that Congress meant to cloak

6    from judicial review the entire regulatory scheme"). With respect to the second exception,

7    whether the agency action is committed to agency discretion by law, the Supreme Court has

8    cautioned that "an agency's decision not to prosecute or enforce, whether through civil or

9    criminal process, is a decision generally committed to an agency's absolute discretion" and is not

10   amenable to judicial review. *See Heckler*, 470 U.S. at 831; *see also Morales de Soto v. Lynch*,

11   824 F.3d 822, 828 (9th Cir. 2016) (discussing the *Heckler* decision and noting that "the exercise

12   of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to

13   judicial intervention"); *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (discussing the

14   *Heckler* decision and explaining that "[i]n making immigration enforcement decision, the

15   executive considers a variety of factors"), *cert. denied*, 136 S. Ct. 900, (2016), *reh'g denied*, 136

16   S. Ct. 1250 (2016).

17     Here both exceptions to the presumption of judicial review under the APA are implicated:

18   (1) 8 U.S.C. § 1252 precludes judicial review, and (2) even in the absence of this provision,

19   decisions regarding prosecutorial discretion are agency actions committed to agency discretion

20   by law.

21    **A.**    **The Court lacks jurisdiction under 8 U.S.C. § 1252(g).**

22     The issuance of an NTA to an alien is a necessary predicate step to commencing removal

23   proceedings under 8 U.S.C. § 1229(a). Through the INA, as amended by the REAL ID Act and

24   codified at 8 U.S.C. § 1252(g), Congress explicitly precluded judicial review of any challenge

25   arising from any decision or action to commence removal proceedings. That statute states, in

26   relevant part:

27

28

Federal Agency Defendants' Motion               U.S. Department of Justice, Civil Division
To Dismiss Second Amended Complaint           Office of Immigration Litigation
Case No. 2:17-cv-00218-RSM-JPD              P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
10                         (202) 616-1246

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).[7]

The Supreme Court explained that 8 U.S.C. § 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9; *cf. Ariz. Dream Act Coal. v. Brewer*, 855 F.3d at 957, 967 (9th Cir. 2017) (explaining that deferred action is an exercise of the Secretary's prosecutorial discretion to not commence proceedings or execute removal orders against an alien), *petition for cert. filed*, (U.S. Mar. 29, 2017) (No. 16-1180).

Applying 8 U.S.C. § 1252(g), the Ninth Circuit has specifically held there is no subject matter jurisdiction to review a determination of whether an individual should be granted DACA. *See, e.g., Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012) ("[W]e lack jurisdiction to review petitioners' contention that the agency abused its discretion in denying the motion to reopen to seek prosecutorial discretion based on the recent order of President Obama."); *Rodriguez v. Sessions*, No. 15-72487, 2017 WL 695192, at *1 (9th Cir. Feb. 22, 2017); *Fabian-Lopez v. Holder*, No. 11-71513, 540 F. App'x 760, 761 n.2 (9th Cir. April 29, 2013); *cf. Flores-Panso v. Asher*, No. C13-1923-TSZ, 2014 WL 1338073, at *3 (W.D. Wash. April 2, 2014)

---

[7] Thus, for example, courts lack jurisdiction to review the timing of the commencement of removal proceedings. *See, e.g., Chavez-Navarro v. Ashcroft*, 57 F. App'x 349 (9th Cir. 2003); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 598-99 (9th Cir. 2002). Moreover, "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AAAC*, 525 U.S. at 488, 491 ("The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing"). However, the Court left open the possibility "of a rare case in which the alleged basis of discrimination is so outrageous" that an exception might lie. *Id.* at 491; *see also Carranza*, 277 F.3d at 72 n.5 (discussing this possibility).

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

11

(adopting recommendation that district courts lack jurisdiction over a claim that a stay of removal is warranted for a petitioner to seek DACA).[8]

  This precedent applies to the present case and precludes judicial review of the decision to issue an NTA, which terminated Plaintiff's DACA, and which was a predicate step to commencing removal proceedings.[9] *See*, *e.g.*, *Samayoa-Martinez v. Holder*, 558 F.3d 897, 901-02 (9th Cir. 2009) ("Logically, an alien cannot be placed in formal proceedings until those proceedings have been commenced with the filing of the NTA."). Plaintiff may contend that the present case is distinguishable from these earlier cases because it involves the Government's decision to issue an NTA, and thereby terminate DACA, rather than a determination as to whether an individual is considered for DACA in the first place. But there is nothing in the language of 8 U.S.C. § 1252(g) to support such a distinction. And there is no reason why Congress would, on the one hand, want to preclude judicial review of who warrants a favorable exercise of prosecutorial discretion (where DACA requestors self-select using agency guidelines), and on the other hand, provide for judicial review of an agency's decision to issue an NTA so that it may commence removal proceedings and thereby terminate DACA (where the agency weighs competing factors and allocates its resources). *See Heckler*, 470 U.S. at 831 (discussing the Executive's discretion to spend resources on "this violation or another"); *Arpaio v. Obama*, 797 F.3d 11, 16, 24 (D.C. Cir. 2015) ("Even after they are approved for deferred action . . . beneficiaries are subject to the Department's overall enforcement priorities"), *cert. denied*, 136 S. Ct. 900, (2016), *reh'g denied*, 136 S. Ct. 1250 (2016). If anything, the decision to

---

[8] This authority is consistent with earlier case law interpreting the 1981 Operating Instructions which concluded that district courts lack jurisdiction to review the district director's decision not to recommend deferred action. *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985); *see also Carranza*, *v. I.N.S.*, 277 F.3d 65, 72 (1st Cir. 2002) (supporting "the general proscription against judicial review of *any* aspect" of prosecutorial deliberations) (emphasis original) (citing *Wayte v. United States*, 470 U.S. 598, 607-8 (1985)).

[9] Previously, the R&R concluded that 8 U.S.C. § 1252(g) did not preclude the habeas challenge in Plaintiff's initial complaint because, at that time, Plaintiff was not ("challeng[ing] the decision to revoke his DACA benefits or initiate removal proceedings against him"). Dkt. No. 64 at 31. Plaintiff has now amended his complaint to challenge precisely that. Thus, the earlier R&R analysis of 8 U.S.C. § 1252(g), *id.* at 30-31 is not applicable.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

12

issue an NTA, which results in termination of DACA, is more closely connected with the central purpose of 8 U.S.C. § 1252(g) – to prevent "judicial constraints on prosecutorial discretion." *See AADC*, 525 U.S. at 485 n.9. Thus, decisions to issue an NTA and thereby terminate DACA are even further outside the scope of judicial review than determinations of whether to grant DACA in the first place.

Plaintiff may also contend that the present case is distinguishable from earlier Ninth Circuit case law because he is challenging the Government's process in making its decision rather than the final decision itself. But this argument is contrary to the language of 8 U.S.C. § 1252(g), which is not limited to claims arising from the adjudication of cases, but also precludes judicial review of "cause[s] or claim[s]" that arise from the decision "or action" to "commence proceedings" against any alien. *See, e.g., Sissoko v. Rocha*, 509 F.3d 947, 948-50 (9th Cir. 2007) (finding claim of money damages arose from decision or action to commence removal proceedings and was, thus, barred by 8 U.S.C. § 1252(g)).[10]

In sum, regardless of how Plaintiff frames the issue, 8 U.S.C. § 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion.

**B.     Plaintiff's claims, if viable, must be channeled through his removal proceedings and not this Court.**

To the extent Plaintiff has any viable claims, the REAL ID Act, codified in 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), bars him from raising his claims in district court. Under a statutory scheme designed to "put an end to the scattershot and piecemeal nature of the review

---

[10] In *Sissoko*, the Ninth Circuit held that because the plaintiff's detention arose from the decision to commence removal proceedings, *Bivens* jurisdiction was barred by 8 U.S.C. § 1252(g). *Sissoko*, 509 F.3d at 949. The court distinguished between these types of claims and those raised in an earlier Ninth Circuit case discussing 8 U.S.C. § 1252(g), *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004). *Id*. In *Wong*, the plaintiff's counsel expressly disclaimed any challenge to the execution of removal and explained that her claims only implicated "actions other than that removal, or the commencement of proceedings . . ." 373 F.3d at 964 (emphasis original). Thus, the claims at issue in *Wong* did not implicate the agency's prosecutorial discretion and did not pose a threat of "obstruction of the institution of removal proceedings or the execution of removal orders . . ." *Id*. at 970. *Wong* is clearly distinguishable from the present case in which Plaintiff is directly challenging the decision to issue an NTA and thereby terminate DACA, which predicated the commencement of removal proceedings.  As a result, his claims are barred by 8 U.S.C. § 1252(g). *See Sissoko*, 509 F.3d at 949.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

process," all claims arising from removal proceedings must be raised in immigration court and channeled through the petition for review process. *Aguilar v. Immigration & Customs Enf't*, 510 F.3d 1, 9-10 (1st Cir. 2007). The Ninth Circuit has affirmed this channeling requirement without exception. *J.E.F.M.*, 837 F.3d at 1029.

Section 1252(a)(5), entitled "Exclusive means of review," requires that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) provides "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added);

These channeling provisions are not limited to challenges to final orders of removal but preclude review in district court of "any" challenge "arising from any action" taken to remove an alien. *See J.E.F.M.*, 837 F.3d at 1031. The second sentence of Section 1252(b)(9) explicitly precludes jurisdiction to review (i) orders, "or [(ii)] such questions of law or fact." *Id*. The questions of law and fact described in the preceding sentence modify those "arising from any action taken or proceeding brought to remove an alien from the United States." *Id*. Thus, claims arising from "any action taken" to remove an alien from the United States, including the decision to issue an NTA and thereby terminate DACA, a necessary action towards commencing removal proceedings, is channeled through the petition for review process and cannot be brought in federal district court. To hold otherwise would effectively excise the words "any action taken" from the statute. *See Aguilar*, 510 F.3d at 10; *cf. Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (holding, in the context of an APA claim, that it does not matter how the claim "is framed" for purposes of determining whether the claim is channeled through the petition for review process).

Congress' intent was simple: if the issue is one that can be raised in removal proceedings, and ultimately in a petition for review, then the statute precludes district court review. *See J.E.F.M.*, 837 F.3d at 1034 (citing H.R. Rep. No. 109-72, at 173 (statute was "intended to

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

14

preclude all district court review of any issue raised in a removal proceeding)); *cf. Aguilar*, 510 F.3d at 9-10 ("Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process. . . .").[11]

This approach makes sense because, as a general rule, there should not be simultaneous review of a question by both an administrative body and a federal court. *See Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408-9 (9th Cir. 1996). Moreover, there is no "general constitutional right" for an alien to review prosecutorial deliberations in order to avert or prevent removal. *See Carranza,* 277 F.3d at 72, citing *AADC*, 525 U.S. at 487-92.[12]

Here, Plaintiff is challenging the Secretary's discretionary decision to issue an NTA and thereby terminate his DACA. *See* Dkt. No. 78, ¶¶ 60-61 ("Defendants issued a Notice to Appear ("NTA") on February 10, 2017[, followed by a Notice of Action ("NOA") dated February 17, 2017, stat[ing] that Mr. Ramirez's deferred action and employment authorization terminated on the date the NTA was issued."); Dkt. No. 78-9 (2017 NTA); Dkt. No. 78-10 (NOA). Specifically, Plaintiff argues he has a property interest in deferred action and in employment authorization that is protected by constitutional due process. Dkt. No. 78 at ¶¶ 96, 104. But where Plaintiff challenges Defendants' exercise of prosecutorial discretion to initiate removal proceedings by issuing an NTA, which has the effect of terminating deferred action and employment

---

[11] In the context of the reinstatement of a prior removal order, the Ninth Circuit has observed that "due process does not require that courts interrogate an agency's decision to exercise prosecutorial discretion." *Morales de Soto v. Lynch*, 824 F.3d 822, 829 (9th Cir. 2016). To the contrary:

> Aside from constitutional claims or questions of law reviewable under 8 U.S.C. § 1252, we have no authority to review the merits of ICE's discretionary decision[s] . . . changes in departmental policies surrounding the factors to be considered or emphasized when exercising that discretion do not in any sense change the law to be applied by courts. There is consequently no reason nor need to remand a case to the agency following intervening changes in policy regarding the exercise of agency discretion.

*Id.*

[12] *See* note 9, *supra*, for discussion of the earlier R&R analysis regarding the scope of 8 U.S.C. § 1252(a)(5) and § 1252(b)(9), which is no longer applicable.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

15

authorization, his challenge necessarily arises from "action taken or proceedings brought to remove an alien." *See* 8 U.S.C. §§ 1252(a)(5); 1252(b)(9). In fact, he is challenging the very validity of the "proceedings." *See AADC*, 525 U.S. at 484-85 (explaining what deferred action is).

The Ninth Circuit has made clear that, in the context of a petition for review ("PFR"), it may review alleged constitutional violations including claims that were not raised in removal proceedings. *See, e.g., J.E.F.M.*, 837 F.3d at 1038 (explaining that, even if never raised in removal proceedings, a court of appeals has the authority to resolve questions of constitutional rights); *see generally Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030 (9th Cir. 2008) (asserting jurisdiction over "Questions of law, and in particular due process challenges to removal orders"). The Ninth Circuit held that taken together, 8 U.S.C. §§ 1252(a)(5) and (b)(9) "mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through the PFR process." *See id*. at 1031 (emphases in original). Plaintiff may prefer that his constitutional claims be resolved now rather than at a later date, but his preference does not provide a basis for this Court to exercise jurisdiction over claims that are subject to a statutory channeling provision. *See J.E.F.M.*, 837 F.3d at 1035-36, 1038; *Singh v. Holder*, 638 F.3d 1196, 1212 (9th Cir. 2011).

C.    **In addition, under 5 U.S.C. § 701(a)(2), the decision to initiate removal proceedings and terminate DACA is committed to agency discretion by law.**

As discussed above, the APA does not provide for judicial review of agency decisions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Heckler*, 470 U.S. at 832 (holding that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)."). The decision to defer enforcement of an immigration violation is an exercise of prosecutorial discretion that falls within this exception to the presumption of judicial review found at 5 U.S.C. § 701(a)(2). Thus, even in the absence of 8 U.S.C. § 1252, there would be no basis for exercising jurisdiction over ICE's decision to issue an NTA, which terminates Plaintiff's DACA.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

16

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. In the alternative, Plaintiff fails to state a claim regarding the process by which ICE issued an NTA that terminated Plaintiff's DACA.

There are two principal reasons why Plaintiff has failed to state a claim. First, there is no requirement that ICE provide notice to a recipient of DACA before issuing an NTA that terminates DACA. Second, Plaintiff lacks, as a matter of law, a constitutionally protected interest in DACA or employment authorization.

### A. There is no requirement that ICE provide notice before issuing a Notice to Appear that terminates DACA.

Assuming jurisdiction *arguendo*, there is no basis for concluding that ICE is required to provide notice to a DACA recipient before issuing an NTA that terminates DACA. The USCIS FAQ specifically states that DACA "may be terminated at any time, with or without Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 78-1 at Q:27. Contrary to Plaintiff's assertions, *see* Dkt. No. 78 at ¶¶ 62, 90; ¶ 104 FN 75, DHS procedural guidance provides for termination of deferred action without issuing a NOIT or providing a chance to respond. *See* Exhibits C, D.

For example, where ICE issues an NTA, the DACA SOP and Appendix I provide that DACA terminates automatically. Per Appendix I, the related EAD also terminates upon NTA issuance. Among other reasons, ICE may decide to issue an NTA where there is a disqualifying criminal offense or public safety concern that is deemed to be an EPS issue, and USCIS will generally issue a Notice of Action informing the individual that his DACA and EAD terminated automatically upon NTA issuance. Exhibit D at 2 ("On [Date NTA served on alien], [ICE] issued you a Notice to Appear (NTA). . . . USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date your NTA was issued."). An EPS case includes "a case where *information indicates* the alien is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following: [. . .] known or suspected street gang members." Exhibit E at 3-4 (emphasis added). The determination to issue the NTA remains within the discretion of the agency. *Id*. at 5

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

17

1    (When an EPS case is identified, "ICE will have an opportunity to decide if, when, and how to

2    issue an NTA and/or detain the alien.").

3         Plaintiff's argument that Defendant's internal procedures require issuance of notice and

4    an opportunity to respond in every DACA termination is incorrect, and it is based on a selective

5    reading of those procedures. Dkt. No. 78 ¶ 90 (alleging "Defendants acted unlawfully and in

6    violation of the *Accardi* doctrine because they failed to 'adhere to [their] own internal operating

7    procedures'"). ICE obtained information through Plaintiff's arrest and detention process,

8    including interviews with Plaintiff, which suggested to ICE that he was affiliated with a gang.

9    Dkt. No. 78-8 (2017 I-213). That information led to the discretionary determination to issue an

10   NTA, which simultaneously terminated Plaintiff's DACA and EAD. *See* Dkt. No. 78-8 (2017 I-

11   213); Dkt. No. 78-10 (NOA). The Notice of Action Plaintiff received following the NTA was

12   drawn directly from the DACA SOP. *See* Exhibit D at 2; Dkt. No. 78-10.

13        Suspicion of gang affiliation is defined as an EPS issue that makes an unlawful

14   immigrant "a top immigration enforcement priority." ICE, therefore, exercised its discretion to

15   initiate removal proceedings against Plaintiff by issuing an NTA. Exhibit E at 2. As prescribed in

16   Chapter 14 and Appendix I of the DACA SOP, the issuance of the NTA immediately terminated

17   Plaintiff's DACA, with no additional notice or opportunity to respond required. Per Appendix I,

18   issuance of the NTA also terminated Plaintiff's employment authorization. Thus, Plaintiff has no

19   basis to rely on the *Accardi* doctrine, which requires an agency to comply with its own

20   regulations, to allege a violation of internal operating procedures.

21        The *Accardi* doctrine is also inapplicable in the context of internal operating guidelines

22   that preserve the exercise of agency discretion. *See Mada-Luna v. Fitzpatrick*, 813 F.2d 1006,

23   1009 (9th Cir. 1987) (finding amended Operating Instructions were "general statements of

24   policy" because the instructions persevered the agency's flexibility and opportunity to make

25   discretionary determinations); *id.* ("a directive must not establish a binding norm and must leave

26   agency officials free to consider the individual facts in the various cases that arise and to exercise

27   discretion") (internal citations and quotations omitted). Courts have also declined to apply the

28   *Accardi* doctrine in matters of prosecutorial discretion. *See Carranza,* 277 F.3d at 72-73

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

18

(declining to apply *Accardi* doctrine in habeas challenge to alleged "failure of the INS to exercise individualized discretion in its decision to initiate deportation proceedings," observing that "[w]hether or not the INS exercised its discretion is therefore beside any relevant point" as "petitioner did not have a right to demand the exercise of this discretion in the first place"); *United States v. Lee*, 274 F.3d 485, 492-93 (8th Cir. 2001) ("Courts have agreed that individuals have no enforceable rights under another internal DOJ policy known as the *Petite* policy, which restricts federal prosecution of individuals already prosecuted under state law for the same act or acts. Prosecutorial discretion has been treated differently than other types of agency discretion, and the special nature of prosecution is the reason that the *Accardi* doctrine has not been applied to criminal law enforcement policies and procedures.").

**B.      There is no constitutionally protected interest in employment authorization or DACA.**

The Supreme Court recognizes that "[a] host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other." *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). The fact that all persons in the United States, aliens and citizens alike, may be protected by the Due Process Clause, *id.*, does not lead to the further conclusion that aliens enjoy a right to either employment authorization or to DACA.

**1.      Plaintiff lacks a fundamental right to employment authorization or DACA.**

Here, Plaintiff challenges the loss of work authorization that resulted from the termination of his DACA, arguing that he has a constitutionally protected interest in being able to work in the United States. *See* Dkt. 78 at ¶ 100. As a threshold matter, aliens do not have a constitutionally protected right to work without authorization. *Pilapil v. INS*, 424 F.2d 6, 11 (10th Cir. 1970), *cert denied*, 400 U.S. 908 (1970); *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1273 (S.D. Fla. 1989) (holding that noncitizens do not have a constitutional right to

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

19

work without authorization).[13] Thus, there is no judicial review of the decision to terminate work authorization. *See Perales v. Casillas*, 903 F.2d 1043, 1047-48 (5th Cir. 1990) ("[T]here is nothing in the [INA] expressly providing for the grant of employment authorization . . . . to aliens who are the beneficiaries of approved petitions") (vacating the challenged portion of the injunction); *see, e.g.*, *Kaddoura v. Gonzales*, No. C06-1402 RSL, 2007 WL 1521218, *4-5 (W.D. Wash. May 21, 2007) (finding a lack of judicial review). As a matter of law, a plaintiff cannot assert a constitutional right to such authorization.

Similarly, Plaintiff asserts a constitutional right to DACA based on a purported due process right to be with his family. *See* Dkt. No. 78 at ¶¶ 97, 104. The Ninth Circuit has never recognized a "right to family unity" to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 (9th Cir. 2009). Thus, this claim also fails as a matter of law.

### 2. Plaintiff fails to state a claim with respect to a protected property interest.

Nothing in the DACA memoranda, public Q&A documents, or the DACA SOP indicate any promise of benefits or entitlement to a lawful status or employment authorization other than what the Government grants in its discretion. *See, e.g.,* Dkt. No. 78-1 (USCIS FAQ) ("DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without Notice of Intent to Terminate, at DHS's discretion."). As the Ninth Circuit explained, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr.*

---

[13] Plaintiff's references to cases addressing U.S. citizens' constitutional interest in choosing their own field of employment, *see* Dkt. 78 at 24, simply miss the point. Aliens do not have a constitutional right to work here in the United States, let alone a right to choose their own field of employment. *Cf. Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 151-52 (2002) (recognizing that, as a general matter, an individual who is not authorized to work in the United States does not have a right to work).

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

20

*Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Property interests are not created by the Constitution but rather are created and their dimensions are defined by existing rules or understandings that stem from an independent source. *See id.*[14] In a pair of companion cases handed down the same day, the Supreme Court explained that "government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz*, 727 F.3d at 922-23 (comparing *Roth*, 408 U.S. 576-78, with *Perry v. Sindermann,* 408 U.S. 593, 599-603 (1972)).

For example, when a professor whose employment contract was not renewed, sued for deprivation of property without due process, the Court found that the professor lacked a protected property interest in his continued employment because his employment contract was for a fixed one-year term. *Blantz*, 727 F.3d at 922-23 citing *Roth*, 408 U.S. at 566. Similarly, when a nurse sued over her termination relying on orientation documents that stated "termination *can* occur as a result of the performance review procedures" detailed in the document, the Ninth Circuit concluded she lacked a property interest in her continued employment because the documents "do not guarantee that every termination *must* be preceded by a peer review process or any other specified departmental procedures." *Id.* at 924.

Here, the DACA documents make clear that a recipient of DACA has no constitutionally protected interest in the continuation of DACA or a constitutionally protected interest in notice prior to termination. Specifically, the 2012 Memorandum states, "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Dkt. No. 78-3 at 3. In addition, the USCIS FAQs specifically state that deferred action can be terminated before it expires,

---

[14] The independent source can be a statute, *see Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016), *cert. denied*, 137 S. Ct. 52 (2016); a regulation, *see id.; see also Roth*, 408 U.S. 564, 577; an express or implied contract, *see Sindermann*, 408 U.S. at 601-02; or a mutually explicit understanding. *Id*. at 602-03.

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

21

explaining, "DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 78-1 at Q27. The USCIS FAQ further explain that the phrase "national security or public safety threat" includes but is not limited to "gang membership, participation in criminal activities, or participation in activities that threaten the United States." *See id.* at Q:65.[15] In sum, reading these documents in context, a DACA recipient does not have a protected property interest in the continuation of his or her DACA.

### 3. Plaintiff fails to state a claim with respect to a protected liberty interest in connection with his reputation.

Plaintiff also alleges that DHS' issuance of an NTA, and thus the termination of his DACA, based on purportedly false allegations of gang affiliation, "deprived him of protected liberty interest in his reputation." Dkt. No. 78 at ¶ 98, citing *Paul v. Davis*, 424 U.S. 693 (1976). But in *Paul*, the Supreme Court found that one's "interest in reputation" standing alone "is neither liberty nor property guaranteed against deprivation with due process of law." *Paul*, 424 U.S. at 712. The Court explained that a plaintiff's reputation "is simply one of a number which the state may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." *Id.* Any injury suffered, even one inflicted by the Government, does not result in a loss of liberty. *Id.*; *see Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (there is no constitutional protection for the interest in reputation standing alone).[16] Rather, due process protections apply only if a plaintiff is subjected to "stigma plus"; i.e., if the

---

[15] The DACA approval notice advises "[s]ubsequent criminal activity after your case has been deferred is likely to result in termination of your deferred action." Dkt. No. 78-7. But it does not follow that because criminal activity *can* result in termination, that "every termination *must* be preceded" by criminal activity. *See Blantz*, 727 F.3d at 924. Rather the Government retains the discretion to terminate DACA for other reasons.

[16] In *Paul,* the Supreme Court distinguished between deprivation of an interest in one's reputation (which standing alone is not a protected liberty interest) and other types of constitutionally protected interests addressed under prior Court precedent. *See Paul*, 424 U.S. at 711 (distinguishing *Bell v. Burson*, 402 U.S. 525 (1971) (involving one's interest in operating a vehicle on the highway of a state) and *Morrissey v. Brewer*, 408 U.S. 471 (1972) (involving the right to remain at liberty as long as the conditions of parole were not violated)).

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

22

Government makes a change against a plaintiff that might seriously damage his standing and associations in the community, and (1) the accuracy of the charge is contested, (2) there is some public disclosure of the charge, and (3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law. *See Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002) (finding plaintiff failed to demonstrate infringement of his due process rights).

Here, the gravamen of Plaintiff's claim is that the Government harmed his reputation by terminating DACA and publicly discussing the termination. As a matter of law, this allegation of harm to his reputation is insufficient to deprive him of a liberty interest. *See Paul*, 424 U.S. at 712. It is undisputed that DACA does not confer lawful status. *See* Dkt. 78 at 19. Thus, the termination of DACA does not change his legal status, and the Ninth Circuit has already found that aliens have no protected interest in in "discretionary relief from removal . . ." *Tovar-Landin*, 361 F.3d 1164, 1167 (9th Cir. 2004); *see also Garcia v. Holder*, No., 07-60271, 320 F. App'x 288, 290 (9th Cir. April 9, 2009) (holding that alien "must have a liberty or property interest before the due process clause is relevant, and no such protected interests arise in the denial of totally discretionary relief").[17] Moreover, Plaintiff has not alleged that he was employed prior to the Government's termination of his DACA by issuing an NTA and, as stated above, the termination of employment authorization is not subject to judicial review. *See Perales*, 903 F.2d at 1047-48. Without more, Plaintiff has failed to state a claim for the deprivation of a liberty interest without due process of law.

## CONCLUSION

The discretionary decision to issue an NTA, which has the effect of terminating DACA, is not reviewable by this Court. Moreover, Plaintiff has failed to state a claim because there is no

---

[17] In earlier case law, the Ninth Circuit concluded that because internal operating instructions vest INS with unfettered discretion to determine whether to grant deferred action to an otherwise deportable alien, "it creates no protectable liberty interest in deferred action. . . ." *Romeiro de Silva*, 773 F.2d at 1024 (9th Cir. 1985); *see, e.g., Wan Chung Wen v. Fero*, 543 F. Supp. 1016, 1019 (W.D.N.Y. 1982) (holding that "petitioner has no colorable liberty or property interest in, and hence no claim to inclusion in the INS's deferred action category. . . .").

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

23

legal basis for contending that ICE must give a DACA recipients notice before issuing an NTA and Plaintiff has failed to assert an administrative or constitutionally protected interest.

Defendants respectfully request this Court dismiss Plaintiff's claims.

DATED: June 26, 2017                           Respectfully submitted,

CHAD A. READLER                                */s/ Jeffrey S. Robins*
Acting Assistant Attorney General       JEFFREY S. ROBINS
                                                             Assistant Director
WILLIAM C. PEACHEY                     U.S. Department of Justice
Director                                                 Civil Division
                                                             Office of Immigration Litigation
                                                             District Court Section
                                                             P.O. Box 868, Ben Franklin Station
                                                             Washington, D.C. 20044
                                                             Phone: (202) 616-1246
                                                             Fax: (202) 305-7000
                                                             Email: jeffrey.robins@usdoj.gov

                                                             AARON S. GOLDSMITH
                                                             Senior Litigation Counsel

                                                             Attorneys for Defendants

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

24

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 26, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document should automatically be served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jeffrey S. Robins*
Jeffrey S. Robins
Assistant Director
U.S. Department of Justice

Federal Agency Defendants' Motion
To Dismiss Second Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246

25