The Hon. James P. Donohue
Chief Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL RAMIREZ MEDINA, <br> Plaintiff, <br> v. <br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br> Defendants. | Case No. 2:17-cv-00218-RSM-JPD <br><br> **FEDERAL AGENCY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

In his Response, Plaintiff fails to meaningfully address the Federal Agency Defendants' statutory arguments as to why his claims should be dismissed for lack of jurisdiction. Specifically, he is unable to point to any textual reason why 8 U.S.C. § 1252(g) or the REAL ID Act do not bar his claims. Nor does he cite any authority for the proposition that the decision by Immigration and Customs Enforcement ("ICE") to issue Plaintiff a Notice to Appear ("NTA") is separate and apart from Plaintiff's removal proceedings, which ICE commenced by the filing of this NTA. Moreover, there is no merit to his contentions that ICE's decision was arbitrary and capricious or contrary to law.

**1. Plaintiff has failed to meet his burden of establishing jurisdiction**.

    **A. Plaintiff's claims are precluded by 8 U.S.C. § 1252(g).**

When ICE issues a Notice to Appear ("NTA"), it results in the automatic termination of the recipient's DACA. *See generally*, Dkt. 109-2 at 17 ("DACA 602 – Termination Notice [NTA

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

1

1  Issuance]" stating that deferred action as a childhood arrival "automatically terminated as of the
2  date your NTA was issued").[1]

3      Plaintiff does not dispute that 8 U.S.C. § 1252(g) generally precludes judicial review of
4  the decision to commence removal proceedings. *See* U.S.C. § 1252(g); *cf. Reno v. Am-Arab Anti-*
5  *Discrimination Comm.*, 525 U.S. 471, 484-85, 491 (1999) ("*AADC*") ("The contention than a[n]
6  [immigration law] violation must be allowed to continue because it has been improperly selected
7  is not powerfully appealing."). For example, a decision as to the timing of when to commence
8  removal proceedings would not be subject to judicial review. *See* Dkt. 109 at 18 n.8 citing
9  *Chavez-Navarro v. Ashcroft*, 571 F. App'x 349 (9th Cir. 2003). Instead, Plaintiff argues that 8
10 U.S.C. § 1252 does not apply here because Plaintiff is challenging (i) a decision that is
11 collateral/independent to the removal proceedings, and (ii) determinations that were made prior
12 to the commencement of removal proceedings. *See* Dkt. 109 at 2. As a result, Plaintiff contends
13 he can proceed in district court with his claims that the Department of Homeland Security
14 ("DHS") did not follow its procedures in terminating his DACA and that, in any event, this
15 termination was unconstitutional.

16     This argument is without merit. Almost by definition, the issuance of an NTA (the
17 charging document used to commence removal proceedings) cannot be collateral or independent
18 of the removal proceedings. *See* 8 U.S.C. § 1229(a). As previously noted, it is true that removal
19 proceedings are commenced upon the filing of the NTA in immigration court rather than merely
20 upon the issuance of the NTA. *See* Dkt. 90 at 2 citing 8 C.F.R. § 1003.14(a). But it does not
21 follow logically that a lapse of time between the issuance of a charging document and its filing
22 renders the charging document collateral or independent to the proceedings.

23     Moreover, as previously explained, 8 U.S.C. § 1252(g) is not limited to claims arising
24 from the commencement of removal proceedings, but also prohibits "any cause or claim . . .

---

[1] As set forth in the U.S. Citizenship and Immigration Services ("USCIS") Standard Operating Procedures' ("SOP") appendices, after ICE issues an NTA which has the effect of terminating deferred action, USCIS provides notice to the individual that his or her DACA was terminated as a result of the issuance of the NTA. *See* Dkt. 109-2 at 17. But this notice from USCIS is not what terminates DACA; rather DACA "automatically terminated" upon the issuance of the NTA. *Id.*; *cf. Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (discussing deference to an agency's determination of what constitutes a charge).

| | |
|---|---|
| Federal Agency Defendants' Reply in Support<br>of Motion to Dismiss<br>Case No. 2:17-cv-00218-RSM-JPD | U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 305-4193 |

arising from the decision or action" to commence removal proceedings.[2] Because 8 U.S.C. § 1252(g) bars claims arising from such "decision[s] or action[s]," Plaintiff cannot avoid the jurisdictional bar of 8 U.S.C. § 1252(g) through artful pleading by claiming to challenge a decision (such as the decision as to whether an NTA should be issued) or an action (such as the action of issuing the NTA) rather than challenging the removal proceedings themselves. *See* 8 U.S.C. § 1252(g). To hold otherwise would render 8 U.S.C. § 1252(g) a dead letter because any alien could seek to enjoin or otherwise challenge the institution of removal proceedings through this type of pleading.

Even in the absence of a SOP specifying that the issuance of an NTA terminated deferred action, as a matter of logic, the decision to issue an NTA is necessarily inconsistent with continuing to defer action. The word "defer" means, in this context, "To postpone, to delay." BLACK'S LAW DICTIONARY (7th ed.) at 432. By definition, an agency cannot "postpone" or "delay" action, while simultaneously taking the same action. *See id*. at 28 (defining "action" as "The process of doing something; conduct or behavior . . . A thing done . . .").

Lastly, Plaintiff's argument that his claims under the APA are not barred by 8 U.S.C. § 1252(g) because they challenge nondiscretionary rather than discretionary duties necessarily fails because 8 U.S.C. § 1252(g) does not distinguish between discretionary and nondiscretionary duties.[3] To the contrary, it bars "*any* cause or claim . . . arising from the decision or action . . . to

---

[2] Plaintiff is incorrect in stating that the Federal Agency Defendants are arguing that 8 U.S.C. § 1252(g) bars all immigration-related claims relating to removal proceedings. Dkt. 109 at 16. Federal courts retain jurisdiction to review agency actions that do not arise from any "decision or action" to commence removal proceedings. *See Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004) (citations omitted).

[3] To be sure, in other contexts, courts distinguish between discretionary and nondiscretionary duties. For example, under 5 U.S.C. § 706(a)(1), a plaintiff can assert an APA claim (akin to a mandamus claim) seeking to compel an agency to perform a duty but only if it is a duty compelled by statute (that is, a matter over which the agency has no discretion). *See, e.g., Zixiang Li v. Kerry*, 710 F.3d 995, 1003 (9th Cir. 2013).

Similarly, there are additional jurisdictional bars contained in different subsections of 8 U.S.C. § 1252. *See AADC*, 525 U.S. at 486 ("[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation.") (emphasis omitted). For example, 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of certain discretionary determinations contained in subchapter II of the Immigration and Nationality Act ("INA"). *See* Dkt. 109 at 24-25 n.17 citing *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004), *B. Singh v. Holder*, 591 F.3d 1190, 1195 (9th Cir. 2010); *Nakamoto v. Ashcroft*, 363 F.3d 874 878 (9th Cir. 2004). And there are cases that interpret this different statutory language. *See id*. But these cases have no direct bearing on the statutory language at issue here, which does not address decisions made discretionary by subchapter II. Additionally, Plaintiff cites cases that address the jurisdiction of circuit courts rule on certain issues

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

3

commence removal proceedings." 8 U.S.C. § 1252(g) (emphasis added). Giving the word "any" its ordinary meaning, 8 U.S.C. § 1252(g) precludes judicial review irrespective of whether the claim relates to a discretionary or nondiscretionary duty. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'") (citations and quotations omitted).

Plaintiff's Response also relies on *Coyotl v. Kelly*, No. 1:17-CV-1670-MHC, 2017 WL 2889681 (N.D. Ga. June 12. 2017). Dkt. 109 at 11, 18. As a threshold matter, this case involved a motion for a preliminary injunction and, therefore, a different legal standard. *Coyotl*, 2017 WL 2889681, at *1, 11-13. More importantly than this difference in procedural posture, the *Coyotl* court's conclusion regarding the scope of 8 U.S.C. § 1252(g) is not persuasive because the *Coyotl* court never explained why the language "any cause or claim" should be read as limited solely to causes or claims based on a discretionary duty. *See id*. at 8-10. Rather the *Coyotl* court appears to confuse 8 U.S.C. § 1252(g) with another subsection, 8 U.S.C. § 1252(a)(2)(B)(ii), which only bars judicial review of certain discretionary determinations. *See id*. at 8-11. Because the *Coyotl* court appears to have based its reading of 8 U.S.C. § 1252(g) on authorities analyzing a different statutory provision rather than by looking at the text of 8 U.S.C. § 1252(g), it is not persuasive on the meaning of 8 U.S.C. § 1252(g).[4]

In sum, one need look no further than the text of 8 U.S.C. § 1252(g) to see that this court lacks jurisdiction over Plaintiff's claims against the Federal Agency Defendants.

### B.     Plaintiff's claims are also precluded by the REAL ID Act.

Plaintiff argues that even if Federal Agency Defendants complied with their procedures, they still violated the APA by depriving him of his "constitutionally-protected liberty and

---

arising in a petition for review. *See* Dkt. 109 at 25 n.17 citing *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir. 1997). Again, this has no relevance to the present case.

[4] Plaintiff cites habeas authorities that were previously addressed in an earlier round of briefing. For example, he cites *Nadarajah v. Holder*, for the proposition that a challenge to immigration detention is not necessarily barred by 8 U.S.C. § 1252(g). Dkt. 109 at 21 citing 638 F.3d 1196 (9th Cir. 2007). This authority (and other habeas cases) are unrelated to the present case arising under the APA. To the extent Plaintiff's point is simply that not all immigration claims are barred by 8 U.S.C. § 1252(g), this is correct and unremarkable.

Federal Agency Defendants' Reply in Support  
of Motion to Dismiss  
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division  
Office of Immigration Litigation  
P.O. Box 868, Ben Franklin Station  
Washington, D.C. 20044  
(202) 305-4193

4

property interests without due process of law." *See* Dkt. 109 at 30-34. He contends that, at least in the context of this case, there would be serious constitutional concerns if he was deprived of an avenue for redress for his constitutional claims (specifically his Due Process claim). *See id.* at 22-23.

But the Federal Agency Defendants never argued that Plaintiff lacks any forum for litigating his constitutional claims. Rather the Federal Agency Defendants' position is that Congress has provided such a forum: the petition for review process. *See* Dkt. 90 at 13-16 citing 8 U.S.C. § 1252(b)(9) (channeling claims "arising from any action taken or proceeding brought to remove an alien from the United States"). Thus, the REAL ID Act channels all claims arising from acts, including acts that occurred *prior to the commencement of removal proceedings*, through the petition for review process and bars judicial review in district court. *See Aguilar v. Immigration and Customs Enforcement*, 510 F.3d 1, 10 (1st Cir. 2007) (observing that to hold otherwise would effectively excise the words "any action taken" from the statute).

Plaintiff does not appear to make any textual argument in response to this analysis of 8 U.S.C. § 1252(b)(9). Instead, he argues raising his constitutional claims in immigration court would be unsuccessful in light of the Board of Immigration Appeals' ("BIA") precedent holding that immigration judges lack authority to grant DACA. *See* Dkt. 109 at 12. The Ninth Circuit has already addressed this issue. *See* Dkt. 90 at 2, 14, 16. In *J.E.F.M. v. Lynch*, the plaintiffs argued it was impossible to have their due process-based right-to-counsel claim heard because immigration judge lacks authority to assign counsel. 837 F.3d 1026, 1037 (9th Cir. 2016). But the Ninth Circuit found even where the BIA and immigration judge lack such authority, the court of appeals can consider the issue. *Id*. at 1038. This holding is controlling here.

Moreover, it is true that there is BIA authority for the proposition that immigration judges lack the authority to grant DACA. *See* Dkt. 109 at 22 citing *In re Saldana-Flores*, 2016 WL 4976712, at *1 (BIA July 25, 2016) (explaining that because a request for DACA involves "prosecutorial discretion" it will have to be "pursued with the DHS"). But there is also significant authority for the proposition that federal courts lack the authority to grant DACA. *See, e.g., Vilchiz-Soto*, 688 F.3d at 644; *Rodriguez v. Sessions*, No. 15-72487, 2017 WL 695192,

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

5

at *1 (9th Cir. Feb. 22, 2017); *Vasquez v. Aviles*, No. 15-2214, 639 Fed. App'x. 898, 901 (9th Cir. Feb. 24, 2016). In any event, the existence of contrary authority cannot be the basis for proceeding in an improper forum.

Rather, the crux of Plaintiff's argument seems to be his contention that his claims are different from prior precedent involving DACA because they "implicate . . . interests" not present in other contexts. *See* Dkt. 109 at 19. Federal Agency Defendants disagree with Plaintiff for the reasons set forth in their Motion to Dismiss. *See* Dkt. 90 at 19-23. But assuming *arguendo* that Plaintiffs' constitutional claims really are distinguishable from prior precedent and he has a viable constitutional claim, the proper forum for his claims would be the petition for review process.

### C. The doctrine of sovereign immunity bars Plaintiff's claims because the exercise of prosecutorial discretion is committed to agency discretion by law.

Congress never waived sovereign immunity with respect to Plaintiff's APA claims because these claims challenge "agency action committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see, e.g., Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (applying this provision). In response to this argument, Plaintiff raises three points. None has merit.

First, he argues the present case is distinguishable from other cases involving the exercise of prosecutorial discretion because this is a civil rather than a criminal matter. Dkt. 109 at 29 n. 23. That argument is foreclosed by the *Heckler* decision itself. *See* 470 U.S. at 831 ("[A]n agency's decision not to prosecute or enforce, whether *through civil or criminal process*, is a decision generally committed to an agency's absolute discretion" and is not amenable to judicial review) (emphasis added).

Second, Plaintiff argues *Heckler* is of "no relevance" because it involves the decision not to act and the present case involves the decision to take action. *See* Dkt. 109 at 25. But the Ninth Circuit has already disposed of this argument, explaining that notwithstanding this difference in procedural posture, the exercise of prosecutorial discretion in the civil context – specifically in the immigration context – nonetheless involves the "same need" for balancing of different factors. *Morales de Soto v. Lynch*, 824 F.3d 822, 827 n.4 (9th Cir. 2016) (analyzing *Heckler*).

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

6

Third, Plaintiff argues that 5 U.S.C. § 701(a)(2) is limited to those circumstances in which there is "no law to apply." *See* Dkt. 109 at 23-24. But the Ninth Circuit has rejected this position, explaining this statutory provision also includes those circumstances requiring "a complicated balancing of a number of factors which are peculiarly within the agency's expertise, including the prioritization of agency resources, likelihood of success in fulfilling the agency's statutory mandate, and compatibility with the agency's overall policies." *See, e.g., Ctr. for Policy Analysis on Trade and Health (CPATH) v. Office of the U.S. Trade Rep.*, 540 F.3d 940, 944 (9th Cir. 2008) (citations and quotations omitted). Simply put, the exercise of prosecutorial discretion is different from other types of agency discretion. *See Morales de Soto*, 824 F.3d at 828 (explaining that a plaintiff "fundamentally misunderstands" the role of courts because "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention" notwithstanding the existence of DHS memoranda addressing how DHS should exercise its discretion); *see, e.g., United States v. Banuelos-Rodriguez,* 215 F.3d 969, 976 (9th Cir. 2000); *Carranza v. INS*, 277 F.3d 65, 72-73 (1st Cir. 2002); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001).

The fact that DHS created procedures and guidelines regarding how it will exercise its prosecutorial discretion does not mean that it automatically loses its ability to exercise such prosecutorial discretion and subjects itself to judicial review of its discretionary decisions. *See Morales de Soto,* 824 F.3d at 828. If the law were otherwise, prosecutors' offices would be unable to develop procedures without subjecting their prosecutorial decisions to judicial review under the APA. *Contra Lee*, 274 F.3d at 492 (reversing a finding that a criminal defendant can force the Department of Justice to comply with its death penalty protocol).

In sum, if Congress' intent was that a certain class of decisions would be outside the scope of APA review under 5 U.S.C. § 701(a)(2), then Congress' intent controls and an agency cannot override a congressional decision simply because it develops procedures and guidelines to exercise its prosecutorial discretion.

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

7

> **D.** *Texas v. United States* **is an APA rulemaking challenge that excluded discussion of removal proceedings and prosecutorial discretion, and is thus inapplicable to this case.**

Plaintiff's reliance on *Texas* is misplaced for several reasons. First, *Texas* involved an APA challenge to DHS' issuance of a deferred action policy without engaging in notice-and-comment rulemaking. The Fifth Circuit held that the plaintiff States' claim was not barred by 8 U.S.C. § 1252(g) because, among other reasons, the plaintiff States were not asserting a claim "by or on behalf of any alien." *See Texas v. United States*, 809 F.3d 134, 164 (5th Cir. 2015) *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (per curiam).[5] Second, and similarly, the APA claim by the plaintiff States did not seek to assert a constitutional right to DACA or employment authorization. As a result, the Fifth Circuit had no reason to consider the reviewability of a discretionary decision to grant or deny DACA. *Id*. at 166 ("Because the challenged portion of . . . [the] deferred-action program is not an exercise of enforcement discretion, we do not reach the issue of whether the presumption against review of such discretion is rebutted."). Finally, the *Texas* court's analysis of DACA guidance cited by Plaintiff is related only to the process for granting DACA requests, not the lawfulness of individual DACA termination decisions. *Id*. at 173-76.

> **2. USCIS' Standard Operating Procedures do not require ICE to issue a notice of intent to terminate prior to terminating a recipient's DACA.**

Plaintiff failed to state a claim regarding USCIS' SOP. In his Response, Plaintiff clarified that he is not taking the position that under USCIS' SOP, DHS must provide notice to a DACA recipient prior to termination. *See* Dkt. 109 at 14 n.4 (conceding that that the procedures "could be read" as allowing DHS, under certain circumstances, to terminate DACA without providing the recipient with any prior notice); *see generally*, Dkt. No. 78-1 at Q:27 (specifying that DHS can terminate DACA with or without notice). Instead, Plaintiff's position appears to

---

[5] In *Texas*, the Government was appealing the issuance of a preliminary injunction. *See Texas*, 809 F.3d at 146, 150. The district court made certain factual findings in the context of a motion for a preliminary injunction without the benefit of an evidentiary hearing. *Id*. at 174-75, 177. To the extent this Court wishes to consider the factual findings of the district court, this Court should keep in mind the context of these findings.

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

8

be that ICE, and only ICE, is required to provide notice prior to termination. There is no merit to this argument for three reasons.

First, the templates attached to USCIS' SOP indicate that *only* USCIS, and not ICE, is to provide notice, under certain circumstances, prior to termination. *See* Dkt. 109-2 at 16 (Appendix I to "Chapter 14: DACA Termination," specifically "DACA 600 – Notice of Intent to Terminate" and "DACA 601 – Termination Notice [After NOIT]"). In contrast, the SOP recognizes that ICE may terminate DACA through the issuance of an NTA. *See* Dkt. 109-2 at 17 ("DACA 602 – Termination Notice [NTA Issuance]" stating that deferred action as a childhood arrival "automatically terminated as of the date your NTA was issued").[6]

Second, although the USCIS' SOP set forth circumstances under which USCIS is to provide notice prior to termination, the SOP does not contain similar language for circumstances under which ICE is to provide such notice. For example, if it comes to the attention of USCIS that it granted DACA to a recipient either "in error" or as a result of "fraud," USCIS is generally to issue a Notice of Intent to Terminate. *See* Dkt. 109-2 at 13. In contrast, the SOP does not reference *any* circumstance under which ICE is to issue a notice prior to termination.

Third, as Plaintiff appears to recognize, USCIS has the discretion to terminate DACA without notice, if it consults with ICE and determines "ICE does not plan to issue an NTA." *See* Dkt. 109 at 14 n.4.[7] Under Plaintiff's reading of this provision, DHS would retain the discretion to terminate without notice but only if ICE first decides *not* to issue an NTA (otherwise DHS would be required to provide notice). *See id*. Plaintiff offers no explanation for such an illogical reading of the SOP, other than to say that this provision is not relevant here. *See id*.[8]

---

[6] After ICE issues an NTA, which has the effect of terminating deferred action, USCIS provides notice to the recipient reflecting this termination. *See* Dkt. 109-2 at 17. But this notice is not what terminates DACA; rather DACA "automatically terminated" upon the issuance of the NTA by ICE. *See id*. Plaintiffs' assertion to the contrary, *see* Dkt. 109 at 12-13, is simply wrong.

[7] To be clear, USCIS is to refer the matter through the normal chain of command to determine if the issuance of notice is appropriate before terminating. *See* Dkt. 109-2 at 15. If USCIS chooses to terminate without notice, it will issue "DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated]" which has the effect of immediately terminating DACA as of the date of the notice. *See* Dkt. 109-2 at 17.

[8] *Coyotl* is distinguishable from the present case because in *Coyotl* it was USCIS that terminated the recipient's DACA and, thus, USCIS' SOP, were directly implicated. *See Coyotl*, 2017 WL 2889681, at *3. This difference is significant because DHS' procedures center the ultimate decision regarding prosecutorial discretion with ICE. For

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

9

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

In sum, the language of USCIS' SOP, including the templates contained in the appendix to Chapter 14, do not contain any requirement that ICE provide notice prior to terminating a recipient's DACA.

**3. Despite Plaintiff's assertions, DACA disclaims entitlement to any benefits or substantive rights.**

Plaintiff's claim of a constitutionally protected interest in DACA and employment authorization is based on the mischaracterization of documents and on authorities that are readily distinguishable from the present case. As DHS has made clear from the outset in form instructions, guidance, and public affairs material, deferred action is an entirely discretionary act of grace on the Government's part to forebear enforcement action against an alien and is revocable at any time without notice. That DHS has favorably exercised its enforcement discretion for temporary period with respect to Plaintiff does not give rise to a constitutional entitlement to continuation of such discretion.

**a. Secretary Johnson's 2016 Letter only addresses the purpose that DACA information may be used for.**

Plaintiff mischaracterizes Secretary Johnson's 2016 letter to Representative Chu suggesting that it contains more sweeping language than it does. Dkt. 109 at 21. The sentence Plaintiff quotes, "representations made by the U.S. government, upon which DACA applicants most assuredly relied, must continue to be honored," is in reference to Representative Chu's concern that DHS "do everything within [our] power to safeguard the personal identifying information of DACA enrollees," and nothing more. Dkt. No. 78-2. The letter does not create any constitutionally protected interest.

**b. Plaintiff does not establish his employment authorization became a protected property interest under DACA.**

There is no common practice or understanding that DACA is irrevocable or that such revocation would not also terminate an individual's employment authorization. In fact, Plaintiff

example, ICE may take action on its own without consultation with USCIS, but USCIS is to consult with ICE (at least with respect to circumstances that relate to ICE's authority and prosecutorial discretion).

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

10

does not cite a single authority for the proposition that temporary employment authorization became a protected property interest.

For example, Plaintiff cites *Orloff v. Cleland* for the proposition that once granted employment authorization, an individual developed a property interest in it through a mutually explicit understanding. Dkt. 109 at 21-22. However, the plaintiff in *Orloff* had an employment contract and that contract was extended twice before he was terminated. The court found the two extensions of employment past the contract's termination date could have created an understanding between the plaintiff and his employer that his employment had become indefinite. *Orloff v. Cleland,* 708 F.2d 372, 377 (9th Cir. 1983). Plaintiff here has no contract (nor has he asserted any actual employment), the terms of the DACA grant specifically provided for termination at any time without notice, and, unlike employment, DACA constitutes a favorable, temporary exercise of prosecutorial discretion that is revocable at any time without notice.

Plaintiff also cites *Gunasekera v. Irwin,* 551 F.3d 461, 467-68 (6th Cir. 2009). Dkt. 109 at 22. However, the holding of *Gunasekera* is that "common practice and understanding" may have created a property interest in Graduate Faculty status at Ohio University, because "the University admitted that there is no precedent regarding when Graduate Faculty status is retained, because it has never been revoked or suspended." 551 F.3d at 468.  In contrast, here, "as of March 20, 2015, DHS terminated DACA for at least 282 requestors based on gang affiliation and/or criminal issues." Dkt. No. 78-5, Pl. Exhibit E: Letter to Chairman Charles E. Grassley with attachment at 4 (Apr. 17, 2015); *see also* Dkt. No. 78-1 (USCIS FAQ) at Q1; *id*. at Q27; Dkt. No. 90-3 (Form I-821 D, DACA application instructions).  In sum, there is no common practice or understanding that DACA is irrevocable or that such revocation would not also terminate an individual's discretionary employment authorization.

Plaintiff next argues that "[o]nce the alien is permitted to work, the alien has the rights to which an employee is entitled" under the National Labor Relations Act ("NLRA"). *See* Dkt. 109 at 23, FN 28 (citing *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268 (S.D. Fla. 1989). However, the *WJA* court held the protections of the NLRA made no distinction between foreign

| Federal Agency Defendants' Reply in Support | U.S. Department of Justice, Civil Division |
| of Motion to Dismiss | Office of Immigration Litigation |
| Case No. 2:17-cv-00218-RSM-JPD | P.O. Box 868, Ben Franklin Station |
| | Washington, D.C. 20044 |
| 11 | (202) 305-4193 |

national employees and American citizen employees, so the Attorney General could not revoke work visas of foreign nationals, employed at the time a strike was started, to prevent them from working during a strike. *Id.* at 1278. Plaintiff in the instant case does not claim the rights of an employee, he claims a right to seek employment. The NLRA, and thus the holding of *WJA*, would not apply to him.

Finally, Plaintiff asserts a property interest in employment authorization based on *Newman v. Sathyavaglswaran*, a case about an individual's right to possess the body of a deceased family member. 287 F.3d 786, 797 (9th Cir. 2002). The court found a full property interest in the next of kin, despite California law *labeling the existing interest* of the next of kin as "quasi property," because "the identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state." *Id*. The only issue was whether an existing right to a cadaver should be called "property" or "quasi property." Plaintiff incorrectly suggests the court *created* a property right by implication where none was indicated.[9]

Plaintiff fails to establish any entitlement to continued work authorization, whether by express promise, by mutual understanding, or by custom or law. Federal Agency Defendants made a discretionary decision to pursue removal by issuing an NTA. Plaintiff points to nothing in his DACA grant letter, the DACA Memo, FAQs, or public statements that supports his assertion that his employment authorization was in any way established as an entitlement protected from termination.

WHEREFORE, the Federal Agency Defendants respectfully request that all claims against them be dismissed.

---

[9] Plaintiff's citation to *Whaley v. Cty. of Tuscola*, 58 F.3d 1111 (6th Cir. 1995) for the same proposition faces the same infirmity, as it is a nearly identical case about the proper terminology to describe the right of next of kin to a deceased body.

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

12

| | | |
|---|---|---|
| 1 | DATED: August 18, 2017 | Respectfully submitted, |
| 2 | CHAD A. READLER | */s/ Jeffrey S. Robins* |
| 3 | Acting Assistant Attorney General | JEFFREY S. ROBINS<br>Assistant Director |
| 4 | WILLIAM C. PEACHEY<br>Director | U.S. Department of Justice<br>Civil Division |
| 5 | | Office of Immigration Litigation<br>District Court Section |
| 6 | | P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044 |
| 7 | | Phone: (202) 616-1246<br>Fax: (202) 305-7000 |
| 8 | | Email: jeffrey.robins@usdoj.gov |
| 10 | | AARON S. GOLDSMITH<br>Senior Litigation Counsel |
| 12 | | Attorneys for Defendants |

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

13

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document should automatically be served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jeffrey S. Robins*
Jeffrey S. Robins
Assistant Director
U.S. Department of Justice

Federal Agency Defendants' Reply in Support
of Motion to Dismiss
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

14