The Hon. Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

DANIEL RAMIREZ MEDINA,
                     Plaintiff,

        v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
                     Defendants.

Case No. 2:17-cv-00218-RSM-JPD

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 122]**

ORAL ARGUMENT REQUESTED

        Plaintiff Daniel Ramirez Medina ("Plaintiff") is challenging the Department of Homeland Security's ("DHS") decision to terminate his deferred action in the form of Deferred Action for Childhood Arrivals ("DACA") by issuing a Notice to Appear ("NTA") initiating removal proceedings against him. *See* Dkt. No. 78, Second Amend. Complaint (Count Nos. 1 & 2). Now, more than one year after originally commencing this action, and after an immigration judge has ordered him removed from the United States, Plaintiff seeks a preliminary injunction. The Court should deny Plaintiff's motion. The Court should not award Plaintiff such extraordinary relief where he has inexplicably sat on his rights numerous times over the past year, his allegations of injury are unsupported, and where he cannot show that the relief he seeks would return him to the status quo ante. The Court should also deny Plaintiff's motion because he cannot demonstrate

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

1

that he is likely to succeed on the merits of his claims. Indeed, while the Court may find that Defendants' termination of Plaintiff's DACA falls outside U.S. Citizenship and Immigration Service's ("USCIS") Standard Operating Procedures ("SOP"), Plaintiff is unable to make that showing with regard to the termination of his employment authorization, nor that Defendants' actions have prejudiced Plaintiff – as any additional process will not necessarily afford Plaintiff advance notice and an opportunity to respond, and the result of any additional process will likely be the same for Plaintiff.

## BACKGROUND

Over one year ago, on February 13, 2017, Plaintiff commenced this action with a Petition for a Writ of Habeas Corpus. Dkt. No. 1, and filed a first amended habeas petition and complaint for declaratory and injunctive relief on February 21, 2017, which included no claims under the Administrative Procedure Act ("APA"). Dkt. No. 41. Federal Agency Defendants moved to dismiss. Dkt. No. 52. Plaintiff subsequently clarified that he was not challenging the decision to pursue his removal by issuing a Notice to Appear ("NTA") that terminated his DACA, but was only challenging his arrest and detention that occurred prior to the decision to commence removal proceedings. See Dkt. No. 64 at 31-32. Relying, in part of this representation, this Court issued a Report and Recommendation ("R&R") that recommended denial of the motion to dismiss but that declined to recommend Plaintiff's immediate release. *Id.* at 45-46. The district court ordered staggered briefing on objections to this R&R. Dkt. No. 67. On March 24, 2017, the district court ruled that Plaintiff was not entitled to an order from the Court ordering his immediate release. Dkt. No. 69. The next day, Plaintiff requested a bond hearing before an immigration judge, which occurred the following day. Dkt. No. 72. At that time, the immigration judge set bond, and Plaintiff was subsequently released after posting his bond. *Id.*

On April 25, 2017, the district court ordered Plaintiff to file and serve his proposed Second Amended Complaint and that any "further briefing or action in connection with Respondents' Objections to the Report and Recommendation is suspended, and the Clerk shall remove the R&R from the Court's motion calendar." Dkt. No. 77 at ¶¶ 2, 3. As a result, briefing on the objections to the R&R was never completed and this matter was rendered moot by

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

2

Plaintiff's Second Amended Complaint, which raised different claims than those raised in the First Amended Complaint. *See* Dkt. No. 78 (Prayer for Relief) (arguing the termination of Plaintiff's DACA and employment authorization document ("EAD") were in violation of the APA and seeking, inter alia, injunctive and declaratory relief in the form of reinstating his DACA and EAD, and also raising claims for individual liability for alleged constitutional torts).

Defendants moved to dismiss Plaintiff's second amended complaint on June 26, 2017, and simultaneously filed the certified administrative records for USCIS and U.S. Immigration and Customs Enforcement ("ICE"). *See* Dkt. Nos. 90, 92, 93. Plaintiff voluntarily dismissed his claims against individual capacity Defendants, leaving just his claims under the APA. *See* Dkt. No. 112. Following a hearing, the Court denied Defendants' motion to dismiss on November 8, 2017. Dkt. No. 116. Defendants answered the second amended complaint on December 6, 2017. Dkt. No. 119.

On January 17, 2018, an Immigration Judge ordered Ramirez removed from the United States. *See* Dkt. No. 122 at 8. On information and belief, Plaintiff has appealed that removal order to the Board of Immigration Appeals ("BIA").

Plaintiff now asks the Court to issue a preliminary injunction restoring his DACA and employment authorization pending a decision on the merits. *See* Dkt. No. 122.

## ARGUMENT

### I.   Standard of Review

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As a result, it is generally inappropriate at the "preliminary-injunction stage to give a final judgment on the merits." *Id.*; *see Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) (holding that "judgment on the merits in the guise of preliminary relief is a highly inappropriate result").

An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 142 (2010). A plaintiff

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

3

1   seeking a preliminary injunction "must establish" that: (1) it is likely to succeed on the merits of

2   its claims; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of

3   equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

4   Preliminary injunctive relief is an extraordinary remedy never awarded as of right, *id.*, and the

5   party seeking such relief bears the burden of establishing the prerequisites to this extraordinary

6   remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). In a mandatory

7   injunction request such as this, where Plaintiffs seek to order the Government to act, a moving

8   party "must establish that the law and facts *clearly favor* [their] position, not simply that [they]

9   [are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

10           To fulfill the "irreparable harm" requirement, the moving party "must do more than

11   merely allege imminent harm," but "must demonstrate immediate threatened injury." *Associated*

12   *Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir.

13   1991). Delay in seeking relief may undercut the possibility of irreparable harm. *Lydo Enters.,*

14   *Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984) (citation omitted) ("[a] preliminary

15   injunction is sought upon the theory that there is an urgent need for speedy action to protect the

16   plaintiff's rights. By sleeping on its rights, a plaintiff demonstrates the lack of need for speedy

17   action . . . . "); *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676393, at

18   *4 (W.D. Wash. July 1, 2009) (three month delay), citing *Valeo Intellectual Prop., Inc. v. Data*

19   *Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (four month delay); *but see Bundy*

20   *Am., LLC v. Hawkeye Transportation*, No. C09-817Z, 2009 WL 10676371, at *6–7 (W.D. Wash.

21   Dec. 1, 2009) (finding ten-month delay to be reasonable under the circumstances involving

22   breach of covenant not to compete).

23   ## II.    Plaintiff Has Not Demonstrated Irreparable Harm to Justify a Preliminary

24          Injunction more than One Year after Initiating Suit.

25           The Court should deny Plaintiff's motion for a preliminary injunction ordering his DACA

26   and employment authorization reinstated. That Plaintiff has waited more than one year since

27   initiating suit to bring this motion undercuts his ability to demonstrate that he faces an immediate

28   threatened injury that must be addressed by this Court before the merits are decided. *Lydo*

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

4

1  *Enters., Inc.*, 745 F.2d at 1213. Plaintiff provides no viable explanation for this delay, nor are the

2  injuries that Plaintiff alleges sufficient to justify a preliminary injunction.[1] Because Plaintiff has

3  incurred numerous of the irreparable injuries he alleges for over the past year and has

4  specifically not sought injunctive relief, Plaintiff can no longer establish the immediacy of the

5  injuries that he alleges and any relief that Plaintiff obtains should only come after a ruling on the

6  merits.

7         Indeed, the main thrust of Plaintiff's motion is his allegation that he cannot benefit from

8  the Northern District of California's preliminary injunction enjoining the Government's orderly

9  wind-down of the DACA policy. *See* Dkt. No. 122 at 1-2; 22-23. There are two problems with

10  this contention. First, Mr. Ramirez never sought a preliminary injunction when the wind-down of

11  the DACA policy was first announced. Second, Plaintiff may benefit from that injunction now in

12  place, as he may file a new initial DACA request. *See* Pltf's Exhibit C, Dkt. No. 122-1 at 38 ("If

13  you previously received DACA and your DACA expired before Sept. 5, 2016, or your DACA

14  was previously terminated at any time, you cannot request DACA as a renewal (because renewal

15  requests typically must be submitted within one year of the expiration date of your last period of

16  deferred action approved under DACA), but may nonetheless file a new initial DACA request in

17  accordance with the Form I-821D and Form I-765 instructions."). Additionally, Plaintiff also

18  could have sought employment authorization based on his then pending application for

19  cancellation of removal in his removal proceedings, *see* 8 C.F.R. 274a.12(c)(10), but failed to do

20  so. Thus, even this purported "new" development does not change the fact that Plaintiff has not

21  sought a preliminary injunction to address alleged ongoing irreparable harms for over one-year.

22  Additionally, at least in part, rather than take steps to address his alleged injuries, including his

23  fear and anxiety, Plaintiff has taken no affirmative action.

24         Plaintiff also alleges irreparable injury because "the deprivation of constitutional rights

25  'unquestionably constitutes irreparable injury.'" Dkt. No. 122 at 21 (citations omitted). However,

---

[1] Plaintiff's continued allegations regarding the lawfulness of his detention are similarly affected by Plaintiff having sat on his rights. As Defendants previously argued, "Not only did Petitioner fail to request a bond hearing, but when the immigration court scheduled a bond hearing, his attorneys contacted the immigration court and requested that it be cancelled." Dkt. No. 52 at 2.

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

5

1   even if the Court found a violation of Plaintiff's Fifth Amendment due process rights, the Court

2   here must consider the nature the injury to Plaintiff. Here, unlike in *Hernandez v. Sessions*, 872

3   F.3d 976, 994 (9th Cir. 2017), or *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012),

4   Plaintiff is not detained. Rather, where the nature of Plaintiff's constitutional claim is procedural,

5   and where the remedy is remand to USCIS for further proceedings, the nature of Plaintiff's

6   constitutional claim is distinguishable, and the Court should not find that the possible or likely

7   deprivation of Plaintiff's constitutional rights should directly result in a finding of irreparable

8   injury.

9        In this regard, Plaintiff's alleged injuries based on the accrual of unlawful presence,

10  alleged denial of access to public benefits, inability to earn income due to a lack of employment

11  authorization, and harm by separation from family, are insufficient to support Plaintiff's motion

12  for preliminary injunction. First, at the time that Plaintiff initially received DACA in 2013, he

13  had already accrued more than one year of unlawful presence; thus, the restoration of his DACA

14  has no impact on the effect of the unlawful presence he already accrued. *See* 8 U.S.C.

15  §§ 1181(a)(9)(B)(i)(II) (ten-year bar to admission for those with over one year of unlawful

16  presence); 1182(a)(9)(B)(iii)(I) (excepting minors from the accrual of unlawful presence).

17       Second, while Plaintiff alleges that he can no longer access the same public benefits that

18  other DACA recipients with employment authorization may also be able to access, Plaintiff has

19  not established that he received such benefits prior to the termination of his DACA. Accordingly,

20  although Plaintiff is correct that he currently lacks the opportunity to access certain public

21  benefits, he fails to establish that his receiving those benefits would be a return to the status quo.

22  The same goes for Plaintiff's claimed injury based on his present lack of employment

23  authorization. While Plaintiff does state that he wants to be able to work and support his family,

24  Plaintiff has never claimed to have been working at the time of his arrest. Rather, Plaintiff

25  himself states that he "left California and came to Washington to find work . . . I have been

26  looking for work ever since I got here." Dkt. No. 35-1 at ¶ 10. Moreover, as discussed further

27  below, where Plaintiff's employment authorization was subject to termination based on the

28  commence of removal proceedings and not specifically on the termination of his DACA, it is not

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

6

clear that Plaintiff can even succeed on the merits of his claims as they relate to employment authorization, and it is employment authorization on which Plaintiff's claim to other public benefits hinges, not DACA itself. Plaintiff is simply not entitled to employment authorization during his removal proceedings. *See* 8 C.F.R. § 274a.14(a)(1)(ii).

Plaintiff also cannot show that that the termination of his DACA impacts him by separating him from his family. In fact, he states that he "split [his] time between Washington and California to spend time with [his] brother and son." Dkt. No. 122-1 ¶ 3. Rather, this alleged harm stems from Plaintiff's fear that he "will be removed from the United States and taken away from [his] relatives and [his] son." *Id*. ¶ 2. Plaintiff's removal from the United States, however, is not at issue here, and Plaintiff has gone to great effort to distinguish the termination of his DACA from a challenge to his removal proceedings. *See* Dkt. No. at 14-15 ("Mr. Ramirez is challenging the non-discretionary actions taken at the time of his arrest and subsequent questioning at the Tukwila detention office and detention at the Northwest Detention Center, which led to the termination of his work authorization and DACA status."). If the Court were now to consider Plaintiff's potential removal from the United States, especially now that his removal order from an Immigration Judge is on appeal, the Court would be undermining its determination that 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g), did not work here to strip this Court of jurisdiction over Plaintiff's claims.[2]

Finally, where Plaintiff is a putative class member in a case pending before the U.S. District Court for the Central District of California in *Inland Empire Immigration Youth Collective, et al., v. Nielsen, et al*., No. 5:17-02048 (C.D. Cal.), and that Court has taken those plaintiffs' motions for class certification and preliminary injunctions under advisement after hearing today, the Court should refrain from ruling on Plaintiff's motion because an order certifying the class and enjoining the termination of class-members' DACA, would render Plaintiff's claims here subject to dismissal, or at the least address his alleged injuries.

---

[2] Defendants also note the recent decision of *Castellar v. Nielsen*, No. 17-CV-0491-BAS-BGS, 2018 WL 786742(S.D. Cal. Feb. 8, 2018), supports Defendants' previous arguments regarding the applicability of 8 U.S.C. §§ 1252(a)(5) and (b)(9) to channel jurisdiction over Plaintiff's claims to the courts of appeal.

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

**III.    Even after the Court's Denial of Defendants' Motion to Dismiss, Plaintiff Cannot Establish a Likelihood of Success on the Merits.**

**A. Plaintiff Cannot Succeed on the Merits of his Employment Authorization Termination Claim.**

Plaintiff is unable to succeed on the merits of his claims with regard to the termination of his employment authorization because, per agency regulations, employment authorization is automatically revoked upon the institution of removal proceedings, and there is sufficient process for Plaintiff to reapply for employment authorization once in removal proceedings. Employment authorization based on 8 C.F.R. § 274a.12(c), including employment authorization based on deferred action, is subject to automatic termination with the filing of an NTA with an immigration court. *See* 8 C.F.R. § 274a.14(a)(1)(ii); 8 C.F.R. §§ 1003.13, 1003.14. No notice or opportunity to respond is afforded to any deferred action recipient in this posture. *See, e.g.*, *Gupta v. Holder*, No. 6:11-CV-1731, 2011 WL 13174873 at *1 (M.D. Fla. Oct. 31, 2011) (denying challenge to automatic EAD termination). Because automatic EAD termination upon the institution of removal proceedings is not dependent on operation of the DACA SOP, Plaintiff's claims of harm regarding EAD loss must fail. Further, the DACA SOP instructs USCIS to defer to existing law and regulations where there is any conflict with the SOP. *See* Dkt. No. 16-24 at 17, DACA SOP Chapter One ("Any provision of the [INA] or 8 C.F.R. found . . . to be in conflict with this SOP will take precedence over the SOP.").

Furthermore, Plaintiff is not prejudiced by the termination of his EAD. *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005). Under DHS regulations, an individual whose EAD has been terminated due to the institution of removal proceedings may reapply for an EAD if he or she becomes eligible again under a category of 8 C.F.R. 274a.12(c). Only if employment authorization is granted again would the individual then be eligible to apply to their state authority for a driver's license or Social Security card. *See Texas v. United States*, 809 F.3d 134, 149 (5th Cir. 2015) (an individual's access to a Social Security number is predicated on possession of EAD, not DACA). Thus, were the Court to act to reinstate Plaintiff's DACA now or in a final judgment, Plaintiff could again request employment authorization on the basis of

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

8

DACA. Accordingly, the peripheral benefits Plaintiff cites to illustrate the urgency of the relief he seeks are two steps removed from the relief this Court can grant.

### B.  Plaintiff Cannot Succeed on the Merits of his DACA Termination Claim.

First, Defendants' reliance on the NTA that ICE issued to Plaintiff is a reasonable basis for terminating DACA. Here, implicit in USCIS's issuance of a Notice of Action was the reliance that ICE had issued Plaintiff an NTA, with the knowledge that he had DACA, based on ICE's determination that Plaintiff no longer warranted a favorable exercise of prosecutorial discretion in the form of DACA. USCIS's reliance is supported by the proposition that the charges listed in an NTA are not dispositive of the reasons for issuing an NTA.  DHS is under no obligation to charge an individual with anything more than unlawful presence. *Addy v. Sessions*, 696 F. App'x 801, 804 (9th Cir. 2017) (rejecting argument that petitioner should have been charged with removability under a different statute, because "[t]he Attorney General has prosecutorial discretion over the initiation of removal proceedings, and that discretion is not reviewable."). Rather, the decision to issue an NTA is based on the immigration officer's experience and information, and – most importantly – his or her discretion. *See Hernandez v. Gonzales*, 221 F. App'x 588, 589–90 (9th Cir. 2007) ("Absent evidence to the contrary, we presume that the immigration officers properly discharged their duties when issuing Hernandez's NTA.") (citations omitted). Notably, an NTA also need not include charges used to support the denial of relief from removal. *Salviejo–Fernandez v. Gonzales*, 455 F.3d 1063, 1066 (9th Cir. 2006) (denying due process claim where the BIA found petitioner ineligible for cancellation of removal based on a conviction not alleged in the NTA). Accordingly, there is no legal support for Plaintiff's argument that Defendants' reliance on unlawful presence was arbitrary and capricious.

Second, Defendants' actions are supported by Plaintiff's own statements. While Plaintiff brings in additional evidence to argue that Defendants' findings regarding his gang affiliations were incorrect, the ultimate question under APA review is whether substantial evidence before the agency supported the agency determination. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation and internal quotations marks omitted) (defining substantial evidence for

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

9

purposes of APA review as – "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Here, while Plaintiff takes issues with the characterization of his tattoo, Plaintiff's own statements in response to questioning support such a substantial evidence finding. Notably, when asked about whether he is or was involved with gang activity, Plaintiff did not respond simply with a no, the record reflects that he responded "No not no more." ICE Certified Administrative Record at 25. Plaintiff then stated that he "used to hang out with the Sureno's in California," "fled California to escape from the gangs," and "still hangs out with the Paizas in Washington State." *Id*. Those statements demonstrate substantial evidence to support Defendants' findings because it was reasonable for Defendants to interpret Plaintiff's statement about "hanging out" with the Surenos and Paizas based on his qualified response regarding his involvement with gang activity. That Plaintiff has experts that contest the nature of his tattoo, and that Plaintiff was not identified by background checks regarding gang membership does not undermine the reasonableness of Defendants' determination based on Plaintiff's own statements during subsequent questioning.

Third, Plaintiff's argument that he is not subject to an egregious public safety ("EPS") finding also fails. Plaintiff incorrectly reads the reference to "specified crime" in the SOP's definition of EPS to exclude investigation of gang membership or gang affiliation, because such conduct does not constitute a "crime." *See* Dkt. No. 122 at 14, n.10. Although gang membership is not a crime, it is specifically included as an issue that rises to the level of an EPS concern as EPS is defined in the 2011 NTA Memo which the DACA SOP directly refers to, and there is nothing to suggest that the EPS definition for purposes of the DACA SOP seeks to limit the EPS definition contained in the 2011 NTA guidance. *See, e.g.*, Dkt. No. 78-2 at 91 ("The scope of criminal offenses deemed to be EPS are described in the November 7, 2011, NTA memorandum and the accompanying MOA between USCIS and ICE."). And here, ICE's questioning of Plaintiff and his responses to those questions would support the conclusion that Plaintiff falls within the SOP's definition of EPS based on ICE's own investigation of his newly admitted conduct. *See* Dkt. No. 109-2 at 5 (Defining EPS as "[a]ny case where routine systems and

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

10

1  background checks indicate that an individual is under investigation for . . . crimes listed in the

2  November 7, 2011, [NTA] memorandum. . . .").

3       Finally, even if the Court found that Defendants violated the DACA SOP by considering

4  his DACA to have terminated automatically as a result of NTA issuance, Plaintiff cannot show

5  the necessary prejudice to prevail on this claim. Rather, for a court to intervene under *United*

6  *States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) for violation of a procedural rule,

7  Plaintiff must show prejudice from that violation. *See, e.g., Otero v. Kelly*, No. CV 16-090-TUC-

8  CKJ, 2017 WL 3049356, at *7 (D. Ariz. July 18, 2017), citing *United States v. Hernandez-Rojas*,

9  617 F. 2d 533, 535 (9th Cir. 1980), *cert. denied*, 449 U.S. 864 (1980) (INS' failure to follow

10 regulations requiring advising an arrested alien of his right to speak to his consul was not

11 prejudicial and thus not a ground for challenging the conviction); *Drakes Bay Oyster Co. v.*

12 *Jewell*, 747 F.3d 1073, 1090-91 (9th Cir. 2013) (citations omitted), *cert. denied*, 134 S. Ct. 2877

13 (2014) ("Relief is available under the APA only for 'prejudicial error. . . .'"); *Alto v. Black*, 738

14 F.3d 1111, 1127 (9th Cir. 2013) (stating that the relief available under the APA is "affirmation,

15 reversal or remand of the agency action"). Because Plaintiff would not necessarily be afforded

16 advance notice and an opportunity to respond to Defendants' intended termination of his DACA

17 on remand based on Defendants' EPS finding, Plaintiff cannot show prejudice from the process

18 he alleges was lacking in USCIS's automatic termination of his DACA.[3]

19      Plaintiff's constitutional claims regarding DACA termination fail for the same reason -

20 Plaintiff cannot show that the lack of additional process he seeks has prejudiced him. *See*

21 *Zolotukhin*, 417 F.3d at 1076; *Ali v. United States*, 849 F.3d 510, 515 (1st Cir. 2017) ("There is

22 no reason to think that, if an evidentiary hearing occurred, USCIS would not continue to rely on

23 its own official records contemporaneous to the 1999 interview, as well as Lewis' signature

24

---

25 [3] Plaintiff relies on an outdated version of the DACA SOP in support of his argument that DACA
   termination without notice is extremely rare. *See* Dkt. No. 122 at 3-4, citing Dkt. No. 78-6 (April
26 2013 DACA SOP). Plaintiff acknowledged this much when he filed his reply in support of his
   motion to dismiss, and attached selection from the August 2013 version of the SOP at Dkt. No.
27 109-2. That version of the SOP identifies two scenarios where DACA may be terminated without
   notice – where a DACA recipient is deemed an Egregious Public Safety Concern, or where a
28 DACA recipient is deemed an enforcement priority. *See* Dkt. No. 109-2 at 14-15.

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

11

affirming what appears to be her own handwritten statement . . . .").  Like in *Ali*, Plaintiff has not given any reason to think that additional process would result in a different outcome. Accordingly, Plaintiff cannot succeed on the merits of his due process claim because Plaintiff cannot show additional process likely to result in a different outcome of Defendants' exercise of discretion.

## IV.   The Remaining Preliminary Injunction Factors Favor Defendants.

Where the Government is the opposing party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants have strong interests in enforcing U.S. immigration laws effectively and consistent with the statutory removal scheme. *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 490 (1999) ("There is always a public interest in prompt execution of removal orders [to end] a continuing violation of United States law.").

Moreover, Plaintiff's effort to reinterpret DHS's consistent position regarding NTA issuance and DACA and EAD terminations would create absurd results. Requiring the reinstatement of DACA and employment authorization would be contrary to DHS regulations regarding the termination of employment authorization upon the institution of removal proceedings. Further, the efficacy of the additional process that Plaintiff seeks is questionable because DHS and its components have already exercised prosecutorial discretion to terminate Plaintiff's DACA by deciding instead to place him into removal proceedings – regardless of his original or asserted continued ability to meet the threshold criteria to request DACA. This interest is compounded by the fact that Plaintiff now has an order of removal from the immigration court that he has appealed to the Board of Immigration Appeals.

## CONCLUSION

For the aforementioned reasons, the Court should deny Plaintiff's motion for preliminary injunction.

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

12

DATED: February 26, 2018        Respectfully submitted,

CHAD A. READLER           */s/ Jeffrey S. Robins*
Acting Assistant Attorney General    JEFFREY S. ROBINS
                             Assistant Director
WILLIAM C. PEACHEY       U.S. Department of Justice
Director                      Civil Division
                             Office of Immigration Litigation
                             District Court Section
                             P.O. Box 868, Ben Franklin Station
                             Washington, D.C. 20044
                             Phone: (202) 616-1246
                             Fax: (202) 305-7000
                             Email: jeffrey.robins@usdoj.gov

                             Attorneys for Defendants

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

13

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 26, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document should automatically be served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*/s/ Jeffrey S. Robins*</u>
Jeffrey S. Robins
Assistant Director
U.S. Department of Justice

Opposition to Motion for Preliminary Injunction
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193