The Honorable Ricardo S. Martinez
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| Daniel Ramirez Medina, | CASE NO. 2:17-CV-00218-RSM-JPD |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, DKT. 122** |
| v. | ORAL ARGUMENT REQUESTED |
| U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | Noted for Consideration:  March 2, 2018 |
| Defendants. | |

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
  aprice@publiccounsel.org
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*
  ehadaway@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*
  jgabriel@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
  llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only*
401 East Peltason Drive, Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722


LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
  larry@tribelaw.com
Harvard Law School
*Affiliation for identification purposes only*
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
  ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


BARRERA LEGAL GROUP, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
  lcortes@barreralegal.com
JOHN C. BARRERA (SBN 47658), *pro hac vice*
  jbarrera@barreralegal.com
JOSE GARCIA (SBN 46518), *pro hac vice*
  jgarcia@barreralegal.com
19309 68th Avenue South, Suite R102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
  matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

Defendants' arguments that Mr. Ramirez is not entitled to a preliminary injunction have been rejected by every court to consider the issue of the government's termination of DACA status based on issuance of a Notice to Appear ("NTA").  Each such court has found that these former DACA holders are entitled to preliminary injunctive relief because they have been irreparably harmed by the deprivation of their DACA status and benefits, they are likely to succeed on the merits of their APA and constitutional claims, and the balance of equities and public interest are in their favor.

Mr. Ramirez's case is no different.  And, in fact, the harms faced by Mr. Ramirez because of his wrongful detention and the termination of his DACA and Employment Authorization Document ("EAD") are made worse because he cannot take advantage of the preliminary injunction recently issued by the Northern District of California ordering the government to maintain the DACA program for current recipients and to allow them to file renewal applications.  *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 2018 WL 339144, *27–29 (N.D. Cal. Jan. 9, 2018) (the "Injunction").

Mr. Ramirez has shown irreparable harm, and he is likely to succeed on his claims.  The balance of equities and the public interest are manifestly in his favor, particularly where the government has continually and wrongfully insisted, in the face of all contrary evidence, that Mr. Ramirez is a gang member.  This erroneous, bad-faith attempt at a *post hoc* justification for Mr. Ramirez's detention is contradicted by DHS's three prior findings that Mr. Ramirez is not a public safety concern, the government's multiple post-detention concessions of the same, and an Immigration Judge's recent affirmative finding that he is not in or affiliated with a gang.

Mr. Ramirez is entitled to a preliminary injunction restoring his DACA and EAD, and directing the government to process his renewal without regard to this erroneous conclusion.

A.   **Mr. Ramirez's motion is timely, particularly in light of his worsening harm and the** *Regents* **Injunction, and Defendants suffer no prejudice by its timing.**

Defendants try to distract from the irreparable harms they inflicted on Mr. Ramirez by arguing that he waited too long to seek injunctive relief after bringing suit.  Opp. 4–5.  But Defendants' claim that Mr. Ramirez "inexplicably sat on his rights numerous times over the past year" (*id.* at 1) is false, misleading, and nothing more than victim blaming—suggesting that Mr. Ramirez is to be held

responsible for Defendants' violation of their own policies and their trampling of his rights.  As Defendants and this Court know, Mr. Ramirez has spent the last year seeking release from detention and diligently defending himself against, and pursuing relief from, Defendants' unlawful actions, both in this Court and in his removal proceedings.  Indeed, litigating these actions—and trying to restore order in his life and provide for his young son in the wake of the chaos that the government created when it broke its promises to him—has understandably consumed Mr. Ramirez's attention from the moment he was unlawfully arrested and jailed.

Mr. Ramirez's decision to seek injunctive relief at this time does not reflect any undue delay, but rather the compounding, worsening nature of the harm he is suffering and the practical impact of developments in unrelated litigation.  On January 9, 2018, the Northern District of California issued the Injunction requiring the government to maintain the DACA program on a nationwide basis for current recipients, including allowing them to renew their DACA status.  *Regents*, 2018 WL 339144, at \*27–29; *see also Batalla Vidal v. Nielsen*, 2018 WL 834074, \*24–25 (E.D.N.Y. Feb. 13, 2018) (issuing parallel nationwide injunction).  But for Defendants' unlawful actions, Mr. Ramirez would be able to take advantage of the Injunction and seek renewal of his DACA status and accompanying EAD, which were due to expire on May 4, 2018,[1] just as all current DACA holders are currently able to do.  *See* Injunction at \*27 (requiring the government to "allo[w] DACA enrollees to renew their enrollments").

Mr. Ramirez filed his motion for injunctive relief less than one month after the Injunction issued in order to take advantage of this limited opportunity to extend his DACA benefits before the legal or political landscape shifts again so as to foreclose DACA holders' chance to renew their status.  And the *Batalla Vidal* court issued its parallel injunction just days after this Motion was filed.  Other courts have found no undue delay in analogous circumstances.  *Gonzalez Torres v. U.S. Dep't of Homeland Sec.*, 2017 WL 4340385, at \*7 (S.D. Cal. Sept. 29, 2017) (no undue delay where plaintiff sought relief 16 months after his DACA status was terminated where "[t]he precipitating event giving rise to the . . . action" was DHS's September 5, 2017 rescission of DACA); *see also Inland Empire–Immigrant Youth Collective v. Duke*, 2017 WL 5900061, at \*9 (C.D. Cal. Nov. 20,

---

[1]  *See* Dkt. 78-7 (DACA Approval Notice); Dkt. 93 (EAD) at 2.

2017) ("*Inland Empire I*") (eight-month delay after DACA revocation before filing suit did not preclude injunctive relief).

Moreover, Defendants' argument that Mr. Ramirez should have sought injunctive relief "when the wind-down of the DACA policy was first announced" in order to pursue renewal of his DACA status (*see* Opp. 5), is inconsistent with the government's own guidance and policy. First, USCIS "strongly encourages" DACA recipients *not* to seek renewal of their DACA status before the "recommended 150-120 day filing period" prior to expiration (*see* Dkt. 78-1, at 17–18 (USCIS DACA FAQs, Q50))—*i.e.*, beginning December 3, 2017 for Mr. Ramirez. Thus, Mr. Ramirez's failure to seek renewal before that date is not a "delay." Second, because Mr. Ramirez would have been ineligible to renew his DACA status after the government rescinded the DACA program in September 2017, *even if* his DACA status had been reinstated,[2] Mr. Ramirez cannot be said to have delayed seeking renewal during this four-month period. Mr. Ramirez did not "delay" by waiting to seek injunctive relief from which he could actually benefit.

Even if the timing of the motion could rightly be considered the result of delay—which it cannot—"delay is but a single factor to consider in evaluating irreparable injury," and "courts are 'loath to withhold relief solely on that ground.'" *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 977 (C.D. Cal. 2016), *aff'd*, 869 F.3d 848 (9th Cir. 2017) (delay of over one year did not preclude injunctive relief); *Bundy Am., LLC v. Hawkeye Transp.*, 2009 WL 10676371, at *6–7 (W.D. Wash. Dec. 1, 2009) (same for 10-month delay); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 999 F. Supp. 1388, 1391 (D. Or. 1997), *aff'd*, 150 F.3d 1374 (Fed. Cir. 1998) (same for over one-year delay). Moreover, "tardiness is not particularly probative" where, as here, a plaintiff experiences "ongoing, worsening injuries." *Arc of Cal.*, 757 F.3d at 990; *see also Inland Empire I*, 2017 WL 5900061, at *9.

Furthermore, Defendants have suffered no prejudice by the timing of Mr. Ramirez's motion.

---

[2]  *See* Supplemental Declaration of Nathaniel L. Bach ("Suppl. Bach Decl."), ¶ 2 (Mem. from Acting Sec'y of Homeland Sec. Elaine C. Duke, "Rescission of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'" (Sept. 5, 2017), at 5 (establishing that DHS will reject renewal requests from DACA recipients whose benefits will expire after March 5, 2018)).

And any supposed delay in seeking injunctive relief is immaterial where there is no prejudice to Defendants. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 & n.12 (9th Cir. 2013) (granting preliminary injunction and finding no prejudice to government from any delay); *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 508 (9th Cir. 1991) (finding six-month delay in seeking injunction did not bar relief where defendants did not show any harm by delay). Defendants are not harmed and have not been prejudiced in any way by the timing of this motion, nor do they claim to be.

Defendants first arbitrarily and capriciously arrested, jailed, and stripped Mr. Ramirez of his DACA status and work authorization just over a year ago, but the harms Mr. Ramirez has suffered are "inherently cumulative." *See Arc of Cal.*, 757 F.3d at 990. Since then, Mr. Ramirez spent more than six weeks in detention, followed by over ten months living with family, unable to earn an income because he lacks work authorization, leaving his family in financial insecurity that worsens by the day. Dkt. 122-1 ¶ 3 (Third Suppl. Decl. of Ramirez Medina). Throughout this time, Mr. Ramirez has suffered increasing fear and anxiety about his uncertain future, his potential separation from his family and young son, and his impending removal to a country that is not his home. *See id.* Under these circumstances of steadily compounding harms, the Motion would have been timely even without the recently issued Injunction, which only heightens the need for relief. *See Arc of Cal.*, 757 F.3d at 990–91 (delay seeking relief was "prudent rather than dilatory" in case of worsening harm).

## B.   Mr. Ramirez has suffered and is suffering *irreparable* harm, and Defendants do not demonstrate otherwise.

Defendants make the remarkable and completely unsupported assertion that Mr. Ramirez is unable to show that "Defendants' actions have prejudiced [him]." Opp. 2. The premise of their argument is that no matter what they have done to violate Mr. Ramirez's rights, and no matter how egregiously they violated their own Standard Operating Procedures ("SOP"), he would nevertheless find himself where he is at this moment, stripped of his DACA status and EAD, and with an order of removal.[3] Defendants' brazen assertions and circular logic fail. Defendants do not even attempt to argue that Mr. Ramirez is not experiencing certain of the harms for which he has provided evidentiary support, such as the severe and ongoing emotional distress that the government's actions

---

[3] The Immigration Court entered an order of removal on January 17, 2018. Dkt. 122-1 ¶ 3 (Third Suppl. Decl. of Ramirez Medina ¶ 2). Mr. Ramirez's timely appeal to the Board of Immigration Appeals is pending.

have caused him.  These facts alone establish irreparable harm.

Defendants' arguments for why Mr. Ramirez is not irreparably harmed boil down to the vague suggestion that if he was actually harmed, he must have acted sooner or differently to attempt to alleviate such harm.  Opp. 5 ("[R]ather than take steps to address his alleged injuries, including his fear and anxiety, Plaintiff has taken no affirmative action.").  That is factually inaccurate, inequitably heartless, and legally wrong.  And Defendants' theories about what Mr. Ramirez *should* have done make no sense in their own right.  Specifically, Defendants argue that (1) Mr. Ramirez never sought a preliminary injunction when DACA was rescinded, (2) he can take advantage of the Injunction by filing a new DACA request, and (3) he could have sought employment authorization earlier based on his then-pending application for cancellation of removal in his removal proceedings.[4]

These arguments suffer from the same flaw:  They all rely on the faulty premise that Mr. Ramirez can or should have taken various affirmative steps to remedy harm the government caused that were uncertain to provide him relief.[5]  Indeed, the government's argument (1*, supra*) that Mr. Ramirez should have "sought a preliminary injunction when the wind-down of the DACA policy was first announced" (Opp. 5), defies logic.  Even if he obtained an order restoring his DACA status, there was no ability to renew it after rescission (*see* Suppl. Bach Decl. ¶ 2 (Ex. A, at 5)), and Mr. Ramirez was not required to first challenge the government's rescission of the entire DACA program and then seek a separate order restoring his own DACA status:  Mr. Ramirez is not responsible for remedying the constitutional violations inflicted on him by the government.  As to the government's argument (2*, supra*) that Mr. Ramirez can take advantage of the Injunction by filing a new DACA request, the government undoubtedly would use its unsupported, dishonest claim that Mr. Ramirez is a gang member to deny such an application outright.  The Immigration Judge recognized as much at the March 28, 2017 bond hearing.  Dkt. 122-1 ¶ 2 (Bach Decl., Ex. A, at 5) (In discussion about Mr.

---

[4]  Defendants also argue that, because Plaintiff's EAD was subject to termination based on commencement of removal proceedings (and not on the termination of his DACA status), "it is not clear that Plaintiff can even succeed on the merits of his claims as they relate to employment authorization."  Opp. 6–7.  But this argument wrongly assumes that Mr. Ramirez would even be in removal proceedings had he not been unlawfully detained and had his DACA stripped.

[5]  Defendants layer on top their argument that, because any remedy here would be remand to USCIS for further proceedings, the Court should not find irreparable harm.  Opp. 6.  But that is not the remedy Mr. Ramirez seeks, and this Court can issue an order restoring Mr. Ramirez's benefits and mitigating the harm the government has inflicted.

Ramirez's intent to contest allegations of gang ties, Immigration Judge stated that "[i]t seems like the department has spoken."). And as to the argument (3, *supra*) that Mr. Ramirez could have sought employment authorization based on his earlier application for cancellation of removal, such a suggestion makes no sense where such an effort would not have been successful, as Mr. Ramirez's application for cancelation of removal was later denied and a removal order was issued against him in any event.[6]

Defendants also misstate Mr. Ramirez's status quo before his unlawful detention. The fact of having DACA status confers numerous benefits—financial and otherwise—and also comes with the profound peace of mind Mr. Ramirez was entitled to enjoy after disclosing to the government sensitive personal information, passing multiple DHS background checks, paying substantial fees, and staying out of trouble. *How* Mr. Ramirez chose to use certain of the benefits conferred by his DACA status and EAD is immaterial to the question of the *status quo ante*, and does not lessen the fact of the many harms Mr. Ramirez has experienced as a direct result of the government's wrongful actions. At the time of these actions, Mr. Ramirez had valid DACA status and EAD (and the right to their attendant benefits) and had not been erroneously labeled a gang member by the government. That is the status quo to which Mr. Ramirez must be returned.

And Mr. Ramirez is being harmed in numerous other ways, which the government does not meaningfully contest. Mr. Ramirez is also being harmed by (i) "the deprivation of [his] constitutional rights[, which] unquestionably constitutes irreparable injury"[7]; (ii) his inability to take advantage of the opportunity to renew his DACA status pursuant to the Injunction without the taint of the record created by government's detention—including the unsupported and erroneous conclusions regarding gang membership—which will naturally be used against him; (iii) the accrual of time for unlawful presence; (iv) the lost opportunity to take advantage of DACA's many other benefits (*e.g.*, paying into Social Security, retirement, and disability accounts, and ability to take advantage of

---

[6] Defendants do not challenge (much less reference) the fact that all courts to consider this issue have recognized that the harm caused by the unwarranted revocation of an individual's DACA status justifies preliminary injunctive relief. *Inland Empire*, 2017 WL 5900061, at *9–10; *Gonzalez Torres*, 2017 WL 4340385, at *6–7; *Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1343–44 (N.D. Ga. 2007); *see also* Injunction at *26.

[7] *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (internal quotation marks and citation omitted).

unemployment insurance, financial aid, and food assistance)[8]; and (v) the emotional harm that Mr. Ramirez is suffering, which is affecting his well-being.[9]  Any of these harms, including the constitutional violations, is sufficient standing alone, to support a preliminary injunction.

This is not a close call; Mr. Ramirez is experiencing multiple serious and irreparable harms that warrant a preliminary injunction.  This Court may not be able to turn back the clock and undo the government's illegal detention of Mr. Ramirez, but it can prevent the government from continuing to inflict serious and irreparable harm on Mr. Ramirez, and from taking advantage of that detention (*i.e.*, using the fruit of that poisonous tree against Mr. Ramirez) by granting preliminary injunctive relief.

## C.   *Inland Empire II* confirms that Mr. Ramirez is likely to succeed on his claims, is experiencing harm, and that preliminary injunctive relief is warranted.

The injunction issued days ago in *Inland Empire–Immigrant Youth Collective v. Nielsen* underscores that injunctive relief is warranted here, and that such relief is timely.  On February 26, 2018—the day Defendants submitted their opposition brief—the Central District of California certified a class that includes all DACA recipients "who, after January 19, 2017, have had or will have their DACA grant and employment authorization revoked without notice or an opportunity to respond, even though they have not been convicted of a disqualifying criminal offense."  *Inland Empire–Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *22 (C.D. Cal. Feb. 26, 2018) ("*Inland Empire II*").  As the government admits, that class includes Mr. Ramirez.  Opp. 7.

In the same order, the court preliminarily enjoined "Defendants' decisions after January 19, 2017 to terminate the DACA grants and EADs of class members, without notice, a reasoned explanation, or an opportunity to respond prior to termination," and ordered that "Defendants immediately will restore those individuals' DACA and EADs, subject to their original date of expiration."  *Inland Empire II* at *22.  As a member of the certified class, *see id.* at *4 & n.4,

---

[8]  It is of no moment that at the time his DACA status was wrongfully stripped that Mr. Ramirez may not have then been taking advantage of all of the public benefits afforded by DACA; the opportunity to do so is a key substantive right that DACA status conferred upon him, as is, more generally, the right to live freely without fear of unlawful detention of the sort that the government inflicted.

[9]  Dkt. 122-2 ¶¶ 3–4 (Third Suppl. Decl. of Ramirez Medina); *see Gonzalez Torres*, 2017 WL 4340385, at *6 ("The loss of DACA status also undermines one's sense of well-being and subjects Plaintiff to a constant threat of apprehension and possible removal from the only country he has called home."); *Coyotl*, 261 F. Supp. 3d at 1343–44.

1    Mr. Ramirez is entitled to receive the benefits of the *Inland Empire II* injunction —namely, the

2    immediate restoration of his DACA and EAD, *see id.* at *22–23.  Immediately after the government

3    filed its brief, Mr. Ramirez asked the government to confirm that it would provide the requested

4    relief, but the government responded that it is "continu[ing] to review" *Inland Empire II* and has not

5    yet determined its "intended course of action."[10]

6            Contrary to Defendants' assertion that this Court should refrain from ruling on Mr. Ramirez's

7    motion in light of the possibility of an injunction in *Inland Empire II* (*see* Opp. 7), that order

8    confirms that the relief he seeks is warranted and that the government's arguments are meritless.

9    Indeed, the *Inland Empire II* court rejected the same or similar arguments raised by Defendants here.

10   For example, the court concluded that deprivation of plaintiffs' earnings and job opportunities caused

11   by the loss of DACA status and accompanying employment authorization, as well as the "'loss of

12   opportunity to pursue [their] chosen profession[s,]' constitute[] irreparable harm," *Inland Empire II*,

13   2018 WL 1061408, at *20 (quoting *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153,

14   1165 (9th Cir. 2011)), particularly where plaintiffs' "earnings are used to support [their] famil[ies],"

15   *id.* (citing *Gonzalez Torres*, 2017 WL 4340385, at *6).  The court also found that plaintiffs' loss of

16   eligibility for benefits like driver's licenses—regardless of whether they had sought such benefits

17   before losing their DACA status—supported a finding of irreparable harm.  *Id.*  Furthermore, the

18   court concluded that the "emotional pain" to which the plaintiffs attested was "also a cognizable form

19   of irreparable injury."  *Id.* (citing *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 709–10 (9th Cir. 1998)

20   (noting that a plaintiff's injury is "emotional and psychological—and immediate" and that "[s]uch an

21   injury cannot be adequately compensated for by a monetary award after trial"); and *Coyotl*, 261

22   F. Supp. 3d at 1343–44 ("Plaintiff's emotional distress caused by this insecurity is another factor in

23   determining that Plaintiff will suffer irreparable injury without the entry of a preliminary injunction

24

25   _____

     [10]  Suppl. Bach Decl. ¶ 4 (E-mail from J. Robins to N. Bach (Mar. 2, 2018, 05:21 PST)).  To the extent that the
     government refuses to provide this relief to Mr. Ramirez, Defendants' argument that "an order certifying the class and

26   enjoining termination of class-members' DACA[] would . . . address [Plaintiff's] alleged injuries" is disingenuous.  *See*
     Opp. 7.  Moreover, even if the relief provided by *Inland Empire II* were comprehensive enough to restore the status quo

27   here—which, given the needs particular to Mr. Ramirez it seems not to be—the impact of *Inland Empire II* on Mr.
     Ramirez's claims here is premature and far from certain, as only a preliminary injunction has been issued but neither a
     permanent injunction nor final judgment on the merits.  Therefore, this Court retains the ability to and should issue the

28   injunctive relief to remedy the harms the government has inflicted on Mr. Ramirez.

1  which compels Defendants to comply with DHS's SOP prior to denying Plaintiff her application to

2  renew her DACA status or terminating that status.")).  Each of these determinations supports the

3  finding that Mr. Ramirez has experienced—and continues to experience—irreparable harm.

4      The findings in *Inland Empire II* also eviscerate the government's argument that Mr. Ramirez

5  is unlikely to succeed on his claims here.  Indeed, the government's arguments as to why those

6  plaintiffs' APA claims would fail were rejected by the *Inland Empire II* court, which found that

7  plaintiffs were likely to succeed on their APA claim:  *i.e.*, that the government's termination of

8  DACA based on issuance of an NTA was arbitrary and capricious and contrary to law.  2018 WL

9  1061408, at *17–19 ("[T]he Court agrees that 'given that the filing of an NTA against a DACA

10  applicant . . . does not render the individual ineligible for the program, DHS' practice of

11  automatically terminating DACA on this basis is arbitrary and irrational.'") (citation omitted).

12      Defendants' arguments here regarding Mr. Ramirez's likelihood of success on the merits do

13  not compel a different conclusion than *Inland Empire II*'s, as they rely on a *post hoc* justification for

14  termination of his DACA based on an argument that he would be subject to an Egregious Public

15  Safety ("EPS") finding.  Opp. 10–11.  But that argument ignores the record before this Court and the

16  findings that *Inland Empire II* made about the government's conduct vis-à-vis Mr. Ramirez, all of

17  which support Mr. Ramirez's Motion.  For example, the *Inland Empire II* court observed that "the

18  evidence provided by Plaintiffs in the form of arrest records and declarations creates at least the

19  plausible suggestion that Defendants are 'attempt[ing] to rely on improper post hoc rationalizations,'"

20  and that "[t]he same inference applies to proposed class members Abonza Lopez and [Ramirez]

21  Medina, both of whom, Plaintiffs maintain, have *not* committed disqualifying criminal offenses and

22  are thus proper class members."  2018 WL 1061408, at *6 (citation omitted).

23      The court also noted that "Defendants do not suggest, and there is no indication in the record,

24  that either the named Plaintiffs *or any of the proposed class members* received an NTA on the basis

25  of an EPS determination."  *Inland Empire II* at *11 (emphasis added).  This judicial finding—in

26  addition to the previously noted multiple occasions on which Mr. Ramirez was found not to be a

27  public safety concern (including the government's own concession) (*see* Mot. 4–5)—undermines

28  Defendants' unsupported position here that Mr. Ramirez was (or even could have been) classified as

EPS, and demonstrates that this is simply Defendants' *post hoc* attempt to justify their unlawful actions.

**D.      The balance of equities and public interest favor Mr. Ramirez.**

The government argues that the public interest weighs in its favor because it has "strong interests in enforcing U.S. immigration laws effectively and consistent with the statutory removal scheme."  Opp. 12.  But there is no public interest in the government violating its own prescribed immigration policies as it has done here by failing to issue a Notice of Intent to Terminate and failing to consult with the ICE Office of Chief Counsel when it supposedly believes an individual is a threat to national security or public safety.  Mot. 3–4.

Between Defendants, who wrongfully detained Mr. Ramirez and stripped him of his benefits in violation of their own SOP, and Mr. Ramirez, who was wrongfully detained, erroneously labeled a gang member despite the weight of contrary evidence, and continues to experience numerous harms as described herein, the balance of equities and public interest manifestly lies with Mr. Ramirez.  As described above, the other courts to consider similar cases are in accord.

**E.      The Court should grant the preliminary injunction, including enjoining Defendants from considering their unsupported determination of gang affiliation.**

The *Inland Empire II* injunction provides *some* of the relief necessary for Mr. Ramirez (restoration of his DACA and EAD), but not all that is required to redress his injuries caused by the government.  In particular, it does not guarantee that Defendants will accept and adjudicate Mr. Ramirez's DACA renewal application (*see Inland Empire II* at *22–23), much less that Defendants will process his renewal application fairly and without regard to the unsupported allegation of gang affiliation to which they have clung to so fiercely in this case—though never with evidentiary support.  It is critical that the government not be able to use its unsupported and false conclusions about gang membership against Mr. Ramirez in processing his renewal applications, particularly in light of the Immigration Judge's finding at the January 17, 2018 hearing that Mr. Ramirez was not in or associated with a gang.  Suppl. Bach Decl. ¶ 3 (Jan. 17, 2018 Tr. of Oral Decision of I.J., at 9 ("[T]he court finds the Respondent was not in a gang, nor associated with one.")).  Otherwise, Mr. Ramirez would find himself back where he is now, wrongfully deprived of his DACA and EAD

stemming from his initial illegal arrest and false claims by the government.

The government should be held to account for its initial illegal acts, which have directly led to Mr. Ramirez's current predicament. Accordingly, *Inland Empire II* underscores both the merits of Mr. Ramirez's Motion and the need for this Court to grant Mr. Ramirez specific relief particular to the government's violations of his rights.[11]

\*     \*     \*

For the reasons set forth above and in his Motion for Preliminary Injunction, Mr. Ramirez respectfully requests that the Court award provisional relief directing the government to restore his DACA status and work authorization pending a decision on the merits, and to process his DACA renewal application without regard to the unsupported allegation of gang affiliation.

DATED:      March 2, 2018
            Seattle, Washington

Respectfully submitted,

 /s/ *Theodore J. Boutrous, Jr.*
GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*


 /s/ *Mark D. Rosenbaum*
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*


Attorneys for Plaintiff

---

[11] Plaintiff is filing with this reply an amended proposed order to address these additional requirements to restore the status quo.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document should automatically be served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Theodore J. Boutrous, Jr.*

The Honorable Ricardo S. Martinez
Chief United States District Judge

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

10

11

CASE NO. 2:17-CV-00218-RSM-JPD

12

Daniel Ramirez Medina,

**SUPPLEMENTAL DECLARATION OF
NATHANIEL L. BACH IN SUPPORT OF
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

13

Plaintiff,

14

v.

15

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

16

17

18

Defendants.

19

20

21

22

23

24

25

26

27

28

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
  aprice@publiccounsel.org
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*
  ehadaway@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*
  jgabriel@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

SUPPLEMENTAL DECLARATION OF N. BACH                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD

I

LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
  llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only*
401 East Peltason Drive, Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722


LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
  larry@tribelaw.com
Harvard Law School
*Affiliation for identification purposes only*
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
  ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


BARRERA LEGAL GROUP, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
  lcortes@barreralegal.com
JOHN C. BARRERA (SBN 47658), *pro hac vice*
  jbarrera@barreralegal.com
JOSE GARCIA (SBN 46518), *pro hac vice*
  jgarcia@barreralegal.com
19309 68th Avenue South, Suite R102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
  matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

I, Nathaniel L. Bach, declare as follows:

1.  I am an attorney admitted to practice law *pro hac vice* before this Court.  I am an associate at the law firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys responsible for the representation of Daniel Ramirez Medina ("Mr. Ramirez") in the above-captioned action. I submit this declaration in support of Mr. Ramirez's Motion for Preliminary Injunction.  The following facts are within my personal knowledge and, if called and sworn as a witness, I would testify competently to these facts.

2.  Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Memorandum from Acting Secretary of Homeland Security Elaine C. Duke entitled "Rescission of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children,'" dated September 5, 2017, and available at https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca.

3.  Attached hereto as <u>Exhibit B</u> is a true and correct copy of portions of the unofficial transcript of the oral decision of Immigration Judge Brett Parchert in the removal proceedings held in *In the Matter of Daniel Ramirez-Medina*, No. A 207-028-995, in Immigration Court in Seattle, Washington, on January 17, 2018.

4.  Attached hereto as <u>Exhibit C</u> is a true and correct copy of an e-mail sent by Defendants' Counsel Jeffrey S. Robins to Plaintiff's Counsel Nathaniel L. Bach, dated March 2, 2018, at 5:21 AM PST.

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct, and that I executed this Declaration on March 2, 2018, in Los Angeles, California.

/s/        *Nathaniel L. Bach*

Nathaniel L. Bach

SUPPLEMENTAL DECLARATION OF N. BACH
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I–II

EXHIBIT A



🇺🇸 Official website of the Department of Homeland Security



**U.S. Department of Homeland Security**

## Archived Content

In an effort to keep DHS.gov current, the archive contains outdated information that may not reflect current policy or programs.

# Memorandum on Rescission Of Deferred Action For Childhood Arrivals (DACA)

**Release Date:** September 5, 2017

**MEMORANDUM FOR:**

James W. McCament
Acting Director
U.S. Citizenship and Immigration Services

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

Kevin K. McAleenan
Acting Commissioner
U.S. Customs and Border Protection

Joseph B. Maher
Acting General Counsel

Ambassador James D. Nealon
Assistant Secretary, International Engagement

Julie M. Kirchner
Citizenship and Immigration Services Ombudsman

**FROM:**

Elaine C. Duke
Acting Secretary

**SUBJECT:**

**Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"**

This memorandum rescinds the June 15, 2012 memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," which established the program known as Deferred Action for Childhood Arrivals ("DACA"). For the reasons and in the manner outlined below, Department of Homeland Security personnel shall take all appropriate actions to execute a wind-down of the program, consistent with the parameters established in this memorandum.

## Background

The Department of Homeland Security established DACA through the issuance of a memorandum on June 15, 2012. The program purported to use deferred action—an act of prosecutorial discretion meant to be applied only on an individualized case-by-case basis—to confer certain benefits to illegal aliens that Congress had not otherwise acted to provide by law.[1] (#_ftn1) Specifically, DACA provided certain illegal aliens who entered the United States before the age of sixteen a period of deferred action and eligibility to request employment authorization.

On November 20, 2014, the Department issued a new memorandum, expanding the parameters of DACA and creating a new policy called Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA"). Among other things—such as the expansion of the coverage criteria under the 2012 DACA policy to encompass aliens with a wider range of ages and arrival dates, and lengthening the period of deferred action and work authorization from two years to three—the November 20, 2014 memorandum directed USCIS "to establish a process, similar to DACA, for exercising prosecutorial discretion through the use of deferred action, on a case-by-case basis," to certain aliens who have "a son or daughter who is a U.S. citizen or lawful permanent resident."

Prior to the implementation of DAPA, twenty-six states—led by Texas—challenged the policies announced in the November 20, 2014 memorandum in the U.S. District Court for the Southern District of Texas. In an order issued on February 16, 2015, the district court preliminarily enjoined the policies nationwide.[2] (# ftn2) The district court held that the plaintiff states were likely to succeed on their claim that the DAPA program did not comply with relevant authorities.

The United States Court of Appeals for the Fifth Circuit affirmed, holding that Texas and the other states had demonstrated a substantial likelihood of success on the merits and satisfied the other requirements for a preliminary injunction.[3] (# ftn3) The Fifth Circuit concluded that the Department's DAPA policy conflicted with the discretion authorized by Congress. In considering the DAPA program, the court noted that the Immigration and Nationality Act "flatly does not permit the reclassification of millions of illegal aliens as lawfully present and thereby make them newly eligible for a host of federal and state benefits, including work authorization." According to the court, "DAPA is foreclosed by Congress's careful plan; the program is 'manifestly contrary to the statute' and therefore was properly enjoined."

Although the original DACA policy was not challenged in the lawsuit, both the district and appellate court decisions relied on factual findings about the implementation of the 2012 DACA memorandum. The Fifth Circuit agreed with the lower court that DACA decisions were not truly discretionary,[4] (# ftn4) and that DAPA and expanded DACA would be substantially similar in execution. Both the district court and the Fifth Circuit concluded that implementation of the program did not comply with the Administrative Procedure Act because the Department did not implement it through notice-and-comment rulemaking.

The Supreme Court affirmed the Fifth Circuit's ruling by equally divided vote (4-4).[5] (# ftn5) The evenly divided ruling resulted in the Fifth Circuit order being affirmed. The preliminary injunction therefore remains in place today. In October 2016, the Supreme Court denied a request from DHS to rehear the case upon the appointment of a new Justice. After the 2016 election, both parties agreed to a stay in litigation to allow the new administration to review these issues.

On January 25, 2017, President Trump issued Executive Order No. 13,768, "Enhancing Public Safety in the Interior of the United States." In that Order, the President directed federal agencies to "[e]nsure the faithful execution of the immigration laws . . . against all removable aliens," and established new immigration enforcement priorities. On February 20, 2017, then Secretary of Homeland Security John F. Kelly issued an implementing memorandum, stating "the Department no longer will exempt classes or categories of removable aliens from potential enforcement," except as provided in the Department's June 15, 2012 memorandum

establishing DACA,[6] (#_ftn6) and the November 20, 2014 memorandum establishing DAPA and expanding DACA.[7] (#_ftn7)

On June 15, 2017, after consulting with the Attorney General, and considering the likelihood of success on the merits of the ongoing litigation, then Secretary John F. Kelly issued a memorandum rescinding DAPA and the expansion of DACA—but temporarily left in place the June 15, 2012 memorandum that initially created the DACA program.

Then, on June 29, 2017, Texas, along with several other states, sent a letter to Attorney General Sessions asserting that the original 2012 DACA memorandum is unlawful for the same reasons stated in the Fifth Circuit and district court opinions regarding DAPA and expanded DACA. The letter notes that if DHS does not rescind the DACA memo by September 5, 2017, the States will seek to amend the DAPA lawsuit to include a challenge to DACA.

The Attorney General sent a letter to the Department on September 4, 2017, articulating his legal determination that DACA "was effectuated by the previous administration through executive action, without proper statutory authority and with no established end-date, after Congress' repeated rejection of proposed legislation that would have accomplished a similar result. Such an open-ended circumvention of immigration laws was an unconstitutional exercise of authority by the Executive Branch." The letter further stated that because DACA "has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results with respect to DACA." Nevertheless, in light of the administrative complexities associated with ending the program, he recommended that the Department wind it down in an efficient and orderly fashion, and his office has reviewed the terms on which our Department will do so.

## Rescission of the June 15, 2012 DACA Memorandum

Taking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated. In the exercise of my authority in establishing national immigration policies and priorities, except for the purposes explicitly identified below, I hereby rescind the June 15, 2012 memorandum.

Recognizing the complexities associated with winding down the program, the Department will provide a limited window in which it will adjudicate certain requests for DACA and associated applications meeting certain parameters specified below. Accordingly, effective immediately, the Department:

- Will adjudicate—on an individual, case-by-case basis—properly filed pending DACA initial requests and associated applications for Employment Authorization Documents

that have been accepted by the Department as of the date of this memorandum.

- Will reject all DACA initial requests and associated applications for Employment Authorization Documents filed after the date of this memorandum.

- Will adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries that have been accepted by the Department as of the date of this memorandum, and from current beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017.

- Will reject all DACA renewal requests and associated applications for Employment Authorization Documents filed outside of the parameters specified above.

- Will not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum for the remaining duration of their validity periods.

- Will not approve any new Form I-131 applications for advance parole under standards associated with the DACA program, although it will generally honor the stated validity period for previously approved applications for advance parole. Notwithstanding the continued validity of advance parole approvals previously granted, CBP will—of course—retain the authority it has always had and exercised in determining the admissibility of any person presenting at the border and the eligibility of such persons for parole. Further, USCIS will—of course—retain the authority to revoke or terminate an advance parole document at any time.

- Will administratively close all pending Form I-131 applications for advance parole filed under standards associated with the DACA program, and will refund all associated fees.

- Will continue to exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate.

This document is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigation prerogatives of DHS.

---

[1] (#_ftnref1) Significantly, while the DACA denial notice indicates the decision to deny is made in the unreviewable discretion of USCIS, USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as

outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion.

[2] (#_ftnref2) *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015).

[3] (#_ftnref3) *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).

[4] (#_ftnref4) *Id.*

[5] (#_ftnref5) *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam).

[6] (#_ftnref6) Memorandum from Janet Napolitano, Secretary, DHS to David Aguilar, Acting Comm'r, CBP, et al., "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (June 15, 2012).

[7] (#_ftnref7) Memorandum from Jeh Johnson, Secretary, DHS, to Leon Rodriguez, Dir., USCIS, et al., "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Whose Parents are U.S. Citizens or Permanent Residents" (Nov. 20, 2014).

Topics:   Border Security (/topics/border-security) ,  Deferred Action (/topics/deferred-action)

Keywords:   DACA (/keywords/daca) ,  Deferred Action for Childhood Arrivals (/keywords/deferred-action-childhood-arrivals)

Last Published Date: September 5, 2017

EXHIBIT B

Unofficial Transcript of the Oral Decision of the Immigration Judge
Immigration Judge: Brett Parchert
Respondent: Daniel Ramirez Medina
Respondent File Number: A-207-028-995

1

Alright transcriber, please begin the decision. Please use the standard format for an oral decision.

These are removal proceedings Immigration Court in Seattle, Washington. This decision is being issued on January 17th, 2018. Case number A-207028995 in the Matter of Daniel Ramirez, R-A-M-I-R-E-Z - Medina M-E-D-I-N-A, Respondent. Please list the following charge, section 212, print small 'a,' print 6, print capital 'a,' print lowercase 'i' of the Immigration and Nationality Act. Application's asylum; withholding a removal ;, protection under the convention against torture; and transcriber convention against torture will always be a capital 'c' a capital 'a' and a capital 't.' Cancellation of removal for certain non-permanent residents.

On behalf of Respondent is Luis, L-U-I-S, Alberto Cortes, C-O-R-T-E-S, Romero, R-O-M-E-R-O, Esq. On behalf of the Department of Homeland Security – and transcriber, you'll list two names with separate titles. First name is Gregory Fehlings, F-E-H-L-I-N-G-S, Deputy Chief Counsel. The second attorney is Jordan, like the country, Jones, Assistant Chief Counsel. Headings should be centered, underlined, all caps and bold, case names should be underlined. Always place the word "the" in front of Respondent. Important to capitalize the C.

## ORAL DECISION AND ORDER OF THE IMMIGRATION JUDGE

The Respondent is an unmarried, 24-year-old male alien, who is a native and citizen of Mexico. The United States Department of Homeland Security instituted these removal proceedings under the authority of the Immigration and Nationality Act by filing a notice to appear with an immigration court on February 14, 2017.

The Respondent has admitted the factual allegations contained in the notice to appear. He concedes that he is removable as charged. Based upon the concession of removability, the court finds that removability has been demonstrated by clear and convincing evidence.

The Respondent declined to designate a country for removal should that become necessary, and the board has directed Mexican. He seeks relief from removal in the form of asylum under section 208 of the act, withholding of removal under section 241(b)(3) of the act, and protection in the form of withholding and removal and the United Nations Convention Against Torture, 8CFR§1208.16(c). In addition, he seeks cancelation of removal for certain non-permanent residents under section 240A(b)(1) of the act. He has declined to seek voluntary departure.

## STATUTORY ELIGIBILITY – ASYLUM AND RELATED RELIEF

To qualify for asylum under Section 208 of the act, an applicant bears the **[inaudible]** proving that he is a refugee. Within the meaning of section of 101(a)(42) of the act, an applicant must demonstrate an inability or unwillingness to return to the country of origin

Unofficial Transcript of the Oral Decision of the Immigration Judge
Immigration Judge: Brett Parchert
Respondent: Daniel Ramirez Medina
Respondent File Number: A-207-028-995

9

not much information about how many tattooed DACA recipients there might be in Mexico. It may be that the Respondent would be the only one. However, the court can well assume that in as much as so many young people in the United States seem to relish tattooing their bodies at this time, there may well be other people in their 20s who've spent time in the United States go back tattooed. However, the court does not find the Respondent has shown that society views quote tattooed DACA recipients unquote as some sort of group.

Similarly, the court finds Respondent has not demonstrated that society views quote DACA recipients in Mexico with family living in the United States end quote as being some sort of group. It's unclear that society views them as being anything at all, or that persons who have family members who live in the United States versus people who have family members who live in Mexico as some sort of different group. Similarly, family can be very expansive view and that there might be a distant cousin who lives in the United States but other family members live in Mexico and so forth. Moreover, with respect to these DACA - related formulations of particular social groups, the court finds the responded has not demonstrated that the government would be inclined to punish or harm people for such memberships. To the extent there is any concern that non-governmental entities might do this, the court finds the bet has been shown to be too speculative, and even if they were to, that they had demonstrated the government would be unable or unwilling to protect such persons. Indeed, the government submitted a news article, for example, in which the Secretary of Foreign Affairs for Mexico stated that if dreamers are deported "it will be America's loss and Mexico's gain." The Foreign Minister further indicated, "We will receive them with open arms." This further stated that whether it's one dreamer or 100,000, or 600,000 who return to Mexico, this will be "a big gift to Mexico." It would seem that the government of Mexico would have little to benefit by not reaching out to offer protection if the Respondent felt threatened for some reason because he had once been a DACA recipient in the United States considering the very public statements in support of DACA recipients, government officials, and Mexico have made.

To the extent the Respondent argues that he would have an imputed membership of "gang/transnational criminal organizations." The court finds that is also proof the Respondent has not demonstrated with some sort of socially distinct [inaudible] in this country. Moreover, the court finds it calls for too much speculation to find that he would even be in that group. Here there were newspaper articles which do indicate with respect to the publicity generated by his lawsuit with respect to his detention, in which it was brought out by persons on his side at the government was raising an issue of gang affiliation. However, all of the credit-worthy articles demonstrate that the Respondent routinely and vehemently denied any connection. As the court finds above, the court finds the Respondent was not in a gang, nor associated with one.

The court does understand that he made have told an officer that he "hung out" with Surenos, which is a notorious gang in California. Here the court has also read the

Unofficial Transcript of the Oral Decision of the Immigration Judge
Immigration Judge: Brett Parchert
Respondent: Daniel Ramirez Medina
Respondent File Number: A-207-028-995

10

information in which the Respondent felt after being asked questions for a number of times and not any gang connections that he volunteered that he knew some Surenos. The court finds credit-worthy his testimony in court that he himself was never a Sureno and simply knew some of them from working in the fields, and like any good co-worker, would greet them at work and have informal conversations. If persons who have such routine greetings with people who may be in a gang, it would constitute seemingly a significant portion of the population in this country. As the Respondent himself indicated, there are no known cartels or gangs who use his tattoo as some sort of gang or cartel symbol.

The Respondent also testified that there is no indication that his father had any connection to any known cartel so therefore there would be no reason to think that the Respondent had a connection to a cartel or some sort of criminal group in Mexico or in the United States.

The court finds it to be far too speculative to support a finding that he'd have a well-founded fear of persecution on account of membership in that group even if such a group were deemed to exist.

Because the Respondent would not meet the lower burden of proof to demonstrate eligibility for asylum, regardless of the "one central reason analysis," logically follows he does not meet the higher burden of proof for withholding of removal under the United Nations Convention Against Torture and that application will also be denied.

To the extent the Respondent seeks protection of the convention against the torture, the court has considered the Respondent's credible testimony and the vote with luminous background evidence. The court has reviewed all that evidence even if not mentioned with particularity. It does suggest there is considerable crime and violence in Mexico and the Respondent's concern about rumors he has heard about corruption in the Mexican government, or some sort of association between some police officials and the cartels is something which has some validity. Nevertheless, such generalized evidence, does not translate into a finding yet we would be more likely than not that the Respondent himself would be tortured should he return, or even if he were to be, it would be more likely [inaudible] [00:01:33] and acquiescence or willful blindness of government official or other person acting in an official capacity, and therefore that request will also be denied.

The court will now address the application for cancelation of removal. The court assumes the Respondent meets the continuous physical presence requirement. The court also notes that the Respondent does not have a disqualifying conviction. With respect to good moral character, the court does have some concern about whether or not the Respondent would be statutorily barred as being a person of lacking good moral character with respect to information he provided on his DACA application. In other words, it would appear to the court that the Respondent was never actually entitled to receive DACA benefits. The Respondent by his own admission stopped showing up at least early enough to his classes

EXHIBIT C

| From: | Robins, Jeffrey (CIV) |
|---|---|
| To: | Bach, Nathaniel L.; Walker, James (CIV) |
| Cc: | Dettmer, Ethan; Mark Rosenbaum (mrosenbaum@publiccounsel.org); Luis Cortes (lcortes@barreralegal.com); Marquart, Katie |
| Subject: | RE: Ramirez Medina v. U.S. DHS, et al., Case No. 2:17-CV-00218 (W.D. Wa.) |
| Date: | Friday, March 2, 2018 5:21:40 AM |

Nat,

Defendants continue to review the Central District of California's preliminary injunction and are discussing how to proceed. Given the deadlines imposed by the preliminary injunction, I will follow up with you next week with regard to Defendants' intended course of action.

I would also suggest that we reconvene then regarding your proposed briefing schedule regarding your discovery requests, and ask whether you believe those requests are still appropriate in light of the certification of the class?

Thanks,

Jeff

Jeffrey S. Robins
Assistant Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Bach, Nathaniel L. [mailto:NBach@gibsondunn.com]
**Sent:** Thursday, March 01, 2018 10:08 AM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Cc:** Dettmer, Ethan <EDettmer@gibsondunn.com>; Mark Rosenbaum (mrosenbaum@publiccounsel.org) <mrosenbaum@publiccounsel.org>; Luis Cortes (lcortes@barreralegal.com) <lcortes@barreralegal.com>; Marquart, Katie <KMarquart@gibsondunn.com>
**Subject:** RE: Ramirez Medina v. U.S. DHS, et al., Case No. 2:17-CV-00218 (W.D. Wa.)

Jeff, following up on my email, please confirm that the government will be complying with the Order and restoring Mr. Ramirez Medina's DACA and EAD to their original date of expiration.  Thank you.

**Nathaniel L. Bach**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7241 • Mobile +1 310.200.0787 • Bio
NBach@gibsondunn.com • www.gibsondunn.com

**From:** Bach, Nathaniel L.
**Sent:** Tuesday, February 27, 2018 11:23 PM
**To:** Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov>; Walker, James (CIV)
<James.Walker3@usdoj.gov>
**Cc:** Dettmer, Ethan <EDettmer@gibsondunn.com>; Mark Rosenbaum
(mrosenbaum@publiccounsel.org) <mrosenbaum@publiccounsel.org>; Luis Cortes
(lcortes@barreralegal.com) <lcortes@barreralegal.com>; Marquart, Katie
<KMarquart@gibsondunn.com>
**Subject:** Ramirez Medina v. U.S. DHS, et al., Case No. 2:17-CV-00218 (W.D. Wa.)

Jeff:

As you know, on Monday, the district court in *Inland Empire – Immigrant Youth Collective et al. v. Nielsen*, Case No. 5:17-cv-02048 (C.D. Cal.), issued an Order Granting Plaintiffs' Motion for Class Certification and Granting Plaintiffs' Motion for Classwide Preliminary Injunction ("Order").  As the government stated in its opposition to Daniel Ramirez Medina's PI Motion, he is a member of the putative, now certified, class in that action.  As such, the Order requires, *inter alia*, that "Defendants immediately . . . restore [his] DACA and EAD[], subject to their original date of expiration."  (Order at 35.)

Therefore, please confirm that the government will comply with the Order and immediately restore Mr. Ramirez Medina's DACA and EAD to their original date of expiration and the timeframe on which such restoration will occur.

We look forward to your prompt response.  Sincerely,

Nat

**Nathaniel L. Bach**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7241 • Mobile +1 310.200.0787 • Bio
NBach@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

1

2

The Honorable Ricardo S. Martinez
Chief United States District Judge

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

10

11

CASE NO. 2:17-CV-00218-RSM-JPD

12

Daniel Ramirez Medina,

**AMENDED [PROPOSED] ORDER
GRANTING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

13

Plaintiff,

14

v.

15

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

16

17

18

Defendants.

19

20

21

22

23

24

25

26

27

28

AMENDED [PROPOSED] ORDER GRANTING
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1       This matter comes before the Court on Plaintiff's February 6, 2018 Motion for Preliminary

2   Injunction.  Upon consideration of Plaintiff's motion and the record, IT IS ORDERED that:

3       1.  Plaintiff's motion for preliminary injunction is GRANTED; and

4       2.  Defendants are ORDERED to restore Plaintiff Daniel Ramirez Medina's DACA status and

5           work authorization pending a decision on the merits of his claims, and to accept and process

6           his future DACA renewals and work authorization applications without requiring any

7           showing above and beyond what would have been required had he not been stripped of his

8           DACA status, and without asserting that Mr. Ramirez is a gang member, gang affiliated, or a

9           threat to public safety or national security on such basis.

11  Dated this ___ day of _____, 2018.

12                                              _____
13                                              THE HONORABLE RICARDO S. MARTINEZ
                                                CHIEF UNITED STATES DISTRICT JUDGE

AMENDED [PROPOSED] ORDER GRANTING
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1

PRESENTED BY:

/s/ *Theodore J. Boutrous, Jr.*
GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*

/s/ *Mark D. Rosenbaum*
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*

***Attorneys for Plaintiff***

AMENDED [PROPOSED] ORDER GRANTING
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP