The Honorable Ricardo S. Martinez
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

Daniel Ramirez Medina,

                Plaintiff,

          v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

                Defendants.

CASE NO. 2:17-CV-00218-RSM-JPD

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, DKT. 122**

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I–II

Gibson, Dunn &
Crutcher LLP

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
  aprice@publiccounsel.org
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*
  ehadaway@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*
  jgabriel@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

Gibson, Dunn &
Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    I

Counsel Listed on Pages I–II

LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
   llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only*
401 East Peltason Drive, Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722


LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
   larry@tribelaw.com
Harvard Law School
*Affiliation for identification purposes only*
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
   ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
   lcortes@ia-lc.com
Immigrant Advocacy & Litigation Center, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
   matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

Gibson, Dunn &
Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    II                    Counsel Listed on Pages I–II

At the May 1, 2018 hearing, the Court indicated that it was ready to grant Plaintiff's Motion for Preliminary Injunction (Dkt. 122) ("Motion") had Defendants not already reinstated Mr. Ramirez's DACA and work authorization pursuant to the classwide order in *Inland Empire– Immigrant Youth Collective v. Nielsen*.[1]  The Court therefore ordered supplemental briefing to (a) confirm that the Court may enjoin Defendants on the current pleading and record in front of it, and (b) provide Defendants an opportunity to respond to Plaintiff's request for relief as reflected in the revised proposed order provided to Defendants and the Court at the May 1 hearing (and filed herewith).

The Court has broad powers to order appropriate injunctive relief now on the operative pleading, to enjoin further action by Defendants based on their false allegations of gang membership given that Defendants have already conceded in an adjudicative proceeding that Mr. Ramirez is not a public safety concern.  Such relief is necessary to provide Mr. Ramirez what he has always sought: meaningful restoration of his DACA status and a return to the status quo before Defendants unlawfully arrested him and tarred him with false allegations of gang affiliation.  And because time is of the essence and Mr. Ramirez will continue to suffer irreparable harm until an injunction issues, Mr. Ramirez respectfully asks the Court to act swiftly to (1) maintain the status quo (*i.e.*, enjoin Defendants from terminating Plaintiff's DACA status and work authorization) pending adjudication on the merits and (2) enjoin Defendant USCIS from continuing to falsely accuse Plaintiff of being a gang member in any further proceedings.

And the Court need not and should not wait for USCIS to again terminate Mr. Ramirez's DACA before righting the government's wrongful conduct.  Indeed, without the relief that Mr. Ramirez seeks, Defendants could repeatedly attempt to strip Mr. Ramirez of his benefits based on these false allegations while claiming each time that the Court must wait to act until Defendants

---

[1]   In other words, the Court would have found that Plaintiff had established his entitlement to preliminary relief either (i) by demonstrating a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, that the balance of equities tips in Plaintiff's favor, and that an injunction is in the public interest; or (ii) by satisfying the Ninth Circuit's sliding scale approach by demonstrating serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) (describing standard for preliminary injunction and sliding scale approach).  Because the argument and evidence underlying Plaintiff's motion as set forth in his prior briefing provide an ongoing basis for the relief sought, Plaintiff principally addresses herein the procedural questions raised by the Court at the May 1 hearing.

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    1                    Counsel Listed on Pages I–II

inflict the inevitable harm on Mr. Ramirez that comes with terminating his DACA and work authorization.  That cannot be the case.  As set forth herein, the Court has broad equitable powers to act now to prevent such injustice.

A.     **Defendants' Renewed Actions to Harm Mr. Ramirez and In-Court Concessions Confirm the Need for Immediate Injunctive Relief.**

After Defendants terminated Mr. Ramirez's DACA status and work authorization in February 2017, they were required to reinstate his status pursuant to the February 26, 2018 *Inland Empire* order that certified a class of which Mr. Ramirez is a member.  *See* Dkt. 126.  However, at the same time that the government reinstated Mr. Ramirez's benefits, it sought to terminate them again on the same unlawful basis, using a slightly different procedural tool.  Defendants issued him a Notice of Intent to Terminate ("NOIT") based on the same flawed, unsupported, and thoroughly discredited allegations that he is a gang member or gang affiliated.  Indeed, counsel for the government conceded at the May 1 hearing that those discredited allegations are the basis for the NOIT:

> THE COURT:  Is the plaintiff correct that by filing the notice to terminate, that you intend to once again rely on the allegations that Mr. Ramirez is a gang member, has associated with gang members, and therefore needs to have that DACA status terminated?
>
> MR. ROBINS:  Essentially, yes, Your Honor.

Declaration of Nathaniel L. Bach in Support of Suppl. Br. ("Bach Decl.") ¶ 2 (Hrg. Tr. at 20:7–12).

The Court then sought to confirm whether the government has "any other evidence to substantiate [its claim] that he's a gang member or is associated with gang members," but Defendants' counsel's had no real answer.  *Id.* (at 20:24–21:7).[2]  The government's failure to answer this direct question is further proof that it has no evidence to support its claim that Mr. Ramirez has

---

[2]   The government's counsel responded to the question by stating that "the government would dispute the court's characterization and opposing counsel's characterization that there is some record or administrative record that establishes, one way or the other, with absolute conclusiveness, about Mr. Ramirez's gang affiliations or the lack thereof."  Bach Decl. ¶ 2 (Hrg. Tr. at 21:1–7).  That statement is remarkable for two reasons: *first*, it concedes that the government does not have evidence—despite having over a year to substantiate its allegations and despite its access to many criminal databases—to prove that Mr. Ramirez is a gang member; and *second*, because the government already conceded, based on the same record, that it "do[es]n't believe *from this record* there is enough for us to argue that he's a danger to the community," when the allegation of gang membership was the government's basis for claiming that Mr. Ramirez presented a public safety issue.  Dkt. 122-1 at 31 (Bond Hrg. Tr. at 26) (emphasis added).

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    2                    Counsel Listed on Pages I–II

1  gang affiliations.  This latest concession follows Defendants' repeated failure over the past 15 months

2  to produce any evidence to substantiate their allegations, despite Mr. Ramirez's counsel's repeated

3  requests that they do so.  *See* Dkt. 122-2 ¶¶ 5–8.

4      Mr. Ramirez had 33 days to respond to the NOIT, and submitted his response today, May 7.

5  Defendant USCIS may now act at any time to again terminate Mr. Ramirez's DACA on these false

6  pretenses, thereby violating Mr. Ramirez's rights under the Administrative Procedure Act and the

7  Due Process Clause of the Fifth Amendment to the United States Constitution.  For the reasons set

8  forth in this brief and in Plaintiff's Motion (Dkt. 122), Reply (Dkt. 124), *Ex Parte* Motion to Expedite

9  (Dkt. 126), and at argument on May 1, 2018, Mr. Ramirez respectfully requests that the Court

10 maintain the status quo pending merits adjudication by enjoining Defendants from terminating his

11 DACA status and work authorization, and from repeating or relying on the baseless allegations of

12 gang affiliation in any further proceedings.

13 **B.    The Court Has the Authority to Enjoin Defendants' Unlawful Behavior on the Operative Pleading and Record Before It.**

14      Defendants object that the relief sought by the Motion—and the different scope of relief

15 necessitated by Defendants' shifting tactics—was not contemplated by the operative pleading (the

16 Second Amended Complaint ("SAC")).  Dkt. 125 at 2 (citing *inter alia Gray v. Sorrels*, No. CV-16-

17 145-RAW-SPS, 2017 WL 167912, at *2 (E.D. Okla. Jan. 17, 2017)).  But Defendants' non-binding

18 authority is irrelevant in light of the numerous binding precedents, as well as the Federal Rule of

19 Civil Procedure, that confirm the Court's authority to grant necessary relief when circumstances

20 change after the filing of the operative pleading.[3]

21
22 **1.    Ninth Circuit Authority Confirms this Court's Ability to Issue the Injunction based on the SAC.**

23      The Court may grant the Motion based on the SAC as filed because "[s]o long as a party is

24 entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the

25 party's pleadings."  *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002); *see also Z Channel Ltd.*

26
27      [3]    Moreover, *Gray* relied on another case that found a lack of "*a relationship* between preliminary relief and the claims in [the petitioner's] habeas petition."  *Gray*, 2017 WL 167912, at *2 (citing *Terry v. Jones*, 2007 WL 962916 (W. D.

28 Okla. Mar. 30, 2007) (emphasis added).  Here, however, the SAC details *repeatedly* how Mr. Ramirez is harmed by being falsely labeled as a gang member.  Dkt. 78 ¶¶ 55-59, 63-69, 74-77, 83-84.

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD       3                    Counsel Listed on Pages I–II

1    *P'ship v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991) (collecting authorities).  Thus,

2    the Court may, on the current pleadings, grant Plaintiff's Motion.  *Cf.* F.R.C.P. 54(c) ("Every . . .

3    final judgment should grant the relief to which each party is entitled, *even if the party has not

4    demanded that relief in its pleadings*.") (emphasis added).[4]  Therefore, Defendants' argument that

5    Plaintiff's Motion "would not appropriately be before the court without amendment of the complaint"

6    (Bach Decl. ¶ 2 (Hrg. Tr. 25:5–6)) is contradicted by Circuit law and the Federal Rules.[5]

7         This principle dovetails with the Court's "broad powers and wide discretion to frame the

8    scope of appropriate equitable relief" when issuing a preliminary injunction.  *SEC v. United Fin.*

9    *Grp., Inc.*, 474 F.2d 354, 358–59 (9th Cir. 1973) (upholding issuance of preliminary injunction); *see*

10   *also United States v. Coca-Cola Bottling Co. of L.A.*, 575 F.2d 222, 228 (9th Cir. 1978) ("The equity

11   jurisdiction of the federal courts traditionally has permitted the fashioning of broad and flexible

12   decrees molded to the necessities of the individual case.").  Moreover, "the court may go beyond the

13   matters immediately underlying its equitable jurisdiction and decide whatever other issues and give

14   whatever other relief may be necessary under the circumstances.  Only in that way can equity do

15   complete rather than truncated justice." *Coca-Cola Bottling*, 575 F.2d at 228–29 (quoting *Porter v.*

16   *Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

17        And the Supreme Court has made clear that the federal courts may "'adjust their remedies so

18   as to grant the necessary relief' where federally secured rights are invaded." *J. I. Case Co. v. Borak*,

19   377 U.S. 426, 433 (1964) (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Kay v. City of*

20   *Rancho Palos Verdes*, 504 F.3d 803, 813 (9th Cir. 2007) (quoting *Bell*, 327 U.S. at 684) (confirming

21   it is "'well settled that where legal rights have been invaded, and a federal statute provides for a

22   general right to sue for such invasion, federal courts may use any available remedy to make good the

23   wrong done'").  Were it otherwise, a defendant could always seek to do what these Defendants did:

24   _____

25   4    Although Rule 54(c) speaks to "final judgments," it would make no sense to impose a higher procedural burden on preliminary relief, particularly where Defendants have altered their behavior since the filing of the operative complaint.

26   5    While Ninth Circuit precedent, Rule 54(c), and the mootness doctrine confirm that the Court can grant relief on the current pleadings, should the Court feel that it needs a more specific amended pleading, Plaintiff will immediately file a

27   third amended complaint.  Should the Court require an amended pleading, it would not then need to wait to grant Plaintiff's Motion and issue injunctive relief while Defendants' response to the new pleading is pending.  *See NORML v.*

28   *Mullen*, 608 F. Supp. 945, 950 n.5 (N.D. Cal. 1985) ("Owing to the peculiar function of the preliminary injunction, it is not necessary that the pleadings be perfected, or even that a complaint be filed, before the order issues.").

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD          4          Counsel Listed on Pages I–II

game the judicial system by changing the landscape during the course of litigation to frustrate a court's ability to enjoin shifting wrongful conduct.

### 2. The Mootness Doctrine Further Confirms that the Court May Act in the Face of Shifting Circumstances.

The mootness doctrine further reinforces the fact that the Court retains its ability to fashion appropriate relief where a defendant alters its conduct during the course of litigation. *See Inland Empire–Immigrant Youth Collective v. Nielsen*, Case No. EDCV-17-2048-PSG, Slip Op. at 15 (C.D. Cal. Apr. 19, 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)) (noting that the standard for "'determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur'"). In rejecting the government's contention that named plaintiffs' claims had been rendered moot by the government's compliance with the *Inland Empire* court's class certification and preliminary injunction order, the court found that the plaintiffs continued to maintain standing and that their claims were not mooted by the government's conduct. *Inland Empire*, Slip Op. at 15 (C.D. Cal. Apr. 19, 2018) (noting that reinstatement of plaintiffs' DACA and issuance of a NOIT do not render claims moot); *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009) ("the mere cessation of illegal activity in response to pending litigation does not moot a case").

Here, Defendants have not ceased their unlawful activity—they continue to rely on the false claim that Mr. Ramirez is gang affiliated in seeking to terminate his DACA anew—further confirming that preliminary relief remains warranted. *See Johansen v. San Diego Cty. Dist. Council*, 745 F.2d 1289 (9th Cir. 1984) (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)) ("An action is not moot if it is 'capable of repetition, yet evading review.'"). Indeed, even had USCIS not delivered the April 3, 2018 NOIT to Mr. Ramirez, the Court would retain the ability to enjoin Defendants from relying on the gang allegations that they have already conceded are not supported by sufficient evidence where they are capable of repeating their use of those allegations to cause Mr. Ramirez harm. *Id.*; *see also Vegas Diamond Props., LLC v. FDIC*, 669 F.3d 933, 936–37 (9th Cir. 2012) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)) (case is not moot when "named

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    5                    Counsel Listed on Pages I–II

plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality").

### 3. The Court Need Not Wait to Enjoin Defendants' Reliance on Discredited Accusations of Gang Membership.

Defendants' argument at the May 1 hearing that USCIS's action is not yet final and the Court therefore lacks the ability to review the issuance of the NOIT mischaracterizes the relief Plaintiff seeks, as an initial matter, and is wrong in any event, for multiple reasons.

*First*, Mr. Ramirez seeks to enjoin Defendants' *use* of the false allegation that he is a gang member, or is gang affiliated, in any proceedings. Notably, Plaintiff does not seek early review of agency action, which might then implicate issues of finality. And the relief he seeks is not limited to the NOIT issued against him and the agency's further action on that NOIT. These distinctions are important.[6] The Court need not wait for USCIS to do what counsel for Defendants acknowledged will occur—*i.e.*, the termination of Mr. Ramirez's DACA based on the false claim of gang affiliation (*see* Bach Decl. ¶ 2 (Hrg. Tr. at 20:7–15))—before it can act to enjoin the use of admittedly unsupported allegations. To hold otherwise would mean that an agency could always act in bad faith to restart or begin new proceedings using the same discredited allegations and thereby inflict ongoing harm on an individual such as Mr. Ramirez.

Accepting Defendants' erroneous contention that the Court cannot act would mean that Mr. Ramirez could be stuck in an endless loop of bad-faith government action: each time the Court restored his DACA, the government could issue a new NOIT on the same false basis and the Court would be powerless to intervene. Such a result would be unjust, and counter to the rules and law governing agency action. *See, e.g.*, *Judulang v. Holder*, 565 U.S. 42, 53, 55 (2011) (APA requires government to "exercise its discretion in a reasoned manner" and make discretionary decisions "based on non-arbitrary 'relevant factors'") (citation omitted); *Ranchers Cattlemen Action Legal*

---

[6] Of course, once USCIS acts on the NOIT and issues its termination notice, Mr. Ramirez's DACA status and employment authorization will have again been terminated, at which point any possible doubt about the Court's authority to act will have been eliminated. The recent order in *Gonzalez-Torres v. U.S. Dep't of Homeland Sec.*, 2018 WL 1757668 (S.D. Cal. Apr. 12, 2018) that the government cited at the May 1 hearing simply confirms that this Court has jurisdiction to examine and rule on USCIS's termination of DACA status following issuance of a NOIT. Should the Court feel that it cannot act to enjoin the government until termination occurs, the Court could either wait to issue its order, or stay its order enjoining Defendants from terminating Mr. Ramirez's DACA and work authorization pending such later action. Should the Court require, Plaintiff would be willing to bring such later action immediately to the Court's attention for emergency *ex parte* relief. But forcing Mr. Ramirez to <u>again</u> suffer this imminent harm based <u>solely</u> on Defendants' false claims would be the height of injustice and exactly the sort of wrong that equitable power is meant to foreclose.

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    6                    Counsel Listed on Pages I–II

1    *Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007)

2    (agency action is "arbitrary and capricious" where agency "offered an explanation for its decision

3    that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed

4    to a different in view or the product of agency expertise") (quotation marks and citation omitted); *see*

5    *generally* Dkt. 122 (Mot. 9–10).  Therefore, it is the *use* of those false and unsupported allegations

6    that this Court can and should enjoin.

7        ***Second***, even if the determination to persist in using these discredited allegations implicated

8    the final agency action rule[7]—which it does not for the reasons discussed above—there is an explicit

9    exception to the final agency action rule where court relief is needed to protect the individual targeted

10    by the agency from suffering irreparable harm.  *See Anderson v. Babbitt*, 230 F.3d 1158 (9th Cir.

11    2000) (discussing irreparable harm and harm to due process rights as factors that may be "sufficient

12    to abrogate the statutory requirement of finality") (citing *Mathews v. Eldridge*, 424 U.S. 319, 331

13    n.11 (1976)); *Fort Sumter Tours, Inc. v. Andrus*, 440 F.Supp. 914, 919–20 (D.S.C.), *aff'd* 564 F.2d

14    1119 (4th Cir. 1977) (court issued preliminary injunction on APA claim finding that "factor

15    militating against further agency action is the irreparable injury likely to be suffered by the

16    Plaintiff").[8]  Separately, the Court could issue an order delaying USCIS's imminent termination of

17    Mr. Ramirez's DACA status from ever going into effect and causing him irreparable harm.  *See*

18    5 U.S.C. § 705 (APA provides that "to the extent necessary to prevent irreparable injury, the

19    reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of

20    an agency action or to preserve status or rights pending conclusion of the review proceedings.").

21        Here, the very act of again relying on the falsehood that Mr. Ramirez is a gang member or

22    gang affiliated, in the face of concessions and findings to the contrary, causes him irreparable harm in

23

24    [7]    In any event, in the NOIT itself, USCIS has made the following *determinations*, which could be considered final in
and of themselves: USCIS has "determined that exercising prosecutorial discretion to defer removal action in your case is

25    not consistent with DHS's enforcement priorities"; and "USCIS has determined, in its unreviewable discretion, that [Mr.
Ramirez] do[es] not warrant a favorable exercise of prosecutorial discretion."  Dkt. 126-1 (Ex. C).

26    [8]    Moreover, judicial intervention may be justified before final action "where, as here, there is a substantial showing
that an agency has exceeded the authority granted it by Congress, or that it is acting unconstitutionally."  *Mount Sinai*

27    *Hosp. of Greater Miami, Inc. v. Weinberger*, 376 F. Supp. 1099, 1120 (S.D. Fla. 1974), *reversed on other grounds* 517
F.2d 329 (5th Cir. 1975); *see also Gellis v. Casey*, 338 F. Supp. 651, 652–53 (S.D.N.Y. 1972) (a "district court may

28    correct a preliminary agency decision when the agency has plainly exceeded its statutory authority or threatens irreparable
injury in clear violation of an individual's rights") (citation omitted).

Gibson, Dunn &
Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION                                                          Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    7

the form of deprivation of his constitutional rights (*see Hernandez v. Sessions*, 872 F.3d 976, 994–95

(9th Cir. 2017)), emotional harm and stress inflicted by the continuing insistence of gang membership

(*see Chalk v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 840 F.2d 701, 710 (9th Cir. 1988)), and harm to

Mr. Ramirez's reputation (*see Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1324 n.5 (9th Cir. 1994)).

Under Defendants' theory, an agency could maliciously defame an individual and trample his

constitutional rights, and there would be no recourse until agency action were complete.  Such a

result is not supported or contemplated by the final action doctrine.  The Court has the power to

preserve the status quo pending a final decision on the merits, and should do so here.  *Republic of the*

*Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988).

***Third***, even if this Court had to wait for USCIS to take additional action before it could enjoin

Defendants' behavior on the basis of Mr. Ramirez's APA claims, Mr. Ramirez is separately entitled

to the order he seeks on the basis of his claim that Defendants violated his due process rights.  Indeed,

courts can act to enjoin constitutional violations even where agency action is not otherwise

reviewable.  *See Hata v. United States*, 23 F.3d 230, 233 (9th Cir. 1994) (quoting *Lindahl v. Office of*

*Personnel Management*, 470 U.S. 768, 791 (1985)) ("We recognize . . . that review of constitutional

claims may still be available upon a sufficiently pleaded allegation of a serious constitutional

violation 'going to the heart of the administrative determination.'").  Here, Defendants have violated

Mr. Ramirez's due process rights because their actions are fundamentally unfair, *Cty. of Sacramento*

*v. Lewis*, 523 U.S. 833, 847 n.8, 850 (1998), "shock the conscience," and "offend the community's

sense of fair play and decency."  *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012).  In

other words, any argument that the Court must wait for USCIS to act to again terminate Mr.

Ramirez's DACA and work authorization is immaterial because Defendants' due process violations

provide a separate and continuing basis on which to issue the necessary relief.  *See Withrow v.*

*Larkin*, 421 U.S. 35, 46–47 (1975) ("[A] fair trial in a fair tribunal is a basic requirement of due

process.  This applies to administrative agencies which adjudicate as well as to courts.  Not only is a

biased decisionmaker constitutionally unacceptable but our system of law has always endeavored to

prevent even the probability of unfairness.") (internal citations and quotation marks omitted).

And this Court has already found that Mr. Ramirez has stated a claim for violation of his due

Gibson, Dunn &
Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    8

Counsel Listed on Pages I–II

1  process rights.  Dkt. 116, at 18 (denying Defendants' motion to dismiss and noting it "cannot" be that

2  "no process is due" to DACA recipients, "particularly . . . where benefits have already been

3  conferred").  This use of unsupported allegations that are unsupported by the evidence available to

4  the agency, particularly in the face of on-the-record concessions that the government does not have

5  evidence to support a finding that Mr. Ramirez is a public safety risk, is the type of contradictory

6  conduct that is fundamentally unfair under the Due Process Clause, which forbids such actions.  *See*

7  *Raley v. Ohio*, 360 U.S. 423, 437–39 (1959) (prosecuting someone for conduct that state officials

8  advised was legal violated due process); *Cox v. Louisiana*, 379 U.S. 559, 568–71 (1965) ("convicting

9  a citizen for exercising a privilege which the State had clearly told him was available to him" violates

10  due process).

11                                    *        *        *

12         For the reasons set forth above and in the briefs and argument supporting his Motion for

13  Preliminary Injunction, Mr. Ramirez respectfully requests that the Court (1) maintain the status quo

14  by enjoining Defendants from terminating Plaintiff's DACA status and work authorization pending

15  adjudication on the merits and (2) enjoin Defendant USCIS from continuing to falsely accuse

16  Plaintiff of being a gang member in any further proceedings.

17  DATED:        May 7, 2018
                 Seattle, Washington
18

19                        Respectfully submitted,

20                         /s/ *Theodore J. Boutrous, Jr.*
                          GIBSON, DUNN & CRUTCHER LLP
21                        THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
                          ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
22                        KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
                          NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
23                        JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*

24                         /s/ *Mark D. Rosenbaum*
                          PUBLIC COUNSEL
25                        MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
                          JUDY LONDON (CA SBN 149431), *pro hac vice*
26                        KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
                          ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
27                        ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*

28                        Attorneys for Plaintiff

Gibson, Dunn &
Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                    9                    Counsel Listed on Pages I–II

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document should automatically be served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Theodore J. Boutrous, Jr.*

Gibson, Dunn & Crutcher LLP

SUPP. BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD                              10                              Counsel Listed on Pages I–II

The Honorable Ricardo S. Martinez
Chief United States District Judge

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

11

CASE NO. 2:17-CV-00218-RSM-JPD

Daniel Ramirez Medina,

12

**DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff,

13

14

v.

15

U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

16

17

Defendants.

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF N. BACH
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I–II

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
  aprice@publiccounsel.org
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*
  ehadaway@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*
  jgabriel@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
   llitman@law.uci.edu
University of California, Irvine School of Law
*\*Affiliation for identification purposes only*
401 East Peltason Drive, Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722


LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
   larry@tribelaw.com
Harvard Law School
*\*Affiliation for identification purposes only*
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
   ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
   lcortes@ia-lc.com
Immigrant Advocacy & Litigation Center, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
   matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

1  I, Nathaniel L. Bach, declare as follows:

2     1.  I am an attorney admitted to practice law *pro hac vice* before this Court.  I am an associate at

3        the law firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys responsible for

4        the representation of Daniel Ramirez Medina ("Mr. Ramirez") in the above-captioned action.

5        I submit this declaration in support of Plaintiff's Supplemental Brief in Support of Motion for

6        Preliminary Injunction (Dkt. 122).  The following facts are within my personal knowledge

7        and, if called and sworn as a witness, I would testify competently to these facts.

8     2.  Attached hereto as <u>Exhibit A</u> is a true and correct copy the court reporter's certified transcript

9        of the May 1, 2018 hearing on Plaintiff's Motion for Preliminary Injunction.

10  I declare under penalty of perjury under the laws of the United States and the State of Washington

11  that the foregoing is true and correct, and that I executed this Declaration on May 7, 2018, in Los

12  Angeles, California.

13                             /s/      *Nathaniel L. Bach*

14                                 Nathaniel L. Bach

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

```
  1              UNITED STATES DISTRICT COURT.

  2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

  3    _____

  4                                )
       DANIEL RAMIREZ MEDINA,       ) C17-00218-RSM
  5                                )
                    Plaintiff,      ) SEATTLE, WASHINGTON
  6                                )
       v.                          ) May 1, 2018
  7                                )
       U.S. DEPARTMENT OF HOMELAND  ) Motion Hearing
  8    SECURITY; JOHN KELLY,        )
       Secretary of Homeland        )
  9    Security; NATHALIE ASHER,    )
       Director of the Seattle      )
 10    Field Office of U.S.         )
       Immigration and Customs      )
 11    Enforcement,                 )
                                   )
 12                   Defendants.   )

 13    _____

 14                VERBATIM REPORT OF PROCEEDINGS
             BEFORE THE HONORABLE RICARDO S. MARTINEZ
 15              UNITED STATES DISTRICT JUDGE

 16    _____

 17    APPEARANCES:

 18     For the Plaintiff:     Ethan D. Dettmer
                               Gibson, Dunn & Crutcher
 19                            555 Mission Street
                               Suite 3000
 20                            San Francisco, CA  94105

 21                            Nathaniel L. Bach
                               Gibson, Dunn & Crutcher
 22                            333 South Grand Avenue
                               Los Angeles, CA  90071
 23
                               Mark D. Rosenbaum
 24                            Public Counsel
                               610 S. Ardmore Avenue
 25                            Los Angeles, CA  90005
```

```
 1                          Luis Cortes Romero
                            Immigrant Advocacy & Litigation
 2                          Center
                            19309 68th Avenue South
 3                          Suite R102
                            Kent, WA  98032
 4
                            Matt Adams
 5                          Northwest Immigrant Rights
                            Project
 6                          615 Second Avenue
                            Suite 400
 7                          Seattle, WA  98104

 8

 9
       For the Defendant:   Jeffrey S. Robins
10                          James Walker
                            U.S. Department of Justice
11                          Civil Division
                            Office of Immigration Litigation
12                          PO Box 868, Ben Franklin Station
                            Washington, D.C.  20044
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE CLERK:  This is the matter of Daniel Ramirez

2    Medina versus United States Department of Homeland Security,

3    United States Immigration and Customs Enforcement, and United

4    States Citizenship And Immigration Services, Case No. C17-218

5    assigned to this court.  Will counsel please rise and make

6    your appearances for the record.

7    MR. DETTMER:  Good morning, Your Honor, Ethan Dettmer

8    from Gibson Dunn on behalf of Mr. Ramirez.

9    MR. BACH:  Good morning, Your Honor, Nathaniel Bach,

10   also from Gibson Dunn on behalf of Mr. Ramirez.

11   MR. ROMERO:  Good morning, Your Honor, Luis Cortes

12   Romero on behalf of Mr. Ramirez.

13   MR. ROSENBAUM:  Good morning, Your Honor, Mark

14   Rosenbaum from Public Counsel on behalf of plaintiff.

15   MR. ADAMS:  Good morning, Matt Adams, Northwest

16   Immigrant Rights Project, on behalf of plaintiff.

17   THE COURT:  Counsel, thank you.

18   MR. ROBINS:  Good morning, Your Honor, Jeffrey Robins

19   from Department of Justice Office of Immigration Litigation,

20   for defendants.

21   MR. WALKER:  Good morning.  James Walker from the

22   Department of Justice for the defendants.

23   THE COURT:  Counsel, thank you as well.

24   Gentlemen, the court has reviewed all of the material that

25   was submitted on this matter for today's hearing.  And we've

1    set today's hearing basically for plaintiff to be able to

2    make their argument, for the court to hear the defense

3    response to the request for a preliminary injunction in this

4    particular case.

5        My understanding is that Mr. Dettmer, Mr. Bach, both of

6    you will be arguing on behalf of the plaintiff?

7            MR. DETTMER:  Yes, Your Honor.

8            THE COURT:  Who's going first?

9            MR. DETTMER:  If I may, Your Honor.

10       Thank you, Your Honor, Ethan Dettmer on behalf of

11   Mr. Ramirez.  If I may, Mr. Ramirez is here in court today

12   and I'd like to introduce him to Your Honor.

13           THE COURT:  Please.

14           MR. DETTMER:  Along with his brother Tony, are here

15   to hear the proceedings.

16           THE COURT:  Good morning.

17           MR. DETTMER:  Thank you, Your Honor.  With Your

18   Honor's indulgence, what I'd like to do is just briefly lay

19   out how we got here today and what today is about.  And then

20   I'd like to turn it over to my colleague to argue the merits

21   of the PI motion.

22           THE COURT:  All right.

23           MR. DETTMER:  So, Your Honor, why we're here is

24   because over a year ago, the government broke its promise

25   that it made to Mr. Ramirez in the DACA program.  And it

 1  broke that promise on the basis of a falsehood.  And that

 2  falsehood was that Mr. Ramirez was part of a gang, or was

 3  affiliated with a gang.  And that was not true on

 4  February 10th when it first was raised.  And that has only

 5  become a more stark and a more vicious lie as the time has

 6  gone on.  And that lie is why we're here today.  And I'm just

 7  going to recount, briefly, the history of how that falsehood

 8  has gotten so egregious to lead us here today.

 9          THE COURT:  Mr. Dettmer, let me interrupt you.

10  There's been a lot of -- there have been a lot of other

11  courts that have heard similar cases like this regarding

12  DACA, correct?

13          MR. DETTMER:  That's right, Your Honor.

14          THE COURT:  We've had the benefit of some of those

15  rulings.  Just recently, in fact, since the material was

16  submitted -- I think your reply brief came in, just as one

17  court in California ruled as well.

18          MR. DETTMER:  Yes, Your Honor.

19          THE COURT:  Let me ask you this:  Do you believe that

20  your client is a member of the class in *Inland Empire?*

21          MR. DETTMER:  Yes, Your Honor.

22          THE COURT:  Do you believe he's a member of the class

23  in *Regents*?

24          MR. DETTMER:  There isn't a class in that case, Your

25  Honor.

1      THE COURT:  I thought that was also a class action

2  case.

3      MR. DETTMER:  No, Your Honor, it's not.

4      THE COURT:  All right.  Does he benefit as a member

5  of the class, from *Inland Empire*?

6      MR. DETTMER:  Well, Your Honor, the government has

7  expressly returned his DACA to him, as a result of that

8  ruling.  But if I may give a little bit of additional

9  information, which is why we're here.  At the same time that

10  the government gave him back his DACA status as a result of

11  the *Inland Empire* decision, it also issued him a notice of

12  intent to terminate his DACA status, based on that falsehood

13  that I had mentioned earlier.

14      And the reason why we're coming to Your Honor for this is

15  because when the government gave him, with one hand, the DACA

16  status that it was required to give him under *Inland Empire,*

17  it took it away from him, based on this statement that he's a

18  gang member, which the government itself has affirmatively

19  disavowed in immigration court and an immigration judge has

20  expressly found is not true.  And yet they're still saying

21  the same thing, in an effort to take it away.

22      And so because of that falsehood, that lack of evidence,

23  that fact that its notice of intent to terminate is based on

24  an assertion that has no support in the record, and, in fact,

25  is affirmatively refuted by the record, that decision to try

1  to terminate the DACA status that they were forced to return

2  to him, is a violation of the APA.

3     And Your Honor I think has the ability, and I would submit

4  should, say that the government can't do that.  It cannot

5  continue relying on this lie that it has affirmatively

6  disavowed, and other courts have found are not true.  And

7  that is, that this young man is a gang member, which just is

8  not so.

9     If I've answered Your Honor's question, I'd like to step

10  back and give you a little bit of a flavor of why I say that

11  this is such an egregious lie that has been doing so much

12  harm to my client.  And that is -- I'll just walk through the

13  steps of how the government knows that this young man is not

14  a gang member.

15     Briefly, in 2013 when he first applied for DACA status,

16  they did a background check on him and found no gang

17  affiliation, which is part of getting DACA status.  In 2015,

18  all DACA holders were searched for -- there was a background

19  check done for gang affiliation and he maintained his DACA

20  status.  In 2016, there was another background check and

21  criminal check, when he renewed his DACA status.

22     As Your Honor knows, on February 10th of last year when he

23  was detained, he was questioned at great length.  And the

24  government asserted that he was a gang member.  And

25  Mr. Ramirez denied it over and over again.

1    We have submitted, as Your Honor knows, to the court, a

2    series of declarations from experts in gang issues.  And they

3    have said that the indicia that the government rely on have

4    no bearing on Mr. Ramirez being a gang member.  The tattoo

5    that he has, has no connection to being a gang member.

6    We've also submitted declarations to the court from family

7    members and acquaintances of Mr. Ramirez who testified to him

8    being a peaceful, kind and gentle person, who they've never

9    known to have any affiliation with a gang.

10    And more immediately, in March, when Your Honor ordered a

11    bond hearing, at that hearing the government's lawyer said,

12    "I don't believe, from this record, there is enough for us to

13    argue that he" -- Mr. Ramirez -- "is a danger to the

14    community."  That's in the Bach declaration, Exhibit A.  It's

15    Docket 122-1 at page 32.

16    THE COURT:  So let me ask you this, Mr. Dettmer.

17    This is a bit frustrating for me, because all of the briefing

18    basically focused on the return of his DACA status.  And now

19    you've switched that around and actually in your reply to the

20    government's objections, and you've kind of morphed into a

21    completely different area asking the court for different

22    relief.  Am I correct?

23    MR. DETTMER:  Well, Your Honor, mostly correct.

24    Although, we weren't the ones who did it, Your Honor.  It was

25    the government who changed the circumstances by issuing this

1   notice of intent to terminate, after the briefing was

2   completed and in response to the *Inland Empire* case.  And by

3   doing it based on, again, this falsehood.

4       So the situation has changed dramatically since the

5   briefing was completed.  The government has given with one

6   hand and is trying to take away with the other.  But by

7   trying to take away with the other, it's doing it based on

8   something that has no support in the record whatsoever.

9           THE COURT:  Well, I understand that they filed --

10  they returned his DACA status.  So that part of it, that

11  narrows the issues before this court, right?

12          MR. DETTMER:  That's true, Your Honor.  I think we

13  have a simple issue.

14          THE COURT:  All right.  Issuing a notice to

15  terminate, does your client then have the ability to contest

16  that?

17          MR. DETTMER:  My client has the ability to submit a

18  writing to the government saying that, again, this isn't

19  true, that he's not a gang member.  But because the

20  government has repeatedly said these things and because it

21  has made a decision, its intent to terminate his DACA status,

22  based on an assertion that is affirmatively countered by the

23  record, that is itself a violation of the Administrative

24  Procedure Act.

25          THE COURT:  Who gets to make the determination as to

1   whether or not the government is successful in attempting to

2   terminate?

3           MR. DETTMER:  The government itself makes that

4   determination.  I believe USCIS does it.

5           THE COURT:  Without the ability to have that reviewed

6   by anyone else?

7           MR. DETTMER:  Yes.  So the reason why we're here is

8   because the government continues to make this assertion that

9   it, itself, has disavowed.  And it's contrary to what an

10  immigration judge has said.  Which, by the way, the court --

11  the government did not appeal.  And that's in January of this

12  year the immigration judge said, "The court finds that the

13  respondent was not in a gang, nor associated with one."  And

14  that's in the supplemental Bach declaration.  It's Docket

15  124-1 at page 14.

16      So, despite all of this -- and I will add to that --

17  Mr. Rosenbaum and I from the beginning of this case have

18  asked the government's counsel to give us anything they have

19  that supports their claim that Mr. Ramirez is in a gang.  And

20  nothing has been forthcoming.  So what we have here -- and I

21  hear what Your Honor is saying about the procedural

22  situation.  It is a very strange procedural situation.  But I

23  would submit to Your Honor that in the light of this

24  remarkable series of events with a government agency saying

25  over and over again, something that is demonstrably untrue,

1   and they themselves have admitted they have no evidence of,

2   they should not be able to break this promise and continue to

3   cause this terrible harm to this young man, based on

4   something that they themselves say they have no evidence of.

5       So that's my framing.  And I hope I've answered some of

6   Your Honor's questions.  I'd like to turn it over to my

7   colleague to argue the law on this, unless Your Honor has

8   other questions from me.

9           THE COURT:  No, that's fine.  Let's hear from

10  Mr. Bach.

11          MR. DETTMER:  Thank you very much, Your Honor.

12          THE COURT:  I do have a question for you, Mr. Bach.

13  Good morning.

14      So, he is a member of the class in *Inland Empire*.  He does

15  also benefit from the decision in *Regents* as well, right?

16          MR. BACH:  Well, that's one of the questions.  And

17  part of what is so difficult here is that right now, at the

18  moment, Mr. Ramirez does have his DACA status, because it was

19  returned to him in compliance with the *Inland Empire* order.

20  So, under the *Regents* order, and the other similar nationwide

21  injunctions that have issued since, he would have the

22  opportunity to renew his status.

23      But, again, we find ourselves in the same place, just like

24  with the Notice of Intent to Terminate, the NOIT, where the

25  core fundamental fact is that the false allegation of gang

1  affiliation is going to follow Mr. Ramirez, as long as the

2  government can get away with that, and as long as this court

3  does not act to enjoin the government from doing so.

4      So when he would seek to renew, I mean, it's a fait

5  accompli even at this stage, Your Honor, that the government

6  would rely on that same allegation, which would be an

7  arbitrary and capricious reliance, in violation of the APA.

8      And, similarly, in the Notice of Intent to Terminate, the

9  NOIT, reliance on that core factor at the center of the NOIT

10 is, again, in violation of the APA.  And those are the types

11 of worsening, improper behaviors that we're here to ask the

12 court to enjoin, Your Honor.

13         THE COURT:  And the problem I have, Mr. Bach, is the

14 same frustration I indicated to your co-counsel over there.

15 In this particular case, all of the briefing was really

16 towards a different issue.  And now it's all morphed into

17 something different.  And I have your second amended

18 complaint, part of your second amended complaint in front of

19 me.  And it says, on page 33 -- and this is the operative

20 complaint, correct?

21         MR. BACH:  Yes, that's right, Your Honor.

22         THE COURT:  It says:  Prayer for relief.  Award

23 damages, according to proof.  Issue a declaratory judgment

24 that Mr. Ramirez has constitutionally protected interests in

25 his DACA status and benefits incurred thereunder.  And order

1    defendants to reinstate his DACA status and work

2    authorization.  That's all it says.

3              MR. BACH:  Well, in fact, it says something else,

4    Your Honor.  It says, at the bottom of that page, if I

5    recall, and other relief that this court would deem fit and

6    proper.  Because throughout the course of any litigation, and

7    certainly here, one party, here the defendant, the

8    government, can take actions to alter the landscape.  They

9    cannot do so to prejudice the plaintiff in ways that would be

10   a sort of "gotcha" action, to cut the legs out from under the

11   relief that Mr. Ramirez needs.

12       And they certainly cannot divest the court of the ability

13   to make that ruling with the court's broad powers to fashion

14   necessary relief.  The court has that power.  The court had

15   it when the second amended complaint was filed.  The court

16   had that power when the underlying briefing was written and

17   submitted.  And it has it now, after issuance of the NOIT.

18       And with respect to your point, Your Honor, which is a

19   good one, and I understand the frustrations about the

20   shifting landscape here, because it's a source of frustration

21   to us as well, but the fundamental fact is that the framework

22   law that applies, the APA violation, the arbitrary and

23   capricious actions that the government has taken, apply with

24   equal force to where we currently stand, as we stood when the

25   briefing was first submitted.

1    When the briefing was filed, the issuance of an NTA and

2    termination of Mr. Ramirez's DACA, based on the issuance of

3    NTA, was arbitrary and capricious, for a number of reasons.

4    And all the courts to consider that issue, Your Honor, are in

5    agreement.  *Inland Empire* was in agreement.  The *Coyotl* case

6    was in agreement.  And the *Gonzales Torres* case was in

7    agreement.  And since then, since fixing -- since being

8    forced to change their behavior by virtue of the *Inland*

9    *Empire* order and the issuance of the NOIT, it still contains

10   that core fundamental flaw of the gang affiliation, which

11   remains an arbitrary and capricious violation of the APA, in

12   violation of Mr. Ramirez's due process rights.

13   And, therefore, the briefing and the law that is set forth

14   in the briefing is very on point, Your Honor.  It provides

15   the same framework that this court needs, and all the court

16   needs to rule for Mr. Ramirez and to issue the relief that

17   we're seeking here today.

18        THE COURT:  I guess, Mr. Bach, I don't necessarily

19   have an argument against that, except for procedurally where

20   we find ourselves today is very, very awkward.  And I guess

21   here's the concern:  I have defendant's notice and surreply

22   here.

23   And they point out that the court should strike all this

24   because the additional relief sought is problematic for two

25   reasons:  "The relief and accompanied argument is introduced

1   for the first time in the reply" -- which is correct -- "and

2   not in the motion for preliminary injunction.  And the relief

3   is additional to what was requested in the complaint."  Which

4   is also correct, procedurally.

5        So, given that -- and I understand Mr. Robins has been

6   busy with many of these cases in other courts, and stuff, I

7   understand that all of you understand the law in this

8   particular area.  But has the government really had the

9   opportunity then to respond to any argument that's being made

10  now?

11          MR. BACH:  Well, these are good questions, Your

12  Honor.  And the surreply that you cite to and the cases --

13  first of all, one of the cases cited was an Oklahoma case,

14  which is certainly not binding, it's out of the circuit.  But

15  for the two core reasons I referenced earlier, the second

16  amended complaint contains that all-important placeholder,

17  that say "for appropriate relief as deemed necessary."

18  Because fundamentally, it's unfair and inequitable for a

19  defendant and for the government to alter the rules of the

20  game as we go along, and then to be able to point back to the

21  pleading that was filed months ago, based on recent actions

22  that the government has taken of its own accord.

23       And there is a litany, a long line of cases in the

24  mootness area, Your Honor, establishing why cases are not

25  rendered moot, or not -- or courts are otherwise not

1    prevented from issuing appropriate relief, where defendants

2    altered their behavior during the course of proceedings.

3    Because to do so would always give the defendants an

4    opportunity to simply change the bad thing, or one of the bad

5    things that the plaintiff has complained about, and therefore

6    attempt to argue that the court no longer has the authority

7    to rule.  And that's simply not true.

8             THE COURT:  Well, let me ask you this, though.  And,

9    again, I don't have any argument against your position.  My

10   concern is that maybe this entire hearing is a little too

11   preliminary, that now given the fact that your client has

12   received his DACA status once again, the benefit of the

13   rulings of the other courts that have taken place, should the

14   appropriate thing for the court to do, legally and

15   procedurally, is to allow the government to respond to your

16   very specific argument, that now you're asking, instead of

17   the catchall, "Grant any other and further relief that the

18   court may deem fit and proper," now you've got the specific

19   argument that says:  By the way, government, you're not

20   allowed to make any assertion, at whatever level, that

21   Mr. Ramirez has been, is, a gang member, or been associated

22   with gang members, because that's been proven to be wrong.

23   Then let them respond to that argument.

24            MR. BACH:  I have a few responses to that, Your

25   Honor.  First of all, we would not have an objection to the

1  court requesting additional briefing on that issue, if the

2  government were to agree to withdraw and hold off on the

3  Notice of Intent to Terminate.  Because the clock is ticking

4  on that notice that Mr. Ramirez has to respond to.  And it

5  contains this same core flaw.

6      The emergency here is of the government's making, Your

7  Honor.  And meaningful restoration, the relief that

8  Mr. Ramirez sought in his second amended complaint, and when

9  we filed the preliminary injunction motion, meaningful relief

10  means the restoration of Mr. Ramirez's DACA pending final

11  decision on the merits.  But the government has shown itself

12  willing to take steps to try to provide empty relief, empty

13  compliance with the *Inland Empire* order, and to try to give,

14  and as Mr. Dettmer said, take away with the other hand, on an

15  improper basis.

16      And so we would not have an objection to additional

17  briefing.  But on the record as it stands -- and the

18  government has had over a year, Your Honor, to provide any

19  other corroborating evidence to support this core flaw -- but

20  fundamentally, that's where we are.  That record is set.

21  That record is not augmented by any further evidence that

22  would tend to support that allegation.  And it would be odd,

23  procedurally odd that they could find something new to say on

24  that score, in any additional briefing.  That would be the

25  kind of procedural delay that we think is unnecessary and not

1   required at this stage.  Mr. Ramirez has a clock ticking

2   against him, and should have relief from this court as soon

3   as possible.  And we believe on this record.  And that's

4   sufficient.

5           THE COURT:  Let me ask you this:  My clerk indicates

6   that Notice of Intent to Terminate was issued on April 3rd,

7   right?

8           MR. BACH:  I believe that's right.

9           THE COURT:  So his DACA status and employment

10  authorization were extended to what date?

11          MR. BACH:  To May 15th, Your Honor.

12          THE COURT:  So the timeframe this court has to decide

13  would be...

14          MR. BACH:  Mr. Ramirez's response to the Notice of

15  Intent to Terminate is due May 7th.  I understand that the

16  government can act swiftly following the submission of that

17  response.  I don't know that there's any proscribed

18  timeframe.  Certainly filing the response and then giving the

19  discretion over to the government to act, based on the

20  record, and given that it knows it's now being watched, we

21  wouldn't have any comfort that a long period of time after

22  that date would be -- Mr. Ramirez's status would be safe.

23      But until May 15th is the date on which his DACA and his

24  work authorization are currently extended to under the *Inland*

25  *Empire* order.

1     THE COURT:  All right.  Counsel, maybe I should hear

2   from Mr. Robins, and then come back to you.

3     MR. BACH:  Certainly.  I'll just say one final thing,

4   because the relief that we've been talking about and the

5   shifting landscape have required some additional constraints

6   on the government, as you see, based on our amended proposed

7   order that we submitted, along with our reply brief.

8     We, in fact, have, based on the Notice of Intent to

9   Terminate now, we have a slightly revised proposed order that

10   we would submit, which is substantially similar.  It contains

11   some language just to make clear and to prevent the

12   government from continuing to rely on this fundamentally

13   false core accusation, which is proven by its actions in the

14   Notice of Intent to Terminate, that it will not do.  And I

15   provided a copy of that proposed order to counsel for the

16   government before this hearing, Your Honor.  I have a copy

17   here as well for the court's consideration, if I could

18   approach and leave it with the clerk.

19     THE COURT:  Please.  You may.

20     MR. BACH:  If the court has no other questions from

21   me right now, I'm happy to respond to the government after.

22     THE COURT:  Thank you very much, Mr. Bach.

23     MR. BACH:  Thank you.

24     THE COURT:  Mr. Robins.

25     MR. ROBINS:  Yes, Your Honor.

1        THE COURT:  What is the government doing here,
2   Mr. Robins?
3        MR. ROBINS:  Your Honor, the government is here today
4   to explain to the court why it shouldn't grant the new
5   injunctive relief that plaintiff seeks, for the first time,
6   in their reply.
7        THE COURT:  Let me ask you this:  Is the plaintiff
8   correct that by filing the notice to terminate, that you
9   intend to once again rely on the allegations that Mr. Ramirez
10  is a gang member, has associated with gang members, and
11  therefore needs to have that DACA status terminated?
12       MR. ROBINS:  Essentially, yes, Your Honor.  The
13  language of the Notice of Intent to Terminate states that
14  USCIS intends to terminate Mr. Ramirez's DACA, based on
15  statements that he himself made regarding gang affiliations.
16  And it gives him, as he asked in his second amended
17  complaint, and as the court ordered in the *Inland Empire*
18  injunction, it gives him notice and the opportunity to
19  respond to those allegations.
20       THE COURT:  Given the record that we currently have,
21  with the government not being able to substantiate, other
22  than the allegations of the statements made by Mr. Ramirez at
23  the time he was taken into custody, and the hours following
24  that, do you have any other evidence to substantiate the fact
25  that he's a gang member or is associated with gang members?

1      MR. ROBINS:  Your Honor, that is why we have this

2  process.  And so the government would dispute the court's

3  characterization and opposing counsel's characterization that

4  there is some record or administrative record that

5  establishes, one way or the other, with absolute

6  conclusiveness, about Mr. Ramirez's gang affiliations or the

7  lack thereof.

8      The administrative challenge that is still before the

9  court in plaintiff's second amended complaint, is a challenge

10  to the automatic termination of Mr. Ramirez's DACA, by

11  issuance of a notice to appear in removal proceedings.  The

12  government has submitted a record from ICE and a record from

13  USCIS that supports that decision, in our answer.

14      But additional information from what happened in the

15  immigration court, and the government does dispute

16  plaintiff's characterization of statements made there, there

17  should be a rule of completeness applied to the full

18  immigration judge's ruling there.  And there are numerous

19  series of questions as to what preclusive effect any factual

20  finding in that proceeding would have on a further

21  administrative action by USCIS, or the ability of this court

22  to act.

23      Additionally, the declarations that plaintiff has provided

24  in support of his claims here are not actually in a record,

25  an administrative record, before USCIS.  It certainly didn't

22

1   have those statements when it terminated automatically his

2   DACA, when it issued a notice to appear.  He now has the

3   opportunity to present those arguments and those statements.

4        And so, what plaintiffs are asking for here goes against a

5   fundamental tenet of administrative law.  And that is that

6   the only actions that are reviewable are final agency

7   actions.  And so where the *Inland Empire* injunction has

8   resulted in the reinstatement of Mr. Ramirez's DACA and

9   employment authorization, through May 15th, and there is a

10  Notice of Intent to Terminate that reinstated DACA, that

11  Notice of Intent to Terminate is not a final agency action.

12  And as a matter of law -- and the government would, if the

13  court deems fit, appreciate an opportunity to respond.

14       But there are two points in response to that.  First, as a

15  matter of law, there's nothing to support that this court has

16  the ability to enjoin a non-final agency action.  And until

17  that is final, there is nothing in that potentially new

18  termination that would be reviewable before this court.

19            THE COURT:  Let me see if I understand and am

20  following you.  Because of what happened in *Regents* and

21  *Inland Empire,* the government has returned his DACA status to

22  him.  He has full DACA status as of right now?

23            MR. ROBINS:  Yes.

24            THE COURT:  The government has filed a Notice of

25  Intent to Terminate.  And you're indicating that as of right

1    now, there is nothing for this particular court to be able to

2    review, because there's no final agency action that has

3    occurred as of yet?

4             MR. ROBINS:  That is correct, Your Honor.

5             THE COURT:  That he will have the opportunity, when

6    he makes his appearance regarding the notice of intent, to

7    make these very same arguments at that point in time.  And

8    then, depending upon what that agency decides, then the court

9    has the ability to review that?

10            MR. ROBINS:  The court may have the ability to review

11   it then.  We might be in a very similar circumstance to the

12   government's prior arguments in our motion to dismiss in

13   terms of what the court would ultimately have jurisdiction

14   over.  But that depends on the final agency decision and how

15   it's formed and what it ultimately says.

16       So, he will have the opportunity to bring that challenge

17   to this court.  There may be jurisdictional reasons why, in

18   the agency's exercise of discretion, the court might not

19   ultimately have jurisdiction.  But I'll note, Your Honor

20   previously held that what the government argued was a

21   discretionary, non-reviewable action with regard to the

22   automatic termination.  The court had jurisdiction over those

23   actions in the termination of Mr. Ramirez's DACA the first

24   time.

25       The second -- if it were to happen a second time, the

24

1  jurisdictional analysis would be different.  Both under the

2  Administrative Procedure Act and under the Constitution.  But

3  we're not there yet.

4        THE COURT:  Mr. Robins, let me ask this:  I get

5  nervous when arguments are morphing in front of me, basically

6  kind of as we speak, from both sides.  Because a lot of work

7  goes into the preparation for these particular hearings, in

8  terms of where I think we're going.  Then all of a sudden

9  everything kind of shifts.  And the whole point about due

10  process is to be able to allow both sides to fully articulate

11  their arguments in the written briefing, so the court has the

12  ability, in advance, to look at the case law, look at the

13  Oklahoma case, look at the 11th Circuit, look at what the

14  rulings have held around the country, rather than kind of

15  fly, you know, by the seat of my pants.

16     So, let me ask you this:  Given that this really has

17  morphed into a completely different argument than what all

18  the memos indicate, does it make more sense, perhaps, to

19  allow the parties to brief this particular issue before the

20  court decides?

21        MR. ROBINS:  Yes, Your Honor, the government would

22  respect that.  But there's some notion that even that

23  practice might not even be necessary where, as the court has

24  noted, the additional relief that plaintiffs are asking for

25  is not in the second amended complaint itself.  And so even a

1    supplemental or new motion for preliminary injunction that

2    challenges the Notice of Intent to Terminate, and the

3    intended reasons for the termination, the government would

4    argue and would be happy to argue in papers as well, but

5    would argue today, would not appropriately be before the

6    court without amendment of the complaint.

7         And even then, amending the complaint again to challenge a

8    non-final action is not something the court would have

9    jurisdiction over.  Now, that might be ultimately what we

10   brief before the court.  But to allow those additional rounds

11   of briefing to get to that result may ultimately be where we

12   wind up.

13        THE COURT:  Given what's happening in terms of the

14   timeframes we're looking at, is there a necessity for us to

15   have to act quickly in this?

16        MR. ROBINS:  No, Your Honor.  And this is why:

17   Plaintiffs have characterized Mr. Ramirez's reinstated DACA

18   as expiring on May 15th.  And that is correct.  If USCIS

19   receives a response and decides to terminate Mr. Ramirez's

20   DACA, again, and does so before the 15th, then that

21   termination would be effective as of the date it was issued.

22   And that might be subject to an emergency motion in this

23   court.

24        But if USCIS were either not to terminate Mr. Ramirez's

25   DACA, or not to make a decision before May 15th, here's what

1    would happen:   Mr. Ramirez's DACA and employment

2    authorization would simply expire.  And so in terms of the

3    ultimate relief that plaintiffs asked for and that he

4    specifically asks for in the now amended -- I believe it said

5    this in the supplemental or the amended proposed order that

6    they submitted with their reply, asking that Mr. Ramirez be

7    able to maintain DACA and work authorization until a decision

8    on the merits of his claims; even that ask for relief goes

9    beyond what would be required by any law or practice or

10   policy in that his reinstated DACA, subject to the *Inland*

11   *Empire* injunction, would expire on its own on May 15th.

12       So nothing supports the continuation of DACA and

13   employment authorization, after that date.  And so while the

14   government acknowledges that a termination prior to that date

15   does and would take DACA and employment authorization away

16   from Mr. Ramirez, potentially for a number of days, and that

17   he may claim that that causes him some irreparable harm, we

18   would acknowledge that he may have that claim.  That

19   nonetheless, the expiration in the natural course of the

20   reinstated DACA on May 15th would cut against any real

21   exigency here.  And any claims Mr. Ramirez has with regard to

22   a new final action, if that is termination, could be heard in

23   due course.

24       I would direct the court -- and, again, without the

25   opportunity to brief these issues, the government didn't have

1  the opportunity to bring this case to the court's

2  attention -- but the *Gonzales Torres* matter that opposing

3  counsel cites in the Southern District of California, for

4  similar jurisdictional rulings to Your Honor, and other

5  courts who have heard the matter, and the preliminary

6  injunction that was issued in that case, that was the first

7  iteration of that matter.

8      But after Mr. Gonzales had his DACA reinstated pursuant to

9  a preliminary injunction there, the government pursued a

10 Notice of Intent to Terminate his reinstated DACA.  The court

11 there then addressed two things, recently.  The court denied

12 a second motion for preliminary injunction that would have

13 allowed him to maintain or to get his DACA back, after it was

14 terminated and while he was litigating the termination; and

15 ultimately dismissed his challenge under the APA and the

16 constitutional claims based on the process that he had

17 received.

18     And so I would direct the court to that case as

19 instructive of the relief that plaintiff is seeking here.

20         THE COURT:  Thank you, Mr. Robins.

21         MR. ROBINS:  Thank you, Your Honor.

22         MR. BACH:  Your Honor, a few points in response to

23 Mr. Robins.  First, to begin with, Your Honor made an

24 important due process point in one of your questions to

25 government's counsel, about the shifting arguments that the

1   court has to contend with here.  That is really,

2   fundamentally, at the heart of the shifting relief and the

3   need for relief that has morphed over time.  Notably, those

4   shifting arguments are emblematic of the type of shifting on

5   all sides' behavior that the government has displayed, with

6   respect to Mr. Ramirez, over the past year.

7        They have, as we've put forth in our papers, Your Honor,

8   there's a number of submissions to both this court and to the

9   immigration court which have argued diametrically opposed

10  things with respect to the gang accusation.  For example, on

11  the one hand arguing in the record and on the I-213 form,

12  that Mr. Ramirez's tattoo was a gang tattoo.  And then at the

13  January 2018 immigration court hearing, submitting evidence

14  in the form of articles that were pulled off the web that

15  simply state that gangs often discourage their members from

16  getting tattoos, and therefore, one could consider the

17  absence of tattoos to also be indicia of gang membership.

18       That boggles the mind, Your Honor, and is the type of

19  shifting argument, shifting story, that has undergirded the

20  government's behavior, not only in its briefing, but also in

21  the administrative process, and gets to the heart of the

22  arbitrary and capricious conduct.

23       The other points -- you asked, to begin with, you asked

24  Mr. Robins:  Is there any evidence to suggest that

25  Mr. Ramirez is a gang member, beyond what is stated in a

1   conclusory fashion in the I-213.  And counsel did not answer

2   Your Honor's question, because there simply isn't any other

3   evidence.

4        The procedural arguments that the government is trying to

5   make, really amount to trying to hide and couch the court's

6   determination in a very improperly limited record, would

7   simply ignore an entire body of case law about the APA

8   governing agency conduct on the basis of failure to follow

9   its own policies and procedures, arbitrary and capricious

10  conduct, and abuse of discretion.

11       And it's really instructive to hear those set out in open

12  court.  Because every time that the government has been asked

13  in this court and in other courts to come forth with any

14  information on the record, in the record that it has to

15  establish his gang ties, it has been unable to do so.

16       And as Mr. Dettmer said to begin with, the concession made

17  at that March 28, 2017 hearing, it really is crucial, Your

18  Honor, because what the government lawyers said to the

19  immigration judges on this record, "I don't believe we have

20  any basis to argue that he is a public safety concern."  On

21  this record.

22       So the government is reviewing its own record, the same

23  record that it had in the I-213, it had it at the time it

24  made that statement.  And on the record said it didn't have

25  the ability to make that determination.  Nothing has changed

1   since then.  There is nothing in the record it can point to.

2   And that is, on the other hand, counterbalanced by the great

3   weight of evidence that Mr. Ramirez has submitted to disprove

4   those allegations.

5       Mr. Robins also mentioned a fundamental tenet of

6   administrative law regarding the finality of agency action.

7   While there are fundamental tenets of administrative law that

8   the government is seeking to prevent this court from

9   considering, and that are the entire governing bodies of law

10  with respect to arbitrariness and capriciousness that

11  underlie the motion, and as I mentioned earlier, Your Honor,

12  despite the shifting landscape, fundamentally the core cases

13  that we have cited, the *Judulang* case is particularly

14  instructive, contains a number of very helpful and guiding

15  principles about what the government can do and how it should

16  act and how courts should review that agency action.

17      And really to hear it from the government, the court has

18  no role here in supervising its conduct or an ability to

19  unwind the harm.  But as the *Judulang* case said, for example,

20  the AP requires the government to "Exercise its discretion in

21  a reasoned manner, based on non-arbitrary, relevant factors."

22  It also provides the court with authority to review and

23  determine whether the decision was, "Based on a consideration

24  of the relevant factors and whether there has been a clear

25  error of judgment."  That is the body of law that enables

1  this court to act, and to act now on the record in front of

2  it, and to provide the relief that is necessary to right the

3  wrong when those wrongs have been shifting over time.

4      You know, it is remarkable that the government is trying

5  to prevent the court from acting, to rely on this

6  fundamentally inadequate record at any time in the future; it

7  really is a buying-time exercise on its part.

8      And, you know, the government at the end acknowledged the

9  harm that Mr. Ramirez is facing by not being able to -- would

10  face by not being able to work.  He is, in fact, working now

11  that his DACA status has been restored and his employment

12  authorization has been restored.  He's working to provide for

13  himself and his family.

14      If that were terminated by agency action -- and the

15  government has admitted and all of the courts who have

16  considered that issue have found irreparable harm to DACA

17  recipients when their benefits are taken away.  That is not a

18  seriously disputed point.

19      And, finally, I would say that the notion that Mr. Ramirez

20  could renew, based on the record in front of it, and if the

21  government is not enjoined from relying on these false

22  accusations, would be futile.  The notion that he should or

23  could submit a renewal before the 15th, again, would fold in

24  with the same type of -- we'd find ourselves facing the same

25  type of argument about his gang affiliation.  And he would

1   confront that again, leaving it in the hands of the

2   government decisionmakers at CIS who would rubber-stamp that

3   determination.

4        Finally, as to the *Gonzales Torres* case counsel mentioned

5   at the end of his argument, there are key factual differences

6   with that case.  That case stands for the unremarkable

7   position that agencies can act when they follow their rules.

8   There was no similar scenario in that instance where there

9   was a woefully inadequate administrative record.  The court

10  there considered an administrative record, which had

11  corroborating witnesses, which had an arrest with a

12  chargeable offense under the SOP and the Kelly memorandum,

13  and found that the government had complied with its

14  procedures.

15       That is simply not the case here.  This case has been

16  tainted by the fundamental core allegations of gang

17  affiliation, which have been proved false, time and again.

18       And so unless there's meaningful relief from this court to

19  restore that DACA status, pending a final decision on the

20  merits, we'll find ourselves with a shifting landscape.  We

21  need to put in place relief that will preserve the status quo

22  moving forward for Mr. Ramirez and for the parties, pending a

23  final decision on the merits.  And we certainly would not

24  object to doing that if the court requires any further

25  argument or briefing on any of these subjects, Your Honor.

1          THE COURT:  Mr. Bach, I don't have -- again, how do I

2    put this best?  To the non-lawyers that are present in the

3    courtroom listening to this, I'm sure they're lost, simply

4    because on one hand you're arguing fundamental issues of due

5    process, what's right, what's wrong, what's justice.  The

6    concern the court finds itself in is this procedural status

7    that we are right now.

8          The arguments that were made and the relief that was

9    requested, other than the catchall phrase in the bottom of

10   your complaint, was for something different.  And that

11   something different has already occurred.  And he's received

12   his DACA status and his employment authorization.

13          I'll tell you right now, had that not happened with *Inland

14   Empire* and *Regents*, this court was actually ready to grant

15   your preliminary injunction at this point in time.  But now

16   that argument has shifted.  Now you're asking me for

17   different relief.  And I think in all fairness to the

18   government, they get an ability to brief that specific issue

19   and submit that briefing to the court.

20          My concern is much more from the procedural aspect of it.

21   Not that I'm so concerned about the Court of Appeal, but I

22   want to do my job the way I believe it should be done,

23   properly, and then let the Court of Appeals deal with

24   whatever issues they believe are appropriate.

25          Let me ask you this:  Today is May 1st.  How quickly could

 1   you have some briefing for the government to be able to
 2   respond to?
 3          MR. BACH:  One moment, Your Honor.  Your Honor, I
 4   think a week would be sufficient for us to submit what I
 5   would imagine would be a supplemental argument supporting the
 6   preliminary injunction motion.  I would leave it to the
 7   government as to how much time they need to respond to that.
 8   I wouldn't imagine much more.  I think their arguments are
 9   similar and you've heard them here today.  But fundamentally
10   what's important is that the status quo be maintained,
11   pending a resolution of the decision following that briefing,
12   Your Honor.
13          THE COURT:  All right.  Assuming that would be the
14   8th, then, at the end of business on next Tuesday.
15   Mr. Robins, how long would you need to respond to that?
16          MR. ROBINS:  Your Honor, we would similarly ask for
17   one week.
18          THE COURT:  That will put us right on the 15th.
19          MR. ROBINS:  It would, Your Honor.
20          THE COURT:  Is the government willing to leave the
21   status quo as is, without making any changes, to give the
22   court an opportunity to review the briefing that has been
23   submitted and decide whether or not we even need any
24   additional argument?
25          MR. ROBINS:  Your Honor, I'm not authorized to agree

1  to that.

2          THE COURT:  All right.

3          MR. ROBINS:  If a shorter briefing schedule is

4  necessary, then that's something we would be amenable to.

5  But we would ask for a similar amount of time as plaintiffs

6  have.

7          MR. BACH:  I would simply say it is within the

8  court's authority to stay that action.

9          MR. ROBINS:  I would respectfully disagree that the

10  court has that authority.

11          THE COURT:  All right.  Let's do this.  Like I said,

12  today is the 1st.  Let me have the government's (sic)

13  response due by Monday the 7th.  Let me have the government's

14  reply to that be by the 14th.

15          MR. BACH:  Just to clarify, plaintiff's supplemental

16  briefing by the 7th?

17          THE COURT:  Correct.

18          MR. BACH:  And the government's by --

19          THE COURT:  By the 14th.

20          MR. BACH:  That would be fine with us, Your Honor.

21  To the extent the government raises new issues in its

22  opposition, we would reserve our right to submit a reply

23  brief, which we would intend to do within two business days.

24          THE COURT:  Based on that, the court can make a

25  determination either fairly quickly, or decide what else it

1    needs to do, in case it wants to bring counsel back for

2    argument.  I understand you're based out of Washington, D.C.

3           MR. ROBINS:  Yes, Your Honor.

4           THE COURT:  I hate that flight coming back.  You know

5    what I mean.

6           MR. BACH:  Your Honor, is there a particular ruling

7    on the record or court's minute order with respect to staying

8    the proceedings pending the resolution of that briefing?

9    Again, there's a response that Mr. Ramirez has due to the

10   Notice of Intent to Terminate.  And we're right up against

11   the 15th with that schedule.

12          THE COURT:  Mr. Robins is telling me I don't have

13   that authority to do that at this point in time.

14          MR. BACH:  We obviously disagree.

15          THE COURT:  I will make that finding.  I will make

16   that ruling that the court orders the government to suspend

17   the proceedings until we can deal with this particular issue.

18   And I understand, Mr. Robins, you object to the court --

19          MR. ROBINS:  I do, Your Honor.  And I would ask,

20   though, while the court may be making that ruling, wouldn't

21   it make sense to nonetheless require plaintiff to respond to

22   the Notice of Intent to Terminate on the existing schedule?

23   If the court wishes to stay any final action on the Notice of

24   Intent to Terminate -- the government would still disagree

25   the court has the authority to do that -- but for the court

1  to prevent this administrative process from going forward,

2  seems problematic, even more problematic, Your Honor.

3          THE COURT:  Well, if for whatever reason the

4  government decided that arguments made by Mr. Ramirez made

5  sense, then you're right, the court might not even need to

6  deal with this in the future.

7          MR. BACH:  Your Honor, I'd simply say we don't have

8  an objection to submitting Mr. Ramirez's response to the

9  Notice of Intent to Terminate on the 7th -- by the 7th at the

10 time it's currently due.  If there's any further action by

11 CIS or the government --

12         THE COURT:  Well, Mr. Bach, I think Mr. Robins may

13 have a point, I'm not sure the court has the authority to

14 suspend that.  So let me ask for the briefing to occur as it

15 is, and then the court can make a ruling fairly quickly if

16 need be.  All right?

17         MR. BACH:  Thank you, Your Honor.

18         THE COURT:  Mr. Robins, one final question for you,

19 counsel.

20         MR. ROBINS:  Yes, Your Honor.

21         THE COURT:  I have your opposition to the motion for

22 preliminary injunction in my hand, page 12.  You write in

23 there, "Defendants have strong interests in enforcing U.S.

24 immigration laws effectively."  If I left out -- you agree

25 with that, correct?

1          MR. ROBINS:  Yes.

2          THE COURT:  If I delete one word from that, I'm going

3     to ask if you still agree.  "Defendants have strong interests

4     in enforcing U.S. laws effectively."  Do you agree?

5          MR. ROBINS:  I would, Your Honor.

6          THE COURT:  Gentlemen, thank you.  We'll be at

7     recess.

8                          (Recess.)

9

10                    C E R T I F I C A T E

11

12

13       I certify that the foregoing is a correct transcript from

14    the record of proceedings in the above-entitled matter.

15

16

17

18    */s/ Debbie Zurn*

19    DEBBIE ZURN
      COURT REPORTER

20

21

22

23

24

25

The Honorable Ricardo S. Martinez
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| Daniel Ramirez Medina, | CASE NO. 2:17-CV-00218-RSM-JPD |
| Plaintiff, | **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | |
| Defendants. | |

1    This matter comes before the Court on Plaintiff's February 6, 2018 Motion for Preliminary

2 Injunction.  Upon consideration of Plaintiff's motion and the record, IT IS ORDERED that:

3    1.  Plaintiff's motion for preliminary injunction is GRANTED; and

4    2.  Defendants are ORDERED to restore Plaintiff Daniel Ramirez Medina to the status quo ante

5        by maintaining his DACA status and work authorization until a decision on the merits of his

6        claims;

7    3.  Defendant USCIS is ORDERED to accept and process Mr. Ramirez's future DACA renewals

8        and work authorization applications without requiring any showing above and beyond what

9        would have been required had his DACA status and work authorization not previously been

10       terminated, and without asserting that Mr. Ramirez is a gang member, gang affiliated, or a

11       threat to public safety or national security;

12   4.  Defendant USCIS is ENJOINED from asserting, adopting, or relying in any proceedings on

13       any statement or record purporting to allege or establish that Mr. Ramirez is a gang member,

14       gang affiliated, or a threat to public safety.

15

16   Dated this ___ day of _____, 2018.

17                                                    _____

18                                                    THE HONORABLE RICARDO S. MARTINEZ
                                                      CHIEF UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &     [PROPOSED] ORDER GRANTING PLAINTIFF'S
Crutcher LLP       MOTION FOR PRELIMINARY INJUNCTION
                   Case No. 2:17-cv-00218-RSM-JPD
                                                                    1

PRESENTED BY:

/s/ *Theodore J. Boutrous, Jr.*
GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
JESSE S. GABRIEL (CA SBN 263137), *pro hac vice*

/s/ *Mark D. Rosenbaum*
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*
ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*

***Attorneys for Plaintiff***

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:17-cv-00218-RSM-JPD

2