The Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL RAMIREZ MEDINA,<br>    Plaintiff,<br>v.<br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>    Defendants. | Case No. 2:17-cv-00218-RSM-JPD<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br>**[DKT. NO. 122]**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

**INTRODUCTION**

Plaintiff alleges that Defendants "game the judicial system by changing the landscape during the course of litigation to frustrate a court's ability to enjoin shifting wrongful conduct." Dkt. 130 at 5. In reality, Defendants reinstated Plaintiff's DACA and employment authorization in compliance with a preliminary injunction issued in a class action case to which Plaintiff is a mandatory member.[1] Also in compliance with the preliminary injunction, Defendants issued Plaintiff a Notice of Intent to Terminate ("NOIT") his reinstated DACA and employment authorization, and provided him an opportunity to submit evidence and arguments in response before a final decision was made. Plaintiff submitted a response to USCIS, Dkt. No. 130 at 3, and the final decision remains pending. It is Defendants' position that the relief provided through the *Inland Empire* injunction provided Plaintiff with the relief he sought from this Court, and the only relief this Court found it had the authority to grant. *See* Dkt. No. 116 at 12.

Contrary to Plaintiff's arguments here, the question of his gang affiliation is not settled in his favor. Defendants have yet to complete its evaluation of Plaintiff's response to the notice of intent to terminate. Thus, there is presently no final agency action for this Court to enjoin, nor is there an agency decision this Court can analyze for abuse of discretion. Were the Court to enjoin Defendants from terminating Plaintiff's DACA on the basis of gang affiliation, it would be an impermissible act of judicial fact-finding imposed on an agency before the agency has had the opportunity to complete its review of Plaintiff's evidence for itself.

It is Plaintiff who continues to move the line by raising new claims and seeking new relief from this Court. His request for relief now far exceed the scope of his Second Amended Complaint, revised motion for preliminary injunction, as well as the scope of relief such an injunction can or should provide.

//

//

---

[1] *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018).

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

1

**I.   Plaintiff's new requests for extended DACA and employment authorization go well beyond preserving the status quo.**

The purpose of a preliminary injunction is to "preserv[e] the status quo and prevent[] the irreparable loss of rights before judgment." *Sierra On–Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1422 (9th Cir. 1984). Here, the additional injunctive relief Plaintiff requested in the reply in support of his preliminary injunction motion, and which he expands upon in the supplemental briefing requested by the Court, will have no effect to preserve the status quo or prevent the irreparable loss of rights before judgment, and should be denied.

Plaintiff's original motion for preliminary injunction asked the Court to "restore his DACA status and work authorization pending a decision on the merits of his claims." Dkt. No. 122 at 24. Plaintiff now seeks an injunction that would require Defendants to "restore his DACA status and work authorization pending a decision on the merits, and to process his DACA renewal application without regard to the unsupported allegation of gang affiliation." Dkt. No. 124 at 11. Plaintiff's supplemental briefing further alters that request for relief by requesting that the Court: "(1) maintain the status quo by enjoining Defendants from terminating Plaintiff's DACA status and work authorization pending adjudication on the merits and (2) enjoin Defendant USCIS from continuing to falsely accuse Plaintiff of being a gang member in any further proceedings." Dkt. No. 130 at 9.[2]

Prior to its first termination, Plaintiff's most recent grant of DACA would have been valid to May 4, 2018. *See* Dkt. No. 78, Pl.'s 2d Am. Compl. ¶ 42. The *Inland Empire* injunction that ordered Plaintiff's DACA reinstated required extension of Ramirez's DACA through May 15, 2018. *See Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018). Accordingly, regardless

---

[2] The further amended proposed order goes even further, proposing that USCIS be ordered to "accept and process Mr. Ramirez's future DACA renewals and work authorization applications without requiring any showing above and beyond what would have been required had his DACA status and work authorization not previously been terminated, and without asserting that Mr. Ramirez is a gang member, gang affiliated, or a threat to public safety or national security;" and that USCIS be enjoined from "asserting, adopting, or relying in any proceedings on any statement or record purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated, or a threat to public safety." Dkt. No. 130-2.

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

2

of whether Defendants act to again terminate Plaintiff's DACA by May 15, 2018, or allow Plaintiff's reinstated DACA to expire on its own, there is no basis for Plaintiff's unsupported claim that he should have his DACA and employment authorization reinstated pending an adjudication by this Court on the merits of his claim. In other words, had Defendants never acted to terminate Plaintiff's DACA, he would have no claim to the continuation of that DACA beyond May 4, 2018. Additionally, even if Plaintiff had a new initial or renewal DACA request pending before USCIS,[3] Plaintiff has not and cannot show an entitlement to the continuation of a prior expired DACA grant. *See, e.g., Gonzalez-Torres v. U.S. Department of Homeland Security, et al.*, Case No. 17-cv-1840 (S.D. Cal.), Dkt. No. 29 (Attached as Exhibit A) (Order denying motion to modify preliminary injunction to "'enjoin the expiration of Mr. Gonzalez's DACA status and employment authorization pending final resolution of his renewal application,' including the time spent pursuing administrative and legal remedies."); *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) ("the only agency action that can be compelled under the [Administrative Procedure Act ("APA")] is action legally required.")[4]

## II. Plaintiff's claims are for equitable relief from non-final agency action, going beyond the scope of his operative complaint and the authority of this Court.

Plaintiff's supplemental briefing also asks the Court to "maintain the status quo . . . pending adjudication on the merits," and "enjoin Defendant USCIS from continuing to falsely accuse Plaintiff of being a gang member in any further proceeding." Dkt. No. 130 at 1. Plaintiff argues that "the Court need not and should not wait for USCIS to again terminate Mr. Ramirez's DACA before righting the government's wrongful conduct." *Id*. Rather, Plaintiff argues that the injunctive relief he now seeks is supported by the Second Amended Complaint's allegations that Plaintiff was harmed because Defendants' falsely labelled him as a gang affiliate. *Id*. at n.8.

---

[3] Notably, on information and belief, Defendant USCIS states that as of today, it does not have a record in its systems of receiving a new DACA renewal request from Plaintiff.

[4] Notwithstanding that court's finding, Defendants maintain that Gonzalez-Torres' challenge to Defendants' second termination of his DACA, with notice and an opportunity to respond, was a new claim outside of his original complaint.

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

3

The problem with Plaintiff's argument is that the additional relief he now seeks is not supported by the legal claims that form the foundation of the Second Amended Complaint, which all go to Plaintiff's procedural interest under the APA and U.S. Constitution, not the merits of the agency adjudication. Plaintiff's claim that the prior termination was arbitrary and capricious, consisted of three related claims: (1) that the decision to terminate Ramirez's DACA "despite the fact that multiple prior and more thorough analyses had concluded that he was eligible for DACA is the sort of inconsistency that is the hallmark of arbitrary action," (2) that the assertion that Ramirez "is gang affiliated is implausible and 'runs counter to the evidence before the agency'" and that Defendants "have provide no analysis or expert opinion to support their conclusion regarding Mr. Ramirez's tattoo, and their refusal to engage with contrary evidence violates the APA," and (3) that Defendants failed to "adhere to [their] own internal operating procedures." Dkt. No. 78 at ¶¶ 88-90. Plaintiff's claim that the prior termination was unconstitutional sought to establish a substantive due process interest (liberty, reputation, property) in Plaintiff's DACA to argue that Ramirez should be afforded additional process in the termination of his DACA. *See* Dkt. No. 78 at ¶ 96. Plaintiff's declaratory relief claim seeks an order directing reinstatement of his DACA based on an alleged violation of his rights under the Fifth Amendment, and cites to two cases that discuss the process due. Dkt. No. 78 at ¶¶ 149-150, citing *Akhtar v. Burzynski*, 384 F.3d 1193, 1202 (9th Cir. 2004); *Walters v. Reno*, 145 F.3d 1032, 1036, 1042-44 (9th Cir. 1988).

Notably, in rejecting Defendants' arguments that the Court lacked jurisdiction, the Court found that the jurisdiction limiting provisions on the Immigration and Nationality Act did not appl[y] "to the narrower issues presented in this case; specifically, whether Defendants complied with their own non-discretionary procedures when taking Plaintiff into custody and questioning him at the Tukwila facility, which then led to the issuance of an NTA, rescission of his work authorization and, ultimately, termination of his DACA status." Order on MTD, Dkt. 116 at 12. As to the constitutional claims, in finding that Plaintiff had stated a due process claim, the Court stated that "[w]hat process is due, and whether Plaintiff received such process, are ultimately

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

4

question for another day." Dkt. No. 116 at 18.[5] Plaintiff has not shown why the Court should now construe his claims any different and the Court should find that Plaintiff's newly raised claims are not properly before the Court for purposes of Plaintiff's request for injunctive relief.

Additionally, even the authority that Plaintiff cites recognizes limitations to such equitable relief exceptions. A plaintiff must still establish that: "jurisdiction was proper," *SEC v. United Fin. Grp., Inc.*, 474 F.2d 954, 358-59 (9th Cir. 1973); *see United States v. Coca-Cola Bottling Co. of Los Angeles*, 575 F.2d 222, 228 (9th Cir. 1978) ("Unless otherwise provided by statute, all inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.") (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)); he is "entitled to relief," *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002); and that "federal secured rights are invaded." *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964), *abrogated by Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017) (demanding caution "with respect to damages actions implied to enforce the Constitution itself.").

Here, jurisdiction is not proper over the new claims Plaintiff now raises because such claims are specifically addressed by statute in a manner that limits this Court's jurisdiction over those claims, and Plaintiff's allegations fail to establish an entitlement to relief or invasion of federally secured rights.

Plaintiff's newly raised challenges to the ongoing NOIT process are improper because they attempt to gain an advisory opinion and influence Defendants' non-final action. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104-05 (9th Cir. 2007); *Kings Cty. v. Surface Transportation Bd.*, 694 F. App'x 472, 473 (9th Cir. 2017) ("We have neither Constitutional jurisdiction nor statutory jurisdiction because the Declaratory Order was not final. Expressing our views regarding that

---

[5] Thus, Defendants disagree that Plaintiff ever challenged as unlawful Defendants' assertion that Plaintiff is gang affiliated, and that claim is not subject to a mootness analysis. Even if such claim were already before the Court and the allegations regarding Defendants' conduct would be capable of repetition during the adjudication of the present notice of intent to terminate, Plaintiff would have the opportunity to seek review of those claims.

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

5

order would amount to an advisory opinion, which would not resolve 'concrete legal issues, presented in actual cases, not abstractions.'") (citations omitted). Plaintiff's own citations to APA jurisprudence support Defendants' position. Indeed, when considering agency action, courts consider whether the agency "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a *differen[ce] in view* or the product of agency expertise" Dkt. No. 130 at 6-7 (emphasis added), citing *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007); *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1409 (9th Cir. 1996) ("Allowing judicial review in the middle of the agency review process unjustifiably interferes with the agency's right to consider *and possibly change its position* during its administrative proceedings.") (emphasis added).

In this regard, Plaintiff's citations to *Anderson v. Babbitt*, 230 F.3d 1158 (9th Cir. 2000) and *Fort Sumter Tours, Inc. v. Andrus*, 440 F. Supp. 914, 919 (D.S.C.), *aff'd* 564 F.2d 1119 (4th Cir. 1977), are inapposite because those cases discuss administrative exhaustion – a concept distinct from finality.

> Exhaustion of administrative remedies is often nonjurisdictional in nature. *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue . . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). In contrast, final agency action is necessary for there to be a waiver of sovereign immunity under the APA. Absent such a waiver, courts are without jurisdiction to entertain suits against the United States. *Rattlesnake Coal.*, 509 F.3d at 1105 ("Before final agency action has occurred, an action against the [United States] is premature and a federal court lacks subject matter jurisdiction to hear the claim."). For this reason, the Court finds Plaintiffs' proffered cases to the contrary uninformative and unpersuasive.

*Alegre v. Jewell*, No. 16-CV-2442-AJB-KSC, 2017 WL 3525278, at *8–10 (S.D. Cal. Aug. 15, 2017). Here, the present question is not the efficacy or legal need for further review before the agency; the question is whether the nullification of an administrative decision in the first instance followed by a newly issued notice of intent to take action is sufficiently final for review. It is not.

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

6

There is no record for review, nor is there a decision to review. Nor does any legal consequence flow from USCIS's notice of intent to take action. *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016) (a final agency action "must mark the 'consummation' of the agency's decisionmaking process [. . . and] the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'") ((internal citations and modifications omitted) (citing *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997).

Plaintiff's separate reliance on the injunctive relief provision of the Administrative Procedure Act is also misplaced, as there must be final agency action to allow for an injunction under Section 705.

> The Court agrees with Defendants that the only reasonable interpretation of § 705 is that contained in the Attorney General's Manual. First, "[t]he Supreme Court has accorded deference to the interpretations of APA provisions contained in the Attorney General's Manual, both because it was issued contemporaneously with the passage of the APA and because of the significant role played by the Justice Department in drafting the APA." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1012 n.7 (9th Cir. 1987) (citing *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 546 (1978)). Second, even without the guidance contained in the Attorney General's Manual, giving § 705 the jurisdictional reach Plaintiffs argue it has would be inconsistent with the restriction on jurisdiction contained in § 704. It is a basic tenant of statutory construction that the courts must "avoid inconsistency" and "superfluity and nullities." *In re Loretto Winery Ltd.*, 898 F.2d 715, 722 (9th Cir. 1990). Accordingly, the Court will not interpret § 705 in such a way that renders it inherently inconsistent with § 704.

*Alegre*, 2017 WL 3525278, at *8–10.

Finally, Plaintiff argues that his claimed violation of due process rights is separately entitled to injunctive relief because Defendants' actions are "fundamentally unfair" and are exemplary of the "type of contradictory conduct that is fundamentally unfair under the Due Process Clause. . . ." Dkt. No. 130 at 8, 9. However, the cases cited by Plaintiff do not support a claim of a constitutional violation regarding Defendants' consideration of alleged gang affiliation nor do they support a separate reason for the Court to enjoin Defendants' decision making procedures. Notably, even in *Hata v. United States*, the Ninth Circuit held that "even if Hata could establish a protected property interest in her [Military Claims Act], she has not shown that the administrative procedures applied by the Air Force were constitutionally insufficient. 'The

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

7

essential requirements of due process . . . are notice and an opportunity to respond." 23 F.3d 230, 234 (9th Cir. 1994), citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Here, that notice and an opportunity to respond are precisely what Plaintiff has received pursuant to the *Inland Empire* injunction. And, while this Court found that Plaintiff had stated a constitutional claim, the Court stated that "[w]hat process is due, and whether Plaintiff received such process, are ultimately question for another day." Dkt. No. 116 at 18.

Plaintiff now attempts to bootstrap from that holding and the claims in his Second Amended Complaint to assert another new claim – that Defendants violated due process through the "use of unsupported allegations that are unsupported by the evidence available to the agency, particularly in the face of on-the-record concessions that the government does not have evidence to support a finding that Mr. Ramirez is a public safety risk." Dkt. No. 130 at 9. As discussed, not only is this new legal theory not appropriately before the Court, but Plaintiff cannot support this claim to justify a grant of injunctive relief.

Even Plaintiff's characterization of his own allegations are nothing like the criminal defendants in *Raley v. Ohio*, 360 U.S. 423, 437-39 (1959), and *Cox v. Louisiana*, 379 U.S. 559, 568-571 (1965). *See id*. Plaintiff clearly has notice and an opportunity to respond to the allegations against him, and even if there were a scenario where a constitutional claim that shocked the conscience and was so egregious that it was appropriate to enjoin ongoing administrative procedures with notice and an opportunity to respond, Plaintiff's claims do not rise to that level.[6] In particular, Defendants have already argued that the termination of Plaintiff's

---

[6] Of note, dangerousness to the community for purposes of an immigration bond hearing is different from the Department of Homeland Security's assessment of how to exercise discretion with regard to DACA requests. *Compare Matter of Drysdale*, 20 I. & N. Dec. 815, 817 (BIA 1994) (immigration detainees have the burden of demonstrating that they are not a danger to the community) and *Matter of Guerra*, 24 I. & N. Dec. 37, 40-41 (BIA 2006) (relevant factors in determining whether an alien should be released from immigration custody include arrests, convictions, and how extensive, recent, and serious the alien's criminal activity is); *with* Dkt. No. 90-4 ("If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities, and ICE does not plan to issue an NTA, the officer should refer the case to HQSCOPS, though the normal chain of command, to determine whether or not a NOIT is appropriate. . . ."); *see*, *e.g*., Dkt. Nos. 90-6 and 52-5, Q:55 ("Indicators that you pose such a

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

8

DACA without advance notice was supported by Plaintiff's own statements. *See* Dkt. No. 123 at 9-10, citing ICE Certified Administrative Record at 25 ("Notably, when asked about whether he is or was involved with gang activity, Plaintiff did not respond simply with a no, the record reflects that he responded 'No not no more.' Plaintiff then stated that he 'used to hang out with the Sureno's in California,' 'fled California to escape from the gangs,' and 'still hangs out with the Paizas in Washington State.'") (citations omitted).

Moreover, as discussed in Section I, an injunction limiting how Defendants could adjudicate Plaintiff's future DACA requests would not address the injuries he alleges with regard to DACA or employment authorization. And finally, as the Court itself noted, it is not clear that the Court has jurisdiction to consider the merits, rather than the process, of Defendants' DACA adjudications.  Dkt. No 116 at 12 ("the Court agrees with Defendants that, if Plaintiff were asking for review of the government's ultimate discretionary decision to terminate his DACA status, section 1252(g) would strip this Court of jurisdiction to review that determination.").

**CONCLUSION**

For the aforementioned reasons, the Court should deny Plaintiff's motion for preliminary injunction.

//

//

//

---

threat [to national security or public safety] include, but are not limited to, gang membership, participation in criminal activities, or participation in activities that threaten the United States.").

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

9

DATED: May 14, 2018	Respectfully submitted,

CHAD A. READLER	*/s/ Jeffrey S. Robins*
Acting Assistant Attorney General	JEFFREY S. ROBINS
	Assistant Director
WILLIAM C. PEACHEY	U.S. Department of Justice
Director	Civil Division
	Office of Immigration Litigation
	District Court Section
	P.O. Box 868, Ben Franklin Station
	Washington, D.C. 20044
	Phone: (202) 616-1246
	Fax: (202) 305-7000
	Email: jeffrey.robins@usdoj.gov

	Attorneys for Defendants

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

10

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 14, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document should automatically be served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jeffrey S. Robins*
Jeffrey S. Robins
Assistant Director
U.S. Department of Justice

Defendants' Supplemental Brief
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-4193

11

**EXHIBIT A**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO LUCIANO GONZALEZ TORRES,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | CASE NO. 17cv1840 JM(NLS)<br><br>ORDER DENYING MOTION TO MODIFY PRELIMINARY INJUNCTION |

Plaintiff Alberto Luciano Gonzalez Torres moves to modify this court's September 29, 2017 Order Granting Motion for Preliminary Injunction ("Order"). Plaintiff seeks to enjoin the expiration of the immigration and employment status he obtained pursuant to the Deferred Action for Childhood Arrivals ("DACA") program. Defendants U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement, and U.S. Customs and Border Protection oppose the motion. Having carefully considered the matter presented, the court record, the arguments of counsel and, for the reasons set forth below, the court denies the motion to modify the Order without prejudice.

## BACKGROUND

The court incorporates its Order as if fully set forth herein. In granting the motion for preliminary injunction, the court enjoined the termination of Plaintiff's DACA status and employment authorization, required Defendants to comply with the DACA SOP, and ordered Defendants to accept Plaintiff's DACA renewal application.

Defendants represent that they have complied with the Order. Defendants reinstated Plaintiff's DACA status and employment authorization, accepted his DACA renewal request, and, on November 13, 2017, issued Plaintiff a Notice of Intent to Terminate ("NOIT"). Plaintiff's response to the NOIT is due on or before December 16, 2017. Moreover, Defendants represents that "USCIS anticipates completing the adjudication of its intended termination of Plaintiff's reinstated DACA" before expiration of Plaintiff's DACA status on December 22, 2017.

## THE MOTION

The court possesses broad authority to modify preliminary injunctions "as required by the circumstances of a given case." United States v. Washington, 852 F.3d 946, 979 (9th Cir. 2007) (a court "should not hesitate to modify its injunction" as required by the circumstances of the case).

Plaintiff seeks to modify the Order to include a provision that would "enjoin the expiration of Mr. Gonzalez's DACA status and employment authorization pending final resolution of his renewal application," including the time spent pursuing administrative and legal remedies. (Motion at p.1:11-15). Plaintiff represents that he timely filed a DACA renewal application on October 4, 2017, the processing of the renewal application by USCIS is anticipated to take between 120-150 days (between February and March 2018), and his current DACA status expires on December 22, 2017. Should the renewal application not be adjudicated prior to December 22, 2017, Plaintiff fears the loss of his DACA status and employment authorization at that time.

Defendants represent that there is no need to modify the Order because Plaintiff has been provided with a NOIT and the opportunity to respond to the NOIT by

December 16, 2017. Presumably, the Government anticipates the termination of Plaintiff's DACA status at that time. Defendants anticipate resolving the NOIT and terminating Plaintiff's DACA status prior to December 22, 2017, thus mooting Plaintiff's request to extend Plaintiff's DACA status beyond that date.[1] They do not indicate whether Plaintiff's DACA renewal application will be processed by December 22, 2017.[2]

At the outset, the court notes that the Order required Defendants to comply with the DACA SOP in seeking to terminate an individual's DACA status. To remedy the deficiencies identified by Plaintiff in his complaint, the court required Defendants to reinstate Plaintiff's DACA status and employment authorization and to accept his DACA renewal application. Plaintiff does not dispute that Defendants have complied with the Order.

While Plaintiff validly expresses insecurity with the pace of Defendants' reported processing of DACA renewal applications, Defendants largely respond that, pursuant to the DACA SOP, Plaintiff's DACA status will be lawfully resolved prior to December 22, 2017, by properly using the procedural safeguards of the Administrative Procedures Act and the DACA SOP. In light of Defendants' representations, the court concludes that there is no reasonable or likely prospect that Defendants will improperly detain or remove Plaintiff or otherwise improperly terminate Plaintiff's DACA status. At this point in time, Plaintiff fails to meet his burden to show that modification of the Order is appropriate under the current circumstances of the case.

---

[1] The court rejects Defendants' argument that the modification of the Order sought by Plaintiff deals with a new claim falling outside the scope of the present complaint. The court construes Plaintiff's complaint broadly, as this court is required to do. See Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996) (courts must construe the complaint in the light most favorable to the plaintiff).

[2] In their December 8, 2017 sur-reply, Defendants represent that ICE issued Defendant a new NTA (this NTA relates to the removal proceedings commenced against Plaintiff in May 2016), clarifying DHS's continuing interest in pursuing Plaintiff's removal in support of the NOIT process.

1  In sum, the court denies the motion to modify the Order, without prejudice.[3]

**IT IS SO ORDERED.**

DATED: December 15, 2017

                                                                          *Jeffrey T. Miller*
                                                                          **JEFFREY T. MILLER**
                                                                          United States District Judge

cc:    All parties

---

[3] On December 14, 2017, Plaintiff, by means of an <u>ex parte</u> application, submitted to the court a news article concerning the detention of a DACA recipient. (ECF No. 26). This article does not alter the present order.