The Honorable Ricardo S. Martinez
Chief United States District Judge

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

DANIEL RAMIREZ MEDINA,

           Plaintiff,

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES.

           Defendants.

CASE NO. 2:17-CV-00218-RSM-JPD

**PLAINTIFF'S EX PARTE MOTION FOR**
**LEAVE TO FILE A THIRD AMENDED**
**COMPLAINT**

Noted for Consideration: March 28, 2019

EX PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

Attorneys for Plaintiff
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246517), *pro hac vice*
  nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

EX PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

I

Gibson, Dunn &
Crutcher LLP

LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
  llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only
401 East Peltason Drive
Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722


LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
  larry@tribelaw.com
Harvard Law School
*Affiliation for identification purposes only
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
  ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
  lcortes@ia-lc.com
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
  matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

Gibson, Dunn &
Crutcher LLP

EX PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

II

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and this Court's Local Rules 7(d)(1) and 15, Plaintiff Daniel Ramirez Medina respectfully submits this *ex parte* motion for leave to file a Third Amended Complaint ("TAC"), a copy of which is attached to this Motion as Exhibit 1 with a redline showing changes from the Second Amended Complaint ("SAC") attached as Exhibit 2.  This Motion is brought *ex parte* based on the heightened urgency for relief that Defendants created by denying Mr. Ramirez's recent request to renew his DACA status and work authorization in violation of the Administrative Procedure Act and this Court's May 15, 2018 order granting Mr. Ramirez's preliminary injunction motion (the "Preliminary Injunction Order").

This Motion is based upon this Notice, the following Memorandum of Points and Authorities, the proposed TAC and redline attached hereto as Exhibits 1 and 2,  the entire record in this matter, and any such further oral or documentary information that may be submitted prior to the determination of this Motion.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Mr. Ramirez seeks leave to file his TAC to (1) plead additional factual allegations regarding incidents that occurred after the SAC was filed that are relevant to Mr. Ramirez's claims in this action, including Defendants' recent violation of the Preliminary Injunction Order; (2) assert an equitable estoppel claim based on Defendants' efforts to conceal from Mr. Ramirez the bases they relied on in denying his recent request to renew his DACA status and work authorization; and (3) assert that the denial of Mr. Ramirez's renewal request violated his rights under the First Amendment.  Such actions occurred after the recent disclosure of an internal March 20, 2018 USCIS

---

[1]  Defendants refused to stipulate to this amendment, necessitating this motion.

Gibson, Dunn &
Crutcher LLP

email—produced only in September 2018 to Mr. Ramirez, after an order of this Court—that admitted "there is not sufficient evidence to conclude [Mr. Ramirez] is currently a known or suspected gang member," and "[t]here is NOT sufficient evidence to conclude [Mr. Ramirez] is an EPS concern."[2]  Despite knowing its gang accusations were false last March, just two weeks later, on April 3, 2018, the government relied on that lie to seek to terminate Mr. Ramirez DACA's on the basis that he was a gang member and specifically told this Court on May 1, 2018 that it was continuing to rely on that allegation as its basis to do so.

Mr. Ramirez brings this Motion on an *ex parte* basis based on the heightened urgency created by that denial, which has unlawfully deprived Mr. Ramirez of the relief to which he is entitled under the Preliminary Injunction Order, *i.e.*, the right to retain his DACA status and work authorization pending this Court's final decision on the merits of his claims.[3]  *Ex Parte* relief is further warranted as Mr. Ramirez intends to file a new preliminary injunction motion or in the alternative a motion for contempt for violation of the Preliminary Injunction Order as soon as reasonably practicable upon the Court's consideration of this Motion.

Leave to amend should be "freely" given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This standard is to be applied with "extreme liberality."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).  Indeed, absent prejudice or a "strong showing" of bad faith, undue delay, or futility, there is a "*presumption . . . in favor of granting leave to amend.*"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original).

---

[2]  *See* Exh. A to Proposed TAC.

[3]  Mr. Ramirez's TAC also removes the text regarding the *Bivens* claims he previously asserted against Matthew E. Hicks, Taula Peter, Lance Hernandez, and Kathlyn Lawrence (collectively, the "Individual Defendants").  On September 20, 2017, Mr. Ramirez voluntarily dismissed his claims against the Individual Defendants without prejudice.  Dkt. 112.

EX PARTE MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn & Crutcher LLP

Permitting Mr. Ramirez to file the TAC would not cause Defendants any prejudice because the amendments proposed therein will not require any additional discovery and will not create any case management issues.  Mr. Ramirez is also not acting with bad faith, undue delay or futility in seeking leave to file the TAC, which is based on recent events.  The Motion should therefore be granted.

## II.      ARGUMENT

### A.      Leave to Amend Is Liberally Granted

Leave to amend should be "freely" granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend therefore "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party" (factors commonly referred to as the "*Foman* factors").  *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Indeed, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Eminence Capital*, 316 F.3d at 1052 (emphasis in original).

### B.      Defendants Will Suffer No Undue Prejudice if Leave is Granted

Prejudice is the touchstone of the inquiry under Rule 15(a)(2).  *Id.*  To justify denying a request for leave to amend, the prejudice must be substantial.  *Morongo Band of Mission Indians*, 893 F.2d at 1079 (finding prejudice where new claims proposed in amended complaint would have "greatly altered the nature of the litigation and would have required [the] defendants to have undertaken, at a late hour, an entirely new course of defense").  Defendants will not be materially or substantially prejudiced if leave to amend is granted.  *See Bancroft Life & Cas. ICC, Ltd. v. Scolari*, No. 3: 11-cv-5017, 2012 WL 2131850, at *2 (W.D. Wash. June 12, 2012) (concluding that the defendant "would suffer no prejudice" if plaintiff were permitted to amend its complaint because plaintiff "d[id] not request an extension of the discovery period, there are no new witnesses, and the amendment should not affect the trial date").  On the other hand, Mr. Ramirez would be

Gibson, Dunn &
Crutcher LLP

EX PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

3

substantially prejudice if leave to amend were denied.  Granting leave to amend will also not create

any meaningful case management issues or infringe on the efficient adjudication of this case;

indeed, it will bring current the factual record and issues properly before this Court and is necessary

given Defendants' changing unlawful tactics to deprive Mr. Ramirez of his DACA status.

**C.      Mr. Ramirez Is Not Acting in Bad Faith and Has Not Unduly Delayed in Seeking Leave to Amend**

Absent prejudice, the presumption in favor of granting leave to amend may not be overcome

without a "strong showing" of bad faith, undue delay or futility.  *Eminence Capital*, 316 F.3d at 1052.

The existence of a single factor is not necessarily sufficient to warrant denial of leave to amend.  *See*

*Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient

to justify denying a motion to amend.").  In seeking leave to amend, Mr. Ramirez has not exhibited

any bad faith, nor acted with undue delay.  The additional factual allegations that Mr. Ramirez pleads

in the TAC all occurred *after* the SAC was filed on April 25, 2017 (Dkt. 78), and most after the

Court's Preliminary Injunction Order.  Indeed, Defendants' action unlawfully denying Mr. Ramirez's

DACA renewal only occurred on December 19, 2018, giving rise to Mr. Ramirez's new claims.  *See*

*Bennett v. Spear*, 520 U.S. 154, 175 (1997) ("The APA, by its terms, provides a right to judicial

review of all 'final agency action for which there is no other adequate remedy in a court' . . . ."

(quoting 5 U.S.C. § 704)).  Apart from reciting the procedural history of this case since the SAC was

filed, the TAC's new factual allegations provide context for this recent denial of Mr. Ramirez's

renewal request.  Accordingly, Mr. Ramirez has not acted in bad faith or with undue delay in seeking

leave to add these factual allegations to his complaint.

Mr. Ramirez has also not acted in bad faith or with undue delay in seeking leave to assert

two additional legal theories in his complaint.  For example, the equitable estoppel claim is based

primarily on Defendants' efforts to conceal from Mr. Ramirez the bases they unexpectedly relied on

in formally denying his renewal request in December 2018.  This claim therefore arises out of facts that Mr. Ramirez only recently discovered, including via disclosure of USCIS's internal March 20, 2018 email.  Mr. Ramirez has also not unduly delayed in seeking leave to plead that Defendants have violated his First Amendment rights because that theory relies primarily on Defendants' conduct since the Preliminary Injunction Order.  Accordingly, Mr. Ramirez has not acted in bad faith or unduly delayed in seeking leave to assert these additional legal theories in his complaint.

**D.      Mr. Ramirez's Proposed Amendments Would Not Be Futile**

A proposed amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (quotation omitted).  Therefore, "[w]here the underlying facts or circumstances of a case 'may be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987) (alteration in original) (quoting *Foman*, 371 U.S. at 182). Accordingly, proposed amendments are futile only if it "appears beyond doubt" that they would be dismissed for failure to state a claim.  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

None of the amendments proposed in the TAC is futile.  Indeed, the legal theories underlying the allegations and claims in the TAC are the same or similar to the theories of the SAC that Defendants unsuccessfully moved to dismiss, as the Court found that Mr. Ramirez had pleaded legally cognizable claims.  Dkt. 116 (Order Denying Defendants' Mot. to Dismiss).  As with the SAC, the TAC sets forth extensive and detailed factual allegations in support of each additional theory of recovery that far exceed a "formulaic recitation of the elements of a cause of action" and are "plausible on [their] face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). These detailed allegations regarding Mr. Ramirez's detrimental reliance on Defendants' prior singular focus on gang affiliation (*see* Exh. 1 ¶¶ 122–26) are more than sufficient to state a claim

that Defendants should be equitably estopped from declining to renew Mr. Ramirez's renewal request.  *See Mukherjee v. INS*, 793 F.2d 1006, 1008–09 (9th Cir. 1986) (holding that federal government may be equitably estopped when it makes "a knowing false representation or concealment of material facts to a party ignorant of the facts").

The TAC also alleges facts sufficient to state a claim that Defendants have violated Mr. Ramirez's First Amendment rights by retaliating against him for engaging in constitutionally protected speech in connection with this case.  *See* Exh. 1 ¶¶ 116–17.  It alleges, for example, that Defendants indicated they intended to deny Mr. Ramirez's renewal request approximately four months after Mr. Ramirez sought preliminary injunctive relief in this Court.  And it alleges that Defendants did so despite the Preliminary Injunction Order and Defendants' usual practice of granting virtually all DACA renewal requests.  These facts support an inference of retaliation.  *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004) (noting that "[l]itigation seeking to expose . . . wrongful governmental activity is, by its very nature, a matter of public concern" that is protected by the First Amendment); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("[T]hree to eight months is easily within a time range that can support an inference of retaliation.").

For the foregoing reasons, none of the proposed amendments in the TAC is futile.

### III.   CONCLUSION

Because the newly asserted factual allegations and legal theories in the TAC are not futile, permitting amendment would not unduly prejudice Defendants, and Mr. Ramirez has not acted in bad faith or with dilatory motive in seeking leave to file his amended complaint, Mr. Ramirez respectfully requests that this Court grant his Ex Parte Motion for Leave to File a Third Amended Complaint.

EX PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

6

1  DATED:  March 28, 2019

2  Seattle, Washington

3

4                          Respectfully submitted,

5                          /s/ Theodore J. Boutrous, Jr.
                            GIBSON, DUNN & CRUTCHER LLP
6                          THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
                            ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
7                          KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
                            NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*

8                          PUBLIC COUNSEL
                            MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
9                          JUDY LONDON (CA SBN 149431), *pro hac vice*
                            KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
10

11                         IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
                            LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*

12                         Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX PARTE MOTION FOR LEAVE TO FILE A THIRD          Counsel Listed on Pages I and II
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD
                                    7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document should automatically be served this day on all counsel of record via transmission of Notices of Electronic filing generated by CM/ECF.

/s/ *Theodore J. Boutrous, Jr.*

EX PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

# Exhibit 1

The Honorable Ricardo S. Martinez
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

DANIEL RAMIREZ MEDINA,

        Plaintiff,

    v.

U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

        Defendants.

CASE NO. 2:17-CV-00218-RSM-JPD

**[PROPOSED] THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Attorneys for Plaintiff
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley School of Law
*Affiliation for identification purposes only
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

Third Amended Complaint                                          Counsel Listed on Pages I and II
Case No. 2:17-cv-00218-RSM-JPD

1     LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
      llitman@law.uci.edu
2     University of California, Irvine School of Law
      *Affiliation for identification purposes only
3     401 East Peltason Drive
      Educ 1095
4     Irvine, CA 92697
      Telephone: (949) 824-7722

5

6     LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
      larry@tribelaw.com
      Harvard Law School
7     *Affiliation for identification purposes only
      1575 Massachusetts Avenue
8     Cambridge, MA 02138
      Telephone: (617) 495-1767

9

10    ELIZABETH HAWKINS (SBN 43187)
      ehawkins@hawkinsimmigration.com
      Hawkins Law Group
11    17544 Midvale Avenue, Suite 301
      Shoreline, WA 98133
12    Telephone: (206) 728-4220
      Facsimile: (206) 973-5326

13

14    IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
      LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
      lcortes@ia-lc.com
15    19309 68th Avenue South, Suite R-102
      Kent, WA 98032
16    Telephone: (253) 872-4730
      Facsimile: (253) 237-1591

17

18    NORTHWEST IMMIGRANT RIGHTS PROJECT
      MATT ADAMS (SBN 28287)
      matt@nwirp.org
19    615 Second Ave., Suite 400
      Seattle, WA 98104
20    Telephone:  (206) 957-8611

21

22

23

24

25

26

27

28

**INTRODUCTION**

In February 2017, Immigration and Customs Enforcement ("ICE") arrested Plaintiff Daniel Ramirez Medina ("Mr. Ramirez") without a warrant or probable cause, and detained him for more than six weeks without justification, in violation of his constitutional rights.  Defendants targeted Mr. Ramirez despite their knowledge that he is a "Dreamer" who was twice granted deferred action and work authorization under the Deferred Action for Childhood Arrivals ("DACA") program after rigorous vetting of applications he submitted under the program.  Defendants have twice been enjoined from revoking Mr. Ramirez's DACA status and work authorization—once by this Court and once by the United States District Court for the Central District of California in *Inland Empire-Immigrant Youth Collective v. Nielsen* ("*Inland Empire*"), No. 17-2048.  Nevertheless, in what has become a personal vendetta against Mr. Ramirez, the father of a five-year-old U.S. citizen, Defendants remain determined to unlawfully strip Mr. Ramirez of his DACA status and work authorization.

After Mr. Ramirez first challenged the government's unlawful and unconstitutional actions, Defendants launched a campaign to smear his reputation, falsely accusing him of being a gang member to strip him of DACA by any means possible.  Defendants continued this campaign despite repeatedly confirming and being forced to admit that they had no actual evidence that Mr. Ramirez had any gang affiliation.  Even worse, Defendants had determined that Mr. Ramirez was neither a gang member nor an "EPS" (egregious public safety) concern but failed to inform Mr. Ramirez or the Court that they had done so.  Specifically, in an internal U.S. Citizenship and Immigration Services ("USCIS") email dated March 20, 2018, the government admitted that "there is not sufficient evidence to conclude [Mr. Ramirez] is currently a known or suspected gang member," and "[t]here is NOT sufficient evidence to conclude [Mr. Ramirez] is an EPS concern."[1]  Despite knowing its gang accusations were false, just two weeks later, on April 3, 2018, the government tried again to terminate Mr. Ramirez DACA's on the basis that he was a gang member and told this Court on May 1, 2018 that it was continuing to rely on that allegation as its basis to do so.

---

[1]  Ex. A (Mar. 20, 2018 USCIS Email) (capitalization in original).

After this Court granted Mr. Ramirez's preliminary injunction motion on May 15, 2018 ("Preliminary Injunction Order"), enjoining Defendants from continuing their unlawful campaign and terminating his DACA, Mr. Ramirez believed he would be able to get back to peacefully living his life and working to support his son.  But Defendants have now attempted a new unlawful gambit, arbitrarily and capriciously denying Mr. Ramirez's most recent request to renew his DACA status, in December 2018—requests that are otherwise approved 99% of the time—thereby violating both the letter and spirit of this Court's Preliminary Injunction Order.

Mr. Ramirez asks this Court to remedy the government's latest unconstitutional actions by restoring his DACA status and work authorization, and confirming that the benefits he was provided under DACA are protected by the Fifth Amendment's Due Process Clause.

*  *  *  *  *

The federal government established the DACA program with great fanfare in 2012.  Under DACA, individuals brought to the United States as children who meet certain criteria, and who are found by the Department of Homeland Security ("DHS") to pose no threat to public safety or national security, are granted deferred action for a two-year period, subject to renewal.  These young people are commonly referred to as "Dreamers" in recognition that they have played by the rules, cooperated with the government, and are working hard to be part of the American Dream.  As the government has explained, Dreamers are "considered by DHS to be lawfully present during the period deferred action is in effect," and are eligible to receive employment authorization and other important benefits.[2]  Indeed, on March 29, 2017, the Secretary of Homeland Security reaffirmed that "DACA status is a commitment . . . by the government towards the DACA person, or the so-called Dreamer."[3]

---

[2]   Ex. B, at 2 (*Frequently Asked Questions*, U.S. Citizenship & Immigration Servs.: Consideration of Deferred Action for Childhood Arrivals Process, https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions) (hereinafter "USCIS DACA FAQs"); *see also Texas v. United States*, 809 F.3d 134, 166 (5th Cir. 2015) *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) ("Deferred action . . . is much more than nonenforcement:  It . . . affirmatively confer[s] 'lawful presence' and associated benefits . . . ."); *Ariz. Dream Act Coal. v. Brewer*, 81 F. Supp. 3d 795, 811 (D. Ariz. 2015).

[3]   Ted Hesson & Seung Min Kim, *Wary Democrats Look to Kelly for Answers on Immigration*, Politico (Mar. 29, 2017), http://politi.co/2mR3gSN.

Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

As a result of the government's representations and promises, hundreds of thousands of Dreamers have applied for, and been granted, deferred action under DACA.  To apply for DACA, eligible young people are required to provide DHS with highly sensitive personal information, pay a substantial fee, and submit to a rigorous background check.  Mr. Ramirez did all of that not once, but three times—once in 2013, again in 2016 when he successfully renewed his DACA status, and most recently in May of 2018.  In so doing, Mr. Ramirez—like nearly 750,000 other Dreamers—"relied on the U.S. government's representations" that it would honor its commitments under the DACA program.[4]  As a result of his reasonable expectations, Mr. Ramirez (and his fellow Dreamers) has constitutionally protected liberty and property interests in the benefits granted under DACA, which include, among other things, the ability to live and work in the United States without fear of arbitrary arrest or detention.

Notwithstanding these promises, Defendants arrested and detained Mr. Ramirez without a warrant or probable cause.  They handcuffed him, forcibly removed him from a private residence, and transported him to an ICE detention facility where he was coercively interrogated.  They summarily revoked his DACA status and work authorization without notice, justification, or due process, and detained him with dangerous criminals for more than six weeks.

Once Mr. Ramirez filed a petition for habeas corpus in this Court, the government doubled down, mounting a sustained campaign to publicly vilify him as a "gang member," despite having no credible evidence to support that allegation.  Indeed, as the government later admitted to an Immigration Judge—and as it has since admitted in an internal USCIS email—there is insufficient evidence to even argue that Mr. Ramirez is a danger to the community.  Despite these remarkable concessions, the government continued to falsely accuse Mr. Ramirez of gang affiliation.

Mr. Ramirez therefore sought a preliminary injunction to prohibit the government from terminating his DACA status and work authorization on these discredited allegations.  While Mr. Ramirez's preliminary injunction motion was pending before this Court, a class-wide injunction was entered on February 26, 2018 in *Inland Empire* that required the government to restore to a class of former DACA recipients—including Mr. Ramirez—their DACA status and work authorization.

---

[4]  Ex. C, at 1 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).

On April 3, 2018, the same day that Defendants complied with the *Inland Empire* order by restoring Mr. Ramirez's benefits, they simultaneously initiated a new process to strip Mr. Ramirez of his just-restored DACA status and work authorization, issuing a Notice of Intent to Terminate ("NOIT") on the same false, discredited basis that Mr. Ramirez was a gang member. Remarkably, USCIS had determined at least two weeks prior to issuing the April 3, 2018 NOIT—as demonstrated in a March 20, 2018 internal USCIS email—that Mr. Ramirez posed no threat as there was insufficient evidence to sustain any allegation that he is a gang member:

> Description of Current Criminal History: No criminality on rap sheet. Gang information obtained from EARM, ICE interview of DACA recipient. HOWEVER, there is not sufficient evidence to conclude he is currently a known or suspected gang member. If this was a pending case, it would have been further vetted and likely referred to a field office for a gang interview. There is NOT sufficient evidence to conclude this person is an EPS concern.

Ex. A (underlining added). Moreover, the government only produced this document to Mr. Ramirez in September 2018, after being compelled to do so by this Court. USCIS therefore ignored its own determination that Mr. Ramirez was not a gang member and issued a NOIT just two weeks later on the same false basis that Mr. Ramirez was a gang member. There has rarely been a case in which the government's animus against a particular individual has so clearly driven an unlawful vendetta based on a fiction.

On May 1, 2018, this Court held a hearing on Mr. Ramirez's preliminary injunction motion, and after supplemental briefing from the parties, on May 15, 2018 it issued its Preliminary Injunction Order. The Court ordered that "Defendants shall not terminate Plaintiff's DACA status and work authorization pending a final decision by this Court on the merits of his claims," and enjoined Defendant USCIS from "asserting, adopting, or relying in any proceedings on any statement or record made as of this date purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated, or a threat to public safety."[5] Thereafter, and although the government was subsequently enjoined from terminating Mr. Ramirez's DACA status pending trial on the merits, Mr. Ramirez filed a DACA renewal notice to ensure there would be no question about his entitlement to such benefits.

---

[5] Dkt. #133, at 23 (Preliminary Injunction Order).

However, Defendants blatantly violated the terms of the Preliminary Injunction Order when, in a "Decision" dated December 19, 2018, USCIS denied Mr. Ramirez's routine DACA renewal request on the grounds that he now again poses a risk to public safety, citing no new criminal charges but a supposed "offense history" that predates his initial grant of DACA and his 2016 renewal.  It is abundantly clear that the government has determined to continue to target Mr. Ramirez for standing up for his rights and decided to willfully violate this Court's Preliminary Injunction Order to do so. There has never been any lawful basis for any of Defendants' targeted and retributive actions against Mr. Ramirez and this Court should put a stop, once and for all, to the government's unlawful campaign against him.

Mr. Ramirez therefore respectfully requests that this Court: (1) find the agency actions to deny Mr. Ramirez's DACA to be arbitrary and capricious and unlawful; (2) confirm the validity of his ongoing DACA status and work authorization and/or reinstate such status; (3) protect those benefits against future unlawful action by the government; and (4) issue declaratory relief confirming that Mr. Ramirez's benefits under the DACA program are liberty and property interests protected by the Due Process Clause.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.  This Court also has remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

2.      Venue properly lies within the Western District of Washington because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(e)(1).

3.      This is an amended version of the Second Amended Complaint that was filed in this action on April 25, 2017.[6]

## PARTIES

4.      Mr. Ramirez is the twenty-six-year-old father of a United States citizen.  He was brought to the United States from Mexico in or around 2003, when he was approximately 10 years

---

[6]  *See* Dkt. #78.

old.  Mr. Ramirez was twice granted deferred action and work authorization under the DACA program.  He moved from California to Washington in or around January 2017 in order to obtain more lucrative employment to better support his son.  After being arrested without a warrant or probable cause, Mr. Ramirez was detained in the Northwest Detention Center for more than six weeks.  He successfully obtained release from custody after the government conceded he was not a threat to public safety, and later, on May 15, 2018, obtained an order from this Court enjoining Defendants from terminating his DACA, Defendants have now unlawfully denied Mr. Ramirez's request to renew his DACA.

5.      The Department of Homeland Security is a cabinet department of the United States federal government with responsibility for, among other things, administering and enforcing the nation's immigration laws.

6.      U.S. Immigration and Customs Enforcement is a law enforcement agency that is part of DHS.  According to its website, "ICE's primary mission is to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration."[7]

7.      U.S. Citizenship and Immigration Services is a federal agency that is part of DHS.  According to its website, USCIS "is the government agency that oversees lawful immigration to the United States."[8]  USCIS administers the DACA program, including by processing applications and renewals, and issuing notices of termination.

## STATEMENT OF FACTS

**Establishment of the DACA Program**

8.      On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano issued a memorandum establishing the DACA program (the "2012 DACA Memorandum").[9]  Under the

---

[7]   *See, e.g.*, *ICE Initiative to Increase Community Engagement*, U.S. Immigration & Customs Enforcement: News Releases (Mar. 10, 2016), https://www.ice.gov/news/releases/ice-initiative-increase-community-engagement.

[8]   United States Citizenship & Immigration Servs., *About Us*, https://www.uscis.gov/aboutus.

[9]   Ex. D, at 1 (Memorandum from Secretary Janet Napolitano, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June 15, 2012)) (hereinafter "2012 DACA Memorandum").

DACA framework, individuals who were brought to the United States as young children and meet certain specific criteria may request deferred action for a period of two years, subject to renewal. In exchange, DACA applicants are required to provide the government with highly sensitive personal information, submit to a rigorous background check, and pay a considerable fee.

9.      Deferred action is a well-established form of prosecutorial discretion under which the government defers removal action against an individual for a specified period, subject to renewal. The 2012 DACA Memorandum explained that DACA covers "certain young people who were brought to this country as children and know only this country as home" and that the immigration laws are not "designed to remove productive young people to countries where they may not have lived or even speak the language."[10]

10.      The 2012 DACA Memorandum established criteria that "should be satisfied before an individual is considered for an exercise of prosecutorial discretion."[11] They are that the applicant:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for at least five years preceding the date of the memorandum and is present in the United States on the date of the memorandum;
- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- is not above the age of thirty.[12]

11.      In addition, the 2012 DACA Memorandum provided that "[n]o individual should receive deferred action . . . unless they first pass a background check."[13]

---

[10] *Id.* at 1–2.

[11] *Id.* at 1.

[12] *Id.*

[13] *Id.* at 2.

12.     USCIS describes DACA as follows: "Deferred action is a discretionary determination to defer a removal action of an individual as an act of prosecutorial discretion.  For purposes of future inadmissibility based upon unlawful presence, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect.  An individual who has received deferred action is authorized by DHS to be present in the United States, and is therefore considered by DHS to be lawfully present during the period deferred action is in effect.  However, deferred action does not confer lawful status upon an individual, nor does it excuse any previous or subsequent periods of unlawful presence."[14]

13.     Like other forms of deferred action, DACA serves the government's interests by allowing the government to prioritize its resources and exercise discretion for its own convenience. As the government has recognized, our nation "continue[s] to benefit . . . from the contributions of those young people who have come forward and want nothing more than to contribute to our country and our shared future."[15]

14.     On February 20, 2017, Secretary of Homeland Security John D. Kelly issued a memorandum that "immediately rescinded" all "conflicting directives, memoranda, or field guidance regarding the enforcement of our immigration laws and priorities for removal," but specifically exempted the 2012 DACA Memorandum.[16]

15.     On September 5, 2017, Acting Secretary of Homeland Security Elaine Duke issued a memorandum rescinding the DACA program (the "Rescission Memorandum"), announcing the government's intention to terminate the DACA program as of March 5, 2018.

16.     On January 9, 2018 and February 13, 2018, United States District Courts in the Northern District of California and the Eastern District of New York, respectively, issued nationwide preliminary injunctions prohibiting the government from terminating DACA on the

---

[14]  Ex. B, at 2 (USCIS DACA FAQs, Question 1).

[15]  Ex. C, at 2 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).

[16]  Ex. E, at 2 (Memorandum from Secretary John Kelly, Enforcement of the Immigration Laws to Serve the National Interest (Feb. 20, 2017)).

ground that the decision to rescind the program was arbitrary and capricious.[17]  These injunctions require the government to maintain DACA on the same terms and conditions that existed prior to the Rescission Memorandum, except that the government need not accept new DACA applications from individuals who have never received DACA previously and need not continue granting advance parole to allow DACA recipients to travel internationally.

17.     On August 17, 2018, the United States District Court for the District of Columbia vacated the Rescission Memorandum, again on the ground that the decision was arbitrary and capricious.[18]  Similar to the earlier preliminary injunctions, the order of vacatur excluded first-time DACA applications and requests for advance parole, but otherwise required the government to maintain the DACA program and process renewal applications.

18.     On November 8, 2018, the United States Court of Appeals for the Ninth Circuit upheld the nationwide preliminary injunction issued by the United States District Court for the Northern District of California.[19]

19.     The DACA program remains in place at this time, and the government continues to accept and process DACA renewal applications.

**The DACA Application Process**

20.     Before the issuance of the Rescission Memorandum, when the government was still processing new requests for deferred action under DACA, first-time DACA applicants were required to submit extensive documentation establishing that they meet the above-mentioned criteria.[20]  Applicants were also required to submit a Form I-765 Application for Employment Authorization, and pay hundreds of dollars in fees.[21]

---

[17] *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018).

[18] *NAACP v. Trump*, 321 F. Supp. 3d 143, 146 (D.D.C. 2018).

[19] *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018).

[20] Ex. B, at 9–15 (USCIS DACA FAQs, Questions 28–41).

[21] *Id.* at 3 (USCIS DACA FAQs, Question 7); *see also* USCIS, I-821D, Consideration of Deferred Action for Childhood Arrivals, https://www.uscis.gov/i-821d (explaining that the filing fee for a DACA application is currently set at $495 and cannot be waived).

21.     DACA applicants were also required to undergo biometric and biographic background checks.  When conducting these checks, DHS reviewed the applicant's biometric and biographic information "against a variety of databases maintained by DHS and other federal government agencies."[22]  If any information "indicate[d] that [the applicant's] presence in the United States threatens public safety or national security," the applicant would be ineligible for DACA absent "exceptional circumstances."[23]

22.     Indicators that an individual poses a national security threat include "gang membership."[24]  Accordingly, "[a]ll DACA requests presenting information that the requestor is or may be a member of a criminal street gang are referred to the Background Check Unit (BCU)."[25]  If gang membership was confirmed, the DACA application was denied absent a determination by USCIS that an exception should be made given the totality of the circumstances.[26]

23.     USCIS evaluates renewal requests based on the same criteria as initial requests, and also requires that the renewal applicant (1) has not departed the United States on or after August 15, 2012 without advance parole; (2) has continuously resided in the United States since his or her most recent DACA request was approved; and (3) has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise "pose a threat to national security or public safety."[27]

24.     In 2015, USCIS conducted an additional screening of all individuals granted deferred action under DACA—including Mr. Ramirez—"to identify records that contained information indicating known or suspected gang association."[28]

---

[22]  Ex. B, at 7 (USCIS DACA FAQs, Question 23).

[23]  *Id.* at 23 (USCIS DACA FAQs, Question 65).

[24]  *Id.*

[25]  Ex. F, at 1 (Letter from USCIS Director León Rodríguez to Senate Judiciary Committee Chairman Charles E. Grassley (Apr. 17, 2015)) (hereinafter, "USCIS Letter").

[26]  *Id.* at 2.

[27]  Ex. B, at 18 (USCIS DACA FAQs, Question 51).

[28]  Ex. F at 4 ¶ 2 (USCIS Letter).

25.     Once DACA has been granted, internal USCIS "Standard Operating Procedures" dictate that, absent an "Egregious Public Safety" issue, DACA status should not be revoked until the government has provided a "Notice of Intent to Terminate" which "thoroughly explain[s]" the grounds for the termination.[29]  DHS policy further provides that the recipients of such notice should be afforded 33 days to "file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate" prior to termination of DACA status.[30]

**Benefits Provided Under the DACA Program**

26.     DACA confers numerous benefits on those who apply for and are granted DACA status.  Notably, DACA recipients are granted the right not to be arrested or detained based solely on their immigration status during the time period their deferred action is in effect.[31]

27.     DACA recipients are also eligible for work authorization.  As USCIS has explained, "an individual whose case has been deferred is eligible to receive employment authorization for the period of deferred action . . . ."[32]

28.     DACA recipients are eligible to receive certain public benefits.  These include Social Security, retirement, and disability benefits, and, in certain states, benefits such as driver's licenses or unemployment insurance.[33]  In Washington, DACA holders are also eligible for certain state financial aid programs and state-funded food assistance.[34]

---

[29]  Ex. G, at 136 & App'x I (DHS National Standard Operating Procedures (SOP): Deferred Action for Childhood Arrivals (DACA) (Aug. 28, 2013)) (hereinafter, "DACA SOP").

[30]  *Id.* at 136 & App'x I.

[31]  *See* Ex. B, at 5 (USCIS DACA FAQs, Question 9) ("[I]f an individual meets the guidelines for DACA, CBP or ICE should exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended."); Ex. D, at 2 (2012 DACA Memorandum); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1059 (9th Cir. 2014) ("DHS considers DACA recipients not to be unlawfully present in the United States because their deferred action is a period of stay authorized by the Attorney General.").

[32]  Ex. B, at 2 (USCIS DACA FAQs, Question 1).

[33]  *See* 8 U.S.C. §§ 1611(b)(2)–(3), 1621(d); *Texas*, 809 F.3d at 148; *Ariz. Dream Act Coal.*, 81 F. Supp. 3d at 811.

[34]  *See* Wash. Rev. Code § 28B.92.010; Wash. Admin. Code §§ 388-400-0050, 388-424-0001, 388-424-0030.

Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

29.      DACA serves as a gateway to numerous other benefits, and enables recipients to open bank accounts, obtain credit cards, start businesses, purchase homes and cars, and conduct other aspects of daily life that are otherwise often unavailable for undocumented immigrants.[35]

30.      DACA has enabled hundreds of thousands of Dreamers to "to enroll in colleges and universities, complete their education, start businesses that help improve our economy, and give back to our communities as teachers, medical professionals, engineers, and entrepreneurs—all on the books."[36]

31.      DACA also confers other immigration benefits and the ability to travel.  For example, DACA recipients do not accrue time under Section 212(a)(9)(B)(i) of the Immigration and Nationality Act ("INA"),[37] and, at least prior to the Rescission Memorandum, could briefly depart the United States and legally return under certain circumstances.[38]

**The Government's Promise to Dreamers**

32.      When the DACA program was first launched, many Dreamers were reluctant to voluntarily disclose information that could help facilitate their removal from the United States.  To combat this fear, DHS repeatedly promised applicants that information they provided as part of the DACA application process would "not later be used for immigration enforcement purposes."[39]

33.      The government has reiterated this commitment in its correspondence with Dreamers.  Moreover, the approval notice granting deferred action under DACA lists only "fraud or misrepresentation" in the application process or "[s]ubsequent criminal activity" as grounds for revoking DACA.[40]

34.      The government's commitment to the DACA program is further codified in its publication entitled "National Standard Operating Procedures (SOP): Deferred Action for Childhood

---

[35]  *See* Dkt. #38-1, at 2 (Amicus Curiae Brief of United We Dream).
[36]  Ex. C, at 2 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).
[37]  8 U.S.C. § 1182(a)(9)(B)(i).
[38]  Ex. B, at 19 (USCIS DACA FAQs, Question 57).
[39]  Ex. C, at 1 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).
[40]  Ex. H (DACA Approval Notice).

Arrivals (DACA)."[41]  This document effectively limits the exercise of agency discretion concerning DACA applications with "nearly 150 pages of specific instructions for granting or denying deferred action."  *Texas*, 809 F.3d at 173 (citation omitted) (citing the DACA SOP as evidence that DACA is not truly a discretionary program).

35.     Numerous public officials from both political parties have reinforced this promise, and have recognized that Dreamers have relied on the government to keep its word.  For example, in December 2016, then-Secretary of Homeland Security Jeh Charles Johnson acknowledged that there are 750,000 Dreamers who have "relied on the U.S. government's representations" about DACA, and asserted that "representations made by the U.S. government, upon which DACA applicants most assuredly relied, must continue to be honored."[42]

36.     In January 2017, Speaker of the House Paul Ryan stated that the government must ensure that "the rug doesn't get pulled out from under" Dreamers, who have "organize[d] [their] li[ves] around" the DACA program.[43]

37.     In February 2017, Congressman Raúl Grijalva described DACA as a "commitment," and called for "the federal government to honor its word to protect" Dreamers.[44]

38.     On March 29, 2017, then-Secretary Kelly reaffirmed that "DACA status" is a "commitment . . . by the government towards the DACA person, or the so-called Dreamer."[45]

39.     On April 21, 2017, President Trump confirmed that his administration's policy is not to deport Dreamers, and suggested that "[D]reamers should rest easy."[46]

---

[41]  Ex. G (DACA SOP).

[42]  Ex. C, at 1 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).

[43]  Transcript of CNN Town Hall with Speaker Paul Ryan, CNN (Jan. 12, 2017), http://cnn.it/2oyJXJJ.

[44]  Congressional Progressive Caucus Leaders Respond to ICE Arrest of DACA Recipient (Feb. 16, 2017), https://cpc-grijalva.house.gov/press-releases/congressional-progressive-caucus-leaders-respond-to-ice-arrest-of-daca-recipient.

[45]  Ted Hesson & Seung Min Kim, *Wary Democrats Look to Kelly for Answers on Immigration*, Politico (Mar. 29, 2017), http://politi.co/2mR3gSN.

[46]  Excerpts from AP interview with President Donald Trump, The Associated Press (Apr. 21, 2017), https://apnews.com/182009c26d70499a97d486afa8d7a34d.

**Mr. Ramirez Was Twice Granted Deferred Action Under DACA**

40.     In late 2013, Mr. Ramirez first applied for deferred action and work authorization pursuant to DACA.  As part of this process, Mr. Ramirez provided the government with his birth certificate, school records, and information about where he lived, and was required to attend a biometrics appointment so that USCIS could take his fingerprints and photographs.  Mr. Ramirez was nervous about providing this information, but trusted that the government would keep its word. Mr. Ramirez was granted deferred action and work authorization in 2014.

41.     In 2016, Mr. Ramirez reapplied for DACA, and once again was granted deferred action and work authorization after being subject to rigorous vetting.  As part of this process, the government sent Mr. Ramirez an approval notice (the "2016 DACA Approval Notice") informing him that his request for deferred action had been granted.  The 2016 DACA Approval Notice provides that "[u]nless terminated, this decision to defer removal action will remain in effect for 2 years" and is valid to May 4, 2018.[47]  The 2016 DACA Approval Notice informed Mr. Ramirez that his deferred action could be terminated if he engaged in "[s]ubsequent criminal activity."[48]

42.     DHS has therefore confirmed on three separate occasions prior to Mr. Ramirez's unlawful arrest that Mr. Ramirez does not pose a threat to national security or public safety—first in 2014 when he applied for DACA, then again in 2015 when USCIS conducted an additional screening of all DACA beneficiaries, and finally in 2016 when he reapplied for DACA.

**Mr. Ramirez's Unconstitutional Arrest and Subsequent Interrogation**

43.     On February 10, 2017, at approximately 9:00 a.m., a team of ICE agents arrested Mr. Ramirez's father outside of the apartment where Mr. Ramirez, his father, and his brother were then living.  The ICE agents subsequently entered the apartment; neither Mr. Ramirez nor his brother are aware of any consent to permit the ICE agents to enter or search the premises.

44.     Upon seeing Mr. Ramirez in the apartment, the ICE agents began to question him. Mr. Ramirez provided the agents with his name and birthdate, and told them that he was born in Mexico.  At this point, one of the agents placed Mr. Ramirez in handcuffs.

---

[47]  Ex. H (DACA Approval Notice).

[48]  *Id.*

45.     Mr. Ramirez told the ICE agents repeatedly that he had a legal work permit, but the ICE agents refused to release him.  Mr. Ramirez's father also repeatedly informed the ICE agents that Mr. Ramirez had a legal work permit, and questioned why Mr. Ramirez was being detained. The ICE agents did not ask any questions at the apartment regarding whether Mr. Ramirez was involved with a gang, nor did they ask him about his tattoo.

46.      The ICE agents did not have an arrest warrant for Mr. Ramirez, nor did they have any reason to believe that he had committed a crime or was not authorized to be in the United States. On the contrary, the ICE agents had reason to know that Mr. Ramirez had a work permit and was therefore lawfully living and working in the United States.  Despite these facts, Mr. Ramirez was taken into custody and transported to an ICE holding facility in Tukwila, Washington.

47.     At the holding facility, the ICE agents confiscated Mr. Ramirez's work permit.  This permit was marked with a "C33" designation, which clearly identified Mr. Ramirez as a DACA recipient with work authorization pursuant to DACA.[49]

48.     The ICE agents also fingerprinted Mr. Ramirez and used this information to access his records, which revealed that Mr. Ramirez has no criminal history, had twice been granted DACA status, and possessed valid employment authorization through May 4, 2018.

49.     Defendants refused to release Mr. Ramirez even after they confirmed his DACA status.  When Mr. Ramirez again protested that he had a work permit, he was told by Defendants that it did not matter because he "was not from the United States."  Defendants subsequently cited Mr. Ramirez's receipt of DACA as evidence of his "illegal" status in the Form I-213.[50]

50.     The ICE agents then began to interrogate Mr. Ramirez.  They asked him at least five times whether he was in a gang, and each time he denied any gang affiliation.  The ICE agents repeatedly pressed him as to whether he had ever known anyone who was a gang member. Mr. Ramirez told the agents that although that he knew students who had attended middle school and high school with him who were in gangs, he was not gang affiliated and never had been.

---

[49]  Ex. G, at 116 (DACA SOP) ("To distinguish DACA-related EADs from other deferred action EADs, the (c)(33) code will be used.").

[50]  Dkt. #93, at 29 (ICE CAR 000028 (I-213 Record of Deportable/Inadmissible Alien (Feb. 10, 2017))).

51. The ICE agents also interrogated Mr. Ramirez about the tattoo on his forearm. Mr. Ramirez obtained this tattoo when he was 18 years old—before he first applied for DACA. The tattoo consists of the words "La Paz – BCS" and a nautical star. "La Paz" is Mr. Ramirez's birthplace, and "BCS" stands for Baja California Sur, the region in which La Paz is located. Mr. Ramirez decided to include the city of his birth because he had seen others do the same, and ultimately selected the nautical star (rather than a whale's tail, which he had also considered) because he liked the way it looked. Nautical stars are popular symbols for tattoos.

52. During the interrogation, one of the ICE agents stated that if Mr. Ramirez was from Fresno, he was "definitely a gang member" because everyone in Fresno is a member of the "bulldogs" gang. He said that Mr. Ramirez's tattoo was a "bulldogs" tattoo. Mr. Ramirez repeatedly told the ICE agents that the tattoo is not a gang tattoo, but they refused to believe him.

53. Prior to his transfer to the Northwest Detention Center, the ICE agents asked Mr. Ramirez if there were any gangs with which he would like to avoid being placed for his safety. Mr. Ramirez again stated that he had no gang affiliation and would not have problems being placed with anyone. Upon continued questioning, Mr. Ramirez ultimately indicated that if he had to be placed with any group, he would prefer "the Paisas." Mr. Ramirez understands the colloquial use of "Paisas" to mean Mexicans, and was attempting to communicate that if given the option, he would prefer to be placed with other Mexicans. Mr. Ramirez, who has no criminal history and was never previously in custody, has no connection or affiliation whatsoever to the Paizas gang.

**Mr. Ramirez's Unconstitutional Detention**

54. Mr. Ramirez was then transferred to Northwest Detention Center, where he remained in custody for the next 47 days.

55. The Northwest Detention Center is a privately owned detention facility located on a contaminated "Superfund" site.[51] According to the Environmental Protection Agency, industrial

---

[51] U.S. Envtl. Prot. Agency, Fourth Five-Year Review Report for Commencement Bay Nearshore/Tideflats Superfund Site, Pierce Cty., Wash., at vi (Dec. 1, 2014), https://semspub.epa.gov/work/HQ/181285.pdf.

pollutants have been found in the soil and water near the Northwest Detention Center, and environmental remediation efforts at the site remain ongoing.[52]

56.     In April 2017, hundreds of detainees at the Northwest Detention Center went on a hunger strike to protest the inhumane conditions at the facility, including poor hygiene, lack of access to medical care, lack of recreational opportunities, poor quality food, and unreasonable commissary prices.[53]

57.     The more than six weeks that Mr. Ramirez spent at the Northwest Detention Center were extremely difficult for him.  He spent his twenty-fourth birthday in detention, and was unable to see or speak to his young son for the duration of his detention.  Mr. Ramirez had difficulty sleeping, and experienced significant distress, sadness, fear, and anxiety as a result of his unjust detention.  Mr. Ramirez also began to experience vision problems, and was informed by the medical staff at the Northwest Detention Center that this was likely due to depression.

58.     Defendants classified Mr. Ramirez as a "medium-high" security risk, and placed him in a housing unit with gang members and dangerous criminals.  Mr. Ramirez requested that he be reclassified because, as he again explained, he was not, and never had been, gang affiliated, but this request was denied.  Because of the government's false statements to the media, many of the detainees at the Northwest Detention Center believed that Mr. Ramirez was a gang member and questioned him about his gang affiliation.  This caused Mr. Ramirez to fear for his personal safety, and he was afraid to leave his cell out of fear that he would be assaulted.

**The Government Revokes Mr. Ramirez's DACA Status and Work Authorization**

59.     Defendants issued a Notice to Appear ("NTA") on February 10, 2017.[54]  Defendants assert that Mr. Ramirez's DACA status terminated on the day the NTA was issued.[55]

---

[52]  *Id.* at vi–vii.

[53]  Mike Carter, *Hundreds of immigrant detainees at Tacoma ICE facility on hunger strike, activists say*, The Seattle Times (Apr. 12, 2017), http://www.seattletimes.com/seattle-news/group-hundreds-of-detainees-at-tacoma-ice-facility-on-hunger-strike; Steve Miletich, *ICE: Hunger strike winding down at Tacoma immigration detention center*, The Seattle Times (Apr. 14, 2017), http://www.seattletimes.com/seattle-news/crime/ice-hunger-strike-abates-at-detention-center.

[54]  Dkt. #93, at 7–8 (ICE CAR 000005 (Notice to Appear)).

[55]  *See* Dkt. #32, at 2–3 (Respondents' Brief Regarding the Court's February 14, 2017 Order).

60.     USCIS sent Mr. Ramirez a Notice of Action ("NOA") dated February 17, 2017. The NOA states that Mr. Ramirez's deferred action and employment authorization terminated on the date the NTA was issued, and provides that "[a]n appeal or motion to reopen/reconsider this notice of action may not be filed."[56]

61.     Under DHS policy, the government must provide a "Notice of Intent to Terminate" and 33 days for a response prior to terminating DACA status, unless the case involves an "Egregious Public Safety" issue.[57]  Mr. Ramirez was never provided with a Notice of Intent to Terminate, nor was he given 33 days to respond to such a notice or otherwise contest the revocation of his DACA status or work permit.

**The Government Publicly Labels Mr. Ramirez as a "Gang Member"**

62.     After Mr. Ramirez sought relief from this Court on February 13, 2017, Defendants concocted a shifting story about the circumstances surrounding his arrest and detention.  Defendants sought to justify their unlawful actions based on the false assertion that Mr. Ramirez is a gang member, and initiated a sustained campaign to publicly vilify him as such, despite knowing that there existed no reliable evidence to support such a characterization.

63.     Spokespersons for ICE and DHS issued statements alleging that Mr. Ramirez was a gang member, and falsely informed the national media that the government possessed "corroborating evidence" to support that allegation.  Additionally, on information and belief, Defendants coordinated with each other and leaked false information to members of the media in furtherance of this smear campaign.

64.     On February 14, 2017, an ICE spokesperson stated that "ICE officers took Mr. Ramirez into custody *based on* his admitted gang affiliation and risk to public safety."[58]  This false allegation contradicts the Form I-213 prepared by Defendants, which notes that ICE agents did not discuss Mr. Ramirez's purported gang affiliation with him until *after* he was transported to the

---

[56] Ex. I, at 1 (Notice of Action).

[57] Ex. G, at 136 & App'x I (DACA SOP).

[58] Sue Horton et al., *Mexican 'DREAMer' Nabbed in Immigrant Crackdown*, Reuters U.S. Top News (Feb. 14, 2017), http://www.reuters.com/article/us-usa-trump-immigration-arrest-exclusiv-idUSKBN15T307 (emphasis added).

ICE holding facility in Tukwila, Washington, at which point his DACA status and lack of a criminal record had been confirmed.[59]

65.    On February 15, 2017, ICE officials were pressed by the news media for additional evidence demonstrating that Mr. Ramirez was a gang member.  In response, Defendants informed the media that they had "additional evidence including photos and social media content that illustrate his gang affiliation."[60]

66.    On February 15, 2017, an unnamed ICE official informed members of the national news media that there was corroborating evidence to support their allegations of gang membership.[61] No such corroborating evidence has been produced or filed in any court, despite requests by Mr. Ramirez and his counsel.

67.    On February 15, 2017, DHS issued a statement labeling Mr. Ramirez as "a gang member."[62]

68.    Defendants have since backed away from these false and defamatory allegations. For example, in their filings in this Court, Defendants have alleged merely that Mr. Ramirez "hangs out" with gang members.[63]  In the Immigration Court, the government has admitted that the evidence does not support any conclusion that Mr. Ramirez is a threat to public safety.

---

[59]   Dkt. #93, at 29 (ICE CAR 000028 (I-213 Record of Deportable/Inadmissible Alien (Feb. 10, 2017))).

[60]   *First 100 Days: Chaffetz: We Want Inspector General to Investigate Leaks; Attorney for Arrested 'Dreamer' Speaks Out*, FoxNews.com (Feb. 15, 2017), https://www.foxnews.com/transcript/chaffetz-we-want-inspector-general-to-investigate-leaks-attorney-for-arrested-dreamer-speaks-out.

[61]   '*DREAMer' Protected under Obama Detained in Seattle Area*, CBSnews.com (Feb. 15, 2017), http://www.cbsnews.com/news/daniel-ramirez-medina-dreamer-protected-under-obama-detained-in-seattle.

[62]   *DHS Statement on Arrest of Alien Gang Member in Washington* (Feb. 15, 2017), https://www.dhs.gov/news/2017/02/15/dhs-statement-arrest-admitted-alien-gang-member-washington.

[63]   *E.g.*, Dkt. #52, at 7 (Respondents' Motion to Dismiss).

**Mr. Ramirez Is Released from Custody After 47 Days in Detention**

69.     Pursuant to an order of this Court, Mr. Ramirez received a bond hearing in Immigration Court on March 28, 2017.[64]  At the bond hearing, Mr. Ramirez testified about his arrest, interrogation, and detention.  Mr. Ramirez was released on bond on March 29, 2017.[65]

70.     In a startling admission, counsel for the government conceded at the conclusion of the bond hearing that Mr. Ramirez is not a danger to the community.  The government's statements (and lack of evidence) at the bond hearing affirm that the government has never had any justification for revoking Mr. Ramirez's DACA status or for detaining him for more than six weeks.

71.     After considering the evidence, the Immigration Judge concluded that Mr. Ramirez is neither a flight risk nor a danger to the community and should be released on bond.[66]  The Immigration Judge's decision to release Mr. Ramirez underscored Defendants' inability to support their allegations of gang affiliation.

**The Government Fails to Provide Any Credible Evidence to Support Its Gang Allegations**

72.     Both before and after that bond hearing, Defendants have failed to produce any credible evidence to support their false allegations that Mr. Ramirez is gang affiliated.  In sharp contrast, Mr. Ramirez submitted extensive evidence demonstrating that he is not, and never has been, a gang member.  In addition to evidence demonstrating that he successfully passed three separate DHS background checks, Mr. Ramirez submitted numerous sworn declarations attesting to the fact that he has never had any gang affiliation.[67]

73.     Additionally, three independent experts have rebutted Defendants' allegations that Mr. Ramirez is gang affiliated.  Martin Flores, who has served as a gang expert in more than 700 cases, stated that he has "never seen a gang member with a similar tattoo nor would [he] attribute

---

[64]  *See* Dkt. #69, at 3.

[65]  Ex. J, at 1 (Notice to EOIR).

[66]  Ex. K, at 1 (Custody Order); see also 8 C.F.R. § 236.1(c)(8) (2017).

[67]  *E.g.*, Dkt. #35-1, ¶¶ 19–20 (Declaration of Daniel Ramirez Medina); Dkt. #35-2, ¶ 4 (Declaration of Josue L.); Dkt. # 35-3, ¶¶ 8–9 (Declaration of Luz L.); Dkt. #35-5, ¶ 8 (Declaration of Nancy L.).

this tattoo to have any gang-related meaning."[68]   Another gang expert, Dr. Edwina Barvosa, similarly stated that there is "no apparent evidence that Mr. Ramirez Medina has ever been a gang member himself."[69]   And Carlos García, a Mexican researcher who has written extensively on gangs in California and Central America, noted that "[a]ny argument about gang ties based on [Mr. Ramirez's] tattoo is weak at best; this tattoo does not show any gang affiliation."[70]

74.     Despite the means and ample opportunity to collect evidence to support their claims, Defendants have failed to produce *any* credible evidence to support any of their allegations against Mr. Ramirez.  Unlike Mr. Ramirez, Defendants have access to numerous (and perhaps all) law enforcement and public safety databases.  Yet, Defendants have never suggested that they have located Mr. Ramirez's name or supposed gang affiliation in any of those databases or records.  To the contrary, the government has admitted numerous times that Mr. Ramirez is not a public safety threat, including at his March 28, 2017 bond hearing and in USCIS's March 20, 2018 internal email confirming that there is not sufficient evidence to conclude he is a gang member or safety threat.

75.     Likewise, Defendants placed great weight on Mr. Ramirez's alleged "gang tattoo," yet have never provided *any* evidence (from an expert or otherwise) that this tattoo is associated with gang membership.  Defendants have been unable to do so because it is not a gang tattoo. Instead, Defendants shifted tacks, when, in Immigration Court they submitted "evidence" in the form of articles located on the internet that discuss how some gangs discourage their members from getting tattoos so they are not identified as gang members.  In other words, Defendants first argued Mr. Ramirez's tattoo was a gang tattoo, and when that argument collapsed, argued that a lack of gang tattoos actually supports their contention that Mr. Ramirez was gang affiliated.  That contention collapsed, too, when the Immigration Judge found, in January 2018 that "[Mr. Ramirez] was not in a gang, nor associated with one."

---

[68]  Dkt. #35-7, ¶ 11 (Declaration of Martin M. Flores).

[69]  Dkt. #35-8, ¶ 10 (Declaration of Edwina Barvosa, PhD).

[70]  Jonathan Blitzer, *A case that could determine the future for Dreamers*, The New Yorker (Mar. 15, 2017), http://www.newyorker.com/news/news-desk/a-case-that-could-determine-the-future-for-dreamers.

76.     At the May 1, 2018 hearing on Mr. Ramirez's Motion for Preliminary Injunction, the government stated that there is no "record that establishes, one way or the other, with absolute conclusiveness, about Mr. Ramirez's gang affiliations or lack thereof."  Remarkably, that statement was made to this Court at the time the government's own record *did* show that Mr. Ramirez lacked gang affiliation—as confirmed by the government's own March 20, 2018 internal email, it knew that "there is not sufficient evidence to conclude [Mr. Ramirez] is currently a known or suspected gang member."[71]

**Defendants' Motion to Dismiss Is Denied in Its Entirety**

77.     On June 26, 2017, Defendants filed a motion to dismiss the Second Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim.[72]  On November 8, 2017, this Court denied that motion in its entirety.[73]  This Court determined that the issues presented in this action—whether Defendants complied with their own non-discretionary procedures when taking Mr. Ramirez into custody, questioning him at the Tukwila facility and ultimately terminating his DACA status—do not trigger the jurisdiction-stripping provisions of the INA.  This Court also determined that all claims advanced in the Second Amended Complaint were plausibly pleaded.

**The Government Is Twice Enjoined from Revoking Mr. Ramirez's DACA Status and Work Authorization**

78.     On January 17, 2018, an Immigration Judge issued an order of removal directing Mr. Ramirez's return to Mexico, while also finding that "[Mr. Ramirez] was not in a gang, nor associated with one."[74]  On February 6, 2018, Mr. Ramirez filed a motion for a preliminary injunction to restore his DACA and work authorization (the "Preliminary Injunction Motion").[75]  While that motion was pending, in a separate action a preliminary injunction order was issued on February 26, 2018 by the United States District Court for the Central District of California in *Inland*

---

[71]  Ex. A (Mar. 20, 2018 USCIS Email).

[72]  *See* Dkt. #90 (Defendants' Mot. to Dismiss the Second Amended Complaint).

[73]  *See* Dkt. #116 (Court's Nov. 8, 2017 Order).

[74]  *See* Dkt. #122-1, at 35 (Third Supplemental Declaration of Daniel Ramirez Medina); Dkt. #124-1, p. 14 (Excerpt of Trans. of Oral Decision of Immigration Judge).

[75]  *See* Dkt. #122 (Plaintiff's Motion for Preliminary Injunction).

*Empire-Immigrant Youth Collective v. Nielsen* ("*Inland Empire* Order"), No. 17-cv-2048.  That order required the government to restore to a certified class of former DACA recipients their DACA status and work authorization.  As a member of the *Inland Empire* class, Mr. Ramirez was to have his DACA restored.

79.     On or about April 3, 2018, the government delivered two notices to Mr. Ramirez.  One notice informed Mr. Ramirez that his DACA status and work authorization had been reinstated and extended to May 5, 2018, pursuant to the *Inland Empire* Order.[76]  The government simultaneously issued Mr. Ramirez a NOIT to terminate his just-restored DACA status.[77]  In other words, faced with the *Inland Empire* Order, the government restored Mr. Ramirez's status only to immediately begin new proceedings to wrongfully strip him of that status.

80.     The government's stated basis for the issuance of the NOIT was its continued wrongful insistence that Mr. Ramirez posed a risk to public safety because he allegedly was gang affiliated.  This theory was inconsistent with multiple background checks the government had previously run in connection with Mr. Ramirez's DACA application and renewals, the government's concession at his March 28, 2017 bond hearing that it had no evidence to support a finding that Mr. Ramirez was a risk to public safety,[78] and the Immigration Judge's January 2018 finding that he does not present a risk to public safety because the evidence submitted showed he was "not in a gang, nor associated with one."[79]  And the government's stated basis for the NOIT flatly contradicted its own internal March 20, 2018 email assessment conceding Mr. Ramirez lacks any gang affiliation or criminal history.[80]  The NOIT also stated that termination of Mr. Ramirez's DACA status was warranted because ICE was "actively pursuing" his removal, even though a removal order in and of itself is not a sufficient basis for termination of DACA status.

---

[76]  *See* Ex. L, at 1 (Reinstatement Notice).

[77]  *See* Ex. M, at 1 (Notice of Intent to Terminate).

[78]  *See* Dkt. #122-1, at 31 (Mar. 28, 2017 Tr. of Oral Decision of I.J.).

[79]  *See* Dkt. #124-1, at 14 (Jan. 17, 2018 Tr. of Oral Decision of I.J.).

[80]  Ex. A (March 20, 2018 USCIS Email).

81.     On May 15, 2018, this Court granted Mr. Ramirez's Preliminary Injunction Motion, concluding that Mr. Ramirez is likely to succeed on the merits of his claims because the government's continued reliance on "unfounded allegations" of gang affiliation was arbitrary, capricious, and an abuse of discretion and also implicated Mr. Ramirez's constitutional "right to an opportunity to be heard in a meaningful matter."[81]   The remaining elements—irreparable harm, balance of hardships and the public interest—also favored preliminary injunctive relief.

82.     Consistent with these rulings, this Court entered its Preliminary Injunction Order, in which it ordered that (1) "Defendants shall not terminate Plaintiff's DACA status and work authorization pending a final decision by this Court on the merits of his claims" and (2) "Defendant USCIS is ENJOINED from asserting, adopting, or relying in any proceedings on any statement or record made as of this date purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated, or a threat to public safety."[82]

**The Government Denies Mr. Ramirez's DACA Renewal Application**

83.     On May 21, 2018, in an abundance of caution given that this Court had already enjoined Defendants from terminating his benefits, Mr. Ramirez submitted a request to the government to renew his DACA status and work authorization.  Notwithstanding the Preliminary Injunction Order, on September 26, 2018, the government issued a Notice of Intent to Deny ("NOID") that request.  The NOID stated that the government intended to deny Mr. Ramirez's renewal request for four reasons.  The first—that ICE is actively pursuing Mr. Ramirez's removal—simply repeated one of the bases for the prior NOIT that this Court enjoined and is deficient for the reasons described above.  Each of the other three attempted to portray Mr. Ramirez as a threat to public safety: (1) that he was reported for having sexual intercourse with his son's mother in 2013 (resulting in the conception of his son), when he was 20 years old and his son's mother was 17 years old, even though no charges were filed, the relationship was consensual, and both sets of parents approved of the relationship and the pregnancy that resulted therefrom; (2) Mr. Ramirez's own

---

[81]   *Medina v. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1251 (W.D. Wash. 2018) (internal quotations omitted); *see also* Dkt. #133, at 22–23 (Preliminary Injunction Order).

[82]   *Id.* at 23.

admission that he was cited for possession of a small quantity of marijuana in Oregon in 2014; and (3) that he has not fully paid off certain fines he incurred for traffic violations.  None of these other three grounds was previously cited by the government as a basis for terminating Mr. Ramirez's DACA status and work authorization, although *each was previously known* to the government at the time it renewed Mr. Ramirez's DACA in 2016—at which time it did not determine any to be a basis for denial of renewal—and certainly at the time it issued the April 3, 2018 NOIT.  None of these bases suggests that Mr. Ramirez poses a public safety concern, and none establishes an adequate basis for termination of his DACA status.  Indeed, USCIS conceded in its internal March 20, 2018 email describing his "current criminal history"—sent two months *after* it claimed it learned for the first time of the "offense history" that it now cites for denial—that Mr. Ramirez's file shows "no criminality" and that "[t]here is NOT sufficient evidence to conclude [he] is an [egregious public safety] concern."[83]  Instead, these bases for denial of renewal—particularly when set in the context of the government's continuing campaign against Mr. Ramirez—are yet another unlawful attempt to terminate his DACA.

84.     On October 24, 2018, Mr. Ramirez submitted his lengthy response to the NOID, objecting to the stated bases for denial of DACA renewal, providing evidence of the harm such denial would cause him, and confirming that doing so would be a violation of this Court's Preliminary Injunction Order.

85.     On December 19, 2018, USCIS issued its final "Decision," denying Mr. Ramirez's DACA renewal application for the reasons contained in the NOID.[84]  In doing so, Defendants violated the Preliminary Injunction Order which enjoins USCIS "from asserting, adopting, or relying in any proceedings on any statement or record made as of this date purporting to allege that Mr. Ramirez is a gang member, gang affiliated, *or a threat to public safety.*"[85]  Contrary to USCIS's perfunctory statement in the Decision that it was not relying on such information, the agency clearly was relying on statements and records dated prior to May 15, 2018 that it views as relevant to

---

[83]  Ex. A (Mar. 20, 2018 USCIS Email).

[84]  Ex. N (Dec. 19, 2018 Decision Denying DACA Renewal).

[85]  Dkt. #133, at 23 (emphasis added).

whether Mr. Ramirez is a threat to public safety—the NOID cites the California Penal Code, the criminal U.S. Code, and references five traffic safety-related violations—in support of its stated conclusion that he "do[es] not warrant a favorable exercise of prosecutorial discretion."[86]  USCIS's avoidance of the phrase "public safety" in issuing this NOID does not bring it beyond the scope of the Preliminary Injunction Order, as the substantive bases for the NOID are manifestly public safety-related.  Moreover, the government's claim that it was unaware of or could not have known of these offenses at the time it renewed Mr. Ramirez's DACA in 2016 is incorrect, and irrelevant in any event given the mandates of the Preliminary Injunction Order.  Therefore, not only is the government's latest action to deny renewal a violation of the APA and Mr. Ramirez's due process rights, but it violates this Court's Preliminary Injunction Order.

86.     Moreover, the Preliminary Injunction Order requires that the government not "terminate [Mr. Ramirez's] DACA status and work authorization pending a final decision by [the] Court on the merits of his claims."  However, USCIS did just that, denying renewal of Mr. Ramirez's DACA, even though such processed renewals are routinely approved 99% of the time.  In so doing, Defendants have affirmatively terminated Mr. Ramirez's DACA and work authorization benefits, thereby violating the Preliminary Injunction Order for this additional reason.

**Mr. Ramirez Continues to Suffer Harm as a Result of Defendants' Unlawful Conduct**

87.     Mr. Ramirez was detained from February 10, 2017 to March 29, 2017.  He will never get back the six weeks that he spent in the Northwest Detention Center.  Since his release, Mr. Ramirez has reunited with his family, but has been unable to fully piece his life back together.  Mr. Ramirez must work to provide for himself and his family, but Defendants' actions have impaired his ability to find gainful employment.

88.     Mr. Ramirez also continues to experience the profound emotional and psychological consequences of his detention.  For more than six weeks, he was confined under conditions that caused him to experience significant distress, humiliation, embarrassment, discomfort, fear, and anxiety.  He constantly feared that he would be attacked based on Defendant's false claims about his supposed gang affiliation.

---

[86]  Ex. N, at 4 (Dec. 19, 2018 Decision Denying DACA Renewal).

89.     Mr. Ramirez also continues to suffer the stigma of being associated with a gang. Not only has Mr. Ramirez's reputation been damaged as a result of Defendants' conduct, but the reputation of his family has suffered as well.  Mr. Ramirez cares deeply about his family, and it has been very difficult for him to see how Defendants' actions have caused his family harm.

90.     Further, Mr. Ramirez has suffered harm and significant distress arising out of both the unlawful issuance of the NOID and subsequent final Decision to deny his DACA renewal request.  After this Court issued the Preliminary Injunction Order, Mr. Ramirez believed he would finally be treated fairly and justly by the government so that he could get back to living his life and providing for his family.  That Preliminary Injunction Order provided Mr. Ramirez peace of mind that the government's campaign against him might finally cease.  But Defendants were undaunted by this Court's order, and their continued pursuit of Mr. Ramirez and denial of his DACA renewal have caused him great additional emotional harm, have interfered with his ability to earn a living wage, to enjoy the other benefits of DACA status, to raise his son (who is a U.S. citizen), and to peacefully carry on living his life in the United States.

## CAUSES OF ACTION

## COUNT ONE

## ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS ACTION

91.     Mr. Ramirez repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.     This Count is brought against all Defendants and seeks declaratory and injunctive relief under the APA.

93.     The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2017).  Here, Defendants have acted arbitrarily and capriciously in taking actions to terminate Mr. Ramirez's DACA status on multiple occasions since they unlawfully detained him in February 2017.  Three actions in particular embody such arbitrary and capricious treatment: (1) the revocation of Mr. Ramirez's DACA status and work authorization in February

2017; (2) the issuance of the NOIT in April 2018 in reliance on unfounded allegations of gang affiliation; and (3) the issuance of the December 19, 2018 Decision to deny Mr. Ramirez's DACA renewal request on the insufficient grounds provided, which also violated the terms of the Preliminary Injunction Order and contradict Defendants' own internal records.  In each instance, the government acted in a manner that was arbitrary, capricious, an abuse of discretion, and in violation of the Defendants' own established procedures.

94.     The February 2017 revocation of Mr. Ramirez's DACA status and work authorization constitutes final agency action and cannot be appealed.[87]  The denial of Mr. Ramirez's renewal request in December 2018 also constitutes final agency action and cannot be appealed.[88]

95.     Defendants' decision to revoke Mr. Ramirez's DACA status and work authorization in February 2017, despite the fact that multiple prior and more thorough analyses had concluded that he was eligible for DACA, and despite the government own internal determination that he does not present a public safety concern even after learning of the facts on which it based denial of renewal, is the sort of inconsistency that is the hallmark of arbitrary action.  *See, e.g.*, *Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134, 1145 (9th Cir. 2015).[89]  Indeed, as discussed above, Defendants examined Mr. Ramirez's background on at least three separate occasions and concluded that he was eligible for DACA.  The decision to summarily reverse that conclusion was arbitrary, capricious, and an abuse of discretion.  That the government again acknowledged that Mr. Ramirez is not a threat to public safety at his March 2017 bond hearing and in USCIS's March 20, 2018 internal email further underscores the arbitrary and capricious nature of his DACA revocation.

96.     Defendants' assertions that Mr. Ramirez is gang affiliated were implausible and ran "counter to the evidence before the agency" (*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,

---

[87]  As discussed above, the NOA expressly provides that an "appeal or motion to reopen/reconsider this notice of action may not be filed." Ex. I, at 1.

[88]  Ex. N (Dec. 19, 2018 Decision Denying DACA Renewal) ("You may not file an appeal or motion to reopen/reconsider this decision.")

[89]  *See also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).  While an agency may change course based upon new "factual findings that contradict those" upon which it based its prior determination, it must provide a "detailed justification," particularly when the "prior policy has engendered serious reliance interests that must be taken into account."  *Id.* at 515–16 (citing *Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735, 742 (1996)).

833 F.3d 1136, 1146 (9th Cir. 2016) (citation omitted)), as was their December 2018 determination

that Mr. Ramirez had an "offense history" that warranted denial of his DACA renewal.  Defendants

had before it all relevant information regarding Mr. Ramirez's history, offense or otherwise, when

improperly determining in April 2018 and December 2018 that he was a public safety concern.  But

that determination ran contrary to the evidence before USCIS, as in March 20, 2018 USCIS had

determined and admitted that Mr. Ramirez had "[n]o criminality," that "there is not sufficient

evidence to conclude he is currently a known or suspected gang member," and that "[t]here is NOT

sufficient evidence to conclude [he] is an EPS concern."[90]

97.      Relatedly, Defendants acted unlawfully and in violation of the *Accardi* doctrine

because they failed to "adhere to [their] own internal operating procedures" when they summarily

revoked Mr. Ramirez's DACA status and work authorization in February 2017 but failed to provide

him the appropriate notice and opportunity to contest that determination.  *Church of Scientology of

Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) (citing *United States ex rel. Accardi v.

Shaughnessy,* 347 U.S. 260, 268 (1954)).[91]

98.      Defendants then acted arbitrarily and capriciously in issuing Mr. Ramirez the NOIT

the same day they restored his DACA status pursuant to the *Inland Empire* Order.  As noted, the

NOIT stated that Mr. Ramirez was a risk to public safety due to his alleged gang affiliation even

though Defendants had twice acknowledged that there was no support for this conclusion—first, at

his bond hearing in March 2017 and again in an internal DHS email dated approximately two weeks

before the NOIT was issued, which stated that there was "[n]o criminality on [his] rap sheet" nor

"sufficient evidence to conclude he is currently a known or suspected gang member."[92]  Basing the

NOIT on such baseless and discredited allegations was arbitrary and capricious, and this Court found

in its Preliminary Injunction Order that Mr. Ramirez was likely to prevail on this argument.

---

[90]  Ex. A (Mar. 20, 2018 USCIS Email).

[91]  The *Accardi* requirement "extends beyond formal regulations," including to "policy
statement[s]," "handbook[s]," "operating procedures," "Order[s]," "Weekly Bulletin[s],"
unpromulgated rules documenting "usual practice," "Standards," and "Directive[s]."  *Alcaraz v.
I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) (citing cases).

[92]  Ex. A (March 20, 2018 USCIS Email).

99.     Defendants' denial of Mr. Ramirez's renewal request in December 2018 was also arbitrary and capricious.  The government cites as the reason for the denial Mr. Ramirez's "offense history," which consists of a 2013 Police Report regarding Mr. Ramirez's romantic relationship with the mother of his son for which no investigation was ever initiated (and for which no charges were ever pursued given the consent of all parties and their families), a citation for possession of a small quantity of marijuana in 2014, and various tickets for traffic violations.  The conclusion reached by Defendants that Mr. Ramirez no longer warrants favorable consideration for DACA due to his "offense history" cannot be lawfully reconciled with DHS's March 2018 determination that there is "[n]o criminality on [Mr. Ramirez's] rap sheet."  Even setting aside this inconsistency, the denial of Mr. Ramirez's renewal request on this basis is arbitrary and capricious, as 99% of processed renewal requests are approved, including for DACA recipients who, like Mr. Ramirez, have committed minor, non-violent infractions in the past.  Moreover, all of these facts were available to the government at the time it issued the NOIT, in April 2018, yet the government did not cite these minor, non-violent infractions at that time, doing so only after this Court blocked its efforts to terminate his DACA by falsely accusing him of gang membership.  There is good reason why the government did not cite these bases in the April 2018 NOIT—they do not rise to the level of violent offenses warranting denial of DACA, and Defendants' reliance on them to deny renewal is arbitrary and capricious.

100.    Defendants' denial of Mr. Ramirez's renewal request in December 2018 also violates the *Accardi* doctrine.  Under the DACA SOP, a DACA request that presents "issues of criminality" must be reviewed and adjudicated by the USCIS Background Check Unit ("BCU") DACA Team.[93]  In March 2018, approximately two months before Mr. Ramirez submitted his renewal request, a member of the BCU DACA Team determined that Mr. Ramirez had "[n]o criminality on [his] rap sheet."  Defendants nonetheless denied Mr. Ramirez's most recent renewal request based on his alleged criminal or "offense" history.  This was in violation of the SOP guidelines governing the processing of DACA applications for two reasons.  First, it contravened the conclusion reached by the BCU DACA Team in March 2018 regarding Mr. Ramirez's lack of criminal history.  The SOP does not provide for a process by which determinations of the BCU

---

[93]   Ex. G, at 82, 93–96 (DACA SOP).

DACA Team with respect to an applicant's criminal history may be overridden.  Second, there is no evidence whatsoever in administrative record that the BCU DACA Team actually adjudicated Mr. Ramirez's most recent renewal request and reached a conclusion contrary to the March 2018 determination.

101.     For all of the foregoing reasons, Defendants violated the APA when revoking Mr. Ramirez's DACA status and work authorization in February 2017, issuing a NOIT based upon false allegations of gang affiliation in April 2018, and denying his renewal request in December 2018.

## COUNT TWO

### ADMINISTRATIVE PROCEDURE ACT – UNCONSTITUTIONAL ACTION

102.     Mr. Ramirez repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

103.     This Count is brought against all Defendants and seeks declaratory and injunctive relief under the APA.

104.     The APA dictates that courts "shall . . . hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).  Here, Defendants violated the APA because their threats, revocations, and failure to renew Mr. Ramirez's DACA status and work authorization violated his rights under the Due Process Clause.  The February 2017 revocation of Mr. Ramirez's DACA status and work authorization constitutes final agency action and cannot be appealed.  The denial of Mr. Ramirez's renewal request in December 2018 also constitutes final agency action.[94]

105.     Aliens who are physically present in the United States are guaranteed the protections of the Due Process Clause.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

106.     The Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A threshold

---

[94]   *See supra* note 88.

inquiry in any case involving a violation of procedural due process "is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest." *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1190–91 (9th Cir. 2015) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972)).

107.    Here, Defendants deprived Mr. Ramirez of liberty interests protected by the Due Process Clause.  As previously discussed, DACA grants beneficiaries the right not to be arrested or detained based solely on their immigration status during the time period that their deferred action is in effect.  Such "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  The term "liberty" also encompasses the ability to work, raise a family, and "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Roth*, 408 U.S. at 572.  Where, as here, an individual reasonably relies on a conferred status to pursue these activities, the government cannot revoke that status without adequate procedural due process. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that once a benefit is granted "continued possession may become essential in the pursuit of a livelihood").

108.    The fact that Defendants previously revoked Mr. Ramirez's DACA status and work authorization based on false allegations of gang affiliation also deprived him of protected liberty interests in his reputation. *See Paul v. Davis*, 424 U.S. 693, 709 (1976) (explaining that while reputation alone may not be a protected liberty interest, "the invocation of procedural safeguards" is justified when defamatory allegations accompany an altered legal status); *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").  Defendants' denial of Mr. Ramirez's renewal application was similarly made on the erroneous grounds that he is a public safety threat, thereby furthering harm to his reputation.

109.    Defendants also deprived Mr. Ramirez of property interests protected by the Due Process Clause.  The property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Nozzi*,

806 F.3d at 1191 (citing *Roth*, 408 U.S. at 576–77).  "A legitimate claim of entitlement is created [by] . . . 'rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Id.*  Therefore, an individual has a protected property interest where they have a reasonable expectation of entitlement to that interest.

110.    Here, Mr. Ramirez possessed a protected property interest in his DACA status and the numerous benefits provided to him under the DACA program.  As discussed above, these benefits include, among other things, the ability to legally work in the United States,[95] eligibility for important state and federal benefits,[96] and the ability to travel internationally under certain circumstances.  *See Texas*, 809 F.3d at 166 ("Deferred action . . . is much more than nonenforcement:  It would affirmatively confer 'lawful presence' and associated benefits on a class of unlawfully present aliens.  Though revocable, that change in designation would trigger . . . eligibility for federal benefits—for example, under title II and XVIII of the Social Security Act—and state benefits—for example, driver's licenses and unemployment insurance—that would not otherwise be available to illegal aliens."); *Ariz. Dream Act Coal.*, 757 F.3d at 1059 ("DHS considers DACA recipients not to be unlawfully present in the United States because their deferred action is a period of stay authorized by the Attorney General.").

111.    These protected property interests exist because of the government's decision to grant Mr. Ramirez these benefits, and by virtue of its promise to Mr. Ramirez (and hundreds of thousands of similarly situated young people) to adhere to the strict framework of the DACA program, including the ability to renew one's status.  *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.").  In establishing and operating DACA under a well-defined framework and highly specific criteria, the

---

[95]  Revocation of (or denial of renewal regarding) DACA is therefore the sort of "complete prohibition of the right to engage in a calling" that directly implicates the Due Process Clause. *Conn v. Gabbert*, 526 U.S. 286, 292 (1999).

[96]  Courts routinely find that revocation of public benefits triggers the Due Process Clause. *See, e.g.*, *Mathews*, 424 U.S. at 332.

government created a reasonable expectation among DACA recipients—including Mr. Ramirez—that they are entitled to the benefits provided under the program.[97]

112.     While DACA is premised on the exercise of prosecutorial discretion, that discretion is limited and constrained by the rules and criteria on which DACA is based and operated, and by the government's decision to twice grant Mr. Ramirez deferred action and work authorization.  These constraints on discretion further support Mr. Ramirez's claim of a protected property interest.  *See Nozzi*, 806 F.3d at 1191 (finding a protected property right in government benefits where government regulations "greatly restrict the discretion" of those who administer the benefits) (citation omitted).

113.     Defendants' conduct in depriving Mr. Ramirez of his protected liberty and property interests is evaluated under the three-part *Eldridge* test.  "[I]n *Mathews v. Eldridge*, the Supreme Court set forth a three-part inquiry to determine whether the procedures provided to protect a liberty or property interest are constitutionally sufficient.  First, courts must look at the nature of the interest that will be affected by the official action, and in particular, to the degree of potential deprivation that may be created.  Second, courts must consider the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards.  Finally, courts must assess the public interest, which includes the administrative burden and other societal costs that would be associated with additional or substitute procedures." *Nozzi*, 806 F.3d at 1192–93 (internal quotations and citations omitted).  This test requires courts to balance the affected interests to see whether the procedures provided are constitutionally sufficient.

114.     Here, both the revocation of and then the denial of renewal of Mr. Ramirez's DACA status and work authorization without adequate procedural protections fail the *Eldridge* test.  First, Mr. Ramirez's protected interests are extremely significant—they include, among other things, his physical liberty, his right to be free from arrest or detention based solely on his immigration status, and his ability to earn a living to help support himself and his family.  Second, the procedures provided were wholly inadequate.  "The essence of due process is the requirement . . . [of] notice . . .

---

[97]  "[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state." *Newman v. Sathyavaglswaran*, 287 F.3d 786, 797 (9th Cir. 2002) (citations omitted).

[and] a meaningful opportunity to present [one's] case." *Mathews*, 424 U.S. at 348–49.  Here, Defendants initially revoked Mr. Ramirez's DACA status without any advance notice.[98]  Defendants then continued to rely on unsubstantiated allegations of gang affiliation in threatening to terminate Mr. Ramirez's DACA status, and subsequently failed to give fair and impartial consideration to his DACA renewal application after deciding that they would take whatever steps necessary to terminate Mr. Ramirez's DACA, including attempting to skirt this Court's Preliminary Injunction Order to deny a routine renewal.  This Court has already held that such conduct "implicates [Mr. Ramirez's] right to an opportunity to be heard in a meaningful manner."[99]  And third, there is no credible burden "associated with additional or substitute procedures," or public benefit from their absence.  *Nozzi*, 806 F.3d at 1193 (internal quotations and citations omitted).[100]

    115.    Separate from the inadequate procedural protections it has provided Mr. Ramirez throughout this process, the government's treatment of Mr. Ramirez also violates his substantive rights under the Due Process Clause.  The government's actions demonstrate that it has not been motivated by a legitimate purpose; rather, the government has been motivated by animus and spite toward an individual who challenged the government's false allegations and stood up for his individual rights.  Such illegitimate and retaliatory rationales cannot support the government's deprivation of Mr. Ramirez's protected liberty and property interests.  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("The touchstone of due process is protection of the individual against arbitrary action of the government." (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))); *Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018) ("[S]ubstantive due process protects against government power arbitrarily and oppressively exercised.").

    116.    For similar reasons, Defendants' retaliatory actions have violated Mr. Ramirez's rights under the First Amendment.  Even if the government's actions were lawful, which they were

---

[98]  The risk of "erroneous deprivation" is particularly high where, as here, an agency disregards its own extensive prior due diligence in favor of a spur-of-the-moment judgment by a few individuals based on extremely limited evidence.  Under these circumstances, *any* "additional procedural safeguards" would have had obvious "probable value."  *Nozzi*, 806 F.3d at 1193.

[99]  *Medina*, 313 F. Supp. 3d at 1251 (internal quotations omitted).

[100]  As previously noted, Defendants also violated the government's policy of providing notice and 33 days to respond before terminating DACA status.  *See* Dkt. #78-6, Ex. F, at 132, Appendix I (DACA SOP).

not, such "[o]therwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016); *see also Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) ("[T]he government may not retaliate for exercising First Amendment speech rights."). To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien*, 818 F.3d at 932 (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) and holding that complaint stated a plausible First Amendment retaliation claim).

117. Defendants' decision to deny renewal of Mr. Ramirez's DACA status and work authorization in December 2018 violated the First Amendment's prohibition against retaliation for protected speech. Mr. Ramirez first filed suit to challenge the government's unconstitutional conduct on February 13, 2017, and Defendants have consistently taken punitive and retaliatory action against him ever since. "Litigation seeking to expose . . . wrongful governmental activity is, by its very nature, a matter of public concern" that is protected by the First Amendment. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004); *see also id.* at 925 ("[P]roceedings before a judicial or administrative body constitute a matter of public concern if they bring to light potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials."). In an abundance of caution, Mr. Ramirez submitted a request to renew his DACA less than one week after the Preliminary Injunction Order, which enjoined Defendants from terminating his DACA. Four months later, in the next action Defendants took with respect to Mr. Ramirez's renewal application, Defendants informed Mr. Ramirez of their intent to deny his request. In light of the history of Defendants' treatment of Mr. Ramirez—and considering the fact that virtually all DACA renewal requests are granted—the motivation behind Defendants' denial of Mr. Ramirez's request is clear: to silence Mr. Ramirez and to retaliate against him for his efforts to pursue relief for Defendants' past unlawful conduct.

118.     For all of the foregoing reasons, the threatened and actual revocation of Mr.

Ramirez's DACA status and work authorization, and the denial of his DACA renewal application,

violated his rights under the Due Process Clause and the First Amendment, and was therefore in

violation of the APA.

**COUNT THREE**

**EQUITABLE ESTOPPEL**

119.     Mr. Ramirez repeats and incorporates by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

120.     This Count is brought against all Defendants and seeks a declaration that Defendants

are equitably estopped from terminating Mr. Ramirez's DACA status and work authorization.

121.      The government may be subject to equitable estoppel in an immigration case if it

has engaged in "affirmative misconduct." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir.

2005).  Equitable estoppel against the government also requires a showing that the government has

"made a knowing false representation or concealment of material facts to a party ignorant of the facts,

with the intention that the other party rely on it, where the other party actually and detrimentally

relies on it" and that its "wrongful act will cause a serious injustice, and the public's interest will not

suffer undue damage by imposition of the liability." *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008–09

(9th Cir. 1986) (quoting *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)).

122.     Here, Defendants should be estopped from terminating or declining to renew Mr.

Ramirez's DACA status and work authorization.  Defendants repeatedly, intentionally, and falsely

asserted that Mr. Ramirez is gang affiliated or otherwise presents a risk to public safety.  Mr. Ramirez

is, to this day, ignorant of Defendants' motivation in instituting and pursuing an unlawful course of

harassing conduct to deny him of the benefits to which he is entitled under DACA—except as

retaliation against Mr. Ramirez for exercising his rights.  Defendants have now however, improperly

and wrongfully adopted a new gambit to attempt to deprive Mr. Ramirez of his DACA, using

information that the government had available to it all along, but that it never previously raised in

connection with his prior approved DACA renewal nor in the April 2018 NOIT, which was

principally based on the false accusation of gang affiliation.

123.     Believing he was protected against further government abuse by the Preliminary Injunction Order (which he expected the government would not violate), Mr. Ramirez reasonably relied on the government's prior false statements of alleged gang affiliation as the principal basis for attempting to terminate his DACA (which it reiterated at the May 1, 2018 hearing on the Preliminary Injunction Motion):

> THE COURT: Let me ask you this: Is the plaintiff correct that by filing the notice to terminate, that you intend to once again rely on the allegations that Mr. Ramirez is a gang member, has associated with gang members, and therefore needs to have that DACA status terminated?
>
> MR. ROBINS: Essentially, yes, Your Honor.[101]

124.     Mr. Ramirez understandably believed that this allegation—false as it was—was the government's principal basis on which it would attempt to terminate his DACA, and that if it was aware of existing legitimate bases on which to terminate (or refuse to renew) his benefits, it would have at the very least included them in the April 2018 NOIT.  But based on the government's representations in the NOIT and at the May 1, 2018 hearing, he did not and could not have expected the government to dredge up past minor violations—of which the government was aware at the time it issued the April 2018 NOIT—as a pretext to deny his DACA renewal and attempt to skirt requirements of the Preliminary Injunction Order, particularly where other DACA recipients' renewals are routinely granted in the face of such minor violations.

125.     Mr. Ramirez planned his future based on the government's representations in this regard, including planning to work using his employment authorization to provide for his son.  In that belief, he reasonably relied on the government's prior representations in connection with the NOIT and its statements to this Court in submitting his DACA renewal application in good faith and paying the renewal fee; therefore, he expected that his renewal application would be fairly processed and approved as it had been before (as processed renewals are routinely approved, 99% of the time).

126.     The injustice to Mr. Ramirez arising out of Defendants' misconduct outweighs any possible harm to the public interest by the restoration of his benefits.  Mr. Ramirez has lived in the

---

[101]   Dkt. # 130-1, p. 25 (Trans. of May 1, 2018 Hrg., p. 20).

United States since he was ten years old, has gone to school and worked here, and is the father of a United States citizen for whom he wishes to provide, but the government's retaliatory campaign and false representations have severely impaired his ability to do so.

## COUNT FOUR

## DECLARATORY RELIEF

127.    Mr. Ramirez repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    As explained above, Defendants' revocation of Mr. Ramirez's DACA status and work authorization in February 2017, and their decision to deny renewal of his DACA in December 2018, violated his rights under the First and Fifth Amendments.  Mr. Ramirez therefore seeks a declaration that: (i) he has constitutionally protected interests in his DACA status and the benefits conferred thereunder; and (ii) Defendants' revocation of these interests was unlawful and invalid. *See Akhtar v. Burzynski*, 384 F.3d 1193, 1202 (9th Cir. 2004); *Walters v. Reno*, 145 F.3d 1032, 1036, 1042–44 (9th Cir. 1998).

129.    For the same reasons, Mr. Ramirez is entitled to an order directing Defendants to reinstate his DACA status.  5 U.S.C. § 706.

## DEMAND FOR JURY TRIAL

130.    Mr. Ramirez demands a jury trial on his claims.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Ramirez prays that this Court grant the following relief:

(1)  Award damages according to proof;

(2)  Find the agency actions to deny Mr. Ramirez's DACA to be arbitrary and capricious and unlawful;

(3)  Issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that: (i) Mr. Ramirez has constitutionally protected interests in his DACA status and the benefits conferred thereunder; and (ii) Defendants' revocation of and failure to renew Mr. Ramirez's DACA status and benefits was unlawful and in violation of his constitutional rights;

(4)  Order Defendants to reinstate Mr. Ramirez's DACA status and work authorization;

(5)   Enjoin Defendants from terminating or declining to renew Mr. Ramirez's DACA status and work authorization;

(6)   Award Mr. Ramirez reasonable costs and attorneys' fees; and

(7)   Grant any other and further relief that this Court may deem fit and proper.

DATED:  March __, 2019

Seattle, Washington

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*

PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*

IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*

Attorneys for Plaintiff

# Exhibit A

| From: | Robinson, Brandon M |
|---|---|
| To: | Robinson, Brandon M |
| Subject: | FW: URGENT FW: Current Criminal History Analysis |
| Date: | Monday, September 10, 2018 8:27:04 AM |

**From:** Shafii-Stier, Sara A
**Sent:** Tuesday, March 20, 2018 9:45 AM
**To:** Woerz, Bret A
**Cc:** DeBoer, Allan S; Posvar, Sarah C; Freeman, Mark C; Robinson, Brandon M; Jenkins, Jennifer L
**Subject:** FW: URGENT FW: Current Criminal History Analysis

Hi Bret,

Below are the criminal history analyses for the cases you requested. We should have the entire spreadsheet completed by this afternoon, so Jenni or I will get that over to you as soon as possible.

**Daniel RAMIREZ MEDINA,** ████████

Description of Current Criminal History: No criminality on rap sheet. Gang information obtained from EARM, ICE interview of DACA recipient. HOWEVER, there is not sufficient evidence to conclude he is currently a known or suspected gang member. If this was a pending case, it would have been further vetted and likely referred to a field office for a gang interview. There is NOT sufficient evidence to conclude this person is an EPS concern. No checkboxes checked

PII

PII

Please let us know if you need any additional information.

Thank you,

Sara A. Shafii-Stier | Supervisory Immigration Services Officer
USCIS Nebraska Service Center | DACA Background Check Unit | ███████ ███
☎: ███████ | Cell: ███████ | ✉: ████████████████ .

**From:** Woerz, Bret A
**Sent:** Monday, March 19, 2018 3:12 PM
**To:** Jenkins, Jennifer L; Shafii-Stier, Sara A
**Cc:** DeBoer, Allan S; Posvar, Sarah C; Freeman, Mark C; Robinson, Brandon M
**Subject:** RE: URGENT FW: Current Criminal History Analysis

Please see OCC adjustments in the list below… they are checking with plaintiff on the name that is completely stricken

**From:** Woerz, Bret A
**Sent:** Monday, March 19, 2018 3:45 PM
**To:** Jenkins, Jennifer L; Shafii-Stier, Sara A
**Cc:** DeBoer, Allan S; Posvar, Sarah C; Freeman, Mark C; Robinson, Brandon M
**Subject:** URGENT FW: Current Criminal History Analysis
**Importance:** High

Good afternoon,

My apologies for this extremely quick turnaround.  I am on a C3 process and NTA call right now but received the below email for urgent action.  I confirmed that the group below appears on the NSC list.  Can your group prioritize these ASAP?

V/r,

Bret

**From:** Hinds, Ian G
**Sent:** Monday, March 19, 2018 3:34 PM
**To:** Woerz, Bret A
**Cc:** Ooi, Maura M; Smith, Alice J
**Subject:** Current Criminal History Analysis

Bret,

Plaintiffs' counsel have identified the individuals listed below as class members. ███ACP, AWP███
███████████████████████████████
███████████████████████████████
███████████████████████████████ Let us know if you have any questions.
███████████████████████

SCAR000213

Daniel Ramirez Medina ████████████

PII ████████████████

████████████████████████

████████████████████████

██████████████████

██████████████▪ ██

██████████████████████

Thanks,
Ian


*Ian G. Hinds*
*Special Counsel*
*USCIS Office of the Chief Counsel*
████████

***ATTORNEY-CLIENT PRIVILEGE***ATTORNEY WORK PRODUCT***INTERNAL GOVERNMENT USE ONLY***
*This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited.  If you have received this message in error, please reply immediately to the sender and delete this message.*

# Exhibit B



**U.S. Citizenship and
Immigration Services**

# Frequently Asked Questions

*FAQs updated October 27, 2015*

**General Information for All Requestors**

- **What is Deferred Action for Childhood Arrivals?**
- **DACA Process**
- **Background Checks**
- **After USCIS Makes a Decision**

**Initial Requests for DACA**
**Renewal of DACA**
**Travel**
**Criminal Convictions**
**Miscellaneous**

## I. General Information for All Requestors

### A. What is Deferred Action for Childhood Arrivals?

Over the past several years, this Administration has undertaken an unprecedented effort to transform the immigration enforcement system into one that focuses on national security, public safety, border security and the integrity of the immigration system. As the Department of Homeland Security (DHS) continues to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety, DHS will exercise prosecutorial discretion as appropriate to ensure that enforcement resources are not expended on low priority cases, such as individuals who came to the United States as children and meet other key guidelines. Individuals who demonstrate that they meet the guidelines below may request consideration of deferred action for childhood arrivals (DACA) for a period of two years, subject to renewal for a period of two years, and may be eligible for employment authorization.

You may request consideration of DACA if you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;

5. Had no lawful status on June 15, 2012, meaning that:

   - You never had a lawful immigration status on or before June 15, 2012, or
   - Any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired as of June 15, 2012;

6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and

7. Have not been convicted of a felony, a significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

**Individuals can call U.S. Citizenship and Immigration Services (USCIS) at 1-800-375-5283 with questions or to request more information on DACA.** Those with pending requests can also use a number of online self-help tools which include the ability to check case status and processing times, change your address, and send an inquiry about a case pending longer than posted processing times or non-delivery of a card or document.

**Q1: What is deferred action?**
A1: Deferred action is a discretionary determination to defer a removal action of an individual as an act of prosecutorial discretion. For purposes of future inadmissibility based upon **unlawful presence**, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect. An individual who has received deferred action is authorized by DHS to be present in the United States, and is therefore considered by DHS to be lawfully present during the period deferred action is in effect. However, deferred action does not confer **lawful status** upon an individual, nor does it excuse any previous or subsequent periods of unlawful presence.

Under existing regulations, an individual whose case has been deferred is eligible to receive employment authorization for the period of deferred action, provided he or she can demonstrate "an economic necessity for employment." DHS can terminate or renew deferred action at any time, at the agency's discretion.

**Q2: What is DACA?**
A2: On June 15, 2012, the Secretary of Homeland Security announced that certain people who came to the United States as children and meet several key guidelines may request consideration of deferred action for a period of two years, subject to renewal, and would then be eligible for work authorization.

Individuals who can demonstrate through verifiable documentation that they meet these guidelines will be considered for deferred action. Determinations will be made on a case-by-case basis under the DACA guidelines.

**Q3: Is there any difference between "deferred action" and DACA under this process?**
A3: DACA is one form of deferred action. The relief an individual receives under DACA is identical for immigration purposes to the relief obtained by any person who receives deferred action as an act of prosecutorial discretion.

**Q4: If my removal is deferred under the consideration of DACA, am I eligible for employment authorization?**

A4: Yes. Under existing regulations, if your case is deferred, you may obtain employment authorization from USCIS provided you can demonstrate an economic necessity for employment.

**Q5: If my case is deferred, am I in lawful status for the period of deferral?**

A5: No. Although action on your case has been deferred and you do not accrue unlawful presence (for admissibility purposes) during the period of deferred action, deferred action does not confer any lawful status.

The fact that you are not accruing unlawful presence does not change whether you are in lawful status while you remain in the United States. However, although deferred action does not confer a lawful immigration status, your period of stay is authorized by the Department of Homeland Security while your deferred action is in effect and, for admissibility purposes, you are considered to be lawfully present in the United States during that time. **Individuals granted deferred action are not precluded by federal law from establishing domicile in the U.S.**

Apart from the immigration laws, "lawful presence," "lawful status" and similar terms are used in various other federal and state laws. For information on how those laws affect individuals who receive a favorable exercise of prosecutorial discretion under DACA, please contact the appropriate federal, state or local authorities.

**Q6: Can I renew my period of deferred action and employment authorization under DACA?**

A6: Yes. You may request consideration for a renewal of your DACA. Your request for a renewal will be considered on a case-by-case basis. If USCIS renews its exercise of discretion under DACA for your case, you will receive deferred action for another two years, and if you demonstrate an economic necessity for employment, you may receive employment authorization throughout that period.

Return to top.

**B. DACA Process**

**Q7: How do I request consideration of DACA?**

A7: To request consideration of DACA (either as an initial request or to request a renewal), you must submit Form I-821D, Consideration of Deferred Action for Childhood Arrivals to USCIS. Please visit uscis.gov/i-821d before you begin the process to make sure you are using the most current version of the form available. This form must be completed, properly signed and accompanied by a Form I-765, Application for Employment Authorization, and a Form I-765WS, Worksheet (PDF, 235 KB), establishing your economic need for employment. If you fail to submit a completed Form I-765 (along with the accompanying filing fees for that form, please see the Form I-821D page for more information), USCIS will not consider your request for deferred action. Please read the form instructions to ensure that you answer the appropriate questions (determined by whether you are submitting an initial or renewal request) and that you submit all the required documentation to support your initial request.

You must file your request for consideration of DACA at the USCIS Lockbox. You can find the mailing address and instructions at www.uscis.gov/i-821d. As of June 5, 2014, requestors must use the new version of the form.  After your Form I-821D, Form I-765, and Form I-765 Worksheet

have been received, USCIS will review them for completeness, including submission of the required fee, initial evidence and supporting documents (for initial filings).

If it is determined that the request is complete, USCIS will send you a receipt notice. USCIS will then send you an appointment notice to visit an Application Support Center (ASC) for biometric services, if an appointment is required. Please make sure you read and follow the directions in the notice. Failure to attend your biometrics appointment may delay processing of your request for consideration of deferred action, or may result in a denial of your request. You may also choose to receive an email and/or text message notifying you that your form has been accepted by completing a Form G-1145, E-Notification of Application/Petition Acceptance.

Each request for consideration of DACA will be reviewed on an individual, case-by-case basis. USCIS may request more information or evidence from you, or request that you appear at a USCIS office. USCIS will notify you of its determination in writing.

**Note:** All individuals who believe they meet the guidelines, including those in removal proceedings, with a final removal order, or with a voluntary departure order (and not in immigration detention), may affirmatively request consideration of DACA from USCIS through this process. Individuals who are currently in immigration detention and believe they meet the guidelines may not request consideration of deferred action from USCIS but may identify themselves to their deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information visit ICE's website at www.ice.gov/daca.

**Q8: Can I obtain a fee waiver or fee exemption for this process?**
A8: There are no fee waivers available for employment authorization applications connected to DACA. There are very limited fee exemptions available. Requests for fee exemptions must be filed and favorably adjudicated before an individual files his/her request for consideration of DACA without a fee. In order to be considered for a fee exemption, you must submit a letter and supporting documentation to USCIS demonstrating that you meet one of the following conditions:

- You are under 18 years of age, have an income that is less than 150 percent of the U.S. poverty level, and are in foster care or otherwise lacking any parental or other familial support; or

- You are under 18 years of age and homeless; or

- You cannot care for yourself because you suffer from a serious, chronic disability and your income is less than 150 percent of the U.S. poverty level; or,

- You have, at the time of the request, accumulated **$10,000** or more in debt in the past 12 months as a result of unreimbursed medical expenses for yourself or an immediate family member, and your income is less than 150 percent of the U.S. poverty level.

You can find additional information on our Fee Exemption Guidance Web page. Your request must be submitted and decided before you submit a request for consideration of DACA without a fee. In order to be considered for a fee exemption, you must provide documentary evidence to demonstrate that you meet any of the above conditions at the time that you make the request. For evidence, USCIS will:

- Accept affidavits from community-based or religious organizations to establish a requestor's homelessness or lack of parental or other familial financial support.

- Accept copies of tax returns, bank statement, pay stubs, or other reliable evidence of income level. Evidence can also include an affidavit from the applicant or a responsible

third party attesting that the applicant does not file tax returns, has no bank accounts, and/or has no income to prove income level.

- Accept copies of medical records, insurance records, bank statements, or other reliable evidence of unreimbursed medical expenses of at least $**10,000**.
- Address factual questions through Requests for Evidence (RFEs).

**Q9: If individuals meet the guidelines for consideration of DACA and are encountered by U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement (ICE), will they be placed into removal proceedings?**
A9: DACA is intended, in part, to allow CBP and ICE to focus on priority cases. Under the direction of the Secretary of Homeland Security, if an individual meets the guidelines for DACA, CBP or ICE should exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended, placed into removal proceedings, or removed. If individuals believe that, in light of this policy, they should not have been apprehended or placed into removal proceedings, contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q10: Does this process apply to me if I am currently in removal proceedings, have a final removal order, or have a voluntary departure order?**
A10: This process is open to any individual who can demonstrate he or she meets the guidelines for consideration, including those who have never been in removal proceedings as well as those in removal proceedings, with a final order, or with a voluntary departure order (as long as they are not in immigration detention).

**Q11: If I am not in removal proceedings but believe I meet the guidelines for consideration of DACA, should I seek to place myself into removal proceedings through encounters with CBP or ICE?**
A11: No. If you are not in removal proceedings but believe that you meet the guidelines, you should submit your DACA request to USCIS under the process outlined below.

**Q12: Can I request consideration of DACA from USCIS if I am in immigration detention under the custody of ICE?**
A12: No. If you are currently in immigration detention, you may not request consideration of DACA from USCIS. If you think you may meet the guidelines of this process, you should identify yourself to your deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information, visit ICE's website at www.ice.gov/daca.

**Q13: If I am about to be removed by ICE and believe that I meet the guidelines for consideration of DACA, what steps should I take to seek review of my case before removal?**
A13: If you believe you can demonstrate that you meet the guidelines and are about to be removed, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q14: What should I do if I meet the guidelines of this process and have been issued an ICE detainer following an arrest by a state or local law enforcement officer?**
A14: If you meet the guidelines and have been served a detainer, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q15: If I accepted an offer of administrative closure under the case-by-case review process or my case was terminated as part of the case-by-case review process, can I be**

**considered for deferred action under this process?**
A15: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you have accepted an offer of administrative closure or termination under the case-by-case review process.

**Q16: If I declined an offer of administrative closure under the case-by-case review process, can I be considered for deferred action under this process?**
A16: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you declined an offer of administrative closure under the case-by-case review process.

**Q17: If my case was reviewed as part of the case-by-case review process but I was not offered administrative closure, can I be considered for deferred action under this process?**
A17: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you were not offered administrative closure following review of your case as part of the case-by-case review process.

**Q18: Can I request consideration of DACA under this process if I am currently in a nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?**
A18: No. You can only request consideration of DACA under this process if you currently have no immigration status and were not in any lawful status on June 15, 2012.

**Q19: Will the information I share in my request for consideration of DACA be used for immigration enforcement purposes?**
A19: Information provided in this request is protected from disclosure to ICE and CBP for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (www.uscis.gov/NTA). Individuals whose cases are deferred pursuant to DACA will not be referred to ICE. The information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense. The above information sharing policy covers family members and guardians, in addition to the requestor. This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

**Q20: If my case is referred to ICE for immigration enforcement purposes or if I receive an NTA, will information related to my family members and guardians also be referred to ICE for immigration enforcement purposes?**
A20: If your case is referred to ICE for purposes of immigration enforcement or you receive an NTA, information related to your family members or guardians that is contained in your request will not be referred to ICE for purposes of immigration enforcement against family members or guardians. However, that information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense.

This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

## Q21: Will USCIS verify documents or statements that I provide in support of a request for DACA?

A21: USCIS has the authority to verify documents, facts, and statements that are provided in support of requests for DACA. USCIS may contact education institutions, other government agencies, employers, or other entities in order to verify information.

Return to top.

**C. Background Checks**

## Q22: Will USCIS conduct a background check when reviewing my request for consideration of DACA?
A22: Yes. You must undergo biographic and biometric background checks before USCIS will consider your DACA request.

## Q23: What do background checks involve?
A23: Background checks involve checking biographic and biometric information provided by the individuals against a variety of databases maintained by DHS and other federal government agencies.

## Q24: What steps will USCIS and ICE take if I engage in fraud through the new process?
A24: If you knowingly make a misrepresentation, or knowingly fail to disclose facts, in an effort to obtain DACA or work authorization through this process, you will be treated as an immigration enforcement priority to the fullest extent permitted by law, and be subject to criminal prosecution and/or removal from the United States.

Return to top.

**D. After USCIS Makes a Decision**

## Q25: Can I appeal USCIS' determination?
A25: No. You cannot file a motion to reopen or reconsider, and cannot appeal the decision if USCIS denies your request for consideration of DACA.

You may request a review of your I-821D denial by contacting USCIS' National Customer Service Center at 1-800-375-5283 to have a service request created if you believe that you actually did meet all of the DACA guidelines and you believe that your request was denied because USCIS:

- Denied the request based on abandonment, when you actually responded to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) within the prescribed time;

- Mailed the RFE or NOID to the wrong address although you had changed your address online at www.uscis.gov **or** with a customer service representative on the phone and submitted a Form AR-11, Change of Address, before USCIS issued the RFE or NOID.
  - To ensure the address is updated on a pending case as quickly as possible, we recommend that customers submit a change of address request at www.uscis.gov/addresschange.   Please note that only an online change of address or a Form AR-11 submission will satisfy the legal requirements for notifying the agency of

an address change. Therefore, if you called a customer service representative to change your address, please be sure you have also submitted your address change online or with a Form AR-11.

- Denied the request on the grounds that you did not come to the United States prior to your 16th birthday, but the evidence submitted at the time of filing shows that you did arrive before reaching that age.
- Denied the request on the grounds that you were under age 15 at the time of filing but not in removal proceedings, while the evidence submitted at the time of filing show that you indeed were in removal proceedings when the request was filed;
- Denied the request on the grounds that you were 31 or older as of June 15, 2012, but the evidence submitted at the time of filing shows that you were under the age of 31 as of June 15, 2012;
- Denied the request on the grounds that you had lawful status on June 15, 2012, but the evidence submitted at the time of filing shows that you indeed were in an unlawful immigration status on that date;
- Denied the request on the grounds that you were not physically present in the United States on June 15, 2012, and up through the date of filing, but the evidence submitted at the time of filing shows that you were, in fact, present;
- Denied the request due to your failure to appear at a USCIS Application Support Center (ASC) to have your biometrics collected, when you in fact either did appear at a USCIS ASC to have this done or requested prior to the scheduled date of your biometrics appointment to have the appointment rescheduled; or
- Denied the request because you did not pay the filing fees for Form I-765, Application for Employment Authorization, when you actually did pay these fees

If you believe your request was denied due to any of these administrative errors, you may contact our National Customer Service Center at 1-800-375-5283 or 1-800-767-1833 (TDD for the hearing impaired). Customer service officers are available Monday – Friday from 8 a.m. – 6 p.m. in each U.S. time zone.

### Q26: If USCIS does not exercise deferred action in my case, will I be placed in removal proceedings?

A26: If you have submitted a request for consideration of DACA and USCIS decides not to defer action in your case, USCIS will apply its policy guidance governing the referral of cases to ICE and the issuance of Notices to Appear (NTA). If your case does not involve a criminal offense, fraud, or a threat to national security or public safety, your case will not be referred to ICE for purposes of removal proceedings except where DHS determines there are exceptional circumstances. For more detailed information on the applicable NTA policy, visit www.uscis.gov/NTA. If after a review of the totality of circumstances USCIS determines to defer action in your case, USCIS will likewise exercise its discretion and will not issue you an NTA.

### Q27: Can my deferred action under the DACA process be terminated before it expires?

A27: Yes.

DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion.

Return to top.

## II. Initial Requests for DACA

**Q28: What guidelines must I meet to be considered for deferred action for childhood arrivals (DACA)?**
A28: Under the Secretary of Homeland Security's June 15, 2012 memorandum, in order to be considered for DACA, you must submit evidence, including supporting documents, showing that you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Had no lawful status on June 15, 2012;
6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and
7. Have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of DACA. U.S. Citizenship and Immigration Services (USCIS) retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met.

**Q29: How old must I be in order to be considered for deferred action under this process?**
A29:

- If you have never been in removal proceedings, or your proceedings have been terminated before your request for consideration of DACA, you must be at least 15 years of age or older at the time of filing and meet the other guidelines.
- If you are in removal proceedings, have a final removal order, or have a voluntary departure order, and are not in immigration detention, you can request consideration of DACA even if you are under the age of 15 at the time of filing and meet the other guidelines.
- In all instances, you must have been under the age of 31 as of June 15, 2012, to be considered for DACA.

**Q30: I first came to the United States before I turned 16 years old and have been continuously residing in the United States since at least June 15, 2007. Before I turned 16 years old, however, I left the United States for some period of time before returning and beginning my current period of continuous residence. May I be considered for deferred action under this process?**
A30: Yes, but only if you established residence in the United States during the period before you turned 16 years old, as evidenced, for example, by records showing you attended school or worked in the United States during that time, or that you lived in the United States for multiple years during that time. In addition to establishing that you initially resided in the United States before you turned 16 years old, you must also have maintained continuous

residence in the United States from June 15, 2007, until the present time to be considered for deferred action under this process.

**Q31: To prove my continuous residence in the United States since June 15, 2007, must I provide evidence documenting my presence for every day, or every month, of that period?**
A31: To meet the continuous residence guideline, you must submit documentation that shows you have been living in the United States from June 15, 2007, up until the time of your request. You should provide documentation to account for as much of the period as reasonably possible, but there is no requirement that every day or month of that period be specifically accounted for through direct evidence.

It is helpful to USCIS if you can submit evidence of your residence during at least each year of the period. USCIS will review the documentation in its totality to determine whether it is more likely than not that you were continuously residing in the United States for the period since June 15, 2007. Gaps in the documentation as to certain periods may raise doubts as to your continued residence if, for example, the gaps are lengthy or the record otherwise indicates that you may have been outside the United States for a period of time that was not brief, casual or innocent.

If gaps in your documentation raise questions, USCIS may issue a Request for Evidence to allow you to submit additional documentation that supports your claimed continuous residence.

Affidavits may be submitted to explain a gap in the documentation demonstrating that you meet the five-year continuous residence requirement. If you submit affidavits related to the continuous residence requirement, you must submit two or more affidavits, sworn to or affirmed by people other than yourself who have direct personal knowledge of the events and circumstances during the period as to which there is a gap in the documentation. Affidavits may only be used to explain gaps in your continuous residence; they cannot be used as evidence that you meet the entire five-year continuous residence requirement.

**Q32: Does "currently in school" refer to the date on which the request for consideration of deferred action is filed?**
A32: To be considered "currently in school" under the guidelines, you must be enrolled in school on the date you submit a request for consideration of deferred action under this process.

**Q33: Who is considered to be "currently in school" under the guidelines?**
A33: To be considered "currently in school" under the guidelines, you must be enrolled in:

- a public, private, or charter elementary school, junior high or middle school, high school, secondary school, alternative program, or homeschool program that meets state requirements;
- an education, literacy, or career training program (including vocational training) that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; or
- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other state-authorized exam (e.g., HiSet or TASC) in the United States.

Such education, literacy, career training programs (including vocational training), or education programs assisting students in obtaining a regular high school diploma or its recognized equivalent under state law, or in passing a GED exam or other state-authorized exam in the United States, include, but are not limited to, programs funded, in whole or in part, by federal, state, county or municipal grants or administered by non-profit organizations. Programs funded by other sources may qualify if they are programs of demonstrated effectiveness.

In assessing whether such programs not funded in whole or in part by federal, state, county or municipal grants or administered by non-profit organizations are of demonstrated effectiveness, USCIS will consider the duration of the program's existence; the program's track record in assisting students in obtaining a regular high school diploma or its recognized equivalent, in passing a GED or other state-authorized exam (e.g., HiSet or TASC), or in placing students in postsecondary education, job training, or employment; and other indicators of the program's overall quality. For individuals seeking to demonstrate that they are "currently in school" through enrollment in such a program, the burden is on the requestor to show the program's demonstrated effectiveness.

**Q34: How do I establish that I am currently in school?**

A34: Documentation sufficient for you to demonstrate that you are currently in school may include, but is not limited to:

- evidence that you are enrolled in a public, private, or charter elementary school, junior high or middle school, high school or secondary school; alternative program, or homeschool program that meets state requirements; or
- evidence that you are enrolled in an education, literacy, or career training program (including vocational training) that:
  ◦ has a purpose of improving literacy, mathematics, or English, or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; and
  ◦ is funded, in whole or in part, by federal, state, county or municipal grants or is administered by non-profit organizations, or if funded by other sources, is a program of demonstrated effectiveness; or
- evidence that you are enrolled in an education program assisting students in obtaining a high school equivalency diploma or certificate recognized under state law (such as by passing a GED exam or other such state-authorized exam [for example, HiSet or TASC]), and that the program is funded in whole or in part by federal, state, county or municipal grants or is administered by non-profit organizations or if funded by other sources, is of demonstrated effectiveness.

Such evidence of enrollment may include: acceptance letters, school registration cards, letters from a school or program, transcripts, report cards, or progress reports which may show the name of the school or program, date of enrollment, and current educational or grade level, if relevant.

**Q35: What documentation may be sufficient to demonstrate that I have graduated from high school?**

A35: Documentation sufficient for you to demonstrate that you have graduated from high school may include, but is not limited to, a high school diploma from a public or private high

school or secondary school, a certificate of completion, a certificate of attendance, or an alternate award from a public or private high school or secondary school, or a recognized equivalent of a high school diploma under state law, or a GED certificate or certificate from passing another such state authorized exam (e.g., HiSet or TASC) in the United States.

**Q36: What documentation may be sufficient to demonstrate that I have obtained a GED certificate or certificate from passing another such state authorized exam (e.g., HiSet or TASC)?**
A36: Documentation may include, but is not limited to, evidence that you have passed a GED exam, or other state-authorized exam (e.g., HiSet or TASC), and, as a result, have received the recognized equivalent of a regular high school diploma under state law.

**Q37: If I am enrolled in a literacy or career training program, can I meet the guidelines?**
A37: Yes, in certain circumstances. You may meet the guidelines if you are enrolled in an education, literacy, or career training program that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement. Such programs include, but are not limited to, programs funded, in whole or in part, by federal, state, county or municipal grants or administered by non-profit organizations, or if funded by other sources, are programs of demonstrated effectiveness.

**Q38: If I am enrolled in an English as a Second Language (ESL) program, can I meet the guidelines?**
A38: Yes, in certain circumstances. Enrollment in an ESL program may be used to meet the guidelines if the ESL program is funded in whole or in part by federal, state, county or municipal grants, or administered by non-profit organizations, or if funded by other sources is a program of demonstrated effectiveness. You must submit direct documentary evidence that the program is funded in whole or part by federal, state, county or municipal grants, administered by a non-profit organization, or of demonstrated effectiveness.

**Q39: Will USCIS consider evidence other than that listed in Chart #1 to show that I have met the education guidelines?**
A39: No. Evidence not listed in Chart #1 will not be accepted to establish that you are currently in school, have graduated or obtained a certificate of completion from high school, or have obtained a GED or passed another state-authorized exam (e.g., HiSet or TASC). You must submit any of the documentary evidence listed in Chart #1 to show that you meet the education guidelines.

**Q40: Will USCIS consider evidence other than that listed in Chart #1 to show that I have met certain initial guidelines?**
A40: Evidence other than those documents listed in Chart #1 may be used to establish the following guidelines and factual showings if available documentary evidence is insufficient or lacking and shows that:

- You were physically present in the United States on June 15, 2012;

- You came to the United States before reaching your 16th birthday;

- You satisfy the continuous residence requirement, as long as you present direct evidence of your continued residence in the United States for a portion of the required period and the circumstantial evidence is used only to fill in gaps in the length of continuous residence demonstrated by the direct evidence; and

- Any travel outside the United States during the period of required continuous presence was brief, casual, and innocent.

However, USCIS will not accept evidence other than the documents listed in Chart #1 as proof of any of the following guidelines to demonstrate that you:

- Were under the age of 31 on June 15, 2012; and
- Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a GED certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

For example, even if you do not have documentary proof of your presence in the United States on June 15, 2012, you may still be able to satisfy the guideline. You may do so by submitting credible documentary evidence that you were present in the United States shortly before and shortly after June 15, 2012, which, under the facts presented, may give rise to an inference of your presence on June 15, 2012 as well. However, evidence other than that listed in Chart #1 will not be accepted to establish that you have graduated high school. You must submit the designated documentary evidence to satisfy that you meet this guideline.

Chart #1 provides examples of documentation you may submit to demonstrate you meet the initial guidelines for consideration of deferred action under this process. Please see the instructions of [Form I-821D, Consideration of Deferred Action for Childhood Arrivals](#), for additional details of acceptable documentation.

| Chart #1 Examples of Documents to Submit to Demonstrate You Meet the Guidelines | |
| --- | --- |
| Proof of identity | • Passport or national identity document from your country of origin<br>• Birth certificate with photo identification<br>• School or military ID with photo<br>• Any U.S. government immigration or other document bearing your name and photo |
| Proof you came to U.S. before your 16th birthday | • Passport with admission stamp<br>• Form I-94/I-95/I-94W<br>• School records from the U.S. schools you have attended<br>• Any Immigration and Naturalization Service or DHS document stating your date of entry (Form I-862, Notice to Appear)<br>• Travel records<br>• Hospital or medical records<br>• Rent receipts or utility bills<br>• Employment records (pay stubs, W-2 Forms, etc.)<br>• Official records from a religious entity confirming participation in a religious ceremony |

---

**Chart #1 Examples of Documents to Submit to Demonstrate You Meet the Guidelines**

---

|  |  |
|---|---|
|  | • Copies of money order receipts for money sent in or out of the country |
|  | • Birth certificates of children born in the U.S. |
|  | • Dated bank transactions |
|  | • Automobile license receipts or registration |
|  | • Deeds, mortgages, rental agreement contracts |
|  | • Tax receipts, insurance policies |
| Proof of immigration status | • Form I-94/I-95/I-94W with authorized stay expiration date |
|  | • Final order of exclusion, deportation, or removal issued as of June 15, 2012 |
|  | • A charging document placing you into removal proceedings |
| Proof of presence in U.S. on June 15, 2012 | • Rent receipts or utility bills |
|  | • Employment records (pay stubs, W-2 Forms, etc.) |
|  | • School records (letters, report cards, etc.) |
| Proof you continuously resided in U.S. since June 15, 2007 | • Military records (Form DD-214 or NGB Form 22) |
|  | • Official records from a religious entity confirming participation in a religious ceremony |
|  | • Copies of money order receipts for money sent in or out of the country |
|  | • Passport entries |
|  | • Birth certificates of children born in the U.S. |
|  | • Dated bank transactions |
|  | • Automobile license receipts or registration |
|  | • Deeds, mortgages, rental agreement contracts |
|  | • Tax receipts, insurance policies |
| Proof of your education status at the time of requesting consideration of DACA | • School records (transcripts, report cards, etc.) from the school that you are currently attending in the United States showing the name(s) of the school(s) and periods of school attendance and the current educational or grade level |
|  | • U.S. high school diploma, certificate of completion, or other alternate award |
|  | • High school equivalency diploma or certificate recognized under state law |
|  | • Evidence that you passed a state-authorized exam, including the GED or other state-authorized exam (for example, HiSet or TASC) in the United States |

| Chart #1 Examples of Documents to Submit to Demonstrate You Meet the Guidelines | |
|---|---|
| Proof you are an honorably discharged veteran of the U.S. Armed Forces or the U.S. Coast Guard | • Form DD-214, Certificate of Release or Discharge from Active Duty<br>• NGB Form 22, National Guard Report of Separation and Record of Service<br>• Military personnel records<br>• Military health records |

**Q41: May I file affidavits as proof that I meet the initial guidelines for consideration of DACA?**

A41: Affidavits generally will not be sufficient on their own to demonstrate that you meet the guidelines for USCIS to consider you for DACA. However, affidavits may be used to support meeting the following guidelines only if the documentary evidence available to you is insufficient or lacking:

- Demonstrating that you meet the five year continuous residence requirement; and
- Establishing that departures during the required period of continuous residence were brief, casual and innocent.

If you submit affidavits related to the above criteria, you must submit two or more affidavits, sworn to or affirmed by people other than yourself, who have direct personal knowledge of the events and circumstances. Should USCIS determine that the affidavits are insufficient to overcome the unavailability or the lack of documentary evidence with respect to either of these guidelines, it will issue a Request for Evidence, indicating that further evidence must be submitted to demonstrate that you meet these guidelines.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- You are currently in school, have graduated or obtained a certificate of completion or other alternate award from high school, have obtained a high school equivalency diploma or certificate (such as by passing the GED exam or other state-authorized exam [for example, HiSet or TASC]), or are an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You were under the age of 31 on June 15, 2012; and
- Your criminal history, if applicable.

If the only evidence you submit to demonstrate you meet any of the above guidelines is an affidavit, USCIS will issue a Request for Evidence, indicating that you have not demonstrated that you meet these guidelines and that you must do so in order to demonstrate that you meet that guideline.

**Q42: Will I be considered to be in unlawful status if I had an application for asylum or cancellation of removal pending before either USCIS or the Executive Office for Immigration Review (EOIR) on June 15, 2012?**

A42: Yes. If you had an application for asylum or cancellation of removal, or similar relief, pending before either USCIS or EOIR as of June 15, 2012, but had no lawful status, you may request consideration of DACA.

**Q43: I was admitted for "duration of status" or for a period of time that extended past June 14, 2012, but violated my immigration status (e.g., by engaging in unauthorized employment, failing to report to my employer, or failing to pursue a full course of study) before June 15, 2012. May I be considered for deferred action under this process?**
A43: No, unless the Executive Office for Immigration Review terminated your status by issuing a final order of removal against you before June 15, 2012.

**Q44: I was admitted for "duration of status" or for a period of time that extended past June 14, 2012 but "aged out" of my dependent nonimmigrant status as of June 15, 2012. May I be considered for deferred action under this process?**

A44: Yes.  For purposes of satisfying the "had no lawful status on June 15, 2012," guideline alone, if you were admitted for "duration of status" or for a period of time that extended past June 14, 2012 but "aged out" of your dependent nonimmigrant status, on or before June 15, 2012, (meaning you turned 21 years old on or before June 15, 2012), you may be considered for deferred action under this process.

**Q45: I was admitted for "duration of status" but my status in SEVIS is listed as terminated on or before June 15, 2012. May I be considered for deferred action under this process?**

A45: Yes. For the purposes of satisfying the ""had no lawful status on June 15, 2012," guideline alone, if your status as of June 15, 2012, is listed as "terminated" in SEVIS, you may be considered for deferred action under this process.

 **Q46: I am a Canadian citizen who was inspected by CBP but was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A46: In general, a Canadian citizen who was admitted as a visitor for business or pleasure and not issued an I-94, Arrival/Departure Record, (also known as a "non-controlled" Canadian nonimmigrant) is lawfully admitted for a period of six months. For that reason, unless there is evidence, including verifiable evidence provided by the individual, that he or she was specifically advised that his or her admission would be for a different length of time, the Department of Homeland Security (DHS) will consider for DACA purposes only, that the alien was lawfully admitted for a period of six months.  Therefore, if DHS is able to verify from its records that your last non-controlled entry occurred on or before Dec. 14, 2011, DHS will consider your nonimmigrant visitor status to have expired as of June 15, 2012 and you may be considered for deferred action under this process.

**Q47: I used my Border Crossing Card (BCC) to obtain admission to the United States and was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A47: Because the limitations on entry for a BCC holder vary based on location of admission and travel, DHS will assume that the BCC holder who was not provided an I-94 was admitted for the longest period legally possible—30 days—unless the individual can demonstrate, through verifiable evidence, that he or she was specifically advised that his or her admission would be for a different length of time. Accordingly, if DHS is able to verify from its records that your last admission was using a BCC, you were not issued an I-94 at the time of admission, and it

occurred on or before May 14, 2012, DHS will consider your nonimmigrant visitor status to have expired as of June 15, 2012, and you may be considered for deferred action under this process.

**Q48: Do I accrue unlawful presence if I have a pending initial request for consideration of DACA?**

A48: You will continue to accrue unlawful presence while the request for consideration of DACA is pending unless you are under 18 years of age at the time of the request. If you are under 18 years of age at the time you submit your request, you will not accrue unlawful presence while the request is pending, even if you turn 18 while your request is pending with USCIS. If action on your case is deferred, you will not accrue unlawful presence during the period of deferred action. However, having action deferred on your case will not excuse previously accrued unlawful presence.

Return to top.

## III. Renewal of DACA

**Q49: When should I file my renewal request with U.S. Citizenship and Immigration Services (USCIS)?**

A49: USCIS strongly encourages you to submit your Deferred Action for Childhood Arrivals (DACA) renewal request between 150 days and 120 days before the expiration date located on your current Form I-797 DACA approval notice and Employment Authorization Document (EAD). Filing during this window will minimize the possibility that your current period of DACA will expire before you receive a decision on your renewal request.

USCIS' current goal is to process DACA renewal requests within 120 days. You may submit an inquiry about the status of your renewal request after it has been pending more than 105 days. To submit an inquiry online, please visit egov.uscis.gov/e-request.

- **Please Note:** Factors that may affect the timely processing of your DACA renewal request include, but are not limited to:
  - Failure to appear at an Application Support Center (ASC) for a scheduled biometrics appointment to obtain fingerprints and photographs. No-shows or rescheduling appointments will require additional processing time.
  - Issues of national security, criminality or public safety discovered during the background check process that require further vetting.
  - Issues of travel abroad that need additional evidence/clarification.
  - Name/date of birth discrepancies that may require additional evidence/clarification.
  - The renewal submission was incomplete or contained evidence that suggests a requestor may not satisfy the DACA renewal guidelines and USCIS must send a request for additional evidence or explanation

**Q50: Can I file a renewal request outside the recommended filing period of 150 days to 120 days before my current DACA expires?**

A50: USCIS strongly encourages you to file your renewal request within the recommended 150-120 day filing period to minimize the possibility that your current period of DACA will expire before you receive a decision on your renewal request. Requests received earlier than 150 days in advance will be accepted; however, this could result in an overlap between your current

DACA and your renewal. This means your renewal period may extend for less than a full two years from the date that your current DACA period expires..

If you file after the recommended filing period (meaning less than 120 days before your current period of DACA expires), there is an increased possibility that your current period of DACA and employment authorization will expire before you receive a decision on your renewal request. If you file after your most recent DACA period expired, but within one year of its expiration, you may submit a request to renew your DACA. If you are filing beyond one year after your most recent period of DACA expired, you may still request DACA by submitting a new initial request.

**Q51: How will USCIS evaluate my request for renewal of DACA:**
A51: You may be considered for renewal of DACA if you met the guidelines for consideration of Initial DACA (see above) AND you:

- Did not depart the United States on or after Aug. 15, 2012, without advance parole;
- Have continuously resided in the United States since you submitted your most recent request for DACA that was approved up to the present time; and
- Have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of DACA renewal. USCIS retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met.

**Q52 Do I accrue unlawful presence if I am seeking renewal and my previous period of DACA expires before I receive a renewal of deferred action under DACA? Similarly, what would happen to my work authorization?**

A52: Yes, if your previous period of DACA expires before you receive a renewal of deferred action under DACA, you will accrue unlawful presence for any time between the periods of deferred action unless you are under 18 years of age at the time you submit your renewal request.

Similarly, if your previous period of DACA expires before you receive a renewal of deferred action under DACA, you will not be authorized to work in the United States regardless of your age at time of filing until and unless you receive a new employment authorization document from USCIS.

**Q53. Do I need to provide additional documents when I request renewal of deferred action under DACA?**

A53.  No, unless you have *new* documents pertaining to removal proceedings or criminal history that you have not already submitted to USCIS in a previously approved DACA request. USCIS, however, reserves the authority to request at its discretion additional documents, information or statements relating to a DACA renewal request determination.

CAUTION: If you knowingly and willfully provide materially false information on Form I-821D, you will be committing a federal felony punishable by a fine, or imprisonment up to five years, or both, under 18 U.S.C. Section 1001. In addition, individuals may be placed into removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

**Q54.  If I am no longer in school, can I still request to renew my DACA?**
A54.  Yes. Neither Form I-821D nor the instructions ask renewal requestors for information

about continued school enrollment or graduation. The instructions for renewal requests specify that you may be considered for DACA renewal if you met the guidelines for consideration of initial DACA, including the educational guidelines and:

1. Did not depart the United States on or after August 15, 2012, without advance parole;
2. Have continuously resided in the United States, up to the present time, since you submitted your most recent request for DACA that was approved; and
3. Have not been convicted of a felony, a significant misdemeanor or three or more misdemeanors, and are not a threat to national security or public safety.

**Q55. If I initially received DACA and was under the age of 31 on June 15, 2012, but have since become 31 or older, can I still request a DACA renewal?**
A55. Yes. You may request consideration for a renewal of DACA as long as you were under the age of 31 as of June 15, 2012.

## IV. Travel

**Q56: May I travel outside of the United States before I submit an initial Deferred Action for Childhood Arrivals (DACA) request or while my initial DACA request remains pending with the Department of Homeland Security (DHS)?**
A56: Any unauthorized travel outside of the United States on or after Aug. 15, 2012, will interrupt your continuous residence and you will not be considered for deferred action under this process. Any travel outside of the United States that occurred on or after June 15, 2007, but before Aug. 15, 2012, will be assessed by U.S. Citizenship and Immigration Services (USCIS) to determine whether the travel qualifies as brief, casual and innocent. (See Chart #2.)

CAUTION: You should be aware that if you have been ordered deported or removed, and you then leave the United States, your departure will likely result in your being considered deported or removed, with potentially serious future immigration consequences.

**Q57: If my case is deferred under DACA, will I be able to travel outside of the United States?**
A57: Not automatically. If USCIS has decided to defer action in your case and you want to travel outside the United States, you must apply for advance parole by filing a Form I-131, Application for Travel Document and paying the applicable fee ($575). USCIS will determine whether your purpose for international travel is justifiable based on the circumstances you describe in your request. Generally, USCIS will only grant advance parole if your travel abroad will be in furtherance of:

- humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;
- educational purposes, such as semester-abroad programs and academic research, or;
- employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Travel for vacation is not a valid basis for advance parole.

You may not apply for advance parole unless and until USCIS defers action in your case under the consideration of DACA. You cannot apply for advance parole at the same time as you

submit your request for consideration of DACA. All advance parole requests will be considered on a case-by-case basis.

If USCIS has deferred action in your case under the DACA process after you have been ordered deported or removed, you may still request advance parole if you meet the guidelines for advance parole described above.

**CAUTION:** However, for those individuals who have been ordered deported or removed, before you actually leave the United States, you should seek to reopen your case before the Executive Office for Immigration Review (EOIR) and obtain administrative closure or termination of your removal proceeding. Even after you have asked EOIR to reopen your case, you should not leave the United States until after EOIR has granted your request. If you depart after being ordered deported or removed, and your removal proceeding has not been reopened and administratively closed or terminated, your departure may result in your being considered deported or removed, with potentially serious future immigration consequences. If you have any questions about this process, you may contact U.S. Immigration and Customs Enforcement (ICE) through the local ICE Office of the Chief Counsel with jurisdiction over your case.

**CAUTION:** If you travel outside the United States on or after Aug. 15, 2012, without first receiving advance parole, your departure automatically terminates your deferred action under DACA.

**Q58: Do brief departures from the United States interrupt the continuous residence requirement?**
A58: A brief, casual and innocent absence from the United States will not interrupt your continuous residence. If you were absent from the United States, your absence will be considered brief, casual and innocent if it was on or after June 15, 2007, and before Aug. 15, 2012, and:

1. The absence was short and reasonably calculated to accomplish the purpose for the absence;
2. The absence was not because of an order of exclusion, deportation or removal;
3. The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before you were placed in exclusion, deportation or removal proceedings; and
4. The purpose of the absence and/or your actions while outside the United States were not contrary to law.

Once USCIS has approved your request for DACA, you may file Form I-131, Application for Travel Document, to request advance parole to travel outside of the United States.

CAUTION: If you travel outside the United States on or after Aug. 15, 2012, without first receiving advance parole, your departure automatically terminates your deferred action under DACA.

**Travel Guidelines (Chart #2)**

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
| --- | --- | --- |

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
|---|---|---|
| On or after June 15, 2007, but before Aug. 15, 2012 | Brief, casual and innocent | No |
| | For an extended time | Yes |
| | Because of an order of exclusion, deportation, voluntary departure, or removal | |
| | To participate in criminal activity | |
| On or after Aug. 15, 2012, and before you have requested deferred action | Any | Yes. You cannot apply for advance parole unless and until DHS has determined whether to defer action in your case and you cannot travel until you receive advance parole. |
| On or after Aug. 15, 2012, and after you have requested deferred action | Any | In addition, if you have previously been ordered deported and removed and you depart the United States without taking additional steps to address your removal proceedings, your departure will likely result in your being considered deported or removed, with potentially serious future immigration consequences. |
| On or after Aug. 15, 2012 and after receiving DACA | Any | It depends. If you travel after receiving advance parole, the travel will not interrupt your continuous residence. However, if you travel *without* receiving advance parole, the travel *will* interrupt your continuous residence. |

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
|---|---|---|

**Q59: May I file a request for advance parole concurrently with my DACA package?**

A59: Concurrent filing of advance parole is not an option at this time. DHS is, however, reviewing its policy on concurrent filing of advance parole with a DACA request. In addition, DHS is also reviewing eligibility criteria for advance parole. If any changes to this policy are made, USCIS will update this FAQ and inform the public accordingly.

Return to top.

## V. Criminal Convictions

**Q60: If I have a conviction for a felony offense, a significant misdemeanor offense, or multiple misdemeanors, can I receive an exercise of prosecutorial discretion under this new process?**
A60: No. If you have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, you will not be considered for Deferred Action for Childhood Arrivals (DACA) except where the Department of Homeland Security (DHS) determines there are exceptional circumstances.

**Q61: What offenses qualify as a felony?**
A61: A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

**Q62: What offenses constitute a significant misdemeanor?**
A62: For the purposes of this process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,
2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less.

**Q63: What offenses constitute a non-significant misdemeanor?**
A63: For purposes of this process, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less. The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE.

Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion.

**Q64: If I have a minor traffic offense, such as driving without a license, will it be considered a non-significant misdemeanor that counts towards the "three or more non-significant misdemeanors" making me unable to receive consideration for an exercise of prosecutorial discretion under this new process?**
A64: A minor traffic offense will not be considered a misdemeanor for purposes of this process. However, your entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, you warrant an exercise of prosecutorial discretion.

It is important to emphasize that driving under the influence is a significant misdemeanor regardless of the sentence imposed.

**Q65: What qualifies as a national security or public safety threat?**
A65: If the background check or other information uncovered during the review of your request for deferred action indicates that your presence in the United States threatens public safety or national security, you will not be able to receive consideration for an exercise of prosecutorial discretion except where DHS determines there are exceptional circumstances. Indicators that you pose such a threat include, but are not limited to, gang membership, participation in criminal activities, or participation in activities that threaten the United States.

**Q66: Will offenses criminalized as felonies or misdemeanors by state immigration laws be considered felonies or misdemeanors for purpose of this process?**
A66: No. Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action under this process.

**Q67: Will DHS consider my expunged or juvenile conviction as an offense making me unable to receive an exercise of prosecutorial discretion?**
A67: Expunged convictions and juvenile convictions will not automatically disqualify you. Your request will be assessed on a case-by-case basis to determine whether, under the particular circumstances, a favorable exercise of prosecutorial discretion is warranted. If you were a

juvenile, but tried and convicted as an adult, you will be treated as an adult for purposes of the DACA process.

Return to top.

## VI. Miscellaneous

**Q68: Does this Administration remain committed to comprehensive immigration reform?**
A68: Yes. The Administration has consistently pressed for passage of comprehensive immigration reform, including the DREAM Act, because the President believes these steps are critical to building a 21st century immigration system that meets our nation's economic and security needs.

**Q69: Is passage of the DREAM Act still necessary in light of the new process?**
A69: Yes. The Secretary of Homeland Security's June 15, 2012, memorandum allowing certain people to request consideration for deferred action is one in a series of steps that DHS has taken to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety. Deferred Action for Childhood Arrivals (DACA) is an exercise of prosecutorial discretion and does not provide lawful status or a pathway to citizenship. As the President has stated, individuals who would qualify for the DREAM Act deserve certainty about their status. Only the Congress, acting through its legislative authority, can confer the certainty that comes with a pathway to permanent lawful status.

**Q70: Does deferred action provide me with a path to permanent resident status or citizenship?**
A70: No. Deferred action is a form of prosecutorial discretion that does not confer lawful permanent resident status or a path to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.

**Q71: Can I be considered for deferred action even if I do not meet the guidelines to be considered for DACA?**
A71: This process is only for individuals who meet the specific guidelines for DACA. Other individuals may, on a case-by-case basis, request deferred action from U.S. Citizenship and Immigration Services (USCIS) or U.S. Immigration and Customs Enforcement (ICE) in certain circumstances, consistent with longstanding practice.

**Q72: How will ICE and USCIS handle cases involving individuals who do not satisfy the guidelines of this process but believe they may warrant an exercise of prosecutorial discretion under the June 2011 Prosecutorial Discretion Memoranda?**
A72: If USCIS determines that you do not satisfy the guidelines or otherwise determines you do not warrant an exercise of prosecutorial discretion, then it will decline to defer action in your case. If you are currently in removal proceedings, have a final order, or have a voluntary departure order, you may then request ICE consider whether to exercise prosecutorial discretion.

**Q73: How should I fill out question 9 on Form I-765, Application for Employment Authorization?**
A73. When you are filing a Form I-765 as part of a DACA request, question 9 is asking you to list those Social Security numbers that were officially issued to you by the Social Security Administration.

**Q74: Will there be supervisory review of decisions by USCIS under this process?**
A74: Yes. USCIS has implemented a successful supervisory review process to ensure a consistent process for considering requests for DACA.

**Q72: Will USCIS personnel responsible for reviewing requests for DACA receive special training?**
A72: Yes. USCIS personnel responsible for considering requests for consideration of DACA have received special training.

**Q75: Must attorneys and accredited representatives who provide pro bono services to deferred action requestors at group assistance events file a Form G-28 with USCIS?**

A75: Under 8 C.F.R. §§ 292.3 and 1003.102, practitioners are required to file a Notice of Entry of Appearance as Attorney or Accredited Representative when they engage in practice in immigration matters before DHS, either in person or through the preparation or filing of any brief, application, petition, or other document. Under these rules, a practitioner who consistently violates the requirement to file a Form G-28 may be subject to disciplinary sanctions; however on Feb. 28, 2011, USCIS issued a statement indicating that it does not intend to initiate disciplinary proceedings against practitioners (attorneys and accredited representatives) based solely on the failure to submit a Notice of Entry of Appearance as Attorney or Accredited Representative (Form G-28) in relation to pro bono services provided at group assistance events. DHS is in the process of issuing a final rule at which time this matter will be reevaluated.

**Q76: When must an individual sign a Form I-821D as a preparer?**
A77: Anytime someone other than the requestor prepares or helps fill out the Form I-821D, that individual must complete Part 5 of the form.

**Q78: If I provide my employee with information regarding his or her employment to support a request for consideration of DACA, will that information be used for immigration enforcement purposes against me and/or my company?**
A78: You may, as you determine appropriate, provide individuals requesting DACA with documentation which verifies their employment. This information will not be shared with ICE for civil immigration enforcement purposes under section 274A of the Immigration and Nationality Act (relating to unlawful employment) unless there is evidence of egregious violations of criminal statutes or widespread abuses.

**Q79: Can I request consideration for deferred action under this process if I live in the Commonwealth of the Northern Mariana Islands (CNMI)?**
A79: Yes, in certain circumstances. The CNMI is part of the United States for immigration purposes and is not excluded from this process. However, because of the specific guidelines for consideration of DACA, individuals who have been residents of the CNMI are in most cases unlikely to qualify for the program. You must, among other things, have come to the United States before your 16th birthday and have resided continuously in the United States since June 15, 2007.

Under the Consolidated Natural Resources Act of 2008, the CNMI became part of the United States for purposes of immigration law only on Nov. 28, 2009. Therefore entry into, or residence in, the CNMI before that date is not entry into, or residence in, the United States for purposes of the DACA process.

USCIS has used parole authority in a variety of situations in the CNMI to address particular humanitarian needs on a case-by-case basis since Nov. 28, 2009. If you live in the CNMI and

believe that you meet the guidelines for consideration of deferred action under this process, except that your entry and/or residence to the CNMI took place entirely or in part before Nov. 28, 2009, USCIS is willing to consider your situation on a case-by-case basis for a grant of parole. If this situation applies to you, you should make an appointment through INFOPASS with the USCIS ASC in Saipan to discuss your case with an immigration officer.

**Q80: Someone told me if I pay them a fee, they can expedite my DACA request. Is this true?**
A80: No. There is no expedited processing for deferred action. Dishonest practitioners may promise to provide you with faster services if you pay them a fee. These people are trying to scam you and take your money. Visit our Avoid Scams page to learn how you can protect yourself from immigration scams.

Make sure you seek information about requests for consideration of DACA from official government sources such as USCIS or the DHS. If you are seeking legal advice, visit our Find Legal Services page to learn how to choose a licensed attorney or accredited representative.

**Q81: Am I required to register with the Selective Service?**

A81:  Most male persons residing in the U.S., who are ages 18 through 25, are required to register with Selective Service. Please see link for more information. [Selective Service].

**Q82: How can I tell if an employer is discriminating against me because I am a DACA recipient?**

A82: An employer may be engaging in discrimination if the employer:

- Demands that an employee show specific documents or asks for more or different documents than are required to complete Form I-9, Employment Eligibility Verification, or create an E-Verify case; or
- Rejects documents from the Lists of Acceptable Documents that reasonably appear to be genuine and relate to the employee, including a work authorization document because it has a future expiration date or because of an employee's prior unauthorized status.

The Civil Rights Division of the U.S. Department of Justice has an office dedicated to ensuring that employers do not discriminate against individuals who are permitted to work in the U.S. These include DACA recipients who have been granted work authorization. If you think your employer may be discriminating against you, contact the Immigrant and Employee Rights Section (IER) at 1-800-255-7688 (TDD for the deaf and hard of hearing: 1-800-237-2515).

For more information about unfair employment practices against DACA recipients, please read IER's factsheet in English (PDF) or Spanish (PDF).

For additional resources and information about workers' rights, visit www.justice.gov/crt/worker-information.

Return to top.

Last Reviewed/Updated: 02/08/2017

Case 2:17-cv-00218-RSM   Document 140-1   Filed 03/28/19   Page 76 of 373

# Exhibit C



Secretary
U.S. Department of Homeland Security
Washington, DC 20528

December 30, 2016

The Honorable Judy Chu
U.S. House of Representatives
Washington, DC 20515

Dear Representative Chu:

On behalf of the Administration, I write in response to the letter you and 110 other members of Congress sent the President on December 5. In your letter, you ask us "to do everything within [our] power to safeguard the personal identifying information of DACA enrollees." We share your concerns.

Today there are 750,000 young people enrolled in DACA who, when they applied for enrollment, relied on the U.S. government's representations about the use of their personal identifying information. Since DACA was announced in 2012, DHS has consistently made clear that information provided by applicants will be collected and considered for the primary purpose of adjudicating their DACA requests and would be safeguarded from other immigration-related purposes. More specifically, the U.S. government represented to applicants that the personal information they provided will not later be used for immigration enforcement purposes except where it is independently determined that a case involves a national security or public safety threat, criminal activity, fraud, or limited other circumstances where issuance of a notice to appear is required by law.

We believe these representations made by the U.S. government, upon which DACA applicants most assuredly relied, must continue to be honored.

For decades, even dating back before DACA, it has been the long-standing and consistent practice of DHS (and its predecessor INS) to use information submitted by people seeking deferred action or other benefits for the limited purpose of adjudicating their requests, and not for immigration enforcement purposes except in the kinds of specified circumstances described above. This was true, for example, under the deferred action policies extended to victims of human trafficking, to foreign students affected by Hurricane Katrina, to battered immigrants under the Violence Against Women Act, and to widows and widowers of American citizens. Accordingly, people who requested to be considered under DACA, like those who requested deferred action in the past, have relied on our consistent practice concerning the information they provide about themselves and others.

The Honorable Judy Chu
Page 2

The U.S. government's practice of adhering to the assurances it makes to applicants for deferred action is also consistent with the way USCIS (and the INS before it) has long protected information submitted by those seeking other benefits or relief. This includes but is not limited to individuals requesting temporary protected status, deferred enforced departure, or extended voluntary departure. In these circumstances, as with deferred action requests, USCIS and INS have abided by a longstanding and consistent practice of using information to adjudicate specific applications, but not for immigration enforcement purposes absent the limited circumstances described above.

Since DACA began, thousands of Dreamers have been able to enroll in colleges and universities, complete their education, start businesses that help improve our economy, and give back to our communities as teachers, medical professionals, engineers, and entrepreneurs—all on the books. We continue to benefit as a country from the contributions of those young people who have come forward and want nothing more than to contribute to our country and our shared future.

The co-signers of your letter will receive separate, identical responses. Should you wish to discuss this further, please do not hesitate to contact me.

Sincerely,

Jeh Charles Johnson

# Exhibit D



*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

June 15, 2012

MEMORANDUM FOR:     David V. Aguilar
                    Acting Commissioner, U.S. Customs and Border Protection

                    Alejandro Mayorkas
                    Director, U.S. Citizenship and Immigration Services

                    John Morton
                    Director, U.S. Immigration and Customs Enforcement

FROM:               Janet Napolitano
                    Secretary of Homeland Security

SUBJECT:            Exercising Prosecutorial Discretion with Respect to Individuals
                    Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the
Department of Homeland Security (DHS) should enforce the Nation's immigration laws against
certain young people who were brought to this country as children and know only this country as
home. As a general matter, these individuals lacked the intent to violate the law and our ongoing
review of pending removal cases is already offering administrative closure to many of them.
However, additional measures are necessary to ensure that our enforcement resources are not
expended on these low priority cases but are instead appropriately focused on people who meet
our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of
prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of
  this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education
  development certificate, or is an honorably discharged veteran of the Coast Guard or
  Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple
  misdemeanor offenses, or otherwise poses a threat to national security or public safety;
  and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

2

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.

- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.  It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law.  I have done so here.

Janet Napolitano

# Exhibit E

*Secretary*
**U.S. Department of Homeland Security**
Washington, DC 20528



# Homeland Security

February 20, 2017

MEMORANDUM FOR:     Kevin McAleenan
Acting Commissioner
U.S. Customs and Border Protection

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

Lori Scialabba
Acting Director
U.S. Citizenship and Immigration Services

Joseph B. Maher
Acting General Counsel

Dimple Shah
Acting Assistant Secretary for International Affairs

Chip Fulghum
Acting Undersecretary for Management

FROM:               John Kelly
Secretary

SUBJECT:            **Enforcement of the Immigration Laws to Serve the National
Interest**

This memorandum implements the Executive Order entitled "Enhancing Public Safety in
the Interior of the United States," issued by the President on January 25, 2017. It constitutes
guidance for all Department personnel regarding the enforcement of the immigration laws of the
United States, and is applicable to the activities of U.S. Immigration and Customs Enforcement
(ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration
Services (USCIS). As such, it should inform enforcement and removal activities, detention
decisions, administrative litigation, budget requests and execution, and strategic planning.

With the exception of the June 15, 2012, memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," and the November 20, 2014 memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents,"[1] all existing conflicting directives, memoranda, or field guidance regarding the enforcement of our immigration laws and priorities for removal are hereby immediately rescinded—to the extent of the conflict—including, but not limited to, the November 20, 2014, memoranda entitled "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants," and "Secure Communities."

## A. The Department's Enforcement Priorities

Congress has defined the Department's role and responsibilities regarding the enforcement of the immigration laws of the United States. Effective immediately, and consistent with Article II, Section 3 of the United States Constitution and Section 3331 of Title 5, United States Code, Department personnel shall faithfully execute the immigration laws of the United States against all removable aliens.

Except as specifically noted above, the Department no longer will exempt classes or categories of removable aliens from potential enforcement. In faithfully executing the immigration laws, Department personnel should take enforcement actions in accordance with applicable law. In order to achieve this goal, as noted below, I have directed ICE to hire 10,000 officers and agents expeditiously, subject to available resources, and to take enforcement actions consistent with available resources. However, in order to maximize the benefit to public safety, to stem unlawful migration and to prevent fraud and misrepresentation, Department personnel should prioritize for removal those aliens described by Congress in Sections 212(a)(2), (a)(3), and (a)(6)(C), 235(b) and (c), and 237(a)(2) and (4) of the Immigration and Nationality Act (INA).

Additionally, regardless of the basis of removability, Department personnel should prioritize removable aliens who: (1) have been convicted of any criminal offense; (2) have been charged with any criminal offense that has not been resolved; (3) have committed acts which constitute a chargeable criminal offense; (4) have engaged in fraud or willful misrepresentation in connection with any official matter before a governmental agency; (5) have abused any program related to receipt of public benefits; (6) are subject to a final order of removal but have not complied with their legal obligation to depart the United States; or (7) in the judgment of an immigration officer, otherwise pose a risk to public safety or national security. The Director of ICE, the Commissioner of CBP, and the Director of USCIS may, as they determine is appropriate, issue further guidance to allocate appropriate resources to prioritize enforcement activities within these categories—for example, by prioritizing enforcement activities against removable aliens who are convicted felons or who are involved in gang activity or drug trafficking.

---

[1] The November 20, 2014, memorandum will be addressed in future guidance.

2

## B. Strengthening Programs to Facilitate the Efficient and Faithful Execution of the Immigration Laws of the United States

Facilitating the efficient and faithful execution of the immigration laws of the United States—and prioritizing the Department's resources—requires the use of all available systems and enforcement tools by Department personnel.

Through passage of the immigration laws, Congress established a comprehensive statutory regime to remove aliens expeditiously from the United States in accordance with all applicable due process of law. I determine that the faithful execution of our immigration laws is best achieved by using all these statutory authorities to the greatest extent practicable. Accordingly, Department personnel shall make full use of these authorities.

Criminal aliens have demonstrated their disregard for the rule of law and pose a threat to persons residing in the United States. As such, criminal aliens are a priority for removal. The Priority Enforcement Program failed to achieve its stated objectives, added an unnecessary layer of uncertainty for the Department's personnel, and hampered the Department's enforcement of the immigration laws in the interior of the United States. Effective immediately, the Priority Enforcement Program is terminated and the Secure Communities Program shall be restored. To protect our communities and better facilitate the identification, detention, and removal of criminal aliens within constitutional and statutory parameters, the Department shall eliminate the existing Forms I-247D, I-247N, and I-247X, and replace them with a new form to more effectively communicate with recipient law enforcement agencies. However, until such forms are updated they may be used as an interim measure to ensure that detainers may still be issued, as appropriate.

ICE's Criminal Alien Program is an effective tool to facilitate the removal of criminal aliens from the United States, while also protecting our communities and conserving the Department's detention resources. Accordingly, ICE should devote available resources to expanding the use of the Criminal Alien Program in any willing jurisdiction in the United States. To the maximum extent possible, in coordination with the Executive Office for Immigration Review (EOIR), removal proceedings shall be initiated against aliens incarcerated in federal, state, and local correctional facilities under the Institutional Hearing and Removal Program pursuant to section 238(a) of the INA, and administrative removal processes, such as those under section 238(b) of the INA, shall be used in all eligible cases.

The INA § 287(g) Program has been a highly successful force multiplier that allows a qualified state or local law enforcement officer to be designated as an "immigration officer" for purposes of enforcing federal immigration law. Such officers have the authority to perform all law enforcement functions specified in section 287(a) of the INA, including the authority to investigate, identify, apprehend, arrest, detain, and conduct searches authorized under the INA, under the direction and supervision of the Department.

There are currently 32 law enforcement agencies in 16 states participating in the 287(g)

3

Program. In previous years, there were significantly more law enforcement agencies participating in the 287(g) Program. To the greatest extent practicable, the Director of ICE and Commissioner of CBP shall expand the 287(g) Program to include all qualified law enforcement agencies that request to participate and meet all program requirements. In furtherance of this direction and the guidance memorandum, "Implementing the President's Border Security and Immigration Enforcement Improvements Policies" (Feb. 20, 2017), the Commissioner of CBP is authorized, in addition to the Director of ICE, to accept State services and take other actions as appropriate to carry out immigration enforcement pursuant to section 287(g) of the INA.

## C. Exercise of Prosecutorial Discretion

Unless otherwise directed, Department personnel may initiate enforcement actions against removable aliens encountered during the performance of their official duties and should act consistently with the President's enforcement priorities identified in his Executive Order and any further guidance issued pursuant to this memorandum. Department personnel have full authority to arrest or apprehend an alien whom an immigration officer has probable cause to believe is in violation of the immigration laws. They also have full authority to initiate removal proceedings against any alien who is subject to removal under any provision of the INA, and to refer appropriate cases for criminal prosecution. The Department shall prioritize aliens described in the Department's Enforcement Priorities (Section A) for arrest and removal. This is not intended to remove the individual, case-by-case decisions of immigration officers.

The exercise of prosecutorial discretion with regard to any alien who is subject to arrest, criminal prosecution, or removal in accordance with law shall be made on a case-by-case basis in consultation with the head of the field office component, where appropriate, of CBP, ICE, or USCIS that initiated or will initiate the enforcement action, regardless of which entity actually files any applicable charging documents: CBP Chief Patrol Agent, CBP Director of Field Operations, ICE Field Office Director, ICE Special Agent-in-Charge, or the USCIS Field Office Director, Asylum Office Director or Service Center Director.

Except as specifically provided in this memorandum, prosecutorial discretion shall not be exercised in a manner that exempts or excludes a specified class or category of aliens from enforcement of the immigration laws. The General Counsel shall issue guidance consistent with these principles to all attorneys involved in immigration proceedings.

## D. Establishing the Victims of Immigration Crime Engagement (VOICE) Office

Criminal aliens routinely victimize Americans and other legal residents. Often, these victims are not provided adequate information about the offender, the offender's immigration status, or any enforcement action taken by ICE against the offender. Efforts by ICE to engage these victims have been hampered by prior Department of Homeland Security (DHS) policy extending certain Privacy Act protections to persons other than U.S. citizens and lawful permanent residents, leaving victims feeling marginalized and without a voice. Accordingly, I am establishing the Victims of Immigration Crime Engagement (VOICE) Office within the Office of

4

the Director of ICE, which will create a programmatic liaison between ICE and the known victims of crimes committed by removable aliens. The liaison will facilitate engagement with the victims and their families to ensure, to the extent permitted by law, that they are provided information about the offender, including the offender's immigration status and custody status, and that their questions and concerns regarding immigration enforcement efforts are addressed.

To that end, I direct the Director of ICE to immediately reallocate any and all resources that are currently used to advocate on behalf of illegal aliens (except as necessary to comply with a judicial order) to the new VOICE Office, and to immediately terminate the provision of such outreach or advocacy services to illegal aliens.

Nothing herein may be construed to authorize disclosures that are prohibited by law or may relate to information that is Classified, Sensitive but Unclassified (SBU), Law Enforcement Sensitive (LES), For Official Use Only (FOUO), or similarly designated information that may relate to national security, law enforcement, or intelligence programs or operations, or disclosures that are reasonably likely to cause harm to any person.

## E. Hiring Additional ICE Officers and Agents

To enforce the immigration laws effectively in the interior of the United States in accordance with the President's directives, additional ICE agents and officers are necessary. The Director of ICE shall—while ensuring consistency in training and standards—take all appropriate action to expeditiously hire 10,000 agents and officers, as well as additional operational and mission support and legal staff necessary to hire and support their activities. Human Capital leadership in CBP and ICE, in coordination with the Under Secretary for Management and the Chief Human Capital Officer, shall develop hiring plans that balance growth and interagency attrition by integrating workforce shaping and career paths for incumbents and new hires.

## F. Establishment of Programs to Collect Authorized Civil Fines and Penalties

As soon as practicable, the Director of ICE, the Commissioner of CBP, and the Director of USCIS shall issue guidance and promulgate regulations, where required by law, to ensure the assessment and collection of all fines and penalties which the Department is authorized under the law to assess and collect from aliens and from those who facilitate their unlawful presence in the United States.

## G. Aligning the Department's Privacy Policies With the Law

The Department will no longer afford Privacy Act rights and protections to persons who are neither U.S. citizens nor lawful permanent residents. The DHS Privacy Office will rescind the DHS *Privacy Policy Guidance memorandum*, dated January 7, 2009, which implemented the DHS "mixed systems" policy of administratively treating all personal information contained in DHS record systems as being subject to the Privacy Act regardless of the subject's immigration status. The DHS Privacy Office, with the assistance of the Office of the General Counsel, will

develop new guidance specifying the appropriate treatment of personal information DHS maintains in its record systems.

## H. Collecting and Reporting Data on Alien Apprehensions and Releases

The collection of data regarding aliens apprehended by ICE and the disposition of their cases will assist in the development of agency performance metrics and provide transparency in the immigration enforcement mission. Accordingly, to the extent permitted by law, the Director of ICE shall develop a standardized method of reporting statistical data regarding aliens apprehended by ICE and, at the earliest practicable time, provide monthly reports of such data to the public without charge.

The reporting method shall include uniform terminology and shall utilize a format that is easily understandable by the public and a medium that can be readily accessed. At a minimum, in addition to statistical information currently being publicly reported regarding apprehended aliens, the following categories of information must be included: country of citizenship, convicted criminals and the nature of their offenses, gang members, prior immigration violators, custody status of aliens and, if released, the reason for release and location of their release, aliens ordered removed, and aliens physically removed or returned.

The ICE Director shall also develop and provide a weekly report to the public, utilizing a medium that can be readily accessed without charge, of non-Federal jurisdictions that release aliens from their custody, notwithstanding that such aliens are subject to a detainer or similar request for custody issued by ICE to that jurisdiction. In addition to other relevant information, to the extent that such information is readily available, the report shall reflect the name of the jurisdiction, the citizenship and immigration status of the alien, the arrest, charge, or conviction for which each alien was in the custody of that jurisdiction, the date on which the ICE detainer or similar request for custody was served on the jurisdiction by ICE, the date of the alien's release from the custody of that jurisdiction and the reason for the release, an explanation concerning why the detainer or similar request for custody was not honored, and all arrests, charges, or convictions occurring after the alien's release from the custody of that jurisdiction.

## I. No Private Right of Action

This document provides only internal DHS policy guidance, which may be modified, rescinded, or superseded at any time without notice. This guidance is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigation prerogatives of DHS.

In implementing these policies, I direct DHS Components to consult with legal counsel to ensure compliance with all applicable laws, including the Administrative Procedure Act.

6

# Exhibit F



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director (MS 2000)*
Washington, DC 20529-2000

U.S. Citizenship
and Immigration
Services

APR 1 7 2015

The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Chairman Grassley:

Thank you for your February 27 and March 20 letters.

From your February 27 letter, I understand that you are seeking information regarding a specific
individual, including information regarding his involvement in Deferred Action for Childhood
Arrivals (DACA). In addition, you are seeking the official policy and other information related
to the adjudication of DACA requests from suspected or known gang members. This letter
addresses your DACA-related questions regarding that individual and responds to your inquiries
regarding DACA and gang membership. Per your request, U.S. Citizenship and Immigration
Services (USCIS) is preparing the individual's A-file. Because the individual possesses a
protected status unrelated to DACA, the Department is obligated to make certain redactions
before transmitting the file to you.

Our review of the file indicates that on January 22, 2013, the individual requested deferred action
pursuant to DACA. At the time of filing his request for deferred action, he was in removal
proceedings as an alien present in the United States without being admitted or paroled. It
appears he came to the attention of U.S. Immigration and Customs Enforcement (ICE) as a result
of a 2012 arrest for possession of marijuana, for which charges were subsequently dismissed.
Based on ICE records, there is no indication that ICE was aware at the time of the arrest that the
individual was a gang member. His request for deferred action was approved on August 26,
2013, notwithstanding a TECS record indicating that he was a known gang member, and his
application for employment authorization was approved. After the deferred action request was
approved, immigration proceedings were administratively closed on December 18, 2013.

Based on standard procedures and protocols in place at the time, the DACA request and related
employment authorization should not have been approved. On March 5, 2015, USCIS provided
notice to the individual of the termination of his deferred action and employment authorization.

All DACA requests presenting information that the requestor is or may be a member of a
criminal street gang are referred to the Background Check Unit (BCU) within the USCIS Service
Center considering the request. The BCU is responsible for reviewing and resolving TECS hits
and other criminal, national security, and public safety concerns in accordance with USCIS

The Honorable Charles E. Grassley
Page 2

policy. The applicable USCIS internal guidance, which was in place at the time this individual's deferred action request was approved, states, "For a known street gang member, ... the DACA BCU Team should deny the I-821D [Consideration of Deferred Action for Childhood Arrivals] as a matter of discretion." The guidance also provides that if an adjudicator has evaluated the totality of the circumstances in such a case and believes the request should be approved as a matter of discretion, the request may be granted only after USCIS Headquarters approval. I have enclosed a copy of this internal guidance.

While records indicate that, pursuant to standard protocols as stated above, the case was appropriately sent to the BCU based upon the derogatory information in the background check, the outcome of the resolution process and final decision did not comply with USCIS policy. Given the fact that the individual was identified as a known gang member, his request should have been denied by the adjudicator. Even if the adjudicator believed there were mitigating facts sufficient to justify a positive exercise of discretion despite the TECS record, the case should have been elevated to USCIS Service Center Operations Headquarters (HQSCOPS) for review prior to a final decision being made.

USCIS is taking the following proactive steps and measures to be sure other errors did not occur and to prevent such an error from occurring in the future:

- USCIS has provided refresher training in the following areas:
  - o All Immigration Service Officers who adjudicate DACA requests received refresher training in interpreting and applying TECS records.
  - o Officers received DACA refresher training regarding disqualifying public safety and criminality concerns, including but not limited to gang membership, significant misdemeanors, and three or more misdemeanor criminal offenses.
  - o Additional refresher training was given to all officers who handle DACA requests on proper protocol and elevation of cases requiring USCIS HQSCOPS' review and concurrence prior to a final decision.
  - o BCU Officers received refresher training in reviewing, applying and resolving TECS hits. USCIS will ensure that the BCU Officer who processes the resolution memo of the TECS hit obtains concurrence from a subject matter expert or supervisor prior to adjudicating a DACA request involving specified public safety or criminality issues such as criminal history or gang membership.

- The refresher training was provided by USCIS Headquarters personnel who are subject matter experts in TECS and the DACA adjudication process. This training was mandatory for all ISOs who adjudicate DACA requests, all Immigration Service Officers who process resolutions related to TECS hits, and all supervisors and managers who oversee these processes. All listed training was provided between March 30 and April 10, 2015.

Furthermore, USCIS is in the process of completing a review of prior DACA approvals to determine if requests from known gang members were processed in a manner consistent with standard protocol. USCIS has identified certain cases that merit further review and is therefore undertaking a thorough review of each of these individual case files. We anticipate conclusion

The Honorable Charles E. Grassley
Page 3

of that individualized review in the coming weeks, and, following conclusion of such review, we would be happy to provide a briefing to you and your staff on our findings. Preliminary information concerning this review is included in the enclosure.

Detailed responses to the questions in your March 20 letter regarding DACA approvals are enclosed, which Senator Tillis, who co-signed that letter, will receive under separate cover. Should you require any additional assistance, please have your staff contact the USCIS Office of Legislative Affairs at (202) 272-1940.

Respectfully,

León Rodríguez
Director

Enclosures:
   1) Responses to Questions
   2) USCIS Internal Guidance

**U.S. Department of Homeland Security's Response to
Chairman Grassley and Senator Tillis's March 20, 2015 Letter**

1. **Since DACA's creation, how many applications have been approved?  Please provide the answer by fiscal year.**

   As of March 20, 2015, U.S. Citizenship and Immigration Services (USCIS) has approved 886,638 Deferred Action for Childhood Arrivals (DACA) requests, of which 223,826 were requests for renewal of DACA.  The number of DACA requests approved by fiscal year is as follows:

   | | | |
   |---|---|---|
   | FY 2012 | 1,685 | |
   | FY 2013 | 471,293 | |
   | FY 2014 | 158,278 | (Initial – 135,797; Renewal – 22,481) |
   | FY 2015 | 255,382 | (Initial – 54,037; Renewal – 201,345) |

2. **Of the DACA applications approved, please provide the number of applicants that:**

   USCIS does not track this information electronically and is working toward developing a tracking system to capture this information in the future.  However, USCIS recently conducted a batch TECS query of all approved DACA cases in order to identify records that contained information indicating known or suspected gang association.  Based on the information obtained from the query, out of all 886,638 cases approved for initial DACA or renewal of DACA, we found TECs records pertaining to 49 DACA recipients.  Of these 49, 13 individuals had TECS records entered after DACA adjudication.  The 13 cases are being reviewed for possible termination.  Twenty had TECS records at the time of filing, and one had a TECS record placed during the adjudication process.  These cases are being reviewed.  As noted below, any cases that were approved for known gang members were approved in error, as USCIS HQ has not cleared approval of any DACA requests by a known or suspected gang member.  Fifteen had TECS records that were vetted and were determined not to be gang members/gang affiliates.  These cases were adjudicated on their merits.

   a. **Had known gang affiliation.**

      In the analysis described above, we did not distinguish between known or suspected gang members.  Further manual review would be required to obtain this information.

   b. **Suspected gang affiliation.**

      In the analysis described above, we did not distinguish between known or suspected gang members.  Further manual review would be required to obtain this information.

**c.  Had criminal affiliations.**

USCIS does not electronically track this information.  A manual review of files would be required to obtain this information.  Since not all crimes disqualify a requestor from being favorably considered for DACA, a requestor with one or two non-significant misdemeanors could have been approved.  USCIS is working toward developing a tracking system to capture this information in the future.

**3.  Please explain why USCIS approved DACA applications for known or suspected gang members and others with criminal affiliations.**

Cases that were approved for known gang members were approved in error, as USCIS HQ has not cleared approval of any DACA requests by a known or suspected gang member.  USCIS is not aware of any DACA grants where there was disqualifying criminal activity.  DACA Refresher Training has been provided to prevent errors in the future.

**4.  By fiscal year, how many DACA applications have been denied because of gang affiliation or other criminal affiliation?**

USCIS does not currently electronically track information regarding the basis for a denial of a DACA request.  A manual review of files would be required to obtain this information for each DACA denial.  USCIS is working toward developing a tracking system to capture this information in the future.

**5.  By fiscal year, please provide the number of DACA terminations as a result of gang affiliation or other criminal affiliation.**

USCIS does not electronically capture the reasons for termination of a DACA request.  Ad hoc manual reports from each service center indicate that as of March 20, 2015, USCIS has terminated DACA for 282 requestors for having gang affiliation and/or criminal issues.  Additionally, USCIS is in the process of manually reviewing another 13 DACA terminations to determine the reason for termination.

The following is a breakdown by fiscal year of the 282 DACA requests terminated due to criminal or gang issues:

| | |
|---|---|
| FY 2013 | 28 |
| FY 2014 | 131 |
| FY 2015 | 123 |

6.  **What steps is USCIS taking to ensure that known or suspected gang members or criminally affiliated applications are denied DACA or approved DACA is terminated once knowledge of gang affiliation or other criminal affiliation is known?**

When a suspicion of gang affiliation or other criminal affiliation comes to the attention of USCIS after the DACA request has been approved, the case is reviewed for possible termination.  This information is typically communicated by ICE as result of their engagement with local law enforcement or other encounters.

DACA refresher training was conducted by USCIS HQ subject matter experts who traveled to each of the Service Centers.  The training included interpreting and applying TECS records and a review of the disqualifying factors for DACA, including gang membership and significant misdemeanors.  Additional refresher training was given to all officers who handle DACA requests on proper protocol and elevation of cases requiring USCIS HQSCOPS' review and concurrence prior to a final decision.  The training was delivered to each ISO who adjudicates Form I-821D, *Consideration of Deferred Action for Childhood Arrivals*, the ISOs assigned to work DACA in the Background Check Unit, as well as management who oversees these ISOs.  This training was conducted between March 30, 2015 and April 10, 2015.

**U.S. Citizenship and Immigration Services**
**Internal DACA Adjudication Guidance**

| | |
|---|---|
| Title | Known or Suspected Gang Membership |
| Question | How should we handle DACA requests when there is a record that the requestor is a known or suspected criminal street gang member? |
| Answer | The BCU DACA Team should handle any DACA requests when the record indicates that the requestor was, is or may be a member of a criminal street gang.  Supervisors should only refer novel, complex, or sensitive cases to HQSCOPS, through the normal chain of command.  The Centers should not approve a DACA request filed by a known or suspected gang member without approval from HQSCOPS. |

USCIS's Notice to Appear (NTA) guidance includes "known or suspected street gang members" in its definition of an Egregious Public Safety (EPS) case.  Therefore, if there is reason to believe the DACA requestor is a known or suspected gang member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities (e.g., a TECS record indicating the alien is a gang member or a suspected gang member as shown in the <u>images A and B</u>), the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G, of the DACA SOP.

<u>ICE Priority</u>

If, in response to the referral to ICE (RTI), ICE issues an NTA or otherwise indicates that the DACA requestor is an enforcement priority, the DACA BCU Team should deny the I-821D using call up DACA 511 - DISCRETIONARY from the Appendix F.

<u>Known Gang Member</u>

For a known street gang member, if an RTI is not required, as stated in the National Background Identity and Security Checks Operating Procedures (NaBISCOP), or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team should deny the I-821D as a matter of discretion and notify ICE of the decision.

Suspected Gang Member

For a suspected street gang member, if an RTI is not required, as stated in the NaBISCOP, or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team must refer the case for an interview to determine whether or not the requestor is, in fact, a gang member.  Please contact the appropriate Field Office POC through established channels to facilitate the interview process.  If, after the interview, it is inconclusive whether the requestor is a gang member (e.g., based on the preponderance of the evidence the person is a street gang member), the DACA BCU Team should deny the I-821D as a matter of discretion because the person has not met the burden of showing he or she is 'more likely than not' not a street gang member and therefore does not pose a threat to public safety. The DACA BCU team must notify ICE of the decision.

# Exhibit G



**National Standard Operating Procedures (SOP)**


# Deferred Action for Childhood Arrivals (DACA)
**(Form I-821D and Form I-765)**


Prepared by:  Service Center Operations Directorate


**August 28, 2013**
**Version 2.0**

# 1.0   REVISION HISTORY

| Revision History | | | | | | |
|---|---|---|---|---|---|---|
| | Version | V02 | | Date Released | 8/28/2013 | | Changes Made By | SCOPS |

| Reason for SOP Update | | | |
|---|---|---|---|

| | Reason | Chapter/Section | Page No(s). |
|---|---|---|---|
| 1 | New Guidance | Chapter 5, Incoming Files | 25 |
| 2 | New Guidance | Chapter 5, Homebound Biometrics Capturing | 27 |
| 3 | New Guidance | Chapter 8, CITRIX/EOIR I-485 | 47 |
| 4 | New Guidance | Chapter 8, Duplicate Filings | 48 |
| 5 | New Guidance | Chapter 8, Graduated from School | 69 |
| 6 | New Guidance | Chapter 8, Economic Necessity | 72 |
| 7 | New Subtitle | Chapter 8, Issues of Criminality | 82 |
| 8 | New Guidance | Chapter 8, Issues of Criminality | 82 |
| 9 | New Subtitle | Chapter 8, DACA Requestors in Immigration Detention at the Time of Filing Form I-821D | 90-91 |
| 10 | New Guidance | Chapter 8, DACA Requestors in Immigration Detention after Filing Form I-821D | 91-92 |
| 11 | New Guidance | Chapter 8, Social Security Number | 94 |
| 12 | New Guidance | Chapter 8, Denials – Supervisory Review | 110 |
| 13 | New Subtitle | Chapter 14, Removal Deferred Under DACA – Requestor did not Satisfy the Guidelines | 136 |
| 14 | New Guidance | Chapter 14, Enforcement Priority – DACA Not Automatically Terminated | 138 |
| 15 | New Guidance | Chapter 14, System Updates | 138 |

**Note:  SOP revisions listed are reflected in blue font.**

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1858

# Table of Contents

| Chapter | Page # |
|---|---|
| 1: Definitions and Applicability to DACA | 6-15 |
| 2: Introduction | 16-20 |
| 3: Summary of the Overall Process Flow for DACA Filings | 20-22 |
| 4: Lockbox Intake | 23-24 |
| 5: Service Center Intake | 25-32 |
| 6: Background and Security Checks | 33-41 |
| 7: DACA Overview | 42-44 |
| 8: Adjudication of the DACA Request | |
|    A.  Procedural Overview | 45-48 |
|    B.  System Searches | 49 |
|    C.  Determining if Guidelines are Met | 50-71 |
|    D.  Economic Necessity | 72 |
|    E.  Removal Proceedings | 73-78 |
|    F.  Fingerprints and RAP Sheets | 79-81 |
|    G.  Evaluating Issues of Criminality, Public Safety, and National Security | 82-97 |
|      &bull;  Court Dispositions | 86-88 |
|      &bull;  Arrests and Convictions | 89 |
|      &bull;  Public Safety Concerns | 90 |
|      &bull;  National Security Concerns | 90 |
|      &bull;  Immigration Detention | 90-92 |
|      &bull;  Handling Procedures | 93-97 |
|    H.  Adjudicating Form I-821D, Part 3, Criminal, National Security and Public Safety Information | 98-100 |
|    I.  Fraud Review and Fraud Referrals | 101-104 |
| 9: Decisions | |
|    A.  Request for Evidence | 105 |
|    B.  Notice of Intent to Deny | 106 |
|    C.  Approvals | 107-108 |
|    D.  Denials | 109-113 |
|      &bull;  Supervisory Review | 110 |
| 10: Post Denial Process | 114 |
| 11: Returned Mail | 115 |

*Continued on next page*

~~FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)~~
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013     3

1859

# Table of Contents

| Chapter | Page # |
|---|---|
| 12: Employment Authorization | |
|     A.  General Information | 116-117 |
|     B.  Adjudication | 118-123 |
|     C.  Replacement Cards | 124 |
| 13: Customer Service - Use of Service Request Management Tool (SRMT) to Respond to Requests to Review Certain Denials | 125-135 |
| 14: DACA Termination | 136-138 |
| 15: Processing Form I-131, Application for Travel Document, for Individuals With Approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA) | 139-142 |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013     4

1860

# Appendices

**Appendix A:** June 15, 2012, Secretary of Homeland Security memorandum entitled, <u>Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children</u>.

**Appendix B:** November 7, 2011, memorandum entitled, Revised <u>Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.</u>

**Appendix C:** Overview of the Background Check Process

**Appendix D:** DACA RFE Call Ups

**Appendix E:** Notice of Intent to Deny Call-Ups

**Appendix F:** DACA Denial Template

**Appendix G:** SRMT Responses

**Appendix H:** SRMT Denial Template

**Appendix I:** Notice of Intent to Terminate Deferred Action for Childhood Arrivals and Termination Notice

**Appendix J:** Notice of Intent to Deny Review Policy

**Appendix K:** DACA Denial Call-Ups

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1861

# Chapter 1: Definitions and Applicability to DACA

| | |
|---|---|
| **Absconder** | An alien who failed to surrender to DHS for removal after receiving a final order of deportation, exclusion, or removal. |
| **Aggravated Felon** | Any alien who has been convicted of a criminal offense within the definition of 101(a)(43) of the Immigration and Nationality Act (Act). |
| **Alias** | An additional name (e.g., nickname, maiden name, or married name) or an assumed name. |
| **Ancillary Application** | Applications for travel, employment authorization, or applications that do not convey an immigrant or nonimmigrant status, and are filed in connection with a primary or an underlying application or petition. |
| **ASC** | Application Support Center. The ASCs, which are located throughout the United States and its outlying territories, facilitate the capture of fingerprints and biometric data. |
| **BCU** (b)(7)(e) | Background Check Unit. A work unit located at each of the Service Centers and the National Benefits Center. The BCU is responsible for reviewing and resolving _____ its and other criminal, national security, and public safety concerns in accordance with Agency policy. |
| **BCU DACA Team** | A specialized team within the BCU that specifically reviews and adjudicates issues of criminality arising from DACA requests. The team may consist of Immigration Services Officers, as well as officers assigned to CARRP, NTA issuance, and Triage duties, and the analysts who support them. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1862

# Definitions and Applicability to DACA, Continued

**Brief, Casual, and Innocent Absence**

A brief, casual, and innocent absence from the United States before August 15, 2012 will not interrupt continuous residence for purposes of DACA. An absence will be considered brief, casual, and innocent, if:

(1) The absence was short and reasonably calculated to accomplish the purpose of the absence;

(2) The absence was not the result of an order of exclusion, deportation, or removal;

(3) The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and

(4) The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

This definition of a brief, casual, and innocent absence has its basis in case law and was codified into the regulations for the Temporary Protected Status (TPS) program. Elements of this definition of brief, casual, and innocent will be used for individuals requesting DACA. See 8 C.F.R. §244.1. See also "Continuous Residence" below for additional circumstances that will not break continuous residence.

**CFDO**

The Center Fraud Detection Operations (CFDO) is the Fraud Detection and National Security (FDNS) organization within Service Centers. The CFDO is comprised of FDNS officers under the direction of an FDNS supervisor who reports directly to the CFDO Assistant Center Director (ACD). While most CFDO work occurs in an office environment, some Service Centers conduct administrative investigations in support of FDNS's field operations.

**CLAIMS (C3)**

Computer - Linked Application Information Management System Version 3. A case management application system to track and process the adjudication of applications, petitions, and other requests for immigration benefits and services.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1863

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Continuous Residence** | The DACA requestor is to reside in the United States for the entire period specified in the guidelines for DACA to be considered. An alien shall not be considered to have failed to maintain continuous residence in the United States by reason of a brief, casual, and innocent absence as defined within this section. |
| **CARRP** | Controlled Application Review and Resolution Program. This program outlines the process to identify, record, and adjudicate applications/petitions/requests where a National Security concern is identified. |
| **DACA** | Deferred Action for Childhood Arrivals |
| **Deferred Action** | Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not confer any lawful status. |
| **DNR** | Does Not Relate. A determination by USCIS personnel of whether a security check result relates to a DACA requestor. |
| **Egregious Public Safety (EPS) Concern** | Any case where routine systems and background checks indicate that an individual is under investigation for, has been arrested for (without disposition), or has been convicted of, a specified crime, including but not limited to, murder, rape, sexual abuse of a minor, trafficking in firearms or explosives, or other crimes listed in the November 7, 2011, memorandum entitled Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)—
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**    **8**

1864

# Definitions and Applicability to DACA, Continued

**Evidence**

**Affidavits**

Affidavits generally will not be sufficient on their own to demonstrate that a requestor meets the DACA guidelines. However, affidavits may be used to support the following guidelines when primary and secondary evidence are unavailable:

- A gap in the documentation demonstrating that the requestor meets the five year continuous residence requirement; and
- A shortcoming in documentation with respect to the brief, casual and innocent departures during the five years of required continuous presence.

Two or more affidavits, sworn to or affirmed by people other than the requestor, who have direct personal knowledge of the events and circumstances, can be submitted. If the affidavits are not sufficient to establish that the guideline is met, issue an RFE using RFE DACA 302 call up in Appendix D.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- The requestor is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general education development certificate, or is an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- The requestor was physically present in the United States on June 15, 2012;
- The requestor came to the United States before reaching his/her 16th birthday;
- The requestor was under the age of 31 on June 15, 2012; and
- The requestor's criminal history, if applicable.

Weigh the assertions in the affidavit in light of the totality of all the evidence presented. When evaluating what weight to give an affidavit, take the following into consideration:

- An affidavit needs to be signed and dated;
- The identity of the affiant needs to be readily ascertainable from the information in the affidavit;
- The affidavit should state the relationship between the affiant and the DACA requestor and contain facts that are relevant to the guideline the requestor seeks to meet;
- The affidavit should state the basis of the affiant's knowledge and exhibit first-hand knowledge of the fact asserted.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1865

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Evidence** (Continued) | **Preponderance of the Evidence** |

**Preponderance of the Evidence**

A DACA requestor is to establish by a preponderance of the evidence that he/she meets the guidelines for the exercise of prosecutorial discretion in the form of deferred action. Under this standard, the requestor must demonstrate that it is more likely than not that he or she meets those guidelines. The preponderance of the evidence standard is a lower standard of proof than both the "clear and convincing evidence" standard and the "beyond a reasonable doubt" standard applicable to criminal cases.

**Primary Evidence**

Primary evidence is evidence which, on its face, proves a fact. In the DACA context, an example of primary evidence that could be submitted to satisfy the age guideline would be a birth certificate. An example of primary evidence that could be submitted to satisfy all or part of the continuous residence guideline would be rental agreements or school records in the DACA requestor's name.

**Secondary Evidence**

Secondary evidence must lead the officer to conclude that it is more likely than not (in other words, probable) that the fact sought to be proven is true. For example, if an individual is unable to obtain a copy of his birth certificate to establish his date of birth, baptismal records issued by a church showing that an individual was born at a certain time would be acceptable secondary evidence of the birth for purposes of satisfying the DACA age guideline. Similarly, to satisfy the continuous residence guideline under DACA, rental agreements in the name of the DACA requestor's parent could be acceptable secondary evidence demonstrating periods of the requestor's residence in the United States, if corroborating evidence in the file (for example, school or medical records) points to the DACA requestor's residence at that address.

**Sufficiency of the Evidence**

The sufficiency of all evidence is judged according to its relevance, consistency, and credibility.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1866

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Evidence** (Continued) | **Totality of the Evidence** |

For DACA, the totality of the documentary evidence should be reviewed to determine whether the facts needed to establish a specific guideline have been demonstrated.  In many instances, an adjudicator may be satisfied based upon the review of all the documentary evidence, that it is more likely than not that a specific guideline has been meet even if the record does not contain one specific document that, in fact, satisfies the guideline.  For example, if a DACA requestor is unable to submit a specific document evidencing his/her presence in the United States on June 15, 2012, he/she may be able to satisfy this guideline by submitting various forms of credible documentation evidencing that he/she was present in the United States shortly before and shortly after June 15, 2012 from which the officer could infer, based on the totality of the evidence, that the individual was present in the United States on June 15, 2012.  (Note: evidence upon which one may infer that a fact has been demonstrated is also known as "circumstantial evidence," a term that appears in many DACA public information documents).

Officers must see documentary evidence (either primary or secondary) in order to determine if the following guidelines have been met:
- Requestor was under the age of 31 on June 15, 2012; and
- Requestor is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

Officers may not infer from other sources that either of these two guidelines have been met.

Officers should look to the totality of the evidence (meaning that facts can be inferred from one or more sources) to determine if the following guidelines have been met:
- The requestor was physically present in the United States on June 15, 2012;
- The requestor came to the United States before reaching his/her 16th birthday;
- The requestor satisfies the continuous residence requirement, (as long as he or she presented clear documentation of continuous residence in the United States for a portion of the required five-year period and any other evidence submitted supports a finding that the requestor was actually residing in the U.S. during the period for which he has not provided clear documentary evidence of such residence); and
- Any travel outside the United States during the five years of required continuous presence was brief, casual, and innocent.

---

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) Information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

1867

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Evidence (Continued)** | For the remaining guidelines, i.e., the requestor was in unlawful status on June 15, 2012, has no disqualifying criminal convictions, and does not otherwise pose a threat to public safety or national security, the information presented by the DACA requestor on his/her Form I-821D in combination with background and security checks, routine systems checks, supporting evidence submitted by the requestor, and any other information on file, may establish that these guidelines have been met. |
| **Front End Check** | Security and systems checks performed upon the receipt of an application or petition or other requests to screen for national security, EPS, fraud, or other criminal concerns. |
| **HQ FDNS** | Headquarters Office of the Fraud Detection and National Security Directorate of USCIS. |
| **Hit** | A record returned by a security or background check system in response to a query that may relate to the subject being queried. |
| **Interpol** | International Criminal Police Organization, the world's largest international police organization. This organization facilitates cross-border police cooperation and supports and assists all organizations, authorities, and services whose mission is to prevent or combat international crime. |
| **JTTF** | Joint Terrorism Task Force. The JTTF is run by the Federal Bureau of Investigation (FBI). The JTTF is comprised of small groups of highly trained, locally based members from U.S. law enforcement and intelligence agencies. JTTF is responsible for all domestic and international terrorism matters. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **KST** | Known or Suspected Terrorist. |
| (b)(7)(e) | |

| | |
|---|---|
| **National Security (NS) Concern** | An NS Concern exists when an individual or organization has been determined to have an articulable link to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in §§ 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B) of the Act. This determination requires that the case be handled according to the CARRP policy outlined in the memorandum issued on April 11, 2008. |
| **NCIC** | The National Crime Information Center (NCIC) is a database maintained by the FBI. NCIC includes the Interstate Identification Index (NCIC III) that allows authorized users to access criminal history information. Access to NCIC III is limited to FDNS personnel only.  FDNS personnel may only access NCIC III when an individual has been determined to have, or is likely to have, a link to a current or planned criminal activity and the case is referred to FDNS for further investigation with the appropriate law enforcement agency, when a reasonable suspicion of fraud is identified that may be referred to ICE for criminal investigation or when an individual has been determined to be involved in current or planned terrorist activity.  Prior to accessing NCIC III information, USCIS personnel who ar[     ]sers must first complete the NCIC Certification Course. |
| **NCTC** | National Counterterrorism Center. In August 2004, the President established NCTC, a multi-agency organization, to serve as the primary organization for the U.S. Government for integrating and analyzing all intelligence pertaining to terrorism and counterterrorism (CT) and to conduct strategic operational planning by integrating all instruments of national power. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1869

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **No Match** | This annotation is used on the Record of ☐ if a ☐ query results in n☐ hit. |
| **Non-KST**<br><br>(b)(7)(e) | A Non-KST NS concern includes all other NS concerns, regardless of the source, including but not limited to: associates of KSTs, unindicted coconspirators, terrorist organization members, persons involved with providing material support to terrorists or terrorist organizations, and agents of foreign governments. |
| **Primary Name and DOB** | The name and date of birth provided by an applicant, petitioner, or requestor as his/her given name and date of birth. This is generally listed in the first part of the application/petition/request. |
| **Relates** | This annotation is used on the ROIQ if a ☐ query results in a hit that closely corresponds to the subject queried. |
| **Resolution** | A determination of the effect or relevance of the available information on the eligibility of the applicant, requestor, petitioner, beneficiary, or derivative for the benefit or request sought. |
| **ROIQ** | Record of IBIS Query. This form is used to record the search criteria queried and the results of those queries.  The ROIQ was revised on March 5, 2013 to include checkbox "R" for requestors. |
| **SNAP** | Scheduling and Notification of Applicants For Processing. An automated system that schedules appointments for individuals to submit biometric information to ASCs. |
| **Secretary's Memorandum** | The June 15, 2012, memorandum entitled, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children, issued by the Secretary of Homeland Security. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1870

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Security Check** | A specific check or a combination of checks required for each application, petition, or request conducted in accordance with Agency policy. |

(b)(7)(e)

| | |
|---|---|
| **System Match** | A record returned by ▓▓▓▓ in response to a query, the subject of which may or may not relate to the subject being queried. This is the same as a ▓▓▓▓ Hit. |

| | |
|---|---|
| **TECS** | TECS is formerly known as the Treasury Enforcement Communications System/Interagency Border Inspection System.   TECS is an automated enforcement and inspection lookout system that combines information from multiple agencies, databases, and system interfaces to compile data relating to national security risks, public safety issues, current or past targets of investigations, and other law enforcement concerns. The system is maintained by U.S. Customs and Border Protection. |

| | |
|---|---|
| **VGTOF** | Violent Gang and Terrorist Organization File. The VGTOF file has been designed to provide identifying information about violent criminal gangs and terrorist organizations and members of those gangs and organizations to law enforcement personnel. This information serves to warn law enforcement officers of the potential danger posed by violent individuals and to promote the exchange of information about these organizations and members to facilitate criminal investigations. USCIS has access to VGTOF through NCIC. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1871

# Chapter 2: Introduction

| | |
|---|---|
| **Purpose** | This SOP describes the procedures Service Centers are to follow when adjudicating DACA requests. This SOP includes the procedures for processing Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and Form I-765, Application for Employment Authorization. It also describes the procedures for adjudicating advance parole requests for individuals whose removal has been deferred under DACA and who need to travel outside of the United States for educational, employment, or humanitarian purposes. |
| **References** | **For DACA:** Memorandum issued June 15, 2012, <u>Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children</u>, by Secretary of Homeland Security Janet Napolitano to U.S. Customs and Border Protection; U.S. Citizenship and Immigration Services; and Immigration and Customs Enforcement. <u>See</u> Appendix A for a copy of the Secretary's memorandum.<br><br>**For Employment Authorization:** 8 C.F.R. § 274a.12(c)(14) is the legal authority for employment authorization based on a grant of deferred action. The (c)(33) code will be used to distinguish EAD grants under DACA from EAD grants under other forms of deferred action. <u>See</u> also the Secretary's memorandum, which provides that USCIS shall accept applications to determine whether individuals whose removal has been deferred under DACA qualify for work authorization during the period of deferred action. |
| **Fraud Cases** | All officers are required to review cases for the possibility of fraud. All officers should review the case based on the standard fraud referral protocols and the additional guidance provided in Chapter 8, Section K of this SOP. |
| **Applicability** | This SOP is applicable to all Service Center personnel performing adjudicative and clerical functions or review of those functions. Personnel outside of Service Centers performing duties related to DACA processing will be similarly bound by the provisions of this SOP. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1872

# Introduction, Continued

**Conflict Resolution**

Any provision of the Act or 8 C.F.R. found by Headquarters Service Center Operations Directorate (SCOPS) to be in conflict with this SOP will take precedence over the SOP; any individual who identifies such an apparent conflict will report the matter immediately to the DACA SISO POC, who will in turn report the conflict to SCOPS.

If any apparent conflict is noted between this SOP and policy or guidance documents, the matter should be reported to SCOPS through the supervisory chain of command.

**Revisions**

SCOPS will issue numbered revisions to this SOP. No other document will be considered a valid modification.

***Version Control***
All personnel who maintain a hard copy of the SOP will ensure that it is the latest version. An electronic copy of the latest version will be posted per local procedures. The training unit will archive all prior electronic versions of this SOP.

**Additional Resources**

For additional resources on DACA, please see a supervisor or training coordinator for DACA training presentations and modules.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1873

# Introduction, Continued

**DACA Overview**

On June 15, 2012, the Secretary of Homeland Security issued a memorandum entitled, <u>Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children</u>. In this memorandum, the Secretary provides guidelines for exercising prosecutorial discretion on a case -by-case basis to defer removal action of individuals who were brought to the United States as children. By issuing this memorandum, the Secretary recognized that, as a general matter, these individuals lacked the requisite intent to violate the law when they entered the United States as children. Therefore, the Secretary determined that additional measures are necessary to ensure that enforcement resources are not expended on these low priority cases, but rather, on those who meet DHS's enforcement priorities.

**Childhood Arrival**

For purposes of considering an individual for DACA under the Secretary's memorandum, an individual may be favorably considered for DACA if he/she:

1. Entered without inspection before June 15, 2012, or his or her lawful immigration status expired as of June 15, 2012. For DACA purposes, the phrase "in unlawful status as of June 15, 2012" means that he/she never had a lawful immigration status on or before June 15, 2012, or any lawful status or parole that he/she obtained prior to June 15, 2012 had expired before June 15, 2012;
2. Was under the age of 31 as of June 15, 2012;
3. Came to the United States prior to reaching his/her 16th birthday;
4. Has continuously resided in the United States since June 15, 2007, up to the date of filing;
5. Was present in the United States on June 15, 2012, and at the time of making his/her request for consideration of deferred action with USCIS;
6. Is currently in school at the time of filing, has graduated or obtained a certificate of completion from a U.S. high school, has obtained a GED certificate or other equivalent State authorized exam in the United States, or is an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces; and
7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1874

# Introduction, Continued

| | |
|---|---|
| **DACA Requests Filed with USCIS** | USCIS will process all DACA requests, regardless of whether the individual is in removal proceedings (unless the individual is in immigration detention under the custody of ICE) or subject to a final order of removal. Depending on when the order was issued, this could be an order of deportation, exclusion or removal.  A complete DACA package consists of concurrently filed Forms I-821D, Consideration of Deferred Action for Childhood Arrivals and I-765, Application for Employment Authorization, with the worksheet, Form I-765WS. Forms I-821D and I-765 must be filed concurrently. DACA requests will be adjudicated by all four Service Centers. |
| **DACA Requestors in Immigration Detention** | USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated.  Since the Lockbox is currently unable to reject these cases, the Center may receive a Form I-821D when the requestor was in immigration detention under the custody of ICE at the time of filing. Whenever this occurs, the Center should follow the procedures in Chapter 8, Section G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013     19

1875

## Introduction, Continued

**Lockbox**    All DACA requests are filed, with applicable fees, and with the appropriate USCIS Lockbox. DACA filings mistakenly mailed to a Service Center will be forwarded to the appropriate Lockbox for processing. Requests received at a Lockbox Facility will be electronically scanned into OnBase (the Lockbox intake system) and all pertinent fields will be populated in CLAIMS 3 (C3) into the Form I-821 screen, but with a new category "3" as the basis for requesting DACA. While Forms I-821 for TPS, and I-821D for DACA are very similar, when Form I-821 appears in CLAIMS with category "3" (to denote that it is actually an I-821D for DACA), only those fields pertaining to the DACA request will be active.



The file containing the Form I-821D and Form I-765 will be forwarded to the appropriate Service Center for adjudication, based on the agreed upon routing logic between Service Centers and Lockbox.

The Lockbox will screen DACA requests to determine whether they have been filed correctly with USCIS.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Chapter 3: Summary of Overall Process Flow For DACA Filings

**Introduction**

This section summarizes the general process flow for an initial DACA request, from intake at the Lockbox, to the point of a final decision.

**Process Flow**

Step 1:
Intake occurs at the Lockbox per the agreed upon Lockbox/SCOPS business rules.

Step 2:
Service Center Records performs the A-number look-up and validation process.

Step 3:
Data is populated into C3 via the Lockbox-Service Center interface.

Step 4:
Lockbox creates and ships A-Files/T-Files to the appropriate Service Center based on the agreed upon routing.

Step 5:
Service Centers receive the files and perform file intake functions.

Step 6:
ASC appointments are scheduled via SNAP by the Service Center pursuant to local procedures.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Lockbox Intake, Continued

**A#
Validation/
Assignment**

The Lockbox will perform the following:

- A# validation is triggered by the Form I-821D;
- If the requestor provides an A# that matches the Central Index System (CIS) based upon the same name and date of birth, the A# is retained and cloned to the Form I-765;
- If the A# provided by the requestor is incorrect, the transaction goes to the queue for research. If the correct A# is found in USCIS systems, it is inserted into the Form I-821D record and cloned to the Form I-765. If no A# is found in USCIS systems, then an A# is assigned to Form I-821D and cloned to the Form I-765;
- If there is no A# on the Form I-821D, the transaction goes to the queue for research. If the correct A# is found, it will be inserted into the Form I-821D record and cloned to the Form I-765. If no A# is found in USCIS records (manual search), then the A# is assigned to Form I-821D and cloned to the Form I-765.

Research is completed by Service Center staff remotely accessing the Lockbox intake system. DACA requests with a missing or invalid A# are routed to USCIS to review. USCIS may correct the A# or assign a new A#.

**Record of
Proceeding
(ROP)**

The Lockbox will assemble the DACA files in the following order:

| Records Side | Non-Records Side |
|---|---|
| Valid Form G-28 | Form G-28 (not-valid) face down |
| Form I-821D | Property Envelope (facing backward and upside down) |
| Form I-765WS | |
| Form G-1145 | |
| Attorney's Letter (if applicable) | |
| Passport | |
| Birth Certificate | |
| Form I-94 | |
| Other Supporting Documentation (e.g., school transcripts and relating envelope) | |
| Form I-765 (2 requestor's photos will be placed in a ziplock bag and stapled to the Form I-765) | |
| Address Side of Envelope | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1878

# Chapter 5: Service Center Intake

**Incoming Files**

The contractor will perform the following actions:
- Open the boxes from the Lockbox;
- Date stamp and check the manifest against the files in the boxes;
- Separate A-file and T-files;
- Perform "new add" for the receipt files, A-files, and T-files, as well as consolidate Forms I-821D and I-765 into the A-file/T-file in the National File Tracking System (NFTS);
- T-files – locate the A-file(s) using the NFTS inquiry screen and if the A-file(s) are located outside the Service Center, initiate the A-file request;
- EOIR I-485 Receipt files – do not request an EOIR I-485 receipt file;
- A-files – Perform "new add the A-file" into the Central Index System (CIS); and
- Deliver DACA files to work distribution. Responsible Party Codes (RPCs) are used to track the location of files at the Service Center. An NFTS barcode is placed on each shelf, box, or drawer in which DACA files are stored.

The Service Center will perform the following actions:
- Perform a Quality Assurance review on a random sample of incoming DACA files.  ROP order, proper acceptance, and correct matching data on the form compared with the CLAIMS record, will all be reviewed. Any errors will be recorded and reported back to the Lockbox service provider for process improvement steps. Corrections will be made at the Service Center.

**(b)(7)(e)**

- Initiate an automate [        ] check of the DACA requestor's name(s) and date(s) of birth; and
- Review and resolve any identified hit (performed by BCU officers).

<u>See</u> Chapter 6 for more detailed information relating to background checks.

**Biometric Capture**

The Service Center will perform the following actions:
- Compile **daily bulk scheduling** requests and send them to the ASC for SNAP scheduling; and
- Fill officer work orders, as biometric and fingerprint results post for DACA requestors.

*Continued next page*

*FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)*
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**   25

1879

# Service Center Intake, Continued

**Biometric Rescheduling**

All reschedule requests will go through the centralized rescheduling facility. The centers will be notified via a spreadsheet from the centralized rescheduling facility upon rescheduling of an original ASC appointment.

The requestor can reschedule multiple times within 87 days of the initial ASC appointment date. If the requestor fails to appear at the ASC within the 87 days, the DACA request will be denied for abandonment.

If the requestor asks for an appointment beyond 30 days into the future, the centralized rescheduling facility will send a scanned request to the Service Center for processing. The rescheduled ASC appointment date is not to exceed the 87-day window.

**Biometric No Shows**

If a requestor is originally scheduled for an ASC appointment and does not appear, the center should issue RFE DACA 130. The RFE should include other deficiencies identified during the review of the request. A written response to the RFE is not required, provided that the requestor goes to the rescheduled ASC appointment and no other evidence is requested.

The centers will be notified via a spreadsheet from the centralized rescheduling facility upon rescheduling of an original ASC appointment. The center will then hold the case for the new appointment, and if the requestor fails to appear again, or if the requestor fails to reschedule a second appointment within 87 days based on that RFE, the case will be denied for abandonment.

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1880

# Service Center Intake, Continued

| | |
|---|---|
| **Homebound Biometrics Capturing** | The ASC appointment notice directs the requestor to call the National Customer Service Center (NCSC) telephone line if they are unable to attend their biometrics appointment due to medical limitations. When contacted, the NCSC representative will ask the requestor to provide information found on his or her appointment notice. The requestor will also be asked questions about his or her request for special accommodations. If evidence is required to support the special accommodations request, the NCSC representative will explain to the requestor how to submit evidence. The NCSC will contact the designated POC at the ASC regarding the request. If the POC determines the requestor qualifies for special accommodations, the POC will then obtain information about the requestor's situation and make arrangements for the requestor's biometrics capturing.

When a requestor contacts the Centers directly for information about special accommodations, the Centers should issue DACA Call up 150C from Appendix D to inform him or her about how to request special accommodations. |
| **Officer Work Orders** | The contractor will perform the following actions:

- In accordance with local procedures, screen prints may be provided to officers to reduce the need to search systems at the point of adjudication; and
- Adjudication ready DACA files will be delivered to officers. |

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013    27

1881

# Service Center Intake, Continued

**Non-Sufficient Funds (NSF)**

_Background_

This section addresses the procedures to be used for completing the non-sufficient funds (NSF) cases. The NSF cases are identified by the Burlington Finance Center (BFC) and are listed in the NSF "New Bill Report" in the Federal Finance Management Service (FFMS) system.

For DACA, Forms I-821D and I-765 must be filed concurrently. There is no fee for Form I-821D. The $380 fee is required for Form I-765. The $85 biometrics fee is also required. Lockbox will be looking for $465, either in one check or in two checks. The I-765 fee and the biometrics fee will be bundled in C3 and listed as one fee -- $465. If the DACA requestor does not remit $465, Lockbox will reject the entire filing. Even when the proper fee has been remitted, it is possible that payment may be returned due to NSF. The NSF can occur in a combination of scenarios: the fees are paid in one check and the entire check is returned as NSF; or the fee is paid in two checks and either or both checks are returned as NSF. Failure of either fee or both fees to clear the bank, or being made good within the 14 calendar days allowed, will result in denial of Form I-821D and rejection of Form I-765. See Chapter 9 for more information on the denial.

_Retrieving the New Bill Listing Report in FFMS_

Fee payments in the form of personal checks, cashier checks, or money orders are submitted along with a DACA request. When a discrepancy is found in a payment, such as stale, dated, or without sufficient funds, etc., the bank will notify the Burlington Finance Center (BFC) in Vermont. These non-payment checks or money orders are referred to as bounced checks. The BFC will compile all the bounced checks and enter the data into the FFMS system, create an invoice number for each bounced check case, and place them on the bounced check "New Bill Report." The Service Center Records Divisions, on a daily basis, access this data via the FFMS website to download a bounced check "New Bill Report."

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1882

# **Service Center Intake**, Continued

| | |
|---|---|
| **Non-Sufficient Funds (NSF)** (continued) | *Invoicing the Payee* |

Along with listing the case in FFMS, the BFC will also mail an invoice to the payee of the fee, requesting that the new payment be sent to them and that a $30 NSF charge also be paid. The $30 NSF charge is assessed on each bounced check.

*Notifying the DACA Requestor*

The Service Center will mail an informational notice on the I-797C to the DACA requestor regarding the specific NSF payment. In this case, the DACA requestor will receive the NSF notice, regardless of whether they are the payee or not. In this manner, both the payee and the DACA requestor receive notification if they are different parties.

*Placing Case in Hold Status*

To reflect the hold status of the case, the action codes will be recorded in C3, are as follows:

> AJA – CHECK BOUNCED, CASE NOT YET COMPLETED and
> IWA – CHECK DEFICIENCY NOTICE 1 SENT

Place file on a hold shelf.

*Completion procedure when case is paid*

The bounced check paid cases are identified by Burlington Finance Center and are listed in the bounced check "Paid Activity Report" in the FFMS system. The Service Center Records Divisions access this data daily via the FFMS website to download the bounced check Paid Activity Report.

*Continued on next page*

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**   29

1883

# Service Center Intake, Continued

| | |
|---|---|
| **Non-Sufficient Funds (NSF)** (continued) | *System Update Steps* |

The CLAIMS GUI I-765 record will be accessed.  The new paid date from the Paid Activity Report will become the new Received Date in the record.

The remittance screen will be updated with the action code:
ABB, FEE COLLLECTED ELSEWHERE

A modified receipt notice will be printed and mailed reflecting the new Received Date. The action code recording this is: IAB, MODIFIED RECEIPT NOTICE 1 SENT

The hold status will be removed from the record.  The action code recording this is: AKA, BOUNCED CHECK CORRECTED ON CASE NOT YET COMPLETED

The case is now ready to proceed again through the pre-adjudication process. Schedule the biometrics appointment in SNAP and place the file on the biometrics hold shelf.

*Mailing the Receipt notice*

The receipt notice states:
"This is to notify you that we have received full payment for the above referenced application or petition and processing has resumed.  Your filing date has been adjusted to reflect the receipt of payment.  We will notify you separately of our decision on the application or petition."

*Completion procedure when case remains unpaid*

Unless fee exempt, the DACA requestor has 14 calendar days from the invoice date to submit proper payment by credit card, money order or cashier's check to the BFC.  The proper payment is $465 -- $380 for the Form I-765 and $85 for the biometrics fee.  If the $465 was paid in two checks, either check exceeding the 14 calendar days allowed to correct NSF status will result in rejection of Form I-765.

- Pull the files that have been staged on the bounced check hold shelf for over 14 days and verify the case in the CLAIMS system and determine the bounced check "paid" status in FFMS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1884

# Service Center Intake, Continued

**Non-Sufficient Funds (NSF)** (continued)

## The FFMS "Status" box indicates "OPEN"

The "Open" status means the BFC has not received the bounced check payment in full from the debtor. After the 14-day hold on the bounced check hold shelf, a C3/GUI application/petition shall be pulled from the hold shelf for review. If it has been over 14 days past due and the case status shows "Open" in FFMS and there is no indication of a "Change of the Due Date" made by the BFC in the in the Customer Log (RM043) screen, reject the Form I-765 as "untimely paid."

## Recording the Rejection

The case is accessed in C3 and the action code recorded is: ALA, BOUNCED CHECK NOT CORRECTED, REJECTED

Form I-765 form will be closed by the Records Analyst in this manner:
In the "Action Block" of the application, stamp in red or black ink **"REJECTED Bounced Check."**

A memorandum is printed from a template in MS Word recording the following data:

- Today's Date
- Form Type
- A# (if available)
- Receipt #
- Date Rejected
- Invoice #
- Amount
- Debtor's Name (Optional)

Place this memo on the top of the right side of the DACA A-file.

---

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES) —
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1885

# Service Center Intake, Continued

| | |
|---|---|
| **Non-Sufficient Funds (NSF)** (continued) | *Mailing the Rejection* |

A rejection notice printed on I-797 is generated from C3 and mailed to the requestor. It reads:

> We previously notified you that the payment for the filing fee in the above case was returned. The Burlington Finance Center did not receive payment within 14 days of the invoice.

> Your application or petition has been rejected as improperly filed. Any previously assigned priority or processing date is no longer applicable. A new application or petition must be filed, and a new fee is required, if you wish to pursue the benefit. Personal Checks will not be accepted.

*Disposition of the I-821D*

After processing the rejection for Form I-765 due to the NSF, on **the same day**, route the A-file to a DACA Supervisory Immigration Services Officer for issuance of a denial for the Form I-821D.

The denial should be issued per the instructions in Chapter 9 of this SOP.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1886

# Chapter 6: Background and Security Checks

| | |
|---|---|
| **Introduction** | Background and security checks will be conducted for all DACA requests. As part of the background check, USCIS requires that specific security checks or a combination of checks are completed for Forms I-821D and I-765. The background checks refer to the analysis of the results of the security checks or any other identified concern relating to national security or public safety and the actions required to resolve the concern. The resolution must be conducted in accordance with current NaBISCOP and CARRP policies. |

Fraud related concerns that arise during the course of background and security checks should be addressed according to the March 2011 SOP, 2008 ICE/USCIS MOA and Chapter 8, Section K of this SOP. Fraud related issues will be referred to CFDO.

(b)(7)(e)

The following specific background and security checks apply to DACA requestors:

- [ ] and
- FBI Fingerprint Checks (requestors aged 14 and older).

| | |
|---|---|
| **Responsibility** | All DACA requestors with national security issues, [ ] hits, or other criminality concerns will be processed by the BCU DACA team per the following guidance: |

- **National Security:** All [ ] hits with national security issues will be resolved through the established CARRP process. <u>All cases with National Security concerns will be resolved and adjudicated by the CARRP officer attached to the BCU DACA Team.</u>

(b)(7)(e)

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES).
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1887

# Background and Security Checks, Continued

**Responsibilit**
(continued)

(b)(7)(e)

| System Updates for DACA File Movement Into and Out of BCU | For reporting purposes, DACA file movement into and out of the BCU will require the following updates in C3: |
| --- | --- |

- "Sent to Background Check Unit (BCU) for Resolution [ ] when sending a DACA request to the BCU; and
- "Received from Background Check Unit (BCU) with Resolution" [ ] when receiving a DACA request from the BCU for final processing.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1888

# Background and Security Checks, Continued

| | |
|---|---|
| **Overview of Background Check Process** | Appendix C illustrates a high level overview of the background check process once potentially derogatory information has been identified as a result of the security checks, or from other sources. |

(b)(7)(e)

## A. Procedures for confirming a match

USCIS personnel must:

- Determine if the subject of the derogatory information relates to the requestor; and
- Compare the information from the security check or other source to the biographic, biometric information, and physical descriptors about the individual.

USCIS personnel may use any combination of available identifiers, to assist in the determination. While USCIS officers primarily rely on best judgment and experience in determining whether the information relates to the individual, USCIS personnel should consult with a supervisor if there is any uncertainty as to whether the information relates to the DACA requestor. If there continues to be any uncertainty about the match, supervisors may work through their chain of command and with HQ, if necessary.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1889

# Background and Security Checks, Continued

| | |
|---|---|
| Overview of Background Check Process (continued) | **B. Triage Information** |

### 1. Conclusive Match

Once it is determined that the information relates to the individual, USCIS personnel must determine if the results fall into the following categories, which require special processing:

- National Security;
- EPS or other criminal cases; or
- Articulated immigration Fraud.

Criminal hits, which involve a violation of U.S., state, or local criminal law, but do not rise to the level of an EPS concern, as defined in the November 7, 2011, NTA memorandum, impact each case differently and should be considered during the adjudication process to determine if such activity is germane to the request for consideration of deferred action for childhood arrivals. Criminal activity occurring outside of the United States (including foreign convictions) that may be revealed during routine background checks or which the requestor may have disclosed on the deferred action request, factor into the evaluation of whether the requestor poses a public safety concern, under the totality of the circumstances.

(b)(7)(e)

### 2. Inconclusive Match

When USCIS officers are unable to confirm the match after exhausting available electronic systems searches and other resources, personnel must consult their chain of command to determine the appropriate follow-up action. In some instances, [ ] an RFE to confirm the match, or other appropriate action may be required. USCIS personnel must then document the hit, include a statement in the Resolution Memorandum or other memoranda, as required, explaining the inconclusive nature of the match determination, the actions taken to resolve the hit, and refer the case to the appropriate unit or field office to confirm the match. If USCIS personnel are still unable to confirm the match, refer the case through the chain of command.

### C. Resolve Concern

Resolution may require a variety of activities to be completed by the BCU which include, but are not limited to: [ ]

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1890

# Background and Security Checks, Continued

**Overview of Background Check Process (continued)**

Deconfliction is the coordination between USCIS and another governmental agency or record owner to ensure that planned adjudicative activities (e.g., interview, request for evidence, site visit, decision to grant or deny, issue an NTA, and the timing of such) do not compromise or impede an ongoing investigation or other record owner interest.

**D. Document the Resolution**

Each hit requires documentation by the BCU DACA Team member of any resolution. Review the specific information for each background and security check for more information on documenting the resolution.

**E. Adjudication**

Once the NS/EPS/other criminal concern has been resolved, the BCU DACA ISO should proceed with adjudication.

(b)(7)(e)

USCIS will conduct [ ] batch queries on the primary names and DOBs on all DACA requests within 15 calendar days of initial receipt. The objective of

*Continued on next page*

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1891

# Background and Security Checks, Continued

(continued)

Officers must determine whether the result of a security check relates to the subject or does not relate (DNR). Officers review and resolve security checks and complete the background checks. For _____ procedures, search criteria and best practices, refer to the current NaBISCOP policy.

(b)(7)(e)

The following items, if present, must be reviewed in the DACA A-file for name and DOB combinations and aliases, and require a _____ query:

- Form I-821D;
- Form I-765;
- All supporting documents; and
- Any other documents in the A-file relating to the DACA request including, but not limited to the following:

    - Passports;
    - Visas;
    - Border Crossing Cards (BCC);
    - Forms I-94;
    - Birth Certificates;
    - Marriage Certificates;
    - Divorce Decrees;
    - Diplomas/Academic Transcripts;
    - Student Identification Cards;
    - Military Identification Cards;
    - Driver's Licenses;
    - Social Security Cards; or
    - Business/Membership Cards.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) – LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1892

(b)(7)(e)

## **Background and Security Checks,** Continued

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Version August 28, 2013   39

1893

# Background and Security Checks, Continued

**Resolution Memorandum**

The resolution memorandum is the formal documentation of the reconciliation of a related hit. This is a mandatory action that must be completed before rendering a final adjudicative decision. Before completing the adjudication, the officer should ensure that each resolution memorandum completely resolves the hit. For a related hit, a separate resolution memorandum must be completed for each subject with a related hit and each file containing a related hit. For procedures and formats for the resolution of related hits, refer to the current NaBISCOP policy.

**FBI Fingerprint Check**

The FBI Fingerprint Check provides summary information of an individual's administrative or criminal record within the United States. The FBI Fingerprint Check is conducted through the Integrated Automated Fingerprint Identification System (IAFIS). The IAFIS is a national fingerprint and criminal history system maintained by the FBI's Criminal Justice Information System (CJIS) Division. State, local, and Federal law enforcement agencies submit fingerprints and corresponding administrative or criminal history information to IAFIS. Participation by state and local agencies is not mandatory, so the FBI Fingerprint check does not contain records from every jurisdiction. The information contained in the record is obtained using prior fingerprint submissions to the FBI related to arrests and, in some instances, Federal employment, naturalization, or military service.

(b)(7)(e)



Issues of criminality arising from an [ ] handling procedures, and adjudication of the case based on the [ ] are addressed more fully in Chapter 8, Section G of this SOP.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1894

## **Background and Security Checks,** Continued

| | |
|---|---|
| **FBI Fingerprint Check Procedures** | All individuals filing a DACA request will be scheduled for biometrics capture (photo, fingerprints, and signature) at an ASC regardless of whether biometrics were captured for the requestor from a previous filing with USCIS within the last 15 months.  DACA requestors under the age of 14 will have the press print captured instead of full fingerprints. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1895

# Chapter 7: DACA Overview

| | |
|---|---|
| **Filing** | All individuals requesting DACA must file their request individually and satisfy the DACA guidelines in their own right; USCIS will not consider deferring removal action of an individual under DACA based on their familial relationship to someone who has received DACA. There is no derivative DACA. |
| **Commonwealth of the Northern Mariana Islands (CNMI) Not Eligible** | The CNMI is part of the United States and is not excluded from this process. However, because of the specific guidelines for DACA, individuals who have been residents of the CNMI are in most cases unlikely to qualify for the program because they must, among other things, have come to the United States before their 16th birthday and have resided continuously in the United States since June 15, 2007.

Under the Consolidated Natural Resources Act of 2008, the CNMI became part of the United States for purposes of immigration law only on November 28, 2009. Therefore, entry into, or residence in, the CNMI before that date is not entry into, or residence in, the United States for purposes of DACA.

USCIS has used parole authority in a variety of situation in the CNMI to address particular humanitarian needs on a case-by-case basis since November 28, 2009. If an individual lives in the CNMI and believes that he or she meets the guidelines for DACA except that his or her entry and/or residence to the CNMI took place entirely or in part before November 28, 2009, USCIS will consider the situation on a case-by-case basis for a grant of parole. Individuals who believe this situation applies to them are instructed to make an appointment through INFOPASS with the USCIS Application Support Center in Saipan to discuss their case with an immigration officer. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1896

# DACA Overview, Continued

**Initial DACA Package**

A complete DACA package must include the following items:

1. Form **I-821D**, Consideration of Deferred Action for Childhood Arrivals, properly filed with proper signature.
2. Form **I-765**, Application for Employment Authorization with **I-765 WS**, properly filed with proper signature, the base filing fee, and the biometric services fee. The fees for Form I-765, and the biometric services fee are not eligible for fee waiver consideration.*
3. Evidence of identity to include date of birth, which would establish compliance with the upper and lower age limits.
4. Evidence of entry prior to the requestor's 16th birthday.
5. Evidence of continuous residence since June 15, 2007, up to the date of filing.
6. Evidence of unlawful status on June 15, 2012, if admitted or paroled.
7. Evidence of presence in the United States on June 15, 2012.
8. Evidence that any absences from the United States during the required period of continuous residence were brief, casual, and innocent absences.
9. Evidence that the requestor is currently in school at the time of filing, graduated or obtained a certificate of completion from a U.S. high school, public or private college, or university or community college, obtained a general educational certificate (GED) or other equivalent State-authorized exam in the United States, or is an honorably discharged veteran of the Coast Guard or U.S. Armed Forces.

*If the requestor has been determined exempt from the fee. The DACA package must be accompanied by the exemption approval letter from USCIS Headquarters.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1897

## DACA Overview, Continued

| | |
|---|---|
| **DACA Guidelines** | An individual meeting the following guidelines may be favorably considered for DACA if, under the totality of the circumstances, he/she: |

1. Entered without inspection before June 15, 2012, or his or her lawful immigration status expired as of June 15, 2012. For DACA purposes, the phrase "in unlawful status as of June 15, 2012" means that he/she never had a lawful immigration status on or before June 15, 2012, or any lawful status or parole that he/she obtained prior to June 15, 2012 had expired before June 15, 2012;

2. Was under the age of 31 as of June 15, 2012 (Born after June 15, 1981 so was not age 31 or older on June 15, 2012);

3. Came to the United States prior to reaching his/her 16th birthday;

4. Has continuously resided in the United States since June 15, 2007, up to the date of filing;

5. Was present in the United States on June 15, 2012, and at the time of making his/her request for consideration of deferred action with USCIS;

6. Is currently in school at the time of filing, has graduated or obtained a certificate of completion from a U.S. high school, has obtained a GED certificate or other equivalent State authorized exam in the United States, or is an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces; and

7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)—
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Chapter 8: Adjudication of The DACA Request

## A. Procedural Overview

| | |
|---|---|
| **Evaluating the Evidence** | When evaluating the evidence submitted in support of a request for DACA consideration, refer to the discussion of the different types of evidence, the weight to be given to such evidence, and the standards of proof, all of which are discussed in Chapter 1. |
| **Request for Evidence (RFE) versus Notice of Intent to Deny (NOID)** | Officers will **NOT** deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID). |
| | If additional evidence is needed, issue an RFE whenever possible. |
| | When an RFE is issued, the response time given shall be 87 days. A list of DACA RFE call-ups and the actual templates can be found in Appendix D. |
| | When a NOID is issued, the response time given shall be 33 days. |
| **Unobtainable A-files** | After requesting an A-file from the FCO, there may be occasions when there is no response or the file cannot be released (e.g., pending interview, etc.). After three unsuccessful attempts to obtain the file from a field office via CIS or from ICE, adjudicate the DACA filing from the T-file. |
| | If the A-file is with ICE, the center should send three requests via CIS using standard procedures. However, if the A-file is not received from ICE within the 30 days allowed after the initial request, the center's Records Section should also send a manifest containing a list of the A-files requested from ICE to the designated ICE e-mail box, which has been created specifically for the DACA workload. The center's Records Section has this e-mail box and will designate a primary and an alternate Point of Contact who will send the manifest. |

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)—
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1899

**A-File Requests from USCIS Field/Asylum Office**

Centers may release an A-file to a USCIS Field Office or Asylum Office without SCOPS approval whenever the A-file request is based upon adjudication of a pending of a pending Form I-589, Form I-485 (or motion to reopen/reconsider I-485), or Form N-600 located within the requesting office <u>unless</u> the requestor's case contains novel, complex, or sensitive information (i.e., national security concern, currently in detention, etc.).

In these instances, Centers are instructed to notify SCOPS of the novel, complex, or sensitive information within the case and wait for approval to release the A-file.

Whenever the A-file is released to a USCIS Field Office or Asylum Office, Centers will hold adjudication of the Form I-821D and I-765 and send the A-file with the DACA forms pending.  Prior to release, Centers should coordinate with their Records Division to identify a POC within the requesting office to inform the POC that the A-file must be returned as soon as final adjudication is rendered so that appropriate action can be taken on the DACA forms.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1900

**CITRIX/ EOIR I-485**

(b)(7)(e)

Eligible individuals in removal proceedings can apply for various immigration benefits. In order to file their applications with the Immigration Court, these individuals must file a copy of the Form I-485 with the corresponding fee with the Texas Service Center. These forms look like regular filings; however the EOIR I-485 appears in CLAIMS with an "X" in the current status field as shown in the Image A below. The Texas Service Center will issue a receipt notice to the applicant and retain the copy of the form for a period of six months. Centers should not attempt to request this copy. Once an EOIR I-485 has been identified, Centers should check the Central Index System (CIS) to verify if the Immigration Judge rendered a decision. See Image B. If Lawful Permanent Status was not granted, a pending Form I-821D should be adjudicated on its merits even if the case remains open in CITRIX. If status was granted, Centers will deny the case using DACA 501 from Appendix K.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013    47**

1901

| | |
|---|---|
| **Duplicate Filings** | If the first request was approved before the second request was filed, please send a Request for Adjudicative Guidance to the HQSCOPSDACA mailbox. |

If the first request was denied before the second request was filed, consider the second request on its merits.

If the first request was still pending when the second request was filed, the ISO should review both requests and supporting documentation. If it is the same requestor and there are no articulable elements of fraud, then the ISO should take the following action:

a) If after reviewing both requests, only one request is approvable and there is no derogatory information in the other request that would otherwise disqualify the requestor:

    1. Approve the request that is approvable.

    2. Deny the other request using the denial template entitled "USCIS Already Deferred Action."

b) If after reviewing both requests, both requests are approvable:

    1. Approve the request that was received first.

    2. Deny the other request using the denial template entitled "USCIS Already Deferred Action."

c) If after reviewing both requests, neither request is approvable:

    1. Take action on each case as separate requests based on the merits of each case (i.e., RFE if insufficient evidence, NOID if clearly does not meet guidelines, etc.).

    2. If one or both requests become approvable after the RFE/NOID response is received, follow the guidance listed in a) or b) above for those scenarios.

    3. If neither request becomes approvable, deny both requests using the appropriate checkbox or paragraph within Appendix F or Appendix K.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# B. System Searches

| | |
|---|---|
| **Mandatory System Searches and Screen Prints** | Officers are required to view the screens listed below. If screen prints are provided for officer review, include them on the non-record side of the DACA requestor's A-file or T-file. |

> 9101    A# Search
> 9202    CIS Alias (AKA) Name Display (If there is no information on this
>          screen, a screen print is not needed)

(b)(7)(e)

| | |
|---|---|
| **Other Helpful System Searches** | The following system searches may be useful in adjudicating DACA requests. If any of these screens are printed, they should be placed on the non-record side of the requestor's A-file or T-file. |

> 9102      Sounds Like Search
> 9103      Exact Name Search
> 9104      Alias (AKA) Name Search
> 9106      Sounds Like Name With Date of Birth
> AR11      Alien Change of Address Query Request
> CLAIMS    Claims Mainframe
> RAPS      Refugee, Asylum, and Parole System (CSTA, CHIS, EOIR
>           Screen Prints)
> BBSS      Benefits Biometric Support System Online

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1903

## C. Determining if Guidelines are Met

| | |
|---|---|
| **Introduction** | Individuals may be considered for DACA upon showing that they meet the prescribed guidelines by a preponderance of the evidence. The evidentiary standards are discussed in Chapter 1. If additional information is needed for DACA consideration, issue an RFE. Appendix D has a list of DACA RFE call ups. |

**Identity**

Acceptable evidence may consist of, but is not limited to:

- A passport,
- A birth certificate accompanied by some type of photo identification,
- Any national identity document from the requestor's country of origin bearing the requestor's photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing the requestor's name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards);
- Any school-issued form of identification with photo;
- Military identification document with photo
- State-issued Photo ID showing date of birth; or
- Any document that the requestor believes is relevant.

The Matricular Consular or other form of consular identification issued by a consulate or embassy in the United States will be accepted as proof of identity.

Expired documents are acceptable.

If identity is not established, then issue RFE DACA 100 call up from Appendix D.

**Age at Time of Filing**

If the DACA requestor is not in removal proceedings, does not have a final removal order, or does not have voluntary departure, he/she is to be age 15 or older to file the DACA request. To determine the requestor's age at the time of filing, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

If the DACA requestor is in removal proceedings (including cases that have been administratively closed), which includes having an order of voluntary departure after proceedings were initiated or a final order, he/she may be under age 15 at the time of filing the DACA request.

Regardless of whether the DACA requestor is in removal proceedings or not, he/she was born after June 15, 1981 and meets the remaining guidelines in the Secretary's memorandum.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   50

1904

## C. Determining if Guidelines are Met, Continued

**Arrived in the United States Prior to 16th Birthday**

The Secretary's memorandum states as one of the guidelines to be met before an individual is considered for DACA is that he/she arrived in the United States prior to reaching his/her 16th birthday. To determine the date of arrival, review the response to Part 1, questions 13 through 17 of Form I-821D for the date and place of initial entry into the United States and status at entry. In addition, review question 6 in Part 1 and the requestor's birth certificate or other acceptable evidence establishing the requestor's date of birth.

If the requestor indicates a status in response to question 15 of Form I-821D, but does not provide the I-94# or a copy of the I-94 or any other document, such as a copy of his/her passport showing the date of initial entry, perform a systems check (SQ94/Arrival Departure Information System (ADIS)) to validate the date of entry, if needed.

If the requestor entered "no status" in response to question 15 of Form I-821D, or if the requestor indicates that he/she arrived with a status or was paroled into the United States, but this cannot be validated through a systems check, review the totality of the evidence submitted to establish whether the individual entered before age 16.

If the totality of the evidence does not establish that the requestor arrived in the United States before his/her 16th birthday, issue RFE DACA 103 call up from Appendix D for evidence of the date of arrival.

**Present in the United States on June 15, 2012**

The Secretary's memorandum states as one of the guidelines to be met before an individual may be considered for DACA that the individual was present in the United States on June 15, 2012. To determine if the requestor was present in the United States on June 15, 2012, review the responses to Part 1 regarding the date of entry, status at entry and date authorized stay expired, and the responses to the questions in Part 2 regarding all absences from the United States since June 15, 2007. Review the totality of the evidence submitted. The evidentiary standards are discussed in Chapter 1. If the requestor arrived before June 15, 2007, and there is no indication of any departure and the evidence submitted establishing his/her presence in the United States on June 15, 2012 is credible, then this guideline has been met.

If a given document does not specifically refer to June 15, 2012, review the dates on all the documentation submitted in its totality to establish presence in the United States on that date.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1905

## C. Determining if Guidelines are Met, Continued

**Present in the United States on June 15, 2012** (continued)

The following are examples of acceptable evidence to establish presence in the United States on June 15, 2012. This list of examples is not exhaustive.

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | <ul><li>Pay stubs;</li><li>W-2 Forms;</li><li>Federal, State, or local income tax returns; or</li><li>Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.</li></ul><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.<br><br>Such letters must include: **(1)** the requestor's address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** a brief summary of the requestor's duties with the company. |
| Receipts, Bills, Letters | <ul><li>Rent receipts;</li><li>Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or</li><li>Receipts or letters from companies showing the dates during which the requestor received service.</li></ul> |
| School Records | Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name of school(s) and the period(s) of school attendance. |
| Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records should show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1906

## C. Determining if Guidelines are Met, Continued

| Present in the United States on June 15, 2012 (continued) | Evidence | Acceptable Documentation |
|---|---|---|
| | Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance in the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).<br>• Documentation showing membership in community organizations (e.g. Scouts). |
| | Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| | Additional Documents | Additional documents to support the requestor's claim may include:<br>• Money order receipts for money sent in or out of the country;<br>• Passport entries;<br>• Birth certificates of children born in the United States;<br>• Dated bank transactions;<br>• Correspondence between the DACA requestor and other persons or organizations;<br>• U.S. Social Security card;<br>• Selective Service card;<br>• Automobile license receipts, title, vehicle registration, etc.;<br>• Deeds, mortgages, contracts to which the DACA requestor has been a party;<br>• Tax receipts;<br>• Insurance policies, receipts, or postmarked letters; and/or<br>• Any other relevant document. |

If the totality of the evidence does not establish that the requestor was present in the United States on June 15, 2012, issue RFE DACA 105 call up from Appendix D for additional evidence.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1907

## C. Determining if Guidelines are Met, Continued

**Unlawful Immigration Status on June 15, 2012**

To be considered for DACA, the requestor is to demonstrate that he/she was in an unlawful status on June 15, 2012. For DACA purposes, the phrase "in unlawful status" means that the requestor never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that he/she obtained prior to June 15, 2012, had expired before June 15, 2012.

To determine whether the requestor was in an unlawful status on June 15, 2012, review the responses to Part 1 of Form I-821D regarding date of entry, status at entry, and any date that authorized stay or parole expired, if such authorized stay or parole existed. If the requestor was admitted for duration of status or for a period of time that extended past June 14, 2012, but violated his/her immigration status (e.g., by engaging in unauthorized employment, failing to report to his/her employer, or failing to pursue a full course of study) before June 15, 2012, USCIS will not consider his/her case for DACA unless the Executive Office for Immigration Review terminated his/her status by issuing a final order of removal against him/her before June 15, 2012.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1908

## D. Determining if Guidelines are Met, Continued

Examples of documents that may show the requestor's immigration status on June 15, 2012 include, but are not limited to the following:

- I-94/I-95/I-94W Arrival/Departure Record showing the date the requestor's authorized stay expired;
- If the requestor has a final order of exclusion, deportation, or removal issued on or before June 15, 2012, a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing the requestor into deportation, exclusion, or removal proceedings;
- Any other document that is relevant to show that the requestor lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

If needed, officers should conduct a systems check (i.e., to determine if a record exists) for the DACA requestor that will help in establishing his/her unlawful status on June 15, 2012.

If the evidence submitted does not establish that the requestor was in an unlawful status on June 15, 2012, issue RFE DACA 104 call up from Appendix D for additional evidence.
An individual who had Temporary Protected Status (TPS) on June 15, 2012, will not be considered for deferred action for childhood arrivals.

**Not Age 31 or Older on June 15, 2012**

The Secretary's memorandum provides that one of the guidelines to be met before an individual is considered for DACA is that the individual was not age 31 or older on June 15, 2012. In other words, the DACA requestor was born after June 15, 1981. To determine whether the requestor was born after June 15, 1981, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

If there is no evidence establishing the requestor's date of birth, issue DACA RFE 140 call up from Appendix D.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# C. Determining if Guidelines are Met, Continued

**Continuous Residence (CR)**

The individual requesting DACA is to submit evidence that he/she has resided continuously in the United States since June 15, 2007, or earlier, and up to the present time.  Present time means the date of filing.

If the answers to any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank or if page 3 of the form is missing and no documentation was submitted, or the documentation submitted does not reasonably show when the requestor arrived and that the requestor meets the continuous residence (CR) guideline, issue an RFE.  Include a copy of the original Form I-821D (if page 3 is missing, also include a blank page 3) with the RFE asking the requestor to provide the missing answers and to provide documentation that may establish CR.

The following are examples of acceptable evidence of  (CR).  This list of examples is not exhaustive.

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | • Pay stubs;<br>• W-2 Forms;<br>• Federal, State, or local income tax returns; or<br>• Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.<br><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization is to appear on the form or letter, as well as relevant dates. Letters from employers are to be signed by the employer and are to include the employer's contact information.<br><br>• Such letters are to include: **(1)** the requestor's address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; **(4)** and a brief summary of the requestor's duties with the company |
| Receipts, Bills, Letters | • Rent receipts;<br>• Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or<br>• Receipts or letters from companies showing the dates during which the requestor received service. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)<br>This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1910

# C. Determining if Guidelines are Met, Continued

| Continuous Residence (CR) (continued) | Evidence | Acceptable Documentation |
|---|---|---|
| | School Records | • Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name(s) of the school(s) and periods of school attendance. |
| | Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records are to show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |
| | Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance in the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).<br>• Documentation showing membership in community organizations (e.g. Scouts). |
| | Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| | Additional Documents | Additional documents to support the requestor's claim may include:<br>• Money order receipts for money sent in or out of the country;<br>• Passport entries;<br>• Birth certificates of children born in the United States;<br>• Dated bank transactions;<br>• Correspondence between the DACA requestor and other persons or organizations;<br>• U.S. Social Security card;<br>• Selective Service card;<br>• Automobile license receipts, title, vehicle registration, etc.;<br>• Deeds, mortgages, contracts to which the DACA requestor has been a party;<br>• Tax receipts;<br>• Insurance policies, receipts, or postmarked letters; and/or<br>• Any other relevant document. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1911

# C. Determining if Guidelines are Met, Continued

**Brief, Casual and Innocent (BCI) Absence on CR**

A brief, casual, and innocent absence from the United States will not interrupt the DACA requestor's continuous residence. A departure made before August 15, 2012, will not be disqualifying if the departure was "brief, casual, and innocent." Travel occurring after August 15, 2012, will not be considered brief, casual, and innocent, unless removal has been deferred under DACA and advance parole have been granted.

If the requestor indicated in Part 2 of the Form I-821D that he/she has been absent before August 15, 2012, review the reason for the absence and any evidence submitted to show that it was brief, casual, and innocent.

Examples of evidence establishing that an absence was brief, casual, and innocent and therefore did not interrupt the requestor's continuous residence include, but are not limited to:

- Plane or other transportation tickets or itinerary showing the travel dates;
- Passport entries;
- Hotel receipts showing the dates the requestor was abroad;
- Evidence of the purpose of the travel (e.g., the requestor attended a wedding or funeral);
- Copy of any advance parole documents; or
- Any other relevant/probative evidence that could support a brief, casual, and innocent absence, as that term is defined in the definitions section of this SOP.

**Note that a departure made while under an order of voluntary departure or deportation, exclusion, or removal is not brief, casual, and innocent.**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1912

## C. Determining if Guidelines are Met, Continued

**Effect of Travel Outside of the United States After August 15, 2012**

- Travel outside the United States after August 15, 2012 and before the DACA request is filed:
  - The departure interrupts a requestor's continuous residence in the United States. The requestor cannot meet the continuous residence guideline for DACA and removal action should not be deferred.
- Travel outside the United States while the DACA request is pending:
  - The departure shall be deemed an abandonment of the DACA request; therefore, the request will be denied for abandonment.
- Travel outside the United States after removal action has been deferred under DACA, but without advance parole:
  - Deferred action under DACA is terminated automatically.

**CR/BCI Not Met**

If CR is not met, issue the following RFE DACA 101 call up from Appendix D.

If no documentation is submitted to show that a departure was brief, casual, and innocent, or the documentation is not sufficient, issue the following RFE DACA 102 call up from Appendix D.

If routine systems checks, documentation submitted with the DACA request, or evidence in the A-file indicate that a departure was made while under an order of voluntary departure or deportation, exclusion, or removal, issue a Notice of Intent to Deny (NOID) with the opportunity for the requestor to rebut the derogatory information. See Appendix E for NOID Template.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013    59

1913

# C. Determining if Guidelines are Met, Continued

**Education**

To meet the educational guideline for DACA consideration, a DACA requestor may show that he/she is currently in school, has graduated or obtained a certificate of completion from a U.S. high school or has a recognized equivalent of a high school diploma under State law, public or private college, or university or community college, or has obtained a General Educational Development (GED) certificate or equivalent State-authorized exam in the United States. Note that evidence of enrollment in on-line courses is acceptable. When reviewing such evidence, the completeness, credibility, relevance, and sufficiency are germane and take precedence over the electronic medium over which the education was received.

Each component of this guideline is discussed in more detail below.

**Currently In School**

To be considered "currently in school," a requestor is to be enrolled, at the time of filing, in:

- a public or private elementary school, junior high or middle school, high school, or secondary school;
- an education, literacy, or career training program (including vocational training or an English as a Second Language (ESL) course) that is designed to lead to placement in post-secondary education, job training, or employment;
- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under State law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other equivalent State-authorized exam; or
- a public or private college or university or a community college;

For ease of reading, education, literacy, and career training programs will be referenced collectively as "alternative educational programs." When the DACA requestor seeks to meet the "currently in school" component of the educational guideline based on enrollment in an alternative educational program, the requestor's current enrollment in that program is to be in preparation for the requestor's anticipated subsequent placement in post-secondary education, job training, or employment (new employment or advancement within existing employment). Evidence of such subsequent placement is not required.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1914

## C. Determining if Guidelines are Met, Continued

**Currently In School**
(continued)

A DACA requestor who is enrolled in a personal enrichment class (such as arts and crafts) or who is enrolled in a recreational class (such as canoeing) is not in an alternative educational program and thus not considered to be "currently in school" for DACA purposes.

In determining whether enrollment in an alternative educational program meets the "currently in school" component of the educational guideline for DACA consideration, first, review the documentary evidence provided to see whether the alternative educational program is an education, literacy, or career training program (including vocational training and ESL) and whether it is publicly funded in whole or in part (State, Federal, county, or municipal funds.) If it is an alternative educational program and it receives public funding, no further evaluation is required. As long as the information is provided by the school/program, it is not necessary to RFE for copies of the actual funding documents. If this information is not provided, the RFE should request the information, but not require copies of the actual funding documents. If it is a literacy program that is run by a non-profit entity, no further evaluation is required with respect to the first part of the analysis. If, however, it is an alternative educational program that does not receive any public funding and it is not a non-profit literacy program, then officers are also to assess whether the program is of demonstrated effectiveness and are to look for such evidence, as described in more detail below.

Some of the ways a DACA requestor can meet the "currently in school" component of the educational guideline for DACA consideration and the different types of evidence that can be submitted, depending on the type of program in which he/she is enrolled, are discussed separately below. The examples and types of evidence listed here are illustrative, and not exhaustive.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1915

| **Public or Private Elementary, Junior High/Middle School, or High School/Secondary School** | **Currently in School** |
|---|---|

**Public or Private Elementary, Junior High/Middle School, or High School/Secondary School**

Evidence of enrollment in a public or private elementary, junior high/middle school, or high school/secondary school may include, but are not limited to, copies of:

- **Accepted for Enrollment:** Evidence of acceptance for enrollment may include, but is not limited to:
    - An acceptance letter on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance letter is to include the name and address of the school, the requestor's grade level, and the date that the classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
    - A copy of the current tuition bill;
    - A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
    - Any other relevant evidence.

- **Already Attending Classes:** For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to, current school registration cards, current transcripts, report cards, and progress reports. The document(s) presented are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level. A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

A claim of homeschooling is not necessarily an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation. Even if the file contains documents including transcripts, a diploma or a certificate of completion as a result of homeschooling, the case must be referred to CFDO for further research and evaluation prior to final adjudication. CFDO referrals on "homeschooling" are only mandatory prior to adjudication if the homeschooling is the basis for meeting the education guideline; if not, then the case can be processed normally and is then referred to the CFDO after final adjudication for tracking purposes.

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)—
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1916

## C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **Public or Private College or University, or Community College** | **Currently in School** <br> **Public or Private College or University, or Community College** <br> Evidence of enrollment in a public or private college or university or a community college may include, but is not limited to, copies of: |

- **Accepted for Enrollment:** Evidence of acceptance for enrollment may include, but is not limited to:
    - An acceptance package or other related material on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance package or other related material is to include the name and address of the school, the requestor's grade level or class year, and the date or term when the classes are scheduled to commence, and is to be accompanied by evidence that the student has registered for class. In addition, the acceptance package or other related material is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
    - A copy of the student's current tuition bill;
    - The student's current class schedule containing the list of courses, and the day and time of each class; or
    - Any other relevant evidence.

- **Already Attending Classes:** For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to, current school registration cards, current transcripts, report cards, and progress reports. The submitted document(s) are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level or class year. A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

It is not necessary to RFE for a copy of the high school diploma or GED, unless there are articulable reasons to question the evidence of acceptance and enrollment or attendance in a public or private college or university, or community college.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) LAW ENFORCEMENT SENSITIVE (LES) <br> This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1917

# C. Determining if Guidelines are Met, Continued

**General Education Development (GED)**

<u>Currently in School</u>

**GED**

If a DACA requestor claims that he/she is enrolled in a course of study to pass a GED exam or other equivalent State-authorized exam, the DACA request is to include a letter or other documentation from an authorized representative of the program, that includes information such as:

- The requestor's name and date of enrollment;
- The duration of the program and expected completion date;
- Whether the course of study is for a GED exam or other equivalent State-authorized exam;
- The program's source of public funding (Federal, State, county, or municipal), if any; and
- The program's authorized representative's contact information.

If the GED/Equivalency program is <u>not</u> publicly funded in whole or in part, documentation from the program should is also to provide information about the program's demonstrated effectiveness  Such information could include, but is not limited to, information relating to:

- The duration of the program's existence;
- The program's track record in assisting students in obtaining a GED, or a recognized equivalent certificate;
- Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
- Any other information indicating the program's overall quality.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1918

## C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| Educational or Career Training Program (Including Vocational Training) | <u>Currently in School</u><br>**Educational or Career Training Program (Including Vocational Training)**<br>The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in an educational or career training program (including vocational training) may include, but is not limited to: |

- **Accepted for Enrollment:** An acceptance letter on school letterhead from the school registrar/authorized school representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance letter is to include the name and address of the program, a brief description of the program, the duration of the program, and state the date the classes are scheduled to commence, and is to be accompanied by evidence that the student has registered for the program. Evidence of the requestor's acceptance for enrollment may also include a copy of his/her current year registration (intake form/enrollment form), or any other relevant documentation. The DACA request is also to be supported by evidence of the school or program's public funding or its demonstrated effectiveness, as described below.

- **Already Attending Classes:**
  o Current attendance records, transcripts, report cards, test reports, progress reports showing the name of the school, the name of the requestor, the time period or semester covered by the document, and, if relevant, the current educational or grade level;
  o A letter from the school registrar/authorized school representative, with contact information, providing information related to the program's public funding or its demonstrated excellence:

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)<br>This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1919

# C. Determining if Guidelines are Met, Continued

**Educational or Career Training Program (Including Vocational Training)** (continued)

**Public Funding:** If the educational or career training program is publicly funded in whole, or in part, the above-referenced letter from the school registrar/authorized school representative is to provide basic details about the funding, such as the source(s) of the funding; or,

**Demonstrated Effectiveness:** If the educational or career training program is <u>not</u> publicly funded in whole, or in part, the school registrar/authorized school representative is to provide information about the program's demonstrated effectiveness, with supporting documentation, if available. Such information could include, but is not limited to: information relating to:

> ➢ The duration of the program's existence;
> ➢ The program's track record in placing students in employment, job training, or post-secondary education; Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
> ➢ Any other information indicating the program's overall quality.

**Literacy Training**

<u>Currently in School</u>

The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in a literacy program is to include, but is not limited to:

- A letter from the literacy program administrator or authorized representative providing information such as:
  - o The requestor's name;
  - o The date of the requestor's enrollment;
  - o The duration of the literacy program and the expected completion date;
  - o The program administrator or authorized representative's contact information;
  - o Information about the literacy program's non-profit status, if applicable, and evidence of such status:
    - ▪ Evidence of the literacy program's non-profit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code; or
- If the literacy program is not administered by a non-profit organization, information related to the literacy program's source of public funding <u>or</u> its demonstrated effectiveness:

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1920

## C. Determining if Guidelines are Met, Continued

**Literacy Training (continued)**

- **Public Funding:** If the literacy program is publicly funded in whole, or in part, the letter from the literacy program administrator or authorized representative is to provide basic details about the funding, such as the source(s) of the funding. ; or
- **Demonstrated Effectiveness:** If the literacy program is <u>not</u> publicly funded in whole or in part, or <u>not</u> administered by a non-profit entity, the literacy program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to:
  - The duration of the program's existence;
  - The program's track record in placing students in employment, job training, or post-secondary education;
  - Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
  - Any other information indicating the program's overall quality.

It should be noted that many literacy programs may not track statistics on placement rates following completion of the program. Therefore, the lack of such data, standing alone, does not diminish the literacy program's record. Evaluate all of the information and evidence provided in its totality for credibility and sufficiency.

A claim of enrollment in a literacy class run by a for-profit entity that does not receive any public funding is not necessarily an indicator of fraud; however, a vast number of literacy programs are offered for free or at a minimal cost. Therefore, if the literacy program is a **for-profit** entity and does <u>not</u> receive any public funds, refer the case to CFDO for further research and evaluation.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1921

## C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| English as a Second Language (ESL) | **Currently in School** <br> **English as a Second Language (ESL)** <br> The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in an ESL class is to include, but is not limited to: |

- A letter from the ESL program administrator or authorized representative providing information such as:
  - o The requestor's name;
  - o The date of the requestor's enrollment;
  - o The duration of the ESL program and the expected completion date;
  - o The program administrator or authorized representative's contact information;
  - o Information/documentation related to the ESL program's public funding or its demonstrated effectiveness:
    - **Public Funding:** If the ESL program is publicly funded in whole, or in part, the letter from the ESL program administrator or authorized representative is also to provide specific details about the funding, such as the source(s) of the funding;
    - **Non-Profit Status:** If the ESL program non-profit status, the ESL program administrator or authorized representative is to provide evidence that the ESL program has non-profit status; or
    - **Demonstrated Effectiveness:** If the ESL program is not publicly funded in whole or in part, the ESL program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to:
      - The duration of the program's existence;
      - ➤ The program's track record in placing students in post-secondary education, job training, or employment; Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
      - ➤ Any other information indicating the program's overall quality.

It should be noted that many ESL programs may not track statistics on placement rates following completion of the program. Therefore, the lack of such data, standing alone, does not diminish the school's record. Evaluate all of the information and evidence provided in its totality for credibility and sufficiency.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1922

## C. Determining if Guidelines are Met, Continued

**School Breaks and Medical Leave**

At the time of filing, it is possible that school may not be in session due to a holiday or a semester (or quarter or trimester) break. A break may occur during a course, for example spring break, or it may occur between semesters, for example summer break. If a DACA request is filed between semesters, the requestor is considered to be currently in school if he/she is enrolled for the next semester and submits evidence of such enrollment. Note that a requestor on temporary medical leave from school is considered to be currently in school. Evidence of the medical leave and the expected return date to school are to be provided.

**Graduated From School**

A DACA requestor can also meet the educational guideline if he/she has graduated from school. To meet the "graduated from school" component of the educational guideline, the DACA requestor may show that he/she has graduated or obtained a certificate of completion from a U.S. high school or has a recognized equivalent of a high school diploma under State law, public or private college or university or community college, or has obtained a GED certificate or other equivalent State-authorized exam in the United States. For the purpose of considering an initial DACA request, the phrase "graduated from school" does not include graduation from an education, literacy or career training program (including vocational training or an ESL course). Evidence of graduation may include verifiable copies of:

- A diploma;
- A recognized equivalent of high school diploma under State law;
- Transcripts showing the date of graduation;
- A GED Certificate
    - Documentation sufficient to demonstrate that the DACA requestor obtained a GED includes, but is not limited to, evidence the he/she passed a GED exam, or other comparable State-authorized exam, and, as a result, he/she received the recognized equivalent of a regular high school diploma under State law;
- A certificate of completion or certificate of attendance from a U.S. high school;

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1923

**Graduated
From
School
*(continued)***

- An alternate award from a public or private high school or secondary school.

A claim of homeschooling is not necessarily an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation. Even if the file contains documents including transcripts, a diploma or a certificate of completion as a result of homeschooling, the case must be referred to CFDO for further research and evaluation prior to final adjudication. CFDO referrals on "homeschooling" are only mandatory prior to adjudication if the homeschooling is the basis for meeting the education guideline; if not, then the case can be processed normally and is then referred to the CFDO after final adjudication for tracking purposes.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)-LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1924

| | |
|---|---|
| **Military Service** | The Secretary's memorandum states that, in lieu of being currently in school, or having graduated from school (including a GED), the requestor may be an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces. This may include reservists who were honorably discharged. |

Examples of acceptable evidence include, but is not limited to the following:

- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records;
- Military health records; or
- Any other relevant document.

If the requestor indicated in question 24 of Part 1 that he/she was a member of the U. S. Armed Forces or Coast Guard, but did not submit evidence of an honorable discharge and does not otherwise meet the educational guidelines, issue RFE DACA 107 call up from Appendix D.

The Form DD-214 and NGB Form 22 both contain a section, "Character of Service" listing the type of discharge a service member obtained.  The main types of discharges include the following:

     (1) Honorable;
     (2) General (Under Honorable Conditions);
     (3) Under Other Than Honorable Conditions;
     (4) Bad Conduct;
     (5) Dishonorable; or
     (6) Uncharacterized.

For purposes of DACA, if Character of Service is Honorable or General (Under Honorable Conditions) the requestor has satisfied the military service guideline.

<u>Currently</u> serving in the U.S. Coast Guard or U.S. Armed Forces does not qualify.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1925

# D. Economic Necessity

**Reviewing Economic Necessity**

An EAD based on a grant of deferred action requires a showing of economic necessity. To facilitate this economic necessity review, a separate worksheet was created, Form I-765WS. To streamline adjudication of the DACA request and the I-765, officers will review the I-765WS during the adjudication of Form I-821D. During file set-up, the I-765WS will be put in ROP order immediately behind the Form I-821D.

If Form I-765WS is completely blank or is missing, issue an RFE on the I-765 (not the Form I-821D) using DACA 180 call up from Appendix D, but only if the requestor does not include evidence that a fee exemption was granted. The fee exemption will be indicated in C3 as "Fee Waiver Granted." If an officer issues an RFE on the I-765, he/she should proceed with adjudication of the I-821D. When the response to the I-765 RFE is received and the I-765 is approved, the expiration date of the EAD should not exceed the end date of the deferred removal under DACA.

If the requestor does not respond to the I-765 RFE, the I-765 should be denied for abandonment; however, the Form I-821D can be approved for DACA if the guidelines have been met. When denying the Form I-765 for abandonment, officers should use the DACA Form I-765 Abandonment Denial template.

If the requestor's response to the I-765 RFE does not include the Form I-765WS, a completed I-765WS, or the signature on the I-765, officers should use the DACA Form I-765 Denial Based on the Record template.

If/when Form I-765WS has been completed, review the information provided regarding current income, assets, and expenses to determine whether economic necessity has been established. The requestor may, but need not, include supporting documents with Form I-765WS.

There is a general presumption that DACA requestors will need to work given their undocumented circumstances and the fact that they are not generally anticipated to have independent means. Absent evidence of sufficient independent financial resources, the Form I-765WS is sufficient to establish economic need, without any further economic analysis.

FOR OFFICIAL USE ONLY (FOUO)   LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   72

1926

# E. Removal Proceedings

**Removal Proceedings**

Individuals in removal proceedings may file a DACA request, even if they are under age 15, as long as they were born after June 15, 1981. As explained more fully below, removal proceedings commence with the filing of Form I-862, Notice to Appear, with the Immigration Court and terminate in one of several ways. See 8 C.F.R. §245.1(c)(8)

If a DACA requestor has been or is currently in deportation, exclusion, or removal proceedings, he/she may have another A-file, which should have been discovered by the officer during the initial review of the I-821D and/or Record of Arrest and Prosecution (RAP) sheet (if any). Please see the "A-File" section.

There are several ways to determine if the DACA requestor:

- Was or is in proceedings;
- What the outcome of the proceeding was; and
- If he/she was previously removed.

Systems checks include CIS an[          ] CIS checks, when required, can be helpful in determining the Class of Admission (CoA), the requestor's status, and file location, among other useful information.

See the charts below for an overview of the electronic systems to check.

| System | Action |
|---|---|
| Central Index System (CIS) | This system contains information regarding the A-files for nonimmigrants, immigrants, some legalization records, and naturalized citizens. Use the system to obtain biographic information, locate A-files at other CIS offices, etc.<br><br>• Type 9101 at the command prompt to view CIS data by A-number.<br>• Type 9106 for sounds like name with DOB search for all possible A-numbers for a requestor |

(b)(7)(e)

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1927

# Removal Proceedings, Continued

| Removal Proceedings (continued) | System | Action |
|---|---|---|
| (b)(7)(e) | | |

**Effects of Deportation or Removal Proceedings**

The existence of deportation, exclusion, or removal proceedings may have an effect on the exercise of prosecutorial discretion for DACA.  If the DACA requestor is in proceedings, the A-file is likely with the ICE office.  Before a DACA request may be adjudicated by the Center, the Center should make every attempt to obtain all A-File(s).

**Determining Whether an Individual is in Removal Proceedings**

Deportation, exclusion, and removal proceedings begin with the filing of the charging document with the Immigration Court. Currently, the charging document used is Form I-862, Notice to Appear. Over the years,  proceedings commenced in other ways, including:

1. With the issuance of Form I-221, Order to Show Cause and Notice of Hearing, prior to June 20, 1991;
2. With the filing of Form I-221, Order to Show Cause and Notice of Hearing, issued on or after June 20, 1991, with the immigration court;
3. With the issuance of Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, prior to April 1, 1997; and
4. With the issuance and service of Form I-860, Notice and Order of Expedited Removal.

It is possible for an individual to have voluntary departure and be in removal proceedings. See Voluntary Departure section below for more information.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1928

# E. Removal Proceedings, Continued

| | |
|---|---|
| **Determining Removal Proceedings have been Terminated** | Deportation, exclusion, or removal proceedings terminate when one of the following occurs: |

1. The individual leaves the United States under an outstanding order of deportation, exclusion, or removal;
2. The individual is found not to be inadmissible or deportable from the United States;
3. The individual leaves the United States before the expiration of his/her voluntary departure, which was granted in connection with an alternate order of deportation or removal;
4. The charging document is canceled (Form I-122, I-221, I-860, or I-862);
5. The immigration judge or the Board of Immigration Appeals terminates the proceedings; or
6. A Federal court grants a petition for review or an action for habeas corpus.

See 8 C.F.R. §245.1(c)(8)

| | |
|---|---|
| **Voluntary Departure** | An individual with voluntary departure may or may not be in removal proceedings. Voluntary departure may be issued before the commencement of proceedings, during proceedings, or at the conclusion of proceedings. When voluntary departure is issued during or at the conclusion of proceedings, it is normally issued as an alternate order of voluntary departure/removal or deportation. An alternate order of voluntary departure converts automatically to an order of removal/deportation when the individual does not leave the United States voluntarily by the specified date. |

| | |
|---|---|
| **Administratively Closed** | Administratively closed proceedings means that proceedings have commenced, but the parties subsequently agreed to remove the matter from the immigration court's docket. Administratively closed does not mean terminated, and thus the individual remains in proceedings. Either party may file a motion to place the case on the court's active docket at any time. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1929

## E. Removal Proceedings, Continued

(b)(7)(e)

Use the chart below to assist in determining if a DACA requestor is in removal proceedings:



**Note:** The guideline that the individual is under age 31 on June 15, 2012 applies to all DACA requestors regardless of whether they are in deportation, exclusion, or removal proceedings. If the individual was age 31 or older on June 15, 2012, issue a NOID.

| | |
|---|---|
| **Individuals With Final Removal Orders (FRO)** | An individual with an unexecuted final removal order is still in removal proceedings. See 8 C.F.R. § 245.1(c)(8). Although the final removal order may have been issued before, on, or after June 15, 2012, the volume of individuals that could be considered for DACA with a post-June 15th final removal order should be small, because ICE began applying the DACA guidelines upon publication of the Secretary's memorandum. Final removal orders issued after June 15, 2012 should be reviewed carefully to examine the underlying grounds for removal.

If the requestor is the subject of an FRO, then determine the requestor's age on June 15, 2012. Review the answer provided to question #9 in Part 1 of Form I-821D and review the requestor's birth certificate or other acceptable secondary evidence submitted to show the date of birth. If the evidence submitted does not show that the requestor satisfies the upper age limit, issue RFE DACA 140 call up from Appendix D. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) Information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013     76

1930

# E. Removal Proceedings, Continued

**Subject to the Reinstatement of a Prior Removal Order**

When an individual reenters the United States illegally after having been removed or after leaving voluntarily under an order of removal, the individual is subject to reinstatement of the prior removal order from its original date. See INA § 241 (a)(5).

An individual who is subject to reinstatement of their prior removal order under the provisions of § 241 (a)(5) of the Act may file a DACA request; however, the removal **and** the illegal reentry must have occurred before June 15, 2007. This is because a DACA requestor must have resided continuously in the United States for at least five years before June 15, 2012, the date of Secretary's memorandum. Additionally, a removal is not deemed to be a brief, casual, and innocent departure and, therefore, it interrupts the period of continuous residence.

**Underlying Removal Ground Adversely Impacts Prosecutorial Discretion**

If the DACA requestor indicates in Question #3.a. in Part 1 of Form I-821D that he/she has been in removal proceedings, and/or routine systems, background, and fingerprint checks indicate that the requestor is in removal proceedings, proceed as follows:

- Review the underlying removal charges; and
- Review the derogatory information obtained through routine checks.

(b)(7)(e)

Do not rely solely on the grounds listed in the charging document and/or [       ]s not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

**Underlying Removal Ground Does Not Adversely Impact Prosecutorial Discretion**

If a DACA requestor has been placed in proceedings on a ground that does not adversely impact the exercise of prosecutorial discretion, review the results of all routine systems, background, and fingerprint checks. If those routine checks did not reveal any additional derogatory information that impacts the exercise of prosecutorial discretion, the case may proceed for adjudication.

Do not rely solely on the grounds listed in the charging document and/or [       ]s not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1931

# E. Removal Proceedings, Continued

**Removal During Continuous Residence Period**

A departure from the United States pursuant to an order of deportation, exclusion, or removal that occurred during the required continuous residence period is not "brief, casual, and innocent." Therefore any absence caused by such a departure meaningfully interrupts such continuous residence. This also includes a departure made "voluntarily," for example, the individual leaves the United States on his/her own volition while under an order of deportation, exclusion, or removal.

In these instances, issue a NOID.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1932

## F. Fingerprints and RAP Sheets

| | |
|---|---|
| **Fingerprint Requirements** | Fingerprints (ten print) are required for every DACA requestor 14 years of age and older to determine if they have a criminal history. Submissions of prior fingerprint results will not be accepted. |
| **FBI Fingerprint Response** | At the time of adjudication, the file should contain a screen print of either the |

(b)(7)(e)

A definitive response from the FBI regarding fingerprint clearances is required before any DACA request for an individual 14 years of age and older may be approved.

Fingerprint results for the requestor obtained as a result of a previous filing with USCIS within the last 15 months are not valid for DACA purposes. Each DACA requestor must obtain a new fingerprint check upon the filing of a DACA request. Officers should utilize [        ]o verify that the fingerprint check was completed for the DACA request.

| | |
|---|---|
| **Performing an FBI Query** | The fingerprint clearance should be complete before the case is sent for adjudication. If there is no fingerprint result printout in the file, officers must perform a query of FBI Fingerprint Tracking in CLAIMS Mainframe and also check SNAP to see if the requestor has been scheduled for an appointment at an ASC. |

- Access CLAIMS Mainframe as usual and select option [    ] to perform an inquiry for each DACA requestor. A query should be performed using both search methods:
- Search by typing the A-number (type "0" first) into the appropriate field or
- Search by typing the Last name/First name and date of birth into the appropriate field, and
- Access SNAP (Refer to the SNAP User Guide).

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1933

# F. Fingerprints and RAP Sheets, Continued

**Introduction**

(b)(7)(e)

There are four possible results of a fingerprint query:

This section instructs officers on how to proceed based on the fingerprint results.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1934

## F. Fingerprints and RAP Sheets, Continued



| | |
|---|---|
| **A-numbers Found on the RAP Sheet** | If any other A-numbers are found on the RAP sheet, the files must be requested, reviewed, and consolidated prior to any final action. |
| **Updated RAP Sheets** | Although biometrics will not be cloned from other filings, if the requestor has a criminal history with an [ ] result and there are already RAP sheets in the file, request updated RAP sheets through the [ ] |

(b)(7)(e)

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

Version August 28, 2013    81

1935

# G. Evaluating Issues of Criminality, Public Safety, and National Security

**Issues of Criminality**

The Secretary's memorandum provides as one of the guidelines that should be met before an individual is considered for DACA that the individual not have been convicted of a felony offense, a significant misdemeanor offense, three or more non-significant misdemeanor offenses, or otherwise pose a threat to national security or public safety.  If the evidence establishes that an individual has a conviction for one of the above or may be a national security or public safety threat, USCIS will deny the request for deferred action, unless exceptional circumstances are found.  The requestor must specifically ask to be evaluated under this exception and must fully document the exceptional circumstances.

The decision whether to defer action in a particular case is individualized and discretionary, taking into account the nature and severity of the underlying criminal, national security, or public safety concerns.  By their very nature, felonies, significant misdemeanors, a history of other misdemeanors, and activities compromising national security and public safety are particularly serious and carry considerable weight in the totality of the circumstances analysis.  As a result, it would take a truly exceptional circumstance to overcome the underlying criminal, national security, and public safety grounds that would otherwise result in not considering an individual for DACA, which would be rare.   Deferring removal under DACA shall not be considered under this very limited exception without concurrence from HQSCOPS.  The Service Center Director must have appropriate visibility before sending the case with exceptional circumstances to HQSCOPS.  The Center must copy the Service Center Director on the email when sending it to HQSCOPS for review.

**Felony**

A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**   82

1936

## G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued

| Misdemeanors | **Significant Misdemeanor:**<br>For DACA only, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:<br><br>1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,<br><br>2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days.<br><br>The sentence must involve time to be served in custody, and therefore does not include a suspended sentence. The time to be served in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence or presence of a criminal history, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1937

**Misdemeanors**
(continued)

**Non-Significant Misdemeanor:**

For DACA only, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and
2. Is one for which the individual was sentenced to time in custody of 90 days or less.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE. Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1938

# G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued

**Misdemeanors**
(continued)

> **Multiple Misdemeanors:**
>
> Absent exceptional circumstances, a person is not eligible for consideration of DACA if he/she has been convicted of three or more non-significant misdemeanors that did not occur on the same day and did not arise out of the same act, omission, or scheme of misconduct.
>
> When evaluating a request for consideration for deferred action for childhood arrivals, a minor traffic offense, such as driving without a license, will not be considered a misdemeanor that counts towards the "three or more non-significant misdemeanors." However, the requestor's entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, he/she warrants an exercise of prosecutorial discretion.

**State Law Immigration Offenses**

Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action pursuant to this process.

**Foreign Convictions**

When evaluating a request for consideration of deferred action for childhood arrival, a foreign conviction, standing alone, will generally not be treated as a disqualifying felony or misdemeanor. Such convictions, however, may be considered when addressing whether the person poses a threat to public safety and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted. Cases involving foreign convictions should be elevated for supervisory review.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator
Version August 28, 2013   85

1939

# Court Dispositions

**Requesting Certified Court Dispositions**

Using RFE DACA 151 call up from Appendix D, request a certified court disposition a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure if prohibited under state law.

If the requestor is unable to provide such records because the case was expunged or sealed, RFE DACA 151 informs the requestor that he or she must provide information about his or her arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. It is not necessary for the officer to issue an RFE if he/she is able to readily obtain the dispositions on line.

**Free Online Court Dispositions**

There are many online sites that can be searched and the disposition printed for a file copy. These sites are open to the public; therefore, USCIS can gain the final disposition without doing an RFE or ITD if all the charges in question are found, or if enough evidence can be gathered to deny without the remaining charges.

The AAO has upheld prior decisions made using these court dispositions, even though these dispositions are not "certified" by the court, since the information is made available to the public.

**Reading Court Dispositions**

Court dispositions take as many different forms as there are courts in the United States. There is no way to give specific instructions on how to read such dispositions. Usually the state criminal statutes cite is used to indicate which charge the applicant was actually convicted of. Adjudicators should consult with their supervisor if they have any questions about how to read a court disposition.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1940

| Convictions | Pursuant to INA § 101(a)(48)(A), a conviction is a formal judgment of guilt entered by a court or, if adjudication of guilt has been withheld, where: |

1) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; and
2) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Nolo contendere means the individual is unwilling to contend. This subjects the individual to some form of punishment, penalty, or restraint as if he/she was found guilty.

An adjudication of juvenile delinquency is not a conviction.

| Formal Adjudication of Guilt Withheld | Court orders in criminal proceedings sometimes include, as part of the disposition, terms such as: Continued without a finding (CWOF); adjudication withheld; deferred adjudication, etc. Different jurisdictions use different terminology. |

Where there is no formal adjudication of guilt, officers must determine whether:

1. A judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; AND

2. the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty, such as jail, a fine, parole, probation, community service, etc.

The officer must dissect the law, the statute, court order, and conviction, and put all the pieces together to determine whether these requirements for a conviction are met in the absence of a formal adjudication of guilt.

| Imposition of Costs as Punishment | Imposition of costs (such as fines, court costs, etc.) in a criminal case constitutes a form of punishment, and therefore satisfies the second prong of the conviction definition. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1941

## Court Dispositions, Continued

| | |
|---|---|
| **Deferred Prosecution** | Deferred prosecution or pretrial diversion programs that do not require the defendant to plead guilty or nolo contendere or require the court to make any finding of guilt do not constitute a conviction for immigration purposes. |
| **Dismissals, Dropped, Set Aside** | In many cases, the charges may be dropped or set aside in exchange for the DACA requestor agreeing to attend various self-help courses and programs, or if the person who filed the complaint against him/her fails to appear or chooses to drop the case.<br><br>These are not considered convictions for immigration purposes. |
| **Nolle Prosequi** | A decision of "nolle prosequi" is a Latin legal term for "declined to prosecute".<br><br>This is not considered a conviction for immigration purposes. |
| **Convictions on Appeal** | A conviction is effective for immigration purposes, including DACA, while it is on direct appeal. See Plane v. Holder, 652 F.3d 991 (9th Cir. 2011), rehearing en banc denied, 2012 WL 1994862 (2012). If the conviction is ultimately reversed on appeal, the DACA requestor is free to file a new request for DACA if otherwise eligible. |
| **Expunged or Vacated Convictions** | For DACA purposes only, expunged convictions will not be treated as disqualifying felonies or misdemeanors. Expunged convictions, however, will be assessed on a case-by-case basis to determine whether the person poses a threat to public safety and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted. Cases involving expunged convictions should be elevated for supervisory review.<br><br>Sealed and expunged records will be evaluated according to the nature and severity of the criminal offense. |
| **STET** | The entry of "STET" in a criminal case simply means that the state (Maryland and West Virginia) will NOT proceed against an accused on that indictment at that time. As long as the STET order is still in place and the individual is in compliance, the STET is not a conviction for immigration purposes.<br><br>NOTE: Carefully review the file for J&Cs, orders, etc., to determine if a subsequent decision on the offense has been made. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013     88

1942

# Arrests and Convictions

**Criminal Arrests**

When a DACA requestor's RAP sheet indicates an arrest, it is necessary to determine whether the DACA requestor has been convicted of the crime.

The only way to know if the DACA requestor has been convicted of the charge for which he/she was arrested is to obtain the certified court disposition. Occasionally the disposition of the arrest is shown on the RAP sheet. **However, in all cases, the officer must review the court disposition. This may be done by obtaining the disposition online or by issuing an RFE.**

**Juvenile Delinquency**

Juvenile delinquency will not automatically disqualify a DACA requestor. Such criminal history will be evaluated on a case-by-case basis to determine whether, under the particular circumstances, discretion is warranted to defer removal under DACA.

If a requestor was a juvenile, but tried and convicted as an adult he/she will be treated as an adult for purposes of the DACA process. Individuals must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state law.

Sealed and expunged records will be evaluated according to the nature and severity of the criminal offense.

**Pardons**

A full and unconditional pardon by the President of the United States or by the Governor of a U.S. State eliminates a conviction for purposes of DACA.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1943

# Public Safety Concerns

**Evaluating Public Safety Concerns**

The scope of criminal offenses deemed to be EPS are described in the November 7, 2011, NTA memorandum and the accompanying MOA between USCIS and ICE.

A DACA requestor's criminal record may give rise to significant public safety concerns even where there is not a disposition of conviction. Therefore, when the disposition is pending, it is not necessary to hold the case. For example, an individual with multiple DUI arrests, but no convictions, could pose a significant public safety concern. Similarly, an individual arrested for multiple assaults or other violent crimes could be deemed a public safety risk even if he/she was never convicted for those crimes. Arrests and/or convictions that took place outside of the United States are also significant unfavorable factors in evaluating public safety concerns, under the totality of the circumstances.

# National Security Concerns

**Evaluating National Security Concerns**

A case posing national security concerns is handled through the CARRP process according to existing protocols.

# DACA Requestors in Immigration Detention

**DACA Requestors in Immigration Detention at the Time of Filing Form I-821D**

USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated. If upon receipt of Form I-821D, a review of DHS electronic systems or information received from ICE identifies the requestor as detained, the Center should follow the below procedures.

The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. If ICE indicates that it does not intend to physically release the requestor within 30 days, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)—LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**     90

you remain in immigration detention as of the date of this notice."
USCIS will notify ICE once the denial notice is issued.

2. If ICE indicates that the requestor is an ICE enforcement priority but ICE intends on physically releasing the requestor, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "...exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities." USCIS will notify ICE once the denial notice is issued

3. If ICE indicates that the case is not an ICE enforcement priority and ICE intends to physically release the requestor, the case will be adjudicated on its merits. **A review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.**

If the BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the BCU should ask local counsel for assistance in contacting local ICE counsel to discuss the reasons why USCIS disagrees with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary.

| | |
|---|---|
| **DACA Requestors in Immigration Detention after Filing Form I-821D** | If DHS electronic systems or information received from ICE identifies the requestor as having been placed in immigration detention after filing his/her Form I-821D, the Center should follow the below procedures. |

The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. If ICE indicates that the requestor is an ICE enforcement priority but ICE intends on physically releasing the requestor, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "...exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities." USCIS will notify ICE once the denial notice is issued

2. If ICE indicates that the case is not an ICE enforcement priority and ICE intends to physically release the requestor, the case will be adjudicated on its merits. A review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.

If the BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the BCU should ask local counsel for assistance in contacting local ICE counsel to discuss the reasons why USCIS disagrees

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

Version August 28, 2013     91

1945

with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1946

# Handling Procedures

**General**

The evaluation of criminal issues with respect to a DACA request is done after BCU vetting of the [   ] check and the [      ] results from the FBI. If the up-front [   ] check reveals a hit, the DACA request goes to BCU/Triage. If the hit relates, BCU triage routes the DACA request to the BCU. BCU documents the [   ] hit and the resolution in the [   ] While the DACA request is undergoing the up-front [   ] check, the DACA requestor is placed in the scheduling queue for an ASC appointment to have his/her biometrics captured. If the [      ] results return an [      ] the BCU reviews the results to determine whether they are germane to the DACA request and the exercise of prosecutorial discretion. The officer may issue an RFE at any point along the way, if necessary to establish whether the issues of criminality relate to a misdemeanor, a significant misdemeanor, a felony, or whether the criminal issues pose a public safety threat. When a DACA request is denied, the denial shall be issued using the standard denial template, which provides a list of checkboxes. The standard denial template is found at Appendix F. Select the box or boxes that apply. For guidance on when to seek supervisory review of a denial involving issues of criminality, see Chapter 9, Section D.

**(b)(7)(e)**

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   93

1947

| Social Security Number | If there is evidence that the requestor, in order to gain employment for himself or herself, used someone else's social security number with knowledge that the social security number belonged to someone else and without that person's consent, the requestor should receive a Notice of Intent to Deny. **Unless a complete file review demonstrates that all of the 4 points below have been met, the ISO shall adjudicate the DACA request based upon the merits of the case.** |
|---|---|

**What this means:** Service Centers should not consider evidence of a social security number (SSN) within a DACA filing as derogatory information unless such evidence within the file meets all the elements listed below.

The requestor should receive a Notice of Intent to Deny (NOID), if upon review of the A-file there is evidence contained within the file that demonstrates all of the following:

(b)(7)(e)

Evidence in the file to support issuing such a NOID includes:

DACA filings that contain BCU or FDNS findings:
- In light of this guidance, if a statement of findings (SOF) is not supported or confirmed by evidence submitted by the requestor, the case will be adjudicated on its merits.

ISOs may rely on the evidence contained in the A-file at the time of adjudication to determine whether the requestor used a SSN in the manner noted above. ISOs should consult with their supervisors if they believe additional information or research is needed prior to adjudication. If the requestor's response to the NOID does not rebut the evidence contained therein, a final denial should be issued.

| Categorization | If the BCU determines that the case presents issues of criminality, processing of the DACA request must be categorized as either EPS or non-EPS, as defined in the November 7, 2011 NTA memorandum. |
|---|---|

FOR OFFICIAL USE ONLY (FOUO) – LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013    94

1948

| | |
|---|---|
| **Non-EPS Cases** | A DACA request posing issues of criminality that are based on ⬛⬛⬛⬛ non-EPS, as per the NTA policy memorandum, is handled by the BCU DACA Team as follows: |

- The BCU DACA Team will adjudicate Form I-821D, taking into account all issues of criminality.
- If the case is approvable, the BCU DACA Team will approve the I-821D for DACA and adjudicate the I-765 for employment authorization.
- If an approval is not warranted, a denial for Form I-821D and Form I-765 will be issued, pending supervisory review.
- After the decisions have been rendered on Forms I-821D and I-765, the A-file shall be routed to the NRC.

In non-EPS cases where the requestor has been arrested for a potentially disqualifying criminal offense, but the court disposition is currently unavailable because the criminal proceedings are pending, the BCU DACA Team will issue RFE DACA 151 call up from Appendix D. The BCU DACA Team will withhold adjudication until the requestor submits the court disposition or receives SCOPS authorization to deny the case absent the court disposition. The BCU DACA Team will initially provide 87 days for the requestor to respond, but may issue a second RFE DACA 151 call up if the requestor fails to provide the final court disposition within 87 days because the criminal proceedings have not concluded.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1949

## Handling Procedures, Continued

**EPS Cases**

A DACA request presenting issues of criminality that are deemed to be EPS, as per the NTA policy memorandum, is handled by the BCU DACA Team. The BCU DACA Team shall refer the case to ICE prior to adjudicating the case, even if USCIS can deny the DACA request on its merits. The BCU DACA Team will refer the DACA request to ICE using the RTI process. The BCU DACA Team will suspend adjudication of the DACA request for 60 days, or until ICE provides notification of its action on the case, whichever is earlier.

- **ICE Takes No Action or Does Not Respond:** If ICE does <u>not</u> accept the referral request or otherwise provide any notification of its action within 60 days of the RTI:
  - The BCU DACA Team will adjudicate Form I-821D, taking into account all issues of criminality, and in particular, the issues presenting an EPS concern.
  - If the disposition of the criminal charges against the DACA requestor is **pending**, the BCU DACA Team will deny the DACA request on public safety grounds, because the underlying issues of criminality are deemed to pose an EPS concern, pursuant to the November 7, 2011 NTA memorandum. The BCU DACA Team will also deny Form I-765, requesting employment authorization.
  - If the disposition of the criminal charges against the DACA requestor are **final**, the BCU DACA Team will deny Form I-821D based on the issues of criminality and the conviction. The BCU DACA Team will also deny Form I-765, requesting employment authorization.
  - Upon denial, the BCU DACA Team shall refer the DACA request to ERO, in accordance with the agreed upon method, and update FDNS-DS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Handling Procedures, Continued

**EPS Cases**
**(continued)**

- **ICE Accepts the Referral:**  If ICE accepts the case, the BCU DACA Team will follow the standard protocols outlined in the November 7, 2011 NTA memorandum.

**Note:** Requests involving issues of criminality that normally would not meet the guidelines for consideration of deferred action will be denied, unless the requestor is claiming that consideration is warranted due to exceptional circumstances and fully documents such claim. Removal shall not be deferred under DACA pursuant to this very limited exception without concurrence from HQSCOPS.   In these instances the case shall come to HQSCOPS from the Service Center Director, through the appropriate chain of command.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information

**Introduction**

When adjudicating Part 3 of Form I-821D, it is necessary to ensure that clear information and evidence are present to make a final determination. Refer to Chapter 6 for Background and Security Checks and Chapter 8, Section H, for evaluating and handling criminality, public safety, and national security issues.

**Questions 1 and 2: Arrested for, charged with, or convicted of a felony or misdemeanor, or significant misdemeanor in the United States (includes drug offenses and driving under the influence of drugs or alcohol)**

(b)(7)(e)

**OR**

**arrested for, charged with, or convicted of a crime in any country other than the United States**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s) | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s) | The derogatory information clearly shows that the requestor does not meet the DACA guidelines, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s) | The derogatory information is unclear, | |
| There is derogatory information in the A-File(s) | There are clear charges or clear derogatory information, but no clear judgment or conviction, | |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear, and the requestor did not provide any additional information or documentation, | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1952

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information, Continued

| Questions 3 and 5: Security and Related Issues – Engaging in Terrorist Activities; or Engaging in Ordering, Inciting, Assisting, or Otherwise Participating in Genocide, Human Trafficking, and Other Violent Crimes Involving the persecution of Others |
|---|

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s) (b)(7)(e) | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s) (b)(7)(e) | The derogatory information clearly shows that the requestor did or may have engaged in terrorist activities or human rights violations, | Put the case through the CARRP process per standard protocols. |
| There is derogatory information in the A-File(s) (b)(7)(e) | The derogatory information is unclear, | |

(b)(5)

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Put the case through the CARRP process per standard protocols. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1953

# H. Adjudicating Form I-821D, Part 3; Criminal, National Security, and Public Safety Information, Continued

**Question 4:**
**Current and**
**Past Gang**
**Membership**

(b)(7)(e)

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File( | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s) | The derogatory information clearly shows that the requestor is or may be a gang member, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File( | The derogatory information is unclear, | |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1954

# I. Fraud Review and Fraud Referrals

**Immigration Fraud**

In the normal course of adjudication, officers should be aware of fraud indicators. Fraud related concerns that arise during the course of background and security checks should be addressed according to the March 2011 Fraud Detection SOP and the 2008 ICE/USCIS Investigation of Immigration Benefit Fraud MOA.

(b)(7)(e)

Fraud encompasses any material representation or omission, accompanied by an intent to deceive. Establishing the elements of fraud is at the core of the work performed during a fraud investigation. In the immigration context, fraud is a willful misrepresentation of a material fact. An omission of a material fact can also constitute a willful misrepresentation, rising to the level of fraud. When reviewing an immigration request, a finding of fraud is generally supported by the presence of the following three elements.

A finding of fraud is also supported when the immigration filing contains fraudulent documents that are germane.

The Fraud Detection and National Security (FDNS) Directorate administratively investigates allegations of immigration benefit fraud and produces a Statement of Findings (SOF) that adjudicators use to render their decisions. Most fraud investigations are conducted under the authority of § 212(a)(6)(C)(i) of the Act. In the DACA context, the SOF will document all fraud findings and underlying issues impacting the favorable exercise of prosecutorial discretion.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1955

# I. Fraud Review and Fraud Referrals, Continued

**Immigration Fraud** (continued)

Individuals requesting DACA are not subject to the 212 inadmissibility grounds, because they are neither applying for a visa nor seeking admission to the United States. They are, instead, seeking the administrative exercise of prosecutorial discretion. Nevertheless, the presence of confirmed or suspected fraud issues are germane in deciding whether the DACA requestor merits the exercise of prosecutorial discretion. As a result, when an individual is found to have committed fraud in connection with a DACA request, the DACA request is denied not because the individual is inadmissible due to fraud, but rather, because the fraud negates the exercise of prosecutorial discretion to defer removal. Denials based on confirmed fraud findings will be supported by a properly documented SOF generated by CFDO. FDNS-DS must be updated to show that the DACA request was actually denied for confirmed fraud. The officer must provide information on the final outcome of a DACA request (e.g., approved, denied, NTA) to the BCU/CFDO so they may update FDNS-DS, accordingly.

When adjudicating Forms I-821D and I-765 for DACA, officers will complete a fraud referral sheet when there are articulable elements of fraud found within the filing. When articulable fraud indicators exist, the officer should refer the filing with a fraud referral sheet prior to taking any adjudication action even if there are other issues which negate the exercise of prosecutorial discretion to defer removal.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1956

# I. Fraud Review and Fraud Referrals, Continued

**Immigration Fraud** (continued)

In the DACA context, examples of fraud indicators may include, but are not limited to:

(b)(7)(e)

If the CFDO is to resolve the articulated fraud after exhausting all reasonable efforts and resources, the CFDO may refer the cases to appropriate field office for interview, if an interview may resolve outstanding concerns.

The findings of the administrative or criminal investigation will be recorded in FDNS-DS and reported in an SOF and placed in the A-file to enable officers to make accurate and informed decisions on the DACA requests.

The CFDO will adhere to the Fraud Detection Standard Operating Procedures for referring fraud cases filed under the DACA program to ICE.

DACA cases denied due to a confirmed finding of fraud shall be updated in C3 as "Denial Notice with a Finding of Fraud Ordered" [EC] for tracking purposes. In addition, DACA cases denied due to a confirmed finding of fraud shall be referred for NTA issuance in accordance with the NTA memorandum dated November 7, 2011. The appropriate NTA charge will be determined on a case-by-case basis in consultation with local counsel.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# I. Fraud Review and Fraud Referrals, Continued

**System Updates for DACA File Movement Into and Out of CFDO**

For reporting purposes, DACA file movement into and out of the CFDO will require the following updates in C3:

(b)(7)(e)

- "Sent to the Fraud Detection Unit (FDU) for Analysis [          ] when sending a DACA request to the CFDO; and
- "Return from Fraud Detection Unit (FDU) with Results [          ] when receiving a DACA request from CFDO for final processing.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   104

1958

# Chapter 9: Decisions

## A. Requests for Evidence

**Request for Evidence (RFE)**

For DACA requests, when requesting additional evidence, an RFE will be used. A NOID will rarely be used. Appendix D has a list of DACA RFE call ups to be used when processing a DACA request.

Follow the steps below to process an RFE.

(b)(7)(e)

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | Keep the Form I-821D and I-765 together in the A-file. |
| 8 | Route the A-file to clerical/RFE hold as per local procedures. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   105

1959

# B. Notice of Intent to Deny

**Notice of Intent to Deny (NOID)**

Follow the steps below to process a NOID:

**(b)(7)(e)**

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | Keep the Form I-821D and I-765 together in the A-file. |
| 8 | Route the A-file to clerical/NOID hold as per local procedures. |

**Notice of Intent to Deny (NOID) –Local Counsel and HQ SCOPS Review**

See Appendix J for current Notice of Intent to Deny review policy.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1960

# D. Denials –

| | |
|---|---|
| **Denials –**<br>**After RFE or**<br>**NOID** | In general, the officer shall issue a denial whenever the requestor's response to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) is insufficient to establish eligibility.  There may be exceptions when a NOID or second RFE is appropriate after an initial RFE. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1961

**Denials –
Supervisory
Review**

When the denial involves one of the grounds listed below, obtain supervisory review before issuing the denial when the requestor:

(b)(7)(e)



If the convictions and/or arrests occurred before the requestor filed the Form I-821D and the requestor did not disclose this derogatory information, include the withholding of the material fact(s) as one of the reasons for not exercising prosecutorial discretion in the case.

When a DACA request is denied, the denial shall be issued using the Appendix F. In instances where an individual is unable to establish he or she warrants a favorable exercise of prosecutorial discretion under this process, and no other checkbox applies except "You have not established that you warrant a favorable exercise of prosecutorial discretion," supervisors must refer the case to HQSCOPS through the normal chain of command.

Before routing the A-file to a supervisor, the officer should place a supervisory hold on the case in C3. After the supervisor concurs with the issuance of a denial, the officer shall check the appropriate box on the denial template and process the cases in the system for denial. See Appendix F for the DACA Denial Template. If the supervisor determines that the case should be approved, process for approval and document the file as appropriate.

In novel, complex, or sensitive cases, or cases that require a paragraph denial that are not included in Appendix K, supervisors will refer the case to HQSCOPS, through the normal chain of command.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

1962

# D. Denials, Continued

**Denial**
**(continued)**

When the denial falls under one of the categories that requires supervisory review, ensure that concurrence has been obtained before processing the DACA request for denial.

(b)(7)(e)

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | Prepare and send the denial. |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 10 | Process Form I-765 for denial. See Chapter 12. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1963

# D. Denials, Continued

**Abandonment Denial Letters**

Abandonment denials do not require supervisory review.  Abandonment denials are initiated on Form I-821D in the following:

- The requestor fails to respond to an RFE or NOID;
- The requestor fails to appear at an ASC for biometrics collection within the specified time frame, after failure to respond to an RFE,   Refer to Chapter 5 of this SOP.

**Abandonment Denials**

After **ALL** A-files have been retrieved when processing an I-821D (unless adjudicating in a T-file if unable to obtain the A-file), follow the steps below to process an abandonment denial.

(b)(7)(e)

| Step | Action |
|------|--------|
| 1 | Ensure that no other addresses exist: <br> 1. Review the file for any correspondence received; <br> 2. Review the returned envelope for any changes from the post office; <br> 3. Check C3, National Claims, and AR11 for an alternate address or an address change; <br> 4. Check the systems to see if a more recent DACA request was submitted with updated address; and <br> 5. Check Forms I-821D and I-765 to ensure that there is no different address provided between the two forms. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1964

## D. Denials, Continued

**Abandonment Denials**
(continued)

(b)(7)(e)

| Step | Action |
|------|--------|
| 6 |  |
| 7 | |
| 8 | |
| 9 | Prepare and send the denial. |
| 10 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 11 | Process the Form I-765 for denial. See Chapter 12. |

**NOTE:** If the RFE/NOID was not stamped as a "No Response," the officer should write it on the document. A "No Response" will **ALWAYS** remain on top of the application for proper ROP and the officer will place the denial/withdrawal letter on top of the "No Response."

**Denial for NSF**

When Form I-765 has been "rejected" for NSF, for the $380 I-765 fee and/or the $85 biometrics fee, Form I-821D shall be denied as the DACA filing did not include a concurrently filed I-765 and I-821D. The officer shall select the appropriate denial box on the denial template and update C3 to reflect the denial. After processing the case for denial and updating the system, hold the A-file for 45 days and then forward to the NRC, if a request to review is not received through SRMT.

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 113

1965

# Chapter 10: Post Denial Process

| | |
|---|---|
| **Determining Appropriate Action After Denial** | 1.  Review the grounds for denial. |
| | 2.  If the denial grounds do not involve criminal, national security, or public safety issues, hold the A-file for 45 days and then forward to the NRC, if a request to review is not received through SRMT. |
| | 3.  If the denial involves criminal, national security, or public safety issues, refer to the November 7, 2011, memorandum entitled, <u>Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.</u>  Confirmed fraud denials also warrant NTA issuance. <u>See</u> Appendix B. |
| | 4.  The NTA unit will determine whether NTA issuance is appropriate under the NTA memorandum referenced above. |

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1966

# Chapter 11: Returned Mail

| | |
|---|---|
| **Check for Address Changes** | When notices are returned as undeliverable, the officer should:<br>1. Review the file for any correspondence received;<br>2. Review the returned envelope for any changes from the post office, Check C3, National Claims, and AR11 for an alternate address or an address change;<br>3. Check the systems to see if a more recent DACA request was submitted with an updated address; and<br>4. Check both Form I-821D and the I-765 to ensure that there is no different address provided between the two forms. |

| | |
|---|---|
| **RFE, NOID, Intent to Terminate** | When an RFE, NOID, or Intent to Terminate is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the RFE, NOIT or Intent to Terminate after updating C3.<br><br>If there is no other address to use and the response time indicated has not passed, the file should be placed on hold in accordance with local procedures for the remainder of the response time. |

| If there is no other address found and the response time has passed on the... | Then... |
|---|---|
| RFE | Deny as an abandonment denial. |
| NOID (with NO criminal content), | Deny for cause. |
| Intent to Terminate, | Terminate DACA. |

| | |
|---|---|
| **Denial Notice** | When a denial is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the denial. |

| If there is no new address and the 45 days... | Then... |
|---|---|
| Have **NOT** passed, | Hold file |
| Have passed, | Send to the NRC if no further communication is received |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   115

1967

# Chapter 12: Employment Authorization

## A. General Information

| | |
|---|---|
| **(c)(33) Eligibility Category** | The eligibility category for employment authorization based on a grant of deferred action is 8 C.F.R. § 274a.12(c)(14).  To distinguish DACA-related EADs from other deferred action EADs, the (c)(33) code will be used. |
| **Evidentiary Requirements** | For a (c)(33) EAD, the individual must be approved for DACA.<br><br>The information needed to assess economic necessity is collected on the Form I-765WS.  This worksheet should have been reviewed during the adjudication of Form I-821D.<br><br>Before proceeding with the adjudication of the Form I-765, review C3 to ensure that there is no outstanding RFE, as the RFE would have been issued during the adjudication of Form I-821D. |
| **Validity Period of (c)(33) EAD** | The "valid from" date is the date of approval and the "valid to" date is 2 years minus one day from the date of approval or to the end date of the deferred removal date under DACA, whichever is earlier. |
| **8 C.F.R. § 274a.13(d) – 90 Day Time Period to Issue an EAD** | Pursuant to 8 C.F.R. § 274.12(c)(14), the EAD is predicated on a grant of deferred action. Since Forms I-821D and I-765 are filed concurrently for DACA, Form I-821D will be adjudicated first. If Form I-821D is approved, then Form I-765 would be approved under the (c)(33) code to distinguish the DACA related EADs from other deferred action EADs. Since approval of the Form I-821D is a prerequisite, and since the EAD is based upon a grant of DACA, the 90-day EAD clock begins after Form I-821D is approved for DACA. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1968

# A. General Information, Continued

**Reasons for Filing**

The DACA requestor should indicate one of the following reasons for filing:

- Permission to accept employment: The initial request for employment authorization under an eligibility category; or
- Replacement (of lost or stolen employment authorization document): A request to replace a lost, stolen, mutilated, or incorrect EAD.

If neither of these boxes is checked, verify the Form I-821D approval in C3 to ensure that removal has been deferred under DACA and then check the Form I-765 history in C3 to see if a prior EAD has been issued under the (c)(33) eligibility category. If yes, process the Form I-765 EAD as a replacement. If no, process the Form I-765 EAD as an initial EAD. If a prior <u>replacement</u> EAD under the (c)(33) eligibility category has been issued, refer the case to CFDO.

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013   117**

1969

# B. Adjudication

**Verification of Forms I-821D and I-765**

Access C3 and follow the steps below to verify the information:

| Step | Action |
|------|--------|
| 1 | Verify that the requestor has a pending or an approved initial I-821D on file.  (If no, see the denial section for processing instructions.) |
| 3 | • Check the signatures on Form I-765.<br>• Verify that the biometrics are present. |

**Biometrics**

Officers must check the Image Data field to determine if the requestor's biometrics (photograph, fingerprints, signature) have been received.  Images should be checked PRIOR to approving the case.

| If ... | Then ... |
|--------|----------|
| there is a "Y" | the biometrics have been received. |
| there is a "W" | the biometric(s) have been waived. |
| the fields are blank | then the data was not captured and a card will not print. |

If the requestor is a child less than 14 years of age, there should be a **Waiver (W)** for fingerprint and signature.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)–LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1970

# B. Adjudication, Continued

**Notice of Intent to Deny (NOID)**

Officers will prepare the intent to deny letter, annotate the worksheet, and update CLAIMS as follows:

(b)(7)(e)

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | Prepare and send the NOID.<br><br>**NOTE:** Make certain all letters are spell checked and previewed prior to sending. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1971

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Administrative Errors Related to Material Facts** (continued)

| Step | Action |
|------|--------|
| 6 | The ISO will review the claimed administrative error. |

| If the denial... | Then... |
|------------------|---------|
| Was correct, | • The ISO will route the filing to the SISO for concurrence.<br>• The SISO will concur or not concur and route back to the ISO for appropriate systems updating.<br>• If SISO concurs, the ISO updates C3 with HAC code *SRMT DACA Denial Affirmed* and respond to the DACA requestor using the appropriate DACA SRMT call-up found in Appendix G.<br>• If SISO does not concur, follow the instructions below (Was Not Correct). |
| <u>Was not</u> correct, | • The SISO routes the filing to the ISO for review.<br>• The ISO approves Forms I-821D and I-765.<br>• The ISO updates C3 with the HAC code *SRMT Approved on Service Motion* for <u>each</u> form to show that the case to show that the case was approved on Service Motion. |
| Was not correct, but other reasons for denial still exist, | • The ISO will route the filing to the SISO for concurrence.<br>• If the SISO concurs, the ISO will re-deny the case.<br>• The ISO updates C3 with the HAC code SRMT DACA Denial Affirmed for each form.<br>• The ISO produces a new denial using the SRMT denial template found in Appendix H. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1972

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's biometrics collection.

| Step | Action |
|------|--------|
| 1 | Review the electronic systems to see whether the requestor had his/her biometrics taken. Request the A-file (if needed). |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC codes SRMT DACA Reopened on Service Motion, for both forms. |
| 4 | Send an interim SRMT response using SRMT DACA 1 call-up. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1973

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC (continued)**

| If the requestor... | Then... |
|---|---|
| Did not have his/her biometrics taken, | The reviewing officer should check: <br>• Returned Mail <br>• Address Changes <br>• Rescheduling Requests <br>• The BPU ASC Reschedule Spreadsheet |

| If you... | Then... |
|---|---|
| Locate returned mail, an address change, or a rescheduling request, | • Initiate ASC appointment rescheduling. <br>• After the biometrics results are received, adjudicate the case. <br>• If Form I-821D is approved, approve Form I-765. <br>• Update C3 with HAC SRMT DACA Approved on Service Motion for each form. <br>• If denied, issue a denial using the SRMT denial template. <br>• Update C3 with HAC SRMT Denial Affirmed for each form. |
| Do not locate any returned mail, address change, or rescheduling request, | • Respond to the SRMT that the denial stands, using the SRMT denial template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1974

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC (continued)**

| If the requestor... | Then... |
|---|---|
| Did have his/her biometrics taken, | • The ISO will adjudicate Forms I-821D and I-765.<br>• If Form I-821D is approved, ISO approves Form I-765.<br>• ISO updates C3 with HAC SRMT DACA Approved on Service Motion for each form.<br>• If denied, ISO issues a denial using the SRMT denial template.<br>• ISO updates C3 with HAC SRMT DACA Denial Affirmed for each form. |

**Requestor requested that His/Her Biometrics Appointment at a USCIS ASC be Rescheduled Prior to the Scheduled Date**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the request to reschedule the ASC appointment.

| Step | Action |
|---|---|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC code SRMT DACA Reopened on Service Motion for both forms. |
| 4 | Send an interim SRMT response using SRMT DACA 2 call-up. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   130

1975

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

| | Step | Action |
|---|---|---|
| **Requestor requested that His/Her Biometrics Appointment at a USCIS ASC be Rescheduled Prior to the Scheduled Date** (continued) | 5 | Review the filing and SRMT to determine if a request was received to reschedule the ASC Appointment. |

| If the requestor... | Then... |
|---|---|
| Requested to have his/her biometrics appointment rescheduled, prior to the scheduled date, | <ul><li>The ISO will schedule a new ASC appointment and route the A-file to the appropriate holding shelf to await the biometrics results.</li><li>Adjudicate the case after the biometrics results are received.</li><li>If Form I-821D is approved, approve Form I-765.</li><li>Update C3 with HAC SRMT DACA Approved on Service Motion for each form.</li><li>If denied, issue a denial using the SRMT denial template.</li><li>Update C3 with HAC SRMT DACA Denial Affirmed for each form.</li></ul> |
| Did not request to have his/ her biometrics appointment rescheduled, prior to the scheduled date, | <ul><li>Respond to the SRMT that the denial stands, using the SRMT denial template.</li></ul> |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1976

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor Paid the Filing and Biometric fees for the I-765**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to Non-Sufficient Funds.

Review the electronic systems to see whether the requestor paid the associated fees with the filing.

| Step | Action |
|------|--------|
| 1 | Records Division reviews electronic systems to determine if the fee was paid timely and properly (if necessary, Request the A-file) |
| 2 | Reopen Forms I-821D and I-765 on Service motion. |
| 3 | Update C3 with HAC code SRMT DACA Reopened on Service Motion, for both forms. |
| 4 | Send an interim SRMT response using SRMT DACA 3 call-up. |

| If the Records Division determines... | Then... |
|---------------------------------------|---------|
| The appropriate fees were not paid, | • Respond to the SRMT that the denial stands, using the SRMT denial template. |
| The appropriate fees were paid, | • The ISO obtains the file and schedules a new ASC appointment and routes the A-file to the appropriate holding shelf to await the biometrics results.<br>• Adjudicate the case after the biometrics results are received.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code SRMT DACA Approved on Service Motion for each form.<br>• If denied, issue a denial using the SRMT denial template.<br>• Update C3 with HAC code SRMT DACA Denial Affirmed for each form. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)--LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1977

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Denied the Request for DACA Based on Abandonment and the Requestor Claims He/She did Respond to a RFE Within the Prescribed Time**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's response to a RFE.

| Step | Action |
|------|--------|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service motion. |
| 3 | Update C3 with HAC code SRMT DACA Reopened on Service Motion, for both forms. |
| 4 | Send an interim SRMT response using SRMT DACA4 call-up. |
| 5 | Review A-file and local systems to determine if a response to the RFE was received before the due date. <br><br> <table><tr><td>**If the requestor...**</td><td>**Then...**</td></tr><tr><td>Responded to the RFE within the prescribed time,</td><td><ul><li>Route the filing to the reviewing officer.</li><li>Adjudicate based on the evidence submitted initially and the RFE response.</li><li>If Form I-821D is approved, approve Form I-765.</li><li>Update C3 with HAC code SRMT DACA Approved on Service Motion for each form.</li><li>If denied, issue a denial using the SRMT denial template.</li><li>Route to SISO for denial concurrence</li><li>Update C3 with HAC code SRMT DACA Denial Affirmed for each form.</li></ul></td></tr><tr><td>Did not respond within the required time, or no response was received.</td><td><ul><li>Respond to the SRMT that the denial stands, using the SRMT denial template.</li></ul></td></tr></table> |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1978

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Mailed the RFE to the Wrong Address and the Requestor Submitted a COA Prior to the RFE Issuance**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's change of address.

| Step | Action |
|------|--------|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC code SRMT DACA Reopened on Service Motion, for both forms. |
| 4 | Send an interim SRMT response using SRMT DACA 5 call-up. |
| 5 | Verify the requestor's address. |

| If the requestor... | Then... |
|---------------------|---------|
| Filed a change of address, prior to the issuance of an RFE, | • Re-issue the RFE with a new 87-day response time to the correct address and route the A-file to the RFE hold shelf.<br>• After the RFE response is received, adjudicate Forms I-821D and I-765 based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code SRMT DACA Approved on Service Motion for each form.<br>• If denied, issue a denial using the SRMT denial template.<br>• Update C3 with HAC code SRMT DACA Denial Affirmed for each form. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

1979

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Mailed the RFE to the Wrong address and the Requestor Submitted a COA Prior to the RFE Issuance (continued)**

| If the requestor... | Then... | |
|---|---|---|
| Did not file a COA prior to the issuance of an RFE, | Review that the RFE was sent to the correct address. | |

| If the RFE was sent to, | Then, |
|---|---|
| The correct address, | • Respond to the SRMT stating that the denial stands, using the SRMT denial template. |
| An incorrect address, | • Route the filing to the SISO.<br>• The ISO shall re-issue the RFE with a new 87-day response time to the correct address and route the A-file to the RFE hold shelf.<br>• After the RFE response is received, adjudicate Forms I-821D and I-765 based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code SRMT DACA Approved on Service Motion for each form.<br>• If denied, issue a denial using the SRMT denial template.<br>• Update C3 with HAC code SRMT DACA Denial Affirmed for each form. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

1980

# Chapter 14: DACA Termination

**Removal Deferred Under DACA - Requestor did not Satisfy the Guidelines**

If it comes to the attention of an officer that removal was deferred under DACA in error, the officer should reopen the case on Service motion and issue a Notice of Intent to Terminate, unless there are criminal, national security, or public safety concerns (see below). The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice, prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice.

**Fraud**

If it comes to the attention of an officer that an individual committed fraud in seeking deferral of removal under DACA, the officer should reopen the case on Service motion and issue a Notice of Intent to Terminate. The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice.

The decision to issue a Notice of Intent to Terminate based on fraud should be supported by a fully documented SOF and any other relevant documents/information. The terminated DACA case must also be appropriately recorded in FDNS-DS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1981

# DACA Termination, Continued

**Criminal, National Security, or Public Safety Issues**

If disqualifying criminal offenses or public safety concerns, which are deemed to be EPS, arise after removal has been deferred under DACA, the officer should forward the case to the BCU DACA Team who, in turn, will refer the case to ICE and follow the handling procedures outlined in the November 7, 2011 NTA memorandum for EPS cases. If ICE accepts the case, the issuance of the NTA will result in the termination of DACA. Upon the filing of the NTA with EOIR, the individual's employment authorization terminates automatically.

If ICE does not accept the case or if the disqualifying criminal offense is non-EPS per the November 7, 2011 NTA memorandum, the BCU DACA Team should reopen the case on Service motion and issue a Notice of Intent to Terminate. The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice. Consequently, the Class of Admission (COA) code in CIS should be changed to DAT (Deferred Action Terminated) for employment verification purposes. Additionally, the BCU DACA Team should forward the individual's name to ERO.

If national security concerns arise after removal has been deferred under DACA, the case should go through the CARRP process, per established CARRP protocols.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# DACA Termination, Continued

| | |
|---|---|
| **Enforcement Priority – DACA Not Automatically Terminated** | If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities, and ICE does not plan to issue an NTA, the officer should refer the case to HQSCOPS, though the normal chain of command, to determine whether or not a NOIT is appropriate. If it is determined that the case warrants final termination, the officer will issue DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated] from the Appendix I. |
| **System Updates** | The following new HACs must be used as appropriate when updating a Notice of Intent to Terminate DACA and a DACA Termination Notice in C3: |
| (b)(7)(e) | |

See Appendix I for Notice of Intent to Terminate and Termination Notice.

FOR OFFICIAL USE ONLY (FOUO) – LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1983

# Chapter 15: Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA)

**Introduction**

Parole is the authorization to allow an otherwise inadmissible person to physically proceed into the United States under certain safeguards and controls. Parole is not an admission. The legal authority for parole is found in § 212(d)(5)(A) of the Act. Under this statutory authority, DHS may, as a matter of discretion, parole an individual into the United States under prescribed conditions. Parole is granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Advance parole is generally granted prior to the individual's departure from the United States. Form I-512L evidencing such a grant is generally the document accepted by a transportation company to allow individuals travelling without a visa to return to the United States.

**Prescribed Conditions for Advance Parole**

In accordance with the discretionary authority provided in § 212(d)(5)(A) of the Act, USCIS will determine whether a DACA recipient's purpose for international travel is justifiable based on the circumstances he or she describes in his or her request. Generally, USCIS will only grant advance parole if the applicant's travel abroad will be in furtherance of:

- humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;

- educational purposes, such as semester-abroad programs and academic research, or;

- employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Travel for vacation is not a valid basis for advance parole.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

1984

**Advance Parole Requested for Humanitarian Purposes**

For humanitarian purposes the applicant must show that the travel is for the purpose of:

- Obtaining medical treatment;
- Attending funeral services for a family member; or
- Visiting an ailing relative.

Evidence to demonstrate this purpose includes, but is not limited to:

- A letter from the applicant's physician explaining the nature of his or her medical condition, the specific medical treatment to be sought outside of the United States, and a brief explanation why travel outside the U.S. is medically necessary; or
- Documentation of a family member's serious illness or death.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013   140

1985

# Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Continued

**Advance Parole Requested for Educational Purposes**

For educational purposes the applicant must show that the travel will be undertaken for educational pursuits.

- Examples include semester abroad programs or travel necessary to conduct academic research.
- Travel during an academic year unrelated to academics (e.g., a vacation) is insufficient to qualify as an educational purpose.
- Evidence to demonstrate this purpose includes, but is not limited to:
    - A letter from a school employee acting in an official capacity describing the purpose of the travel and explaining why travel is required or beneficial; or
    - A document showing enrollment in an educational program requiring travel.

**Advance Parole Requested for Employment Purposes**

For employment purposes the applicant must show that the travel relates to fulfilling job requirements.

- These purposes will also include the pursuit of a position in the United States with a foreign employer.
- Examples include an overseas assignment, an interview, a conference, training, or a meeting with overseas clients.
- Evidence to demonstrate employment purposes includes, but is not limited to:
    - A letter from the applicant's employer or conference host describing the need for travel; or
    - A document showing a specific employment need, such as a conference program, that also shows the applicant's participation.

**Expedites**

As a general matter of course, expedite requests will not be granted, because USCIS will make every effort to process the advance parole request quickly; however, in a dire emergency, and if properly documented, if an individual were to appear at a local office and the local office were to deem the need for an expedite to be compelling such that an expedite would be warranted, the local office has the option of processing the advance parole or working through established POCs at the Service Center under normal protocols.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Continued

| | |
|---|---|
| **Filing Location** | A DACA recipient seeking advance parole files Form I-131 with the USICS Lockbox Facility according to the instruction on the form.  The Lockbox Facility will forward the application to the appropriate Service Center according to the agreed upon routing. |

| | |
|---|---|
| **DACA Recipients in Removal Proceedings** | Individuals in removal proceedings, including those with a final removal order, may seek advance parole if the request meets the guidelines for advance parole consideration under DACA.   Notwithstanding the advance parole, a departure made while under a final order of removal (including a voluntary departure that converted automatically to a final removal order) renders that individual inadmissible under  § 212(a)(9)(A) of the Act. |

**Processing Steps**

**Step 1:** Determine whether the applicant is in removal proceedings and/or has a final removal order.

**Step 2:**

**Step 3:** Review the results of the initial ☐ checks.
- If there is no ☐ hit, or the ☐ shows the hit does not relate (DNR), or the hit has already been resolved, go to step 4.
- If there is an unresolved ☐ hit, follow the instructions in the NaBISCOP.

(b)(7)(e)

**Step 4:** Adjudicate the I-131.
- If the criteria have been met, issue the advance parole valid for the duration of the event, as documented in the advance parole application.  For multiple events, issue the advance parole valid for the duration of all the documented events, not to exceed the duration of the deferral of removal under DACA.
- Update the I-131 in C3 for approval and issuance of an I-512L Advance Parole Document.
- If the criteria have not been met, issue a denial and update C3.

Update RFEs, approvals and denials in C3 using current procedures.

FOR OFFICIAL USE ONLY (FOUO)  LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

# <u>Appendix A</u>



*Secretary*
U.S. Department of Homeland Security
Washington, DC 20528

## Homeland Security

June 15, 2012

MEMORANDUM FOR:    David V. Aguilar
                   Acting Commissioner, U.S. Customs and Border Protection

                   Alejandro Mayorkas
                   Director, U.S. Citizenship and Immigration Services

                   John Morton
                   Director, U.S. Immigration and Customs Enforcement

FROM:              **Janet Napolitano**
                   **Secretary of Homeland Security**

SUBJECT:           **Exercising Prosecutorial Discretion with Respect to Individuals**
                   **Who Came to the United States as Children**

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the Department of Homeland Security (DHS) should enforce the Nation's immigration laws against certain young people who were brought to this country as children and know only this country as home. As a general matter, these individuals lacked the intent to violate the law and our ongoing review of pending removal cases is already offering administrative closure to many of them. However, additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.

- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

Janet Napolitano

# Appendix B



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship
and Immigration
Services**

November 7, 2011                                    PM-602-0050

# Policy Memorandum

SUBJECT:   Revised Guidance for the Referral of Cases and Issuance of Notices to Appear
(NTAs) in Cases Involving Inadmissible and Removable Aliens

**Purpose**
This Policy Memorandum (PM) establishes new USCIS guidelines for referring cases and
issuing Notices to Appear (NTAs) in a manner that promotes the sound use of the resources of
the Department of Homeland Security and the Department of Justice to enhance national
security, public safety, and the integrity of the immigration system.  This PM supersedes Policy
Memorandum No. 110, *Disposition of Cases Involving Removable Aliens*, dated July 11, 2006.

**Scope**
This PM applies to and is binding on all USCIS employees unless otherwise specifically
provided in this PM.

**Authority**
Immigration and Nationality Act (INA) sections 101(a)(43), 103(a), 239, 240 and 318; Title 8,
Code of Federal Regulations (8 CFR) parts/sections 2.1, 103, 204, 207.9, 208, 216.3(a),
216.6(a)(5), 236.14(c), and 239; Adjudicator's Field Manual Chapter 10.11(a).

**Background**
U.S. Citizenship and Immigration Services (USCIS) has authority, under the immigration laws,
*see, e.g.,* INA §§ 103(a), 239; 8 CFR §§ 2.1, 239.1, to issue Form I-862, Notice to Appear, to
initiate removal proceedings.[1]  U.S. Immigration and Customs Enforcement (ICE) and U.S.
Customs and Border Protection (CBP) also have authority to issue NTAs.  Accordingly, USCIS
must ensure that its issuance of NTAs fits within and supports the Government's overall removal
priorities, while also ensuring that its NTA policies promote national security and the integrity of
the nation's immigration system.

To those ends, this PM identifies the circumstances under which USCIS will issue an NTA, or
will refer the case to ICE for NTA issuance, in order to effectively handle cases that involve
public safety threats, criminals, and aliens engaged in fraud.

---

[1] *Delegation by the Secretary of the Department of Homeland Security to the Bureau of Citizenship and Immigration
Services,* Delegation Number 0150.1; Paragraph 2(N).  However, international District Directors and officers are not
authorized to issue NTAs.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 2

**Policy**

I. National Security Cases

This PM does not affect the handling of cases involving national security concerns.[2] Guidance from the Fraud Detection and National Security Directorate (FDNS)[3] will continue to govern the definition of these cases and the procedures for resolution and NTA issuance.

II. NTA Issuance Required by Statute or Regulation

USCIS will issue an NTA in the following circumstances:[4]

A. Termination of Conditional Permanent Resident Status and Denials of Form I-751, Petition to Remove the Conditions of Residence (8 CFR 216.3, 216.4, 216.5)[5]
B. Denials of Form I-829, Petition by Entrepreneur to Remove Conditions (8 CFR 216.6)
C. Termination of refugee status by the District Director (8 CFR 207.9)
D. Denials of NACARA 202 and HRIFA adjustments
   1. NACARA 202 adjustment denials (8 CFR 245.13(m));
   2. HRIFA adjustment denials (8 CFR 245.15(r)(2)(i)).
E. Asylum[6], NACARA 203, and Credible Fear cases:[7]
   1. Asylum referrals (8 CFR 208.14(c)(1));
   2. Termination of asylum or termination of withholding of removal or deportation (8 CFR 208.24(e));[8]
   3. Positive credible fear findings (8 CFR 208.30(f));
   4. NACARA 203 cases where suspension of deportation or cancellation of removal is not granted, and the applicant does not have asylum status, or lawful immigrant or non-immigrant status (8 CFR 240.70(d)).

This PM does not apply to, or change, NTA or notification procedures for Temporary Protected Status cases.[9] Further, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, processed under the Violence Against Women Act (VAWA), should continue to

---

[2] National Security Cases include cases involving Terrorist Related Grounds of Inadmissibility (TRIG) pursuant to sections 212(a)(3)(B) and 212(a)(3)(F) of the INA.
[3] See, e.g., *Policy for Vetting and Adjudicating Cases with National Security Concerns* (April 11, 2008).
[4] If any Form I-751 or I-829 cases are also Egregious Public Safety cases, they will be referred to ICE in accordance with Section IV.A.1 of this PM.
[5] See the October 9, 2009 internal memo, *Adjudication of Form I-751, Petition to Remove Conditions on Residence Where the CPR Has a Final Order of Removal, Is in Removal Proceedings, or Has Filed an Unexcused Untimely Petition or Multiple Petitions*. See also the April 3, 2009 memo, *I-751 Filed Prior to Termination of Marriage*.
[6] USCIS may issue an NTA when an asylum applicant withdraws his or her asylum application.
[7] This memo does not apply to the Asylum Division's issuance of Form I-863, Notice of Referral to Immigration Judge, to certain stowaways, crewmembers, and VWP individuals who are requesting asylum or withholding of removal; reasonable fear screenings and negative credible fear screenings.
[8] See also section 208(c)(3) of the INA describing removal when asylum is terminated.
[9] See the September 12, 2003 internal memo, *Service Center Issuance of Notice to Appear (Form I-862)*.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 3

be processed under existing protocols. If the VAWA applicant's Form I-485 is denied, this
memorandum is applicable in terms of NTA issuance.[10]

## III. Fraud Cases with a Statement of Findings Substantiating Fraud

To protect the integrity of the immigration system and address fraud, USCIS will issue NTAs
when a Statement of Findings (SOF) substantiating fraud is part of the record.[11] An NTA
will be issued upon final adjudicative action on the petition and/or application or other
appropriate eligibility determination.[12] NTAs will be issued even if the petition and/or
application is denied for a ground other than fraud, such as lack of prosecution or
abandonment, is terminated based on a withdrawal by the petitioner/applicant, or where an
approval is revoked, so long as an SOF substantiating fraud is in the record.

The NTA should include the charge of fraud or misrepresentation, if possible. The
appropriate charge(s) will be determined on a case-by-case basis. Consultation with local
USCIS counsel to determine the appropriate charge(s) is recommended.

## IV. Cases to be Referred to ICE for a Decision on NTA Issuance

A. Criminal Cases: Criminal aliens are a top immigration enforcement priority for the
government. The following guidance recognizes the prioritization and requires USCIS to
refer criminals to ICE for action or issue an NTA in accordance with this PM.

1. Egregious Public Safety (EPS) Cases

USCIS will refer all EPS cases, including cases with pending N-400s, to ICE
prior to adjudicating the case even if USCIS can deny the petition and/or
application on its merits. An EPS case is defined by USCIS and ICE as a case
where information indicates the alien is under investigation for, has been arrested
for (without disposition), or has been convicted of, any of the following:
   a. Murder, rape, or sexual abuse of a minor as defined in
      section 101(a)(43)(A) of the INA.
   b. Illicit trafficking in firearms or destructive devices as defined in
      section 101(a)(43)(C) of the INA.
   c. Offenses relating to explosive materials or firearms as defined in
      section 101(a)(43)(E) of the INA.

---

[10] When making determinations, employees must keep in mind USCIS's obligations under 8 USC § 1367, which
prohibits the release of any information, outside of DHS, relating to aliens who are seeking or have been approved
for immigration benefit(s) under the provisions for battered spouses, children, and parents in the Violence Against
Women Act.
[11] Alternatively, ICE will determine whether to issue the NTA if a criminal investigation is conducted, fraud is
found, and the investigation results in criminal prosecution.
[12] This includes, but is not limited to, aliens that were granted asylum status by USCIS, adjusted to Lawful
Permanent Resident status, presented fraud indicators, were subject to the Post Adjustment Eligibility Review
(PAER) process in an Asylum Office, and met the PAER criteria for NTA issuance.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 4

    d. Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.

    e. An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.

    f. An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.

    g. An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.

    h. An offense relating to alien smuggling as described in section 101(a)(43)(N) of the INA

    i. Human Rights Violators, known or suspected street gang members, or Interpol hits.

    j. Re-entry after an order of exclusion, deportation or removal subsequent to conviction for a felony where a Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

All EPS cases must be referred to ICE using the procedures outlined below. The case will be referred as soon as it is identified. ICE will have an opportunity to decide if, when, and how to issue an NTA and/or detain the alien. USCIS will not issue an NTA in these cases if ICE declines to issue an NTA. If some other basis unrelated to the EPS concern becomes apparent during the course of adjudication, an NTA may be issued in accordance with this memo.

Referral Process

This referral process is utilized in order to give ICE the opportunity to determine the appropriate course of action before USCIS adjudicates the case. A decision to issue an NTA may directly affect the processing of the pending petition and/or application. Upon issuing the Referral to Immigration and Customs Enforcement (RTI), USCIS will suspend adjudication for 60 days, or until ICE provides notification of its action on the case, whichever is earlier.

In response to the RTI –

    1. ICE may issue an NTA. ICE's issuance of an NTA allows USCIS to proceed with adjudication (unless jurisdiction transfers to EOIR or the pending application is an N-400), taking into account the basis for the NTA.

    2. If ICE does not issue an NTA or otherwise provide notification of its action on the case within 60 days of the RTI, USCIS may resume its adjudication of the case, taking into account the referral grounds.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 5

    a. If the case is approvable, USCIS will consult with ICE prior to
       adjudication.

    b. Once adjudicated, regardless of the decision, USCIS will notify
       ICE of the result by sending a copy of the original RTI to ICE with
       a cover memorandum advising of the outcome of the case.

EPS cases referred to ICE prior to adjudication should be called up and reviewed
no later than 60 days after referral. Normally, the case should be adjudicated by
USCIS. However, USCIS retains discretion to place the case on hold for more
than 60 days if ICE requests additional time to conduct an investigation.[13]

Office-Specific Processes

1. Cases to be adjudicated by Service Centers and the National Benefits
   Center. Adjudication will be suspended and the case will immediately be
   sent to the appropriate Service Center Background Check Unit (BCU).
   The BCU will refer the case to the ICE Benefit Fraud Unit (BFU) via an
   RTI. A hard copy of the RTI will be placed in the A-file and/or receipt
   file. The BCU will retain the file unless ICE requests it or the 60 days
   expire.

2. Cases to be adjudicated by Field Offices. The Immigration Services
   Officer (ISO) will suspend adjudication and the case will immediately be
   referred to the local ICE Special Agent in Charge (SAC) via an RTI. A
   hard copy of the RTI will be placed in the A-file and/or receipt file. A
   copy of the RTI must also be sent to the ICE BFU. USCIS will retain the
   file unless ICE requests the file for their review.

An RTI should include any relevant attachments that USCIS has at the time, such
as a copy of the RAP sheet and a copy of the petition and/or application.

2. Non-Egregious Public Safety Criminal Cases

If it appears that the alien is inadmissible or removable for a criminal offense not
included on the EPS list, USCIS will complete the adjudication and then refer the
case to ICE. This section applies to N-400 cases if the N-400 has been denied on
good moral character (GMC) grounds based on the criminal offense.[14] ICE will
decide if, and how, it will institute removal proceedings and whether or not it will
detain the alien. USCIS will not issue an NTA if ICE declines to issue an NTA.

---

[13]  Pursuant to 8 CFR 274a.13(d), USCIS must complete processing of an Employment Authorization Document
(EAD) within 90 days or issue an interim EAD card valid up to 240 days. Officers should be mindful of this
regulatory timeframe when cases with a pending Form I-765, Application for Employment Authorization, are
referred to ICE.
[14]  See Section V of this memo addressing N-400 cases.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 6

If some other basis unrelated to the criminal offense becomes apparent upon
return of the case to USCIS, an NTA may be issued in accordance with this
memo.

Referral Process

The referral process is used to allow ICE to make a determination whether to
issue an NTA, based on the totality of circumstances and its priorities. ICE will
determine the appropriate grounds for removal if an NTA is issued.

Once adjudication is complete, USCIS will send an RTI to ICE. USCIS will
concurrently transmit a copy of the RTI to ICE Headquarters (HQ) Enforcement
and Removal Operations (ERO) Criminal Alien Division for statistical monitoring
purposes. If there is any confusion or uncertainty about classifying a case as
egregious versus non-egregious, the USCIS ISO should refer the matter as an EPS
case using the process described above.

The accompanying A-file will be referred to ICE with the RTI, if the file is in the
possession of the referring USCIS office or center. If the file is not at the
referring USCIS office or center, the RTI should include any relevant attachments
that USCIS has, such as a copy of the RAP sheet and a copy of the petition and/or
application. Where USCIS obtained certified conviction records through normal
processing of the case, USCIS will include the records with the RTI, but it will
not hold the RTI on a completed case solely to obtain disposition records. Instead
ICE will decide whether, and how, it will obtain such records as part of its
decision to issue an NTA.

Office-Specific Processes

1. Cases adjudicated by Service Centers and the National Benefits Center.
   Once adjudication is completed, if the alien is removable on a criminal
   charge, regardless of the reason for the denial, the file will be referred to
   the BCU. The BCU will refer the case, along with the A-file and/or receipt
   file, to the appropriate ERO Field Office Director (FOD) via an RTI.

2. Cases adjudicated by Field Offices. Once adjudication is completed, if the
   alien is removable on a criminal charge, regardless of the reason for the
   denial, USCIS will prepare an RTI and refer the case, along with the
   A-file and/or receipt file, to the local ERO FOD.

B. National Security Entry Exit Registration System (NSEERS) Violator Cases

USCIS will refer all cases in which an application is denied based on an NSEERS
violation to ICE for possible NTA issuance.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 7

V.  Cases Involving Form N-400, Application for Naturalization

The following guidance applies to the issuance of NTAs in cases in which applicants for
naturalization are removable.  There are two primary situations in which NTAs may be
issued in connection with a filed Form N-400.  If the N-400 case involves fraud (documented
in the SOF) the procedures found in this section must be followed, rather than the procedures
found in Section III (Fraud Cases with a Statement of Findings Substantiating Fraud).
However, the below guidance does not apply to EPS cases.  EPS cases must be referred in
accordance with Section IV.A.1 (Egregious Public Safety Cases) of this memo.
Additionally, the below guidance does not apply to non-EPS criminal cases when the N-400
can be denied on GMC grounds based on the criminal act.  These cases must be denied and
referred in accordance with Section IV.A.2 (Non-Egregious Public Safety Criminal Cases).

A.  The first situation occurs when the applicant may be eligible to naturalize but is also
deportable under section 237 of the INA.  Examples include applicants convicted of
aggravated felonies prior to November 29, 1990, or applicants convicted of deportable
offenses after obtaining Lawful Permanent Resident (LPR) status that do not fall within
the GMC period.  The ISO should:

1.  Make a written recommendation on the issuance of an NTA through a review of
the totality of the circumstances to include factors such as: severity of crime, time
since crime committed, other criminal conduct, reformation, immigration history
including method of entry, length of presence in the U.S., and prior immigration
violations, and contributions to society to include the pursuit of education and
military service.[15]

2.  Once the ISO has made a recommendation on whether or not to issue an NTA, the
case should be forwarded to the N-400 NTA Review Panel (Review Panel), along
with the written recommendation.  A Review Panel must be formed in each Field
Office and include a local Supervisory Immigration Services Officer (SISO), a
local USCIS Office of Chief Counsel attorney, and a district representative.  An
attorney from ICE's local Office of Chief Counsel will be invited to participate
and will have an advisory role on the panel.  The Review Panel will make the
final determination on NTA issuance.  If consensus cannot be reached by the
Review Panel, the case will be elevated to the District Director, through the
district representative, for a final decision.

3.  If the Review Panel decides to issue an NTA, place the N-400 on hold until
removal proceedings have concluded.  Once proceedings have concluded, or if the
Review Panel declines to issue an NTA, adjudicate the case appropriately.

---

[15] Additional factors to be taken under consideration can be found in the June 17, 2011 ICE memo, *Exercising
Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the
Apprehension, Detention, and Removal of Aliens.*

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 8

B. The second situation occurs when it is determined that the applicant was inadmissible at
the time of adjustment or admission to the United States, thus deportable under section
237 of the INA and not eligible for naturalization under section 318 of the INA.[16]  The
ISO should:

1. Make a written recommendation on the issuance of an NTA through a review of
the totality of the circumstances to include factors such as: willfulness of actions,
fraud factors, length of LPR status, criminal history, and officer error at time of
adjustment.

2. Once the ISO has made a recommendation on the issuance of the NTA, the case
should be forwarded to the Review Panel (see Section V.A.2), along with the
written recommendation.  The Review Panel will make the final determination on
NTA issuance.  If consensus cannot be reached by the Review Panel, the case will
be elevated to the District Director, through the district representative, for a final
decision.

3. If the Review Panel decides to issue an NTA, place the N-400 on hold until
removal proceedings have concluded.  Once removal proceedings have
concluded, adjudicate the case appropriately.  If the Review Panel declines to
issue an NTA, deny the case under section 318 of the INA.

VI.  Other Cases

A. An alien may request NTA issuance to renew an application for adjustment or in certain
cases with a denied N-400.  The request must be made in writing.[17]

B. An asylum applicant issued an NTA may request NTA issuance for family members not
included on the asylum application as dependents for family unification purposes.  The
request must be made in writing.[18]

VII.  Exceptions

Exceptions to the guidance in this PM require concurrence from Regional or Center
Directors, who will consult with ICE before issuing an NTA.

---

[16] In the Third Circuit *only* (Pennsylvania, New Jersey, Delaware, and the U.S. Virgin Islands), based on the holding
in *Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009), if the alien has been an LPR for at least five years, the alien
cannot be placed in removal proceedings for fraud or willful misrepresentation of a material fact at time of
adjustment, if USCIS could have learned of the fraud or misrepresentation through reasonable diligence before the
five year rescission period expired.  Please consult with USCIS counsel if there are questions regarding the
applicability of this precedent.
[17] USCIS retains discretion to deny a request.  USCIS should consider ICE actions and determinations when making
an NTA issuance decision under this section.
[18] USCIS retains discretion to deny a request.

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 9

VIII. Coordination with ICE

According to the June 2011 ICE memo regarding the exercise of prosecutorial discretion consistent with priorities,[19] USCIS will receive notice before an ICE attorney exercises prosecutorial discretion and dismisses, suspends, or closes a case. The local N-400 NTA Review Panel will work with ICE to come to a resolution if USCIS does not agree with ICE's use of prosecutorial discretion in a particular case. If concurrence cannot be reached, the case should be elevated to the USCIS Office of Chief Counsel in headquarters.

**Implementation**

Each field office must form an N-400 NTA Review Panel and create a process to complete RTIs and refer EPS and non-EPS criminal cases to ICE. A written list enumerating the members of the Review Panel and a document outlining the process of referral must be sent to the appropriate district office within 30 days of the issuance of this memorandum.

**Use**

This PM is intended solely for the guidance of USCIS personnel in the performance of their official duties. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law, or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**Contact Information**

Questions or suggestions regarding this PM should be addressed through appropriate channels to the Field Operations Directorate, Service Center Operations Directorate, or the Refugee, Asylum, and International Operations Directorate.

---

[19] *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*, signed June 17, 2011.

(b)(7)(e)

# <u>Appendix C</u>



<u>Appendix D</u>

## DEFERRED ACTION FOR CHILDHOOD ARRIVALS
## RFE CALL-UPS

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply. Text only highlighted in **YELLOW** and not bracketed is directive in nature and should not be printed in the letter being sent but should be deleted. Please mix call-ups into a single RFE as needed.

NOTE 1: Please add call-ups **DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION and DACA 301 – YOU MAY SUBMIT PHOTOCOPIES** to any other call-ups below as needed.

NOTE 2: Each RFE call-up is labeled as follows:

- INITIAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the RFE call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.


## I.   GUIDELINES

### DACA 100 – IDENTITY (BOTH INITIAL AND RENEWAL DACA)
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to prove your identity is insufficient (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

- Passport;
- Birth certificate accompanied by photo identification:
- Any national identity documents from your country of origin bearing your photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing your name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards, etc.);
- Any school-issued form of identification with photo;
- Military identification document with photo;
- State-issued photo ID showing date of birth; or
- Any other document with photo that you believe is relevant.

Expired documents are acceptable.

### DACA 101 – CONTINUOUS RESIDENCE (INITIAL DACA ONLY)
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you have continuously resided in the United States during the 5-year period immediately before June 15, 2012 and up to the time of filing is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still

submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

    a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business);

       **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

       Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

    b. Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service;

    c. School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance;

    d. Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

    e. Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;

    f. Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.);

    g. Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

    h. Any other relevant document.

*(ISO: Add the appropriate language below to the RFE if any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank **OR** if page 3 of the Form I-821D is missing.)*

In addition, you did not answer question(s)(*ISO should list the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D that were not answered*) in Part 2, Arrival/Residence Information, of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

*(Include a copy of the requestor's Form I-821D with the RFE)*

**OR**

2002

In addition, you did not submit page three (3) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to complete the enclosed page three (3) of the form.

Also enclosed is a copy of your original Form I-821D. Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

*(Include a copy of the requestor's Form I-821D and a blank page 3 of the form with the RFE)*

## DACA 102 - BRIEF, CASUAL, AND INNOCENT ABSENCE (INITIAL DACA ONLY)
To be considered for deferred action as a childhood arrival, you must have continuously resided in the United States during the 5-year period immediately before June 15, 2012 and up to the date you filed your request for deferred action. A brief, casual, and innocent absence from the United States will not interrupt your continuous residence.

An absence will be considered brief, casual, and innocent, if:

(1) The absence was short and reasonably calculated to accomplish the purpose of the absence;
(2) The absence was not the result of an order of exclusion, deportation, or removal;
(3) The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for each departure you made from the United States since June 15, 2007 to show that each departure you made from the United States since June 15, 2007 was brief, casual, and innocent is insufficient. *(ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence, modify RFE call up accordingly).* You may still submit evidence, which may include, but is not limited to, copies of: *(ISO should delete any of the following that were already provided by the requestor)*

- Plane or other transportation tickets or itinerary showing the travel dates;
- Passport entries;
- Hotel receipts showing the dates you were abroad;
- Evidence of the purpose of the travel (e.g., you attended a wedding or funeral);
- Advance parole document; or
- Any other evidence that could support a brief, casual, and innocent absence.

## DACA 103A – ARRIVED IN THE UNITED STATES BEFORE AGE 16 (INITIAL DACA ONLY)
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you came to the United States prior to your 16th birthday is insufficient. *(ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly).* You may still submit evidence, which may include, but is not limited to, copies of: *(ISO should delete any of the following that were already provided by the requestor)*

- Passport with an admission stamp indicating when you entered the United States;
- I-94/I-95/I-94W Arrival/Departure Record;
- Any INS or DHS document stating your date of entry (e.g., Form I-862, Notice to Appear);
- Travel records, such as transportation tickets showing your dates of travel to the United States;

- School records (transcripts, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and the periods of school attendance;
- Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;
- Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.); or
- Any other document that you believe is relevant.

## DACA 103B – ESTABLISHED RESIDENCE IN THE UNITED STATES PRIOR TO AGE 16 (INITIAL DACA ONLY)

The record indicates that you left the United States for some period of time before returning on or after your 16th birthday and beginning period of continuous residence. Please submit evidence that you established residence in the United States before your 16th birthday. You can demonstrate that you established residence in the United States before your 16th birthday by, for example, submitting records showing that you attended school or worked in the United States during that time, or that you lived in the United States for multiple years during that time.

Evidence of establishing residence in the United States before your 16th birthday may include, but is not limited to, copies of:

**a.** School records (transcripts, report cards, etc.) from the schools that you attended in the United States before turning 16 years old, showing the name(s) of the schools and periods of school attended;

**b.** Employment records showing that you worked in the United States before turning 16 years old (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, State verification of the filing of state income tax returns, letters from employer(s), or, if you are self-employed, letters from banks and other firms with whom you have done business);

**c.** Documents evidencing that you were physically present in the United States for multiple years prior to your 16th birthday; or

d. Any other relevant document.

## DACA 104A – HAD NO LAWFUL STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were in unlawful status on June 15, 2012 is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

- I-94/I-95/I-94W Arrival/Departure Record showing the date your authorized stay expired;
- If you have a final order of exclusion, deportation, or removal issued on or before June 15, 2012, submit a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing you into removal proceedings;
- Any other document that you believe is relevant to show that you lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

## DACA 104B – STUDENT IN UNLAWFUL STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were in unlawful status on June 15, 2012 is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the*

2004

*requestor did not submit any evidence for this guideline, modify RFE call up accordingly*).  You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

- I-94/I-95/I-94W Arrival/Departure Record showing the date your authorized stay expired;
- If you have a final order of exclusion, deportation, or removal issued on or before June 15, 2012, submit a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing you into removal proceedings;
- Copies of your transcripts showing your student status from (ISO should insert dates);
- Copies of all properly completed old I-120AB/I-20ID forms or new SEVIS I-20 forms (required since August 1, 2003) for all schools attended;
- Proof of reinstatement;
- Any other document that you believe is relevant to show that you lacked lawful immigration status on June 15, 2012;
- Any document relating to parole.

## DACA 105 – PROOF OF PRESENCE IN THE UNITED STATES ON JUNE 15, 2012 (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were present in the United States on June 15, 2012 is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business).

   **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

   Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

b. Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service.

c. School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance.

d. Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records).

e. Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization.

f. Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).

g. Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and

2005

another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

h.  Any other relevant document.

## DACA 106 – CURRENTLY ENROLLED IN SCHOOL (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, showing that you have been accepted for enrollment or are already attending classes in one of the following is insufficient:

- A public, private, or charter elementary school, junior high or middle school, high school, secondary school, alternative program, or homeschool program meeting state requirements;
- A public or private college or university, or community college;
- an education, literacy, or career training program (including vocational training) that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; or
- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other state-authorized exam (e.g., HiSet or TASC) in the United States.

*(ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the documents provided by the requestor are incomplete (i.e. no identifying information) or illegible, the ISO should note this in the RFE. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly)*

You may still submit evidence, which may include the following: *(ISO should delete any of the following that were already provided by the requestor)*

- **A public,  private, or charter elementary school, junior high or middle school, high school, secondary school alternative program or homeschool program meeting state requirements;**
  - Such evidence may include, but is not limited to:
    - If accepted for enrollment, but classes have not yet commenced:
      - o  An acceptance letter on school letterhead from the school's authorized representative. Such acceptance letter is to include the name and address of the school, your grade level, and the date that classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
      - o  A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, if you have a disability;
      - o  A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
      - o  Any other relevant evidence.
    - If already enrolled – Current school registration cards; current  transcripts; report cards; progress reports showing the name of the school, the time period or semester covered by the document, and the current grade; or a current IEP showing your process to date.
- **A public or private college or university, or community college;**
  - Such evidence may include, but is not limited to:
    - If accepted for enrollment, but classes have not yet commenced:
      - o  An acceptance package or related material on school letterhead from the school's authorized representative. Such acceptance package or related material is to

2006

include the name and address of the school, your grade level or class year, and the date or term when classes are scheduled to commence. In addition, the acceptance package or related material is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;

- o A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, if you have a disability;
- o A copy of your current tuition bill;
- o A current class schedule containing your name, the list of courses, and the day and time of each class; or
- o Any other relevant evidence.

- ▪ If already enrolled – Current school registration cards; current transcripts; report cards; progress reports showing the name of the school, the time period or semester covered by the document, and the current grade or class year; or a current IEP showing your process to date.

- **A course of study to pass a General Education Development (GED) Certificate exam or other equivalent State-authorized exam** (e.g., HiSet or TASC) in the United States;

  Such evidence is to include a letter from the authorized representative of the program that includes information such as:
  - ▪ Your name and date of enrollment;
  - ▪ The duration of the program and expected completion date;
  - ▪ Whether the course of study is for a regular high school diploma or recognized equivalent under State law or a GED exam or other equivalent State-authorized exam (e.g., HiSet or TASC) in the United States;
  - ▪ The program's source and amount of funding;
  - ▪ The program's authorized representative's contact information; and
  - ▪ The program's demonstrated effectiveness *if* it is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part.

- ▪ **An educational or career training program (including vocational training);**

  Such evidence may include, but is not limited to:
  - ▪ If accepted for enrollment, but classes have not yet commenced:
    - o An acceptance letter on school letterhead from the school registrar/authorized school representative. Such acceptance letter is to include the name and address of the program, a brief description of the program, the duration of the program, and state when the classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for the program;
    - o A copy of your current year registration (intake form/enrollment form); or
    - o Any other relevant documentation.
  - ▪ If already attending classes– Current transcripts, report cards, or progress reports showing the name of the school, the time period or semester covered by the document, and if relevant, the current educational or grade level.
  - ▪ The program's demonstrated effectiveness *if* it is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part.

- **Literacy training; or**

  Such evidence is to include a letter from the literacy program administrator or authorized representative providing information such as:
  - ▪ Your name;
  - ▪ The date of your enrollment;
  - ▪ The duration of the literacy program and the expected completion date;
  - ▪ The program administrator or authorized representative's contact information; and
  - ▪ The program's demonstrated effectiveness *if* it is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part.

- **An English as a Second Language (ESL) program.**

2007

Such evidence is to include a letter from the ESL program administrator or authorized representative.   This letter is to include the following:

- Your name;
- The date of your enrollment;
- The duration of the ESL program and the expected completion date;
- The program administrator or authorized representative's contact information; and
- The program's demonstrated effectiveness *if* it is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part.

## DACA 106A – EVIDENCE OF ACCEPTANCE BUT NO EVIDENCE OF REGISTERING FOR CLASSES: (INITIAL DACA ONLY)

You have provided an acceptance letter or other related material indicating that you have been accepted at (*ISO should list the name of the private elementary/junior high/middle school/high school/secondary school or public or private college/university/community college*).   However, you did not include evidence that you have enrolled in that school.   Therefore, you are requested to submit such evidence which is to include, but is not limited to paid tuition bills or evidence that you have registered for classes at that school.

## DACA 106B – NON- PROFIT STATUS (GED; Literacy, Educational or Career Training Program (Including Vocational Training); ESL) (INITIAL DACA ONLY)

If the (*ISO should insert GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; or English as a Second Language*) in which you are enrolled has non-profit status, please provide evidence of such status. Evidence of the (*ISO should insert GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; or English as a Second Language*) program's non-profit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code.

## DACA 106C –PUBLIC FUNDING (GED; Literacy, Educational or Career Training Program (Including Vocational Training); ESL) (INITIAL DACA ONLY)

If the (*ISO should insert GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; or English as a Second Language*) in which you are enrolled is funded in whole or in part by public funds (Federal, State, county or municipal), you are requested to submit a letter from the (*ISO should insert GED program administrator/authorized representative; school registrar/authorized school representative if requestor is enrolled in Career Training Program (Including Vocational Training); literacy program administrator/authorized representative; or ESL program administrator/authorized representative*) providing basic details about the funding, such as the source(s) of the funding.

## DACA 106D – NOT PUBLICLY FUNDED – (GED; Literacy, Educational or Career Training Program (Including Vocational Training); ESL (INITIAL DACA ONLY)

If the (*ISO should insert GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; or English as a Second Language*) in which you are enrolled is <u>not</u> funded in whole or in part by public funds (Federal, State, county, or municipal) or not administered by a non-profit entity you are requested to submit a letter from the program administrator or authorized representative providing basic details about the funding, such as the amount and the source(s) of the funding.

## DACA 106E – DEMONSTRATED EFFECTIVENESS (GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; ESL) (INITIAL DACA ONLY)

*(ISO should select the correct RFE paragraph below depending upon the program in which the requestor is enrolled)*

If the **GED/Equivalency program,** in which you are enrolled, is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part, or is not administered by a non-profit organization, you are requested to submit information from the GED program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in assisting students in obtaining a regular high school diploma, GED, or a recognized equivalent certificate, or passing a GED or recognized equivalent exam;
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

If the **educational or career training program (including vocational training), in** which you are enrolled, is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part, or is not administered by a non-profit organization ,you are requested to submit information, with supporting documentation, if available, from the school registrar/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in placing students in employment, job training, or post-secondary education; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

If the **literacy program** in which you are enrolled, is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part, or is not administered by a non-profit organization, you are requested to submit information from the literary program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in placing students in post-secondary education, job training programs, or employment; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

If the **English as a Second Language (ESL)** program in which you are enrolled is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part, or is not administered by a non-profit organization , you are requested to submit information from the ESL program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The length of the program's existence;
- The program's track record in assisting students in obtaining placement in postsecondary schools, job training programs, or employment; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

## DACA 106F – GRADUATED FROM SCHOOL  (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, is insufficient to show that, at the time of filing, you graduated from a U.S. high school or earned a State recognized high school equivalency diploma or certificate by completing state requirements or passing a general educational development (GED) exam or equivalent State-authorized exam in the United States.  You did not submit any evidence for this guideline.  However, if you would

2009

like to provide documentation to substantiate your request, you may submit evidence, which may include, but is not limited to, copies of:

- A diploma, certificate of completion, certificate of attendance, or alternate award from a U.S. public high school or secondary school; or
- A diploma, certificate of completion, certificate of attendance, or alternate award issued by a U.S. private or independent high school or secondary school that is recognized or accredited by a state educational agency or by a local educational agency; or
- A diploma, certificate of completion, certificate of attendance, or alternate award from a U.S. private or independent high school or secondary school or program that is accredited by a body that is affiliated with a larger organization whose post-secondary education accrediting program is recognized by the U.S. Department of Education (USDE); or
- Evidence that you passed the GED exam, HiSet exam, TASC exam, or other comparable state-authorized exam, or met other state requirements, and, as a result, you received the recognized equivalent of a high school diploma under State law; or
- Evidence that you passed a state high school exit exam or a college/university placement exam from a college/university that is accredited by an organization that is recognized by USDE that allows you to enter a degree program.

Generally, these documents show your name, the name of the school or the local school district, state or educational agency issuing the diploma or record, your date of graduation or completion, and the name, signature and title of the person issuing or certifying the document on behalf of the school or local school district, state, or educational agency.

## DACA 106G - U.S. HIGH SCHOOL DIPLOMA OR RECOGNIZED EQUIVALENT (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, is insufficient to show that, at the time of filing, you graduated from a U.S. high school or earned a State recognized high school equivalency diploma or certificate by completing state requirements or passing a general educational development (GED) exam or equivalent State-authorized exam in the United States. The [*Insert Name of Document; e.g., High School Proficiency Diploma*] awarded by [*Insert name of school or institution*] on [*Insert date the document was issued*], does not appear to be a U.S. high school diploma or the recognized equivalent of a high school diploma according to [*Insert State*] standards, nor does it appear to demonstrate that you passed a GED exam or other comparable State-authorized exam. Therefore, the documents you submitted are insufficient. However, if you would like to provide alternate documentation to substantiate your request, you may submit additional evidence, which may include, but is not limited to, copies of:

- A diploma, certificate of completion, certificate of attendance, or alternate award from a U.S. public high school or secondary school; or
- A diploma, certificate of completion, certificate of attendance, or alternate award issued by a U.S. private or independent high school or secondary school that is recognized or accredited by a state educational agency or by a local educational agency; or
- A diploma, certificate of completion, certificate of attendance, or alternate award from a U.S. private or independent high school or secondary school or program that is accredited by a body that is affiliated with a larger organization whose post-secondary education accrediting program is recognized by the U.S. Department of Education (USDE); or
- Evidence that you passed the GED exam, HiSet exam, TASC exam, or other comparable state-authorized exam, or met other state requirements, and, as a result, you received the recognized equivalent of a high school diploma under State law; or

2010

- Evidence that you passed a state high school exit exam or a college/university placement exam from a college/university that is accredited by an organization that is recognized by USDE that allows you to enter a degree program.

Generally, these documents show your name, the name of the school or the local school district, state or educational agency issuing the diploma or record, your date of graduation or completion, and the name, signature and title of the person issuing or certifying the document on behalf of the school or local school district, state, or educational agency.

## DACA 106H –ENROLLED IN SCHOOL (QUESTIONABLE INSTITUTION) - INITIAL DACA ONLY

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, showing that, at the time of filing, you were enrolled in school is insufficient:

If (ISO should insert name of educational program), the educational program in which you were enrolled, at the time of filing, is a public, private, or charter elementary school, junior high/middle school or high school/secondary school or is an alternative program or homeschool program, you are requested to provide evidence that the school is a(n):
- U.S. traditional or nontraditional (e.g., charter) public school;
- U.S. private or independent school that is recognized or accredited by a state educational agency or by a local educational agency or by a body that is affiliated with a larger organization whose post-secondary education accrediting program is recognized by the U.S. Department of Education; or
- Alternative educational program that meets state requirements; or
- Homeschool program that meets state requirements.

OR

If (ISO should insert name of educational program) is funded in whole or in part by public funds (Federal, State, county or municipal), or administered by a nonprofit organization, you are requested to submit a letter from the program administrator/authorized representative providing basic details about the funding, such as the source(s) of the funding. If the program is administered by a nonprofit organization, please provide evidence of such status. Evidence of nonprofit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from Federal taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code.

OR

If (ISO should insert name of educational program) is not publicly funded in whole or in part, or is not administered by a nonprofit organization, you are requested to submit information, with supporting documentation, if available, from the school registrar/authorized representative/program administrator relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:
- The duration of the program's existence;
- The program's track record in placing students in employment, job training, or post-secondary education;
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; or
- Any other relevant information indicating the program's overall quality.

## DACA 107 – MEDICAL LEAVE (INITIAL DACA ONLY)
You indicate in your filing that you are currently on medical leave from school. Therefore, please submit evidence of your medical leave and indicate the date you expect to return to school. Evidence of your

2011

medical leave may include, but is not limited to, an explanation from a medical doctor on official letterhead stating the diagnosis and prognosis, and how long your treatment is expected to last.

## DACA 108 – MILITARY (INITIAL DACA ONLY)

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor.*)

- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records; or
- Military health records.

## DACA 109- REMOVAL PROCEEDINGS (INITIAL DACA ONLY)

Submit documents that you have been issued an order of exclusion, deportation or removal. Such documentation could include copies of:
- Any removal, deportation, or exclusion order issued by an Immigration Judge;
- Final decision from the Board of Immigration Appeals (BIA); or
- Final decision from a U.S. Court of Appeals in your case.

## II.  APPLICATION SUPPORT CENTER (ASC) RELATED

## DACA 130 – SCHEDULE ASC APPOINTMENT (BOTH INITIAL AND RENEWAL DACA)

Your request cannot be processed until you have appeared at an Application Support Center (ASC) for the collection of a digital photograph, signature, and fingerprint(s). Our records indicate that you have not yet appeared at an ASC for this purpose. Follow the instructions on the appointment notice for biometrics capture [enclosed with this notice/that will be mailed to you separately].  Additional information regarding the location of the ASC can be found on the USCIS web site at www.USCIS.gov.  Please bring this notice with you to your appointment.

If you have appeared at an ASC for biometrics capture, please return this notice to the address below with the appointment information.

Date of Appointment:  _____

Location of Appointment:  _____

## DACA 131– RESCHEDULE ASC APPOINTMENT (TECHNICAL DIFFICULTIES) (BOTH INITIAL AND RENEWAL DACA)

Our records indicate that you have already appeared at an Application Support Center (ASC) as previously scheduled.  However, due to technical problems, your previously-acquired biometrics from the ASC cannot be used.

[USCIS will mail a separate notice to you containing information for a new appointment for biometrics capture at the ASC nearest you/Follow the instructions of the enclosed appointment for biometrics capture at the ASC nearest you.]  Additional information regarding the location of the ASC can be found on the USCIS web site at www.USCIS.gov.  Please bring this notice with you to your appointment in addition to any other required documents as stated in the new appointment notice.

2012

We sincerely regret any inconvenience this has caused you.

## III.    NAME, DATE OF BIRTH DISCREPANCY

### DACA 140 – DATE OF BIRTH DISCREPANCY (BOTH INITIAL AND RENEWAL DACA)
USCIS records indicate that you were born on [**DATE**]. You indicated on your request for consideration of deferred action for childhood arrivals that you were born on [**DATE**]. Submit documentary evidence to establish your true date of birth. Such evidence may include your birth certificate and/or passport. If you submit a copy of your birth certificate, you must submit copies of the front and back (if there is information on the back).

### DACA 142 – NAME CHANGE/DISCREPANCY (BOTH INITIAL AND RENEWAL DACA)
USCIS records and/or evidence you submitted indicate that your name is [**NAME**]. You indicated on your request for consideration of deferred action for childhood arrivals that your name is [**NAME**]. Submit documentary evidence to establish your true name. Such evidence may include a birth certificate, adoption records, marriage certificate, passport, or government documentation showing that you have officially changed your name.

### DACA143 – SUBMIT EVIDENCE OF NAME CHANGE (BOTH INITIAL AND RENEWAL DACA)
Submit proof of your name change. Such proof would normally be a marriage certificate, termination of marriage (divorce or annulment decree), adoption decree, or court order.

## IV.    FINGERPRINTING / CRIMINALITY

### DACA 150A – 2 UNCLASSIFIABLE PRINTS – SUBMIT LOCAL POLICE CLEARANCES (BOTH INITIAL AND RENEWAL DACA)
To date, you have been fingerprinted twice and USCIS has been unable to get a required clearance for you because both sets of fingerprints were rejected as unclassifiable by the Federal Bureau of Investigation. At this time you must submit a local police clearance certificate for each jurisdiction (city, town, county, or municipality) in which you have lived for six months or more within the past five years.

**Important Note**: The police clearance certificate(s) must show your name and date of birth, and all aliases, if applicable, for all names researched. You must supply the law enforcement agency with all

(b)(5)    aliases you listed on your Form I-821D

Fingerprint cards are not acceptable evidence of a police clearance certificate.

If the police clearance shows you have been arrested for, charged with, or convicted of a felony or misdemeanor, you must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state or federal law. If you are unable to provide such records because your case was expunged or sealed, you must provide information about your arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. The charge and disposition of each arrest must be specifically identified (not just numeric citations or codes). Additionally, if you were convicted, you may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department identifying the statute under which you were convicted and the sentence you received.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

2013

**DACA 150B – FINGERPRINT WAIVER (BOTH INITIAL AND RENEWAL DACA)**

The Application Support Center (ASC) granted a fingerprint waiver on your case. At this time you must submit a local police clearance certificate for each jurisdiction (city, town, county, or municipality) in which you have lived for six months or more within the past five years.

(b)(5)

**Important Note**: The police clearance certificate(s) must show your name and date of birth, and all aliases, if applicable, for all names researched. You must supply the law enforcement agency with all aliases you listed on your Form I-821D.

Fingerprint cards are not acceptable evidence of a police clearance certificate.

If the police clearance shows you have ever been arrested for, charged with, or convicted of a felony or misdemeanor, you must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state or federal law. If you are unable to provide such records because your case was expunged or sealed, you must provide information about your arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. The charge and disposition of each arrest must be specifically identified (not just numeric citations or codes). Additionally, if you were convicted, you may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department identifying the statute under which you were convicted and the sentence you received.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

**DACA 150C – SPECIAL ACCOMMODATIONS (BOTH INITIAL AND RENEWAL DACA)**

You, or someone acting on your behalf, recently made an inquiry to this office seeking information about how to request special accommodations for an appointment at an Application Support Center (ASC).

USCIS is committed to providing accommodations that permit qualified persons with disabilities to have an equal opportunity to participate in its programs. All requests for special accommodations must be made through the National Customer Service Center (NCSC) at 1-800—375-5283 [toll free] (TDD: 1-800-767-1833). USCIS has forwarded your information to schedule a biometrics appointment for you at a local ASC. Once you receive the ASC appointment, please call the NCSC to request special accommodations. When you, or someone acting on your behalf, call the NCSC, please provide the information found on your ASC appointment notice to the USCIS representative. The representative will ask you questions about your special accommodations request and will give you information about how to submit evidence in support of your request, if such evidence is required.

To obtain additional information about this process, visit to the Requesting Special Accommodations page at https://egov.uscis.gov/crisgwi/go?action=offices.accommodations
or call the NCSC toll free at 1-800-375-5283.

**DACA 151– SUBMIT JUDGMENT AND CONVICTION DOCUMENTS (BOTH INITIAL AND RENEWAL DACA)**

A background check has been conducted based upon the fingerprints you provided at the Application Support Center. Your criminal history check has revealed that you were arrested on **[DATE]**, in **[JURISDICTION]** and charged with **[CHARGES]**.
**(Where appropriate, Service Center may also need to include the name under which the arrest took place if different from name being used by requestor on Form I-821D. If there are multiple charges, you may bullet each charge.)**

*Page 14* 1/26/2015

2014

At this time you must provide a certified court disposition which lists the final judgment and sentence for each arrest disposed, unless disclosure is prohibited under state or Federal law. If you are unable to provide such records because your case was expunged or sealed, you must provide information about your arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. The charge and disposition of each arrest must be specifically identified (not just numeric citations or codes). Additionally, if you were convicted, you must submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department identifying the statute under which you were convicted and the sentence you received. If court proceedings are currently pending, please provide a copy of the charging document filed with the court and information on your next scheduled hearing. If you were entered into a deferred prosecution, pretrial diversion, or rehabilitative program, evidence of participation in or completion of such program is required.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

## V.   I-821D PART 4 INCOMPLETE

### DACA 155 – FORM I-821D INCOMPLETE  (BOTH INITIAL AND RENEWAL DACA)
You did not answer question(s)(*ISO should list the question numbers in Part 4 of the Form I-821D that the requestor did not answer*) in Part 4 of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

After you answer these questions, you must re-sign and date page five (5) of the enclosed copy of your original Form I-821D. The completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

As stated in the instructions on Part 4 of the Form I-821D, if any of the questions apply to you, please describe the circumstances and include a full explanation in Part 8 of the Form I-821D. To view the instructions of the Form I-821D, please visit the USCIS website at http://www.uscis.gov/sites/default/files/files/form/i-821dinstr.pdf or call toll-free (800) 870-3676 to request this form by mail.
                    (Include a copy of the requestor's Form I-821D with the RFE)

## VI.   I-821D PART 4, CRIMINAL, NATIONAL SECURITY AND PUBLIC SAFETY INFORMATION AFFIRMATIVE RESPONSES POSSIBLE INELIGIBILITY ISSUES

### DACA 160 – ANSWERED "YES" TO QUESTION 1 AND 2 IN PART 4 – DOCUMENTS NEEDED AND EXPLANATION (BOTH INITIAL AND RENEWAL DACA)
On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question(s) in Part 4, Criminal, National Security and Public Safety Information: **DELETE THOSE THAT DON'T APPLY**

1. **Have you EVER been arrested for, charged with, or convicted of a felony or misdemeanor, *including incidents handled in juvenile court, in the United States? Do not include minor traffic violations unless they were alcohol or drug-related.***

2. **Have you EVER been arrested for, charged with, or convicted of a crime in any country other than the United States?**

You did not provide a full explanation in Part 8 of your Form I-821D describing the circumstances, as requested in the instructions on Part 4 of the Form I-821D. Therefore, please provide a full explanation describing the circumstances. **DELETE IF AN EXPLANATION WAS PROVIDED**

At this time you must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state law or federal law. If you are unable to provide such records because your case was expunged or sealed, you must provide information about your arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. The charge and disposition of each arrest must be specifically identified (not just numeric citations or codes). Additionally, if you were convicted, you may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department identifying the statute under which you were convicted and the sentence you received.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

## DACA 161 – ANSWERED "YES" TO QUESTION 3 IN PART 4 – SUBMIT EXPLANATION (BOTH INITIAL AND RENEWAL DACA)

On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question in Part 4, Criminal, National Security and Public Safety Information:

> **3. Have you EVER engaged in, do you continue to engage in, or plan to engage in terrorist activities?**

You did not provide a full explanation in Part 8 of your Form I-821D describing the circumstances, as requested in the instructions on Part 4 of the Form I-821D.

Please provide a full and complete explanation of the terrorist activities you have ever engaged in, continue to engage in, or plan to engage in. Your explanation should include:

> Whether other people were engaged in terrorist activities with you;
> The names of the other people with whom you engaged in terrorists activities;
> The role you played in terrorist activities;
> The role that others played in terrorist activities;
> Whether you planned or actually carried out the terrorist activities;
> Whether you engaged in, continued to engage, or planned to engage in terrorist activities in the United States or abroad; and
> Describe the type of terrorist activities you engaged in, continue to engage in, or plan to engage in.

## DACA 162 – ANSWERED "YES" TO QUESTION 4 IN PART 4 – SUBMIT EXPLANATION (BOTH INITIAL AND RENEWAL DACA)

On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question in Part 4, Criminal, National Security and Public Safety Information:

> **4. Are you NOW or have you EVER been a member of a gang?**

You did not provide a full explanation in Part 8 of the Form I-821D describing the circumstances, as requested in the instructions on Part 4 of the Form I-821D.

Please provide a full and complete explanation of your gang membership, including:

> When you joined the gang(s);
> How long you were a member of the gang(s);

2016

The name of the gang(s); and
The criminal activities you participated in with the gang(s).

## DACA163 – ANSWERED "YES" TO QUESTIONS 5a, 5b, 5c, AND 5d IN PART 4– SUBMIT EXPLANATION (BOTH INITIAL AND RENEWAL DACA)

On your Request for Deferred Action for Childhood Arrivals (Form I-821D) you checked "Yes" to the following question(s) in Part 4, Criminal, National Security and Public Safety Information: **DELETE THOSE THAT DON'T APPLY**

> **5. Have you EVER engaged in, ordered, incited, assisted, or otherwise participated in any of the following:**
> **a. acts involving torture, genocide, or human trafficking?**
> **b. killing any person?**
> **c. severely injuring a person?**
> **d. any kind of sexual contact or relations with any person who was being forced or threatened?**

You did not provide a full explanation in Part 8 of the Form I-821D describing the circumstances, as requested in the instructions on Part 4 of the Form I-821D.

Please provide a full and complete explanation describing your participation in activities involving torture, genocide, human trafficking, killing any person, severely injuring any person, or any sexual contact or relations with any person who was being forced or threatened.

## DACA164 – ANSWERED "YES" TO QUESTION 6 IN PART 4– SUBMIT EXPLANATION (BOTH INITIAL AND RENEWAL DACA)

On your Request for Deferred Action for Childhood Arrivals (Form I-821D) you checked "Yes" to the following question(s) in Part 4, Criminal, National Security and Public Safety Information:

Have you EVER recruited, enlisted, conscripted, or used any person to serve in or help an armed force or group while such person was under age 15?

You did not provide a full explanation in Part 8 of the Form I-821D describing the circumstances, as requested in the instructions on Part 4 of the Form I-821D.

Please provide a full and complete explanation describing your involvement in the recruitment, enlisting, conscripting, or using of any person to serve in or help an armed force or group while such person was under age 15.

## DACA165 – ANSWERED "YES" TO QUESTION 7 IN PART 4– SUBMIT EXPLANATION (BOTH INITIAL AND RENEWAL DACA)

On your Request for Deferred Action for Childhood Arrivals (Form I-821D) you checked "Yes" to the following question(s) in Part 4, Criminal, National Security and Public Safety Information:

Have you EVER used any person under age 15 to take part in hostilities, or to help or provide services to people in combat?

You did not provide a full explanation in Part 8 of the Form I-821D describing the circumstances, as requested in the instructions on Part 4 of the Form I-821D.

Please provide a full and complete explanation describing your involvement in using any person under age 15 to take part in hostilities, or to help or provide services to people in combat?

**VII.    I-821D PART 4, CRIMINAL, NATIONAL SECURITY AND PUBLIC SAFETY INFORMATION (BOTH INITIAL AND RENEWAL DACA)**

**DACA 170– ANSWERED "NO" TO QUESTIONS 1 AND 2 IN PART 4– USCIS FOUND CLEAR CHARGES OR OTHER DEROGATORY INFORMATION, SUBMIT JUDGMENT AND CONVICTION DOCUMENTS (BOTH INITIAL AND RENEWAL DACA)**
A background check has been conducted based upon the fingerprints you provided at the Application Support Center. Your background check revealed that you were arrested on **[DATE]**, in **[JURISDICTION]** and charged with **[CHARGES]**.
**Where appropriate, Service Center may also need to include the name under which the arrest took place if different from name being used by requestor on Form I-821D. If there are multiple charges, you may bullet each charge.)**

At this time you must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state or federal law. If you are unable to provide such records because your case was expunged or sealed, you must provide information about your arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. The charge and disposition of each arrest must be specifically identified (not just numeric citations or codes). Additionally, if you were convicted, you may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department identifying the statute under which you were convicted and the sentence you received.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

**DACA 171– ANSWERED "NO"TO QUESTIONS 1 AND 2 IN PART 4 - CRIMINAL ACTIVITY UNCLEAR TO USCIS, SUBMIT JUDGMENT AND CONVICTION DOCUMENTS (BOTH INITIAL AND RENEWAL DACA)**
Based on a review of your case, it appears that you have some type of criminal record/interaction with law enforcement authorities. It appears that on **[DATE]** the following occurred:

(b)(5)        **[Provide explanation of findings, to include name of police dept. If applicable, charges if applicable, etc. NOTE:]**

**(Where appropriate, you may also need to include the name under which the arrest took place if different from name being used by the requestor on Form I-821D. If there are multiple interactions, you may bullet each interaction.)**

At this time you must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state or federal law. If you are unable to provide such records because your case was expunged or sealed, you must provide information about your arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. The charge and disposition of each arrest must be specifically identified (not just numeric citations or codes). Additionally, if you were convicted, you may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department identifying the statute under which you were convicted and the sentence you received.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

2018

**DACA 172– ANSWERED "NO" TO QUESTIONS 3, 4, 5a. 5b, 5c, AND 5d IN PART 4 – USCIS DISCOVERED UNCLEAR INFORMATION, SUBMIT EXPLANATION (BOTH INITIAL AND RENEWAL DACA)**

Based on a review of your case, the following was discovered: **(Delete those that do not apply)**

    **3. you engaged in or you continue to engage or plan to engage in terrorist activities**

    **4. you are now or have been a member of gang**

    **5. you engaged in, ordered, incited, assisted, or otherwise participated in any of the following:**
        **a. acts involving torture, genocide, or human trafficking**
        **b. killing any person**
        **c. severely injuring a person**
        **d. any kind of sexual contact or relations with any person who was being forced or threatened**

(b)(5)

**[Provide explanation of findings. This can include where the information was found if it is knowledge that can be shared with the requestor. NOTE:**

Therefore, you must submit a statement explaining and/or refuting the information/circumstances found in USCIS records. Please note that if you refute the above information, and USCIS later receives information that the above does relate to you, USCIS may terminate deferred action and you may be barred from other immigration benefits.

## VIII.    FORM I-765

**DACA 180 – FAILURE TO SUBMIT OR COMPLETE FORM I-765WS (INITIAL DACA ONLY)**

USCIS is unable to complete the adjudication of your Form I-765, Application for Employment Authorization, because you did not submit or complete the Form I-765WS. Please provide a response to Part 1 (Full Name), and Part 2 (Financial Information), and if applicable, Part 3 (Additional Information) of Form I-765WS to indicate whether or not you have an economic need to work and return it to the address provided within the specified time.

To obtain Form I-765WS, please visit the USCIS website at http:www.uscis.gov/files/form/i-765ws.pdf or call toll-free (800) 870-3676 to request this form by mail.

**DACA 190 – SUBMIT PASSPORT PHOTOS (BOTH INITIAL AND RENEWAL DACA)**

Please submit **two (2)** passport-style **color** photo(s) of **[NAME]** taken within 30 days of the date of this notice, which conform(s) to the specifications below. Using a pencil or felt pen, lightly print name (and Alien Registration Number, if known) on the back of each photograph.

Please do not staple through any part of the photo(s). Enclose the photo(s) in a plastic or paper envelope and staple the envelope to this notice when returning it to this office.

Passport-style photos must be 2 inches by 2 inches:
- Frame subject with full face, front view, eyes open.
- Make sure photo presents full head from top of hair to bottom of chin; height of head should measure 1 inch to 1 3/8 inch (25 mm to 35 mm).
- Center head within frame.
- Make sure eye level is between 1 1/8 inch and 1 3/8 inch (28 mm and 35 mm) from bottom of photo.
- Photograph subject against a plain white or off-white background.

2019

- Position subject and lighting so that there are no distracting shadows on the face or background.
- Encourage subject to have a natural expression.
- Include headpieces if worn daily for religious purposes; they should not obscure or cast shadows on the eyes or any other part of the face.

For more information on photo requirements, please see the Department of State website at: http://www.travel.state.gov/passport/pptphotos/index.html, or contact the USCIS National Customer Service Center at 1-800-375-5283.

## IX.   FORM 131

### DACA 200 – PROOF OF DACA (BOTH INITIAL AND RENEWAL DACA)
To be considered for advance parole you must submit evidence to establish that you have been granted deferred action for childhood arrivals. Submit a copy of the approval notice issued by USCIS for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.

### DACA 201 – GENERAL (BOTH INITIAL AND RENEWAL DACA)

On [*insert filing date*], you filed an Application for Travel Document (Form I-131) based on an approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Under section 212(d)(5)(A) of the Immigration and Nationality Act (INA), the Secretary of Homeland Security may, in her discretion, parole into the United States any alien applying for admission to the United States on a case-by-case basis for urgent humanitarian reasons or significant public benefit. To assist USCIS in adjudicating your application, please provide additional information about your proposed travel, including the reasons for requesting advance parole in order to travel outside the United States. In response to this notice, you should also submit evidence in support of your request (e.g., documentation showing that your proposed travel is related to your current employment or education or a humanitarian purpose).

### DACA 202 – PROOF OF EDUCATIONAL NEED (BOTH INITIAL AND RENEWAL DACA)
In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individuals granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes. You claim that you need to travel abroad for education purposes. Examples of travel abroad for education purposes include study abroad programs, school-sponsored trips abroad, or travel necessary to conduct academic research.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for education purposes is insufficient. (*ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for educational purposes, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

A letter from the educational institution, or from an employee of the institution acting in his or her official capacity, describing the purpose of the travel, or documentation showing enrollment in a specific program or class coupled with documentary evidence showing that you will benefit from, or are required to travel for the specific program or class;

**NOTE**: Travel during an academic year unrelated to academics (i.e., a vacation) is insufficient to qualify as an educational purpose.

(*ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application. For multiple events, the advance parole is valid for the duration of all the documented events*)

**DACA 203 – PROOF OF HUMANITARIAN NEED (BOTH INITIAL AND RENEWAL DACA)**

In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individuals granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes.  You claim that you need to travel abroad for humanitarian reasons.  Examples of travel abroad for humanitarian reasons include medical reasons, to visit a family member, or to attend funeral services for a family member.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for humanitarian purposes is insufficient. (*ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for humanitarian, modify RFE call up accordingly*).  You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

An explanation from a medical doctor on official letterhead stating the diagnosis and prognosis, and how long the treatment is expected to last;
Information on the reasons why you cannot obtain treatment in the United States;
An explanation from a medical doctor on official letterhead stating the diagnosis and prognosis of the family member's condition; or
A death certificate or newspaper obituary of the family member or other document evidencing the death of the family member.

(*ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events*)

**DACA 204 – PROOF OF EMPLOYMENT NEED (BOTH INITIAL AND RENEWAL DACA)**

In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individual granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes.  You claim that you need to travel abroad for employment purposes.  Examples of travel abroad for employment purposes include: pursuit of a position in the United States with a foreign employer;
an overseas assignment, interview, conference, or training; a meeting with overseas clients or others with whom you interact professionally; or a trip to cultivate business or sales overseas  or any other overseas trip taken in furtherance of the applicant's professional responsibilities.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for employment purposes is insufficient.  (*ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for employment purposes, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

A letter on official letterhead from your employer describing the need for your travel; or
A document showing a specific employment need, such as a conference program, that also shows your participation.

(*ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events*)

## X.   ASSORTED OTHERS

**DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION (BOTH INITIAL AND RENEWAL DACA)**

2021

All foreign language documents must be accompanied by a full English language translation which the interpreter has certified as complete and accurate, and by the interpreter's certification that he or she is competent to translate from the foreign language into English. Please submit a full English translation of (ISO should list the document(s)). You must submit the requested foreign language document along with the translation.

## DACA 301– YOU MAY SUBMIT PHOTOCOPIES (BOTH INITIAL AND RENEWAL DACA)

You may submit either the original documents or legible photocopies of the originals, including copies of the front and back of each document. If you choose to submit original documents, they will not be returned to you. (**Not for use when USCIS is requesting original documents.**)

## DACA 302– AFFIDAVITS (INITIAL DACA ONLY)

Affidavits can support two of the DACA guidelines:

- Brief, casual, and innocent departures during the five years of required continuous presence in the United States: and
- Any minor gap in the five year continuous residence requirement.

In support of your DACA request, you submitted affidavits, but you did not indicate that:

- primary and secondary evidence cannot be obtained; and
- what effort you undertook to obtain that evidence.

Therefore, you are requested to provide the following:

- A written statement from the appropriate issuing authority attesting to the fact that no record exists or can be located, or that the record sought was part of some segment of records which were lost or destroyed; or
- Evidence (such as an affidavit) "that repeated good faith attempts were made to obtain the required document or record."

## DACA 303A – SIGNATURE ON FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

As stated in the Form I-821D instructions, each request must be properly signed. Part 5 of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals is not properly signed because (*ISO should indicate why the form was incorrectly signed. For example, the preparer signed Part 5 instead of Part 6 of the form or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 5*). Therefore, a copy of your original Form I-821D is enclosed so that you can sign and date Part 5, 2.a. and 2.b. of your Form I-821D. The completed form must contain a new original signature. Attach your properly signed Form I-821D to this Request for Evidence and return to the address listed on this notice.

*(Include a copy of the requestor's Form I-821D with the RFE)*

## DACA 303B - SIGNATURE ON FORM I-765 (BOTH INITIAL AND RENEWAL DACA)

As stated in the Form I-765 instructions, each application must be properly signed. Form I-765, Application for Employment Authorization is not properly signed because (*ISO should indicate why the form was incorrectly signed. For example, the preparer signed the form or the requestor is over the age of 14, but the requestor's parent or legal guardian signed the signature area*). Therefore, a copy of your original Form I-765 is enclosed so that you can sign and date. The completed form must contain a new original signature. Attach your properly signed Form I-765 to this Request for Evidence and return to the address listed on this notice.

*(Include a copy of the requestor's Form I-765 with the RFE)*

## DACA 303C – SIGNATURE OF THE INTERPRETER OR THE PERSON PREPARING THE REQUEST (BOTH INITIAL AND RENEWAL DACA)

As stated in the Form I-821D instructions, each request must be properly signed. Part (*ISO should insert the appropriate part(s) 6 and/or 7*] of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, is not properly signed because (*ISO should indicate why the form was incorrectly signed. For example, the interpreter did not sign Part 6 or the person who assisted the requestor in preparing the request did not sign Part 7*). Therefore, a copy of your original Form I-821D is enclosed so that (*ISO should insert the appropriate phrase: your interpreter can sign Part 6, 6.a. and 6.b. / the person who assisted you in preparing your request can sign and date Part 7, 7.a. and 7.b.*) of your Form I-821D. Additionally, you must sign and date Part 5, 2.a. and 2.b. of your Form I-821D. The completed form must contain original signatures. Attach your properly signed Form I-821D to this Request for Evidence and return to the address listed on this notice.

*(Include a copy of the requestor's Form I-821D with the RFE)*

## DACA 304 – FORM I-821D MISSING PAGE(S) (BOTH INITIAL AND RENEWAL DACA)

You did not submit page(s) (*ISO should list the missing page number(s)*) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. In addition to submitting these missing pages, you must sign and date page five(5) of the Form I-821D. The completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice

To obtain Form I-821D, please visit the USCIS website at http://www.uscis.gov/USCIS/files/form/i-821d.pdf or call toll-free (800) 870-3676 to request this form by mail.

## XI. ACKNOWLEDGEMENT OF WITHDRAWAL

## DACA 350  FORM I-821D ACKNOWLEDGEMENT OF WITHDRAWAL (BOTH INITIAL AND RENEWAL DACA)

On **[DATE]** you filed a request for deferred action under the Secretary of Homeland Security's June 15, 2012, directive concerning Deferred Action for Childhood Arrivals. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, a Form I-765, Application for Employment Authorization, and a Form I-765WS, Form I-765 Worksheet, together with the required filing fee.

On **[DATE]**, you withdrew your Form I-821D. This withdrawal applies equally to the forms I-765 and I-765WS that you concurrently filed with the Form I-821D.

USCIS hereby acknowledges your withdrawal. USCIS will not take any further action on your Form I-821D or the related forms I-765 and I-765WS. If you later wish to request Consideration of Deferred Action for Childhood Arrivals, you may file a new Form I-821D concurrently with a new Form I-765 and Form I-765WS, with a new fee.

## DACA 351 FORMS I-765/I-765WS ACKNOWLEDGEMENT OF WITHDRAWAL (BOTH INITIAL AND RENEWAL DACA)

On **[DATE]** you filed a request for deferred action under the Secretary of Homeland Security's June 15, 2012, directive concerning Deferred Action for Childhood Arrivals. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, a Form I-765, Application for Employment Authorization, and a Form I-765WS, Form I-765 Worksheet, together with the required filing fee.

On [DATE], you withdrew your Form I-821D. This withdrawal applies equally to the forms I-765 and I-765WS that you concurrently filed with the Form I-821D.

USCIS hereby acknowledges your withdrawal. USCIS will not take any further action on your forms I-765 and I-765WS or the related Form I-821D. The filing fee is not refundable. If you later wish to request Consideration of Deferred Action for Childhood Arrivals, you may file a new Form I-821D concurrently with a new Form I-765 and Form I-765WS, with a new fee.

2024

# Appendix D

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS RFE CALL-UPS

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply. Text only highlighted in **YELLOW** and not bracketed is directive in nature and should not be printed in the letter being sent but should be deleted. Please mix call-ups into a single RFE as needed.

NOTE: Please add call-ups **DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION** and **DACA 301 – YOU MAY SUBMIT PHOTOCOPIES** to any other call-ups below as needed.

## I.    GUIDELINES

### DACA 100 – IDENTITY
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to prove your identity is insufficient (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

- Passport;
- Birth certificate accompanied by photo identification:
- Any national identity documents from your country of origin bearing your photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing your name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards, etc.);
- Any school-issued form of identification with photo;
- Military identification document with photo;
- State-issued photo ID showing date of birth; or
- Any other document that you believe is relevant.

Expired documents are acceptable.

### DACA 101 – CONTINUOUS RESIDENCE
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you have continuously resided in the United States during the 5-year period immediately before June 15, 2012 and up to the time of filing is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

a.  Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business);

2025

**NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

b. Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service;

c. School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance;

d. Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

e. Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;

f. Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.);

g. Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

h. Any other relevant document.

*(ISO: Add the appropriate language below to the RFE if any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank **OR** if page 3 of the Form I-821D is missing.)*

In addition, you did not answer question(s)(*ISO should list the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D that were not answered*) in Part 2, Arrival/Residence Information, of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

*(Include a copy of the requestor's Form I-821D with the RFE)*

## **OR**

In addition, you did not submit page three (3) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to complete the enclosed page three (3) of the form.

Also enclosed is a copy of your original Form I-821D. Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

*(Include a copy of the requestor's Form I-821D and a blank page 3 of the form with the RFE)*

## DACA 102 - BRIEF, CASUAL, AND INNOCENT ABSENCE

To be considered for deferred action as a childhood arrival, you must have continuously resided in the United States during the 5 years period immediately before June 15, 2012 and up to the date you filed your request for deferred action. A brief, casual, and innocent absence from the United States will not interrupt your continuous residence.

An absence will be considered brief, casual, and innocent, if:

  (1) The absence was short and reasonably calculated to accomplish the purpose of the absence;
  (2) The absence was not the result of an order of exclusion, deportation, or removal;
  (3) The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
  (4) The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for each departure you made from the United States since June 15, 2007 to show that each departure you made from the United States since June 15, 2007 was brief, casual, and innocent is insufficient. *(ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence, modify RFE call up accordingly)*. You may still submit evidence, which may include, but is not limited to, copies of: *(ISO should delete any of the following that were already provided by the requestor)*

  • Plane or other transportation tickets or itinerary showing the travel dates;
  • Passport entries;
  • Hotel receipts showing the dates you were abroad;
  • Evidence of the purpose of the travel (e.g., you attended a wedding or funeral);
  • Advance parole document; or
  • Any other evidence that could support a brief, casual, and innocent absence.

## DACA 103 – ARRIVED IN THE UNITED STATES BEFORE AGE 16

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you came to the United States prior to your 16th birthday is insufficient. *(ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly)*. You may still submit evidence, which may include, but is not limited to, copies of: *(ISO should delete any of the following that were already provided by the requestor)*

  • Passport with an admission stamp indicating when you entered the United States;
  • I-94/I-95/I-94W Arrival/Departure Record;
  • Any INS or DHS document stating your date of entry (e.g., Form I-862, Notice to Appear);
  • Travel records, such as transportation tickets showing your dates of travel to the United States;
  • School records (transcripts, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and the periods of school attendance;
  • Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;
  • Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.); or
  • Any other document that you believe is relevant.

## DACA 104A –IN UNLAWFUL STATUS ON JUNE 15, 2012

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were in unlawful status on June 15, 2012 is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

- I-94/I-95/I-94W Arrival/Departure Record showing the date your authorized stay expired;
- If you have a final order of exclusion, deportation, or removal issued on or before June 15, 2012, submit a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing you into removal proceedings;
- Any other document that you believe is relevant to show that you lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

## DACA 104B –STUDENT IN UNLAWFUL STATUS ON JUNE 15, 2012

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were in unlawful status on June 15, 2012 is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

- I-94/I-95/I-94W Arrival/Departure Record showing the date your authorized stay expired;
- If you have a final order of exclusion, deportation, or removal issued on or before June 15, 2012, submit a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing you into removal proceedings;
- Copies of your transcripts showing your student status from (ISO should insert dates);
- Copies of all properly completed old I-120AB/I-20ID forms or new SEVIS I-20 forms (required since August 1, 2003) for all schools attended;
- Proof of reinstatement;
- Any other document that you believe is relevant to show that you lacked lawful immigration status on June 15, 2012;
- Any document relating to parole.

## DACA 105 – PROOF OF PRESENCE IN THE UNITED STATES ON JUNE 15, 2012

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were present in the United States on June 15, 2012 is insufficient. (*ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly*). You may still submit evidence, which may include, but is not limited to, copies of: (*ISO should delete any of the following that were already provided by the requestor*)

a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business).

   **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

   Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

# Appendix E

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS
# NOIDs

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

### DACA 400A -NOTICE OF INTENT TO DENY – DEPARTURE NOT BCI – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if it occurred before August 15, 2012 and:

(1) It was short and reasonably calculated to accomplish the purpose of the absence;
(2) It was not the result of an order of exclusion, deportation, or removal;
(3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) Its purpose or the actions taken while outside of the United States were not contrary to law.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date; this date should be before 8/15/2012]*. It also appears that, at the time of your departure, *[INSERT WHICHEVER IS APPROPRIATE: you departed under an order of voluntary departure; you departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a final order of exclusion, deportation or removal; your departure was not short and reasonably calculated to accomplish the purpose of the absence; your departure was for a purpose or the actions taken while outside of the United States were contrary to law ).]* Because such a departure is not brief, casual, or innocent, you have not established that you have resided continuously in the United States since at least June 15, 2007.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2029

**DACA 400B -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 AND BEFORE USCIS HAS MADE A DACA DETERMINATION**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007.  Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 and before USCIS has determined whether to defer action in your case.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12]*.  Because your departure occurred on or after August 15, 2012, but before USCIS had determined whether to defer action in your case, you have not established that you may be considered for deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor.[1]  Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

    1.    Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2030

are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

2.      If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time

         to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a

detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2031

**DACA 402 NOTICE OF INTENT TO DENY – DOMESTIC VIOLENCE**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

An offense of domestic violence constitutes a significant misdemeanor.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2032

## DACA 403 NOTICE OF INTENT TO DENY – BURGLARY

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Burglary constitutes a significant misdemeanor.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2033

## DACA 404 NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [insert age] years old.  On [insert date Form I-821D received], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals.  You indicated on your Form I-821D that you were born on [insert date of birth], and that your initial entry into the United States was on [insert date of entry].  Your date of birth is supported by your [identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB], and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 405 NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012 [Updated 2/27/2013]

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012.  For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during routine systems checks, your current F-1 nonimmigrant status is active in Student & Exchange Visitor Information System (SEVIS).  [Identify other facts e.g., Employment Authorization Card validity date].  Based on these facts, USCIS has determined that you were not in an unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2034,

## DACA 406 NOTICE OF INTENT TO DENY – ARRIVED AFTER JUNE 15, 2007

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially arrived in the United States on or about [*insert date of initial entry*].

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 407 NOTICE OF INTENT TO DENY – NOT IN SCHOOL

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

On your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, you indicated that you are currently in school. However, according to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you are not currently enrolled in school. [*Insert specific information; e.g., official transcripts showing enrollment status as "Removed for Lack of Attendance" or school enrollment history listing requestor as a "No Show".*]

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 408 NOTICE OF INTENT TO DENY – NONIMMIGRANT STATUS ON JUNE 15, 2012

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

2035

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you entered the United States on [*Date*] as [*insert nonimmigrant classification. For example,* "an E-2 Nonimmigrant Treaty Investor or as the spouse or child of a Nonimmigrant Treaty Investor"]. It appears that your lawful immigration status [*insert "is" or "was" depending if still in status*] valid until [*Date*], and therefore had not expired before June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 409 NOTICE OF INTENT TO DENY – TEMPORARY PROTECTED STATUS ON JUNE 15, 2012

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you had Temporary Protected Status (TPS) on June 15, 2012. USCIS has no record that your status as a TPS beneficiary was withdrawn or terminated before June 15, 2012, therefore it appears you were not in unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 410 NOTICE OF INTENT TO DENY – MULTIPLE MISDEMEANORS

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety. According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have multiple criminal convictions.

The court dispositions that you submitted indicate that you were convicted on:

- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]

You have been convicted of three or more non-significant misdemeanors.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a "non-significant misdemeanor" is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

2037

## DACA 411 NOTICE OF INTENT TO DENY – FELONY CONVICTION

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

*[Explain why the offense is a felony under federal law. For example,* "Possession of drug paraphernalia is classified as a Class 6 felony under Arizona law, with a maximum term of imprisonment of 1.5 years. *See* A.R.S. §§ 13-702(D), 13-3415."] Therefore, the offense is a felony for purposes of deferred action for childhood arrivals.[1]  Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a felony is a federal, state, or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year.

See www.uscis.gov/childhoodarrivals.

2038

# <u>Appendix E</u>

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS
# NOIDs

NOTE 1: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [***Text***] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

NOTE 2: Each NOID call-up is labeled as follows:

- INITIAL DACA ONLY or;
- RENEWAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the NOID call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

## DACA 400A -NOTICE OF INTENT TO DENY – DEPARTURE NOT BCI – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if it occurred before August 15, 2012 and:

(1) It was short and reasonably calculated to accomplish the purpose of the absence;
(2) It was not the result of an order of exclusion, deportation, or removal;
(3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) Its purpose or the actions taken while outside of the United States were not contrary to law.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date; this date should be before 8/15/2012]*. It also appears that, at the time of your departure, *[INSERT WHICHEVER IS APPROPRIATE: you departed under an order of voluntary departure; you departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a*

Page 1   11/14/2014

*final order of exclusion, deportation or removal; your departure was not short and reasonably calculated to accomplish the purpose of the absence; your departure was for a purpose or the actions taken while outside of the United States were contrary to law ).]* Because such a departure is not brief, casual, or innocent, you have not established that you have resided continuously in the United States since at least June 15, 2007.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

### DACA 400B -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 AND BEFORE USCIS HAS MADE A DACA DETERMINATION (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 and before USCIS has determined whether to defer action in your case.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12]*. Because your departure occurred on or after August 15, 2012, but before USCIS had determined whether to defer action in your case, you have not established that you may be considered for deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

### DACA 400C -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 AND BEFORE USCIS HAS MADE A DACA RENEWAL DETERMINATION (RENEWAL DACA ONLY)

USCIS has reviewed your renewal request for consideration of deferred action for childhood arrivals.

In order to be considered for a renewal of deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since you submitted your most recent request for DACA that was approved, until the date of filing your Renewal request. Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 and before USCIS has determined whether to renew deferred action in your case.

According to the information provided with your renewal request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12]*. Because your departure occurred on or after August 15, 2012,

2040

but before USCIS had determined whether to renew deferred action in your case, you have not established that you may be considered for a renewal of deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of a renewal of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your renewal request for consideration of deferred action for childhood arrivals.


## DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

> [*Insert date of conviction, court name, city/state, crime, and statute*]

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

Page 3   11/14/2014

## DACA 402 NOTICE OF INTENT TO DENY – DOMESTIC VIOLENCE (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

An offense of domestic violence constitutes a significant misdemeanor. [1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2042

## DACA 403 NOTICE OF INTENT TO DENY – BURGLARY (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Burglary constitutes a significant misdemeanor. [1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2043

**DACA 404 NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16 (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [*insert age*] years old.  On [*insert date Form I-821D received*], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals.  You indicated on your Form I-821D that you were born on [*insert date of birth*], and that your initial entry into the United States was on [*insert date of entry*].  Your date of birth is supported by your [*identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB*], and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 405 NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012.  For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during routine systems checks, your current F-1 nonimmigrant status is active in Student & Exchange Visitor Information System (SEVIS). [*Identify other facts e.g., Employment Authorization Card validity date*].  Based on these facts, USCIS has determined that you were not in an unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2044

## DACA 406 NOTICE OF INTENT TO DENY –ARRIVED AFTER JUNE 15, 2007 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially arrived in the United States on or about [*insert date of initial entry*].

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 407 NOTICE OF INTENT TO DENY – NOT IN SCHOOL (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

On your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, you indicated that you are currently in school. However, according to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you are not currently enrolled in school. [*Insert specific information; e.g., official transcripts showing enrollment status as "Removed for Lack of Attendance" or school enrollment history listing requestor as a "No Show".*]

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 408 NOTICE OF INTENT TO DENY – NONIMMIGRANT STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood

2045

arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you entered the United States on [*Date*] as [*insert nonimmigrant classification. For example,* "an E-2 Nonimmigrant Treaty Investor or as the spouse or child of a Nonimmigrant Treaty Investor"]. It appears that your lawful immigration status [*insert "is" or "was" depending if still in status*] valid until [*Date*], and therefore had not expired before June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 409 NOTICE OF INTENT TO DENY – TEMPORARY PROTECTED STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you had Temporary Protected Status (TPS) on June 15, 2012. USCIS has no record that your status as a TPS beneficiary was withdrawn or terminated before June 15, 2012, therefore it appears you were not in unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2046

## DACA 410 NOTICE OF INTENT TO DENY – MULTIPLE MISDEMEANORS (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety. According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have multiple criminal convictions.

The court dispositions that you submitted indicate that you were convicted on:

- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]

You have been convicted of three or more non-significant misdemeanors.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a "non-significant misdemeanor" is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

Page 9   11/14/2014

2047

## DACA 411 NOTICE OF INTENT TO DENY – FELONY CONVICTION (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

*[Explain why the offense is a felony under federal law. For example,* "Possession of drug paraphernalia is classified as a Class 6 felony under Arizona law, with a maximum term of imprisonment of 1.5 years. *See* A.R.S. §§ 13-702(D), 13-3415."*]* Therefore, the offense is a felony for purposes of deferred action for childhood arrivals.[1]  Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a felony is a federal, state, or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year.

See www.uscis.gov/childhoodarrivals.

2048

**DACA 412 NOTICE OF INTENT TO DENY – JUVENILE DELINQUENCY (BOTH INITIAL AND RENEWAL DACA)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you warrant the favorable exercise of prosecutorial discretion.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a record of juvenile delinquency.

The record indicates that you committed the following offense(s) as a minor.

- On [*date offense committed*], at the age of [*age at time of offense*] you committed [*charge*], in violation of [*statute*]. Your case was adjudicated as a juvenile delinquency at [*juvenile court, city/state*].

While a finding of juvenile delinquency is not considered a criminal conviction for purposes of deferred action, given the seriousness of your offense, USCIS has determined that you do not merit a favorable exercise of discretion. Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 413 NOTICE OF INTENT TO DENY – SIGNIFICANT MISDEMEANOR (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have [a criminal conviction/multiple criminal convictions].

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Your conviction(s) for [*Insert crime*] constitute(s) a significant misdemeanor.[1]  Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

  3.   Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

  4.   If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2050

**<u>DACA 414 NOTICE OF INTENT TO DENY – SUSPECTED FRAUD IN MEETING THE DACA GUIDELINES (INITIAL DACA ONLY)</u>**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, among other guidelines, you must also demonstrate that you **[INSERT WHICHEVER IS APPROPRIATE FROM THE LIST BELOW; MORE THAN ONE GUIDELINE MAY BE INSERTED]**

*(1)  were under the age of 31 as of June 15, 2012;*
*(2)  came to the United States before reaching your 16th birthday;*
*(3)  have been residing continuously in the United States since June 15, 2007, up to the present time.;*
*(4)  were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you **[INSERT ALL APPROPRIATE GUIDELINES FROM THE LIST BELOW]** is insufficient.

*(1)  were under the age of 31 as of June 15, 2012;*
*(2)  came to the United States and established residence before reaching your 16th birthday;*
*(3)  have been residing continuously in the United States during the 5-year period immediately before June 15, 2012, and up to the time of filing;*
*(4)  were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;*

USCIS finds that the evidence you provided to demonstrate **[INSERT ALL APPROPRIATE CRITERIA FROM THE LIST BELOW]** is not credible.

*(1)  that you were under the age of 31 as of June 15, 2012;*
*(2)  that you came to the United States and established residence before reaching your 16th birthday;*
*(3)  continuous residency for the year(s) XXXX*
*(4)  that you were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*

*  **[ISO should insert the appropriate facts of the case to include the documentation in question, any irregularities discovered, and finally how this information was vetted and determined to be factually inaccurate or lacking in credibility (e.g. USCIS contacted the company/owner of the document to verify the correct information, etc.)]***

Therefore, USCIS finds that the record lacks sufficient evidence to demonstrate **[INSERT WHICHEVER GUIDELINE(S) IS/ARE APPROPRIATE FROM THE LIST BELOW]**

*(1)  that you were under the age of 31 as of June 15, 2012.;*
*(2)  that you came to the United States before reaching your 16th birthday.;*

2051

*(3) your presence in the United States during the year(s) XXXX;*
*(4) that you were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*

You may still submit evidence to address these irregularities and to establish that the **[INSERT DOCUMENTATION IN QUESTION** *(e.g. utility bill, rent receipt, etc.* is/are *)]* legitimate.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You have thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

In addition, USCIS reminds you that it is a violation of federal law (18 U.S.C. sec. 1001) if you knowingly and willingly submit materially false information in support of your request for DACA, and you may be fined, imprisoned up to five years, or both. In addition, you may be placed in removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

# **Appendix E**

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS
# NOIDs

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

## DACA 400 -NOTICE OF INTENT TO DENY – NOT A BCI DEPARTURE – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007, to the present time. A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if:

(1) It was short and reasonably calculated to accomplish the purpose of the absence;
(2) It was not the result of an order of exclusion, deportation, or removal;
(3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) Its purpose or the actions taken while outside of the United States were not contrary to law.

PICK PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A. USE THIS PARAGRAPH IF THE DISQUALIFYING TRAVEL OCCURRED BEFORE 8/15/12, THEN PROCEED TO THE CLOSING PARAGRAPH:

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date; this date should be before 8/15/2012]*. It also appears that, at the time of your departure, you *[INSERT WHICEVER IS APPROPRIATE: departed under an order of voluntary departure; departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a final order of exclusion, deportation or removal).]* Because such a departure is not brief, casual, or innocent, you have not established that you have resided continuously in the United States since at least June 15, 2007, until the present time.

*[Proceed to the closing paragraph.]*

**OR**

B. USE THIS PARAGRAPH IF THE DISQUALIFYING TRAVEL OCCURRED ON OR AFTER 8/15/12 AND BEFORE FORM I-821D WAS APPROVED

2053

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12 ]*.  A departure made on or after August 15, 2012 is not brief, casual, or innocent unless removal action has been deferred, as evidenced by an approved Form I-821D. Because your departure occurred after August 15, 2012, but before USCIS has determined whether to defer action in your case, your departure from the United States was not brief, casual, or innocent. Therefore, you have not established that you have resided continuously in the United States since at least June 15, 2007, until the present time.

*[CLOSING PARAGRAPH]*

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor.[1]  Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1.  Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2.  If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

## DACA 402 NOTICE OF INTENT TO DENY – DOMESTIC VIOLENCE

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

An offense of domestic violence constitutes a significant misdemeanor. [1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

Page 4   4/4/2013

## DACA 403 NOTICE OF INTENT TO DENY – BURGLARY

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Burglary constitutes a significant misdemeanor.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

Page 5   4/4/2013

2057

**DACA 404 NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [*insert age*] years old. On [*insert date Form I-821D received*], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals. You indicated on your Form I-821D that you were born on [*insert date of birth*], and that your initial entry into the United States was on [*insert date of entry*]. Your date of birth is supported by your [*identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB*], and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 405 NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012 [Updated 2/27/2013]**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during routine systems checks, your current F-1 nonimmigrant status is active in Student & Exchange Visitor Information System (SEVIS). [*Identify other facts e.g., Employment Authorization Card validity date*]. Based on these facts, USCIS has determined that you were not in an unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2058

**DACA 406 NOTICE OF INTENT TO DENY –ARRIVED AFTER JUNE 15, 2007**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially arrived in the United States on or about [*insert date of initial entry*].

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 407 NOTICE OF INTENT TO DENY – NOT IN SCHOOL**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

On your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, you indicated that you are currently in school.  However, according to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you are not currently enrolled in school.  [*Insert specific information; e.g., official transcripts showing enrollment status as "Removed for Lack of Attendance" or school enrollment history listing requestor as a "No Show".*]

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals.  You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial.  Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 408 NOTICE OF INTENT TO DENY – NONIMMIGRANT STATUS ON JUNE 15, 2012**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012.  For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

Page 7  4/4/2013

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you entered the United States on *[Date]* as *[insert nonimmigrant classification. For example,* "an E-2 Nonimmigrant Treaty Investor or as the spouse or child of a Nonimmigrant Treaty Investor"]. It appears that your lawful immigration status *[insert "is" or "was" depending if still in status]* valid until *[Date]*, and therefore had not expired before June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 409 NOTICE OF INTENT TO DENY – TEMPORARY PROTECTED STATUS ON JUNE 15, 2012

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you had Temporary Protected Status (TPS) on June 15, 2012. USCIS has no record that your status as a TPS beneficiary was withdrawn or terminated before June 15, 2012, therefore it appears you were not in unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2060

## DACA 410 NOTICE OF INTENT TO DENY – MULTIPLE MISDEMEANORS

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety. According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have multiple criminal convictions.

The court dispositions that you submitted indicate that you were convicted on:

- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]

You have been convicted of three or more non-significant misdemeanors.[1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a "non-significant misdemeanor" is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

2061

## DACA 411 NOTICE OF INTENT TO DENY – FELONY CONVICTION

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

*[Explain why the offense is a felony under federal law. For example,* "Possession of drug paraphernalia is classified as a Class 6 felony under Arizona law, with a maximum term of imprisonment of 1.5 years. *See* A.R.S. §§ 13-702(D), 13-3415."*]* Therefore, the offense is a felony for purposes of deferred action for childhood arrivals.[1]   Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a felony is a federal, state, or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year.

See www.uscis.gov/childhoodarrivals.

2062

# Appendix E

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS NOIDs

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

## DACA 400 -NOTICE OF INTENT TO DENY – NOT A BCI DEPARTURE – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007, to the present time. A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if:

(1) It was short and reasonably calculated to accomplish the purpose of the absence;
(2) It was not the result of an order of exclusion, deportation, or removal;
(3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) Its purpose or the actions taken while outside of the United States were not contrary to law.

PICK PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A. USE THIS PARAGRAPH IF THE DISQUALIFYING TRAVEL OCCURRED BEFORE 8/15/12, THEN PROCEED TO THE CLOSING PARAGRAPH:

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date; this date should be before 8/15/2012]*.   It also appears that, at the time of your departure, you *[INSERT WHICEVER IS APPROPRIATE: departed under an order of voluntary departure; departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a final order of exclusion, deportation or removal).]* Because such a departure is not brief, casual, or innocent, you have not established that you have resided continuously in the United States since at least June 15, 2007, until the present time.

*[Proceed to the closing paragraph.]*

*OR*

B. USE THIS PARAGRAPH IF THE DISQUALIFYING TRAVEL OCCURRED ON OR AFTER 8/15/12 AND BEFORE FORM I-821D WAS APPROVED

2063

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12 ]*. A departure made on or after August 15, 2012 is not brief, casual, or innocent unless removal action has been deferred, as evidenced by an approved Form I-821D. Because your departure occurred after August 15, 2012, but before USCIS has determined whether to defer action in your case, your departure from the United States was not brief, casual, or innocent. Therefore, you have not established that you have resided continuously in the United States since at least June 15, 2007, until the present time.

*[CLOSING PARAGRAPH]*

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2064

## DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor.[1]  Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1.  Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2.  If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

## DACA 402 NOTICE OF INTENT TO DENY – DOMESTIC VIOLENCE

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

An offense of domestic violence constitutes a significant misdemeanor. [1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2066

## DACA 403 NOTICE OF INTENT TO DENY – BURGLARY

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

*[Insert date of conviction, court name, city/state, crime, and statute]*

Burglary constitutes a significant misdemeanor. [1] Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

2067

## DACA 404 NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [*insert age*] years old. On [*insert date Form I-821D received*], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals. You indicated on your Form I-821D that you were born on [*insert date of birth*], and that your initial entry into the United States was on [*insert date of entry*]. Your date of birth is supported by your [*identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB*], and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 405 NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012 [Updated 2/27/2013]

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during routine systems checks, your current F-1 nonimmigrant status is active in Student & Exchange Visitor Information System (SEVIS). [*Identify other facts e.g., Employment Authorization Card validity date*]. Based on these facts, USCIS has determined that you were not in an unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 406 NOTICE OF INTENT TO DENY –ARRIVED AFTER JUNE 15, 2007

2068

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially arrived in the United States on or about [*insert date of initial entry*].

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 407 NOTICE OF INTENT TO DENY – NOT IN SCHOOL

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

On your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, you indicated that you are currently in school. However, according to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you are not currently enrolled in school. [*Insert specific information: e.g.. official transcripts showing enrollment status as "Removed for Lack of Attendance" or school enrollment history listing requestor as a "No Show".*]

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

2069

# **Appendix E**

**DACA 400 -NOTICE OF INTENT TO DENY – NOT A BCI DEPARTURE – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action for childhood arrivals, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007, to the present time (the date of filing). A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if:

    (1) It was short and reasonably calculated to accomplish the purpose of the absence;
    (2) It was not the result of an order of exclusion, deportation, or removal;
    (3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
    (4) Its purpose or the actions taken while outside of the United States were not contrary to law.

PICK PARAGRAPH (A) OR (B) BELOW, AS APPLIABLE:

A. USE THIS PARAGRAPH IF THE DISQUALIFYING TRAVEL OCCURRED BEFORE 8/15/12, THEN PROCEED TO THE CLOSING PARAGRAPH:

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date]*. It also appears that, at the time of your departure, you *[INSERT WHICEVER IS* **APPROPRIATE:** *departed under an order of voluntary departure; departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a final order of exclusion, deportation or removal).]* Because such a departure is not brief, casual, or innocent, you have not established that you resided continuously in the United States since June 15, 2007, until the date of your request for consideration of deferred action for childhood arrivals. *[Proceed to the closing paragraph.]*

**OR**

B. USE THIS PARAGRPAH IF THE DISQUALIFYING TRAVEL OCCURRED AFTER 8/15/12 AND BEFORE FORM I-821D WAS APPROVED

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be after 8/15/12 ]*. A departure made after August 15, 2012 is not brief, casual, or innocent unless removal action has been deferred, as evidenced by an approved Form I-821D. Because our departure occurred after August 15, 2012, but before this request for consideration of deferred action for childhood arrivals was filed, and your removal has not yet

been deferred, your departure from the United States was not brief, casual, or innocent. Therefore, you have not established that you have resided in the United States since at least June 15, 2007, until the date of your request for deferred action for childhood arrivals.

*[CLOSING PARAGRAPH]*

Accordingly, USCIS intends to deny your request for consideration for deferred action for childhood arrivals. You are afforded thirty (30) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action for childhood arrivals, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

- *[Insert date of conviction, court name, city/state, crime, and statute]*

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor.[1] Accordingly, USCIS intends to deny your request for consideration for deferred action for childhood arrivals. You are afforded thirty (30) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

---

[1] For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE).

See www.uscis.gov/childhoodarrivals.

**403 <u>NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16</u>**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action for childhood arrivals, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [*insert age*] years old. On [*insert date Form I-821D received*], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals. You indicated on your Form I-821D that you were born on [*insert date of birth*], and that your initial entry into the United States was on [*insert date of entry*]. Your date of birth is supported by your [*identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB*]. and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration for deferred action for childhood arrivals. You are afforded thirty (30) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**404 <u>NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012</u>**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action for childhood arrivals, you are to demonstrate that you did not have lawful immigration status on June 15, 2012; and a) entered without inspection before June 15, 2012; or b) were lawfully admitted before June 15, 2012 but without being given any immigration status; or c) were admitted or paroled but your lawful immigration status or parole expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during routine systems checks, it appears that you entered [insert date] as an F-1 student who has been lawfully enrolled on a full time basis in a Service-approved college, university, conservatory, or seminary school. According to our records, your current F-1 nonimmigrant status is active in Student & Exchange Visitor Information System (SEVIS). [*Identify other facts e.g.. Employment Authorization Card validity date*]. Based on these facts, USCIS has determined that you were not in an unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration for deferred action for childhood arrivals. You are afforded thirty (30) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**405 NOTICE OF INTENT TO DENY –ARRIVED AFTER JUNE 15, 2007**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action for childhood arrivals, you are to demonstrate that you have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially arrived in the United States on or about [*insert date of initial entry*].

Accordingly, USCIS intends to deny your request for consideration for deferred action for childhood arrivals. You are afforded thirty (30) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## Appendix F

### NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS, FORM I-821D

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.  For the reason(s) indicated below, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

☐ At the time of filing, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

☐ You have not established that you came to the United States under the age of sixteen (16).

☐ You have not established that you were under age 31 on June 15, 2012.

☐ You have not established that you have continuously resided in the United States since June 15, 2007, until the date of filing your request.

☐ During your period of residence in the United States, you had one or more absences that did not qualify as "brief, casual, and innocent."

☐ You have not established that you were present in the United States on June 15, 2012.

☐ You have not established that you were in an unlawful immigration status in the United States on June 15, 2012.

☐ You have not established that you are currently in school at the time of filing your request, have graduated or obtained a certificate of completion from a U.S. high school, or have obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

☐ You have been convicted of a felony or a significant misdemeanor, or you have been convicted of three or more misdemeanors, or you do not warrant a favorable exercise of prosecutorial discretion because of public safety concerns, or exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities.

☐ You have not established that you warrant a favorable exercise of prosecutorial discretion.

☐ You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

☐ USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

☐ You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

☐ You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

☐ USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

5/2/2013

**Appendix F**

## NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS, FORM I-821D

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. For the reason(s) indicated below, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

- ☐ At the time of filing, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

- ☐ You have not established that you came to the United States before you turned sixteen (16) years old and established residence at that time.

- ☐ You have not established that you were under age 31 on June 15, 2012.

- ☐ You have not established that you have continuously resided in the United States since June 15, 2007, until the date of filing your request.

- ☐ During your period of residence in the United States, you had one or more absences that did not qualify as "brief, casual, and innocent."

- ☐ You have not established that you were present in the United States on June 15, 2012.

- ☐ You have not established that you were in an unlawful immigration status in the United States on June 15, 2012.

- ☐ You have not established that you are currently in school at the time of filing your request, have graduated or obtained a certificate of completion from a U.S. high school, or have obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

- ☐ You have been convicted of a felony or a significant misdemeanor.

- ☐ You have been convicted of three or more misdemeanors.

- ☐ You have not established that you warrant a favorable exercise of prosecutorial discretion.

- ☐ You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

- ☐ USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

- ☐ You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

- ☐ You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

- ☐ USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

**Appendix F**

## NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS, FORM I-821D

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. For the reason(s) indicated below, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

☐ You are under the age of fifteen (15) and are not in removal proceedings, do not have a final removal order, or do not have a voluntary departure order.

☐ You have not established that you came to the United States under the age of sixteen (16).

☐ You have not established that you were under age 31 on June 15, 2012.

☐ You have not established that you have continuously resided in the United States since June 15, 2007, until the date of filing your request.

☐ During your period of residence in the United States, you had one or more absences that did not qualify as "brief, casual, and innocent."

☐ You have not established that you were present in the United States on June 15, 2012.

☐ You have not established that you were in an unlawful immigration status in the United States on June 15, 2012.

☐ You have not established that you are currently in school at the time of filing your request, have graduated or obtained a certificate of completion from a U.S. high school, or have obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

☐ You have been convicted of a felony or a significant misdemeanor, or you have been convicted of three or more misdemeanors, or you do not warrant a favorable exercise of prosecutorial discretion because of public safety concerns, or exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities.

☐ You have not established that you warrant a favorable exercise of prosecutorial discretion.

☐ You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

☐ USCIS was unable to conduct a background check on you because you failed to appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

☐ You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

☐ You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

☐ USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

3/13/2013

# APPENDIX F

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

NOTE: Each denial call-up is labeled as follows:

- INITIAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the denial call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

## DACA 500 -NOTICE OF DENIAL –AGE (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

At the time of filing your request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 502 -NOTICE OF DENIAL – ENTRY AT 16 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you came to the United States before you turned sixteen (16) years old and established residence at that time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

2077

## DACA 503 -NOTICE OF DENIAL – UNDER 31 ON JUNE 15, 2012 (INITIAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were under age 31 on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 504 -NOTICE OF DENIAL – CONTINUOUS RESIDENCE (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you have continuously resided in the Unites States since June 15, 2007, until the date of filing your request.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 505 -NOTICE OF DENIAL – BCI (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

During your period of residence in the United States, you had one or more absences that did not qualify as "brief, casual, and innocent."

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 506 -NOTICE OF DENIAL – PHYSICAL PRESENCE ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were present in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 507 -NOTICE OF DENIAL – NO LAWFUL IMMIGRATION STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were in an unlawful immigration status in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 508 -NOTICE OF DENIAL –EDUCATIONAL GUIDELINE (INITIAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that, at the time of filing your request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an

act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 509 -NOTICE OF DENIAL – FELONY OR SIGNIFICANT MISDEMEANOR (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have been convicted of a felony or a significant misdemeanor.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 510 -NOTICE OF DENIAL – THREE OR MORE MISDEMEANORS (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have been convicted of three or more misdemeanors.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 511 -NOTICE OF DENIAL – DISCRETIONARY (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you warrant a favorable exercise of prosecutorial discretion.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an

2080

act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 512 -NOTICE OF DENIAL – NON-PAYMENT OF FEES (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 513 -NOTICE OF DENIAL – NO SHOW (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 514 -NOTICE OF DENIAL – NO RESPONSE TO RFE OR NOID (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 515 -NOTICE OF DENIAL – ABANDONMENT (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 516 -NOTICE OF DENIAL – DISQUALIFYING INTERNATIONAL TRAVEL – TRAVEL WITHOUT ADVANCE PAROLE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You departed the United States on or after August 15, 2012 without advance parole.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 517 -NOTICE OF DENIAL – DISQUALIFYING INTERNATIONAL TRAVEL – REMAINED OUTSIDE OF THE US BEYOND THE VALIDITY PERIOD OF ADVANCE PAROLE DOCUMENT (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

2082

USCIS records show you remained outside of the United States beyond the validity period of your advance parole document.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 518 -NOTICE OF DENIAL – CONTINUOUS RESIDENCE SINCE THE MOST RECENT DACA REQUEST (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you have continuously resided in the United States since you submitted your most recent request for DACA that was approved.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 519 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR - AGE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. At the time of filing your initial/most recent request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

2083

## DACA 520 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – ENTRY AT 16 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.   You did not establish that you came to the United States before you turned sixteen (16) years old and established residence at that time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.   Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 521 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – UNDER 31 ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.   You did not establish that you were under age 31 on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.   Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 522 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – CONTINUOUS RESIDENCE SINCE JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.   You did not establish that you continuously resided in the United States since June 15, 2007, until the date of filing your initial/most recent request.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 523 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR –BCI (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. During your period of residence in the United States, you had one or more absences before August 15, 2012 that did not qualify as "brief, casual, and innocent."

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 524 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – PHYSICAL PRESENCE ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were present in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 525 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – NO LAWFUL IMMIGRATION STATUS ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 526 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – EDUCATIONAL GUIDELINE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that, at the time of filing your initial request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

2086

## DACA 527 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – FELONY OR SIGNIFICANT MISDEMEANOR (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012. You had been convicted of a felony or a significant misdemeanor.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 528 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – THREE OR MORE MISDEMEANORS (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You had been convicted of three or more misdemeanors.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 529 -NOTICE OF DENIAL – REQUESTOR IS DECEASED (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [insert name] ("the requestor") on [insert date].

On [insert date], USCIS received notification that the requestor is now deceased. Please accept our deepest sympathies for your loss.

USCIS is hereby denying the requestor's Form I-821D. Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 530 -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [Select the appropriate phrase: you filed / was filed on your behalf] was approved on [*insert date*]. Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 531 - NOTICE OF DENIAL – ACQUIRED PAROLE AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that the [*insert name of Office/DHS Component*] approved your request for parole on [*insert date*]. Your parole authorization is valid through [*insert period of validity*].

In view of the fact that your parole request was approved, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

2088

**DACA 532 -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*insert date deferred action expires*]. ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS. On [*insert date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case. Therefore, USCIS has denied your Form I-821D. The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

**DACA 533 –NOTICE OF DENIAL - USCIS ALREADY DEFERRED ACTION UNDER DACA (BOTH INITIAL AND RENEWAL DACA)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX). On [*insert date*], USCIS determined that you meet the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS notified you that action was deferred on your case and mailed to you an Employment Authorization Document valid until [*insert date*].

On [*insert filing date for pending case*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

**DACA 534 -NOTICE OF DENIAL – INSUFFICIENT RFE RESPONSE FOR CRIMINAL RECORDS (BOTH INITIAL AND RENEWAL DACA)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that you have been arrested or detained by law enforcement officials. On [*insert date RFE issued*], USCIS sent you a notice requesting you to submit certified court dispositions for all of your arrests, including an arrest(s) specifically identified on the request. In response to the request

for evidence, you submitted [*indicate what was submitted*].  However, the response was insufficient because [*indicate why it was insufficient. For example: "the document was not certified by the court"*].

USCIS was unable to conduct a sufficient background check on you because you did not provide the requested certified court dispositions.  Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 535 -NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION UNDER ANOTHER (NON-DACA) PROGRAM, FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date*], you submitted a [*insert USCIS form number and title*] (Receipt number XXXXX) to USCIS for deferred action under another non-DACA program [*insert the program name, ex. VAWA*].  On [*insert date*], USCIS approved your [*insert USCIS form number*].  On [*insert notice date*], USCIS notified you that action was deferred on your case under [*insert the program name, ex. VAWA*] until [*insert date deferred action expires*].

On [*insert date*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case.

## DACA 536 -NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION (SEEKING REPLACEMENT EAD) (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX).  On [*insert date*], USCIS determined that you met the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS also notified you that action was deferred on your case and mailed to you an Employment Authorization Document (EAD) valid until [*insert date*].

On [*insert filing date for pending case*], you submitted another Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  You indicated on the

instant Form I-765 that you are seeking to replace a lost Employment Authorization Document. It was not necessary to file a new Form I-821D. You only needed to file the Form I-765.

In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your newly submitted Form I-821D (Receipt number XXXXX). The denial of the instant Form I-821D does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

If your Form I-765 (Receipt number XXXXX) is granted, you will receive your replacement Employment Authorization Document separately by mail.

## DACA 537 -NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (INITIAL DACA ONLY)

On [*insert date*] you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit Form I-765WS [*insert other requested evidence if applicable*] in support of your Form I-765.

Title 8, Code of Federal Regulations (8 C.F.R.), Section 103.2(b)(13), states in part:

> If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, . . . .

As of the date of this notice, there is no record that you submitted the requested Form I-765WS. Accordingly, your application for employment authorization is denied as abandoned pursuant to 8 C.F.R § 103.2(b)(13). Please note that this decision will not affect the approval of your Form I-821D.

A denial due to abandonment may not be appealed. However, there are limited motion rights. In accordance with 8 C.F.R. § 103.5, you may, if you wish, file a motion to reopen an application or petition denied due to abandonment with evidence that the decision was in error because:

- The requested evidence was not material to the issue of eligibility;
- The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or
- The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

2091

A motion to reopen must be filed on Form I-290B, Notice of Appeal or Motion, with the appropriate fee within 33 days from the date of this decision. For more information about filing motions, fees, forms, and filing locations, please visit the USCIS website at www.uscis.gov.

## DACA 538 -NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (BOTH INITIAL AND RENEWAL DACA)

On [*insert I-821D filing date*], you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date I-821D was approved*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date the I-765 RFE was sent*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit [*insert Form I-765WS and/or list other requested evidence*] in support of your Form I-765.

USCIS received your response to the request on [*insert date the RFE response was received*]. Your response did not include [*insert the missing evidence, e.g. Form I-765WS, signature on the I-765, completed I-765WS*] as we requested.

Title 8, Code of Federal Regulations, Section 274a.12(c)(14) provides the basis for granting employment authorization to individuals whose removal from the United States has been deferred:

> An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment

SELECT A PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A.     USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765WS:

Because you failed to provide [*insert the missing evidence; e.g., Form I-765WS; completed I-765WS*], you have not established an economic necessity for employment. Accordingly, your application for employment authorization is denied. Please note that this decision will not affect the approval of your Form I-821D.

[***Proceed to the closing paragraph.***]

### OR

B.     USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765:

Because your I-765 was not properly signed, you have failed to comply with 8 C.F.R. 103.2(a)(2) and your application is hereby denied. Please note that this decision will not affect the approval of your Form I-821D.

*[CLOSING PARAGRAPH]*

This denial may not be appealed. However, you may file a motion to reopen or reconsider the decision. Your motion to reopen or reconsider must be filed on Form I-290B, Notice of Appeal or Motion within 30 days of the date of this notice (33 days if this notice is received by mail). You must mail your Form I-290B, along with the appropriate filing fee and other documentation in support of the motion, to the correct address. Do not mail your completed Form I-290B directly to this Service Center.

To obtain the filing locations, the required filing fee amount, and more information about the Form I-290B filing requirements, please refer to the USCIS website at **http://www.uscis.gov/forms**. You may also contact the National Customer Service Center (NCSC) at 800-375-5283.

This decision does not prevent you from filing a new application in the future.

## DACA 539 -NOTICE OF DENIAL – THE REQUESTOR WAS IN IMMIGRATION DETENTION AT THE TIME OF FILING FORM I-821D AND REMAINS IN IMMIGRATION DETENTION (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 540 -NOTICE OF DENIAL – SIGNATURE ON FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS records indicate that:

On [*insert date*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization, (Receipt number XXXXX). As stated in the Form I-821D instructions, each request must be properly signed. Part [*insert the corresponding part: Part 4 (old Form I-821D) or Part 5 (current Form I-821D)*] is not properly signed (*indicate why the form was incorrectly signed. For example, the preparer signed Part 4 /5 instead of Part 5/6 or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4/5*).

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) sent you a Request for Evidence (RFE) because your original Form I-821D was not properly signed. USCIS enclosed a copy of your original Form I-821D so that you could sign and date [*insert the corresponding part: Part 4.2.a. and 2.b./ Part 5.2.a. and 2.b.*] of your Form I-821D.

As of the date of this notice, there is no record that you submitted the requested signed and dated Form I-821D. In view of this fact, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765 has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 541 - NOTICE OF DENIAL – LPR STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

[*Summarize the requestor's immigration history, including how and when the requestor obtained LPR status and that such status had not changed as of 6/15/2012*].

Accordingly, you have not established that you were in an unlawful immigration status in the United States on June 15, 2012. Therefore, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

[*If the requestor is still in LPR status, please add:* If you are not in possession of your Form I-551, Permanent Resident Card, you may consider filing Form I-90, Application to Replace Permanent Resident Card, to obtain a new card. For information about obtaining a Form I-90, visit the USCIS website at www.uscis.gov or call toll-free (800) 870-3676 to request the form by mail.]

2094

# Appendix G

## SRMT Call Ups Pertaining to Denied Form I-821D, Consideration of Deferred Action for Childhood Arrivals

### Administrative Errors

1. **Denial of Form I-821D on the grounds that the requestor did not come to the United States prior to reaching his/her 16th birthday.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

2. **Denial of Form I-821D on the grounds that the requestor was under the age of 15 at the time of filing, but not in removal proceedings.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

3. **Denial of Form I-821D on the grounds that the requestor was not under the age of 31 on June 15, 2012.**

*Final response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

4. **Denial of Form I-821D on the grounds that the requestor was not in an unlawful immigration status as of June 15, 2012.**

*Final response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

5. **Denial of Form I-821D on the grounds that the requestor was not physically present in the United States on June 15, 2012.**

*Final response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment is approved, you will receive an Employment Authorization Document.

6. **Denial of Form I-821D on the grounds that the requestor did not appear to have biometrics collected at a USCIS ASC**

*SRMT DACA 1 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to appear for the collection of biometrics at an Application Support Center. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

7. **Denial of Form I-821D on the grounds that the requestor did not request to have his/her biometrics appointment at a USCIS ASC rescheduled prior to the scheduled date**

*SRMT DACA 2 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to appear for the collection of biometrics at an Application Support Center nor did you request to have your biometrics appointment rescheduled prior to the date you were scheduled to appear. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records. Your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment have resumed processing. Once adjudication is complete, you will receive a decision.

8. **Denial of Form I-821D on the grounds that the requestor failed to pay the filing and biometric fees for the Form I-765**

***SRMT DACA 3 Interim Response:***
We have received your request to review the denial of your Form I-821, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to pay the fee for your concurrently filed Form I-765, Application for Employment Authorization, and/or your biometrics fee because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

***Final Response if denial was correct:***
Use SRMT Denial Template

***Final response if denial was incorrect:***
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

9. **Denial of Form I-821D due to abandonment and the requestor claims he/she did respond to RFE within the prescribed time**

***SRMT DACA 4 Interim Response:***
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to respond to a Request for Evidence within the time prescribed. We reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

***Final Response if denial was correct:***
Use SRMT Denial Template

***Final response if denial was incorrect:***
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

10. **Denial of Form I-821D due to abandonment – USCIS mailed the RFE to the wrong address and the requestor submitted a change of address prior to the issuance of RFE.**

*SRMT DACA 5 Interim Response:*
We have received your request to review the denial of your Form I-821, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to respond to a Request for Evidence (RFE) within the time prescribed. In your request to review the denial of your Form I-821D, you indicated that the RFE was mailed to the wrong address and you had submitted a Change of Address prior to the RFE issuance. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

# Appendix H

## SRMT Denial Template

We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and the accompanying Form I-765, Application for Employment Authorization. Your request was based on your belief that the denial involved one or more of the administrative errors, as indicated below:

☐ You claimed that your DACA request was denied on the grounds that you did not come to the United States prior to reaching your 16th birthday and that the evidence you submitted at the time of filing shows that you did, in fact, arrive before the required age.

☐ You claimed that your DACA request was denied on the grounds that you were under the age of 15 at the time of filing, but not in removal proceedings, or did not have a final removal order or a voluntary departure order, and that the evidence submitted at the time of filing shows that you were, in fact, in removal proceedings or had a final removal order or a voluntary departure order.

☐ You claimed that your DACA request was denied on the grounds that you were over the age of 31 on June 15, 2012 and that the evidence you submitted at the time of filing shows that you were, in fact, under age 31 on June 15, 2012.

☐ You claimed that your DACA request was denied on the grounds that you were in a lawful immigration status as of June 15, 2012, and that the evidence you submitted at the time of filing shows that you were, in fact, in an unlawful status on June 15, 2012.

☐ You claimed that your DACA request was denied on the grounds that you were not physically present in the United States on June 15, 2012, up through the date of filing, and that the evidence you submitted at the time of filing establishes that you were, in fact, present.

☐ You claimed that your DACA request was denied because you did not appear for biometrics collection at an Application Support Center, but you did appear.

☐ You claimed that your DACA request was denied because you did not appear for biometrics collection at an Application Support Center, but you asked for the appointment to be rescheduled before the originally scheduled date.

☐ You claimed that your DACA request was denied because you did not pay the required fees, but you have evidence that you paid (including evidence that you remitted payment to rectify any Nonsufficient Funds notice on the initial payment).

☐ You claimed that your DACA request was denied because you did not respond to a request for evidence (RFE) within the prescribed time (includes a request to submit additional evidence or appear at an ASC for biometrics collection following a prior failure to appear) and that you did, in fact respond timely.

☐ You claimed that your DACA request was denied because USCIS mailed the RFE to the wrong address even though you filed a change of address request before the RFE was issued.

Upon review of your request, the evidence in the file at the time of filing, and upon performing all relevant records and systems checks, it has been determined that your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and the accompanying Form I-765, Application for Employment Authorization, were properly denied and that the denial did not involve an administrative error.

# **Appendix I**

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

## **DACA 600 – Notice of Intent to Terminate**

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States. A review of your records reveals that [ISO should thoroughly explain why the removal was deferred under DACA in error or that is has come to the attention of USCIS that the individual committed fraud in seeking deferral of removal under DACA. If the decision to issue a Notice of Intent to Terminate is based on fraud, it should be supported by a fully documented SOF and any other relevant documents/information.]

Based on the information outlined above, USCIS is notifying you of its intent to terminate your deferred action for childhood arrivals. A final decision to terminate your deferred action for childhood arrivals will not be made for 33 days. During that time, you may submit any evidence that you feel will overcome the grounds for termination. If your response is not received within the allotted time or if your response to this notice does not overcome the grounds for termination, USCIS will terminate your deferred action for childhood arrivals. If your deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of your deferred action will be terminated for cause

## **DACA 601 – Termination Notice [After NOIT]**

On [Date], you were notified that it was the intent of USCIS to terminate your deferred action for childhood arrivals. In response to the Intent to Terminate, you [ISO should summarize the individual's response to the Intent to Terminate or indicate that the individual did not respond within the allotted time].

Your response does not overcome the grounds for termination. [If the individual's response does not overcome the reason for the termination as outlined in the Notice of Intent to Terminate, the ISO should explain why]. Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

> [Insert Service Center
> Address]

## DACA 602 – Termination Notice [NTA Issuance]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

On [Date NTA served on alien], [U.S. Citizenship & Immigration Services (USCIS)/Immigration & Customs Enforcement (ICE)] issued you a Notice to Appear (NTA).

Your deferred action as a childhood arrival and your employment authorization automatically terminated as of the date your NTA was issued.  You must return your Employment Authorization Document (EAD) to USCIS immediately.  Fraudulent use of your EAD could result in a referral to law enforcement.  Send a copy of this notice and your EAD to:

[Insert Service Center
Address]

## DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

After consulting with U.S. Immigration & Customs Enforcement, USCIS has determined that exercising prosecutorial discretion in your case is not consistent with the Department of Homeland Security's enforcement priorities.  Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Fraudulent use of your EAD could result in a referral to law enforcement.  Send a copy of this notice and your EAD to:

[Insert Service Center
Address]

# **Appendix I**

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

## **DACA 600 – Notice of Intent to Terminate**

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States. A review of your records reveals that [ISO should thoroughly explain why the removal was deferred under DACA in error or that is has come to the attention of USCIS that the individual committed fraud in seeking deferral of removal under DACA. If the decision to issue a Notice of Intent to Terminate is based on fraud, it should be supported by a fully documented SOF and any other relevant documents/information.]

Based on the information outlined above, USCIS is notifying you of its intent to terminate your deferred action for childhood arrivals. A final decision to terminate your deferred action for childhood arrivals will not be made for 33 days. During that time, you may submit any evidence that you feel will overcome the grounds for termination. If your response is not received within the allotted time or if your response to this notice does not overcome the grounds for termination, USCIS will terminate your deferred action for childhood arrivals. If your deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of your deferred action will be terminated for cause

## **DACA 601 – Termination Notice [After NOIT]**

On [Date], you were notified that it was the intent of USCIS to terminate your deferred action for childhood arrivals. In response to the Intent to Terminate, you [ISO should summarize the individual's response to the Intent to Terminate or indicate that the individual did not respond within the allotted time].

Your response does not overcome the grounds for termination. [If the individual's response does not overcome the reason for the termination as outlined in the Notice of Intent to Terminate, the ISO should explain why]. Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

    [Insert Service Center
    Address]

2103

**DACA 602 – Termination Notice [NTA Issuance]**

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

On [Date NTA served on alien], [U.S. Citizenship & Immigration Services (USCIS)/Immigration & Customs Enforcement (ICE)] issued you a Notice to Appear (NTA).

Your deferred action as a childhood arrival and your employment authorization automatically terminated as of the date your NTA was issued. You must return your Employment Authorization Document (EAD) to USCIS immediately. Fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

> [Insert Service Center
> Address]

**DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated]**

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

After consulting with U.S. Immigration & Customs Enforcement, USCIS has determined that exercising prosecutorial discretion in your case is not consistent with the Department of Homeland Security's enforcement priorities. Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

> [Insert Service Center
> Address]

| NOID for DACA | Local OCC Review Required | SCOPS Review Required | HQOCC Review Required |
|---|---|---|---|
| **Appendix E (NOID Templates)** | No. | No. Will implement QA Review. | No. |
| ***Appendix E combined with Appendix D (RFE Templates)** | No. | No. Will implement QA Review. | No. |

**\*Note**: When an Appendix E NOID is combined with language in Appendix D and it creates a complicated NOID decision, Centers should issue the NOID decision without the Appendix D language. Once the response to the NOID is received and if the reason for the intended denial is overcome, Centers may issue an RFE with the Appendix D call-ups to establish whether the requestor satisfies the guidelines.

| | | | |
|---|---|---|---|
| **Not Under 31 on 6/15/12** | No. | Whenever the Center encounters a novel, complex, or sensitive case. | No. |
| **Insufficient CR Since 6/15/07** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Not Physically Present on 6/15/12** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **IN Status on 6/15/12** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Education** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Criminal** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Juvenile Delinquency** | Yes. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Public Safety & National Security** | Yes. | Yes. | Yes. |
| **Fraud Concerns** | Yes. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Favorable Exercise of Prosecutorial Discretion Not Warranted** | Yes. | Yes. | Yes. |
| **All Other NOIDs Not Categorized Above** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |

# Operational Guidance as of April 4, 2013

| NOID for DACA | Local OCC Review | SCOPS SPB Review | HQOCC Review Required |
|---|---|---|---|
| Appendix E (NOID Templates) **Published 04/04/2013** | No. | No. Will implement QA review. | No. |
| *Appendix E combined with Appendix D (RFE Templates) | No. | No. Will implement QA review. | No. |
| **\*Note:** When an Appendix E NOID is combined with language in Appendix D and it creates a complicated NOID decision, Centers should issue the NOID decision without the Appendix D language. Once the response to the NOID is received and if the reason for the intended denial is overcome, Centers may issue an RFE with the Appendix D call-ups to establish the requestor's eligibility. | | | |
| Under 31 on 6/15/12 | No. | Yes. | No. |
| CR Since 6/15/07 | Whenever the Center encounters a novel, complex, or sensitive case. | Yes. | Whenever the Center encounters a novel, complex, or sensitive case. |
| Physically Present on 6/15/12 | Whenever the Center encounters a novel, complex, or sensitive case. | Yes. | Whenever the Center encounters a novel, complex, or sensitive case. |
| Out of Status as of 6/15/12 | Whenever the Center encounters a novel, complex, or sensitive case. | Yes. | Whenever the Center encounters a novel, complex, or sensitive case. |
| Criminal, Public Safety & NS | Yes. | Yes. | Yes. |
| Education | Yes. | Yes. | Yes. |
| Fraud Concerns | Yes. | Yes. | Yes. |
| All other NOIDs not categorized above. | Yes. | Yes. | Yes. |

2106

| NOID for DACA | Local OCC Review Required | SCOPS Review Required | HQOCC Review Required |
|---|---|---|---|
| **Appendix E (NOID Templates)** | No. | No. Will implement QA Review. | No. |
| ***Appendix E combined with Appendix D (RFE Templates)** | No. | No. Will implement QA Review. | No. |

**\*Note:** When an Appendix E NOID is combined with language in Appendix D and it creates a complicated NOID decision, Centers should issue the NOID decision without the Appendix D language. Once the response to the NOID is received and if the reason for the intended denial is overcome, Centers may issue an RFE with the Appendix D call-ups to establish the requestor's eligibility.

| | | | |
|---|---|---|---|
| **Under 31 on 6/15/12** | No. | Whenever the Center encounters a novel, complex, or sensitive case. | No. |
| **CR Since 6/15/07** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Physically Present on 6/15/12** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Out of Status on 6/15/12** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Education** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Criminal** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |
| **Juvenile Delinquency** | Yes. | Yes. | Yes. |
| **Public Safety & National Security** | Yes. | Yes. | Yes. |
| **Fraud Concerns** | Yes. | Yes. | Yes. |
| **Favorable Exercise of Prosecutorial Discretion Not Warranted** | Yes. | Yes. | Yes. |
| **All Other NOIDs Not Categorized Above** | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever the Center encounters a novel, complex, or sensitive case. | Whenever local OCC or SCOPS encounters a novel, complex, or sensitive case. |

# APPENDIX K

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

## DACA 500 -NOTICE OF DENIAL – REQUESTOR IS DECEASED

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [*insert name*] ("the requestor") on [*insert date*].

On [*insert date*], USCIS received notification that the requestor is now deceased.  Please accept our deepest sympathies for your loss.

USCIS is hereby denying the requestor's Form I-821D.  Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 501 -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.  Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D.  According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [you filed / was filed on your behalf] was approved on [insert date].  Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 502A -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
Based on a review of your case, it appears that the following occurred:

The record reveals that on [*Date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*Date deferred action expires*].  ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS.  On [*Date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case.  Therefore, USCIS has denied your Form I-821D.  The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

## DACA 502B – NOTICE OF DENIAL - USCIS ALREADY DEFERRED ACTION

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
Based on a review of your case, it appears that the following occurred:

The record reveals that on [Filing date for approved case], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX). On [Date], USCIS determined that you meet the guidelines for deferred action for childhood arrivals and deferred action on your case until [Date]. USCIS notified you that action was deferred on your case and mailed to you an Employment Authorization Document valid until [Date].

On [Filing date for pending case], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case until [Date].

## DACA 503 -NOTICE OF DENIAL – INSUFFICIENT RFE RESPONSE FOR CRIMINAL RECORDS

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
Based on a review of your case, it appears that the following occurred:

The record reveals that you have been arrested or detained by law enforcement officials. On [*Date RFE issued*], USCIS sent you a notice requesting you to submit certified court dispositions for all of your arrests, including an arrest(s) specifically identified on the request. In response to the request for evidence, you submitted [*indicate what was submitted*]. However, the response was insufficient because [*indicate why it was insufficient. For example:* "the document was not certified by the court"].

USCIS was unable to conduct a sufficient background check on you because you did not provide the requested certified court dispositions. Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

# APPENDIX K

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

## DACA 500 -NOTICE OF DENIAL – REQUESTOR IS DECEASED

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [*insert name*] ("the requestor") on [*insert date*].

On [*insert date*], USCIS received notification that the requestor is now deceased.  Please accept our deepest sympathies for your loss.

USCIS is hereby denying the requestor's Form I-821D.  Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 501 -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.  Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D.  According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [you filed / was filed on your behalf] was approved on [insert date].  Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 502 -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
Based on a review of your case, it appears that the following occurred:

The record reveals that on [*Date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*Date deferred action expires*].  ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS.  On [*Date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case.  Therefore, USCIS has denied your Form I-821D.  The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

# Exhibit H

02/11/2017  04:41     5595623407                    JOYERIA DORADO                        PAGE  01/01

Department of Homeland Security      Document 140 Filed 02/03/28 Page 20 of 373
U.S. Citizenship and Immigration Services                                              I-797, Notice of Action

# THE UNITED STATES OF AMERICA

| Receipt Number | USCIS Account Number | Case Type |
|---|---|---|
| IOE0900414397 | 002054432260 | I821D - CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS |

| Receipt Date | Priority Date | |
|---|---|---|
| 03/02/2016 | 02/28/2016 | |
| | | DANIEL  RAMIREZ MEDINA |

| Notice Date | Page | |
|---|---|---|
| 05/05/2016 | 1 of 1 | |

RAMIREZ MEDINA, DANIEL

**Notice Type:** Approval Notice
Valid from: 05/05/2016 to 05/04/2018

Notice of Deferred Action:

This notice is to inform you regarding U.S. Citizenship and Immigration Services's (USCIS) decision on your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.

USCIS, in the exercise of its prosecutorial discretion, has decided to defer action in your case. Deferred action is an exercise of prosecutorial discretion by USCIS not to pursue the removal of an individual from the United States for a specific period. Deferred action does not confer or alter any immigration status.

Unless terminated, this decision to defer removal action will remain in effect for 2 years from the date of this notice.

This form does not constitute employment authorization, nor may it be used in place of an Employment Authorization Document. The 90-day period for reviewing Form I-765, Application for Employment Authorization, filed together with Form I-821D begins as of the date of this approval notice. If Form I-765 is granted, you will receive your Employment Authorization Document separately by mail. Subsequent criminal activity after your case has been deferred is likely to result in termination of your deferred action. This notice does not provide permission to travel outside of the United States.

You are required to notify USCIS if you change your address. You may use the Alien's Change of Address Card, Form AR-11, to report a new address. That form may be found at www.uscis.gov. There is no fee for this change of address form.

NOTICE: USCIS and the U.S. Department of Homeland Security (DHS) reserve the right to verify the information submitted in this request and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of the verification will be used to determine whether termination of deferred action and/or removal proceedings are appropriate if, for example, the requestor committed fraud or misrepresentation in his or her request for consideration of deferred action for childhood arrivals, or engaged in subsequent criminal activity following the submission of his or her request. Individuals for whom removal action is deferred under Deferred Action for Childhood Arrivals may, in the sole discretion of USCIS and DHS, be provided an opportunity to address derogatory information before deferred action is terminated and/or removal proceedings are initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS/Nebraska Service Center
P.O. Box 82521
Lincoln NE 68501-2521

Customer Service Telephone: 800-375-5283



Form I-797 (Rev. 01/31/05) N

# Exhibit I

February 17, 2017

**U.S. Department of Homeland Security**
U S Citizenship and Immigration Services
P O Box 82521
Lincoln, NE 68501-2521



DANIEL RAMIREZ MEDINA

RE: I-821D, Deferred Action for Childhood Arrivals

<u>**NOTICE OF ACTION**</u>

On February 29, 2016, you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on May 5, 2016, deferring your removal from the United States.

On February 10, 2017, Immigration & Customs Enforcement (ICE) issued you a Notice to Appear (NTA).

USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date your NTA was issued. You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

Nebraska Service Center
PO Box 82521
Lincoln NE 68501-2521

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this notice of action may not be filed on behalf of the requestor.

Sincerely,

Mark J. Hazuda
Director
Officer: TR 0995

# Exhibit J

U.S. Immigration and Customs Enforcement

## NOTICE TO EOIR: ALIEN ADDRESS

Date: __March 29, 2017__                                                       TAC-C-1700221

To: Enter Name of BIA or Immigration Court I-830 EOIR TACOMA, WA _____

    Enter BIA or Immigration Court Three Letter Code@usdoj.gov __AIR__ _____

From: Enter Name of ICE Office _Northwest Detention Center_ _____

    Enter the Street Address of ICE Office _1623 East J Street Suite 2_ _____

    Enter city, State and Zip Code of ICE Office _Tacoma, WA 98421_ _____

Respondent: Enter Respondent's Name _Ramirez-Medina, Daniel_ _____

    Alien File No: A▮ _____

---

This is to notify you that this respondent is:

☐   Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer - Notice of Action by the ICE (Form I-247) has been filed with the institution shown below.   He/she is incarcerated at:

Enter Name of Institution where Respondent is being detained _____

Enter Street Address of Institution where Respondent is being detained _____

Enter City, State and Zip code of Institution where Respondent is being detained _____

**Enter Respondent's Inmate Number** _____

His/her anticipated release date is Enter Respondent's Anticipated Release Date. _____

☐ Detained by ICE on Enter Date Respondent was Detained by ICE at: _____

Enter Name of ICE Detention Facility where Respondent is being detained _____

Enter Street Address of ICE Detention Facility where Respondent is being detained _____

Enter City, State and Zip code of ICE Detention Facility where Respondent is being detained _____

☐ Detained by ICE and transferred on Enter Date Respondent was transferred to: _____

Enter Name of ICE Detention facility where Respondent has been transferred _____

Enter Street Address of ICE Detention Facility where Respondent has been transferred _____

Enter City, State and Zip Code of ICE Detention Facility where Respondent has been transferred _____

☒   Released from ICE custody on the following condition(s):

    ☐   Order of Supervision or Own Recognizance (Form I-220A)

    ☒   Bond in the amount of Enter Dollar Amount of Respondent's Bond 15,000.00

    ☐   Removed, Deported, or Excluded

    ☐   Other

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:

Enter Respondent's Street Address ▮

Enter Respondent's City, State and Zip Code ▮

Enter Respondent's Telephone Number (including area code) ▮

☒   I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: Enter Your First, Last Name and Title _J. ARROYO, Deportation Officer_ _____

ICE Form I-830E (09/09)

# Exhibit K

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
1623 EAST J STREET SUITE 3
TACOMA, WA 98421

IN THE MATTER OF:                                    FILE: **A**

**RAMIREZ-MEDINA, DANIEL**

Docket: **TACOMA, WA**

RESPONDENT                          IN REMOVAL PROCEEDINGS

**CUSTODY ORDER OF THE IMMIGRATION JUDGE**

Request having been made for a change in the custody status of the respondent pursuant to 8 C.F.R. Part 236
and having considered the representations of the Immigration and Customs Enforcement and the respondent, it
is HEREBY ORDERED that:

_____ No Action _____

_____ ORDERED No Jurisdiction:

        _____ Arriving Alien.
        _____ Mandatory Detention under 236(c).
        _____ Reinstated Order of Removal / Final Order of Removal
        _____ Withholding Only Proceedings
        _____ Does not meet the 180 day requirement.

_____ ORDERED that the request for a change in custody status be denied.
      Bond to remain at $ _____ or <u>REMAINS AT NO BOND.</u>

 ✗  ORDERED that the request be granted and that respondent be
      released from custody under bond of $ 15,000.00

_____ Danger to Community / Flight Risk.

 X  OTHER Conditional release is: granted / denied / was not requested.

                              John C. Odell
                              Immigration Judge
                              Date: March 28, 2017

Appeal: WAIVED / RESERVED  (A / I / B)
**IF RESERVED – APPEAL IS DUE BY: April 27, 2017**

---

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:   MAIL (M)   PERSONAL SERVICE (P)   FAX (F)
TO:  [ ] ALIEN   [ ] ALIEN c/o Custodial Officer   [ P ] Alien's ATT/REP   [ P ] ICE
DATE:  03/28/17               BY: COURT STAFF   ndlt ndlt
      Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
                                                           1T

# Exhibit L

| Receipt Number IOE0900414398 | | Case Type I765 - APPLICATION FOR EMPLOYMENT AUTHORIZATION | |
| --- | --- | --- | --- |
| Received Date 03/02/2016 | Priority Date | Applicant RAMIREZ MEDINA, DANIEL | |
| Notice Date 03/30/2018 | Page 1 of 1 | | |

RAMIREZ MEDINA, DANIEL

**Notice Type:** Reinstatement Notice

Pursuant to a court order issued by the U.S. District Court for the Central District of California on February 26, 2018, and modified on March 20, 2018, in Inland Empire et al. v. Nielsen et al., No. 5:17-cv-02048 (C.D. Ca.), USCIS has reopened your Form I-821D and Form I-765, withdrawn the termination, reinstated your DACA and employment authorization from *05/05/2016*, and has extended your DACA and employment authorization to *5/15/2018*.

An employment authorization document will be mailed separately.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

Nebraska Service Center
U. S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521

**Customer Service Telephone: 800-375-5283**



# **Exhibit M**

April 3, 2018

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
P.O. Box 82521
Lincoln, NE 68501-2521





DANIEL RAMIREZ MEDINA

██████████████

USA

RE: I-821D, Deferred Action for Childhood Arrivals



### <u>NOTICE OF INTENT TO TERMINATE</u>

On February 29, 2016, you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA). USCIS approved your Form I-821D on May 5, 2016 deferring your removal from the United States. On February 14, 2017, your DACA was terminated by the issuance of Form I-862, Notice to Appear, by U.S. Immigration and Customs Enforcement. However, pursuant to a court order issued by the U.S. District Court for the Central District of California on February 26, 2018, and modified on March 20, 2018, in <u>Inland Empire et al. v. Nielsen et al., No.</u> 5:17-cv-2048 (C.D. Ca.), on March 30, 2018, USCIS reopened your Form I-821D and Form I-765, withdrew the termination, reinstated your DACA and employment authorization from May 5, 2016, and extended your DACA and employment authorization to May 15, 2018.

USCIS has reviewed your deferred action pursuant to procedures outlined in the USCIS DACA Standard Operating Procedures (SOP) regarding DACA termination. Specifically, page 138 of the DACA SOP states:

> If after consulting with ICE [U.S. Immigration and Customs Enforcement], USCIS determines
>
> that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities, and ICE does not plan to issue an NTA, the officer should refer the case to HQSCOPS [Headquarters Service Center Operations Directorate], through the normal chain of command, to determine whether or not a NOIT [Notice of Intent to Terminate] is appropriate. If it is determined that the case warrants final termination, the officer will issue DACA 603 – Termination Notice [Enforcement Priority, Not Automatically Terminated] from the Appendix I.

USCIS has consulted with U.S. Immigration and Customs Enforcement (ICE) and has determined that exercising prosecutorial discretion to defer removal action in your case is not consistent with DHS's enforcement priorities. As you were already issued an NTA by ICE on February 14, 2017, subsequent to your grant of DACA, further referral to ICE for consideration of NTA issuance is unnecessary. DHS records show that on January 17, 2018, an immigration judge ordered you removed to Mexico.

Additionally, a review of Form I-213, Record of Deportable Alien, reveals that during an encounter

with ICE on February 10, 2017, you admitted to previously associating with the "Sureno's" criminal street gang in the state of California, and to currently associating with the "Paizas" criminal street gang in the state of Washington. While DHS email records indicate that you disputed in immigration court that you are a gang member and that the immigration judge accepted this claim, you nonetheless admitted in immigration court that gangs may identify you as a rival gang member because of your tattoo and you admitted that you withdrew your appeal from placement in a Level 2 gang population at the Norwest Detention Center because you wanted to remain with the gang population. Gang association poses a significant public safety risk. Therefore, it appears that you do not warrant favorable consideration for DACA.

In light of your statements relating to gang association, DHS' determination that you are an enforcement priority, and the fact that ICE has informed USCIS that it is actively pursuing your removal and you were recently ordered removed, USCIS will not contemporaneously conclude that removal action should continue to be deferred in your case. Accordingly, USCIS has determined, in its unreviewable discretion, that you do not warrant a favorable exercise of prosecutorial discretion.

Deferred action is not a form of protection from removal; rather it is merely an acknowledgement that DHS does not, at that present time, intend to pursue removal. Deferred action may be terminated at any time at the Department's discretion.

As the court order in Inland Empire et al. v. Nielsen et al. requires issuance of a Notice of Intent to Terminate prior to the termination of DACA and related employment authorization documents for class members, referral of your case to HQSCOPS for consideration of whether or not a NOIT is appropriate in accordance with the DACA SOP is not necessary.

Based on the information outlined above, USCIS is notifying you of its intent to terminate your deferred action for childhood arrivals. A final decision to terminate your deferred action for childhood arrivals will not be made for 33 days. During that time, you may submit any evidence that you feel will overcome the grounds for termination. If your response is not received within the allotted time or if your response to this notice does not overcome the grounds for termination, USCIS will terminate your deferred action for childhood arrivals. If your deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of your deferred action will be terminated for cause.

Sincerely,

Kristine R. Crandall, Acting
Director
Officer: 0996

# Exhibit N

December 19, 2018

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
P.O. Box 82521
Lincoln, NE 68501-2521



U.S. Citizenship
and Immigration
Services



LUIS ALBERTO CORTES ROMERO
IMMIGRANT ADVOCACY LITIGATIO
19309 68TH AVE SOUTH STE R102
KENT, WA 98032
USA

IOE0904689397



RE: DANIEL RAMIREZ MEDINA
I-821D, Deferred Action for Childhood Arrivals

## DECISION

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

Your most recent period of deferred action under Deferred Action for Childhood Arrivals (DACA) expired on May 15, 2018.[1] You filed the instant request to renew your deferred action under DACA on May 21, 2018. USCIS has reviewed your request to renew your deferred action under DACA.

On September 26, 2018, USCIS notified you of its intent to deny your request for renewal of deferred action under DACA, because USCIS found that you did not warrant a favorable exercise of prosecutorial discretion under the totality of the circumstances. The reasons are described below. USCIS did not assert, adopt, or rely on any statement or record made as of May 15, 2018, purporting to allege or establish that you are a gang member, gang affiliated, or a threat to public safety in reviewing your DACA renewal request and determining in USCIS' judgment that at this time you do not merit deferred action under the DACA policy.

As noted within the September 26, 2018 Notice of Intent to Deny (NOID), U.S. Immigration and Customs Enforcement (ICE) issued you a Notice to Appear (NTA) on February 29, 2016, to pursue removal proceedings against you under the provisions of INA § 240. An Immigration Judge ordered you removed on January 17, 2018, and denied your application for asylum and for withholding of removal. You filed an appeal with the Board of Immigration Appeals (BIA), which remains pending as of today. ICE considers you an enforcement priority and continues to actively pursue your removal. ICE is opposing your appeal before the BIA.

During your removal proceedings, it was learned that you were reported for having sex with an underage female in California, in violation of California Penal Code (CPC) § 261.5. ICE provided USCIS a police report dated December 27, 2013, which lists the charge– "261.5(B) PC – Unlawful Sexual Intercourse – Less than 3 years difference, misdemeanor." The police report indicates that you had unlawful sexual intercourse with an individual who was 17 years old at the time of the report. You were 20 years old at the time of the report. The report indicates that the unlawful act resulted in a pregnancy and birth of a child which was reported by Child Welfare Services. The police report notes that you were in a relationship with the mother and residing with her at the time the incident report was



created. The record indicates that the district attorney declined to file charges. However, the police report provides details that indicate you had unlawful sexual intercourse in violation of CPC § 261.5. While you were not convicted of this crime, USCIS finds that the information is a negative factor in the consideration of whether to renew your deferred action under DACA.

During removal proceedings, you also admitted that you had acquired marijuana from a "friend" who had a medical marijuana authorization card. The October 21, 2014 incident report indicates that a car you were driving was stopped by a police officer after the officer observed your car "cross the painted white fog lines twice." You denied having drugs in your vehicle when asked by police whether there was any marijuana inside the vehicle. In your letter of explanation, as required by a plea of no contest, you wrote to an Oregon court that you keep marijuana with you at all times. You admitted violating Oregon law by possessing marijuana in your car while driving from Washington State to California, for which you received a citation. Possessing and transporting marijuana across state lines is a chargeable federal offense under 21 U.S. Code § 844. The citation indicates you were also cited for not having a valid operator's license and driving uninsured. The court records indicate that you were convicted for driving uninsured and required to pay a fine of $512.

Additionally, ICE provided information which indicates you have received nearly $5,000 in fines for various motor vehicle related traffic offenses. Your traffic related offenses and fines are summarized below as of August 28, 2018:

**CALIFORNIA:**



- 04/28/2016 - Case#6013: Traffic citations for Driving without a License (DWOL), license plate light violation, no vehicle insurance, and speeding (warning only 35mph in 25mph zone). Cited by Lindsay Police Department. Disposition: fine.

  *Currently in collections and subject pays $50.00 on the 11th of each month.

    *Total fine: $2170.00. Paid: $900.00. Outstanding balance: $1270.00 as of 08/21/2018.

- 05/06/2015 - Case# AD35341: Speeding (80mph+ in 65mph zone) and failure to provide insurance. Cited by CHP. Disposition: fine.

    *Total fine: $1071.00 fine. PAID. 09/13/2012 - Citation#54980: Unlicensed Driver. No record of disposition.

- 09/13/2012 - Citation#54980: Unlicensed Driver. No record of disposition.


**OREGON:**

- 10/21/2014 - Case#15474: Driving without a License (DWOL) and no insurance. Cited by Myrtle Creek Police Department. Disposition: DWOL-dismissed. No insurance- convicted. Disposition: fine.

  *Total fine: $512.00. Paid $250.00. Outstanding balance: $262.00 as of 08/22/2018.

- 10/21/2014 - Case#15475: Unlawful possession of less than 1oz of Marijuana. Cited by Myrtle Creek Police Department. Disposition: convicted with fine.

*Total fine: $1088.00. Paid $0. Outstanding balance: $1088.00 as of 08/22/2018.

Total incurred fines: $4841.00

Total outstanding balance: $2620.00

USCIS notes that you possessed an Employment Authorization Documents (EAD) in connection with your prior grants of DACA. Your prior EADs were valid from December 6, 2013 to December 5, 2015 and from May 5, 2016 to May 4, 2018; and May 15, 2018 (for your court ordered reinstated DACA). Based on your receipt of EADs from USCIS, you could have applied for and obtained a state driver's license in compliance with California and Washington state requirements for operating a motor vehicle. However, the record indicates that you failed to obtain a driver's license despite having an opportunity to, and a prior history of offenses for driving without a license.

Additionally, USCIS notes that you had employment authorization but have failed to pay the total amount due for your traffic offenses.

The above information was unknown to USCIS at the time of your previous DACA grant on May 5, 2016. Your entire offense history can be considered along with other factors to determine whether, under the totality of the circumstances, you warrant an exercise of prosecutorial discretion to defer action.

USCIS has reviewed your response and has determined that the response does not sufficiently overcome the discretionary factors outline in the NOID. Other than your own declaration, you have not submitted any evidence that is not already on the record. You did not submit any evidence related to your marijuana conviction. You also did not submit any new evidence related to the investigation into the unlawful sexual intercourse that resulted from the birth of your child. You did not submit any affidavits from others in support of your own claims.

Additionally, in connection with consideration of your DACA renewal request, USCIS consulted with ICE, and ICE informed USCIS that you are considered an enforcement priority.

Deferred action is not a form of protection from removal; rather it is merely an acknowledgement that the Department of Homeland Security (DHS) does not, at the present time, intend to pursue removal.

As stated in former Secretary Napolitano's 2012 Memo titled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children", "DHS cannot provide any assurance that relief will be granted in all cases" and further notes that the 2012 Memo "confers no substantive right, immigration status or pathway to citizenship."

Deferred action only means that action to remove someone is deferred and that the decision not to pursue removal may be revisited at any point in the future. An individual who was granted DACA does not maintain deferred action in perpetuity. Rather, under the 2012 DACA memorandum deferred action may be granted pursuant to the DACA guidelines for two year periods subject to renewal. The DACA policy requires that individuals submit a request for renewal of DACA, at which point USCIS again, may or may not grant deferred action as an exercise of prosecutorial discretion. Nothing in the 2012 DACA policy requires USCIS to approve a DACA renewal request simply because the individual's prior DACA request was approved.

Since the beginning of DACA, the Form I-821D instructions have provided that "USCIS will evaluate the totality of the circumstances in reaching a decision on deferred action" and that even if a DACA



request "satisfy[ies] the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case."

After consulting with ICE and considering the totality of the circumstances in your case, USCIS finds that you do not warrant a favorable exercise of prosecutorial discretion to defer removal action against you.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Sincerely,

Loren K. Miller
Director
Officer: 0996

[1] USCIS previously issued you a Notice of Intent to Terminate (NOIT) your DACA on April 3, 2018, and you responded to that NOIT on May 7, 2018. USCIS did not take any final action to terminate your DACA prior to the expiration of your DACA and related employment authorization on May 15, 2018.



# Exhibit 2

1

2

The Honorable Ricardo S. Martinez
Chief United States District Judge

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

10

11

12

~~Daniel Ramirez Medina,~~ DANIEL RAMIREZ
MEDINA,

13

Plaintiff,

14

v.

15

16

17

18

19

20

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES~~; MATTHEW E. HICKS,
[UNKNOWN FIRST NAME] PETER,
[UNKNOWN FIRST NAME] HERNANDEZ,
and KATHLYN LAWRENCE, U.S.
Immigration and Customs Enforcement
Officers (in their individual capacities); and
JOHN DOES 1-10 (in their individual
capacities),~~ **.**,

21

Defendants.

22

CASE NO. 2:17-CV-00218-RSM-JPD

**~~SECOND~~[PROPOSED] THIRD** **AMENDED
COMPLAINT AND DEMAND FOR JURY
TRIAL**

23

24

25

26

27

28

Attorneys for Plaintiff

PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
~~ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*~~
  ~~aprice@publiccounsel.org~~
~~ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*~~
  ~~ehadaway@publiccounsel.org~~
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
~~JESSE S~~NATHANIEL L. ~~GABRIEL~~BACH (CA SBN ~~263137~~246518), *pro hac vice*
  ~~jgabriel~~nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
~~echemerinsky@law.uci.edu~~echemerinsky@law.berkeley.edu
University of California, Berkeley School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

1

2   LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
      llitman@law.uci.edu
3   University of California, Irvine School of Law
    *\*Affiliation for identification purposes only*
4   401 East Peltason Drive
    Educ 1095
5   Irvine, CA 92697
    Telephone: (949) 824-7722

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2   LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*

3    larry@tribelaw.com
    Harvard Law School
4   *Affiliation for identification purposes only*
    1575 Massachusetts Avenue
5   Cambridge, MA 02138
    Telephone: (617) 495-1767
6   ELIZABETH HAWKINS (SBN 43187)

7    ehawkins@hawkinsimmigration.com
    Hawkins Law Group
8   17544 Midvale Avenue, Suite 301
    Shoreline, WA 98133
9   Telephone: (206) 728-4220
    Facsimile: (206) 973-5326
10  ~~BARRERA LEGAL GROUP~~IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC

11  LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
    ~~lcortes@barreralegal.com~~lcortes@ia-lc.com
12  ~~JOHN C. BARRERA (SBN 47658), *pro hac vice*~~
    ~~jbarrera@barreralegal.com~~
13  ~~JOSE GARCIA (SBN 46518), *pro hac vice*~~
    ~~jgarcia@barreralegal.com~~
14  19309 68th Avenue South, Suite R-102
    Kent, WA 98032
15  Telephone: (253) 872-4730
    Facsimile: (253) 237-1591
16  NORTHWEST IMMIGRANT RIGHTS PROJECT

17  MATT ADAMS (SBN 28287)
     matt@nwirp.org
18  615 Second Ave., Suite 400
    Seattle, WA 98104
19  Telephone:  (206) 957-8611

20

21

22

23

24

25

26

27

28

~~Second~~Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

III

Counsel Listed on Pages I and II

1

**INTRODUCTION**

2   In February 2017, Immigration and Customs Enforcement ("ICE") arrested Plaintiff Daniel

3   Ramirez Medina ("Mr. Ramirez") was arrested by U.S. Immigration and Customs Enforcement

4   ("ICE") without a warrant or probable cause, and was detained him for more than six weeks without

5   justification, in clear violation of his constitutional rights. Defendants targeted Mr. Ramirez was

6   targeted by Defendants despite their knowledge that he is a "Dreamer" who haswas twice been

7   granted deferred action and work authorization under the Deferred Action for Childhood Arrivals

8   ("DACA") program. Mr. Ramirez now seeks relief from this Court to remedy his after rigorous

9   vetting of applications he submitted under the program. Defendants have twice been enjoined from

10   revoking Mr. Ramirez's DACA status and work authorization—once by this Court and once by the

11   United States District Court for the Central District of California in *Inland Empire-Immigrant Youth*

12   *Collective v. Nielsen* ("*Inland Empire*"), No. 17-2048. Nevertheless, in what has become a personal

13   vendetta against Mr. Ramirez, the father of a five-year-old U.S. citizen, Defendants remain

14   determined to unlawfully strip Mr. Ramirez of his DACA status and work authorization.

15   After Mr. Ramirez first challenged the government's unlawful and unconstitutional actions,

16   Defendants launched a campaign to smear his reputation, falsely accusing him of being a gang

17   member to strip him of DACA by any means possible. Defendants continued this campaign despite

18   repeatedly confirming and being forced to admit that they had no actual evidence that Mr. Ramirez

19   had any gang affiliation. Even worse, Defendants had determined that Mr. Ramirez was neither a

20   gang member nor an "EPS" (egregious public safety) concern but failed to inform Mr. Ramirez or the

21   Court that they had done so. Specifically, in an internal U.S. Citizenship and Immigration Services

22   ("USCIS") email dated March 20, 2018, the government admitted that "there is not sufficient

23   evidence to conclude [Mr. Ramirez] is currently a known or suspected gang member," and "[t]here is

24   NOT sufficient evidence to conclude [Mr. Ramirez] is an EPS concern."[1] Despite knowing its gang

25   accusations were false, just two weeks later, on April 3, 2018, the government tried again to terminate

26   Mr. Ramirez DACA's on the basis that he was a gang member and told this Court on May 1, 2018

27   that it was continuing to rely on that allegation as its basis to do so.

28

---

[1]   Ex. A (Mar. 20, 2018 USCIS Email) (capitalization in original).

1    After this Court granted Mr. Ramirez's preliminary injunction motion on May 15, 2018

2    ("Preliminary Injunction Order"), enjoining Defendants from continuing their unlawful campaign and

3    terminating his DACA, Mr. Ramirez believed he would be able to get back to peacefully living his

4    life and working to support his son.  But Defendants have now attempted a new unlawful gambit,

5    arbitrarily and capriciously denying Mr. Ramirez's most recent request to renew his DACA status, in

6    December 2018—requests that are otherwise approved 99% of the time—thereby violating both the

7    letter and spirit of this Court's Preliminary Injunction Order.

8    Mr. Ramirez asks this Court to remedy the government's latest unconstitutional ~~arrest and~~

9    ~~detention, restore his arbitrarily terminated~~actions by restoring his DACA status and work

10   authorization, and ~~confirm~~confirming that the benefits he was provided under DACA are protected by

11   the Fifth Amendment's Due Process Clause.

12                                          * * * * *

13        The federal government established the DACA program with great fanfare in 2012.  Under

14   DACA, individuals brought to the United States as children who meet certain criteria, and who are

15   found by the Department of Homeland Security ("DHS") to pose no threat to public safety or national

16   security, are granted deferred action for a two-year period, subject to renewal.  These young people

17   are commonly referred to as "Dreamers" in recognition that they have played by the rules, cooperated

18   with the government, and are working hard to be part of the American Dream.  As the government

19   has explained, Dreamers are "considered by DHS to be lawfully present during the period deferred

20   action is in effect," and are eligible to receive employment authorization and other important

21   benefits.[~~12~~]  Indeed, on March 29, 2017, the Secretary of Homeland Security reaffirmed that "DACA

22

23

24

25   [~~12~~]  Ex. ~~A~~B, at 2 (*Frequently Asked Questions*, U.S. Citizenship & Immigration Servs.:
         Consideration of Deferred Action for Childhood Arrivals Process,
26       https~~://www.uscis.gov/humanitarian~~https://www.uscis.gov/humanitarian/consideration-deferr
         ed-action-childhood-arrivals-process/frequently-asked-questions) (hereinafter "USCIS
27       DACA FAQs"); *see also Texas v. United States*, 809 F.3d 134, 166 (5th Cir. 2015) *aff'd by
         an equally divided court*, 136 S. Ct. 2271 (2016) ("Deferred action . . . is much more than
28       nonenforcement:  It . . . affirmatively confer[s] 'lawful presence' and associated benefits . . .
         ."); *Ariz. Dream Act Coal. v. Brewer*, 81 F. Supp. 3d 795, 811 (D. Ariz. 2015).

1  status is a commitment . . . by the government towards the DACA person, or the so-called

2  Dreamer."[23]

3       As a result of the government's representations and promises, hundreds of thousands of

4  Dreamers have applied for, and been granted, deferred action under DACA.  To apply for DACA,

5  eligible young people are required to provide DHS with highly sensitive personal information, pay a

6  substantial fee, and submit to a rigorous background check.  Mr. Ramirez did all of that not once, but

7  ~~twice, most recently less than a year ago~~three times—once in 2013, again in 2016 when he

8  successfully renewed his DACA status~~.~~, and most recently in May of 2018.  In so doing, Mr.

9  Ramirez—like nearly 750,000 other Dreamers—"relied on the U.S. government's representations"

10  that it would honor its commitments under the DACA program.[34]  As a result of ~~their~~his reasonable

11  expectations, Mr. Ramirez (and his fellow Dreamers ~~have~~) has constitutionally protected liberty and

12  property interests in the benefits granted under DACA, which include, among other things, the ability

13  to live and work in the United States without fear of arbitrary arrest or detention.

14       Notwithstanding these promises, Defendants arrested and detained Mr. Ramirez without a

15  warrant or probable cause.  They handcuffed him, forcibly removed him from a private residence, and

16  transported him to an ICE detention facility where he was coercively interrogated.  They summarily

17  revoked his DACA status and work authorization without notice, justification, or due process, and

18  detained him with dangerous criminals for more than six weeks.

19       Once Mr. Ramirez filed a petition for habeas corpus in this Court, ~~these agents~~the government

20  doubled down, mounting a sustained campaign to publicly vilify him as a "gang member," despite

21  having no credible evidence to support that allegation.  Indeed, as the government later admitted to an

22  Immigration Judge~~,~~—and as it has since admitted in an internal USCIS email—there is insufficient

23  evidence to even argue that Mr. Ramirez is a danger to the community.~~There was no lawful basis for~~

24  ~~any of Defendants' actions against Mr. Ramirez.  At the time of his arrest and detention, Defendants~~

25  ~~knew (and had unmistakable proof of the fact) that Mr. Ramirez had been granted deferred action~~

26  ~~under DACA, and was therefore considered lawfully present in the United States.  And despite~~

27

28  [23] Ted Hesson & Seung Min Kim, *Wary Democrats Look to Kelly for Answers on Immigration*,
      Politico (Mar. 29, 2017), http://politi.co/2mR3gSN.
    [34] Ex. ~~B~~C, at 1 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).

1  ~~knowing that he had passed multiple DHS background checks and had no criminal history, the ICE~~

2  ~~agents~~ asserted that Mr. Ramirez ~~was a gang member based on his race and national origin and a~~

3  ~~single tattoo, which Mr. Ramirez and multiple experts have confirmed has nothing to do with gangs.~~

4  ~~The government has since abandoned that allegation, and has conceded that it~~ Despite these

5  remarkable concessions, the government continued to ~~detain~~falsely accuse Mr. Ramirez ~~despite~~

6  ~~knowing that he presented no threat to public safety.~~of gang affiliation.

7       Mr. Ramirez therefore sought a preliminary injunction to prohibit the government from

8  terminating his DACA status and work authorization on these discredited allegations.  While Mr.

9  Ramirez's preliminary injunction motion was pending before this Court, a class-wide injunction was

10  entered on February 26, 2018 in *Inland Empire* that required the government to restore to a class of

11  former DACA recipients—including Mr. Ramirez—their DACA status and work authorization.

12       On April 3, 2018, the same day that Defendants complied with the *Inland Empire* order by

13  restoring Mr. Ramirez's benefits, they simultaneously initiated a new process to strip Mr. Ramirez of

14  his just-restored DACA status and work authorization, issuing a Notice of Intent to Terminate

15  ("NOIT") on the same false, discredited basis that Mr. Ramirez was a gang member.  Remarkably,

16  USCIS had determined at least two weeks prior to issuing the April 3, 2018 NOIT—as demonstrated

17  in a March 20, 2018 internal USCIS email—that Mr. Ramirez posed no threat as there was

18  insufficient evidence to sustain any allegation that he is a gang member:

19

20  Description of Current Criminal History: No criminality on rap sheet.  Gang information obtained from EARM,
ICE interview of DACA recipient.  HOWEVER, there is not sufficient evidence to conclude he is currently a

21  known or suspected gang member.  If this was a pending case, it would have been further vetted and likely referred
to a field office for a gang interview.  There is NOT sufficient evidence to conclude this person is an EPS concern.

22  Ex. A (underlining added).  Moreover, the government only produced this document to Mr. Ramirez

23  in September 2018, after being compelled to do so by this Court.  USCIS therefore ignored its own

24  determination that Mr. Ramirez was not a gang member and issued a NOIT just two weeks later on

25  the same false basis that Mr. Ramirez was a gang member.  There has rarely been a case in which the

26  government's animus against a particular individual has so clearly driven an unlawful vendetta based

27  on a fiction.

28

1    On May 1, 2018, this Court held a hearing on Mr. Ramirez's preliminary injunction motion,

2    and after supplemental briefing from the parties, on May 15, 2018 it issued its Preliminary Injunction

3    Order.  The Court ordered that "Defendants shall not terminate Plaintiff's DACA status and work

4    authorization pending a final decision by this Court on the merits of his claims," and enjoined

5    Defendant USCIS from "asserting, adopting, or relying in any proceedings on any statement or record

6    made as of this date purporting to allege or establish that Mr. Ramirez is a gang member, gang

7    affiliated, or a threat to public safety."[5]  Thereafter, and although the government was subsequently

8    enjoined from terminating Mr. Ramirez's DACA status pending trial on the merits, Mr. Ramirez filed

9    a DACA renewal notice to ensure there would be no question about his entitlement to such benefits.

10    However, Defendants blatantly violated the terms of the Preliminary Injunction Order when,

11    in a "Decision" dated December 19, 2018, USCIS denied Mr. Ramirez's routine DACA renewal

12    request on the grounds that he now again poses a risk to public safety, citing no new criminal charges

13    but a supposed "offense history" that predates his initial grant of DACA and his 2016 renewal.  It is

14    abundantly clear that the government has determined to continue to target Mr. Ramirez for standing

15    up for his rights and decided to willfully violate this Court's Preliminary Injunction Order to do so.

16    There has never been any lawful basis for any of Defendants' targeted and retributive actions against

17    Mr. Ramirez and this Court should put a stop, once and for all, to the government's unlawful

18    campaign against him.

19    Mr. Ramirez therefore respectfully requests that this Court: (1) reinstate his(1) find the

20    agency actions to deny Mr. Ramirez's DACA to be arbitrary and capricious and unlawful; (2) confirm

21    the validity of his ongoing DACA status and work authorization; (2) award him damages for the

22    injuries he has sustained as a result of Defendants' unlawful conduct; and (3) and/or reinstate such

23    status; (3) protect those benefits against future unlawful action by the government; and (4) issue

24    declaratory relief confirming that theMr. Ramirez's benefits provided under the DACA program are

25    liberty and property interests protected by the Due Process Clause.

26

27

28

---

[5]   Dkt. #133, at 23 (Preliminary Injunction Order).

**JURISDICTION AND VENUE**

1.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.  This Court also has remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

~~2.  All claims against employees and agents of the United States in their individual capacities are brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).~~

2. ~~3.~~ Venue properly lies within the Western District of Washington because a substantial part of the events or omissions giving rise to this action occurred in the District.  28 U.S.C. § 1391(e)(1).

3. ~~4.~~ This is an amended version of the Second Amended ~~Petition for Habeas Corpus and~~ Complaint ~~for Declaratory and Injunctive Relief~~ that was filed in this action on ~~February 21,~~ April 25, 2017.[46]

**PARTIES**

4. ~~5.~~ Mr. Ramirez is the twenty-~~four~~ six-year -old father of a United States citizen.  He was brought to the United States from Mexico in or around 2003, when he was approximately 10 years old.  Mr. Ramirez was twice granted deferred action and work authorization under the DACA program.  He ~~recently~~ moved from California to Washington in or around January 2017 in order to obtain more lucrative employment ~~so that he can~~ to better support his son.  After being arrested without a warrant or probable cause, Mr. Ramirez was detained in the Northwest Detention Center for more than six weeks.  ~~His DACA status and work authorization were arbitrarily and capriciously terminated without notice or an opportunity to be heard.~~ He successfully obtained release from custody after the government conceded he was not a threat to public safety, and later, on May 15, 2018, obtained an order from this Court enjoining Defendants from terminating his DACA. Defendants have now unlawfully denied Mr. Ramirez's request to renew his DACA.

---

[46] ~~See~~ *See* Dkt. #~~41.  Because he has been released from detention, Mr. Ramirez is no longer bringing a petition for writ of habeas corpus.~~78.

1    5.    6. The Department of Homeland Security ("DHS") is a cabinet department of the

2    United States federal government with responsibility for, among other things, administering and

3    enforcing the nation's immigration laws.

4    6.    7. U.S. Immigration and Customs Enforcement ("ICE") is a law enforcement agency

5    that is part of DHS.  According to its website, "ICE's primary mission is to promote homeland

6    security and public safety through the criminal and civil enforcement of federal laws governing

7    border control, customs, trade, and immigration."[57]

8    7.    8. U.S. Citizenship and Immigration Services ("USCIS") is a federal agency that is

9    part of DHS.  According to its website, USCIS "is the government agency that oversees lawful

10   immigration to the United States."[68]  USCIS administers the DACA program, including by

11   processing applications and renewals, and issuing notices of termination.

12   9.    On information and belief, at all times relevant to this Complaint, Defendant

13   Matthew E. Hicks was an ICE Deportation Officer.  Defendant Hicks participated in the arrest of

14   Mr. Ramirez on February 10, 2017, and was personally responsible for his subsequent detention.

15   Defendant Hicks is sued in his individual capacity.

16   10.    On information and belief, at all times relevant to this Complaint, Defendant Peter

17   (first name unknown) was an ICE Deportation Officer.  Defendant Peter participated in the arrest

18   and detention of Mr. Ramirez on February 10, 2017, and was personally responsible for his

19   subsequent detention.  Defendant Peter is sued in his individual capacity.

20   11.    On information and belief, at all times relevant to this Complaint, Defendant

21   Hernandez (first name unknown) was an ICE Deportation Officer.  Defendant Hernandez

22   participated in the arrest and detention of Mr. Ramirez on February 10, 2017, and was personally

23   responsible for his subsequent detention.  Defendant Hernandez is sued in his individual capacity.

24   12.    On information and belief, at all times relevant to this Complaint, Defendant

25   Kathlyn Lawrence was an ICE Supervisory Detention and Deportation Officer.  Defendant Lawrence

26   supervised the processing of Mr. Ramirez at the ICE holding facility in Tukwila, Washington, on

---

27   [57] *See, e.g.*, *ICE Initiative to Increase Community Engagement*, U.S. Immigration & Customs
     Enforcement: News Releases (Mar. 10, 2016),
28       https://www.ice.gov/news/releases/ice-initiative-increase-community-engagement.
     [68] United States Citizenship & Immigration Servs., *About Us*, https://www.uscis.gov/aboutus.

1    ~~February 10, 2017, and was personally responsible for his subsequent detention.  Defendant~~

2    ~~Lawrence is sued in her individual capacity.~~

3        ~~13.    At all times mentioned in this Complaint, unless otherwise alleged, Defendants~~

4    ~~Hicks, Peter, Hernandez, and Lawrence were federal agents or employees acting under the color of~~

5    ~~federal law.~~

6        ~~14.    Mr. Ramirez is currently unaware of the true identities and capacities of the~~

7    ~~remaining Defendants, Does 1-10, inclusive, and therefore sues those Defendants by fictitious~~

8    ~~names.  Mr. Ramirez is informed and believes, and on that basis alleges, that each of the fictitiously~~

9    ~~named Defendants is personally responsible and liable for the acts and/or damages alleged in this~~

10   ~~Complaint, and that among these Defendants are federal agents and employees who acted under the~~

11   ~~color of federal law.  Mr. Ramirez will seek leave to amend this Complaint to allege the true~~

12   ~~identities and capacities of these fictitiously named Defendants once they have been ascertained.~~

13                              **STATEMENT OF FACTS**

14   **Establishment of the DACA Program**

15       **8.**    ~~15.~~ On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano issued

16   a memorandum establishing the DACA program (the "2012 DACA Memorandum").~~7~~9  Under the

17   DACA framework, individuals who were brought to the United States as young children and meet

18   certain specific criteria may request deferred action for a period of two years, subject to renewal.  In

19   exchange, DACA applicants are required to provide the government with highly sensitive personal

20   information, submit to a rigorous background check, and pay a considerable fee.

21       **9.**    ~~16.~~ Deferred action is a well-established form of prosecutorial discretion under

22   which the government defers removal action against an individual for a specified period, subject to

23   renewal.  The 2012 DACA Memorandum explained that DACA covers "certain young people who

24   were brought to this country as children and know only this country as home" and that the

25   immigration laws are not "designed to remove productive young people to countries where they may

26   not have lived or even speak the language."~~8~~10

---

27   ~~7~~ Ex. ~~C~~D, at 1 (Memorandum from Secretary Janet Napolitano, Exercising Prosecutorial
         Discretion with Respect to Individuals Who Came to the United States as Children (June
28       15, 2012)) (hereinafter "2012 DACA Memorandum").
     ~~8~~10  *Id.* at 1–2.

1    10.    17. The 2012 DACA Memorandum established criteria that "should be satisfied

2    before an individual is considered for an exercise of prosecutorial discretion."9[11]  They are that the

3    applicant:

4        • came to the United States under the age of sixteen;

5        • has continuously resided in the United States for at least five years preceding the date of the

6            memorandum and is present in the United States on the date of the memorandum;

7        • is currently in school, has graduated from high school, has obtained a general education

8            development certificate, or is an honorably discharged veteran of the Coast Guard or Armed

9            Forces of the United States;

10       • has not been convicted of a felony offense, a significant misdemeanor offense, multiple

11           misdemeanor offenses, or otherwise poses a threat to national security or public safety; and

12       • is not above the age of thirty.10[12]

13   11.    18. In addition, the 2012 DACA Memorandum provided that "[n]o individual

14   should receive deferred action . . . unless they first pass a background check."11[13]

15   12.    19. USCIS describes DACA as follows:  "Deferred action is a discretionary

16   determination to defer a removal action of an individual as an act of prosecutorial discretion.  For

17   purposes of future inadmissibility based upon unlawful presence, an individual whose case has been

18   deferred is not considered to be unlawfully present during the period in which deferred action is in

19   effect.  An individual who has received deferred action is authorized by DHS to be present in the

20   United States, and is therefore considered by DHS to be lawfully present during the period deferred

21   action is in effect.  However, deferred action does not confer lawful status upon an individual, nor

22   does it excuse any previous or subsequent periods of unlawful presence."12[14]

23   13.    20. Like other forms of deferred action, DACA serves the government's interests by

24   allowing the government to prioritize its resources and exercise discretion for its own convenience.

25   As the government has recognized, our nation "continue[s] to benefit . . . from the contributions of

26

27   9[11]  *Id.* at 1.

28   10[12]  *Id.*
     11[13]  *Id.* at 2.
     12[14]  Ex. A**B**, at 1**2** (USCIS DACA FAQs, Question 1).

1   those young people who have come forward and want nothing more than to contribute to our country

2   and our shared future."[1315]

3       14.   21.  On February 20, 2017, Secretary of Homeland Security John D. Kelly issued a

4   memorandum that "immediately rescinded" all "conflicting directives, memoranda, or field guidance

5   regarding the enforcement of our immigration laws and priorities for removal," but specifically

6   exempted the 2012 DACA Memorandum.[1416]

7       15.   On September 5, 2017, Acting Secretary of Homeland Security Elaine Duke issued a

8   memorandum rescinding the DACA program (the "Rescission Memorandum"), announcing the

9   government's intention to terminate the DACA program as of March 5, 2018.

10      16.   On January 9, 2018 and February 13, 2018, United States District Courts in the

11  Northern District of California and the Eastern District of New York, respectively, issued

12  nationwide preliminary injunctions prohibiting the government from terminating DACA on the

13  ground that the decision to rescind the program was arbitrary and capricious.[17]  These injunctions

14  require the government to maintain DACA on the same terms and conditions that existed prior to the

15  Rescission Memorandum, except that the government need not accept new DACA applications from

16  individuals who have never received DACA previously and need not continue granting advance

17  parole to allow DACA recipients to travel internationally.

18      17.   On August 17, 2018, the United States District Court for the District of Columbia

19  vacated the Rescission Memorandum, again on the ground that the decision was arbitrary and

20  capricious.[18]  Similar to the earlier preliminary injunctions, the order of vacatur excluded first-time

21  DACA applications and requests for advance parole, but otherwise required the government to

22  maintain the DACA program and process renewal applications.

23

24

25

---

26   [1315]  Ex. BC, at 2 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).

27   [1416]  Ex. DE, at 2 (Memorandum from Secretary John Kelly, Enforcement of the Immigration Laws
     to Serve the National Interest (Feb. 20, 2017)).

28   [17]  *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018);
     *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018).
     [18]  *NAACP v. Trump*, 321 F. Supp. 3d 143, 146 (D.D.C. 2018).

1    18.    On November 8, 2018, the United States Court of Appeals for the Ninth Circuit

2    upheld the nationwide preliminary injunction issued by the United States District Court for the

3    Northern District of California.[19]

4    19.    The DACA program remains in place at this time, and the government continues to

5    accept and process DACA renewal applications.

6    **The DACA Application Process**

7    20.    22. In order to apply forBefore the issuance of the Rescission Memorandum, when

8    the government was still processing new requests for deferred action under DACA, first-time DACA

9    applicants mustwere required to submit extensive documentation establishing that they meet the

10   abovementionedabove-mentioned criteria.[1520]  Applicants mustwere also required to submit a Form

11   I-765 Application for Employment Authorization, and pay hundreds of dollars in fees.[1621]

12   21.    23. DACA applicants mustwere also required to undergo biometric and biographic

13   background checks.  When conducting these checks, DHS reviewsreviewed the applicant's

14   biometric and biographic information "against a variety of databases maintained by DHS and other

15   federal government agencies."[1722]  If any information "indicatesindicate[d] that [the applicant's]

16   presence in the United States threatens public safety or national security," the applicant willwould be

17   ineligible for DACA absent "exceptional circumstances."[1823]

18   22.    24. Indicators that an individual poses a national security threat include "gang

19   membership."[1924]  Accordingly, "[a]ll DACA requests presenting information that the requestor is or

20   may be a member of a criminal street gang are referred to the Background Check Unit (BCU)."[2025]  If

21   gang membership iswas confirmed, the DACA application iswas denied absent a determination by

22   USCIS that an exception should be made given the totality of the circumstances.[2126]

23   [19]  *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018).

     [1520]  Ex. AB, at 9–15 (USCIS DACA FAQs, Questions 28–41).

24   [1621]  *Id.* at 3 (USCIS DACA FAQs, Question 7); *see also* USCIS, I-821D, Consideration of
             Deferred Action for Childhood Arrivals, https://www.uscis.gov/i-821d (explaining that the

25           filing fee for a DACA application is currently set at $495 and cannot be waived).

26   [17  *Id*.22]  Ex. B, at 7 (USCIS DACA FAQs, Question 23).

     [1823]  *Id.* at 23 (USCIS DACA FAQs, Question 65).

27   [1924]  *Id.*

     [2025]  Ex. EF, at 1 (Letter from USCIS Director León Rodríguez to Senate Judiciary Committee

28           Chairman Charles E. Grassley (Apr. 17, 2015)) (hereinafter, "USCIS Letter").

     [2126]  *Id.* at 2.

1    23.    USCIS evaluates renewal requests based on the same criteria as initial requests, and

2    also requires that the renewal applicant (1) has not departed the United States on or after August 15,

3    2012 without advance parole; (2) has continuously resided in the United States since his or her most

4    recent DACA request was approved; and (3) has not been convicted of a felony, a significant

5    misdemeanor, or three or more misdemeanors, and does not otherwise "pose a threat to national

6    security or public safety."[27]

7    24.    25. In 2015, USCIS conducted an additional screening of all individuals granted

8    deferred action under DACA—including Mr. Ramirez—"to identify records that contained

9    information indicating known or suspected gang association."[22][28]

10    25.    26. Once DACA has been granted, internal USCIS "Standard Operating Procedures"

11    dictate that, absent an "Egregious Public Safety" issue, DACA status should not be revoked until the

12    government has provided a "Notice of Intent to Terminate" which "thoroughly explain[s]" the

13    grounds for the termination.[22][29] DHS policy further provides that the recipients of such notice

14    should be afforded 33 days to "file a brief or statement contesting the grounds cited in the Notice of

15    Intent to Terminate" prior to termination of DACA status.[24][30]

16    **Benefits Provided Under the DACA Program**

17    26.    27. DACA confers numerous benefits on those who apply for and are granted

18    DACA status.  Notably, DACA recipients are granted the right not to be arrested or detained based

19    solely on their immigration status during the time period their deferred action is in effect.[25][31]

20

21

22    [27]  Ex. B, at 18 (USCIS DACA FAQs, Question 51).

23    [22]  *Id*[28]  Ex. F at 4 ¶ 2.2 (USCIS Letter).

23    [33][29]  Ex. FG, at 132, Appendix136 & App'x I (DHS National Standard Operating Procedures
24    (SOP): Deferred Action for Childhood Arrivals (DACA) (AprAug. 4.28, 2013))
      (hereinafter, "DACA SOP").

25    [24][30]  *Id.* at 132, Appendix136 & App'x I.

25    [25][31]  *See* Ex. AB, at 5 (USCIS DACA FAQs, Question 9) ("[I]f an individual meets the guidelines
26    for DACA, CBP or ICE should exercise their discretion on a case-by-case basis to prevent
      qualifying individuals from being apprehended."); Ex. CD, at 2 (2012 DACA
27    Memorandum); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058-591059
      (9th Cir. 2014) ("DHS considers DACA recipients not to be unlawfully present in the
28    United States because their deferred action is a period of stay authorized by the Attorney
      General.").

1    27. 28. DACA recipients are also eligible for work authorization.  As USCIS has

2    explained, "an individual whose case has been deferred is eligible to receive employment

3    authorization for the period of deferred action . . . ."²⁶³²

4    28. 29. DACA recipients are eligible to receive certain public benefits.  These include

5    Social Security, retirement, and disability benefits, and, in certain states, benefits such as driver's

6    licenses or unemployment insurance.²⁷³³  In Washington, DACA holders are also eligible for certain

7    state financial aid programs and state-funded food assistance.²⁸³⁴

8    29. 30. DACA serves as a gateway to numerous other benefits, and enables recipients to

9    open bank accounts, obtain credit cards, start businesses, purchase homes and cars, and conduct other

10   aspects of daily life that are otherwise often unavailable for undocumented immigrants.²⁹³⁵

11   30. 31. DACA has enabled hundreds of thousands of Dreamers to "to enroll in colleges

12   and universities, complete their education, start businesses that help improve our economy, and give

13   back to our communities as teachers, medical professionals, engineers, and entrepreneurs—all on the

14   books."³⁰³⁶

15   31. 32. DACA also confers other immigration benefits and the ability to travel.  For

16   example, DACA recipients do not accrue time under Section 212(a)(9)(B)(i) of the

17   INA.³¹ Immigration and Nationality Act ("INA").³⁷ and may, at least prior to the Rescission

18   Memorandum, could briefly depart the U.S. United States and legally return under certain

19   circumstances.³²³⁸

20   **The Government's Promise to Dreamers**

21   32. 33. When the DACA program was first launched, many Dreamers were reluctant to

22   voluntarily disclose information that could help facilitate their removal from the United States.  To

23

24   ²⁶³² Ex. A B, at ½ (USCIS DACA FAQs, Question 1).

25   ²⁷³³ *See* 8 U.S.C. §§ 1611(b)(2)–(3), 1621(d); *Texas*, 809 F.3d at 148; *Ariz. Dream Act Coal.*, 81 F.
     Supp. 3d at 811.

26   ²⁸³⁴ *See* Wash. Rev. Code § 28B.92.010; Wash. Admin. Code §§ 388-400-0050, 388-424-0001,
     388-424-0030.

27   ²⁹³⁵ *See* Dkt. #38-1, at 2 (Amicus Curiae Brief of United We Dream).

28   ³⁰³⁶ Ex. B C, at 2 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).
     ³¹³⁷ 8 U.S.C. § 1182(a)(9)(B)(i).
     ³² *See* ³⁸ Ex. A B, at 19 (USCIS DACA FAQs, Question 57).  To

1    combat this fear, DHS repeatedly promised applicants that information they provided as part of the

2    DACA application process would "not later be used for immigration enforcement purposes."³³³⁹

3        33.   34. The government has reiterated this commitment in its correspondence with

4    Dreamers.  Moreover, the approval notice granting deferred action under DACA lists only "fraud or

5    misrepresentation" in the application process or "[s]ubsequent criminal activity" as grounds for

6    revoking DACA.³⁴⁴⁰

7        34.   35. The government's commitment to the DACA program is further codified in its

8    publication entitled "National Standard Operating Procedures (SOP): Deferred Action for Childhood

9    Arrivals (DACA)" (the "DACA SOP").³⁵ ."⁴¹  This document effectively limits the exercise of agency

10   discretion concerning DACA applications with "nearly 150 pages of specific instructions for

11   granting or denying deferred action."  *Texas*, 809 F.3d at 173 (citation omitted) (citing the DACA

12   SOP as evidence that DACA is not truly a discretionary program).

13       35.   36. Numerous public officials from both political parties have reinforced this

14   promise, and have recognized that Dreamers have relied on the government to keep its word.  For

15   example, in December 2016, then-Secretary of Homeland Security Jeh Charles Johnson

16   acknowledged that there are 750,000 Dreamers who have "relied on the U.S. government's

17   representations" about DACA, and asserted that "representations made by the U.S. government,

18   upon which DACA applicants most assuredly relied, must continue to be honored."³⁶⁴²

19       36.   37. In January 2017, Speaker of the House Paul Ryan stated that the government

20   must ensure that "the rug doesn't get pulled out from under" Dreamers, who have "organize[d]

21   [their] li[ves] around" the DACA program.³⁷⁴³

22

23

24

25

---

26   ³³³⁹ Ex. BC, at 1 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).
     ³⁴⁴⁰ Ex. GH (DACA Approval Notice).
27   ³⁵⁴¹ Ex. FG (DACA SOP).
     ³⁶⁴² Ex. BC, at 1 (Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu (Dec. 30, 2016)).
28   ³⁷⁴³ Transcript of CNN Town Hall with Speaker Paul Ryan, CNN (Jan. 12, 2017),
                    http://cnn.it/2oyJXJJ.

1    37. 38. In February 2017, Congressman Raúl Grijalva described DACA as a

2    "commitment," and called for "the federal government to honor its word to protect" Dreamers.[38][44]

3    38. 39. On March 29, 2017, then-Secretary Kelly reaffirmed that "DACA status" is a

4    "commitment . . . by the government towards the DACA person, or the so-called Dreamer."[39][45]

5    39. 40. On April 21, 2017, President Trump confirmed that his

6    Administration administration's policy is not to deport Dreamers, and suggested that "[D]reamers

7    should rest easy."[40][46]

8    **Mr. Ramirez was Was Twice Granted Deferred Action Under DACA**

9    40. 41. In late 2013, Mr. Ramirez first applied for deferred action and work

10   authorization pursuant to DACA.  As part of this process, Mr. Ramirez provided the government

11   with his birth certificate, school records, and information about where he lived, and was required to

12   attend a biometrics appointment so that USCIS could take his fingerprints and photographs.  Mr.

13   Ramirez was nervous about providing this information, but trusted that the government would keep

14   its word.  Mr. Ramirez was granted deferred action and work authorization in 2014.

15   41. 42. In 2016, Mr. Ramirez reapplied for DACA, and once again was granted deferred

16   action and work authorization after being subject to rigorous vetting.  As part of this process, the

17   government sent Mr. Ramirez an approval notice (the "2016 DACA Approval Notice") informing

18   him that his request for deferred action had been granted.  The 2016 DACA Approval Notice

19   provides that "[u]nless terminated, this decision to defer removal action will remain in effect for 2

20   years" and is valid to May 4, 2018.[41][47]  The 2016 DACA Approval Notice informed Mr. Ramirez

21   that his deferred action could be terminated if he engaged in "[s]ubsequent criminal activity."[42][48]

---

[38][44]  Congressional Progressive Caucus Leaders Respond to ICE Arrest of DACA Recipient (Feb. 16, 2017), https://cpc-grijalva.house.gov/press-releases/congressional-progressive-caucus-leaders-respond-to-ice-arrest-of-daca-recipient.

[39][45]  Ted Hesson & Seung Min Kim, *supra* note 2.*Wary Democrats Look to Kelly for Answers on Immigration*, Politico (Mar. 29, 2017), http://politi.co/2mR3gSN.

[40][46]  Excerpts from AP interview with President Donald Trump, The Associated Press (Apr. 21, 2017), http://www.mcclatchydc.com/news/politics-government/national-politics/article14609 3899.html https://apnews.com/182009c26d70499a97d486afa8d7a34d.

[41][47]  Ex. G H (DACA Approval Notice).

[42][48]  *Id.*

1    42.    43. DHS has therefore confirmed on three separate occasions prior to Mr. Ramirez's

2    unlawful arrest that Mr. Ramirez does not pose a threat to national security or public safety—first in

3    2014 when he applied for DACA, then again in 2015 when USCIS conducted an additional

4    screening of all DACA beneficiaries, and finally in 2016 when he reapplied for DACA.

5    **Mr. Ramirez's Unconstitutional Arrest and Subsequent Interrogation**

6    43.    44. On February 10, 2017, at approximately 9:00 a.m., a team of ICE agents, which

7    included Defendants Hicks, Peter, and Hernandez, arrested Mr. Ramirez's father outside of the

8    apartment where Mr. Ramirez, his father, and his brother were then living.  The ICE agents

9    subsequently entered the apartment; neither Mr. Ramirez nor his brother are aware of any consent to

10   permit the ICE agents to enter or search the premises.

11   44.    45. Upon seeing Mr. Ramirez in the apartment, the ICE agents began to question

12   him.  Mr. Ramirez provided the agents with his name and birthdate, and told them that he was born

13   in Mexico.  At this point, one of the agents placed Mr. Ramirez in handcuffs.

14   45.    46. Mr. Ramirez told the ICE agents repeatedly that he had a legal work permit, but

15   the ICE agents refused to release him.  Mr. Ramirez's father also repeatedly informed the ICE agents

16   that Mr. Ramirez had a legal work permit, and questioned why he Mr. Ramirez was being detained.

17   The ICE agents did not ask any questions at the apartment regarding whether Mr. Ramirez was

18   involved with a gang, nor did they ask him about his tattoo.

19   46.    47.  The ICE agents did not have an arrest warrant for Mr. Ramirez, nor did they

20   have any reason to believe that he had committed a crime or was not authorized to be in the United

21   States.  On the contrary, the ICE agents had reason to know that Mr. Ramirez had a work permit and

22   was therefore lawfully living and working in the United States.  Despite these facts, Mr. Ramirez

23   was taken into custody and transported to an ICE holding facility in Tukwila, Washington.  On

24   information and belief, Defendant Lawrence supervised the processing of Mr. Ramirez at the ICE

25   holding facility.

26

27

28

1    47. 48. At the holding facility, the ICE agents confiscated Mr. Ramirez's work permit.

2    This permit was marked with a "C33" designation, which clearly identified Mr. Ramirez as a DACA

3    recipient with work authorization pursuant to DACA.<del>43</del>49

4    48. 49. The ICE agents also fingerprinted Mr. Ramirez and used this information to

5    access his records, which revealed that Mr. Ramirez has no criminal history, had twice been granted

6    DACA status, and possessed valid employment authorization through May 4, 2018.

7    49. 50. Defendants refused to release Mr. Ramirez even after they confirmed his DACA

8    status.  When Mr. Ramirez again protested that he had a work permit, he was told by Defendants that

9    it did not matter because he "was not from the United States."  Defendants subsequently cited Mr.

10   Ramirez's receipt of DACA as evidence of his "illegal" status in the Form I-213.<del>44</del>50

11   50. 51. The ICE agents then began to interrogate Mr. Ramirez.  They asked him at least

12   five times whether he was in a gang, and each time he denied any gang affiliation.  The ICE agents

13   repeatedly pressed him as to whether he had ever known anyone who was a gang member.  Mr.

14   Ramirez told the agents that although that he knew students who had attended middle school and

15   high school with him who were in gangs, he was not gang affiliated and never had been.

16   51. 52. The ICE agents also interrogated Mr. Ramirez about the tattoo on his forearm.

17   Mr. Ramirez obtained this tattoo when he was 18 years old—before he first applied for DACA.  The

18   tattoo consists of the words "La Paz – BCS" and a nautical star.  "La Paz" is Mr. Ramirez's

19   birthplace, and "BCS" stands for Baja California Sur, the region in which La Paz is located.  Mr.

20   Ramirez decided to include the city of his birth because he had seen others do the same, and

21   ultimately selected the nautical star (rather than a whale's tail, which he had also considered)

22   because he liked the way it looked.  Nautical stars are popular symbols <del>on</del>for tattoos.

23   52. 53. During the interrogation, one of the ICE agents stated that if Mr. Ramirez was

24   from Fresno, he was "definitely a gang member" because everyone in Fresno is a member of the

25   "bulldogs" gang.  He said that Mr. Ramirez's tattoo was a "bulldogs" tattoo.  Mr. Ramirez

26   repeatedly told the ICE agents that the tattoo is not a gang tattoo, but they refused to believe him.

---

27   <del>43</del>49  Ex. <del>FG</del>, at <del>112</del>116 (DACA SOP) ("To distinguish DACA-related EADs from other deferred
         action EADs, the (c)(33) code will be used.").

28   <del>44  Ex</del>50  Dkt. <del>H.</del>#93, at <del>3</del>29 (ICE CAR 000028 (I-213 Record of Deportable/Inadmissible Alien
         (Feb. 10, 2017))).

1       53.       54. Prior to his transfer to the Northwest Detention Center, the ICE agents asked Mr.

2   Ramirez if there were any gangs with which he would like to avoid being placed for his safety.  Mr.

3   Ramirez again stated that he had no gang affiliation and would not have problems being placed with

4   anyone.  Upon continued questioning, Mr. Ramirez ultimately indicated that if he had to be placed

5   with any group, he would prefer "the Paisas."  Mr. Ramirez understands the colloquial use of

6   "Paisas" to mean Mexicans, and was attempting to communicate that if given the option, he would

7   prefer to be placed with other Mexicans.  Mr. Ramirez, who has no criminal history and has was

8   never previously been in custody, has no connection or affiliation whatsoever to the Paizas gang.

9   **Mr. Ramirez's Unconstitutional Detention**

10      54.       55. Mr. Ramirez was then transferred to Northwest Detention Center, where he

11  remained in custody for the next 47 days.

12      55.       56. The Northwest Detention Center is a privately owned detention facility located

13  on a contaminated "Superfund" site.[45][51]  According to the Environmental Protection Agency,

14  industrial pollutants have been found in the soil and water near the Northwest Detention Center, and

15  environmental remediation efforts at the site remain ongoing.[46][52]

16      56.       57. In April 2017, hundreds of detainees at the Northwest Detention Center went on

17  a hunger strike to protest the inhumane conditions at the facility, including poor hygiene, lack of

18  access to medical care, lack of recreational opportunities, poor quality food, and unreasonable

19  commissary prices.[47][53]

20      57.       58. The more than six weeks that Mr. Ramirez spent at the Northwest Detention

21  Center were extremely difficult for him.  He spent his twenty-fourth birthday in detention, and was

22

23  [45][51] U.S. Envtl. Prot. Agency, Fourth Five-Year Review Report for Commencement Bay
        Nearshore/Tideflats Superfund Site, Pierce Cty., Wash., at vi (Dec. 1, 2014),
24      https://www3.semspub.epa.gov/region10/pdf/sites/cb-nt/4th_fyr_cbnt_2014.work/HQ/1812
        85.pdf.

25  [46][52] Id. at vi–vii.

    [47][53] Mike Carter, *Hundreds of immigrant detainees at Tacoma ICE facility on hunger strike,*
26      *activists say*, The Seattle Times (Apr. 12, 2017),
27      http://www.seattletimes.com/seattle-news/group-hundreds-of-detainees-at-tacoma-ice-faci
        lity-on-hunger-strike; Steve Miletich, *ICE: Hunger strike winding down at Tacoma*
        *immigration detention center*, The Seattle Times (Apr. 14, 2017),
28      http://www.seattletimes.com/seattle-news/crime/ice-hunger-strike-abates-at-detention-cen
        ter.

1    unable to see or speak to his young son for the duration of his detention.  Mr. Ramirez had difficulty

2    sleeping, and experienced significant distress, sadness, fear, and anxiety as a result of his unjust

3    detention.  Mr. Ramirez also began to experience vision problems, and was informed by the medical

4    staff at the Northwest Detention Center that this was likely due to depression.

5         58.   59. Defendants classified Mr. Ramirez as a "medium-high" security risk, and placed

6    him in a housing unit with gang members and dangerous criminals.  Mr. Ramirez requested that he

7    be reclassified because, as he again explained, he was not, and never had been, gang affiliated, but

8    this request was denied.  Because of the government's false statements to the media, many of the

9    detainees at the Northwest Detention Center believed that Mr. Ramirez was a gang member and

10    questioned him about his gang affiliation.  This caused Mr. Ramirez to fear for his personal safety,

11    and he was afraid to leave his cell out of fear that he would be assaulted.

12    **The Government Revokes Mr. Ramirez's DACA Status and Work Authorization**

13         59.      60. Defendants issued a Notice to Appear ("NTA") on February 10, 2017.[48][54]

14    Defendants assert that Mr. Ramirez's DACA status terminated on the day the NTA was issued.[49][55]

15         60.        61. USCIS sent Mr. Ramirez a Notice of Action ("NOA") dated February 17, 2017.

16    The NOA states that Mr. Ramirez's deferred action and employment authorization terminated on the

17    date the NTA was issued, and provides that "[a]n appeal or motion to reopen/reconsider this notice

18    of action may not be filed."[50][56]

19         61.        62. Under DHS policy, the government must provide a "Notice of Intent to

20    Terminate" and 33 days for a response prior to terminating DACA status, unless the case involves an

21    "Egregious Public Safety" issue.[51][57]  Mr. Ramirez was never provided with a Notice of Intent to

22    Terminate, nor was he given 33 days to respond to such a notice or otherwise contest the revocation

23    of his DACA status or work permit.

24    **The Government Publicly Labels Mr. Ramirez as a "Gang Member"**

25         62.        63. After Mr. Ramirez sought relief from this Court on February 13, 2017,

26    Defendants concocted a shifting story about the circumstances surrounding his arrest and detention.

27    [48] [54] ~~Ex.~~ Dkt. ~~I,~~#93, at ~~1~~7–8 (ICE CAR 000005 (Notice to Appear)).

28    [49][55] *See* Dkt. #32, at 2–3 (Respondents' Brief Regarding the Court's February 14, 2017 Order).
                [50][56] Ex. ~~J~~I, at 1 (Notice of Action).
                [51][57] Ex. ~~F~~G, at ~~132, Appendix~~136 & App'x I (DACA SOP).

1    Defendants sought to justify their unlawful actions based on the false assertion that Mr. Ramirez is a

2    gang member, and initiated a sustained campaign to publicly vilify him as such, despite knowing

3    that there existed no reliable evidence to support such a characterization.

4        63.    64. Spokespersons for ICE and DHS issued statements alleging that Mr. Ramirez

5    was a gang member, and falsely informed the national media that the government possessed

6    "corroborating evidence" to support that allegation.  Additionally, on information and belief,

7    Defendants coordinated with each other and leaked false information to members of the media in

8    furtherance of this smear campaign.

9        64.    65. On February 14, 2017, an ICE spokesperson stated that "ICE officers took Mr.

10   Ramirez into custody *based on* his admitted gang affiliation and risk to public safety."[52][58]  This false

11   allegation contradicts the Form I-213 prepared by Defendants, which notes that ICE agents did not

12   discuss Mr. Ramirez's purported gang affiliation with him until *after* he was transported to the ICE

13   holding facility in Tukwila, Washington, at which point his DACA status and lack of a criminal

14   record had been confirmed.[53][59]

15       65.    66. On February 15, 2017, ICE officials were pressed by the news media for

16   additional evidence demonstrating that Mr. Ramirez was a gang member.  In response, Defendants

17   informed the media that they had "additional evidence including photos and social media content

18   that illustrate his gang affiliation."[54][60]

19       66.    67. On February 15, 2017, an unnamed ICE official informed members of the

20   national news media that there was corroborating evidence to support their allegations of gang

21

22

23

---

24   [52] Ex. K, at 1 ([58] Sue Horton et al., *Mexican 'DREAMer' Nabbed in Immigrant Crackdown*,
     Reuters U.S. Top News (Feb. 14, 2017),

25   http://www.reuters.com/article/us-usa-trump-immigration-arrest-exclusiv-idUSKBN15T307)
     (emphasis added).

26   [53] Ex[59] Dkt. H.#93, at 329 (ICE CAR 000028 (I-213 Record of Deportable/Inadmissible Alien
     (Feb. 10, 2017)).

27   [54] Ex. L, at 9 ([60] *First 100 Days: Chaffetz: We Want Inspector General to Investigate Leaks;
     Attorney for Arrested 'Dreamer' Speaks Out*, FoxNews.com (Feb. 15, 2017),

28   httphttps://www.foxnews.com/transcript/2017/02/15/chaffetz-we-want-inspector-general-to-i
     nvestigate-leaks-attorney-for-arrested/)-dreamer-speaks-out.

1    membership.⁵⁵⁶¹  No such corroborating evidence has been produced or filed in any court, despite

2    requests by Mr. Ramirez and his counsel.

3        67.  68. On February 15, 2017, DHS issued a statement labeling Mr. Ramirez as "a gang

4    member."⁵⁶⁶²

5        68.  69. Defendants have since backed away from these false and defamatory allegations.

6    For example, in their filings in this Court, Defendants have alleged merely that Mr. Ramirez "hangs

7    out" with gang members.⁵⁷⁶³  And in In the Immigration Court, the government has admitted that the

8    evidence does not support any conclusion that Mr. Ramirez is a threat to public safety.

9    **Mr. Ramirez Is Released from Custody After 47 Days in Detention**

10       69.  Pursuant to an order of this Court, Mr. Ramirez received a bond hearing in

11   Immigration Court on March 28, 2017.⁶⁴  At the bond hearing, Mr. Ramirez testified about his arrest,

12   interrogation, and detention.  Mr. Ramirez was released on bond on March 29, 2017.⁶⁵

13       70.  In a startling admission, counsel for the government conceded at the conclusion of

14   the bond hearing that Mr. Ramirez is not a danger to the community.  The government's statements

15   (and lack of evidence) at the bond hearing affirm that the government has never had any justification

16   for revoking Mr. Ramirez's DACA status or for detaining him for more than six weeks.

17       71.  After considering the evidence, the Immigration Judge concluded that Mr. Ramirez

18   is neither a flight risk nor a danger to the community and should be released on bond.⁶⁶  The

19   Immigration Judge's decision to release Mr. Ramirez underscored Defendants' inability to support

20   their allegations of gang affiliation.

21

---

22   ⁵⁵ Ex. M, at 2 (⁶¹ '*DREAMer' Protected under Obama Detained in Seattle Area*, CBSnews.com

23       (Feb. 15, 2017),
         http://www.cbsnews.com/news/daniel-ramirez-medina-dreamer-protected-under-obama-detai

24       ned-in-seattle/).

25   ⁵⁶ Ex. N, at 1–2 (⁶² *DHS Statement on Arrest of Alien Gang Member in Washington* (Feb. 15,

26       2017),
         https://www.dhs.gov/news/2017/02/15/dhs-statement-arrest-admitted-alien-gang-member-wa

27   ⁵⁷⁶³ *E.g.*, Dkt. #52, at 7 (Respondents' Motion to Dismiss).

28   ⁶⁴ *See* Dkt. #69, at 3.
     ⁶⁵ Ex. J, at 1 (Notice to EOIR).
     ⁶⁶ Ex. K, at 1 (Custody Order); see also 8 C.F.R. § 236.1(c)(8) (2017).

1 **The Government Fails to Provide Any Credible Evidence to Support ~~its~~Its Gang Allegations**

2     72. ~~70.~~ Both before and after that bond hearing, Defendants have ~~been unable~~failed to

3 produce any credible evidence to support their false allegations that Mr. Ramirez is gang affiliated.

4 In sharp contrast, Mr. Ramirez ~~has~~ submitted extensive evidence demonstrating that he is not, and

5 never has been, a gang member.  In addition to evidence demonstrating that he successfully passed

6 three separate DHS background checks, Mr. Ramirez ~~has~~ submitted numerous sworn declarations

7 attesting to the fact that he has never had any gang affiliation.[58][67]

8     73. ~~71.~~ Additionally, three independent experts have rebutted Defendants' allegations

9 that Mr. Ramirez is gang affiliated.  Martin Flores, who has served as a gang expert in more than

10 700 cases, stated that he has "never seen a gang member with a similar tattoo nor would [he]

11 attribute this tattoo to have any gang-related meaning."[59][68]  Another gang expert, Dr. Edwina

12 Barvosa, similarly stated that there is "no apparent evidence that Mr. Ramirez Medina has ever been

13 a gang member himself."[60][69]  And Carlos García, a Mexican researcher who has written extensively

14 on gangs in California and Central America, noted that "[a]ny argument about gang ties based on

15 [Mr. Ramirez's] tattoo is weak at best; this tattoo does not show any gang affiliation."[61][70]

16     74. ~~72.~~ Despite the means and ample opportunity to collect evidence to support their

17 claims, Defendants have failed to produce *any* credible evidence to support any of their allegations

18 against Mr. Ramirez.  Unlike Mr. Ramirez, Defendants have access to numerous (and perhaps all)

19 law enforcement and public safety databases.  Yet, Defendants have never suggested that they have

20 located Mr. Ramirez's name or supposed gang affiliation in any of those databases~~, and instead have~~

21 ~~been forced to concede~~ or records.  To the contrary, the government has admitted numerous times

22 that Mr. Ramirez is not~~, and never has been, a threat to the~~ a public safety~~.~~ threat, including at his

23

24     [58][67]  *E.g.*, ~~Ex~~Dkt. ~~O.~~#35-1, ¶¶ 19–20 (Declaration of Daniel Ramirez Medina); ~~Ex~~Dkt. ~~P.~~#35-2, ¶ 4

25          (Declaration of Josue L.); ~~Ex~~Dkt. ~~Q.~~# 35-3, ¶¶ 8–9 (Declaration of Luz L.); ~~Ex~~Dkt.
          ~~R.~~#35-5, ¶ 8 (Declaration of Nancy L.).

26     [59][68]  ~~Ex~~ Dkt. ~~S.~~#35-7, ¶ 11 (Declaration of Martin M. Flores).

       [60][69]  ~~Ex~~ Dkt. ~~T.~~#35-8, ¶ 10 (Declaration of Edwina Barvosa, PhD).

27     [61][70]  ~~Ex. U, at 4 (~~ Jonathan Blitzer, *A case that could determine the future for Dreamers*, The New
          Yorker (Mar. 15, 2017),

28          http://www.newyorker.com/news/news-desk/a-case-that-could-determine-the-future-for-drea
          mers~~)~~.

1   March 28, 2017 bond hearing and in USCIS's March 20, 2018 internal email confirming that there is

2   not sufficient evidence to conclude he is a gang member or safety threat.

3        75.     73. Likewise, Defendants placed great weight on Mr. Ramirez's alleged "gang

4   tattoo," yet have never provided *any* evidence (from an expert or otherwise) that this tattoo is

5   associated with gang membership.  Defendants have been unable to do so because it is not a gang

6   tattoo.  Instead, Defendants shifted tacks, when, in Immigration Court they submitted "evidence" in

7   the form of articles located on the internet that discuss how some gangs discourage their members

8   from getting tattoos so they are not identified as gang members.  In other words, Defendants first

9   argued Mr. Ramirez's tattoo was a gang tattoo, and when that argument collapsed, argued that a lack

10  of gang tattoos actually supports their contention that Mr. Ramirez was gang affiliated.  That

11  contention collapsed, too, when the Immigration Judge found, in January 2018 that "[Mr. Ramirez]

12  was not in a gang, nor associated with one."

13  **Defendants' Defamatory Statements Harmed Mr. Ramirez**

14       74.     Defendants were aware that Mr. Ramirez was repeatedly vetted by DHS and found

15  not to be a threat to public safety or national security.  Defendants also confirmed at the ICE holding

16  facility that he had no criminal history.  Despite these facts, and in the absence of any credible

17  evidence otherwise, Defendants falsely slandered Mr. Ramirez as a "gang member."

18       75.     Defendants' false allegations regarding Mr. Ramirez's purported gang membership

19  placed Mr. Ramirez at risk while he was detained at the Northwest Detention Center.  After

20  Defendants' allegations were reported in the news, other detainees at the Northwest Detention

21  Center began questioning Mr. Ramirez about his gang membership.

22       76.     Defendants' false and unfounded gang allegations also caused Mr. Ramirez to fear

23  for his personal safety.  For example, Mr. Ramirez was scared to leave his cell at the Northwest

24  Detention Center because he was concerned that other detainees might assault him based on the

25  misperception that he was in a gang—a misperception caused by Defendants' false allegations. At

26  the May 1, 2018 hearing on Mr. Ramirez's Motion for Preliminary Injunction, the government stated

27  that there is no "record that establishes, one way or the other, with absolute conclusiveness, about

28  Mr. Ramirez's gang affiliations or lack thereof."  Remarkably, that statement was made to this Court

1    at the time the government's own record *did* show that Mr. Ramirez lacked gang affiliation—as

2    confirmed by the government's own March 20, 2018 internal email, it knew that "there is not

3    sufficient evidence to conclude [Mr. Ramirez] is currently a known or suspected gang member."[71]

4    77.          **Defendants'** false gang allegations have also damaged Mr. Ramirez's reputation.

5    Before Defendants engaged in their campaign to smear his reputation, Mr. Ramirez was a respected

6    member of his community.  Now, because of Defendants' conduct, many people incorrectly believe

7    that Mr. Ramirez is gang affiliated.  As a result, Mr. Ramirez has lost the respect of some prior

8    friends and acquaintances, and many members of the public have formed a negative opinion of

9    him.**Motion to Dismiss Is Denied in Its Entirety**

10   **Mr. Ramirez is Released from Custody After 47 Days In Detention**

11        77.    On June 26, 2017, Defendants filed a motion to dismiss the Second Amended

12   Complaint for lack of subject-matter jurisdiction and for failure to state a claim.[72]  On November 8,

13   2017, this Court denied that motion in its entirety.[73]  This Court determined that the issues presented

14   in this action—whether Defendants complied with their own non-discretionary procedures when

15   taking Mr. Ramirez into custody, questioning him at the Tukwila facility and ultimately terminating

16   his DACA status—do not trigger the jurisdiction-stripping provisions of the INA.  This Court also

17   determined that all claims advanced in the Second Amended Complaint were plausibly pleaded.

18   **The Government Is Twice Enjoined from Revoking Mr. Ramirez's DACA Status and Work**

19   **Authorization**

20        78.    Pursuant to an order of this Court, Mr. Ramirez received a bond hearing in

21   Immigration Court on March 28, 2017.[62]  At the bond hearing, Mr. Ramirez testified about his arrest,

22   interrogation, and detention.  Mr. Ramirez was released on bond on March 29, 2017.[63]On January

23   17, 2018, an Immigration Judge issued an order of removal directing Mr. Ramirez's return to

24   Mexico, while also finding that "[Mr. Ramirez] was not in a gang, nor associated with one."[74]  On

25   [71]  Ex. A (Mar. 20, 2018 USCIS Email).

26   [72]  *See* Dkt. #90 (Defendants' Mot. to Dismiss the Second Amended Complaint).

27   [73]  *See* Dkt. #116 (Court's Nov. 8, 2017 Order).

     [62]  *See* Dkt. #69, at 3.

     [63]  Ex. V, at 1 (Notice to EOIR).

28   [74]  *See* Dkt. #122-1, at 35 (Third Supplemental Declaration of Daniel Ramirez Medina); Dkt.
     #124-1, p. 14 (Excerpt of Trans. of Oral Decision of Immigration Judge).

1   February 6, 2018, Mr. Ramirez filed a motion for a preliminary injunction to restore his DACA and

2   work authorization (the "Preliminary Injunction Motion").[75]  While that motion was pending, in a

3   separate action a preliminary injunction order was issued on February 26, 2018 by the United States

4   District Court for the Central District of California in *Inland Empire-Immigrant Youth Collective v.*

5   *Nielsen* ("*Inland Empire* Order"), No. 17-cv-2048.  That order required the government to restore to

6   a certified class of former DACA recipients their DACA status and work authorization.  As a

7   member of the *Inland Empire* class, Mr. Ramirez was to have his DACA restored.

8         79.   ~~In a startling admission, counsel for the government conceded at the conclusion of~~

9   ~~the bond hearing that Mr. Ramirez is not a danger to the community.  The government's statements~~

10  ~~(and lack of evidence) at the bond hearing affirm that the government has never had any justification~~

11  ~~for revoking Mr. Ramirez's DACA status or for detaining him for more than six weeks.~~ On or about

12  April 3, 2018, the government delivered two notices to Mr. Ramirez.  One notice informed Mr.

13  Ramirez that his DACA status and work authorization had been reinstated and extended to May 5,

14  2018, pursuant to the *Inland Empire* Order.[76]  The government simultaneously issued Mr. Ramirez a

15  NOIT to terminate his just-restored DACA status.[77]  In other words, faced with the *Inland Empire*

16  Order, the government restored Mr. Ramirez's status only to immediately begin new proceedings to

17  wrongfully strip him of that status.

18        80.   ~~After considering the evidence, the Immigration Judge concluded that Mr. Ramirez~~

19  ~~is neither a flight risk nor a danger to the community and should be released on bond.[64]   The~~

20  ~~Immigration Judge's decision to release Mr. Ramirez~~ ~~underscores~~ ~~Defendants' inability to support~~

21  ~~their allegations of gang~~ ~~affiliation.~~The government's stated basis for the issuance of the NOIT was

22  its continued wrongful insistence that Mr. Ramirez posed a risk to public safety because he allegedly

23  was gang affiliated.  This theory was inconsistent with multiple background checks the government

24  had previously run in connection with Mr. Ramirez's DACA application and renewals, the

25  government's concession at his March 28, 2017 bond hearing that it had no evidence to support a

26

27   [75]  *See* Dkt. #122 (Plaintiff's Motion for Preliminary Injunction).

     [76]  *See* Ex. L, at 1 (Reinstatement Notice).

28   [77]  *See* Ex. M, at 1 (Notice of Intent to Terminate).

     ~~[64]   Ex. W, at 1 (Custody Order); *see also* 8 C.F.R. § 236.1(c)(8) (2017).~~

1  finding that Mr. Ramirez was a risk to public safety,[78] and the Immigration Judge's January 2018

2  finding that he does not present a risk to public safety because the evidence submitted showed he

3  was "not in a gang, nor associated with one."[79]  And the government's stated basis for the NOIT

4  flatly contradicted its own internal March 20, 2018 email assessment conceding Mr. Ramirez lacks

5  any gang affiliation or criminal history.[80]  The NOIT also stated that termination of Mr. Ramirez's

6  DACA status was warranted because ICE was "actively pursuing" his removal, even though a

7  removal order in and of itself is not a sufficient basis for termination of DACA status.

8       81.       On May 15, 2018, this Court granted Mr. Ramirez's Preliminary Injunction Motion,

9  concluding that Mr. Ramirez is likely to succeed on the merits of his claims because the

10  government's continued reliance on "unfounded allegations" of gang affiliation was arbitrary,

11  capricious, and an abuse of discretion and also implicated Mr. Ramirez's constitutional "right to an

12  opportunity to be heard in a meaningful matter."[81]  The remaining elements—irreparable harm,

13  balance of hardships and the public interest—also favored preliminary injunctive relief.

14       82.       Consistent with these rulings, this Court entered its Preliminary Injunction Order, in

15  which it ordered that (1) "Defendants shall not terminate Plaintiff's DACA status and work

16  authorization pending a final decision by this Court on the merits of his claims" and (2) "Defendant

17  USCIS is ENJOINED from asserting, adopting, or relying in any proceedings on any statement or

18  record made as of this date purporting to allege or establish that Mr. Ramirez is a gang member,

19  gang affiliated, or a threat to public safety."[82]

20  **The Government Denies Mr. Ramirez's DACA Renewal Application**

21       83.       On May 21, 2018, in an abundance of caution given that this Court had already

22  enjoined Defendants from terminating his benefits, Mr. Ramirez submitted a request to the

23  government to renew his DACA status and work authorization.  Notwithstanding the Preliminary

24  Injunction Order, on September 26, 2018, the government issued a Notice of Intent to Deny

25  ("NOID") that request.  The NOID stated that the government intended to deny Mr. Ramirez's

---

78  *See* Dkt. #122-1, at 31 (Mar. 28, 2017 Tr. of Oral Decision of I.J.).

79  *See* Dkt. #124-1, at 14 (Jan. 17, 2018 Tr. of Oral Decision of I.J.).

80  Ex. A (March 20, 2018 USCIS Email).

81  *Medina v. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1251 (W.D. Wash. 2018) (internal quotations omitted); *see also* Dkt. #133, at 22–23 (Preliminary Injunction Order).

82  *Id.* at 23.

1   renewal request for four reasons.  The first—that ICE is actively pursuing Mr. Ramirez's

2   removal—simply repeated one of the bases for the prior NOIT that this Court enjoined and is

3   deficient for the reasons described above.  Each of the other three attempted to portray Mr. Ramirez

4   as a threat to public safety: (1) that he was reported for having sexual intercourse with his son's

5   mother in 2013 (resulting in the conception of his son), when he was 20 years old and his son's

6   mother was 17 years old, even though no charges were filed, the relationship was consensual, and

7   both sets of parents approved of the relationship and the pregnancy that resulted therefrom; (2) Mr.

8   Ramirez's own admission that he was cited for possession of a small quantity of marijuana in

9   Oregon in 2014; and (3) that he has not fully paid off certain fines he incurred for traffic violations.

10   None of these other three grounds was previously cited by the government as a basis for terminating

11   Mr. Ramirez's DACA status and work authorization, although *each was previously known* to the

12   government at the time it renewed Mr. Ramirez's DACA in 2016—at which time it did not

13   determine any to be a basis for denial of renewal—and certainly at the time it issued the April 3,

14   2018 NOIT.  None of these bases suggests that Mr. Ramirez poses a public safety concern, and none

15   establishes an adequate basis for termination of his DACA status.  Indeed, USCIS conceded in its

16   internal March 20, 2018 email describing his "current criminal history"—sent two months *after* it

17   claimed it learned for the first time of the "offense history" that it now cites for denial—that Mr.

18   Ramirez's file shows "no criminality" and that "[t]here is NOT sufficient evidence to conclude [he]

19   is an [egregious public safety] concern."[83]  Instead, these bases for denial of renewal—particularly

20   when set in the context of the government's continuing campaign against Mr. Ramirez—are yet

21   another unlawful attempt to terminate his DACA.

22        84.    On October 24, 2018, Mr. Ramirez submitted his lengthy response to the NOID,

23   objecting to the stated bases for denial of DACA renewal, providing evidence of the harm such

24   denial would cause him, and confirming that doing so would be a violation of this Court's

25   Preliminary Injunction Order.

26        85.    On December 19, 2018, USCIS issued its final "Decision," denying Mr. Ramirez's

27   DACA renewal application for the reasons contained in the NOID.[84]  In doing so, Defendants

28

---

[83]  Ex. A (Mar. 20, 2018 USCIS Email).
[84]  Ex. N (Dec. 19, 2018 Decision Denying DACA Renewal).



1    violated the Preliminary Injunction Order which enjoins USCIS "from asserting, adopting, or relying

2    in any proceedings on any statement or record made as of this date purporting to allege that Mr.

3    Ramirez is a gang member, gang affiliated, *or a threat to public safety*."[85]  Contrary to USCIS's

4    perfunctory statement in the Decision that it was not relying on such information, the agency clearly

5    was relying on statements and records dated prior to May 15, 2018 that it views as relevant to

6    whether Mr. Ramirez is a threat to public safety—the NOID cites the California Penal Code, the

7    criminal U.S. Code, and references five traffic safety-related violations—in support of its stated

8    conclusion that he "do[es] not warrant a favorable exercise of prosecutorial discretion."[86]  USCIS's

9    avoidance of the phrase "public safety" in issuing this NOID does not bring it beyond the scope of

10   the Preliminary Injunction Order, as the substantive bases for the NOID are manifestly public

11   safety-related.  Moreover, the government's claim that it was unaware of or could not have known of

12   these offenses at the time it renewed Mr. Ramirez's DACA in 2016 is incorrect, and irrelevant in

13   any event given the mandates of the Preliminary Injunction Order.  Therefore, not only is the

14   government's latest action to deny renewal a violation of the APA and Mr. Ramirez's due process

15   rights, but it violates this Court's Preliminary Injunction Order.

16          86.      Moreover, the Preliminary Injunction Order requires that the government not

17   "terminate [Mr. Ramirez's] DACA status and work authorization pending a final decision by [the]

18   Court on the merits of his claims."  However, USCIS did just that, denying renewal of Mr.

19   Ramirez's DACA, even though such processed renewals are routinely approved 99% of the time.  In

20   so doing, Defendants have affirmatively terminated Mr. Ramirez's DACA and work authorization

21   benefits, thereby violating the Preliminary Injunction Order for this additional reason.

22   **Mr. Ramirez Continues to Suffer Harm as a Result of Defendants' Unlawful Conduct**

23          87.     81. Mr. Ramirez was detained from February 10, 2017 to March 29, 2017.  He will

24   never get back the six weeks that he spent in the Northwest Detention Center. 82.   Since his

25   release, Mr. Ramirez has reunited with his family, but has been unable to fully piece his life back

26   together.  Mr. Ramirez no longer has his DACA status or work authorization, and Defendants have

27   refused to return Mr. Ramirez's Washington State identification card, which they confiscated

28   _____

     [85]  Dkt. #133, at 23 (emphasis added).
     [86]  Ex. N, at 4 (Dec. 19, 2018 Decision Denying DACA Renewal).

1   ~~following his arrest.  Mr.~~ Ramirez must work to provide for himself and his family, but Defendants'

2   actions have ~~prevented him from obtaining~~ impaired his ability to find gainful employment.

3       88.   ~~83.~~ Mr. Ramirez also continues to experience the profound emotional and

4   psychological consequences of his detention.  For more than six weeks, he was confined under

5   conditions that caused him to experience significant distress, humiliation, embarrassment,

6   discomfort, fear, and anxiety.  He constantly feared that he would be attacked based on Defendant's

7   false claims about his supposed gang affiliation.

8       89.   ~~84.~~ Mr. Ramirez also continues to suffer the stigma of being associated with a gang.

9   Not only has Mr. Ramirez's reputation been damaged as a result of Defendants' conduct, but the

10  reputation of his family has suffered as well.  Mr. Ramirez cares deeply about his family, and it has

11  been very difficult for him to see how Defendants' actions have caused his family harm.

12      90.   Further, Mr. Ramirez has suffered harm and significant distress arising out of both

13  the unlawful issuance of the NOID and subsequent final Decision to deny his DACA renewal

14  request.  After this Court issued the Preliminary Injunction Order, Mr. Ramirez believed he would

15  finally be treated fairly and justly by the government so that he could get back to living his life and

16  providing for his family.  That Preliminary Injunction Order provided Mr. Ramirez peace of mind

17  that the government's campaign against him might finally cease.  But Defendants were undaunted by

18  this Court's order, and their continued pursuit of Mr. Ramirez and denial of his DACA renewal have

19  caused him great additional emotional harm, have interfered with his ability to earn a living wage, to

20  enjoy the other benefits of DACA status, to raise his son (who is a U.S. citizen), and to peacefully

21  carry on living his life in the United States.

22

23                          **CAUSES OF ACTION**

24                            **COUNT ONE**

25      **ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS ACTION**

26      91.   ~~85.~~ Mr. Ramirez repeats and incorporates by reference each and every allegation

27  contained in the preceding paragraphs as if fully set forth herein.

28

1    92.    86. This Count is brought against the DHS, ICE, and USCIS (collectively, the

2    "Agencyall Defendants") and seeks declaratory and injunctive relief under the Administrative

3    Procedure Act ("APA")APA.

4    93.    87. The APA provides that courts "shall . . . hold unlawful and set aside agency

5    action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

6    5 U.S.C. § 706(2)(A) (2017).  Here, the Agency Defendants violated the APA because

7    theirDefendants have acted arbitrarily and capriciously in taking actions to terminate Mr. Ramirez's

8    DACA status on multiple occasions since they unlawfully detained him in February 2017.  Three

9    actions in particular embody such arbitrary and capricious treatment: (1) the revocation of Mr.

10   Ramirez's DACA status and work authorization in February 2017; (2) the issuance of the NOIT in

11   April 2018 in reliance on unfounded allegations of gang affiliation; and (3) the issuance of the

12   December 19, 2018 Decision to deny Mr. Ramirez's DACA renewal request on the insufficient

13   grounds provided, which also violated the terms of the Preliminary Injunction Order and contradict

14   Defendants' own internal records.  In each instance, the government acted in a manner that was

15   arbitrary, capricious, an abuse of discretion, and in violation of theirthe Defendants' own established

16   procedures.

17   94.    The February 2017 revocation of Mr. Ramirez's DACA status and work

18   authorization constitutes final agency action and cannot be appealed.6587  The denial of Mr. Ramirez's

19   renewal request in December 2018 also constitutes final agency action and cannot be appealed.88

20   95.    88. The abrupt and unsupported decision by the Agency Defendants' decision to

21   revoke Mr. Ramirez's DACA status and work authorization in February 2017, despite the fact that

22   multiple prior and more thorough analyses had concluded that he was eligible for DACA, and despite

23   the government own internal determination that he does not present a public safety concern even after

24   learning of the facts on which it based denial of renewal, is the sort of inconsistency that is the

25   hallmark of arbitrary action.  *See, e.g.*, *Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134,

26

27   6587  As discussed above, the NOA expressly provides that an "appeal or motion to
           reopen/reconsider this notice of action may not be filed."  Ex. JI, at 1.

28   88  Ex. N (Dec. 19, 2018 Decision Denying DACA Renewal) ("You may not file an appeal or
        motion to reopen/reconsider this decision.")

1   1145 (9th Cir. 2015).⁶⁶⁸⁹  Indeed, as discussed above, ~~the Agency~~ Defendants examined Mr.

2   Ramirez's background on at least three separate occasions and concluded that he was eligible for

3   DACA.  The decision to summarily reverse that conclusion was arbitrary, capricious, and an abuse of

4   discretion.  That the government again acknowledged that Mr. Ramirez is not a threat to public safety

5   at his March 2017 bond hearing and in USCIS's March 20, 2018 internal email further underscores

6   the arbitrary and capricious nature of his DACA revocation.

7       96.   ~~89. The Agency~~ Defendants' ~~assertion~~assertions that Mr. Ramirez is gang affiliated

8   ~~is~~were implausible and ~~ran~~ "~~runs~~counter to the evidence before the agency~~.~~"  (*Ctr. for Biological*

9   *Diversity v. Bureau of Land Mgmt.*, 833 F.3d 1136, 1146 (9th Cir. 2016) (citation omitted)~~.  Notably,~~

10  ~~the Agency Defendants based this~~), as was their December 2018 determination ~~in large part on the~~

11  ~~unsupported conclusion~~ that Mr. Ramirez~~'s tattoo is a "gang tattoo," despite the fact that multiple~~

12  ~~independent experts have reached the opposite conclusion.  The Agency Defendants have provided no~~

13  ~~analysis or expert opinion to support their conclusion~~ had an "offense history" that warranted denial

14  of his DACA renewal.  Defendants had before it all relevant information regarding Mr. Ramirez's

15  ~~tattoo, and their refusal to engage with contrary evidence violates the APA.~~history, offense or

16  otherwise, when improperly determining in April 2018 and December 2018 that he was a public

17  safety concern.  But that determination ran contrary to the evidence before USCIS, as in March 20,

18  2018 USCIS had determined and admitted that Mr. Ramirez had "[n]o criminality," that "there is not

19  sufficient evidence to conclude he is currently a known or suspected gang member," and that "[t]here

20  is NOT sufficient evidence to conclude [he] is an EPS concern."⁹⁰

21      97.   ~~90.~~Relatedly, ~~the Agency~~ Defendants acted unlawfully and in violation of the

22  *Accardi* doctrine because they failed to "adhere to [their] own internal operating procedures" when

23  they summarily revoked Mr. Ramirez's DACA status and work authorization in February 2017 but

24  failed to provide him the appropriate notice and opportunity to contest that determination.  *Church of*

25  ――――――――――

26  ⁶⁶⁸⁹  *See also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).  While an agency
        may change course based upon new "factual findings that contradict those" upon which it
27      based its prior determination, it must provide a "detailed justification," particularly when
        the "prior policy has engendered serious reliance interests that must be taken into
28      account."  *Id.* at 515–16 (citing *Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735,
        742 (1996)).

    ⁹⁰  Ex. A (Mar. 20, 2018 USCIS Email).

1   *Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) (citing *United States ex rel.*

2   *Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954)).⁶⁷⁹¹ ~~By way of example, DHS policy provides~~

3   ~~that—absent an "Egregious Public Safety" issue—the government must provide DACA beneficiaries~~

4   ~~with a "Notice of Intent to Terminate" which "thoroughly explain[s]" the grounds for the proposed~~

5   ~~termination of their DACA status.⁶⁸ DHS policy further directs that individuals served with such a~~

6   ~~notice are to be afforded 33 days to "file a brief or statement contesting the grounds cited in the~~

7   ~~Notice of Intent to Terminate" prior to termination of their DACA status.⁶⁹ Here, the Agency~~

8   ~~Defendants failed to follow their own internal operating procedures, and instead summarily revoked~~

9   ~~Mr. Ramirez's DACA status and work authorization without providing him any notice or an~~

10  ~~opportunity to address the allegations against him~~

11        98.    Defendants then acted arbitrarily and capriciously in issuing Mr. Ramirez the NOIT

12  the same day they restored his DACA status pursuant to the *Inland Empire* Order.  As noted, the

13  NOIT stated that Mr. Ramirez was a risk to public safety due to his alleged gang affiliation even

14  though Defendants had twice acknowledged that there was no support for this conclusion—first, at

15  his bond hearing in March 2017 and again in an internal DHS email dated approximately two weeks

16  before the NOIT was issued, which stated that there was "[n]o criminality on [his] rap sheet" nor

17  "sufficient evidence to conclude he is currently a known or suspected gang member."⁹²  Basing the

18  NOIT on such baseless and discredited allegations was arbitrary and capricious, and this Court found

19  in its Preliminary Injunction Order that Mr. Ramirez was likely to prevail on this argument.

20        99.    Defendants' denial of Mr. Ramirez's renewal request in December 2018 was also

21  arbitrary and capricious.  The government cites as the reason for the denial Mr. Ramirez's "offense

22  history," which consists of a 2013 Police Report regarding Mr. Ramirez's romantic relationship with

23  the mother of his son for which no investigation was ever initiated (and for which no charges were

24  ever pursued given the consent of all parties and their families), a citation for possession of a small

---

25  ⁶⁷⁹¹  The *Accardi* requirement "extends beyond formal regulations," including to "policy
26       statement[s]," "handbook[s]," "operating procedures," "Order[s]," "Weekly Bulletin[s],"
         unpromulgated rules documenting "usual practice," "Standards," and "Directive[s]."
27       *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) (citing cases).

28  ~~⁶⁸  Ex. F, at 132, Appendix I (DACA SOP).~~
    ~~⁶⁹  *Id.*~~
     ⁹²  Ex. A (March 20, 2018 USCIS Email).

1   quantity of marijuana in 2014, and various tickets for traffic violations.  The conclusion reached by

2   Defendants that Mr. Ramirez no longer warrants favorable consideration for DACA due to his

3   "offense history" cannot be lawfully reconciled with DHS's March 2018 determination that there is

4   "[n]o criminality on [Mr. Ramirez's] rap sheet."  Even setting aside this inconsistency, the denial of

5   Mr. Ramirez's renewal request on this basis is arbitrary and capricious, as 99% of processed renewal

6   requests are approved, including for DACA recipients who, like Mr. Ramirez, have committed minor,

7   non-violent infractions in the past.  Moreover, all of these facts were available to the government at

8   the time it issued the NOIT, in April 2018, yet the government did not cite these minor, non-violent

9   infractions at that time, doing so only after this Court blocked its efforts to terminate his DACA by

10  falsely accusing him of gang membership.  There is good reason why the government did not cite

11  these bases in the April 2018 NOIT—they do not rise to the level of violent offenses warranting

12  denial of DACA, and Defendants' reliance on them to deny renewal is arbitrary and capricious.

13          100.     Defendants' denial of Mr. Ramirez's renewal request in December 2018 also

14  violates the *Accardi* doctrine.  Under the DACA SOP, a DACA request that presents "issues of

15  criminality" must be reviewed and adjudicated by the USCIS Background Check Unit ("BCU")

16  DACA Team.[93]  In March 2018, approximately two months before Mr. Ramirez submitted his

17  renewal request, a member of the BCU DACA Team determined that Mr. Ramirez had "[n]o

18  criminality on [his] rap sheet."  Defendants nonetheless denied Mr. Ramirez's most recent renewal

19  request based on his alleged criminal or "offense" history.  This was in violation of the SOP

20  guidelines governing the processing of DACA applications for two reasons.  First, it contravened the

21  conclusion reached by the BCU DACA Team in March 2018 regarding Mr. Ramirez's lack of

22  criminal history.  The SOP does not provide for a process by which determinations of the BCU

23  DACA Team with respect to an applicant's criminal history may be overridden.  Second, there is no

24  evidence whatsoever in administrative record that the BCU DACA Team actually adjudicated Mr.

25  Ramirez's most recent renewal request and reached a conclusion contrary to the March 2018

26  determination.

27          101.     91.For all of the foregoing reasons, the revocation ofDefendants violated the APA

28  when revoking Mr. Ramirez's DACA status and work authorization was in violation of the APA.  in

         [93]   Ex. G, at 82, 93–96 (DACA SOP).

1  February 2017, issuing a NOIT based upon false allegations of gang affiliation in April 2018, and

2  denying his renewal request in December 2018.

3  **COUNT TWO**

4  **ADMINISTRATIVE PROCEDURE ACT – UNCONSTITUTIONAL ACTION**

5  102.   ~~92.~~ Mr. Ramirez repeats and incorporates by reference each and every allegation

6  contained in the preceding paragraphs as if fully set forth herein.

7  103.   ~~93.~~ This Count is brought against ~~the Agency~~all Defendants and seeks declaratory

8  and injunctive relief under the APA.

9  104.   ~~94.~~ The APA dictates that courts "shall . . . hold unlawful and set aside agency

10  action" that is "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

11  Here, ~~the Agency~~ Defendants violated the APA because their ~~revocation of~~threats, revocations, and

12  failure to renew Mr. Ramirez's DACA status and work authorization violated his rights under the

13  Due Process Clause.  The February 2017 revocation of Mr. Ramirez's DACA status and work

14  authorization constitutes final agency action and cannot be appealed.~~70~~  The denial of Mr. Ramirez's

15  renewal request in December 2018 also constitutes final agency action.[94]

16  105.   ~~95.~~ Aliens who are physically present in the United States are guaranteed the

17  protections of the Due Process Clause.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due

18  Process Clause applies to all 'persons' within the United States, including aliens, whether their

19  presence here is lawful, unlawful, temporary, or permanent.").

20  106.   ~~96.~~ The Constitution "imposes constraints on governmental decisions which deprive

21  individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

22  Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A threshold

23  inquiry in any case involving a violation of procedural due process "is whether the plaintiffs have a

24  protected property or liberty interest and, if so, the extent or scope of that interest."  *Nozzi v. Hous.*

25  *Auth. of L.A.*, 806 F.3d 1178, 1190–91 (9th Cir. 2015) (citing *Bd. of Regents of State Colls. v. Roth*,

26  408 U.S. 564, 569–70 (1972)).

27  107.   ~~97.~~ Here, ~~the Agency~~ Defendants deprived Mr. Ramirez of liberty interests protected

28  by the Due Process Clause.  As previously discussed, DACA grants beneficiaries the right not to be

---

~~70~~94  *See supra* note ~~65.~~88.

1    arrested or detained based solely on their immigration status during the time period that their deferred

2    action is in effect.  Such "[f]reedom from imprisonment—from government custody, detention, or

3    other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause

4    protects." *Zadvydas*, 533 U.S. at 690.  The term "liberty" also encompasses the ability to work, raise

5    a family, and "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S.

6    471, 482 (1972); *Roth*, 408 U.S. at 572.  Where, as here, an individual reasonably relies on a

7    conferred status to pursue these activities, the government cannot revoke that status without adequate

8    procedural due process.  *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that once a benefit is

9    granted "continued possession may become essential in the pursuit of a livelihood").

10   108.   98. The fact that the Agency Defendants previously revoked Mr. Ramirez's DACA

11   status and work authorization based on false allegations of gang affiliation also deprived him of

12   protected liberty interests in his reputation.  *See Paul v. Davis*, 424 U.S. 693693, 709 (1976)

13   (explaining that while reputation alone may not be a protected liberty interest, "the invocation of

14   procedural safeguards" is justified when defamatory allegations accompany an altered legal status);

15   *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)

16   ("Where a person's good name, reputation, honor, or integrity is at stake because of what the

17   government is doing to him, notice and an opportunity to be heard are essential.").  Defendants'

18   denial of Mr. Ramirez's renewal application was similarly made on the erroneous grounds that he is a

19   public safety threat, thereby furthering harm to his reputation.

20   109.   99. The Agency Defendants also deprived Mr. Ramirez of property interests

21   protected by the Due Process Clause.  The property interests protected by the Due Process Clause

22   "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of

23   entitlement.'" *Nozzi*, 806 F.3d at 1191 (citing *Roth*, 408 U.S. at 576–77).  "A legitimate claim of

24   entitlement is created [by] . . . 'rules or understandings that secure certain benefits and that support

25   claims of entitlement to those benefits.'" *Id.*  Therefore, an individual has a protected property

26   interest where they have a reasonable expectation of entitlement to that interest.

27   110.   100. Here, Mr. Ramirez possessed a protected property interest in his DACA status

28   and the numerous benefits provided to him under the DACA program.  As discussed above, these

1  benefits include, among other things, the ability to legally work in the United States,[7195] eligibility for

2  important state and federal benefits,[7296] and the ability to travel internationally under certain

3  circumstances.  *See Texas*, 809 F.3d at 166 ("Deferred action . . . is much more than nonenforcement:

4  It would affirmatively confer 'lawful presence' and associated benefits on a class of unlawfully

5  present aliens.  Though revocable, that change in designation would trigger . . . eligibility for federal

6  benefits—for example, under title II and XVIII of the Social Security Act—and state benefits—for

7  example, driver's licenses and unemployment insurance—that would not otherwise be available to

8  illegal aliens."); *Ariz. Dream Act Coal.*, 757 F.3d at ~~1058–59~~1059 ("DHS considers DACA recipients

9  not to be unlawfully present in the United States because their deferred action is a period of stay

10  authorized by the Attorney General.").

11      111.   ~~101.~~These protected property interests exist because of the government's decision to

12  grant Mr. Ramirez these benefits, and by virtue of its promise to Mr. Ramirez (and hundreds of

13  thousands of similarly situated young people) to adhere to the strict framework of the DACA

14  program, including the ability to renew one's status.  *See Goldberg v. Kelly*, 397 U.S. 254, 262

15  (1970); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a

16  'property' interest for due process purposes if there are such rules or mutually explicit understandings

17  that support his claim of entitlement to the benefit and that he may invoke at a hearing.").  In

18  establishing and ~~continuously~~ operating DACA under a well-defined framework and highly specific

19  criteria, the government created a reasonable expectation among DACA recipients—including Mr.

20  Ramirez—that they are entitled to the benefits provided under the program.[7397]

21      112.   ~~102.~~While DACA is premised on the exercise of prosecutorial discretion, that

22  discretion is limited and constrained by the rules and criteria on which DACA is based and operated,

23  and by the government's decision to twice grant Mr. Ramirez deferred action and work authorization.

24  These constraints on discretion further support Mr. Ramirez's claim of a protected property interest.

[7195]  Revocation of (or denial of renewal regarding) DACA is therefore the sort of "complete prohibition of the right to engage in a calling" that directly implicates the Due Process Clause.  *Conn v. Gabbert*, 526 U.S. 286, 292 (1999).

[7296]  Courts routinely find that revocation of public benefits triggers the Due Process Clause.  *See, e.g.*, *Mathews*, 424 U.S. at 332.

[7397]  "[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state."  *Newman v. Sathyavaglswaran*, 287 F.3d 786, 797 (9th Cir. 2002) (citations omitted).

1  *See Nozzi*, 806 F.3d at 1191 (finding a protected property right in government benefits where

2  government regulations "greatly restrict the discretion" of those who administer the benefits) (citation

3  omitted).

4      113.   ~~103.~~ Defendants' conduct in depriving Mr. Ramirez of his protected liberty and

5  property interests is evaluated under the three-part *Eldridge* test.  "[I]n *Mathews v. Eldridge*, the

6  Supreme Court set forth a three-part inquiry to determine whether the procedures provided to protect

7  a liberty or property interest are constitutionally sufficient.  First, courts must look at the nature of the

8  interest that will be affected by the official action, and in particular, to the degree of potential

9  deprivation that may be created.  Second, courts must consider the fairness and reliability of the

10 existing procedures and the probable value, if any, of additional procedural safeguards.  Finally,

11 courts must assess the public interest, which includes the administrative burden and other societal

12 costs that would be associated with additional or substitute procedures." *Nozzi*, 806 F.3d at 1192–93

13 (internal quotations and citations omitted).  This test requires courts to balance the affected interests

14 to see whether the procedures provided are constitutionally sufficient.

15     114.   ~~104.~~ Here, both the revocation of and then the denial of renewal of Mr. Ramirez's

16 DACA status and work authorization without adequate procedural protections ~~fails~~fail the *Eldridge*

17 test.  First, Mr. Ramirez's protected interests are extremely significant—they include, among other

18 things, his physical liberty, his right to be free from arrest or detention based solely on his

19 immigration status, and his ability to earn a living to help support himself and his family.  Second, the

20 procedures provided were wholly inadequate.  "The essence of due process is the requirement . . . [of]

21 notice . . .  [and] a meaningful opportunity to present [one's] case." *Mathews*, 424 U.S. at 348–49.

22 Here, Defendants initially revoked Mr. Ramirez's DACA status without any advance notice.[7498]

23 Defendants then continued to rely on unsubstantiated allegations of gang affiliation in threatening to

24 terminate Mr. Ramirez's DACA status, and subsequently failed to give fair and impartial

25 consideration to his DACA renewal application after deciding that they would take whatever steps

26

27     [7498]   The risk of "erroneous deprivation" is particularly high where, as here, an agency disregards
        its own extensive prior due diligence in favor of a spur-of-the-moment judgment by a few
        individuals based on extremely limited evidence.  Under these circumstances, *any*

28         "additional procedural safeguards" would have had obvious "probable value." *Nozzi*, 806
        F.3d at 1193.

1    necessary to terminate Mr. Ramirez's DACA, including attempting to skirt this Court's Preliminary

2    Injunction Order to deny a routine renewal.  This Court has already held that such conduct

3    "implicates [Mr. Ramirez's] right to an opportunity to be heard in a meaningful manner."[99]  And

4    third, there is no credible burden "associated with additional or substitute procedures," or public

5    benefit from their absence.  *Nozzi*, 806 F.3d at 1193 (internal quotations and citations omitted).[~~75~~100]

6          115.     Separate from the inadequate procedural protections it has provided Mr. Ramirez

7    throughout this process, the government's treatment of Mr. Ramirez also violates his substantive

8    rights under the Due Process Clause.  The government's actions demonstrate that it has not been

9    motivated by a legitimate purpose; rather, the government has been motivated by animus and spite

10   toward an individual who challenged the government's false allegations and stood up for his

11   individual rights.  Such illegitimate and retaliatory rationales cannot support the government's

12   deprivation of Mr. Ramirez's protected liberty and property interests.  *Cty. of Sacramento v. Lewis*,

13   523 U.S. 833, 845 (1998) ("The touchstone of due process is protection of the individual against

14   arbitrary action of the government." (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))); *Ms. L.*

15   *v. ICE*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018) ("[S]ubstantive due process protects against

16   government power arbitrarily and oppressively exercised.").

17         116.     For similar reasons, Defendants' retaliatory actions have violated Mr. Ramirez's

18   rights under the First Amendment.  Even if the government's actions were lawful, which they were

19   not, such "[o]therwise lawful government action may nonetheless be unlawful if motivated by

20   retaliation for having engaged in activity protected under the First Amendment."  *O'Brien v. Welty*,

21   818 F.3d 920, 932 (9th Cir. 2016); *see also Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) ("[T]he

22   government may not retaliate for exercising First Amendment speech rights.").  To succeed on a

23   First Amendment retaliation claim, a plaintiff must demonstrate that "(1) he was engaged in a

24   constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary

25   firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a

26   substantial or motivating factor in the defendant's conduct."  *O'Brien*, 818 F.3d at 932 (quoting

27    [99]  *Medina*, 313 F. Supp. 3d at 1251 (internal quotations omitted).

28    [~~75~~100]  As previously noted, Defendants also violated the government's policy of providing notice
         and 33 days to respond before terminating DACA status.  *See* Dkt. #78-6, Ex. F, at 132,
         Appendix I (DACA SOP).

1    *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) and holding that complaint

2    stated a plausible First Amendment retaliation claim).

3        117.    Defendants' decision to deny renewal of Mr. Ramirez's DACA status and work

4    authorization in December 2018 violated the First Amendment's prohibition against retaliation for

5    protected speech.  Mr. Ramirez first filed suit to challenge the government's unconstitutional

6    conduct on February 13, 2017, and Defendants have consistently taken punitive and retaliatory

7    action against him ever since.  "Litigation seeking to expose . . . wrongful governmental activity is,

8    by its very nature, a matter of public concern" that is protected by the First Amendment.  *Alpha*

9    *Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004); *see also id.* at 925 ("[P]roceedings

10   before a judicial or administrative body constitute a matter of public concern if they bring to light

11   potential or actual discrimination, corruption, or other wrongful conduct by government agencies or

12   officials.").  In an abundance of caution, Mr. Ramirez submitted a request to renew his DACA less

13   than one week after the Preliminary Injunction Order, which enjoined Defendants from terminating

14   his DACA.  Four months later, in the next action Defendants took with respect to Mr. Ramirez's

15   renewal application, Defendants informed Mr. Ramirez of their intent to deny his request.  In light of

16   the history of Defendants' treatment of Mr. Ramirez—and considering the fact that virtually all

17   DACA renewal requests are granted—the motivation behind Defendants' denial of Mr. Ramirez's

18   request is clear: to silence Mr. Ramirez and to retaliate against him for his efforts to pursue relief for

19   Defendants' past unlawful conduct.

20       118.    ~~105.~~ For all of the foregoing reasons, the threatened and actual revocation of Mr.

21   Ramirez's DACA status and work authorization, and the denial of his DACA renewal application,

22   violated his rights under the Due Process Clause and the First Amendment, and was therefore in

23   violation of the APA.

24                                    **COUNT THREE**

25                    ~~**BIVENS CLAIM:  FOURTH AMENDMENT – UNLAWFUL SEIZURE**~~

26                                  **EQUITABLE ESTOPPEL**

27       119.    ~~106.~~ Mr. Ramirez repeats and incorporates by reference each and every allegation

28   contained in the preceding paragraphs as if fully set forth herein.

1   120. ~~107.~~ This Count is brought against ~~Defendants Hicks, Peter, Hernandez, Lawrence,~~

2   ~~and Does 1-5 (collectively, the "Individual Defendants") in their individual capacities only pursuant~~

3   ~~to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)~~all

4   Defendants and seeks a declaration that Defendants are equitably estopped from terminating Mr.

5   Ramirez's DACA status and work authorization.

6   ~~108.      Aliens are entitled to Fourth Amendment protection from unlawful seizures.  *See*~~

7   ~~*Orhorhaghe v. INS*, 38 F.3d 488, 497–501 (9th Cir. 1994); *Benitez-Mendez v. INS*, 760 F.2d 907, 909~~

8   ~~(9th Cir. 1983).  To support a warrantless arrest and detention for a civil immigration violation, the~~

9   ~~arresting officer must be aware of sufficient facts to support a reasonable belief that the alien is in the~~

10  ~~United States illegally.  *Benitez-Mendez*, 760 F.2d at 909.  Absent such facts, a warrantless arrest~~

11  ~~violates the Fourth Amendment.  *Orhorhaghe*, 38 F.3d at 497–501.~~

12  ~~109.      Here, the Individual Defendants arrested and detained Mr. Ramirez despite their~~

13  ~~knowledge that he was granted deferred action under DACA and was therefore authorized to live and~~

14  ~~work in the United States.  By arresting and detaining Mr. Ramirez under these circumstances, the~~

15  ~~Individual Defendants violated his rights under the Fourth Amendment.~~

16  ~~110.      Each of the Individual Defendants was personally involved in and proximately~~

17  ~~caused the aforementioned violation of Mr. Ramirez's constitutional rights.~~

18  ~~111.      As a result of Defendants' actions, Mr. Ramirez suffered damages, including, but not~~

19  ~~limited to, loss of liberty, loss of earnings and earning capacity, loss of valuable benefits, distress,~~

20  ~~humiliation, embarrassment, discomfort, fear, anxiety, and other injuries.~~

21  ~~COUNT FOUR~~

22  ~~BIVENS CLAIM:  FIFTH AMENDMENT – PROCEDURAL DUE PROCESS~~

23  ~~112.      Mr. Ramirez repeats and incorporates by reference each and every allegation~~

24  ~~contained in the preceding paragraphs as if fully set forth herein.~~

25  ~~113.      This Count is brought against the Individual Defendants in their individual capacities~~

26  ~~only pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388~~

27  ~~(1971).~~

28

1    114.    Aliens who are physically present in the United States are guaranteed the protections

2 of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693.

3    115.    The Constitution "imposes constraints on governmental decisions which deprive

4 individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

5 Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332.

6    116.    Here, the Individual Defendants deprived Mr. Ramirez of liberty and property

7 interests protected by the Due Process Clause. *See supra* ¶¶ 97–102. This deprivation was without

8 adequate procedural protections and fails the *Eldridge* test. *See supra* ¶¶ 103–04. Accordingly, the

9 Individual Defendants violated Mr. Ramirez's rights under the Due Process Clause.

10    117.    Each of the Individual Defendants was personally involved in and proximately

11 caused the aforementioned violation of Mr. Ramirez's constitutional rights.

12    118.    As a result of Defendants' actions, Mr. Ramirez suffered damages, including, but not

13 limited to, loss of liberty, loss of earnings and earning capacity, loss of valuable benefits, distress,

14 humiliation, embarrassment, discomfort, fear, anxiety, and other injuries.

15                              **COUNT FIVE**

16              **BIVENS CLAIM: FIFTH AMENDMENT—SUBSTANTIVE DUE PROCESS**

17    119.    Mr. Ramirez repeats and incorporates by reference each and every allegation

18 contained in the preceding paragraphs as if fully set forth herein.

19    120.    This Count is brought against the Individual Defendants in their individual

20 capacities only pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

21 403 U.S. 388 (1971).

22    121.    "Freedom from imprisonment—from government custody, detention, or other forms

23 of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

24 *Zadvydas*, 533 U.S. at 690. Any deprivation of this fundamental liberty interest must be accompanied

25 not only by adequate procedural protections, but also by a "sufficiently strong special justification" to

26 outweigh the significant deprivation of liberty. *Id.*; *see also Phan v. Reno*, 56 F. Supp. 2d 1149, 1154

27 (W.D. Wash. 1999) ("Above and beyond the procedural guarantee explicit in the Due Process Clause

28 itself, federal courts have long recognized a limited substantive component that forbids the

1   ~~government to infringe certain fundamental liberty interests *at all*, no matter what process is~~

2   ~~provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" (internal~~

3   ~~citations and quotations omitted) (emphasis in original)).~~  The government may be subject to

4   equitable estoppel in an immigration case if it has engaged in "affirmative misconduct."

5   *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir. 2005).  Equitable estoppel against the

6   government also requires a showing that the government has "made a knowing false representation or

7   concealment of material facts to a party ignorant of the facts, with the intention that the other party

8   rely on it, where the other party actually and detrimentally relies on it" and that its "wrongful act will

9   cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the

10  liability."  *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008–09 (9th Cir. 1986) (quoting *Morgan v. Heckler*,

11  779 F.2d 544, 545 (9th Cir. 1985)).

12          122.    Here, ~~Mr. Ramirez's detention violated his right to substantive due process protected~~

13  ~~by the Fifth Amendment.  There was no reason that Mr. Ramirez should have been detained.  He was~~

14  ~~neither a flight risk, nor a risk to public safety or national security, and twice passed the rigorous~~

15  ~~vetting conducted by DHS, as well as the additional screening for gang affiliation in 2015.  Moreover,~~

16  ~~Defendants have explicitly conceded that Mr. Ramirez posed no risk to public safety.  Accordingly,~~

17  ~~Defendants cannot show any valid justification—let alone a "sufficiently strong special~~

18  ~~justification"—for depriving Mr. Ramirez of his fundamental rights.~~ Defendants should be estopped

19  from terminating or declining to renew Mr. Ramirez's DACA status and work authorization.

20  Defendants repeatedly, intentionally, and falsely asserted that Mr. Ramirez is gang affiliated or

21  otherwise presents a risk to public safety.  Mr. Ramirez is, to this day, ignorant of Defendants'

22  motivation in instituting and pursuing an unlawful course of harassing conduct to deny him of the

23  benefits to which he is entitled under DACA—except as retaliation against Mr. Ramirez for

24  exercising his rights.  Defendants have now however, improperly and wrongfully adopted a new

25  gambit to attempt to deprive Mr. Ramirez of his DACA, using information that the government had

26  available to it all along, but that it never previously raised in connection with his prior approved

27  DACA renewal nor in the April 2018 NOIT, which was principally based on the false accusation of

28  gang affiliation.

123. ~~Defendants also violated Mr. Ramirez's substantive (and procedural) due process rights through their unconstitutional bait-and-switch. As the Supreme Court has recognized, the Due Process Clause forbids the government from punishing people for engaging in conduct that the government itself has encouraged. *See, e.g., Cox v. State of La.*, 379 U.S. 559, 571 (1965) (holding that the government could not punish protestors for demonstrating in a location where state officials had said the protest was allowed); *Raley v. State of Ohio*, 360 U.S. 423, 438 (1959) (holding that witnesses could not be punished for refusing to answer self-incriminating questions from a legislative commission when the commission had told the witnesses they could decline to answer such questions as to do so would amount to "the most indefensible sort of entrapment by the State").~~ Believing he was protected against further government abuse by the Preliminary Injunction Order (which he expected the government would not violate), Mr. Ramirez reasonably relied on the government's prior false statements of alleged gang affiliation as the principal basis for attempting to terminate his DACA (which it reiterated at the May 1, 2018 hearing on the Preliminary Injunction Motion):

> THE COURT: Let me ask you this: Is the plaintiff correct that by filing the notice to terminate, that you intend to once again rely on the allegations that Mr. Ramirez is a gang member, has associated with gang members, and therefore needs to have that DACA status terminated?
>
> MR. ROBINS: Essentially, yes, Your Honor.[101]

124. ~~Here, the government vigorously promoted the DACA program and promised Mr. Ramirez—and hundreds of thousands of other young people—that if they disclosed sensitive personal information and passed a background check they would be able to live and work in the United States without being subject to arrest or detention based on their immigration status. The government further encouraged Mr. Ramirez to voluntarily disclose highly sensitive personal information by promising that such information would not be used for immigration enforcement purposes. By arresting and detaining Mr. Ramirez, and then using the information he disclosed against him, the government has broken both of those promises. For the government to now "say . . . 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government." *Moda Health Plan, Inc. v. United States*, 130 Fed. Cl. 436, 466 (Fed. Cl. 2017) (citing *Brandt v. Hickel*, 427 F.2d 53, 57~~

---

[101] Dkt. # 130-1, p. 25 (Trans. of May 1, 2018 Hrg., p. 20).

1   (9th Cir. 1970)).  Mr. Ramirez understandably believed that this allegation—false as it was—was the

2   government's principal basis on which it would attempt to terminate his DACA, and that if it was

3   aware of existing legitimate bases on which to terminate (or refuse to renew) his benefits, it would

4   have at the very least included them in the April 2018 NOIT.  But based on the government's

5   representations in the NOIT and at the May 1, 2018 hearing, he did not and could not have expected

6   the government to dredge up past minor violations—of which the government was aware at the time

7   it issued the April 2018 NOIT—as a pretext to deny his DACA renewal and attempt to skirt

8   requirements of the Preliminary Injunction Order, particularly where other DACA recipients'

9   renewals are routinely granted in the face of such minor violations.

10       125.   By arresting and detaining Mr. Ramirez under these circumstances, the Individual

11   Defendants violated his rights under the Fifth Amendment. Mr. Ramirez planned his future based on

12   the government's representations in this regard, including planning to work using his employment

13   authorization to provide for his son.  In that belief, he reasonably relied on the government's prior

14   representations in connection with the NOIT and its statements to this Court in submitting his DACA

15   renewal application in good faith and paying the renewal fee; therefore, he expected that his renewal

16   application would be fairly processed and approved as it had been before (as processed renewals are

17   routinely approved, 99% of the time).

18       126.    Each of the Individual Defendants was personally involved in and proximately

19   caused the aforementioned violation of Mr. Ramirez's constitutional rights.

20       126.    127. As a result of Defendants' actions, Mr. Ramirez suffered damages, including,

21   but not limited to, loss of liberty, loss of earnings and earning capacity, loss of valuable benefits,

22   distress, humiliation, embarrassment, discomfort, fear, anxiety, and other injuries The injustice to Mr.

23   Ramirez arising out of Defendants' misconduct outweighs any possible harm to the public interest by

24   the restoration of his benefits.  Mr. Ramirez has lived in the United States since he was ten years old,

25   has gone to school and worked here, and is the father of a United States citizen for whom he wishes

26   to provide, but the government's retaliatory campaign and false representations have severely

27   impaired his ability to do so.

28

1                                COUNT ~~SIX~~FOUR

2                  BIVENS CLAIM:  FIFTH AMENDMENT – EQUAL PROTECTION

3          128.    Mr. Ramirez repeats and incorporates by reference each and every allegation

4   contained in the preceding paragraphs as if fully set forth herein.

5          129.    This Count is brought against the Individual Defendants in their individual

6   capacities only pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

7   403 U.S. 388 (1971).

8          130.    The Fifth Amendment protects individuals against actions of the federal government

9   that deny them equal protection of the laws.  *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013)

10  ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the

11  prohibition against denying to any person the equal protection of the laws."); *Bolling v. Sharpe*, 347

12  U.S. 497, 500 (1954) (applying Equal Protection Clause to the federal government).

13         131.    The Fifth Amendment forbids federal officials from acting with a discriminatory

14  intent or purpose.  To succeed on a claim alleging a violation of the Equal Protection Clause, a

15  plaintiff "must prove that [Defendants] 'acted in a discriminatory manner and that the discrimination

16  was intentional.'"  *Wingate v. City of Seattle*, 198 F. Supp. 3d 1221, 1228 (W.D. Wash. 2016)

17  (quoting *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003)).  "Determining

18  whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into

19  such circumstantial and direct evidence of intent as may be available."  *Vill. of Arlington Heights v.*

20  *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

21         132.    Here, the Individual Defendants arrested Mr. Ramirez in substantial part because of

22  unconstitutional racial and national origin discrimination and invidious stereotypes about men of

23  Mexican heritage who have tattoos.  The Individual Defendants' discriminatory intent is evidenced

24  by, among other things, their decision to question Mr. Ramirez about his place of birth, their

25  decision to depart from established procedures and arrest and detain Mr. Ramirez without a warrant

26

27

28

1   and in spite of his DACA status, and their statement to Mr. Ramirez that his DACA status did not

2   matter because he was not from the United States.[76]

3         133.    The decision at the ICE holding facility to continue to detain Mr. Ramirez was also

4   motivated by unconstitutional racial and national origin discrimination.  Despite knowing that Mr.

5   Ramirez had passed numerous DHS background checks and had no criminal history, Defendants

6   alleged that Mr. Ramirez was a gang member based on his Mexican heritage and his tattoo.

7   Furthermore, one of the ICE agents told Mr. Ramirez that it did not matter that he had DACA status

8   because he was not from the United States, thereby demonstrating that Defendants were intentionally

9   discriminating against Mr. Ramirez because of his national origin.  The Individual Defendants'

10  conduct amounts to unconstitutional racial and national origin discrimination in violation of the

11  Equal Protection Clause.

12        134.    Each of the Individual Defendants was personally involved in and proximately

13  caused the aforementioned violation of Mr. Ramirez's constitutional rights.

14        135.    As a result of Defendants' actions, Mr. Ramirez suffered damages, including, but

15  not limited to, loss of liberty, loss of earnings and earning capacity, loss of valuable benefits,

16  distress, humiliation, embarrassment, discomfort, fear, anxiety, and other injuries.

17                                COUNT SEVEN

18                       **BIVENS CLAIM:  DEFAMATION**

19        136.    Mr. Ramirez repeats and incorporates by reference each and every allegation

20  contained in the preceding paragraphs as if fully set forth herein.

21        137.    This Count is brought against Defendants Does 1-5 (the "Doe Defendants") in their

22  individual capacities only pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

23  *Narcotics*, 403 U.S. 388 (1971).

24        138.    To prevail on a claim for defamation under Washington law, a plaintiff must

25  establish:  (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages.  *Paterson v.*

26

27  [76]  Discriminatory remarks made during an arrest or processing are evidence of an equal protection v
        iolation.  *See, e.g.*, *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987);
28      *Holland v. King Cty. Adult Det.*, No. 12-cv-0791-JLR, 2013 WL 3354414, at
        *14 n.14 (W.D. Wash. July 3, 2013).

1    *Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1132 (W.D. Wash. 2007) (citing *Mark v. Seattle Times*,

2    96 Wash. 2d 473, 486 (1981)).

3        139.    A claim for defamation is actionable under *Bivens* where a plaintiff can show that an

4    injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right.

5    *See Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006) (addressing claims brought under 42 U.S.C. §

6    1983).  In other words, "a plaintiff must allege loss of a recognizable property or liberty interest in

7    conjunction with the allegation of injury to reputation."  *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th

8    Cir. 1991), *aff'd en banc on other grounds*, 963 F.2d 1220 (9th Cir. 1992) (same).

9        140.    Here, the Doe Defendants engaged in a sustained campaign to publicly malign Mr.

10   Ramirez as a "gang member," despite knowing that there was no reliable evidence to support such a

11   characterization.  In so doing, the Doe Defendants caused irreparable harm to Mr. Ramirez's

12   reputation in connection with the deprivation of his liberty and other constitutionally protected rights.

13       141.    Defendants made a number of false statements about Mr. Ramirez, including

14   describing him as a "gang member" and as having "admitted [to] gang affiliation."  On information

15   and belief, the Doe Defendants reached out to members of the media to spread false and defamatory

16   information regarding Mr. Ramirez's purported gang membership.  And on February 15, 2017, the

17   Doe Defendants told members of the media that they had corroborating evidence to support their

18   allegations of gang membership, "including photos and social media content that illustrate [Mr.

19   Ramirez's] gang affiliation."  These statements were false and defamatory.  Mr. Ramirez is not now,

20   and never has been, a member of any gang, he has never admitted to gang affiliation, and Defendants

21   do not have any evidence of his purported gang membership.

22       142.    None of the Doe Defendants' false and defamatory statements were privileged.

23       143.    At the time they made these defamatory statements, the Doe Defendants knew that

24   they were false or failed to take the proper steps to ascertain their accuracy.  By virtue of the fact that

25   Mr. Ramirez had twice been granted DACA status, the Doe Defendants knew or should have known

26   that he had already passed multiple background checks for gang membership or affiliation.  And after

27   they ran his name and fingerprints through their databases at the ICE holding facility, Defendants

28

1   ~~knew that he had no criminal history.  The Doe Defendants acted knowingly and/or recklessly in~~

2   ~~making these false and defamatory statements about Mr. Ramirez.~~

3   ~~144.    The Doe Defendants' defamatory statements injured Mr. Ramirez's character and~~

4   ~~reputation and put him in danger.  Before the Doe Defendants defamed Mr. Ramirez, he was a~~

5   ~~respected community member; now many people incorrectly believe he is an admitted gang member~~

6   ~~and have formed a negative opinion of him.  Moreover, while Mr. Ramirez was detained at the~~

7   ~~Northwest Detention Center, Defendants' false statements regarding his purported gang membership~~

8   ~~caused him to be placed in a dangerous housing unit with gang members and convicted criminals.~~

9   ~~Mr. Ramirez feared for his safety because other detainees were aware of Defendants' unfounded~~

10  ~~allegations, and he was concerned that he would be assaulted based on the misperception that he was~~

11  ~~in a gang.  Mr. Ramirez continues to suffer from the emotional and psychological consequences of his~~

12  ~~detention, as well as from the stigma of being wrongfully associated with a gang.~~

13  ~~145.    In conjunction with these false and defamatory statements, Mr. Ramirez was~~

14  ~~deprived of his liberty and other important constitutionally protected rights, including his~~

15  ~~constitutionally protected rights under DACA.~~

16  ~~146.    Each of the Doe Defendants was personally involved in and proximately caused the~~

17  ~~aforementioned violation of Mr. Ramirez's constitutional rights.~~

18  ~~147.    As a result of Defendants' actions, Mr. Ramirez suffered damages, including, but not~~

19  ~~limited to, loss of liberty, loss of earnings and earning capacity, loss of valuable benefits, distress,~~

20  ~~humiliation, embarrassment, discomfort, fear, anxiety, and other injuries.~~

21                              **~~COUNT EIGHT~~**

22                              **DECLARATORY RELIEF**

23      <u>127.</u>   ~~148.~~ Mr. Ramirez repeats and incorporates by reference each and every allegation

24  contained in the preceding paragraphs as if fully set forth herein.

25      <u>128.</u>   ~~149.~~ As explained above, Defendants' revocation of Mr. Ramirez's DACA status

26  and work authorization <u>in February 2017, and their decision to deny renewal of his DACA in</u>

27  <u>December 2018,</u> violated his rights under the <u>First and </u>Fifth ~~Amendment~~<u>Amendments</u>.  Mr. Ramirez

28  therefore seeks a declaration that:  (i) he has constitutionally protected interests in his DACA status

1    and the benefits conferred thereunder; and (ii) Defendants' revocation of these interests was

2    unlawful and invalid.  *See Akhtar v. Burzynski*, 384 F.3d 1193, 1202 (9th Cir. 2004); *Walters v.*

3    *Reno*, 145 F.3d 1032, 1036, 1042–44 (9th Cir. 1998).

4           129.    ~~150.~~ For the same reasons, Mr. Ramirez is entitled to an order directing Defendants

5    to reinstate his DACA status.  5 U.S.C. § 706.

6                                **DEMAND FOR JURY TRIAL**

7           130.    ~~151.~~ Mr. Ramirez demands a jury trial on his claims.

8                                    **PRAYER FOR RELIEF**

9    WHEREFORE, Mr. Ramirez prays that this Court grant the following relief:

10   (1)  Award damages according to proof;

11   (2)  Find the agency actions to deny Mr. Ramirez's DACA to be arbitrary and capricious and

12        unlawful;

13   (3)  ~~(2)~~ Issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that:  (i) Mr. Ramirez has

14        constitutionally protected interests in his DACA status and the benefits conferred thereunder; and

15        (ii) Defendants' revocation of and failure to renew Mr. Ramirez's DACA status and benefits was

16        unlawful and in violation of his constitutional rights;

17   (4)  ~~(3)~~ Order Defendants to reinstate Mr. Ramirez's DACA status and work authorization;

18   (5)  Enjoin Defendants from terminating or declining to renew Mr. Ramirez's DACA status and

19        work authorization;

20   (6)  ~~(4)~~ Award Mr. Ramirez reasonable costs and attorneys' fees; and

21   (7)  ~~(5)~~ Grant any other and further relief that this Court may deem fit and proper.

22   DATED:  ~~April 24, 2017~~ March ___,

23   2019

24   Seattle, Washington

25

26                              Respectfully submitted,

27                              ~~/s/ Theodore J. Boutrous, Jr.~~

28

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
~~JESSE S~~NATHANIEL L. ~~GABRIEL~~BACH (CA SBN ~~263137~~246518), *pro hac vice*

~~/s/ Marc D. Rosenbaum~~
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
~~ANNE M. HUDSON-PRICE (CA SBN 295930), *pro hac vice*~~
~~ELIZABETH HADAWAY (CA SBN 308800), *pro hac vice*~~

~~/s/ Erwin Chemerinsky~~
~~ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*~~
~~LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*~~
~~University of California, Irvine School of Law~~
~~*Affiliation for identification purposes only~~

~~/s/ Laurence H. Tribe~~
~~LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*~~
~~Harvard Law School~~
~~*Affiliation for identification purposes only~~

~~/s/ Luis Cortes Romero~~
~~BARRERA LEGAL GROUP~~IMMIGRANT ADVOCACY & LITIGATION CENTER,
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
~~JOHN C. BARRERA (SBN 47658), *pro hac vice*~~
~~JOSE GARCIA (SBN 46518), *pro hac vice*~~

Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

11

CASE NO. 2:17-CV-00218-RSM-JPD

12

DANIEL RAMIREZ MEDINA,

**[PROPOSED] ORDER REGARDING**
**PLAINTIFF'S EX PARTE MOTION FOR**
**LEAVE TO FILE A THIRD AMENDED**
**COMPLAINT**

13

                    Plaintiff/Petitioner,

14

          v.

15

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES.

16

17

                    Defendants/Respondents.

18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] ORDER REGARDING PLAINTIFF'S EX
PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

1    This matter comes before the Court on Plaintiff Daniel Ramirez Medina's Ex Parte Motion

2  for Leave to File a Third Amended Complaint (the "Motion").  Upon consideration of the Motion, IT

3  IS ORDERED THAT:

4    1.  Leave is GRANTED for Mr. Ramirez to file his proposed Third Amended Complaint on the

5  docket in this case (with service made via ECF notification).

6

7  Dated this ___ day of March, 2019.

8                                                         _____

9                                                         THE HONORABLE RICARDO S. MARTINEZ
                                                          CHIEF UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER REGARDING PLAINTIFF'S EX
PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

Presented by:


/s/ *Theodore J. Boutrous, Jr.*
GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246517), *pro hac vice*

/s/ *Mark D. Rosenbaum*
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*

/s/ *Luis Cortes Romero*
IMMIGRANT ADVOCACY & LITIGATION CENTER, PLCC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*


***Attorneys for Plaintiff***

[PROPOSED] ORDER REGARDING PLAINTIFF'S EX
PARTE MOTION FOR LEAVE TO FILE A THIRD
AMENDED COMPLAINT
Case No. 2:17-cv-00218-RSM-JPD

2