# Exhibit F


U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Office of the Director (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship and Immigration Services**

APR 1 7 2015

The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Chairman Grassley:

Thank you for your February 27 and March 20 letters.

From your February 27 letter, I understand that you are seeking information regarding a specific individual, including information regarding his involvement in Deferred Action for Childhood Arrivals (DACA). In addition, you are seeking the official policy and other information related to the adjudication of DACA requests from suspected or known gang members. This letter addresses your DACA-related questions regarding that individual and responds to your inquiries regarding DACA and gang membership. Per your request, U.S. Citizenship and Immigration Services (USCIS) is preparing the individual's A-file. Because the individual possesses a protected status unrelated to DACA, the Department is obligated to make certain redactions before transmitting the file to you.

Our review of the file indicates that on January 22, 2013, the individual requested deferred action pursuant to DACA. At the time of filing his request for deferred action, he was in removal proceedings as an alien present in the United States without being admitted or paroled. It appears he came to the attention of U.S. Immigration and Customs Enforcement (ICE) as a result of a 2012 arrest for possession of marijuana, for which charges were subsequently dismissed. Based on ICE records, there is no indication that ICE was aware at the time of the arrest that the individual was a gang member. His request for deferred action was approved on August 26, 2013, notwithstanding a TECS record indicating that he was a known gang member, and his application for employment authorization was approved. After the deferred action request was approved, immigration proceedings were administratively closed on December 18, 2013.

Based on standard procedures and protocols in place at the time, the DACA request and related employment authorization should not have been approved. On March 5, 2015, USCIS provided notice to the individual of the termination of his deferred action and employment authorization.

All DACA requests presenting information that the requestor is or may be a member of a criminal street gang are referred to the Background Check Unit (BCU) within the USCIS Service Center considering the request. The BCU is responsible for reviewing and resolving TECS hits and other criminal, national security, and public safety concerns in accordance with USCIS

policy. The applicable USCIS internal guidance, which was in place at the time this individual's deferred action request was approved, states, "For a known street gang member, ... the DACA BCU Team should deny the I-821D [Consideration of Deferred Action for Childhood Arrivals] as a matter of discretion." The guidance also provides that if an adjudicator has evaluated the totality of the circumstances in such a case and believes the request should be approved as a matter of discretion, the request may be granted only after USCIS Headquarters approval. I have enclosed a copy of this internal guidance.

While records indicate that, pursuant to standard protocols as stated above, the case was appropriately sent to the BCU based upon the derogatory information in the background check, the outcome of the resolution process and final decision did not comply with USCIS policy. Given the fact that the individual was identified as a known gang member, his request should have been denied by the adjudicator. Even if the adjudicator believed there were mitigating facts sufficient to justify a positive exercise of discretion despite the TECS record, the case should have been elevated to USCIS Service Center Operations Headquarters (HQSCOPS) for review prior to a final decision being made.

USCIS is taking the following proactive steps and measures to be sure other errors did not occur and to prevent such an error from occurring in the future:

- USCIS has provided refresher training in the following areas:
    - All Immigration Service Officers who adjudicate DACA requests received refresher training in interpreting and applying TECS records.
    - Officers received DACA refresher training regarding disqualifying public safety and criminality concerns, including but not limited to gang membership, significant misdemeanors, and three or more misdemeanor criminal offenses.
    - Additional refresher training was given to all officers who handle DACA requests on proper protocol and elevation of cases requiring USCIS HQSCOPS' review and concurrence prior to a final decision.
    - BCU Officers received refresher training in reviewing, applying and resolving TECS hits. USCIS will ensure that the BCU Officer who processes the resolution memo of the TECS hit obtains concurrence from a subject matter expert or supervisor prior to adjudicating a DACA request involving specified public safety or criminality issues such as criminal history or gang membership.

- The refresher training was provided by USCIS Headquarters personnel who are subject matter experts in TECS and the DACA adjudication process. This training was mandatory for all ISOs who adjudicate DACA requests, all Immigration Service Officers who process resolutions related to TECS hits, and all supervisors and managers who oversee these processes. All listed training was provided between March 30 and April 10, 2015.

Furthermore, USCIS is in the process of completing a review of prior DACA approvals to determine if requests from known gang members were processed in a manner consistent with standard protocol. USCIS has identified certain cases that merit further review and is therefore undertaking a thorough review of each of these individual case files. We anticipate conclusion

of that individualized review in the coming weeks, and, following conclusion of such review, we would be happy to provide a briefing to you and your staff on our findings. Preliminary information concerning this review is included in the enclosure.

Detailed responses to the questions in your March 20 letter regarding DACA approvals are enclosed, which Senator Tillis, who co-signed that letter, will receive under separate cover. Should you require any additional assistance, please have your staff contact the USCIS Office of Legislative Affairs at (202) 272-1940.

Respectfully,

León Rodríguez
Director

Enclosures:
1) Responses to Questions
2) USCIS Internal Guidance

U.S. Department of Homeland Security's Response to
Chairman Grassley and Senator Tillis's March 20, 2015 Letter

1. **Since DACA's creation, how many applications have been approved? Please provide the answer by fiscal year.**

   As of March 20, 2015, U.S. Citizenship and Immigration Services (USCIS) has approved 886,638 Deferred Action for Childhood Arrivals (DACA) requests, of which 223,826 were requests for renewal of DACA. The number of DACA requests approved by fiscal year is as follows:

   | | | |
   |---|---|---|
   | FY 2012 | 1,685 | |
   | FY 2013 | 471,293 | |
   | FY 2014 | 158,278 | (Initial – 135,797; Renewal – 22,481) |
   | FY 2015 | 255,382 | (Initial – 54,037; Renewal – 201,345) |

2. **Of the DACA applications approved, please provide the number of applicants that:**

   USCIS does not track this information electronically and is working toward developing a tracking system to capture this information in the future. However, USCIS recently conducted a batch TECS query of all approved DACA cases in order to identify records that contained information indicating known or suspected gang association. Based on the information obtained from the query, out of all 886,638 cases approved for initial DACA or renewal of DACA, we found TECs records pertaining to 49 DACA recipients. Of these 49, 13 individuals had TECS records entered after DACA adjudication. The 13 cases are being reviewed for possible termination. Twenty had TECS records at the time of filing, and one had a TECS record placed during the adjudication process. These cases are being reviewed. As noted below, any cases that were approved for known gang members were approved in error, as USCIS HQ has not cleared approval of any DACA requests by a known or suspected gang member. Fifteen had TECS records that were vetted and were determined not to be gang members/gang affiliates. These cases were adjudicated on their merits.

   a. **Had known gang affiliation.**

      In the analysis described above, we did not distinguish between known or suspected gang members. Further manual review would be required to obtain this information.

   b. **Suspected gang affiliation.**

      In the analysis described above, we did not distinguish between known or suspected gang members. Further manual review would be required to obtain this information.

c. **Had criminal affiliations.**

   USCIS does not electronically track this information. A manual review of files would be required to obtain this information. Since not all crimes disqualify a requestor from being favorably considered for DACA, a requestor with one or two non-significant misdemeanors could have been approved. USCIS is working toward developing a tracking system to capture this information in the future.

3. **Please explain why USCIS approved DACA applications for known or suspected gang members and others with criminal affiliations.**

   Cases that were approved for known gang members were approved in error, as USCIS HQ has not cleared approval of any DACA requests by a known or suspected gang member. USCIS is not aware of any DACA grants where there was disqualifying criminal activity. DACA Refresher Training has been provided to prevent errors in the future.

4. **By fiscal year, how many DACA applications have been denied because of gang affiliation or other criminal affiliation?**

   USCIS does not currently electronically track information regarding the basis for a denial of a DACA request. A manual review of files would be required to obtain this information for each DACA denial. USCIS is working toward developing a tracking system to capture this information in the future.

5. **By fiscal year, please provide the number of DACA terminations as a result of gang affiliation or other criminal affiliation.**

   USCIS does not electronically capture the reasons for termination of a DACA request. Ad hoc manual reports from each service center indicate that as of March 20, 2015, USCIS has terminated DACA for 282 requestors for having gang affiliation and/or criminal issues. Additionally, USCIS is in the process of manually reviewing another 13 DACA terminations to determine the reason for termination.

   The following is a breakdown by fiscal year of the 282 DACA requests terminated due to criminal or gang issues:

   | | |
   |---|---|
   | FY 2013 | 28 |
   | FY 2014 | 131 |
   | FY 2015 | 123 |

6. **What steps is USCIS taking to ensure that known or suspected gang members or criminally affiliated applications are denied DACA or approved DACA is terminated once knowledge of gang affiliation or other criminal affiliation is known?**

   When a suspicion of gang affiliation or other criminal affiliation comes to the attention of USCIS after the DACA request has been approved, the case is reviewed for possible termination. This information is typically communicated by ICE as result of their engagement with local law enforcement or other encounters.

   DACA refresher training was conducted by USCIS HQ subject matter experts who traveled to each of the Service Centers. The training included interpreting and applying TECS records and a review of the disqualifying factors for DACA, including gang membership and significant misdemeanors. Additional refresher training was given to all officers who handle DACA requests on proper protocol and elevation of cases requiring USCIS HQSCOPS' review and concurrence prior to a final decision. The training was delivered to each ISO who adjudicates Form I-821D, *Consideration of Deferred Action for Childhood Arrivals*, the ISOs assigned to work DACA in the Background Check Unit, as well as management who oversees these ISOs. This training was conducted between March 30, 2015 and April 10, 2015.

# U.S. Citizenship and Immigration Services
# Internal DACA Adjudication Guidance

| | |
|---|---|
| Title | Known or Suspected Gang Membership |
| Question | How should we handle DACA requests when there is a record that the requestor is a known or suspected criminal street gang member? |
| Answer | The BCU DACA Team should handle any DACA requests when the record indicates that the requestor was, is or may be a member of a criminal street gang. Supervisors should only refer novel, complex, or sensitive cases to HQSCOPS, through the normal chain of command. The Centers should not approve a DACA request filed by a known or suspected gang member without approval from HQSCOPS.

USCIS's Notice to Appear (NTA) guidance includes "known or suspected street gang members" in its definition of an Egregious Public Safety (EPS) case. Therefore, if there is reason to believe the DACA requestor is a known or suspected gang member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities (e.g., a TECS record indicating the alien is a gang member or a suspected gang member as shown in the images A and B), the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G, of the DACA SOP.

ICE Priority

If, in response to the referral to ICE (RTI), ICE issues an NTA or otherwise indicates that the DACA requestor is an enforcement priority, the DACA BCU Team should deny the I-821D using call up DACA 511 - DISCRETIONARY from the Appendix F.

Known Gang Member

For a known street gang member, if an RTI is not required, as stated in the National Background Identity and Security Checks Operating Procedures (NaBISCOP), or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team should deny the I-821D as a matter of discretion and notify ICE of the decision. |

### Suspected Gang Member

For a suspected street gang member, if an RTI is not required, as stated in the NaBISCOP, or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team must refer the case for an interview to determine whether or not the requestor is, in fact, a gang member. Please contact the appropriate Field Office POC through established channels to facilitate the interview process. If, after the interview, it is inconclusive whether the requestor is a gang member (e.g., based on the preponderance of the evidence the person is a street gang member), the DACA BCU Team should deny the I-821D as a matter of discretion because the person has not met the burden of showing he or she is 'more likely than not' not a street gang member and therefore does not pose a threat to public safety. The DACA BCU team must notify ICE of the decision.