1

2

The Honorable Ricardo S. Martinez
Chief United States District Judge

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

10

11

CASE NO. 2:17-CV-00218-RSM-JPD

12

DANIEL RAMIREZ MEDINA,

13

Plaintiff,

14

v.

15

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

16

17

Defendants.

18

**PLAINTIFF'S MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR, IN THE
ALTERNATIVE, TO COMPEL
COMPLIANCE WITH PRELIMINARY
INJUNCTION ORDER**

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:  July 5, 2019

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I–II

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483


LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
  llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only*
401 East Peltason Drive, Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    I                    Counsel Listed on Pages I–II

1

LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
  larry@tribelaw.com

2

Harvard Law School
*Affiliation for identification purposes only*

3

1575 Massachusetts Avenue
Cambridge, MA 02138

4

Telephone: (617) 495-1767

5

6

ELIZABETH HAWKINS (SBN 43187)
  ehawkins@hawkinsimmigration.com

Hawkins Law Group

7

17544 Midvale Avenue, Suite 301
Shoreline, WA 98133

8

Telephone: (206) 728-4220
Facsimile: (206) 973-5326

9

10

IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*

11

  lcortes@barreralegal.com
19309 68th Avenue South, Suite R-102

12

Kent, WA 98032
Telephone: (253) 872-4730

13

Facsimile: (253) 237-1591

14

15

NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)

16

  matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104

17

Telephone:  (206) 957-8611

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    II                    Counsel Listed on Pages I–II

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................. 2

    A.    The establishment and rescission of DACA ............................................. 2

        1.    The DACA application and renewal process ................................. 2

        2.    Limitations on denying an individual's DACA renewal request ..................... 3

    B.    Mr. Ramirez benefitted from his DACA status ...................................... 4

        1.    Mr. Ramirez was twice granted DACA status ................................. 4

        2.    Mr. Ramirez received many benefits from DACA ........................... 5

    C.    The government's unlawful and arbitrary conduct .................................. 5

        1.    Mr. Ramirez's unlawful arrest and detention ................................. 5

        2.    The unlawful and arbitrary revocations of Mr. Ramirez's DACA status ......... 6

        3.    The Court enjoins Defendants from terminating Mr. Ramirez's DACA status ........ 7

        4.    The government's unlawful and arbitrary denial of Mr. Ramirez's May 2018 DACA renewal request ........ 8

III. LEGAL STANDARD ................................................................................................... 9

IV. ARGUMENT ................................................................................................................ 9

    A.    Defendants violated the First Preliminary Injunction ........................... 9

    B.    Mr. Ramirez Is Entitled to a Second Preliminary Injunction .................. 10

        1.    Mr. Ramirez is likely to succeed on the merits of his claims ................ 10

            a.    The denial of Mr. Ramirez's May 2018 DACA renewal request was arbitrary and capricious ........ 11

            b.    Defendants violated the APA by failing to follow their own internal procedures ........ 15

            c.    Defendants violated the APA by disregarding Mr. Ramirez's Due Process rights ........ 16

            d.    Defendants violated Mr. Ramirez's First Amendment rights ........ 19

            e.    Equitable estoppel precludes Defendants from denying Mr. Ramirez's renewal request ........ 20

        2.    Mr. Ramirez has suffered and continues to suffer irreparable harm .............. 22

        3.    The balance of equities and public interest weigh heavily in favor of provisional relief ........ 23

V. CONCLUSION ............................................................................................................. 24

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                                    Counsel Listed on Pages I–II

i

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Abdur-Rahman v. Napolitano*,
    814 F. Supp. 2d 1098 (W.D. Wash. 2011)................................................................14

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954)................................................................................................15

*Alcaraz v. INS*,
    384 F.3d 1150 (9th Cir. 2004)................................................................................15

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011).................................................................................9

*Alpha Energy Savers, Inc. v. Hansen*,
    381 F.3d 917 (9th Cir. 2004)..................................................................................19

*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014).....................................................................9, 22, 23

*Ariz. Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017)..................................................................................24

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972)................................................................................................17

*Butte Envtl. Council v. U.S. Army Corps of Eng'rs*,
    620 F.3d 936 (9th Cir. 2010)..................................................................................11

*Castro-Cortez v. INS*,
    239 F.3d 1037 (9th Cir. 2001)................................................................................18

*Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*,
    840 F.2d 701 (9th Cir. 1988)..................................................................................23

*Church of Scientology of Cal. v. United States*,
    920 F.2d 1481 (9th Cir. 1990)................................................................................15

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)................................................................................................11

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)......................................22

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    ii                    Counsel Listed on Pages I–II

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Coszalter v. City of Salem,*
   320 F.3d 968 (9th Cir. 2003)...................................................................20

*Coyotl v. Kelly,*
   261 F. Supp. 3d 1328 (N.D. Ga. 2017) ...............................................12, 15

*Cty. of Sacramento v. Lewis,*
   523 U.S. 833 (1998)....................................................................18, 19

*Enyart v. National Conference of Bar Exam'rs, Inc.,*
   630 F.3d 1153 (9th Cir. 2011)...............................................................22

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009)..........................................................................12

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992)..........................................................................11

*Gonzalez Torres v. U.S. Dep't of Homeland Sec.,*
   No. 17-cv-1840, 2017 WL 4340385 (S.D. Cal. Sept. 29, 2017)....................13, 23

*Gonzalez Torres v. U.S. Dep't of Homeland Sec.,*
   No. 17-cv-1840, 2018 WL 1757668 (S.D. Cal. Apr. 12, 2018)........................17

*Hernandez v. Sessions,*
   872 F.3d 976 (9th Cir. 2017)................................................................22

*Inland Empire-Immigrant Youth Collective v. Duke,*
   No. 17-cv-2048, 2017 WL 5900061 (C.D. Cal. Nov. 20, 2017). Dkt. 61.........6, 7, 13, 23

*INS v. Yang,*
   519 U.S. 26 (1996)...........................................................................15

*Johnson v. Williford,*
   682 F.2d 868 (9th Cir. 1985)................................................................21

*Judulang v. Holder,*
   565 U.S. 42 (2011)........................................................................11, 12

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton,*
   752 F.3d 755 (9th Cir. 2014)................................................................23

*Lopez-Valenzuela v. Arpaio,*
   770 F.3d 772 (9th Cir. 2014)................................................................16

*Mathews v. Diaz,*
   426 U.S. 67 (1976)...........................................................................16

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ........................................................................................17

*McDonald v. Gonzales,*
400 F.3d 684 (9th Cir. 2005) ..........................................................................15

*Melendres v. Arpaio,*
695 F. 3d 990 (9th Cir. 2012) ....................................................................22, 23

*Montes Bojorquez v. CBP,*
No. 3:17-cv-00780-GPC-NLS, Dkt. 29-1 ......................................................12

*Morgan v. Heckler,*
779 F.2d 544 (9th Cir. 1985) ..........................................................................20

*Morrissey v. Brewer,*
408 U.S. 471 (1972) ........................................................................................16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ..........................................................................................11

*Ms. L. v. ICE,*
302 F. Supp. 3d 1149 (S.D. Cal. 2018) .....................................................18, 19

*Mukherjee v. INS,*
793 F.2d 1006 (9th Cir. 1986) ........................................................................20

*NLRB v. Welcome-Am. Fertilizer Co.,*
443 F.2d 19 (9th Cir. 1971) ............................................................................15

*Norsworthy v. Beard,*
87 F. Supp. 3d 1164 (N.D. Cal. 2015) ............................................................23

*Nozzi v. Hous. Auth. of City of L.A.,*
806 F.3d 1178 (9th Cir. 2015), *cert. denied*, 137 S. Ct. 52 (2016) ..........16, 17

*O'Brien v. Welty,*
818 F.3d 920 (9th Cir. 2016) ..........................................................................19

*Pinard v. Clatskanie Sch. Dist. 6J,*
467 F.3d 755 (9th Cir. 2006) ..........................................................................19

*Ramirez Medina v. U.S. Dep't of Homeland Sec.,*
No. 17-cv-218, 2017 WL 5176720 (W.D. Wash. Nov. 8, 2017) .....................11

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD          iv          Counsel Listed on Pages I–II

1

**TABLE OF AUTHORITIES** *(continued)*

2

Page(s)

3
4

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of*
    *Agric.*,
    499 F.3d 1108 (9th Cir. 2007) ................................................................................11, 13

5
6

*Regents of the Univ. of Cal. v. DHS*,
    908 F.3d 476 (9th Cir. 2018) ...............................................................................................2

7
8

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. 3:17-cv-05211-WHA, Dkt. 111 ................................................................................12

9

*Republic of the Philippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988) ...........................................................................................9

10
11

*Reyes-Melendez v. INS*,
    342 F.3d 1001 (9th Cir. 2003) .........................................................................................17

12
13

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) .........................................................................................24

14

*Salgado-Diaz v. Gonzales*,
    395 F.3d 1158 (9th Cir. 2005) ...................................................................................20, 21

15
16

*Sameena Inc. v. U.S. Air Force*,
    147 F.3d 1148 (9th Cir. 1998) .........................................................................................15

17
18

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ...........................................................................................15

19

*Torres v. DHS*,
    2017 U.S. Dist. LEXIS 161406 (S.D. Cal. Sept. 29, 2017) ............................................22

20
21

*Valle del Sol, Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) .........................................................................................24

22

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) .........................................................................................................15

23
24

*Wilkie v. Robbins*,
    551 U.S. 537 (2007) .........................................................................................................19

25
26

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...............................................................................................................9

27

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) .........................................................................................................18

28

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD      v      Counsel Listed on Pages I–II

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Zolotukhin v. Gonzales*,
    417 F.3d 1073 (9th Cir. 2005) ........................................................................18

**Statutes**

5 U.S.C. § 706(2)(A) ....................................................................................11, 12

8 U.S.C. § 1182(a)(9)(B)–(C) ...........................................................................23

**Regulations**

8 C.F.R. § 236.1(c)(8) (2017) .............................................................................6

**Other Authorities**

U.S. Citizenship & Immigration Servs., *Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by Fiscal Year, Quarter, Intake and Case Status* (Feb. 28, 2019),
    https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20St
    udies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/DACA_F
    Y19_Q2_FEB_FINAL_Update.pdf ......................................................................3

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE                                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD              vi

# I.  INTRODUCTION

On May 15, 2018 this Court issued its Preliminary Injunction Order, enjoining Defendants from terminating Plaintiff Daniel Ramirez Medina's DACA status and work authorization and from calling him a gang member or threat to public safety in any further proceedings.  At that point, Mr. Ramirez believed he would be able to get back to living his life and working to support his son.  But Defendants have now attempted to do again what this Court previously enjoined them from doing—vindictively terminate Mr. Ramirez's DACA status.   On December 19, 2018, Defendants arbitrarily and capriciously denied his most recent request to renew his DACA status, requests that are otherwise approved more than 99% of the time.  In so doing, Defendants violated the letter and spirit of this Court's Preliminary Injunction Order.   Mr. Ramirez now brings this motion to remedy the government's latest unlawful actions, and once again restore Mr. Ramirez's DACA status until his claims can be litigated to conclusion.

In denying Mr. Ramirez's DACA renewal, Defendants went to great lengths to attempt to skirt this Court's Preliminary Injunction Order by making no express mention of the discredited allegations of gang membership and affiliation that they originally advanced in this action, and by not using the term "public safety."   But Defendants' denial of Mr. Ramirez's application based on his alleged "offense history" is nothing other than pretext.  That "offense history" was already known to the government when it granted Mr. Ramirez's initial DACA application *and* when it renewed his DACA in 2016.  Defendants' pretext is proven by, among other things, an internal USCIS email dated March 20, 2018, admitting that Mr. Ramirez has "no criminality" on his rap sheet and that "[t]here is NOT sufficient evidence to conclude this person is an EPS ["Egregious Public Safety"] concern." Dkt. 144-1 (Mar. 20, 2018 USCIS Email) (capitalization in original).

Despite that admission, Defendants told this Court just weeks later that the government's principal basis for attempting to revoke Mr. Ramirez's DACA was its (knowing) falsehood that he was "a gang member, [or] has associated with gang members." Dkt. 129, at 20:10–12.  The present record presents even more compelling circumstances warranting immediate relief than the record that was before this Court when it entered the Preliminary Injunction Order.  This Court should grant Mr. Ramirez's Motion and enjoin Defendants from denying, terminating, or otherwise interfering with Mr.

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                          1                          Counsel Listed on Pages I–II

Ramirez's DACA status pending trial on the merits, and should order Defendants to (again) restore his DACA and work authorization.

## II.  BACKGROUND

### A.  The establishment and rescission of DACA

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano issued a memorandum establishing the DACA program (the "2012 DACA Memorandum").  Dkt. 144-4.  Under DACA, individuals who were brought to the United States as young children and meet certain specific criteria may request deferred action for a period of two years, subject to renewal.  In exchange, applicants are required to provide the government with highly sensitive personal information, submit to a rigorous background check, and pay a considerable fee.  The 2012 DACA Memorandum explained that DACA covers "certain young people who were brought to this country as children and know only this country as home" and that the immigration laws are not "designed to remove productive young people to countries where they may not have lived or even speak the language."  *Id.* at 1–2.

Like other forms of deferred action, DACA serves the government's interests by allowing the government to prioritize its resources and exercise discretion for its own convenience and to advance sound policies.  As the government has recognized, our nation "continue[s] to benefit . . . from the contributions of those young people who have come forward and want nothing more than to contribute to our country and our shared future."  Dkt. 144-3, at 2 (Secretary Johnson Letter).[1]

### 1.  The DACA application and renewal process

Before the Rescission Memorandum, when the government was still processing new requests for deferred action under DACA, applicants were required to submit extensive documentation establishing that they meet specific criteria.  Dkt. 144-2 ("DACA FAQs"), at 9–15 (Q28–41).  They were also required to undergo a thorough background check, in which DHS reviewed each applicant's

---

[1]  On September 5, 2017, Acting Secretary of Homeland Security Elaine Duke issued a memorandum rescinding the DACA program (the "Rescission Memorandum"), announcing the government's intention to terminate the DACA program as of March 5, 2018.  However, various nationwide preliminary injunctions and orders of vacatur—including one that was upheld by the United States Court of Appeals for the Ninth Circuit, *see Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476 (9th Cir. 2018), require the government to maintain DACA for existing DACA recipients on substantially the same terms and conditions that existed prior to the Rescission Memorandum.

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE                                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD               2

1   biometric and biographic information "against a variety of databases maintained by DHS and other

2   federal government agencies." *Id.* at 7 (Q23).

3           The government uses the same criteria to evaluate renewal requests as it used to evaluate initial

4   applications for deferred action under DACA. *Id.* at 18 (Q51). Additionally, it requires that the renewal

5   applicant (1) has not departed the United States on or after August 15, 2012 without advance parole;

6   (2) has continuously resided in the United States since the applicant's most recent DACA request was

7   approved; (3) has not been "convicted of a felony, a significant misdemeanor, or three or more

8   misdemeanors," and (4) does not otherwise "pose a threat to national security or public safety." *Id.*

9   Approximately 99% of adjudicated DACA renewal applications are approved.[2]

10          For DACA purposes, a "significant misdemeanor" is an offense for which the "maximum term

11  of imprisonment authorized" is "one year or less but greater than five days" and is either "an offense

12  of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm;

13  drug distribution or trafficking; or, driving under the influence" or an offense for which the applicant

14  "was sentenced to time in custody of more than 90 days." *Id.* at 22 (Q61). Minor traffic offenses,

15  "such as driving without a license," are not considered misdemeanors for purposes of DACA. *Id.* at

16  23 (Q64). Additionally, if any information in the applicant's background check "indicates that [the

17  applicant's] presence in the United States threatens public safety or national security," the applicant is

18  ineligible for DACA renewal absent "exceptional circumstances." *Id.* at 23 (Q65). Indicators that an

19  individual poses a safety threat include "gang membership, participation in criminal activities, or

20  participation in activities that threaten the United States." *Id.*

21          **2.    Limitations on denying an individual's DACA renewal request**

22          DHS's "National Standard Operating Procedures" set forth detailed guidelines for "Notices of

23  Intent to Deny" ("NOID") a DACA renewal request, though virtually all of these guidelines are

24  redacted. *See* Dkt. 144-7 ("DACA SOP"), at 106. Specifically, before denying a DACA renewal

25

26

27          [2]    U.S. Citizenship & Immigration Servs., *Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by Fiscal Year, Quarter, Intake and Case Status* (Feb. 28, 2019),

28  https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/DACA_FY19_Q2_FEB_FINAL_Update.pdf.

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE                                          Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD          3

1  application, the government must prepare an NOID and provide the recipient with 33 days to respond.

2  *Id.* at 45 and Appendices E, J.

3  The DACA SOP also sets forth detailed guidelines for evaluating "issues of criminality, public

4  safety, and national security." *Id.* at 82–97.  It states that the USCIS Background Check Unit ("BCU")

5  DACA Team is responsible for evaluating DACA applications that present "issues of criminality." *Id.*

6  at 6.  If the BCU DACA Team determines that an application raises issues of criminality, "processing

7  of the DACA request must be categorized as either EPS or non-EPS." *Id.* at 94.  The DACA SOP

8  defines EPS—which stands for "Egregious Public Safety Concern"—as "[a]ny case where routine

9  systems and background checks indicate that an individual is under investigation for, has been arrested

10  for (without disposition), or has been convicted of, a specified crime, including but not limited to,

11  murder, rape, sexual abuse of a minor, trafficking in firearms or explosives, or other crimes listed in

12  the November 7, 2011 [USCIS policy memorandum regarding the issuance of NTAs ("USCIS NTA

13  Memorandum")]." *Id.* at 8.  If the "issues of criminality" presented in a DACA request are non-EPS,

14  the BCU DACA Team must "adjudicate Form I-821D, taking into account all issues of criminality."

15  *Id.* at 95.  If denial is warranted, "a denial for Form I-821D and Form I-765 will be issued, pending

16  supervisory review." *Id.*

**B.    Mr. Ramirez benefitted from his DACA status**

17

18  **1.    Mr. Ramirez was twice granted DACA status**

19  In late 2013, Mr. Ramirez first applied for deferred action and work authorization pursuant to

20  DACA.  Dkt. 78-15 ¶ 3.  As part of this process, Mr. Ramirez provided the government with his birth

21  certificate, school records, and information about where he lived, and attended a biometrics

22  appointment so that USCIS could take his fingerprints and photographs.  *Id.*  Mr. Ramirez was granted

23  deferred action and work authorization in 2014.  *Id.* ¶ 6.  In 2016, Mr. Ramirez reapplied for DACA,

24  and was again granted deferred action and work authorization after being once again subject to rigorous

25  vetting.  *Id.* ¶ 9.  Mr. Ramirez was also subject to additional vetting in 2015, when USCIS conducted

26  an additional screening of all DACA beneficiaries.  Dkt. 144-6, at 4 (USCIS Letter).

27

28

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD            4            Counsel Listed on Pages I–II

### 2.      Mr. Ramirez received many benefits from DACA

DACA confers a wide range of benefits beyond deferred action, many of which Mr. Ramirez received and took advantage of.   Dkt. 78-15 ¶¶ 5–7.   These benefits include work authorization, eligibility for public benefits such as Social Security, retirement, and disability, and, under Washington law, unemployment insurance, financial aid, and food assistance.   Dkt. 144 ¶¶ 26–28.   DACA also allows beneficiaries access to other important benefits, enabling recipients to open bank accounts, start businesses, purchase homes and cars, and conduct other aspects of daily life that are otherwise often unavailable to them.   *See id.* ¶ 29.   Accordingly, denial of a DACA application or renewal request implicates a broad range of valuable benefits that extend well beyond the immigration context.

### C.      The government's unlawful and arbitrary conduct

### 1.      Mr. Ramirez's unlawful arrest and detention

Because this Court is familiar with the facts underlying Mr. Ramirez's arrest and detention— *see* Dkt. 133 ("Preliminary Injunction Order")—he summarizes those facts only briefly again here.

On February 10, 2017, during an immigration raid targeting his father, a team of ICE agents questioned Mr. Ramirez and, despite his valid work permit, brought him to a holding facility in Tukwila, Washington.   Dkt. 78-15 ¶¶ 11–17; *see also* Dkt. 93, at 25 (Form I-213).   At the holding facility, the ICE agents confiscated Mr. Ramirez's work permit (which identified him as a DACA recipient), fingerprinted him, and accessed his records, which revealed that Mr. Ramirez had no criminal history, had twice been granted DACA status, and possessed valid employment authorization through May 4, 2018.   *See* Dkt. 78-15 ¶ 17.   The ICE agents ignored Mr. Ramirez's repeated protestations regarding his work authorization.   Dkt. 78-15 ¶¶ 15, 17.

The ICE agents further interrogated Mr. Ramirez, repeatedly asking him whether he was in a gang or had ever known anyone who was gang member.   Dkt. 78-15 ¶¶ 19–22.   Each time he denied any gang affiliation.   *Id.*   They also interrogated Mr. Ramirez about the "La Paz – BCS" tattoo on his forearm, which refers to his birthplace in Baja California Sur.   *Id.* ¶¶ 23–24.   Mr. Ramirez repeatedly told the ICE agents that the tattoo is not a gang tattoo, but they refused to believe him.   *Id.* ¶ 25.

Mr. Ramirez was then transferred to the Northwest Detention Center, where he remained in custody for the next 47 days.   Dkt. 78-15 ¶ 27; Dkt. 78-23.   Pursuant to an order of this Court, Mr.

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE                                                                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                          5

1    Ramirez received a bond hearing in Immigration Court on March 28, 2017.  *See* Dkt. 69, at 3.  At the

2    bond hearing, the government did not offer any evidence of Mr. Ramirez's supposed gang affiliation

3    and even conceded that Mr. Ramirez is not a danger to the community.  Dkt. 122-1, at 31.  The

4    Immigration Judge concluded that Mr. Ramirez is neither a flight risk nor a danger to the community.

5    Dkt. 144-11, at 1 ("Custody Order"); *see also* 8 C.F.R. § 236.1(c)(8) (2017).   Mr. Ramirez was

6    therefore released on bond on March 29, 2017.  Custody Order, at 1.

7           **2.      The unlawful and arbitrary revocations of Mr. Ramirez's DACA status**

8           Mr. Ramirez's 2016 grant of DACA status and work authorization was to remain in effect until

9    May 4, 2018.  Dkt. 144-8, at 1 (2016 Approval Notice).  But as soon as the government unlawfully

10   arrested and detained Mr. Ramirez on February 10, 2017, it began a sustained campaign to strip his

11   DACA and keep it from him.  Indeed, prior to this Court granting Mr. Ramirez's first motion for a

12   preliminary injunction on May 15, 2018, the government had twice unlawfully revoked Mr. Ramirez's

13   status based on false allegations of gang membership.  Dkt. 122 (First Preliminary Injunction Motion).

14          First, on February 10, 2017, USCIS issued a Notice to Appear, alleging as the basis for removal

15   that Mr. Ramirez was unlawfully present in the United States.  Dkt. 93, at 7–8 ("NTA").  One week

16   later, USCIS sent Mr. Ramirez a Notice of Action that stated that his deferred action and employment

17   authorization terminated "automatically" on February 10, 2017 and that no appeal or request to

18   reconsider could be filed.  Dkt. 144-9, at 1 ("NOA").  The NOA contradicted provisions in the DACA

19   SOP that require DHS to provide DACA recipients with an opportunity to respond before their status

20   may be terminated.  DACA SOP, at 136 and App'x I.  It was this original revocation of Mr. Ramirez's

21   DACA status and work authorization in February 2017 that precipitated the filing of the original

22   Complaint in this action, as well as the First Preliminary Injunction Motion.

23          While the First Preliminary Injunction Motion was pending, Mr. Ramirez's DACA status and

24   work authorization were reinstated and extended to May 5, 2018 pursuant to a class-wide injunction

25   entered in *Inland Empire-Immigrant Youth Collective v. Duke*, No. 17-cv-2048, 2017 WL 5900061

26   (C.D. Cal. Nov. 20, 2017).  Dkt. 61 (*Inland Empire* Order); Dkt. 144-12, at 1 (Reinstatement Notice).

27   However, on the same day the government purported to comply with the *Inland Empire* Order by

28   restoring Mr. Ramirez's DACA status, it sent him a "Notice of Intent to Terminate" his just-restored

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE                                              Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    6

status. Dkt. 144-13, at 1 ("NOIT").  The stated basis for the issuance of the NOIT was the government's

continued, false insistence that Mr. Ramirez posed a risk to public safety because he allegedly was

gang affiliated.  *Id.*

But USCIS had determined just before issuing the April 3, 2018 NOIT—as demonstrated in a

March 20, 2018 internal email—that Mr. Ramirez posed no threat:

> **Description of Current Criminal History:** No criminality on rap sheet.  Gang information obtained from EARM, ICE interview of DACA recipient.  HOWEVER, there is not sufficient evidence to conclude he is currently a known or suspected gang member.  If this was a pending case, it would have been further vetted and likely referred to a field office for a gang interview.  There is NOT sufficient evidence to conclude this person is an EPS concern.

Dkt. 144-1 (underlining added).  Moreover, the government only produced this document to Mr.

Ramirez in September 2018, after being compelled to do so by this Court.  USCIS therefore ignored

its own determination that Mr. Ramirez was not a gang member and issued an NOIT just two weeks

later on the same false basis that Mr. Ramirez was a gang member.

      **3.**      **The Court enjoins Defendants from terminating Mr. Ramirez's DACA status**

On May 15, 2018, this Court granted Mr. Ramirez's First Preliminary Injunction Motion,

ordering that "Defendants shall not terminate Plaintiff's DACA status and work authorization pending

a final decision by this Court on the merits of his claims," and enjoining Defendant USCIS from

"asserting, adopting, or relying in any proceedings on any statement or record made as of this date

purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated, or a threat to

public safety."  Dkt. 133.  In doing so, this Court found that Mr. Ramirez was likely to succeed on the

merits of the claims advanced in the Second Amended Complaint ("SAC") because the government's

continued reliance on "unfounded allegations" of gang affiliation was arbitrary, capricious, and an

abuse of discretion and also implicated Mr. Ramirez's constitutional "right to an opportunity to be

heard in a meaningful matter."  *Id.* at 16–21.  The Court went on to state that, "[m]ost troubling to the

Court, is the continued assertion that Mr. Ramirez is gang-affiliated, despite providing no evidence

specific to Mr. Ramirez to the Immigration Court in connection with his administrative proceedings,

and offering no evidence to this Court to support its assertion four months later."  *Id.* at 19.

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    7                    Counsel Listed on Pages I–II

What neither this Court nor Mr. Ramirez knew at that time was that USCIS had confirmed in its March 20, 2018 internal email that it knew "there is not sufficient evidence to conclude [Mr. Ramirez] is currently a known or suspected gang member." Dkt. 144-1. Nevertheless, at the May 1, 2018 hearing, the government affirmed to this Court that there is no "record that establishes, one way or the other, with absolute conclusiveness, about Mr. Ramirez's gang affiliations or lack thereof." Dkt. 129 at 21:4–7. But the government had just concluded that "[t]here is NOT sufficient evidence to conclude this person is an EPS concern." Dkt. 144-1.

### 4.   The government's unlawful and arbitrary denial of Mr. Ramirez's May 2018 DACA renewal request

On May 21, 2018, Mr. Ramirez timely applied to renew his DACA status and work authorization. Declaration of Nathaniel Bach ("Bach Decl.") Ex. A (Fourth Supplemental Declaration of Daniel Ramirez ("Ramirez Decl.")), ¶ 2. On September 26, 2018, the government issued a Notice of Intent to Deny that request notwithstanding the Preliminary Injunction Order. Bach Decl. Ex. B ("the NOID"). Mr. Ramirez responded on October 24, 2018 in a letter describing why a denial of his renewal request on the grounds articulated in the NOID would violate the Preliminary Injunction and the APA. *Id.* Ex. C. Nevertheless, the government formally denied Mr. Ramirez's renewal request on December 19, 2018. Dkt. 144-14 ("Decision"). The government stated in the Decision that it reviewed Mr. Ramirez's NOID response and "determined that the response does not sufficiently overcome the discretionary factors outlined the NOID," apparently because Mr. Ramirez did not submit with his response "any evidence that is not already on the record" apart from his own declaration. *Id.* at 1.

The Decision provides four inadequate reasons in support of the government's conclusion that Mr. Ramirez no longer "warrant[s] a favorable exercise of prosecutorial discretion." First, that ICE is "actively pursuing" Mr. Ramirez's removal (*id.* at 1), notwithstanding that the fact that a noncitizen has been ordered removed from the United States based on mere unlawful presence is not sufficient in and of itself for termination of DACA status, *e.g.*, 2012 DACA Memorandum, at 2; DACA FAQs, at 4 (Q7). Second, that Mr. Ramirez was reported for having sexual intercourse with his son's mother in 2013 (resulting in the conception of his son), when he was 20 years old and his son's mother was 17 years old, even though no charges were filed, the relationship was consensual, and both sets of parents

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                 8                    Counsel Listed on Pages I–II

1   approved of the relationship and the pregnancy that resulted therefrom.  Decision, at 1–2.  Third, that

2   Mr. Ramirez was cited for possession of a small quantity of marijuana in Oregon in 2014.  *Id.* at 2.

3   And fourth, that Mr. Ramirez has not fully paid off certain fines he incurred for minor traffic violations.

4   *Id.* at 2–3.  The government's reliance on this last ground is especially egregious, given that it is the

5   government's own wrongful denial of Mr. Ramirez's work authorization that has, in large measure,

6   prevented him from paying his traffic fines.  Ramirez Decl. ¶ 5.

### III.  LEGAL STANDARD

8          A court may issue a preliminary injunction to "preserv[e] the status quo"—such as Mr.

9   Ramirez's repeatedly granted DACA status—"pending a determination of the action on the merits."

10  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (quotation omitted).   A

11  preliminary injunction is warranted where the plaintiff establishes that (1) he is "likely to succeed on

12  the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the

13  balance of equities" tips in his favor, and (4) an "injunction is in the public interest."  *All. for the Wild*

14  *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat'l Res. Def. Council,*

15  *Inc.*, 555 U.S. 7, 20 (2008)).  Under the Ninth Circuit's sliding scale approach, "serious questions going

16  to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of

17  a preliminary injunction, so long as" the irreparable injury and public interest elements are satisfied.

18  *All. for the Wild Rockies*, 632 F.3d at 1135 (internal quotation marks omitted).  In other words, "[i]f

19  the balance of harm tips decidedly toward [Mr. Ramirez], then [he] need not show as robust a likelihood

20  of success on the merits as when the balance tips less decidedly."  *Republic of the Philippines v.*

21  *Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (internal quotation marks omitted).

### IV.  ARGUMENT

23         The government's denial of Mr. Ramirez's DACA renewal application violates both the letter

24  and the spirit of the Preliminary Injunction that the Court already entered, and warrants issuance of a

25  new injunction to remedy Defendants' latest unlawful salvo in their campaign against Mr. Ramirez.

26  **A.      Defendants violated the First Preliminary Injunction**

27         This Court's Preliminary Injunction Order enjoined Defendants from "terminat[ing] Plaintiff's

28  DACA status and work authorization pending a final decision by this Court on the merits of his claims,"

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                              9                              Counsel Listed on Pages I–II

1   or "asserting, adopting, or relying in any proceedings on any statement or record made as of this date

2   purporting to allege or establish that Mr. Ramirez is . . . a threat to public safety."  Dkt 133, at 23.  In

3   issuing its Decision denying Mr. Ramirez's routine DACA renewal request on pretextual public safety-

4   related reasons, Defendants have violated this Court's order.

5         The Decision states that the government is "not assert[ing], adopt[ing], or rely[ing] on any

6   statement or record made as of May 15, 2018, purporting to allege or establish" that Mr. Ramirez is "a

7   gang member, gang affiliated, or a threat to public safety" to justify denying his renewal request.  *Id.*

8   at 1.  But the government is unquestionably relying on statements and records dated prior to May 15,

9   2018 that it views as relevant to whether Mr. Ramirez is a threat to public safety.  Indeed, three of the

10  four justifications described in the Decision attempt to portray Mr. Ramirez as a public safety risk.

11  And the Decision cites the California Penal Code, the criminal U.S. Code, and references five traffic

12  safety-related violations in support of its stated conclusion that he "do[es] not merit deferred action

13  under the DACA policy."  Because the substantive bases cited in the Decision are fundamentally public

14  safety-related, and were part of the record that existed long before May 15, 2018, the Decision violates

15  the Preliminary Injunction Order.

16  **B.      Mr. Ramirez Is Entitled to a Second Preliminary Injunction**

17        In addition to the government's violation of the Preliminary Injunction Order, its unlawful

18  denial of Mr. Ramirez's DACA renewal supports issuance of a second preliminary injunction because

19  its actions violated the APA in numerous ways.  Each of the preliminary injunction factors weighs in

20  favor of granting the additional relief requested herein.

21        **1.      Mr. Ramirez is likely to succeed on the merits of his claims**

22        Turning to the traditional preliminary injunction factors—the same factors that warranted the

23  first Preliminary Injunction Order—Mr. Ramirez is likely to establish that the government's denial of

24  his DACA renewal violated the APA in several ways.  Specifically, the government's conduct was: (1)

25  arbitrary, capricious, and an abuse of discretion, TAC ¶¶ 91–101; (2) contrary to its own internal

26  operating procedures and therefore in violation of the *Accardi* doctrine, *id.* ¶¶ 97, 100; (3) in violation

27  of Mr. Ramirez's rights under the Due Process Clause, *id.* ¶¶ 102–115; and (4) in violation of Mr.

28  Ramirez's rights under the First Amendment; *id.* ¶¶ 116–118.  Mr. Ramirez is also likely to establish

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE                                              Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    10

that the government should be equitably estopped from terminating his DACA status and work authorization.  *Id.* ¶¶ 119–126.

> a.   **The denial of Mr. Ramirez's May 2018 DACA renewal request was arbitrary and capricious**

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). To ensure that agency actions are reasonable and lawful, a court must conduct a "thorough, probing, in-depth review" of the agency's reasoning and a "searching and careful" inquiry into the factual underpinnings of its decision.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971).  A court "shall" set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Butte Envtl. Council v. U.S. Army Corps of Eng'rs*, 620 F.3d 936, 945 (9th Cir. 2010).

Agency action is "arbitrary and capricious" if the agency "[1] relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Contrary to the government's assertion in this case "that it is allowed to withdraw DACA at any time for no reason at all," *Ramirez Medina v. U.S. Dep't of Homeland Sec.*, No. 17-cv-218, 2017 WL 5176720, at \*9 (W.D. Wash. Nov. 8, 2017), the APA requires the government to "exercise its discretion in a reasoned manner" and make discretionary decisions "based on non-arbitrary, 'relevant factors,'" *Judulang v. Holder*, 565 U.S. 42, 53, 55 (2011).  Indeed, the Supreme Court emphasized that, even where agencies exercise discretion, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking."  *Id.* at 53.  In such circumstances, courts "must assess, among other matters, 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  *Id.* (citation and internal punctuation omitted).

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    11                    Counsel Listed on Pages I–II

1   That task "involves examining the reasons for agency decisions—or, as the case may be, the absence

2   of such reasons." *Id.* (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (noting

3   "the requirement that an agency provide reasoned explanation for its action")).

4        The Supreme Court's decision in *Judulang* is especially instructive.   There, the Court

5   considered a Board of Immigration Appeals ("BIA") rule governing eligibility for suspension of

6   deportation. 565 U.S. at 46–47.  The Court made clear that, although the relief was ultimately within

7   the agency's discretion, "the BIA's approach must be tied, even if loosely, to the purposes of the

8   immigration laws or the appropriate operation of the immigration system." *Id.* at 55.  The Court

9   emphasized that "[a] method for disfavoring deportable aliens . . . that neither focuses on nor relates to

10  an alien's fitness to remain in the country—is arbitrary and capricious." *Id.*  Ultimately, the Court

11  invalidated the BIA rule because it was based on "a matter irrelevant to the alien's fitness to reside in

12  this country," and concluded that the BIA therefore "has failed to exercise its discretion in a reasoned

13  manner." *Id.*

14       Here, the government's denial of Mr. Ramirez's request to renew his DACA status—requests

15  that are otherwise approved 99% of the time—was arbitrary, capricious, and unlawful for multiple

16  reasons.[3]  *See* 5 U.S.C. § 706(2)(A).

17           **(i)   Defendants' reliance on unlawful presence was arbitrary and**
                   **capricious**

18

19       The Decision cites as one justification for the denial of Mr. Ramirez's renewal request that an

20  "Immigration Judge ordered [Mr. Ramirez] removed on January 17, 2018," and that "ICE considers

21  [Mr. Ramirez] an enforcement priority and continues to actively pursue [Mr. Ramirez's] removal."

22  Decision, at 1.  This is the same rationale that was cited in the NTA.  NTA, at 1.

23       Mr. Ramirez was ordered removed on the ground that he is unlawfully present in the United

24  States.  *See* Dkt. 124-1 (Jan. 17, 2018 Tr. of Oral Decision of I.J.), at 1.  But lack of lawful immigration

---

25  [3]   Other courts have held that the government is violating its own procedures in revoking DACA.  *See Regents of*

26  *Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211-WHA, Dkt. 111, Mot. For Prelim. Inj. (N.D. Cal. Nov.
    1, 2017) (and related cases); *Coyotl*, 261 F. Supp. 3d at 1343 (enjoining decision to terminate Plaintiff's DACA status and
    noting that government agencies "failed to present any evidence that they complied with their own administrative

27  processes and procedures with regard to the termination of Plaintiff's DACA status"); *Montes Bojorquez v. CBP*, No.
    3:17-cv-00780-GPC-NLS, Dkt. 29-1, Mot. for Prelim. Inj. at 22 (S.D. Cal. July 17, 2017) (alleging that DHS unlawfully

28  expelled plaintiff from United States and then "use[d] their own wrongful conduct as a predicate" to revoke his DACA
    status).

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD            12                    Counsel Listed on Pages I–II

status is a *predicate* to DACA eligibility and common among every DACA recipient.  Moreover, DACA is now and always has been available to individuals subject to orders of removal.  *See* DACA FAQs, at 4 (Q7) ("All individuals who believe they meet the guidelines, including those in removal proceedings, [or] with a final removal order . . . may affirmatively request consideration of DACA from USCIS . . . .").  Therefore, Mr. Ramirez's unlawful presence, and the order of removal based on that ground, "does not provide a reasoned basis" for terminating his DACA.  *Inland Empire*, 2017 WL 5900061, at *6 (internal quotation marks omitted); *see id.* at *7 ("[G]iven that *all* DACA recipients are necessarily removable due to their unauthorized presence, '[t]he agency's reliance on an NTA citing [Plaintiff's] presence without admission simply fails to explain, much less justify, the agency's decision to reverse course and terminate his DACA.'" (citation omitted)): *cf. Gonzalez Torres v. U.S. Dep't of Homeland Sec.* (*Gonzalez Torres I*), No. 17-cv-1840, 2017 WL 4340385, at *6 (S.D. Cal. Sept. 29, 2017).  For this reason alone, Mr. Ramirez is likely to succeed on the merits of his APA claim.

### (ii)   Defendants' remaining justifications are not supported by the record

The remaining three bases for the Decision are also insufficient, because they cannot be reconciled with the evidence before DHS.  Agency action is arbitrary and capricious if the contemporaneous reasons underlying the decision "run[] counter to the evidence before the agency." *Ranchers Cattlemen*, 499 F.3d at 1115 (internal quotation marks omitted).  In March 2018, a member of the BCU DACA Team summarized Mr. Ramirez's "criminal history" as follows: "[n]o criminality on rap sheet."  This clear concession—made just two months before Mr. Ramirez timely submitted his request to renew his DACA status and work authorization—cannot be squared with the conclusion presented in the Decision that Mr. Ramirez's "offense history" justifies denying his renewal request. Decision at 3.  Mr. Ramirez's supposed "offense history" consists of minor, non-violent infractions, none of which the government views as disqualifying for purposes of DACA renewal.  *See* DACA FAQs, at 23 (Q64) (minor traffic offenses, "such as driving without a license," are not considered misdemeanors for purposes of DACA).

The conclusion implicit in the reasoning presented in the Decision—that Mr. Ramirez poses a risk to public safety—is also inconsistent with numerous prior conclusions reached by the government.

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                 13                 Counsel Listed on Pages I–II

1   Indeed, it flies in the face of the determination made by a member of the BCU DACA Team in March

2   2018, approximately two months before Mr. Ramirez submitted his renewal request, that Mr. Ramirez

3   has "[n]o criminality on [his] rap sheet." Dkt. 144-1.  The government has also confirmed on *three*

4   *prior separate occasions* that Mr. Ramirez does not pose a threat to public safety—first, in 2014, when

5   his initial DACA application was approved; then in 2015, when USCIS conducted an additional

6   screening of all DACA beneficiaries; and again in 2016, when he reapplied for DACA.  Dkt. 78-15

7   ¶¶ 6, 9; Dkt. 144-6, at 4.  This finding was also confirmed by the government's lawyer on March 28,

8   2017, when he stated in immigration court that the government had no evidence that Mr. Ramirez was

9   a threat to public safety.  Dkt 122-1, at 31.  Two different immigration judges have reached the same

10  conclusion.  Dkt. 144-11, at 1; 124-1, at 14.

11          Moreover, even if this supposed "offense history" could justify denying Mr. Ramirez's renewal

12  request, the government has offered no explanation for why it reversed course, after previously

13  reviewing the offense history and determining that he was eligible and merited the discretionary

14  benefit.  Indeed, the government did not cite these bases until September 2018 when it issued the NOID

15  stating its intent to terminate Mr. Ramirez's renewal request, even though the government expressly

16  stated in the NOID and the Decision that it was made aware of the facts described therein during Mr.

17  Ramirez's "removal proceedings," which occurred in January 2018.  NOID, at 1–2; Decision, at 1–2.

18  If there were valid bases on which to terminate or deny Mr. Ramirez's DACA, there were numerous

19  other opportunities when the government should have cited those bases, including the April 2018 NOIT

20  or at the May 1, 2018 hearing.  The government cannot, consistent with the APA, concoct a shifting

21  story as to why Mr. Ramirez no longer warrants favorable consideration under DACA.

22          The government's conclusion—*i.e.*, that Mr. Ramirez's "offense history" warrants denying his

23  renewal request—runs counter to history and to the evidence before it, and therefore violates the APA.

24  *See, e.g.*, *Abdur-Rahman v. Napolitano*, 814 F. Supp. 2d 1098, 1110 (W.D. Wash. 2011) (revocation

25  of approved petition to support noncitizen's permanent resident status was "arbitrary and capricious"

26  where "agency failed to articulate a rational explanation for its decision").

27

28

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    14                    Counsel Listed on Pages I–II

### b.   Defendants violated the APA by failing to follow their own internal procedures

Defendants also acted unlawfully—violating the *Accardi* doctrine—because they failed to follow their own internal procedures when denying Mr. Ramirez's renewal request. *See Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). "Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures." *Id.* In the Ninth Circuit, the *Accardi* doctrine "extends beyond formal regulations," to include "internal operating procedures," "[h]andbook[s]," "policy statement[s]," "Order[s]," "Standards," "Directive[s]," "Weekly Bulletin[s]," and unpromulgated rules documenting "usual practice." *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (internal quotation marks omitted; citing cases).[4]  As discussed above, DACA operates under strict guidelines, and the determinations at issue here are nondiscretionary. *Texas v. United States*, 809 F.3d 134, 172–73 (5th Cir. 2015); *Coyotl*, 261 F. Supp. 3d at 1340.

The government violated the *Accardi* doctrine when it denied Mr. Ramirez's renewal request in December 2018. A DACA request that presents "issues of criminality" must be reviewed and adjudicated by the BCU DACA Team. DACA SOP, at 33, 95–97. As noted, the Decision concludes that Mr. Ramirez no longer warrants favorable consideration under DACA based on his alleged criminal or "offense" history. Decision, at 3. This conclusion violated the internal guidelines governing the processing of DACA applications for three reasons.

First, it contravened the conclusion reached by the BCU DACA Team in March 2018 regarding Mr. Ramirez's lack of criminal history. The internal operating procedures do not provide for a process by which determinations of the BCU DACA Team with respect to an applicant's criminal history may

---

[4]   Indeed, *Accardi* itself was about the exercise of discretion in immigration removal proceedings. *Accardi*, 347 U.S. at 261. And courts have applied *Accardi* and its principles in a wide variety of administrative and civil enforcement contexts. *See, e.g.*, *INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though the agency's discretion is unfettered at the outset, if it announces and follows-by rule or by settled course of adjudication-a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion' within the meaning of the [APA] . . . ."); *McDonald v. Gonzales*, 400 F.3d 684, 686 & n.5 (9th Cir. 2005) (noting that "INS is obligated to follow its own policy" when investigating potential immigration violations); *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) (decision to debar government contractors); *NLRB v. Welcome-Am. Fertilizer Co.*, 443 F.2d 19, 20 (9th Cir. 1971) (NLRB enforcement action); *see also Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959) (termination of employment for security reasons); *cf. Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1340 (N.D. Ga. 2017).

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                           15                           Counsel Listed on Pages I–II

be overridden.[5]  *See* DACA SOP, at 33 ("All DACA requestors with . . . criminality concerns will be processed by the BCU DACA Team . . . .").  Second, there is no evidence whatsoever in the administrative record that the BCU DACA Team actually adjudicated Mr. Ramirez's May 2018 renewal request—as was required here—much less that it reached a conclusion contrary to its March 2018 determination that Mr. Ramirez had "[n]o criminality on his rap sheet." Dkt 144-1.  Third, there is no evidence in the administrative record that supervisory review was obtained prior to denying Mr. Ramirez's renewal request, even though supervisory review is required in all cases presenting issues of criminality that are non-EPS.  *See* DACA SOP, at 95 (in non-EPS cases, "[i]f an approval is not warranted, a denial . . . will be issued, pending supervisory review").  The Decision is signed by "Loren K. Miller" and states that USCIS has "consulted with ICE" in connection with Mr. Ramirez's DACA renewal request.  Decision, at 3–4.  But it does not specify who adjudicated Mr. Ramirez's renewal request, or whether a supervisor reviewed and approved of the Decision.  These failures violated DHS's internal guidelines, and, therefore, the *Accardi* doctrine.

### c.   Defendants violated the APA by disregarding Mr. Ramirez's Due Process rights

Defendants also violated the APA by depriving Mr. Ramirez of constitutionally protected liberty and property interests—including important public benefits and the ability to legally work in the United States—without due process of law.  The Due Process Clause of the Fifth Amendment "protect[s] every person within the nation's borders from deprivation of life, liberty or property without due process of law.  Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."  *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (quoting *Mathews v. Diaz*, 426 U.S. 67, 77 (1976)) (internal quotation marks omitted).

"[T]he first question in any case in which a violation of procedural due process is alleged is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest."  *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1190–91 (9th Cir. 2015), *cert. denied*, 137 S. Ct. 52 (2016).  The liberty interests protected by the Due Process Clause include the ability to work, raise a family, and "form the other enduring attachments of normal life."  *Morrissey v. Brewer*,

---

[5]   Although the internal operating procedures do provide for supervisory review under certain circumstances, for the reasons explained below, there is no evidence that Defendants obtained supervisory review prior to issuing the Decision.

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    16                    Counsel Listed on Pages I–II

408 U.S. 471, 482 (1972).  And the property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'"  *Nozzi*, 806 F.3d at 1191 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972)).  An individual possesses a protected property if he or she has a reasonable expectation of entitlement to that interest.  *Id.*

Here, it is undisputed that Mr. Ramirez enjoys significant liberty and property interests in his DACA status.  Indeed, this Court expressly held in the Preliminary Injunction Order that DACA recipients like Mr. Ramirez "enjoy[] significant liberty and property interests, including the right to obtain lawful employment authorization and the right to be considered lawfully present in the United States" once the "objective and non-discretionary" criteria set forth in the 2012 DACA Memorandum are satisfied.  Preliminary Injunction Order at 20 (quoting *Gonzalez Torres v. U.S. Dep't of Homeland Sec.*, No. 17-cv-1840, 2018 WL 1757668, at *9 (S.D. Cal. Apr. 12, 2018) (*Gonzalez Torres II*)); *see also* DACA FAQs (Q9) ("[I]f an individual meets the guidelines for DACA, CBP or ICE should exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended, placed into removal proceedings, or removed.").  The government determined not once—but three times—that Mr. Ramirez satisfied these criteria.  Accordingly, he has a legitimate claim of entitlement to his DACA status and the benefits that status conferred.

The denial of Mr. Ramirez's renewal request in December 2018 fails the *Mathews v. Eldridge* test, which requires the government to ensure than an individual at risk of losing a protected interest be given "the opportunity to be heard at a meaningful time and in a meaningful manner."  424 U.S. 319, 333 (1976) (internal quotation omitted).  This Court has already held that the government's now-abandoned determination that Mr. Ramirez "is in a gang or gang-affiliated, without supporting evidence," and admission that Mr. Ramirez's "DACA status will be terminated for that reason, implicates Mr. Ramirez's right to an opportunity to be heard in a 'meaningful manner.'"  Preliminary Injunction Order at 20.  In failing to give fair and impartial consideration to Mr. Ramirez's 2018 DACA renewal request, Defendants "abandon[ed] [their] role as a neutral fact-finder" and deprived Mr. Ramirez of his due process right to have his renewal request evaluated in a meaningful and impartial manner.  *Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003) (noting that a neutral arbiter is

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    17                    Counsel Listed on Pages I–II

1    "one of the most basic due process protections" (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1049

2    (9th Cir. 2001))); *see, e.g.*, *id.* at 1006–07 (holding that a noncitizen's due process rights were violated

3    during deportation proceedings because the record "indisputably demonstrate[d] that the [immigration

4    judge] was hostile towards [the noncitizen] and judged his behavior as being morally bankrupt");

5    *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005) (noting that the Due Process Clause is

6    violated if a decisionmaker "improperly prejudge[s]" a case). At the very least, the government was

7    required to provide sufficient procedural safeguards to make sure that Mr. Ramirez's renewal

8    application received fair consideration. They did the opposite.

9        Relatedly, the government violated Mr. Ramirez's substantive due process rights by repeatedly

10   reaching arbitrary determinations regarding his DACA status and work authorization. "The touchstone

11   of due process is protection of the individual against arbitrary action of the government." *Cty. of

12   Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558

13   (1974)). Substantive due process is violated by governmental conduct that is "arbitrary, or conscience

14   shocking, in a constitutional sense." *Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018). The

15   government first arbitrarily revoked Mr. Ramirez's DACA status without advance notice, and then

16   continued to rely on unsubstantiated allegations of gang membership despite being confronted with

17   evidence to the contrary and conceding that its allegations were uncorroborated. Now that the

18   government has been enjoined from expressly citing such allegations in its dealings with Mr. Ramirez,

19   it relies on different bases in the NOID and Decision, solely to punish Mr. Ramirez. It shocks the

20   conscience for the federal government to take such retaliatory action. Not only have the underlying

21   facts been known to the government for a substantial period of time, but in no other known case would

22   similar facts warrant a denial of DACA. The government is motivated by animus and spite toward Mr.

23   Ramirez, not by any legitimate purpose. *See Ms. L.*, 302 F. Supp. 3d at 1166 ("[S]ubstantive due

24   process protects against government power arbitrarily and oppressively exercised.").

25       In sum, Mr. Ramirez is likely to succeed on his claims that the government impermissibly

26   deprived him of liberty and property interests entitled to protection under the Due Process Clause, and

27   thereby violated the APA by wrongfully depriving him of his DACA status. Mr. Ramirez is also likely

28   to succeed on his substantive due process claim. *Id.* (substantive due process rights are violated by

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    18                    Counsel Listed on Pages I–II

1   government conduct that is so "egregious . . .[and] outrageous, that it may fairly be said to shock the

2   contemporary conscience." (quoting *Cty. of Sacramento*, 523 U.S. 833, 847 n.8)).

3                    **d.      Defendants violated Mr. Ramirez's First Amendment rights**

4          Even if the denial of Mr. Ramirez's renewal request did not violate the APA, "[o]therwise

5   lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged

6   in activity protected under the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016);

7   *see also Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) ("[T]he government may not retaliate for

8   exercising First Amendment speech rights."). A First Amendment retaliation claim requires a plaintiff

9   to show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions

10  would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3)

11  the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien*, 818

12  F.3d at 932 (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) and holding

13  that complaint stated a plausible First Amendment retaliation claim).

14         Defendants' denial of Mr. Ramirez's request to renew his DACA status and work authorization

15  violates the First Amendment's prohibition against retaliation for protected speech. First, Mr. Ramirez

16  has engaged in constitutionally protected speech in connection with this case by, among other things,

17  filing his complaint and then the First Preliminary Injunction Motion. *Alpha Energy Savers, Inc. v.*

18  *Hansen*, 381 F.3d 917, 927 (9th Cir. 2004) ("Litigation seeking to expose . . . wrongful governmental

19  activity is, by its very nature, a matter of public concern" that is protected by the First Amendment);

20  *see also id.* at 926 ("[P]roceedings before a judicial . . . body constitute a matter of public concern if

21  they bring to light potential or actual discrimination, corruption, or other wrongful conduct by

22  government agencies or officials."). Second, approximately seven months after Mr. Ramirez filed the

23  First Preliminary Injunction Motion and four months after this Court granted that motion, the

24  government informed Mr. Ramirez that it intended to deny his most recent renewal request. Because

25  the Preliminary Injunction Order explicitly prohibits the government from terminating Mr. Ramirez's

26  DACA, the government appears to have viewed the otherwise-routine DACA renewal process as its

27  first opportunity to once again try to revoke Mr. Ramirez's status. This timing, when viewed in light

28  of Defendants' history of mistreating Mr. Ramirez and considering the fact that virtually all DACA

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    19                    Counsel Listed on Pages I–II

renewal requests are granted, supports an inference of a retaliation. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").  Indeed, it is hard to imagine a different rationale for the government's unconscionable treatment of Mr. Ramirez.

### e. Equitable estoppel precludes Defendants from denying Mr. Ramirez's renewal request

Finally, Mr. Ramirez is likely to establish that Defendants should be estopped from denying his DACA renewal because the government has engaged in "affirmative misconduct." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir. 2005) ("The government in immigration cases may be subject to equitable estoppel if it has engaged in affirmative misconduct.").  Specifically, equitable estoppel applies when the government "made a knowing false representation or concealment of material facts to a party ignorant of the facts, with the intention that the other party rely on it, where the other party actually and detrimentally relies on it" and its "wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Mukherjee v. INS*, 793 F.2d 1006, 1008–09 (9th Cir. 1986) (quoting *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)).

Each of these criteria are satisfied.  First, the government made numerous false representations to this Court and to the immigration judges who presided over Mr. Ramirez's removal proceedings about his supposed gang affiliation.  *See* Preliminary Injunction Order at 19 ("Most troubling to the Court, is the continued assertion that Mr. Ramirez is gang-affiliated, despite providing no evidence specific to Mr. Ramirez to the Immigration Court in connection with his administrative proceedings, and offering no evidence to this Court to support its assertions four months later.").  The government, moreover, concealed its intent to rely on the bases cited in the NOID and the Decision by principally relying on the false allegations of gang membership in the NOIT it transmitted to Mr. Ramirez in April 2018 even though the facts underlying the NOID and the Decision had been known to the government for months if not years.

Second, Mr. Ramirez has, on numerous occasions, relied to his detriment on the government's prior focus on gang affiliation as the principal basis for its position with respect to his DACA status. He did so when he submitted evidence during his removal proceedings that the government now

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                20                Counsel Listed on Pages I–II

contends warrants denying his renewal request.[6]  He also did so in the briefing submitted in connection with the First Preliminary Injunction Motion.  Had Mr. Ramirez known that the government viewed his past minor infractions as disqualifying under DACA, he could have sought preliminary relief in this Court.  He also could have tried to pay down the outstanding balances on his traffic tickets.  But Defendants intentionally kept Mr. Ramirez in the dark as to their plan to shift their focus from gang affiliation to the information learned during Mr. Ramirez's removal proceedings.  Indeed, the government reiterated its singular focus on the allegations of gang affiliation as late as the May 1, 2018 hearing on the First Preliminary Injunction Motion:

> THE COURT: Let me ask you this: Is the plaintiff correct that by filing the notice to terminate, that you intend to once again rely on the allegations that Mr. Ramirez is a gang member, has associated with gang members, and therefore needs to have that DACA status terminated?
>
> MR. ROBINS: Essentially, yes, Your Honor.

Dkt. 130-1, at 25 (Transcript of May 1, 2018 Hearing).

Mr. Ramirez planned his future based on the government's representations in this regard, including by submitting his DACA renewal application in good faith and paying the renewal fee.  The injustice to Mr. Ramirez arising out of Defendants' misconduct plainly outweighs any possible harm to the public interest that restoration of his DACA status and work authorization would cause.  Mr. Ramirez has lived in the United States since he was ten years old, has gone to school and worked here, and is the father of a United States citizen for whom he wishes to provide, but the government's retaliatory campaign and false representations have hampered his ability to do so.  *See Johnson v. Williford*, 682 F.2d 868, 871 (9th Cir. 1985) (the government's "deliberate" but mistaken release of a federal prisoner on parole did not "seriously threaten the public interest" in light of the prisoner's "subsequent successful reintegration into the community").  For all of these reasons, Mr. Ramirez is likely to succeed on the merits of his claims.

---

[6]   At a minimum, Defendants should be estopped from relying on the facts they learned at Mr. Ramirez's removal proceedings because those proceedings were "set in motion" by the government's knowing misrepresentations about Mr. Ramirez's gang affiliation.  *Salgado-Diaz*, 395 F.3d at 1165 (equitable estoppel barred the government from relying on "events its own misconduct set in motion").

2.      **Mr. Ramirez has suffered and continues to suffer irreparable harm**

It is undisputed—and this Court has already recognized—that the denial of Mr. Ramirez's DACA status causes him irreparable harm, weighing heavily in favor of provisional relief.   This irreparable harm arises out of the government's violations of the APA and Mr. Ramirez's rights under the United States Constitution, as well as the terms of the Preliminary Injunction.   As this Court recognized in the Preliminary Injunction Order:

> The Ninth Circuit has held that "loss of opportunity to pursue [one's] chosen profession" constitutes irreparable harm. *Enyart v. National Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood."). Moreover, the Ninth Circuit has specifically found irreparable harm in a similar case involving DACA recipients. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding irreparable harm where professional opportunities are limited). Furthermore, Mr. Ramirez has demonstrated that his earnings are used to support his family, Dkt. #35-1 at ¶ ¶ 8, 10 and 29, which also suggests irreparable harm. *See Torres v. DHS*, 2017 U.S. Dist. LEXIS 161406 at *19 (S.D. Cal. Sept. 29, 2017) ("The potential harm caused by Defendants' conduct includes the loss of employment, a core benefit under DACA. The deprivation of employment impacts Plaintiff's ability to financially provide for himself and his family.").

Preliminary Injunction Order at 21.

The government's recent denial of Mr. Ramirez's renewal request has caused Mr. Ramirez further irreparable harm in terms of his financial livelihood.   Because he lacks authorization to work in the United States, he remains unable to earn an income.   This has greatly interfered with his ability to provide for himself and his family, and made it all but impossible to pay off the traffic fines that the government now claims justify denying his DACA.   Ramirez Decl. ¶ 5.

The denial of Mr. Ramirez's renewal request has harmed him irreparably in several other ways. For example, as discussed above, the government's arbitrary denial of Mr. Ramirez's renewal request violated his First Amendment and Fifth Amendment due process rights.   *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Melendres v. Arpaio*,  695 F. 3d 990, 1002 (9th Cir. 2012)).   As with the unlawfully detained immigrants in *Hernandez* and *Melendres*, "it follows inexorably from [the] conclusion that the government's [action is] likely unconstitutional" that Mr. Ramirez "ha[s] also carried [his] burden as to irreparable harm."   *Hernandez*, 872 F.3d at 995.

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    22                    Counsel Listed on Pages I–II

Additionally, Mr. Ramirez is currently accruing time for unlawful presence, which may affect his ability to pursue legal presence or status in the United States through other avenues in the future. *See* DACA FAQs, at 19 (Q52); 8 U.S.C. § 1182(a)(9)(B)–(C).  Mr. Ramirez is also being denied access to DACA's many public benefits, such as paying into Social Security, retirement, and disability accounts, and the ability to take advantage of unemployment insurance, financial aid, and food assistance.  *See* TAC ¶ 28.  And should he not recover the benefits that DACA status affords, he will again suffer additional harm by separation from family, as he did when he was wrongfully detained. These practical injuries are continuing irreparable harms that justify injunctive relief.  *See Ariz. Dream Act Coal.*, 757 F.3d at 1068; *Inland Empire*, 2017 WL 5900061, at *9–10; *Gonzalez Torres*, 2017 WL 4340385, at *6.  Mr. Ramirez is, moreover, suffering emotional and psychological injury caused by Defendants' conduct.  Ramirez Decl. ¶ 4.  These injuries constitute irreparable harm warranting provisional relief.  *See, e.g.*, *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 710 (9th Cir. 1988); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015).

### 3. The balance of equities and public interest weigh heavily in favor of provisional relief

The final two elements of the preliminary injunction test—the balance of the equities and the public interest—merge when the government is a party.  *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).  Here, these factors weigh overwhelmingly in favor of provisional relief.  *See Inland Empire*, 2017 WL 5900061, at *10. Indeed, this Court has previously held that these factors support the entry of a preliminary injunction:

> The Court acknowledges that there is a strong interest to be found in the effective and efficient enforcement of the nation's immigration laws, as Defendants assert in this case. Dkt. #123 at 12.  However, the Court should not conclude that this interest outweighs the ongoing harm that Plaintiff is experiencing as a result of losing his DACA and EAD, especially when he has received DACA benefits twice, there is no demonstrable evidence that he is of particular risk, and there are several nationwide injunctions preventing the wind down of DACA.
>
> Furthermore, public interest exists in ensuring that the government complies with its obligations under the law and follows its own procedures.  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

Preliminary Injunction Order, at 22.

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                                23                          Counsel Listed on Pages I–II

1
2
3
4
5
6
7
8
9
10
11

This reasoning applies with even greater force to the present record.  Indeed, the government's failure to follow the law in denying Mr. Ramirez's renewal request violates not only the APA and Mr. Ramirez's constitutional rights, but also the terms of the Preliminary Injunction.  *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) ("[Government] cannot suffer harm from an injunction that merely ends an unlawful practice."); *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law, especially when there are no adequate remedies available." (quoting *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013))).  There is also still "no demonstrable evidence" in the record that Mr. Ramirez "is of particular risk."  Indeed, the only additional evidence in the record that bears on this question is the BCU DACA Team email that confirms there is "[n]o criminality on [Mr. Ramirez's] rap sheet."   Dkt. 144-1.

12
13

Accordingly, the balance of the equities and the public interest factors tip even more heavily in favor of provisional relief than they did on the prior record.

14

## V.  CONCLUSION

15
16
17

For the reasons set forth above, Mr. Ramirez respectfully requests that the Court grant the Motion and thereby order the government to restore his DACA status and work authorization pending a decision on the merits of his claims.

18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                 24                          Counsel Listed on Pages I–II

1

2   DATED:  June 7, 2019
            Seattle, Washington

3

4                           Respectfully submitted,

5                           /s/ Theodore J. Boutrous Jr.
                            GIBSON, DUNN & CRUTCHER LLP
6                           THEODORE J. BOUTROUS JR. (CA SBN 132099), *pro hac vice*
                            ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
7                           KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
                            NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*

8                           /s/ Mark D. Rosenbaum
9                           PUBLIC COUNSEL
                            MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
                            JUDY LONDON (CA SBN 149431), *pro hac vice*
10                          KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*

11                          /s/ Luis Cortes Romero
12                          IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
                            LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*

13                          Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION,
OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    25                    Counsel Listed on Pages I–II

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document should automatically be served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Theodore J. Boutrous, Jr.*

Gibson, Dunn & Crutcher LLP

MOTION FOR SECOND PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    26                    Counsel Listed on Pages I–II

The Honorable Ricardo S. Martinez
Chief United States District Judge

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9
10
11

CASE NO. 2:17-CV-00218-RSM-JPD

12

Daniel Ramirez Medina,

13

                    Plaintiff,

14

          v.

15

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

16
17

                    Defendants.

18

**DECLARATION OF NATHANIEL L. BACH
IN SUPPORT OF PLAINTIFF'S MOTION
FOR SECOND PRELIMINARY
INJUNCTION, OR, IN THE ALTERNATIVE,
TO COMPEL COMPLIANCE WITH
PRELIMINARY INJUNCTION ORDER**

19
20
21
22
23
24
25
26
27
28

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

DECLARATION OF N. BACH
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1   LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
       llitman@law.uci.edu
2   University of California, Irvine School of Law
    *Affiliation for identification purposes only*
3   401 East Peltason Drive, Educ 1095
    Irvine, CA 92697
4   Telephone: (949) 824-7722

5

6   LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
       larry@tribelaw.com
    Harvard Law School
7   *Affiliation for identification purposes only*
    1575 Massachusetts Avenue
8   Cambridge, MA 02138
    Telephone: (617) 495-1767

9

10  ELIZABETH HAWKINS (SBN 43187)
       ehawkins@hawkinsimmigration.com
11  Hawkins Law Group
    17544 Midvale Avenue, Suite 301
12  Shoreline, WA 98133
    Telephone: (206) 728-4220
13  Facsimile: (206) 973-5326

14

15  IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
    LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
       lcortes@ia-lc.com
16  19309 68th Avenue South, Suite R-102
    Kent, WA 98032
17  Telephone: (253) 872-4730
    Facsimile: (253) 237-1591

18

19  NORTHWEST IMMIGRANT RIGHTS PROJECT
    MATT ADAMS (SBN 28287)
20     matt@nwirp.org
    615 Second Ave., Suite 400
21  Seattle, WA 98104
    Telephone:  (206) 957-8611

22

23

24

25

26

27

28

I, Nathaniel L. Bach, declare as follows:

1. I am an attorney admitted to practice law *pro hac vice* before this Court.  I am an associate at the law firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys responsible for the representation of Daniel Ramirez Medina ("Mr. Ramirez") in the above-captioned action. I submit this declaration in support of Mr. Ramirez's Motion for Second Preliminary Injunction, or, in the Alternative, to Compel Compliance with Preliminary Injunction Order. The following facts are within my personal knowledge and, if called and sworn as a witness, I would testify competently to these facts.

2. Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Fourth Supplemental Declaration of Daniel Ramirez Medina, dated May 25, 2019.

3. Attached hereto as <u>Exhibit B</u> is a true and correct copy of the Notice of Intent to Deny dated September 26, 2018.

4. Attached hereto as <u>Exhibit C</u> is a true and correct copy of Mr. Ramirez's October 24, 2018 response to the Notice of Intent to Deny.

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct, and that I executed this Declaration on June 7, 2019, in Los Angeles, California.

/s/         *Nathaniel L. Bach*         
Nathaniel L. Bach

# Exhibit A

**FOURTH SUPPLEMENTAL DECLARATION OF DANIEL RAMIREZ MEDINA**

1. I, Daniel Ramirez Medina, make this declaration based on my own personal knowledge, and if called as a witness, I could and would testify to the following matters:

2. I submitted a request to renew my DACA status and work authorization on May 21, 2018. I did so after this Court issued its Preliminary Injunction Order on May 15, 2018, with the belief and expectation that my renewal would be granted as it had been previously.

3. I was very relieved that the Court issued the Preliminary Injunction Order, and with it, I believed I would be able to get back to living my life and lawfully working to support my son.

4. When the government denied my renewal request, in December 2018, I was shocked and upset. I have since been suffering daily stress and anxiety that I will not be able to provide for my family and my son. I live in fear that I will be removed from the United States and taken away from my relatives and my son. My fear, stress, and anxiety keeps me from enjoying my life to the fullest. My DACA status and work authorization allowed me to live my life free from these fears and stresses.

5. Without my work authorization, I have been unable to gain lawful employment. That has made it very difficult for me to financially and emotionally support my son. While I have made payments on my outstanding traffic fines in the past, the denial of my DACA renewal and work authorization has made it impossible to pay off the unpaid balances on those traffic fines.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 25, 2019, in Lindsay, California.



Daniel Ramirez Medina

# Exhibit B

September 26, 2018

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
P.O. Box 82521
Lincoln, NE 68501-2521



**U.S. Citizenship
and Immigration
Services**



IOE0904689397



LUIS ALBERTO CORTES ROMERO
IMMIGRANT ADVOCACY LITIGATIO
19309 68TH AVE SOUTH STE R102
KENT, WA 98032
USA


RE: DANIEL RAMIREZ MEDINA
I-821D, Deferred Action for Childhood Arrivals

**<u>NOTICE OF INTENT TO DENY</u>**

Your most recent period of deferred action under Deferred Action for Childhood Arrivals (DACA) expired on May 15, 2018.[1]  You filed the instant request to renew your deferred action under DACA on May 21, 2018.  USCIS has reviewed your request to renew your deferred action under DACA.

This is to notify you that USCIS intends to deny your request for renewal of deferred action under DACA, because USCIS does not find that you warrant a favorable exercise of prosecutorial discretion under the totality of the circumstances.  The reasons are described below.  USCIS is not asserting, adopting or relying on any statement or record made as of May 15, 2018, purporting to allege or establish that you are a gang member, gang affiliated, or a threat to public safety in issuing you this notice of intent to deny your DACA renewal request.

ICE issued you a Notice to Appear (NTA) on February 29, 2016, to pursue removal proceedings against you under the provisions of INA § 240.  An Immigration Judge ordered you removed on January 17, 2018, and denied your application for asylum and for withholding of removal.  You filed an appeal with the Board of Immigration Appeals, which remains pending as of today.  ICE considers you an enforcement priority and continues to actively pursue your removal in immigration court in accordance with the procedures in INA § 240.

During your removal proceedings, it was learned that you were reported for having  sex with an underage female in California, in violation of California Penal Code (CPC) § 261.5.  ICE provided USCIS a police report dated December 27, 2013, which lists the charge– "261.5(B) PC – Unlawful Sexual Intercourse – Less than 3 years difference, misdemeanor." The police report indicates that you had unlawful sexual intercourse with an individual who was 17 years old at the time of the report.  You were 20 years old at the time of the report.  The report indicates that the unlawful act resulted in a pregnancy and birth of a child which was reported by Child Welfare Services.  The police report notes that you were in a relationship with the mother and residing with her at the time the incident report was created.  The record indicates that the district attorney declined to file charges.  However, the police report provides details that indicate you had unlawful sexual intercourse in violation of CPC § 261.5. While you were not convicted of this crime, USCIS finds that the information is a negative factor in the consideration of whether to renew your deferred action under DACA.

During removal proceedings, you also admitted that you had acquired marijuana from a "friend" who had a medical marijuana authorization card. The October 21, 2014 incident report indicates that a car you were driving was stopped by police after the officer observed your car "cross the painted white fog lines twice." You denied having drugs in your vehicle when asked by police whether there was any marijuana inside the vehicle. In your letter of explanation, as required by a plea of no contest, you wrote to an Oregon court that you keep marijuana with you at all times. You admitted violating Oregon law by possessing marijuana in your car while driving from Washington State to California, for which you received a citation. Possessing and transporting marijuana across state lines is a chargeable federal offense under 21 U.S. Code § 844. The citation indicates you were also cited for no valid operator's license and driving uninsured. The court records indicate that you were convicted for driving uninsured and required to pay a fine of $512.

Additionally, ICE provided information which indicates you have received nearly $5,000 in fines for various motor vehicle related traffic offenses. Your traffic related offenses and fines are summarized below as of August 28, 2018:

**CALIFORNIA:**

- 04/28/2016 - Case#6013: Traffic citations for Driving without a License (DWOL), license plate light violation, no vehicle insurance, and speeding (warning only 35mph in 25mph zone). Cited by Lindsay Police Department. Disposition: fine.

     *Currently in collections and subject pays $50.00 on the 11th of each month.

     *Total fine: $2170.00. Paid: $900.00. Outstanding balance: $1270.00 as of 08/21/2018.

- 05/06/2015 - Case# AD35341: Speeding (80mph+ in 65mph zone) and failure to provide insurance. Cited by CHP. Disposition: fine.

     *Total fine: $1071.00 fine. PAID.

- 09/13/2012 - Citation#54980: Unlicensed Driver. No record of disposition.

**OREGON:**

- 10/21/2014 - Case#15474: Driving without a License (DWOL) and no insurance. Cited by Myrtle Creek Police Department. Disposition: DWOL-dismissed. No insurance- convicted. Disposition: fine.

     *Total fine: $512.00. Paid $250.00. Outstanding balance: $262.00 as of 08/22/2018.

- 10/21/2014 - Case#15475: Unlawful possession of less than 1oz of Marijuana. Cited by Myrtle Creek Police Department. Disposition: convicted with fine.

     *Total fine: $1088.00. Paid $0. Outstanding balance: $1088.00 as of 08/22/2018.

Total incurred fines: $4841.00

USCIS notes that you possessed Employment Authorization Documents (EAD) in connection with your prior grants of DACA. Your prior EADs were valid from December 6, 2013 to December 5, 2015 and from May 5, 2016 to May 4, 2018; May 15, 2018 (for your court ordered reinstated DACA). Based on your receipt of EADs from USCIS, you could have applied for and obtained a state driver's license in compliance with California and Washington state requirements for operating a



an opportunity to and a prior history of offenses for driving without a license.

Additionally, USCIS notes that you had employment authorization but have failed to pay the total amount due for your traffic offenses.

The above information was unknown to USCIS at the time of your previous DACA grant on May 5, 2016. Your entire offense history can be considered along with other factors to determine whether, under the totality of the circumstances, you warrant an exercise of prosecutorial discretion to defer action.

In connection with consideration of your DACA renewal request, USCIS consulted with Immigration and Customs Enforcement (ICE) and ICE informed USCIS that you are considered an enforcement priority.

Deferred action is not a form of protection from removal; rather it is merely an acknowledgement that the Department of Homeland Security (DHS) does not, at the present time, intend to pursue removal.

The Form I-821D instructions provide that "USCIS will evaluate the totality of the circumstances in reaching a decision on deferred action."

After consulting with ICE and considering the totality of the circumstances in your case, USCIS finds that you do not warrant a favorable exercise of prosecutorial discretion to defer removal action against you.

Accordingly, USCIS intends to deny your request for consideration of a renewal of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your renewal request for consideration of deferred action for childhood arrivals.



[1] USCIS previously issued you a Notice of Intent to Terminate (NOIT) your DACA on April 3, 2018, and you responded to that NOIT on May 7, 2018. USCIS did not take any final action to terminate your DACA prior to the expiration of your DACA and related employment authorization on May 15, 2018.

Sincerely,

Loren K. Miller
Director
Officer: 0996

**Department of Homeland Security**
P.O. Box 82521
Lincoln, NE 68501-2521



**U.S. Citizenship
and Immigration
Services**

RETURN SERVICE
REQUESTED

FIRST CLASS

UNITED STATES POSTAGE

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

PITNEY BOWES

02 1R
0000012625        $ 00.47⁰
                  SEP 21 2018
MAILED FROM ZIP CODE 68508

98032$2112 C026

PLACE
STAMP
HERE

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
CITIZENSHIP & IMMIGRATION SERVICES
NEBRASKA SERVICE CENTER
P O  BOX 82521
LINCOLN, NE 68501-2521

# Exhibit C



IMMIGRANT ADVOCACY
& LITIGATION CENTER

Immigrant Advocacy &
Litigation Center, PLLC

Alma David
Partner
(Lic. in California)

Luis Cortes Romero
Partner
(Lic. in California)

19309 68ᵗʰth Ave S.
Suite R102,
Kent, WA 98032

Phone: (253) 872-4730

Fax: (253) 237-1591

October 24, 2018

Department of Homeland Security
U.S. Citizenship and Immigration Services
Nebraska Service Center
P.O. Box 82521
Lincoln, Nebraska 68501-2521

Department of Homeland Security
U.S. Citizenship and Immigration Services
Nebraska Service Center
850 "S" Street
Lincoln, NE 68501

> **Re:**   **I-821D, Deferred Action Notice of Intent to Deny**
> Applicant:    Daniel Ramirez Medina
> A Number:    ▮▮▮▮▮▮▮▮
> Receipt No.:   IOE0904689397

Dear Director Miller;

On February 29, 2016, Mr. Daniel Ramirez Medina ("Mr. Ramirez") filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals ("DACA"). USCIS approved Mr. Ramirez's Form I-821D on May 5, 2016, deferring his removal from the United States. On February 10, 2017, Mr. Ramirez was taken into ICE custody collateral to his father's arrest by ICE, despite the fact that Mr. Ramirez had DACA. The sole reason for his detention, as set forth by ICE in his I-213, was the false claim of his alleged gang membership. Based on this unsupported allegation of gang affiliation, ICE then terminated Mr. Ramirez's DACA on February 14, 2017, by issuing Form I-862, Notice to Appear, placing Mr. Ramirez in removal proceedings. *See* I-213.

At his merits hearing before the Seattle Immigration Court on January 17, 2018, Mr. Ramirez testified in support of his applications for cancellation of removal for certain nonpermanent residents, asylum, withholding of removal, and relief under Article 3 of the United Nations Convention Against Torture. Part of his testimony addressed DHS's allegations of gang membership. At the end of the hearing, the IJ—while finding that Mr. Ramirez was not a gang member or affiliated with one—denied all forms of relief in an oral decision, which Mr. Ramirez appealed and which appeal remains pending with the Board of Immigration Appeals.

Pursuant to a court order issued by the U.S. District Court for the Central District of California on February 26, 2018, and modified on March 20, 2018, in

**1 of 30**

*Inland Empire-Immigrant Youth Collective et al. v. Nielsen et al.*, No. 5:17-cv-2048 (C.D. Cal.), USCIS reopened Mr. Ramirez's Form I-821D and Form I-765, withdrew the termination, reinstated his DACA and employment authorization from May 5, 2016, and extended his DACA and employment authorization to May 15, 2018.

On April 3, 2018, USCIS issued a Notice of Intent to Terminate ("NOIT") of Mr. Ramirez's form I-821D. The NOIT indicated that USCIS "consulted" with ICE to determine that Mr. Ramirez's grant of DACA was inconsistent with DHS's enforcement priorities due to ICE's allegations of Mr. Ramirez's "gang affiliation" and the fact that he was in removal proceedings. *See* NOIT.

Mr. Ramirez submitted a timely response to the NOIT. USCIS did not take any action thereafter on Mr. Ramirez's DACA, which was to expire on May 15, 2018. However, the same day that Mr. Ramirez's DACA was to expire, the U.S. District Court for the Western District of Washington enjoined USCIS from terminating Mr. Ramirez's DACA and work authorization pending a final decision on the merits of his claims. *Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018) ("Preliminary Injunction"). The Preliminary Injunction also enjoined USCIS from asserting, adopting or relying in any proceeding on any statement made as of May 15, 2018 "purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated or a threat to public safety." *Id.* Due to the preliminary nature of the Preliminary Injunction, Mr. Ramirez subsequently filed a DACA renewal application, on May 21, 2018. USCIS thereafter issued the instant Notice of Intent to Deny ("NOID") in violation of the terms of the Preliminary Injunction.

In a complete about-face, USCIS now – after having relied upon fabricated allegations of gang affiliation to (1) terminate Mr. Ramirez's DACA by placing him in removal proceedings, resulting in him being ordered removed, and (2) advise Mr. Ramirez of its intent to terminate his DACA in its NOIT, and having been compelled to acknowledge that the original termination of Mr. Ramirez's DACA was unlawful – explicitly states in the NOID that it is *not* "asserting, adopting or relying on any statement or record made as of May 15, 2018, purporting to allege or establish that [he is] a gang member, gang affiliated, or a threat to public safety." *See* NOID.

Instead, USCIS is now relying on information obtained from Mr. Ramirez during his removal hearing, to assert that he does not warrant a favorable exercise of prosecutorial discretion. Specifically, USCIS is basing its decision to deny Mr. Ramirez's application on three factors: (1) Mr. Ramirez and his son's mother had sexual intercourse when Mr. Ramirez was 20 years old and his son's mother was 17 years old (an actual age difference of two years and nine months), resulting in the conception of Mr. Ramirez's son; (2) In a letter written to an Oregon criminal court, Mr. Ramirez admitted to keeping marijuana in his car while driving from Washington State to California; (3) Mr. Ramirez incurred nearly $5000 in fines from traffic related offenses and did not take advantage of his EAD to obtain a California and Washington driver license or to earn sufficient money to pay off his fines, despite DHS having terminated Mr. Ramirez's EAD for over a year, detained him for two months, and placed him in removal proceedings.

**2 of 30**

**Mr. Ramirez's Response to the NOID**

When ICE detained Mr. Ramirez in February 2017, it did so under the guise that Mr. Ramirez was suspected of gang membership; ICE subsequently terminated Mr. Ramirez's DACA, detained him at the Northwest Detention Center in Tacoma, Washington, and placed him in removal proceedings, in which he was charged with only one ground of removability: being unlawfully present after entering the United States without inspection or parole, under INA §212(a)(6)(A)(i). *See* NTA. ICE pursued the removal proceedings before the Immigration Court and ultimately obtained a removal order against him in January 2018.

Shortly thereafter, in February 2018, the U.S. District Court for the Central District of California, in the *Inland Empire* decision, held that the issuance of an NTA charging a DACA recipient as removable due to his or her presence in the United States without admission does not provide a reasoned basis for terminating the recipient's DACA. *Inland Empire-Immigrant Youth Collective v. Nielsen* ("*Inland Empire II*"), 2018 WL 1061408, at *17 (C.D. Cal. Feb. 26, 2018).

In other words, if the only ground for placing Mr. Ramirez in removal proceedings was his presence without admission, DHS should not have terminated his DACA, and – once placed in removal proceedings – Mr. Ramirez could have simply sought to have his proceedings administratively closed, as was common for individuals with DACA until the Attorney General's May 2018 decision in *Matter of Castro Tum*, 27 I & N Dec. 271 (A.G. 2018). *See Matter of Sosa Ventura*, 25 I. & N. Dec. 391, 396 (BIA 2010) (concluding that immigration judges may properly grant administrative closure in cases where aliens have received temporary forms of protections such as TPS); *see also Memorandum from Brian M. O'Leary*, Chief Immigration Judge, Executive Office of Immigration Review, Dep't of Justice, on Continuances and Administrative Closure (March 7, 2013), available at https://www.justice.gov/sites/default/files/eoir/legacy/2013/03/08/13-01.pdf
(encouraging immigration courts to grant administrative closure where the respondent in removal proceedings has received DACA); *Memorandum from Riah Ramlogan*, Acting Principal Legal Advisor, U.S. Immigration and Customs Enforcement on Guidance Regarding Cases Pending Before EOIR Impacted by Secretary Johnson's Memorandum entitled Policies for the Apprehension, Detention and Removal of Undocumented immigrants to OPLA Attorneys (April 6, 2015), available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/guidance_eoir_
johnson_memo.pdf ("OPLA attorneys should continue to review their cases, at the earliest opportunity, for the potential exercise of prosecutorial discretion, in light of the enforcement priorities. OPLA should generally seek administrative closure or dismissal of cases it determines are not priorities."); *see also* An Overview of Discretionary Reprieves from Removal: Deferred Action, DACA, TPS, and Others; Congressional Research Service April 10, 2018, available at https://fas.org/sgp/crs/homesec/R45158.pdf (When Immigration and Customs Enforcement (ICE, a component of DHS responsible for interior enforcement) decides to discontinue temporarily a removal proceeding against a particular alien before the Department of Justice's Executive Office of Immigration Review (EOIR)—because ICE deems the case low-priority, because the alien has obtained

**3 of 30**

or is seeking a form of discretionary relief such as DACA, or for some other reason— ICE may ask the presiding immigration judge to place the proceeding in a status called "administrative closure."...administrative closure is often granted in conjunction with other discretionary reprieves that do provide additional protections. For example, an alien whose removal case is placed in administrative closure may also have enrolled in DACA, which confers eligibility for work authorization and vitiates unlawful presence.).

Alternatively, Mr. Ramirez could have accepted an order of removal without submitting an application for relief and could have continued renewing his DACA.

Moreover, if his unlawful presence were indeed the only reason for the issuance of a Notice to Appear by ICE, placing him in removal proceedings in the first instance would have gone very much against the spirit of the Napolitano Memorandum, which continues to guide the administration of the DACA program to this day. *See Memorandum from John Kelly*, Enforcement of the Immigration Laws to Serve the National Interest 2 (Feb. 20, 2017), available at https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf; *see also Q&A: DHS Implementation of the Executive Order on Enhancing Public Safety in the Interior of the United States*, Feb. 21, 2017, available at https://www.dhs.gov/news/2017/02/21/qa-dhs-implementation-executive-order-enhancing-public-safety-interior-united-states. As the *Inland Empire* Court held, "[t]he role of ICE and CBP was not to develop or manage the program, but instead to 'immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings' as DACA was developed." *Inland Empire-Immigrant Youth Collective v. Duke* ("*Inland Empire I*"), 2017 WL 5900061, at *8 (C.D. Cal. Nov. 11, 2017).

Had USCIS decided to revoke Mr. Ramirez's DACA upon the issuance of his Notice to Appear, it would have been obligated to follow its own Standard Operating Procedures and to issue a Notice of Intent to Terminate, as concluded by the *Inland Empire* Court, which held that "unless there are criminal, national security, or public safety concerns, the DACA termination guidelines prescribe the issuance of a Notice of Intent to Terminate and require that '[t]he individual should be allowed 33 days to file a brief or statement contesting the grounds cited.'" *Inland Empire II*, 2018 WL 1061408, at *6; *see also*, *Gonzalez Torres v. U.S. Dep't of Homeland Sec.*, 2017 WL 4340385, at *3 (S.D. Cal. Sept. 29, 2017) ("[E]xcept in EPS cases, the DACA SOP requires notice and an ability to contest the [Notice of Termination] before DACA status may be terminated.").

Indeed, in April of 2018, USCIS did – once compelled by the *Inland Empire* Court's order to reinstate Mr. Ramirez's DACA – issue a NOIT, in which it listed as the reasons for prospective termination that (1) Mr. Ramirez had admitted to gang affiliation; (2) Mr. Ramirez was an enforcement priority; and (3) Mr. Ramirez was in removal proceedings and had been ordered removed. As noted *supra*, Mr. Ramirez replied to this NOIT, but no further action was taken prior to his DACA's expiry on May 15, 2018.

Moreover, as noted in Mr. Ramirez's I-213, the ICE officers that detained Mr. Ramirez were aware that he had DACA at the time. However, as noted in the I-213, it was ICE's determination that Mr. Ramirez "[did] not qualify" for prosecutorial discretion for individuals who came to the United States as children "due to gang association."

Mr. Ramirez repeatedly denied any gang affiliation, and Immigration Judge Brett Parchert made specific findings of fact that Mr. Ramirez was not a gang member or affiliated with a gang. Not only that, but in the Preliminary Injunction order, the U.S. District Court for the Western District of Washington ruled that USCIS's "continued assertion that [Mr. Ramirez] is a gang member or gang-affiliated is arbitrary and capricious and in violation of the APA." *Medina*, 313 F. Supp. 3d at 1250.

USCIS in its NOID therefore attempts to make clear that it is not relying on any allegations of gang membership to deny Mr. Ramirez's DACA application. This statement is intellectually dishonest: the *only* reason that Mr. Ramirez was placed into removal proceedings in the first instance was ICE's unsubstantiated allegation that Mr. Ramirez – despite having DACA and despite not having a criminal history – was not eligible for DACA because of his gang affiliation. This is clear from both the I-213 and from USCIS's NOIT – which lists as reasons for its decision to decline an exercise of positive discretion in his case Mr. Ramirez's gang affiliation. (The NOIT also lists as a reason the fact that Mr. Ramirez had been ordered removed – but as the DACA SOP clearly states, if a DACA applicant is in removal proceedings or has a final order of removal, this is relevant to DACA eligibility only in so far as the basis for the removal charges will be examined to determine if they raise discretionary concerns. Here, Mr. Ramirez was ordered removed because he was charged with unlawful presence – a prerequisite for DACA eligibility.)

In other words, any evidence obtained as a result of ICE placing Mr. Ramirez in removal proceedings and continuing to pursue those removal proceedings against him, is evidence that DHS was *only* able to obtain because it unlawfully relied on unsubstantiated allegations of gang membership to terminate Mr. Ramirez's DACA in February 2017 or because it unlawfully terminated Mr. Ramirez's DACA in February 2017 by issuing him a Notice to Appear, without first providing him with a Notice of Intent to Deny to which he could have responded, forcing him to apply for discretionary relief from removal. And indeed, the *only* evidence USCIS is now relying on to deny Mr. Ramirez's DACA application is evidence that ICE obtained in the context of litigating Mr. Ramirez's application for cancellation of removal.

### USCIS Is Estopped from Denying Renewal to Mr. Ramirez

USCIS should not deny Mr. Ramirez's application for DACA, because the doctrine of equitable estoppel prohibits it from acting in such bad faith. "The government in immigration cases may be subject to equitable estoppel if it has engaged in affirmative misconduct." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir. 2005), as amended (Mar. 10, 2005), opinion amended on reconsideration, No. 02-74187, 2005 WL 553046 (9th Cir. Mar. 10, 2005).

The person seeking estoppel against the government also must show that the potential injustice to him outweighs the possibility of damage to the public interest, and must establish the traditional elements for estoppel, which require a showing that (1) the party to be estopped knows the facts; (2) the party to be estopped intends that his or her conduct will be acted on; (3) the claimant must be ignorant of the true facts; (4) and the claimant must detrimentally rely on the other party's conduct. *Id.*

Mr. Ramirez can establish these traditional elements for estoppel. First, DHS in this case knew the facts: DHS knew that Mr. Ramirez had DACA, it knew that Mr. Ramirez was not affiliated with a gang, as the District Court found in its Preliminary Injunction Order: "Most troubling to the Court, is the continued assertion that Mr. Ramirez is gang-affiliated, despite providing no evidence specific to Mr. Ramirez to the Immigration Court in connection with his administrative proceedings, and offering no evidence to this Court to support its assertions four months later." *Medina*, 313 F. Supp. 3d at 1250. Moreover, the government *knew*, as reflected in a DHS email dated March 20, 2018, that Mr. Ramirez was not a gang member and posed no threat, describing his lack of criminal history as follows:

> No criminality on rap sheet. Gang information obtained from EARM, ICE interview of DACA recipient. HOWEVER, there is not sufficient evidence to conclude he is currently a known or suspected gang member. If this was a pending case, it would have been further vetted and likely referred to a field office for a gang interview. There is NOT sufficient evidence to conclude this person is an EPS concern. *See* attached email.

That remarkable concession has not chastened DHS in targeting Mr. Ramirez. DHS also presumably knew the procedures dictated by its own internal Standard Operating Procedures. Nonetheless, DHS placed Mr. Ramirez in removal proceedings, expecting exactly what happened next: Mr. Ramirez was forced to submit applications for relief and ultimately was ordered removed. The second element is therefore satisfied as well.

As to the third element, Mr. Ramirez to this day is ignorant of DHS's motivation in instituting and pursuing unlawful removal proceedings against him, and was unaware that DHS would later seek to deny him DACA status on the bases set forth in the NOID given DHS's prior singular insistence and focus on its false claim of gang affiliation. He is not ignorant of the fact that DHS has made untrue assertions about his gang affiliation or that his DACA was unlawfully terminated – but he has also been powerless to prevent DHS from moving forward with its determined efforts to have him stripped of DACA and removed from the United States.

The fourth element is also satisfied because Mr. Ramirez detrimentally relied on DHS's conduct when he participated in his removal proceedings and submitted evidence and testified honestly in response to all questions asked of him. Moreover, had DHS made clear that they would pursue Mr. Ramirez on the bases set forth in the NOID, he would have sought relief in the District Court to prevent DHS's unlawful reliance on these

pretextual bases, and could have taken additional steps to remediate issues such as outstanding fines for traffic violations by working additional hours before his EAD was terminated.

Moreover, the injustice to Mr. Ramirez outweighs any possibility of damage to the public interest. Mr. Ramirez has lived in the United States since he was ten years old. He is the father of a United States Citizen, his son, whom he helps raise. He has gone to school and been gainfully employed in this country. He was unlawfully placed in removal proceedings in early 2017 and has had to fight his case since that time.

### Denying Renewal in these Circumstances Would Result in a Grave Injustice and Would Deprive his Citizen Son of Financial and Emotional Care

The reasons USCIS cites in support of its denial of his DACA do not outweigh the gravity of the injustice Mr. Ramirez has suffered. USCIS cites the fact that Mr. Ramirez owes nearly $5000 in fines due to traffic related tickets and citations. It is puzzling as to why USCIS suddenly focuses on Mr. Ramirez's traffic infractions, when the Form I-821D explicitly excludes traffic infractions from consideration.

Nonetheless, as Mr. Ramirez has attested to, he is paying off his fines at a pace he can afford with his limited income. While USCIS appears to fault Mr. Ramirez for not having paid off his fines sooner despite having had EADs that were valid from December 6, 2013 until December 5, 2015 and from May 4, 2015 until May 5, 2017, this ignores the facts that (1) Mr. Ramirez has been making payments toward his fines to the extent his economic situation permits him to and (2) in February 2017, Mr. Ramirez was detained by ICE, and his DACA was terminated. Thus, while USCIS may have, pursuant to the *Inland Empire* Court's order, reinstated Mr. Ramirez's DACA retroactively in April 2018, this did him no good in terms of providing him employment authorization during the time his DACA was unlawfully terminated. Moreover, since May 15, 2018, he has not had any work authorization based on DACA.

USCIS claims that Mr. Ramirez, in a letter to an Oregon criminal court, admitted to carrying marijuana in his car when he traveled between Washington and California, citing it as a violation of Oregon and federal law. Mr. Ramirez received an infraction citation under Oregon law and went through the appropriate court process for this minor offense.

As its final stated reason, USCIS cynically attempts to leverage the fact that the act of sexual intercourse, which led to the conception of Mr. Ramirez's son, to whose well-being Mr. Ramirez has dedicated his life, occurred when Mr. Ramirez was older than 18 and his son's mother was younger than 18. USCIS is indeed correct in noting that Child Welfare Services alerted the Lindsay Police Department, following the birth of Mr. Ramirez's son, that Mr. Ramirez was two years and nine months older than the mother of his child at the time the child was born. *See* Police Report. The police report also notes that Mr. Ramirez and his son's mother were both interviewed by the police and both unequivocally reported being in a consensual, committed romantic and sexual

relationship; that both Mr. Ramirez's mother and his son's mother's father were aware of and approved of the relationship and the pregnancy that resulted therefrom; and that Mr. Ramirez and his son's mother were raising their son together and living together as a family. Indeed, once the police took this report, the case was closed, and no further law enforcement action was taken. As USCIS has clearly studied the record of Mr. Ramirez's removal proceedings in detail, it will note that the record confirms that Mr. Ramirez has continued to be a dedicated father to his son and that he and his family maintain a cooperative relationship with his son's mother.

Mr. Ramirez has demonstrated that the doctrine of equitable estoppel prohibits USCIS from relying on information it obtained in bad faith and unlawfully to deny Mr. Ramirez's DACA. In the alternative, Mr. Ramirez respectfully asserts that the reasons cited in the NOID are insufficient to warrant even a discretionary denial of his application for DACA. As explained above and in the attached declaration, Mr. Ramirez has been making payments toward his fines to the best of his abilities as an agricultural worker with a limited income. Mr. Ramirez also asserts that any reliance on the conception of his beloved son as a reason to deny his DACA is entirely misplaced.

### *Denial of Renewal Based on the NOID Would Violate the Preliminary Injunction, APA, and Mr. Ramirez's Due Process Rights*

Furthermore, the denial of Mr. Ramirez's renewal request on the grounds stated in the NOID would both violate the terms of the Preliminary Injunction, and would also constitute an arbitrary and capricious act in violation of the Administrative Procedure Act ("APA").

The Preliminary Injunction entered on May 15, 2018, orders the government not to "terminate [Mr. Ramirez's] DACA status and work authorization pending a final decision by [the] Court on the merits of his claims." By failing to renew Mr. Ramirez's DACA – as USCIS routinely does with more than 99% of the renewal applications it receives – USCIS *is* effectively terminating Mr. Ramirez's DACA even though his circumstances have not materially changed. Moreover, the Preliminary Injunction enjoins USCIS "from asserting, adopting, or relying in any proceedings on any statement or record made as of this date purporting to allege that Mr. Ramirez is a gang member, gang affiliated, *or a threat to public safety*." *Medina*, 313 F. Supp. 3d at 1252 (emphasis added). But contrary to USCIS's perfunctory statement in the NOID that it is not relying on such information, the agency clearly *is* relying on statements and records dated prior to May 15, 2018 that it views as relevant to whether Mr. Ramirez is a threat to public safety – the NOID cites the California Penal Code, the criminal U.S. Code, and references five traffic safety-related violations – in support of its stated conclusion that he "do[es] not warrant a favorable exercise of prosecutorial discretion." USCIS's avoidance of the phrase "public safety" in issuing this NOID does not bring it beyond the scope of the Preliminary Injunction as the substantive bases for the NOID are manifestly public safety-related. Therefore, if USCIS were to deny Mr. Ramirez's renewal application, the agency would violate the Preliminary Injunction in multiple ways.

**8 of 30**

Terminating Mr. Ramirez's DACA for the reasons stated in the NOID would also violate the APA. Indeed, the government has acted arbitrarily and capriciously in each and every interaction it has had with Mr. Ramirez since he was first detained February 2017. In concocting a shifting story as to why he no longer warrants favorable consideration under DACA, USCIS continues to act in violation of the APA. Even setting aside the government's long history of mistreating Mr. Ramirez, the denial of his renewal request based on the grounds stated in the NOID would violate the APA. As noted above, more than 99% of renewal requests are approved, including for DACA recipients who, like Mr. Ramirez, have minor criminal histories. And USCIS has also once again failed to follow its own internal Standard Operating Procedures ("SOP"). Pursuant to those procedures, the Background Check Unit ("BCU") DACA Team must follow certain enumerated steps when evaluating renewal requests that present issues of non-violent criminality. The NOID makes clear that these steps have not been followed, even though the NOID repeatedly relies on Mr. Ramirez's alleged criminal history. Indeed, there is no evidence whatsoever in the NOID that the BCU adjudicated Mr. Ramirez's renewal request, as was required.

Finally, terminating Mr. Ramirez's DACA for the reasons stated in the NOID would violate his due process rights. As the District Court for the Western District of Washington has already held, Mr. Ramirez enjoys significant liberty and property interests by virtue of his DACA status, such as the right to obtain lawful employment authorization. Stripping Mr. Ramirez of his status on the grounds stated in the NOID would deprive him of these interests without due process of law.

In support of this response to the NOID issued by USCIS, please find enclosed the following documents:

- Copy of NOID
- Copy of previously issued NOIT
- Declaration of Applicant
- Copy of redacted Notice to Appear
- Copy I-213
- Copy of redacted police report related to charge of Unlawful Sexual Intercourse
- Copy of redacted email exchange within DHS regarding Applicant's criminal history analysis.

Respectfully submitted,

Luis Cortes Romero
Attorney for Mr. Ramirez

**9 of 30**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Honorable Ricardo S. Martinez
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

Daniel Ramirez Medina,

                Plaintiff/Petitioner,

       v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

             Defendants/Respondent.

CASE NO. 2:17-CV-00218-RSM-JPD

**[PROPOSED] ORDER GRANTING
PLAINTIFF'S MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR, IN THE
ALTERNATIVE, TO COMPEL
COMPLIANCE WITH PRELIMINARY
INJUNCTION ORDER**

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR SECOND PRELIMINARY
INJUNCTION, OR, IN THE ALTERNATIVE, TO
COMPEL COMPLIANCE WITH PRELIMINARY
INJUNCTION ORDER
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1     This matter comes before the Court on Plaintiff's June 7, 2019 Motion for Second Preliminary

2 Injunction, or, in the Alternative, to Compel Compliance with Preliminary Injunction Order.  Upon

3 consideration of Plaintiff's motion and the record, IT IS ORDERED that:

4     1.  Plaintiff's motion is GRANTED; and

5     2.  Defendants are ordered to RESTORE Plaintiff Daniel Ramirez Medina's DACA status and

6         work authorization, and are enjoined from denying, terminating, or otherwise interfering with

7         Plaintiff's DACA status and work authorization pending a final decision on the merits of his

8         claims.

9

10 Dated this ___ day of _____, 2019.

11                                                    _____

12                                                    THE HONORABLE RICARDO S. MARTINEZ
                                                     CHIEF UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     [PROPOSED] ORDER GRANTING PLAINTIFF'S
       MOTION FOR SECOND PRELIMINARY
       INJUNCTION, OR, IN THE ALTERNATIVE, TO
       COMPEL COMPLIANCE WITH PRELIMINARY
       INJUNCTION ORDER
Gibson, Dunn &   Case No. 2:17-cv-00218-RSM-JPD
Crutcher LLP
                                                     1

PRESENTED BY:

/s/ *Theodore J. Boutrous, Jr.*
GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*

/s/ *Mark D. Rosenbaum*
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*

/s/ *Luis Cortes Romero*
IMMIGRANT ADVOCACY & LITIGATION CENTER, PLCC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*


*Attorneys for Plaintiff*

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR SECOND PRELIMINARY
INJUNCTION, OR, IN THE ALTERNATIVE, TO
COMPEL COMPLIANCE WITH PRELIMINARY
INJUNCTION ORDER
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

2