1
2
3
4
5
6
7
8
9
10

The Honorable Ricardo S. Martinez
Chief United States District Judge

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANIEL RAMIREZ MEDINA,

               Plaintiff,

       v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

            Defendants.

CASE NO. 2:17-CV-00218-RSM-JPD

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SECOND PRELIMINARY
INJUNCTION, OR, IN THE ALTERNATIVE,
TO COMPEL COMPLIANCE WITH
PRELIMINARY INJUNCTION ORDER,
DKT. 147**

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:  July 5, 2019

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
  Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I–II

Gibson, Dunn &
Crutcher LLP

Attorneys for Plaintiff:
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley, School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483


LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
  llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only*
401 East Peltason Drive, Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD
I

Counsel Listed on Pages I–II

LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
  larry@tribelaw.com
Harvard Law School
*Affiliation for identification purposes only
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
  ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
  lcortes@barreralegal.com
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
  matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    II

Counsel Listed on Pages I–II

# TABLE OF CONTENTS

Page

I. ARGUMENT.................................................................................................................. 1

    A.    The Court Has Jurisdiction to Grant the Requested Injunction ..................... 1

    B.    The Requested Injunction Is Prohibitory, Not Mandatory............................. 3

    C.    The Court Should Enforce the First Preliminary Injunction.......................... 4

    D.    A Second Preliminary Injunction Is Warranted ........................................... 5

        1.    Mr. Ramirez is likely to succeed on the merits ................................. 5

            a.    The denial of Mr. Ramirez's DACA renewal was arbitrary
                and capricious.................................................................... 5

            b.    The denial of Mr. Ramirez's DACA renewal violates the
                Accardi doctrine ................................................................ 8

            c.    The denial of Mr. Ramirez's DACA renewal violates due
                process................................................................................ 9

            d.    Denial of Mr. Ramirez's DACA renewal violates the First
                Amendment ...................................................................... 10

            e.    The government is equitably estopped from denying Mr.
                Ramirez's DACA renewal or otherwise seeking to strip his
                DACA ............................................................................. 10

        2.    Mr. Ramirez is suffering irreparable harm...................................... 11

        3.    Equity and the public interest favor the requested relief................................. 12

II. CONCLUSION .......................................................................................................... 12

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                                    i

Counsel Listed on Pages I–II

TABLE OF AUTHORITIES *(continued)*

Page(s)

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014).................................................................3

*Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*,
   --- F.3d ---, 2019 WL 2724564 (7th Cir. June 28, 2019) ..............................4

*Bullen v. De Bretteville*,
   239 F.2d 824 (9th Cir. 1956), *overruled by Lacey v. Maricopa Cty.*, 693 F.3d 896
   (9th Cir. 2012)..................................................................................4

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
   2003 WL 21056809 (S.D.N.Y. May 8, 2003).............................................5

*Church of Scientology of Cal. v. United States*,
   920 F.2d 1481 (9th Cir. 1990)..............................................................8

*Coyotl v. Kelly*,
   261 F. Supp. 3d 1328 (N.D. Ga. 2017) ...................................................2

*Dep't of Commerce v. New York*,
   --- S. Ct. ---, 2019 WL 2619473 (June 27, 2019)......................................5

*Ferreira v. Borja*,
   93 F.3d 671 (9th Cir. 1996).................................................................1

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017)...............................................................4

*Inland Empire–Immigrant Youth Collective v. Nielsen*,
   2018 WL 1061408 (C.D. Cal. Feb. 26, 2018)............................................2

*Inland Empire-Immigrant Youth Collective v. Duke*,
   2017 WL 5900061 (C.D. Cal. Nov. 20, 2017)............................................7

*INS v. Yang*,
   519 U.S. 26 (1996)............................................................................7

*Judulang v. Holder*,
   565 U.S. 42 (2011)............................................................................7

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    ii                    Counsel Listed on Pages I–II

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*McDonald v. Gonzales*,
  400 F.3d 684 (9th Cir. 2005).................................................................................7

*Ms. L. v. ICE*,
  302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................................................................9

*Nozzi v. Housing Auth. of L.A.*,
  806 F.3d 1178 (9th Cir. 2015)............................................................................10

*O'Brien v. Welty*,
  818 F.3d 920 (9th Cir. 2016)..............................................................................10

*Organized Village of Kake v. Dep't of Agric.*,
  795 F.3d 956 (9th Cir. 2015)................................................................................8

*Regents of Univ. of Cal. v. DHS*,
  279 F. Supp. 3d 1011 (N.D. Cal. 2018) .............................................................11

*Regents of Univ. of Cal. v. DHS*,
  908 F.3d 476 (9th Cir. 2018)................................................................................6

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) .............................................................................................2

*Reyes-Melendez v. INS*,
  342 F.3d 1001 (9th Cir. 2003)..............................................................................9

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013)............................................................................12

*S. Cal. Darts Ass'n v. S. Cal. Darts Ass'n, Inc.*,
  2012 WL 12882764 (C.D. Cal. June 22, 2012) ...................................................4

*Salgado-Diaz v. Gonzales*,
  395 F.3d 1158 (9th Cir. 2005)............................................................................11

*Stanley v. USC*,
  13 F.3d 1313 (9th Cir. 1994)................................................................................3

*Torres v. DHS*,
  2018 WL 3495830 (S.D. Cal. July 20, 2018), *appeal docketed*, No. 18-56037 (9th
  Cir.) ..................................................................................................................2, 3

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*,
  24 F.3d 56 (9th Cir. 1994)..................................................................................10

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    iii

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Wong v. INS,*
373 F.3d 952 (9th Cir. 2004)..................................................................................2

**Statutes**

5 U.S.C. § 701(a)(2) .............................................................................................2

8 U.S.C. § 1252(g) ...............................................................................................2

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    iv                    Counsel Listed on Pages I–II

# I.  ARGUMENT

The government's opposition brief provides new evidence of Defendants' irrational and vindictive campaign against Mr. Ramirez, at the same time that it rehashes the same arguments this Court has repeatedly rejected: that the Court lacks jurisdiction, that the government has unbridled discretion to deny DACA to anyone for any reason, and that the government's history of misconduct toward Mr. Ramirez should be ignored.  *See* Dkt. 148.  The Court should again reject these arguments—and grant Mr. Ramirez's Motion—for the same reasons it did before.

Indeed, the record here weighs even more heavily in favor of preliminary injunctive relief: not only has the government violated the terms of the first Preliminary Injunction, but its newly submitted evidence confirms that the government failed to comply with its own procedures and denied Mr. Ramirez's DACA renewal application for improper reasons.  *See* Dkt. 148-1 at 8–9.  Most glaringly, Defendants ask this Court to overlook their misrepresentations to this Court when they maintained at the May 1, 2018 hearing that the reason for seeking to revoke Mr. Ramirez's DACA was the (known) falsehood that he is "a gang member, [or] has associated with gang members."  Dkt. 129, at 20:10–12.  The government made this statement only weeks after their internal discussion confirming that "[t]here is NOT sufficient evidence to conclude this person is an EPS ["Egregious Public Safety"] concern."  Dkt. 144-1 (Mar. 20, 2018 USCIS Email) (capitalization in original).  Defendants cannot explain away this concession.  *See* Opp. at 11.

Mr. Ramirez respectfully requests that the Court grant his Motion.

## A.    The Court Has Jurisdiction to Grant the Requested Injunction

Defendants again claim that the Court lacks jurisdiction.  *See* Opp. at 9–12.  The Court has repeatedly rejected this argument.  *See* Order Denying Mot. to Dismiss, Dkt. 116 at 12–16; *see also* Preliminary Injunction Order ("PI Order"), Dkt. 133 at 14–15.  Nothing material has changed.[1]

As this Court has already recognized, "the jurisdiction-stripping provisions" cited by the government "are not applicable to prevent this Court from determining whether Defendants complied with their non-discretionary procedures."  Dkt. 116 at 15–16.  The Court also "has jurisdiction to

---

[1]    The Court can and should apply the law of the case doctrine to reject the government's renewed jurisdictional challenge.  *See Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996) ("[A] court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction.").

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE          Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    1

review Plaintiff's Due Process claim," Dkt. 133 at 14, as well as his First Amendment claim.  The Court's prior analyses on these issues are consistent with the holdings of the Supreme Court and many other district courts.  *See, e.g.*, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 (1999) (Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders'"); *Inland Empire–Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *15 (C.D. Cal. Feb. 26, 2018) ("USCIS's separate and independent decision to revoke DACA *on the basis of an NTA*, [] is independent of the limited category of decisions covered by § 1252(g).").

As explained in Mr. Ramirez's Motion and in the TAC, Mr. Ramirez is not challenging the government's exercise of "discretion"; rather, he is challenging the government's failure to comply with its nondiscretionary obligations to: (1) not act arbitrarily and capriciously (or vindictively) under the APA; (2) follow the applicable regulations (including the original DACA Memorandum and the DACA SOP and FAQs); and (3) comply with the First and Fifth amendments of the U.S. Constitution.  *See* TAC ¶¶ 91–118; Mot. at 10–20.  Claims based on these nondiscretionary obligations are outside the scope of 8 U.S.C. § 1252(g) or 5 U.S.C. § 701(a)(2).  *See Wong v. INS*, 373 F.3d 952, 965 (9th Cir. 2004); *Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1340 (N.D. Ga. 2017).

As it has before, the government tries to defeat jurisdiction by mischaracterizing Mr. Ramirez's claims, focusing myopically on the government's latest action and what *it says* are the reasons for that action.  *See* Opp. at 10–12 & n.3.  But the government's whole course of conduct— over which the Court has already determined it has jurisdiction—is at issue in this case, because the government's past misconduct against Mr. Ramirez explains its most recent improper action.  Indeed, the Court has *already recognized* that "jurisdiction as to any new claims likely turns on factual issues that are interconnected to Mr. Ramirez's previous claims."  Dkt. 143 at 5–6.  That was exactly right, and the Court retains jurisdiction over *all* of Mr. Ramirez's claims.

The government's years-long, vindictive campaign against Mr. Ramirez—including its admitted and proven false statements that he is a gang member—as well as the nature of Mr. Ramirez's claims and requested relief, distinguishes this case from *Torres v. DHS*, 2018 WL 3495830 (S.D. Cal. July 20, 2018), *appeal docketed*, No. 18-56037 (9th Cir.).  In *Torres*, there was "no

indication that [the government] engaged in any conscience-shocking or clearly arbitrary and unreasonable conduct." *Id.* at *2. Here, by contrast, the Court has already recognized the likely merit of Mr. Ramirez's due process claim, *see* Dkt. 133 at 19–21; Dkt. 116 at 17–18, and the claims presented in the TAC are based on the government's same course of improper conduct, *see* TAC ¶¶ 114–15; Mot. at 17–18. The Court has jurisdiction to remedy such unlawful action.

## B.       The Requested Injunction Is Prohibitory, Not Mandatory

Mr. Ramirez requests a preliminary injunction *prohibiting* the government from taking away the DACA status this Court granted in the PI Order, which protected his DACA "pending a final decision by this Court on the merits." Dkt. 133 at 23. The government's efforts to portray the requested injunction as "mandatory" fall flat. In evaluating a preliminary injunction, "the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis omitted) (relevant status quo was before policy was changed in response to DACA, not denial of individual applications). The "legally relevant relationship" here is after the Court issued the PI Order barring the government from terminating Mr. Ramirez's DACA until this case is finally resolved. *See* Dkt. 133 at 23. Notably, the PI Order was issued the *same day* that Mr. Ramirez's DACA would have otherwise expired: the Court explained that "enjoining the termination of Plaintiff's DACA status and work authorization pending a final decision on the merits" was proper in part because "Plaintiff's DACA status expires today, May 15, 2018." Dkt. 133 at 23 n.7. Yet the government now contends that the Court's PI Order was moot the very day it was issued. *See* Opp. 10.

Notwithstanding that Mr. Ramirez need not have reapplied for DACA given the terms of the PI Order, Mr. Ramirez did so—and paid the applicable fee—in a good-faith effort to comply with the program's terms (just as he always has), and in an abundance of caution given the provisional nature of the Preliminary Injunction. *See* Fourth Supp. Decl. of Daniel Ramirez Medina ("Ramirez Decl.") ¶ 2; Bach Decl. Ex. C at 2. The government's reliance on *Stanley v. USC*, 13 F.3d 1313 (9th Cir. 1994), does not help it; among other differences, the injunction requested there would have granted the plaintiff "$28,000 a year *more* than she received when her employment contract expired." *Id.* at 1320 (emphasis added). And apart from the obvious facial differences between the cases (DACA

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD

confers the ability to *seek* employment), Ms. Stanley did not already have a preliminary injunction in place protecting her status.  The fact that DACA status is periodically subject to renewal should not mean that Mr. Ramirez must come back to this Court every time the government concocts a slightly different pretext for taking his status away, particularly when Mr. Ramirez's prior renewal was approved and such renewals are granted 99% of the time.  *See* Mot. at 3 n.2 (citing USCIS statistics).

Even if the heightened standard for a mandatory injunction did apply here—and it does not—Mr. Ramirez would easily satisfy that standard, considering the strength of his claims, the severe irreparable harm that he faces, and the absence of any prejudice to the government from such preliminary relief.  *See Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (affirming injunction requiring new bond hearings for certain detained noncitizens).

## C.     The Court Should Enforce the First Preliminary Injunction

The Court can and should grant the requested relief by reaffirming what it said in the first PI Order: Mr. Ramirez has DACA status, and the government cannot terminate that status pending a final decision by this Court.  *See* Dkt. 133 at 23.  Obtaining the PI Order should have meant that Mr. Ramirez would not have to return to the Court to confirm again what that Order provided.

Strangely, the government argues that Mr. Ramirez should have brought a motion to compel the government's compliance with the first Preliminary Injunction.  Opp. at 10 n.3.  But that is exactly what Mr. Ramirez did: the instant motion is, in the alternative, a motion "To Compel Compliance With Preliminary Injunction Order," and Mr. Ramirez argues in detail about how the government violated the PI Order.  Mot. at 9–10.  The government seems to be arguing that the filing of the TAC rendered the PI Order moot, but that is not the law.  *See Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, --- F.3d ---, 2019 WL 2724564, at *2–3 (7th Cir. June 28, 2019) (filing amended complaint did not moot existing preliminary injunction).  Nor is that issue even discussed in the overruled case the government cites.  *See Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956), *overruled by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).[2]  In fact, it is common for preliminary injunctions to remain in place following the filing of an amended

---

[2]     The government's other cited case, *S. Cal. Darts Ass'n v. S. Cal. Darts Ass'n, Inc.*, 2012 WL 12882764 (C.D. Cal. June 22, 2012), held a defendant in contempt for violating a preliminary injunction.

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                                    4                          Counsel Listed on Pages I–II

pleading.  *See, e.g.*, *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 WL 21056809, at *5, *15 (S.D.N.Y. May 8, 2003) (granting preliminary injunction and leave to amend complaint).

**D.      A Second Preliminary Injunction Is Warranted**

    **1.      Mr. Ramirez is likely to succeed on the merits**

        **a.      The denial of Mr. Ramirez's DACA renewal was arbitrary and capricious**

Mr. Ramirez has shown that the government's motivation for denying his DACA renewal application was retaliation and improper animus towards him.  *See* Mot. 1, 18.  The history of this case paints a clear picture: The government first improperly arrested Mr. Ramirez, manufactured a false story that he was a gang member (or "gang-affiliated"), and then doubled-down on that story in its statements to this Court, even as it knew it had no evidence in support of that theory, that multiple immigration courts found it to be untrue, and that USCIS itself had rejected it (as shown in the March 20, 2018 email).  *See* Dkt. 133 at 19.  After that effort failed, the government changed strategies and denied Mr. Ramirez's routine renewal request for new, unsupported reasons.

The government's claim that "Mr. Ramirez offers no evidence of animus or spite," Opp. at 14, is wrong.  The record confirms that animus was the government's true motivation, and the reasons provided merely pretext.  *See* Mot. at 1.  Indeed, the Supreme Court recently found pretext where "the evidence [told] a story that [did] not match the explanation the Secretary gave for his decision."  *Dep't of Commerce v. New York*, --- S. Ct. ---, 2019 WL 2619473, at *16 (June 27, 2019).  As the Court explained, "[t]he reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public.  Accepting contrived reasons would defeat the purpose of the enterprise."  *Id.*  This rule is even more critical here, where profound liberty interests are at stake.

In addition to the evidence discussed in the Motion, the pretextual nature of the government's supposed reasons for denying Mr. Ramirez's renewal are confirmed by the lone exhibit the government submitted with its Opposition.  *See* Dkt. 148-1.  Specifically, a November 15, 2018 email from Jennifer Jenkins, a member of the BCU DACA Team—the team tasked with adjudicating DACA requests presenting "issues of criminality"—summarizes Ms. Jenkins's reaction to Mr. Ramirez's response to the NOID in the following terms:

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    5

Counsel Listed on Pages I–II

Gibson, Dunn &
Crutcher LLP

- "There was an investigation into the requestor's sexual relationship with his girlfriend who was 17 years old at the time.  She was more than 2 years, but less than 3 years younger than the requestor.  However, after investigation, the state of California did not see fit to press any charges and the case was ultimately not prosecuted.  Review of the investigation revealed that parents of the girlfriend were okay with the relationship, and *nothing in the record would lead me, the adjudicator, to believe this individual is a sexual predator*."

- "To my knowledge, *traffic fines have never been evaluated as a discretionary factor which has led to the discretionary denial of a DACA request*.  The DACA requestor may or may not be paying the fines, but it should be noted that it would have been difficult to continue paying down traffic fines while in ICE custody, and after his work authorization was terminated."

- "The requestor's marijuana possession charge would not have been considered to be a conviction for a misdemeanor as there is no possible jail time, and *I, as the adjudicating officer, would not have considered it a public safety concern*."

Dkt. 148-1 at 9 (emphases added).  In other words, although large portions of the emails are redacted, the unredacted portions (and the response Ms. Jenkins received from Alexander King) suggest that Ms. Jenkins recommended *approving* Mr. Ramirez's renewal request.  *See id.*[3]

But Ms. Jenkins' determination was apparently overruled for the unexplained reason that "ICE has confirmed Ramirez Medina is an enforcement priority."  *Id.* at 8.  While the government relies on ICE's treatment of Mr. Ramirez as an "enforcement priority," *see* Opp. 2, 15, 24, nothing in the record reflects *why* ICE thinks Mr. Ramirez is an "enforcement priority," other than the fact he is in removal proceedings.  *See* 148-1 at 8.  Nor does the government explain why Mr. Ramirez is an enforcement priority—it simply reiterates ICE's conclusory assertion.  *Compare* Opp. 15–16, *with Regents of Univ. of Cal. v. DHS*, 908 F.3d 476, 510 (9th Cir. 2018) ("[E]nforcement priorities [include] threats to national security, rather than blameless and economically productive young people with clean criminal records.").  The government's silence speaks volumes: the inescapable inference is that ICE only considers Mr. Ramirez a priority—and requested that USCIS deny his otherwise approvable DACA application on that basis—out of retaliatory animus towards Mr. Ramirez, because Mr. Ramirez has challenged ICE's actions by bringing this lawsuit.

In any event, whether or not the government's stated reasons are pretextual—and on this record they are—they are arbitrary and capricious under the APA.  It is well-established that "the

---

[3]   Mr. Ramirez respectfully requests that the Court order the government to provide unredacted copies to the Court and to Mr. Ramirez under seal.  The government has not offered meaningful justifications for these redactions.

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    6

Gibson, Dunn &
Crutcher LLP

issuance of an NTA charging presence without admission does not provide a reasoned basis for terminating DACA." *Inland Empire-Immigrant Youth Collective v. Duke*, 2017 WL 5900061, at *6 (C.D. Cal. Nov. 20, 2017) (quotation marks omitted).  The 2012 DACA Memorandum provided that individuals in removal proceedings or with final orders of removal nonetheless qualified for DACA, and the government's departure from that policy here is arbitrary and capricious.  *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("an irrational departure from [an agency's general] policy (as opposed to an avowed alteration of it) could constitute action that must be overturned" under the APA); *McDonald v. Gonzales*, 400 F.3d 684, 687 (9th Cir. 2005) ("Had [INS policy] instructions been followed in [this] case, it is hard to imagine that [the petitioner] would today be facing removal.").  The APA safeguards Mr. Ramirez's DACA from "the happenstance of an immigration official's charging decision," *Judulang v. Holder*, 565 U.S. 42, 57 (2011)—especially charging decisions grounded on debunked allegations and motivated by retaliation.

Apparently recognizing that it cannot rely on Mr. Ramirez's removal proceedings, the government equivocates by arguing that "Mr. Ramirez cannot support his claim that the NTA was relied on at all," because even though "USCIS mentioned the NTA," the agency "also described the totality of the circumstances analysis that it conducted and the list of criminal conduct it considered."  Opp. 16.  But as described above, the BCU DACA Team officer found the "list of criminal conduct" *insufficient* to deny Mr. Ramirez's renewal request; it was *only* ICE's unexplained and unexplainable "enforcement priority" assertion that led to denying the application.  Moreover, the government admitted to the immigration court that there is no evidence Mr. Ramirez poses a public safety risk.  *See* Dkt. 122-1 at 31; *see also* Dkt. 124-1 at 14; Dkt. 144-11 at 1.

Apart from Mr. Ramirez's unlawful presence, the government points to Mr. Ramirez's "offense history."  *See* Decision, Dkt. 144-14 at 3.  But, again, this is the same "offense history" that the BCU DACA Team apparently concluded would *not* justify denying his application—indeed, "traffic fines have *never . . .* led to the discretionary denial of a DACA request."  *See* Dkt. 148-1 at 9 (emphasis added).  And the government has yet to explain what about this "offense history" justifies denying Mr. Ramirez's DACA.  *See* Decision at 2–3; Opp. at 16–17.  In any event, such denial would run counter to the government's ordinary treatment of the conduct in his "offense history," *see, e.g.,*

1   Dkt. 148-1 at 9; DACA FAQs, at 23 (Q64), its admission to the immigration court that Mr. Ramirez

2   is not a public safety risk, *see* Dkt. 122-1 at 31, USCIS's March 20, 2018 email conceding Mr.

3   Ramirez is not an EPS concern, Dkt. 144-1, and would violate the PI Order, *see* Dkt. 133 at 23.  Such

4   unexplained and inexplicable reasoning—especially when the conclusion runs counter to the

5   agency's internal deliberations and prior conclusions—is arbitrary and capricious under the APA.

6   *See Organized Village of Kake v. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015).

7        In short, the government's stated reasons for denying Mr. Ramirez's DACA application were

8   pretextual, and the government's actual reason fails on its own terms.

9                    **b.**        **The denial of Mr. Ramirez's DACA renewal violates the *Accardi* doctrine**

10       The government does not dispute that it was required to follow the DACA SOP when

11   processing Mr. Ramirez's renewal request.  *See* Opp. at 15; *see also Church of Scientology of Cal. v.*

12   *United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) ("Pursuant to the *Accardi* doctrine, an

13   administrative agency is required to adhere to its own internal operating procedures.").  Instead, the

14   government wrongly characterizes Mr. Ramirez's *Accardi* argument as "speculative" because "the

15   administrative record supporting USCIS's latest adjudication is not yet on file with the Court."  Opp.

16   at 11.  But the only evidence the government submitted with its Opposition confirms that it failed to

17   comply with its internal operating procedures.

18       The DACA SOP provides that "[a] DACA request posing issues of criminality that are . . .

19   non-[Egregious Public Safety] . . . is handled by the BCU DACA Team as follows:  [1] *The BCU*

20   *DACA Team will adjudicate* Form I-821D, taking into account all issues of criminality.  [2] If the

21   case is approvable, *the BCU DACA Team will approve* the I-821D for DACA and adjudicate the I-

22   765 for employment authorization."  DACA SOP at 95 (emphases added).  The emails submitted by

23   the government, however, reveal that the BCU DACA Team (*i.e.*, Ms. Jenkins) did not "adjudicate"

24   Mr. Ramirez's renewal application; rather, Ms. Jenkins deferred to the conclusions of Alexander

25   King, the Branch Chief of the Waivers and Temporary Services Branch ("WATS")—a group which

26   is not mentioned in the relevant section of the DACA SOP—and an individual named Brandon

27   Robinson.  *See* Dkt. 148-1 at 4, 6–9; DACA SOP at 95.  Moreover, it appears from the unredacted

28   portions of the exhibit submitted that Ms. Jenkins at the BCU DACA Team considered Mr.

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                                    8

Counsel Listed on Pages I–II

1  Ramirez's application to be "approvable," yet the BCU DACA Team did not "approve the I-821D for

2  DACA," as the DACA SOP would require in such circumstances.

3      The government's failure to follow its own procedures here was no mere technicality; the

4  DACA SOP's requirements are meant to ensure that impartial adjudicators with proper expertise rule

5  on applications presenting sensitive issues.  The government threw those procedures out the window,

6  instead deferring to ICE's unexplained assertion that Mr. Ramirez was an "enforcement priority."

7                  **c.      The denial of Mr. Ramirez's DACA renewal violates due process**

8      The government also violated Mr. Ramirez's rights under the Due Process Clause of the Fifth

9  Amendment, in two important ways.  First, by giving determinative weight to ICE's unsupported

10  "enforcement priority" assertion, the government failed to give Mr. Ramirez's DACA renewal

11  application the fair and impartial consideration required by procedural due process.  *See Reyes-*

12  *Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003) (holding that "the IJ failed to act as a neutral

13  fact-finder," which was "a due process violation[,] not an exercise of discretion").

14      Second, the government's retaliatory actions toward Mr. Ramirez shock the conscience and

15  therefore violate substantive due process.  *See Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal.

16  2018) (allegations of ICE agents separating families shocked the conscience and stated substantive

17  due process claim).  The government arbitrarily revoked Mr. Ramirez's DACA and confined him for

18  weeks, falsely portraying him as a gang member although it knew there was no evidence to support

19  these accusations.  *See* Dkt. 144-1 (Mar. 20, 2018 USCIS email).  After Mr. Ramirez brought this

20  litigation and secured the Court's protection, the government concocted a shifting story and denied

21  his routine renewal application for reasons that were considered insufficient by its own team

22  dedicated to such issues.  This retaliatory conduct "is brutal, offensive, and fails to comport with

23  traditional notions of fair play and decency"—in other words, it violates substantive due process.  *Ms.*

24  *L.*, 302 F. Supp. 3d at 1166.

25      The government argues that it need not comply with due process at all when it considers

26  DACA renewal applications, because the ultimate relief requested is discretionary. Opp. at 12–13.

27  This Court has already rejected the government's argument "that there can be no violation of

28  Plaintiff's Due Process rights because no process is actually due," Dkt. 116 at 17, and has held that

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE       Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    9

the government's improper reliance on discredited allegations "implicates Plaintiff's right to an opportunity to be heard in a 'meaningful manner,'" Dkt. 133 at 20. An individual who has been (repeatedly) granted DACA and organized his life around its protection does not completely lose those protected interests simply because the program periodically requires him to renew his status. *See, e.g.*, *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 64 (9th Cir. 1994) ("protectable property interest in retaining" existing licenses); *see also Nozzi v. Housing Auth. of L.A.*, 806 F.3d 1178, 1193 (9th Cir. 2015) (protected property interest in "stable and renewable Section 8 benefits").

### d. Denial of Mr. Ramirez's DACA renewal violates the First Amendment

The government only addresses Mr. Ramirez's First Amendment claim in a footnote. *See* Opp. at 14 n.6. Rather than engage with the law Mr. Ramirez cited on this issue, *see* Mot. at 19–20; TAC ¶¶ 116–17, the government falls back on its arguments that it can do what it wants because Mr. Ramirez "did not have a grant of DACA at the time his renewal request was denied," and that Mr. Ramirez "offers no evidence." Opp. at 14 n.6. But the government cites no authority for these arguments. In any event, under this Court's PI Order, Mr. Ramirez *did* have DACA when his renewal request was denied, if it is even relevant whether Mr. Ramirez had DACA at the specific time the government retaliated against him. And as explained in the Motion, the evidence supporting Mr. Ramirez's First Amendment claim is the government's history of misconduct in this case, including its repeated reliance on unsupported allegations, its shifting stories, and its denial of Mr. Ramirez's routine application on grounds that would not otherwise support a denial. *See* Mot. at 19–20. And the government's evidence submitted along with its opposition brief serves only to underscore the truth of these claims. *See* § D.1.a., *supra*. Mr. Ramirez is likely to succeed on his First Amendment claim. *See O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).

### e. The government is equitably estopped from denying Mr. Ramirez's DACA renewal or otherwise seeking to strip his DACA

Finally, Mr. Ramirez is likely to succeed on his equitable estoppel claim. For more than a year, the government affirmatively asserted in this Court and in the immigration court the false allegation that Mr. Ramirez was "a gang member." *See, e.g.*, Dkt. 129 at 20:10–12. The government's arbitrary termination and prolonged wrongful denial of Mr. Ramirez's DACA status

1    and work authorization prevented Mr. Ramirez from obtaining employment and paying off his

2    fines—which, perversely, was one of the grounds stated in the denial decision that Ms. Jenkins at the

3    BCU DACA Team considered insufficient.  *See* Ramirez Decl. ¶ 5; Decision at 3; Dkt. 148-1 at 9.[4]

4    ### 2.    Mr. Ramirez is suffering irreparable harm

5    This Court—and others—have recognized the many ways that the wrongful denial of DACA

6    status wreaks irreparable harm on deserving DACA recipients.  Dkt. 133 at 21; *see also, e.g.*, *Regents*

7    *of Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011, 1046 (N.D. Cal. 2018) ("Plaintiffs have clearly

8    demonstrated that they are likely to suffer serious irreparable harm absent an injunction. . . . DACA

9    gave them a more tolerable set of choices, including joining the mainstream workforce.  Now, absent

10   an injunction, they will slide back to the pre-DACA era and associated hardship.").  The government

11   does not seriously dispute this; instead, it primarily repeats its argument that Mr. Ramirez had no

12   entitlement to renewal.  *See* Opp. at 19–20.  That argument fails for the reasons discussed above.

13   The government also argues that the Court should blame Mr. Ramirez for Defendants' own

14   long delay in processing his routine DACA renewal request.  *See* Opp. at 19–20.  The government

15   falsely claims that Mr. Ramirez sat on his rights for "seven months," Opp. at 19, 20, 24, even though

16   Mr. Ramirez's renewal application was in the government's hands the majority of that time: he filed

17   his DACA renewal application on May 21, 2018, just six days after this Court's PI Order.  Ramirez

18   Decl. ¶ 2.  The government sent him the NOID *four months later*, on September 26, 2018.  Mr.

19   Ramirez timely replied to the NOID on October 24, 2018.  *See* Bach Decl. Ex. C.  The government

20   issued the Decision denying Mr. Ramirez's renewal less than a week before Christmas, on December

21   19, 2018.  Mr. Ramirez thereafter entered into discussions with the government regarding the filing

22   of an amended pleading, which led to Mr. Ramirez filing an opposed motion for leave to amend the

23   SAC on March 28, 2019.  Dkt. 140.  This Court granted Mr. Ramirez's motion on May 16, 2019.

24   Dkt. 143.  Mr. Ramirez filed the TAC less than two weeks later, on May 29.  Dkt. 144.  And Mr.

25   Ramirez filed the instant motion roughly one week later, on June 7.  Dkt. 147.  Nothing about this

26   record suggests improper delay or dilatory tactics; nor does it somehow suggest that Mr. Ramirez

---

27   [4]    The government is estopped from relying on facts that it learned at Mr. Ramirez's removal proceedings, because

28   those proceedings were "set in motion" by the government's own wrongful conduct and misrepresentations.  *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir. 2005).

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE                    Counsel Listed on Pages I–II
Case No. 2:17-cv-00218-RSM-JPD                    11

would not be irreparably harmed by the wrongful denial of his DACA.  *See* Dkt. 133 at 21 (rejecting previous iteration of this argument).  To the contrary, Mr. Ramirez has consistently sought to protect his rights, including by meeting and conferring with the government in an attempt to restore Mr. Ramirez's DACA without further litigation.  *Cf.* Dkt. 140 at 1 n.1 (noting that Defendants refused to stipulate to the filing of the TAC).  In any event, the government's "delay" argument is meritless because the government has not even attempted to show prejudice from the passage of time, *see* Opp. at 19–22, nor could it, because any such delay was of the government's own making.

Mr. Ramirez is being irreparably harmed every day the government fails to recognize his DACA status.  Injunctive relief is necessary to remedy that harm until this Court's final decision.

### 3.    Equity and the public interest favor the requested relief

The balance of equities strongly favors granting Mr. Ramirez's requested relief.  *See* Mot. at 23–24.  Indeed, the record here is even stronger than that which supported the PI Order, because the government has now *violated* that injunction, and because the government's most recent evidence confirms not only that there is "[n]o criminality on [Mr. Ramirez's] rap sheet," Dkt. 144-1, but that the "offense history" (purportedly) relied on in the Decision would not have been treated by the BCU DACA Team as a reason to deny his renewal application, *see* Dkt. 148-1 at 9.

The government would not be prejudiced in any way by a second injunction.  The requested injunction would merely preserve the status quo pending a final decision on the merits, and in any event, the government has no valid interest in enforcing the laws arbitrarily or unconstitutionally.  *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

## II.  CONCLUSION

Mr. Ramirez respectfully requests that the Court grant the Motion and order the government to restore his DACA status and work authorization pending a decision on the merits of his claims.

DATED:  July 5, 2019
              Seattle, Washington

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I–II

12

1
          GIBSON, DUNN & CRUTCHER LLP
          THEODORE J. BOUTROUS JR. (CA SBN 132099), *pro hac vice*

2
          ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
          KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*

3
          NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*

4
          /s/ Mark D. Rosenbaum
          PUBLIC COUNSEL

5
          MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
          JUDY LONDON (CA SBN 149431), *pro hac vice*

6
          KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*

7
          /s/ Luis Cortes Romero
          IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC

8
          LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*

9
          Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD
13

Counsel Listed on Pages I–II

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on July 5, 2019, I electronically filed the foregoing document with the

3   Clerk of the Court using CM/ECF.  I also certify that the foregoing document should automatically be

4   served this day on all counsel of record via transmission of Notices of Electronic Filing generated by

5   CM/ECF.

6

7                                                          /s/ *Theodore J. Boutrous, Jr.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR SECOND
PRELIMINARY INJUNCTION, OR TO COMPEL COMPLIANCE
Case No. 2:17-cv-00218-RSM-JPD                    14                    Counsel Listed on Pages I–II