The Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL RAMIREZ MEDINA,
                    Plaintiff,
        v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
                    Defendants.

Case No. 2:17-cv-00218-RSM-JPD

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED
COMPLAINT AND MOTION FOR
SUMMARY JUDGMENT**

Noted for Consideration: **August 30, 2019**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES............................................................. 1

INTRODUCTION....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 8

I.    Standard of Review .......................................................................................................... 8

      A.    Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) ................................................... 8

      B.    Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ........................... 8

      C.    APA review of final agency action ...................................................................... 9

II.   Background on Deferred Action Requests ......................................................................10

III.  The Court lacks jurisdiction over the now-reversed 2017 DACA termination, the 2018
      NOIT, or the Government's previous reliance on evidence of gang affiliation, because
      those issues are now moot. .............................................................................................13

IV.   The Court lacks jurisdiction over USCIS's December 2018 denial of Mr. Ramirez's
      DACA renewal request under 8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a). .....................14

V.    In the alternative, the Court should grant Defendants summary judgment because the AR
      supports the Government's denial of Mr. Ramirez's DACA renewal request.................17

      A.    USCIS denied Mr. Ramirez's DACA request in compliance with the DACA SOP.
            ..........................................................................................................................17

      B.    There is no protected interest in a prospective DACA grant. ..............................18

      C.    Mr. Ramirez fails to make a retaliation claim under the APA or the Constitution.20

      D.    Mr. Ramirez's estoppel claim is not supported by the record. ...........................21

      E.    Mr. Ramirez cannot establish that the denial of his DACA renewal request
            violated the Court's preliminary injunction. ....................................................24

CONCLUSION..........................................................................................................................24

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Ala. Dep't of Envt'l Conservation v. E.P.A.,*
    540 U.S. 461 (2004)..................................................................................10

4

5
*Arizona Dream Act Coalition v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014)...................................................................20

6
*Arkansas v. Oklahoma,*
    503 U.S. 91 (1992)....................................................................................10

7

8
*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015) ...................................................................17

9
*Bd. of Regents of State Colleges v. Roth,*
    408 U.S. 564 (1972)..................................................................................20

10

11
*Bell v. Burson,*
    402 U.S. 535 (1971)..................................................................................19

12

13
*Beno v. Shalala,*
    30 F.3d 1057 (9th Cir. 1994).....................................................................10

14
*Blantz v. Cal. Dep't of Corr. & Rehab.,*
    727 F.3d 917 (9th Cir. 2013)...............................................................19, 20

15

16
*Byung Hoon Chung v. Holder,*
    312 F. App'x 950 (9th Cir. 2009)...............................................................21

17

18
*Califano v. Sanders,*
    430 U.S. 99, (1977)...................................................................................10

19
*Camp v. Pitts,*
    411 U.S. 138 (1973)..................................................................................22

20

21
*Cantaro Castillo v. W. Range Ass'n,*
    No. 18-15398, 2019 WL 2524302 (9th Cir. June 19, 2019) ........................8

22

23
*Chaudhry v. Holder,*
    705 F.3d 289 (7th Cir. 2013).....................................................................11

24
*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971)..................................................................................10

25

26
*Columbia Pictures Indus., Inc. v. Fung,*
    710 F.3d 1020 (9th Cir. 2013)...................................................................24

27

28

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

ii

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979) ...................................................................................14

*Crawford v. Antonio B. Won Pat Int'l Airport Auth.*,
   917 F.3d 1081 (9th Cir. 2019) ..................................................................19

*Ctr. for Biological Diversity v. Zinke*,
   900 F.3d 1053 (9th Cir. 2018) ..................................................................10

*Doe v. Unocal Corp.*,
   27 F. Supp. 2d 1174 (C.D. Cal. 1998) ......................................................13

*GATX/Airlog Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
   192 F.3d 1304 (9th Cir. 1999) ..................................................................13

*Hartman v. Moore*,
   547 U.S. 250 (2006) ............................................................................20, 21

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ....................................................................11, 15, 16

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) .......................................................................................8

*ICC v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987) ...................................................................................15

*Inland Empire–Immigrant Youth Collective v. Nielsen*,
   2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) ............................................2

*Johnston v. McLaughlin*,
   55 F.2d 1068 (9th Cir. 1932) ....................................................................23

*Lands Council v. Martin*,
   No. CV-06-0229-LRS, 2007 WL 2743452 (E.D. Wash. Sept. 18, 2007) ...........9

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ...............................................................8, 15

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ...................................................................................15

*Mauting v. I.N.S.*,
   16 F. App'x 788 (9th Cir. 2001) ................................................................21

*Mendez-Garcia v. Lynch*,
   840 F.3d 655 (9th Cir. 2016) ....................................................................19

*Monjaraz–Munoz v. I.N.S.*,
   327 F.3d 892 (9th Cir.) ..........................................................................9, 17

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

iii

*Morales de Soto v. Lynch*,
   824 F.3d 822 (9th Cir. 2016)..................................................................16

*Murphy v. Hunt*,
   455 U.S. 478 (1984)..............................................................................13

*Norse v. City of Santa Cruz*,
   629 F.3d 966 (9th Cir. 2010)...................................................................8

*Nozzi v. Hous. Auth. of L.A.*,
   806 F.3d 1178, 1191 (9th Cir. 2015).......................................................19

*Occidental Engineering Co. v. INS*,
   753 F.2d 766 (9th Cir. 1985)...............................................................9, 17

*Owen Equip. & Erection Co. v. Kroger*,
   437 U.S. 365 (1978)................................................................................8

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
   908 F.3d 476 (9th Cir. 2018)..................................................................15

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   ("*AADC*"), 525 U.S. 471 (1999) ...............................................1, 10, 11, 15

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007)..............................................................................13

*Romeiro de Silva v. Smith*,
   773 F.2d 1021 (9th Cir. 1985)................................................................15

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)................................................................15

*Salgado-Diaz v. Gonzales*,
   395 F.3d 1158 (9th Cir. 2005)................................................................21

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014)...................................................................9

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014)...............................................................9, 10

*San Luis & Delta–Mendota Water Auth. v. Salazar*,
   760 F. Supp. 2d 855 (E.D. Cal. 2010) ......................................................9

*Socop-Gonzalez v. I.N.S.*,
   272 F.3d 1176 (9th Cir. 2001)................................................................22

*Southern Pacific Terminal Co. v. ICC*,
   219 U.S. 498 (1911)..............................................................................13

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

iv

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
  873 F.2d 1221 (9th Cir. 1989) ................................................................. 8

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) .................................................................. 20

*Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ................................................................... 8

*Torres v. U.S. Dep't of Homeland Sec.*,
  No. 17CV1840 JM(NLS), 2018 WL 3495830 (S.D. Cal. July 20, 2018) ............................... 21

*Torres v. DHS*,
  2018 U.S. Dist. LEXIS 32366 (S.D. Cal. Apr. 12, 2018) ............................................ 19

*Tor v. YouTube, Inc.*,
  562 F.3d 1212 (9th Cir. 2009) ................................................................. 13

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005) ............................................................................ 19

*Toyo Tire Holdings of Am. v. Cont'l Tire of N. Am., Inc.*,
  609 F.3d 975 (9th Cir. 2010) .............................................................. 13, 14

*United States v. Morales*,
  No. 2:17-PO-0137 DB, 2017 WL 2264853 (E.D. Cal. May 24, 2017) ................................. 23

*Watson v. City of Vancouver*,
  No. C13-5936 RBL, 2015 WL 1137530 (W.D. Wash. Mar. 12, 2015) ................................ 20

**Statutes**

5 U.S.C. § 701(a) .................................................................................. 14

5 U.S.C. § 701(a)(2) ............................................................................... 15

5 U.S.C. § 701(2) .................................................................................. 16

5 U.S.C. § 706(2)(A) ................................................................................ 9

8 U.S.C. § 1252(g) ............................................................................ 14, 16

**Regulations**

8 C.F.R. § 274a.12(c)(14) ........................................................................... 10

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

v

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1) ...................................................................................1, 8

Fed. R. Civ. P. 56 ..........................................................................................8, 9

**State Statutes**

California Vehicle Code § 14601.2(a) .................................................................23

California Vehicle Code § 14601.2(d)(1) ............................................................23

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

vi

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Daniel Ramirez Medina ("Mr. Ramirez") filed his Third Amended Complaint ("TAC") challenging Defendants' decision to deny his Deferred Action for Childhood Arrivals ("DACA") renewal request. *See* ECF No. 144. Mr. Ramirez also continues to re-litigate matters that are now moot or that he voluntarily dismissed, including his February 2017 arrest and detention, the now-reversed termination of his DACA in 2017, the May 2018 issuance of a Notice of Intent to Terminate ("NOIT") his reinstated DACA that Defendants never acted on, and the Government's previous reliance on Mr. Ramirez's own statements. *Id.* at Count No. 1, ¶¶ 93-98, 101; Count No. 2, ¶¶ 107, 114, 118; Count No. 3, ¶ 122; Count No. 4, ¶ 128.

Far from his initial claim that his DACA was terminated without sufficient process, *see* ECF No. 116 at 15, Mr. Ramirez now seeks an order from the Court granting him an unqualified and permanent term of deferred action which the Government may not terminate with any process or for any reason. ECF No. 144 at 39-40, Prayer for Relief ("(4) Order Defendants to reinstate Mr. Ramirez's DACA status and work authorization; (5) Enjoin Defendants from terminating or declining to renew Mr. Ramirez's DACA status and work authorization").

Defendants move the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Mr. Ramirez's 2017 DACA termination and the enjoined 2018 NOIT are mooted by the expiration of Mr. Ramirez's reinstated DACA and the Court can no longer grant relief on those issues. The Court also lacks jurisdiction to review Defendants' decision to deny Mr. Ramirez's deferred action request because the decision represents an exercise of unreviewable agency discretion. This Court has already held that it does not have jurisdiction to hear such a challenge. *See* ECF No. 116 at 12 ("[T]he Court agrees with Defendants that, if Plaintiff were asking for review of the government's ultimate discretionary decision to terminate his DACA [ ], section 1252(g) would strip this Court of jurisdiction to review that determination.") (citing *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 485 (1999)).

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

1

In the alternative, the Court should grant Defendants' motion for summary judgment. The Administrative Record ("AR") shows that, to the extent the DACA SOP mandates any process in the denial of a DACA request, such process was provided. *See* AR at 1-5. In addition, to the extent this Court previously found that a current DACA recipient possesses some protected liberty interest, Mr. Ramirez no longer currently has DACA. Despite his colorful allegations, the expiration of his reinstated DACA on its predetermined date was not a termination, nor can he show any mutual understanding that he was entitled to DACA beyond the expiration date. As a result, as a matter of law, Mr. Ramirez lacks a constitutionally protected interest that would support his claims. As more fully set forth below, for any of Mr. Ramirez's claims that are not dismissed, the Court should enter summary judgment for Defendants.

## STATEMENT OF MATERIAL FACTS

Mr. Ramirez filed his Second Amended Complaint on April 25, 2017, arguing that the termination of his DACA and employment authorization ("EAD") violated the Administrative Procedure Act ("APA") and seeking, *inter alia*, injunctive and declaratory relief in the form of reinstating his DACA and EAD. *See* ECF No. 78. Defendants moved to dismiss Mr. Ramirez's second amended complaint on June 26, 2017, and simultaneously filed the administrative records for U.S. Citizenship and Immigration Services ("USCIS") and U.S. Immigration and Customs Enforcement ("ICE") related to the automatic termination of his DACA. *See* ECF Nos. 90, 92, 93. On February 6, 2018, Mr. Ramirez sought a preliminary injunction restoring his terminated DACA and EAD. ECF No. 122. Prior to this Court's ruling on that motion, the United States District Court for the Central District of California issued a preliminary injunction in *Inland Empire–Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018). In that order, the court preliminarily enjoined "Defendants' decisions after January 19, 2017 to terminate the DACA grants and EADs of class members, without notice, a reasoned explanation, or an opportunity to respond prior to termination," and ordered that "Defendants immediately will restore those individuals' DACA and EADs, subject to their original date of expiration."

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

2

2018 WL 1061408 at *22. As a member of that class, Mr. Ramirez's DACA and EAD were restored on or about March 30, 2018, with an expiration date of May 15, 2018. ECF No. 132.

Thereafter, the Government issued Mr. Ramirez a NOIT with regard to his reinstated DACA and EAD informing him that he did "not warrant a favorable exercise of prosecutorial discretion" because it considered Mr. Ramirez's own statements as evidence indicating gang affiliation. ECF No. 126-1 at 19–20. Mr. Ramirez modified his first motion for preliminary injunction to request that the Government be prevented from relying on the evidence in the record supporting Mr. Ramirez's suspected gang affiliation, and the Court granted his motion. ECF No. 132. The Court enjoined Defendants "from asserting, adopting, or relying in any proceedings on any statement or record made as of this date purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated, or a threat to public safety." *Id*. at 23. Mr. Ramirez's restored DACA expired on its own on May 15, 2018, the same day the Court granted the preliminary injunction. *Id*. at 23 n.7. Moreover, the AR makes clear that the Government had already determined not to take final action terminating Mr. Ramirez's reinstated DACA and EAD. AR 8-9.

One week after Mr. Ramirez's DACA expired, he submitted a DACA renewal request. TAC ¶ 83; AR 63. On June 21, 2018, in relation to Mr. Ramirez's renewal request, USCIS Office of Chief Counsel notified the USCIS Service Center Operations Directorate ("SCOPS") that ICE had provided information that Mr. Ramirez admitted having sex with an underage girl in California; admitted that he had acquired marijuana from a friend and that he keeps marijuana with him at all times; admitted that he transported marijuana in his car while driving from Washington state to California; and admitted that he has $4,000 in unpaid driving fines. AR 6-7. ICE also communicated that it considered Mr. Ramirez an enforcement priority and that it had learned of the information from Mr. Ramirez in his removal proceedings and as part of his application to the immigration court for cancellation of removal. *Id*.

A subsequent email sent on June 26, 2018 appears to be the first time that Jennifer Jenkins, the USCIS Immigration Officer assigned to the DACA Background Check Unit

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

3

("BCU") (the individual responsible for adjudicating Mr. Ramirez's 2016 DACA Renewal requests, "BCU officer" hereafter) was made aware of the information ICE conveyed regarding Mr. Ramirez's criminal record. *Id.* at 5-6.

On August 24, 2018, ICE informed the BCU officer that ICE considered Mr. Ramirez an enforcement priority, *id.* at 16-17; 51-52, citing Mr. Ramirez's criminal conduct, including marijuana possession, an accumulation of over $4,000 in traffic fines, and sex with an underage girl in California. *Id.*; *see also id.* at 80-81.

After gathering details of Mr. Ramirez's criminal record, the BCU officer submitted a request for guidance ("RAG") to SCOPS headquarters. *Id.* at 396; *id.* at 51 (August 24, 2018 email from BCU officer to ICE stating she included ICE's response in her RAG). SCOPS, through the WATS branch,[1] responded to the RAG on August 30, 2018, with a recommendation that the BCU issue Mr. Ramirez a notice of intent to deny ("NOID"). *Id.* at 49; *see id.* at 56-62. SCOPS determined that Mr. Ramirez was not a public safety concern in relation to the charges of sexual intercourse with a minor. *Id.* at 58. However, SCOPS still viewed the information "as a derogatory factor in the consideration of deferred action under the totality of the circumstances based on the fundamental underpinnings of statutory rape criminal offenses and the information in the police report." *Id.*; *see id.* at 142-44 (Lindsay, California police report, Dec. 27, 2013).

SCOPS similarly concluded that Mr. Ramirez's "nearly $5,000 in traffic fines" did not disqualify him from consideration of DACA, but found that, "under the totality of the circumstances, . . . [the fines are] a negative factor in assessing whether Ramirez Medina . . . merits prosecutorial discretion." *Id.* at 59. SCOPS's assessment of Mr. Ramirez's traffic fines included the marijuana possession, which SCOPS noted also constituted a violation of federal law by transporting the substance across state lines. *Id.* at 60.

---

[1] The Waivers and Temporary Services branch ("WATS") is a branch within SCOPS headquarters that oversees DACA operations, including responding to RAG requests from USCIS Service Centers adjudicating DACA requests. *See* ECF No. 148-1, Declaration of Alexander King. For ease of reference, Defendants use "SCOPS" where possible.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

4

SCOPS then discussed USCIS's deference to ICE's finding that Mr. Ramirez is an enforcement priority. *Id*. at 60-62. Specifically, SCOPS noted that both the DACA Memo and DACA SOP guide USCIS to defer to ICE's enforcement priority determinations, including that:

> There is a specific denial template that was created for cases where ICE considers the requestor to be an enforcement priority, and WATS did not find any guidance indicating that USCIS must inquire with ICE as to why the individual is an enforcement priority or what memorandum or piece of policy guidance the individual is an enforcement priority under.

*Id*. at 61. SCOPS also noted that the February 20, 2017 Kelly Memo exempted the DACA Memo from rescission, and thus did not rescind the portions of the DACA Memo that "state that decisions on DACA are to be made on an individual basis and that DHS cannot provide any assurance that relief will be granted in all cases." *Id*.; *see* ECF No. 78-4, Pl. Ex. D, "Enforcement of the Immigration Laws to Serve the National Interest," John Kelly, February 20, 2017 ("Kelly Memo"). SCOPS further explained, in relation to the Kelly Memo, that:

> The DHS enforcement priority memorandum in effect when DACA first started and the memorandum from 2014 both note that nothing in the memorandums "should be construed to prohibit or discourage the apprehension, detention, or removal of aliens unlawfully in the United States who are not identified as priorities herein."

*Id*. (citing "Civil Immigration Enforcement Priorities for the Apprehension, Detention, and Removal of Aliens." John Morton, March 2, 2011; "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants." Jeh Charles Johnson, November 20, 2014).

On September 26, 2018, the BCU issued Mr. Ramirez a NOID. AR 63-65. The NOID stated USCIS's intention to deny Mr. Ramirez's DACA request "because USCIS does not find that you warrant a favorable exercise of prosecutorial discretion under the totality of the circumstances." *Id*. at 63. The NOID cited ICE's determination that Mr. Ramirez is an enforcement priority and described each of Mr. Ramirez's criminal actions in detail. *Id*. at 63-64. The NOID then explained that Mr. Ramirez had thirty-three days "to submit additional information, evidence, or arguments overcoming the grounds for the intended denial." *Id*. at 65.

Mr. Ramirez, through counsel, submitted a response to the NOID on or around October 24, 2018. AR 399-429. Mr. Ramirez did not dispute the veracity of the criminal charges cited;

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

5

rather, he argued that the Government may not rely on those charges at all, because it would be unfair to him. *Id.* at 408-10. Mr. Ramirez made largely the same estoppel argument that he makes to this Court—that he could not have known that the Government would consider his criminal record in deciding his DACA request since it had not relied on it in previous adjudications. *Id.*

Upon consideration of Mr. Ramirez's NOID response, the BCU officer concluded that Mr. Ramirez was not precluded from consideration of DACA for failure to meet the guidance criteria in the DACA SOP. AR 434-35 (BCU Resolution Memo, November 16, 2018). The BCU officer also indicated to SCOPS on November 5, 2018 that she did not consider Mr. Ramirez to be a sexual predator or a public safety concern. *Id.* at 46-47.

In response, SCOPS recommended denying Mr. Ramirez's DACA request on the basis that Mr. Ramirez's NOID response did not overcome the reasons cited in the NOID, including ICE's enforcement priority determination and the enumerated incidents of criminal conduct. *Id.* at 45-46. SCOPS explained,

> While we understand that DACA cases involving the same factual scenarios may generally have the same adjudicative results under the 2012 DACA policy, we are unaware of any cases with similar fact patterns to this case that have been approved (i.e. ICE enforcement priority determination and the additional negative discretionary factors discussed in the NOID).

*Id.* SCOPS cited to the DACA SOP's analogous treatment of DACA requestors in detention that ICE considers to be an enforcement priority. *Id.* at 46; *see* ECF 144-7 at 89-90 ("If ICE indicates that the requestor is an ICE enforcement priority but ICE intends on physically releasing the requestor, USCIS will deny the DACA request.").

The BCU worked with SCOPS from November 16, 2018 to December 10, 2018 in composing the DACA denial letter. *Id.* at 43-44. On December 18, 2018, prior to sending the letter, the BCU officer re-confirmed with ICE its position that Mr. Ramirez remained an enforcement priority. *Id.* at 42-43.

On December 19, 2018, USCIS issued Mr. Ramirez a DACA denial notice detailing the reasons for denying his DACA request and why his NOID response did not overcome the Government's findings. *Id.* at 72-75. The letter explained:

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

6

> Other than your own declaration, you have not submitted any evidence that is not already on the record. You did not submit any evidence related to your marijuana conviction. You also did not submit any new evidence related to the investigation into the unlawful sexual intercourse that resulted from the birth of your child. You did not submit any affidavits from others in support of your own claims.

*Id.* at 74. The notice also stated that the criminal information relied on in the denial was unknown to USCIS at the time of Mr. Ramirez's previous DACA grant on May 5, 2016. *Id.*

On March 28, 2019, Mr. Ramirez motioned the Court for leave to file a third amended complaint. ECF No. 140. On May 16, 2019, the Court granted the motion. ECF No. 143.

Mr. Ramirez filed his TAC on May 30, 2019, ECF No. 144, and, a week later, a motion for preliminary injunction. ECF No. 147, Plaintiff's Second Motion for Preliminary Injunction. The Parties completed briefing on the motion on July 5, 2019.

## SUMMARY OF THE ARGUMENT

This Court should dismiss Mr. Ramirez's TAC because Mr. Ramirez fails to establish the Court's jurisdiction on the now-reversed termination of his 2016 DACA grant or the 2018 NOIT of his reinstated DACA that are now moot. Nor can he establish jurisdiction over the discretionary denial of his most recent deferred action request. Regardless of any prior grant of DACA—and distinct from this Court's previous finding of jurisdiction over the DACA termination process—Mr. Ramirez cannot establish entitlement to a discretionary grant of deferred action and cannot show any nondiscretionary process that was not followed.

Rather, the record demonstrates that the denial of Mr. Ramirez's DACA request was based on uncontested evidence of criminal conduct, that USCIS issued Mr. Ramirez a notice of intent to deny his request, and that the agency considered his response before issuing a denial notice. As this Court previously found, courts lack jurisdiction over USCIS's ultimate decision to exercise its prosecutorial discretion in one way or another. Mr. Ramirez's estoppel and First and Fifth Amendment claims similarly fail because he lacks a protected interest in the continuation of DACA beyond its expiration date or in a prospective DACA grant. Nor does the record reflect any procedural deficiency, animus, or misconduct in the processing of his DACA denial.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

7

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

In the alternative, to the extent the Court finds jurisdiction to review the discretionary denial of a deferred action request, the Court should grant Defendants' motion for summary judgment. The record shows that USCIS followed the DACA SOP guidance for denying a DACA request under a totality of the circumstances analysis. The record also shows that Mr. Ramirez's criminal conduct coupled with ICE's enforcement priority determination is supported by the DACA SOP as discretionary grounds for denial.

## ARGUMENT

### I.    Standard of Review

#### A.  Dismissal pursuant to Fed. R. Civ. P. 12(b)(1)

Because federal courts have limited jurisdiction, a court must dismiss any case if it lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Faced with a factual attack on subject matter jurisdiction, . . . no presumptive truthfulness attaches to plaintiff's allegations . . . [and] the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Cantaro Castillo v. W. Range Ass'n*, No. 18-15398, 2019 WL 2524302, at *2 (9th Cir. June 19, 2019) (citing *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). A factual attack is usually made by introducing evidence outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Furthermore, to defend against a factual attack, a plaintiff must support her jurisdictional allegations with "'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (citing *Hertz Corp. v. Friend,* 559 U.S. 77, 96–97 (2010); *Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*)). The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met. *Id.*

#### B.  Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

In deciding a motion for summary judgment challenging a final agency action, the

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

8

function of the reviewing court is to determine whether, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did. *Occidental Engineering Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). Because review under the APA is a question of law, the standard of review set forth in Fed. R. Civ. P. 56 is not applicable. *Id*. at 770. Thus, summary judgment involving review of agency action does not require fact-finding by the district court. *Lands Council v. Martin*, No. CV-06-0229-LRS, 2007 WL 2743452, at *5 (E.D. Wash. Sept. 18, 2007), *aff'd in part, rev'd in part,* 529 F.3d 1219 (9th Cir. 2008) (Summary judgment is appropriate where "the issues presented address the legality of federal agency actions based on the administrative record and do not require resolution of factual disputes."); *see also San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014).

Rather, "summary judgment becomes the 'mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *San Luis & Delta–Mendota Water Auth. v. Salazar*, 760 F. Supp. 2d 855, 868 (E.D. Cal. 2010), *reversed in part on other grounds by Jewell*, 747 F.3d 581 (citation omitted).

## C. APA review of final agency action

Where a final agency action is subject to judicial review, 5 U.S.C. § 706(2)(A) of the APA requires a reviewing court to uphold the agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014). Under this standard, a court must sustain an agency action that is supported by substantial evidence in the administrative record—meaning the agency "has articulated a rational connection between the facts found and the conclusions made." *Id*. at 994 (citation omitted); *Jewell*, 747 F.3d at 601.

The substantial evidence standard is "extremely deferential," and requires the court to "uphold the agency's findings unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Monjaraz–Munoz v. I.N.S.*, 327 F.3d 892, 895 (9th Cir.), *amended by* 339 F.3d 1012 (2003) (emphasis in original) (internal modification omitted). The administrative record need only be "sufficient to support the agency action, show that the agency

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

9

has considered the relevant factors, and enable the court to review the agency's decision." *Beno v. Shalala*, 30 F.3d 1057, 1074 (9th Cir. 1994).

Under the substantial evidence standard, an agency's determination is entitled to a presumption of regularity. *Locke*, 776 F.3d at 994 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16 (1971), *abrogated in part on other grounds as recognized in Califano v. Sanders,* 430 U.S. 99 (1977)). A reviewing court may not "make its own judgment about the appropriate outcome, Congress has delegated that responsibility to the agency." *Id.* (internal quotations and citation omitted). Even when an agency's decision is rendered with "less than ideal clarity," a reviewing court will not reverse the decision as long as "the agency's path may be reasonably discerned." *Id.* (citing *Ala. Dep't of Envt'l Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004).

Furthermore, where "evidence is susceptible of more than one rational interpretation," the court must still uphold the agency's finding if "a reasonable mind might accept it as adequate to support a conclusion." *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1068 (9th Cir. 2018) (citing *Jewell*, 747 F.3d at 601); *see Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) (a reviewing court "should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence.").

## II.    Background on Deferred Action Requests

Deferred action is "a regular practice" in which the Secretary exercises her discretion "for humanitarian reasons or simply for [her] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84. "At each stage the Executive has discretion to abandon the endeavor." *Id.;* 8 C.F.R. § 274a.12(c)(14) ("an act of administrative convenience to the government which gives some cases lower priority"). Through "[t]his commendable exercise in administrative discretion, developed without express statutory authorization," *id.* at 484 (citations omitted), a removable individual may remain present in the United States so long as DHS continues to forbear, but always at the discretion of the Secretary. As with other agencies exercising enforcement

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

10

discretion, DHS must balance a number of factors within its expertise. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action does not confer lawful immigration status or provide any defense to removal. *Cf. Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (discussing the difference between "unlawful presence" and "unlawful status" as two distinct concepts). An individual with deferred action remains removable at any time, and DHS never surrenders or otherwise loses the discretion to revoke deferred action unilaterally. *See AADC*, 525 U.S. at 484-85.

Through an internal USCIS guidance document entitled the "National Standard Operating Procedures (SOP); Deferred Action for Childhood Arrivals (DACA)," USCIS has provided SCOPS officers with procedural guidance for terminating a grant of deferred action, including when a recipient is issued a Notice to Appear ("NTA") or is otherwise determined to be an enforcement priority. *See* ECF No. 144-7 at 127-28, DACA SOP, Chapter 14; *id*. at 247, DACA SOP Appendix I.

Importantly, the DACA SOP does not provide guidance to ICE or CBP, nor does the DACA Memo limit those other sub-agencies of DHS from exercising their law enforcement authority to issue an NTA to an individual with DACA who is deemed to be an enforcement priority. Rather, pursuant to the DACA SOP, and in conjunction with DHS's NTA policy, which instructs USCIS on when to issue an NTA and when to defer to ICE's NTA authority, when USCIS discovers certain conduct that suggests DACA should be terminated, USCIS should refer such conduct to ICE. *Id*. at 127; *id*. at 136-44, DACA SOP Appendix B, USCIS Memorandum: Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens, ("2011 NTA Memo"), dated Nov. 7, 2011. ICE, in turn, may issue an NTA that automatically terminates DACA with no additional notice or opportunity to respond. *Id*. at 127. Logically, where an ICE or CBP officer encounters a DACA recipient engaged in criminal behavior, the officer retains the same authority to issue an NTA or continue to defer action without consulting with USCIS, who in any event would be required to refer the case back to ICE to decide whether to issue an NTA – creating an absurd circular result.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

11

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

USCIS's only role in a case where ICE or CBP determines an individual is an enforcement priority and issues an NTA is to issue the individual a "Notice of Action," informing him or her that deferred action under DACA and his or her EAD automatically terminated as of the date the NTA was issued. *Id.* at 127, 247. USCIS, through the Notice of Action, does not "decide" to terminate DACA or the EAD.

USCIS adjudicators consider different guidance for DACA requests than for DACA terminations. *See id.* at 44-103, DACA SOP Chapter 8, Adjudicating DACA Requests; *id.* at 104-13, DACA Chapter 9, Denials. The DACA SOP is replete with instructions that an individual's ability to meet the guidance criteria merely allows him or her to be *considered* for a DACA grant. *See, e.g., id.* at 18, 44, 50, 51, 54, 55, 60.

The DACA SOP is also clear that "the existence of deportation, exclusion, or removal proceedings may have an effect on the exercise of prosecutorial discretion for DACA." *Id.* at 73. In adjudicating a DACA request from an individual placed into removal proceedings through issuance of an NTA, the DACA SOP specifically advises USCIS to consider more than just the grounds listed in the NTA. *Id.* at 77. The SOP states:

> If a DACA requestor has been placed in proceedings on a ground that does not adversely impact the exercise of prosecutorial discretion, review the results of all routine systems, background, and fingerprint checks. If those routine checks did not reveal any additional derogatory information that impacts the exercise of prosecutorial discretion, the case may proceed for adjudication.
>
> *Do not rely solely on the grounds listed in the charging document* and/or [redacted] as not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

*Id.* (emphasis added).

The DACA SOP instructs adjudicators to consider the totality of the circumstances when assessing the impact of criminal conduct that would not preclude favorable consideration for DACA. *See id.* at 83 ("Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

12

circumstances."); *id* at 84 ("[T]he requestor's entire offense history," including minor traffic offenses, "can be considered" under the totality of the circumstances analysis).

In the case of a requestor who may establish that the guidelines are met but for whom the adjudicator determines nonetheless that a favorable exercise of discretion is not warranted, the DACA SOP calls for the BCU to seek SCOPS review before issuing a denial. *Id*. at 107.

**III.    The Court lacks jurisdiction over the now-reversed 2017 DACA termination, the 2018 NOIT, and the Government's previous reliance on evidence of gang affiliation, because those issues are now moot.**

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Toyo Tire Holdings of Am. v. Cont'l Tire of N. Am., Inc.*, 609 F.3d 975, 982-83 (9th Cir. 2010) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1984)). A court must dismiss a case as moot if the court can no longer provide the petitioner with "effective relief." *GATX/Airlog Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 192 F.3d 1304, 1306 (9th Cir. 1999). If a case becomes moot, then the Court lacks jurisdiction because mootness is jurisdictional. *Tor v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009). There is an exception to the mootness doctrine for claims that are "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

An actual controversy must exist "at all stages of proceedings, not merely at the time when the complaint is filed." *GATX/Airlog Corp.*, 192 F.3d at 1306. When "a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 473 (2007); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1180 (C.D. Cal. 1998), *aff'd and adopted*, 248 F.3d 915 (9th Cir. 2001) ("It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent. Once amended, the original no longer performs any function as a pleading.") (internal modifications and citation omitted).

Here, Mr. Ramirez has filed his third amended complaint in which he seeks to obtain relief from the Court on issues that are no longer live controversies. *See, e.g.*, ECF NO. 144 at Count No. 1, ¶ 93-98, 101; Count No. 2, ¶ 107, 114, 118; Count No. 3, ¶ 122; Count No. 4,

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

13

¶ 128. The Government's termination of Mr. Ramirez's DACA in February 2017 was reversed by order of the *Inland Empire* preliminary injunction, and Mr. Ramirez's DACA and EAD were reinstated to an expiration date of May 15, 2018, pursuant to that order. *See* ECF No. 132 at 6. Though USCIS issued Mr. Ramirez a NOIT, his reinstated DACA expired on its own on May 15, 2018, without any action by the Government. Thus, Mr. Ramirez's allegations against the termination of his DACA or the Government's inchoate effort to terminate his reinstated DACA on grounds of suspected gang affiliation are no longer issues this Court can relieve, and Mr. Ramirez lacks any legally cognizable interest in an expired DACA or EAD. *Toyo Tire Holdings of Am.*, 609 F.3d at 982-83; *see* ECF No 144-7 at 134-35, DACA Memo ("USCIS should establish a clear and efficient process for exercising prosecutorial discretion . . . for a period of two years, *subject to renewal*.") (emphasis added); *id.* at 113, DACA SOP ("The [EAD] 'valid from' date is the date of approval and the 'valid to' date is 2 years minus one day from the date of approval or to the end date of the deferred removal date under DACA, whichever is earlier."); ECF NO. 144-2 at 2, DACA FAQ ("Individuals who demonstrate that they meet the guidelines below may request consideration of [DACA] for a period of two years, subject to renewal.").

Where Mr. Ramirez's DACA expired and the Government has determined in its discretion not to grant Mr. Ramirez's DACA renewal request, "'there is no reasonable expectation . . .' that the alleged violation will recur." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). The Court should dismiss for lack of jurisdiction because the claims are moot.

## IV.   The Court lacks jurisdiction over USCIS's December 2018 denial of Mr. Ramirez's DACA renewal request under 8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a).

Mr. Ramirez's challenge to his DACA denial is unlike his prior challenges to the process by which his DACA was terminated. Though Defendants disagree with the Court's prior finding of jurisdiction to hear a challenge to "the narrower issue[]" of "whether Defendants complied with their own non-discretionary procedures" leading to the termination of Mr. Ramirez's DACA, ECF No. 116 at 12, such an issue is not presented in the TAC. Rather, Mr. Ramirez concedes that the Government issued him a NOID detailing his criminal conduct and provided him with an opportunity to respond, and the Government has shown that the adjudicator sought

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

14

headquarters review. *See* AR 1-5, 49, 56-62. Critically, Mr. Ramirez does not challenge the fact of the criminal conduct that supports USCIS's denial of his DACA request. Rather, he argues that the denial is evidence that the Government has a vendetta against him. *See* ECF No. 144 at 4, 36.

Thus, Mr. Ramirez's claims are nothing more than a challenge to the ultimate exercise of discretion to deny his request for deferred action, and this Court has already held that it does not have jurisdiction to hear such a challenge. *See* ECF No. 116 at 12 ("[T]he Court agrees with Defendants that, if Plaintiff were asking for review of the government's ultimate discretionary decision to terminate his DACA [ ], section 1252(g) would strip this Court of jurisdiction to review that determination.') (citing *AADC*, 525 U.S. at 485). The Court's holding is also wholly consistent with the Ninth Circuit's decision in *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018), which found that "individual 'no deferred action' decisions . . . fall exactly within Section 1252(g) as interpreted by the Court in *AADC*."

The Government's decision not to grant Mr. Ramirez prosecutorial discretion is also protected from judicial review under the APA as a decision that "courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)). These decisions are typically unreviewable because there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). This bar applies even when "the agency gives a 'reviewable' reason for otherwise unreviewable action." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987); *Romeiro de Silva v. Smith*, 773 F.2d 1021 (9th Cir. 1985) (Immigration and Naturalization Service ("INS") Operating Instructions on deferred action were not reviewable even though they provided a list of eligibility criteria because the ultimate decision was discretionary).

The Court may also rely on the record evidence showing that Mr. Ramirez's claim that the Government failed to comply with the DACA SOP is incorrect. *Leite*, 749 F.3d at 1121 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

15

factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."). Mr. Ramirez's speculative claim that the denial decision violated the DACA SOP (and the *Accardi* doctrine) with regard to the BCU, *see* ECF No. 144 at ¶ 100, is refuted by the record.

As explained in greater detail above, the DACA SOP guides BCU officers to consider the totality of the circumstances when assessing the impact of criminal conduct that would not preclude favorable consideration for DACA. ECF No. 144-7 at 83. The DACA SOP also guides the BCU to confer with SCOPS when adjudicating such a DACA request for an individual who may meet the guidance criteria but still may not warrant a favorable exercise of discretion. *See id.* at 107. The record shows that both steps were taken.

The facts outlined above demonstrate that a BCU officer adjudicated Mr. Ramirez's DACA request in conjunction with SCOPS and with confirmation from ICE that it considered Mr. Ramirez to be an enforcement priority. *See* AR 1-5. Furthermore, the record shows that the BCU officer learned of the criminal conduct in June 2018, *id.* at 5, and thereafter considered Mr. Ramirez's entire record, including ICE's determination and SCOPS's recommendation, *id.* at 42-47, to conclude that under the totality of the circumstances, Mr. Ramirez did not warrant a favorable exercise of prosecutorial discretion. *Id.* at 42; 72-75.

Mr. Ramirez's assertion that the DACA SOP does not allow the Government to rely on his past criminal conduct because a March 2018 email from the DACA BCU team indicated that it found no criminality on a RAP sheet is unsupported by the DACA SOP. *See* ECF No. 144 at ¶ 100. In fact, USCIS is specifically guided by the DACA SOP *not to rely* on a single criminal record check, but to continue gathering information. *See* ECF No. 144-7 at 77, 83.

Thus, all that remains of Mr. Ramirez's TAC are allegations against the December 2018 denial decision that amount to an impermissible challenge to how USCIS exercised its discretion, and such a challenge to discretionary action cannot provide a basis for jurisdiction. *See* 8 U.S.C. § 1252(g); 5 U.S.C. § 701(2); *Heckler*, 470 U.S. at 831; *Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (discussing the *Heckler* decision and noting that "the exercise of

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

16

prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention"); *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (discussing the *Heckler* decision and explaining that "[i]n making immigration enforcement decisions, the executive considers a variety of factors"). The Court should dismiss for lack of jurisdiction.

**V.     In the alternative, the Court should grant Defendants summary judgment because the AR supports the Government's denial of Mr. Ramirez's DACA renewal request.**

To the extent this Court may find jurisdiction to review the discretionary denial of a deferred action request, under the "extremely deferential" substantial evidence standard, this Court should grant the Government summary judgment. Substantial evidence in the record (meaning "more than a mere scintilla"), in the form of Mr. Ramirez's criminal records and the email threads demonstrating that the BCU conferred with SCOPS prior to issuing a decision, supports both the substance and procedure of the Government's determination that Mr. Ramirez does not warrant an exercise of prosecutorial discretion. *Monjaraz–Munoz*, 327 F.3d at 895. Furthermore, nothing in the record "*compel*[s] a reasonable finder of fact to reach a contrary result." *Id*. (emphasis in original). Rather, Mr. Ramirez's central allegations: that the denial of his DACA renewal request was arbitrary and capricious and violated due process because it did not comply with the DACA SOP, and that the Government has perpetuated a years-long conspiracy of lies for still unexplained reasons, are disproven by the record. The Court should find that, as a matter of law, the evidence in the record permitted the agency to deny Mr. Ramirez's DACA as a proper exercise of its discretion. *Occidental Engineering Co.,* 753 F.2d at 769.

Mr. Ramirez does not challenge the criminality relied on to deny his request, and his argument that the Government was not *allowed* to rely on the record because it did not raise it in past DACA grants (in part due to his failure to disclose it) is without legal or factual support.

**A.   USCIS denied Mr. Ramirez's DACA request in compliance with the DACA SOP.**

Mr. Ramirez's allegations of process violations are speculative and unsupported by his TAC and refuted by the record. Rather than dispute the veracity of the charges that support the denial decision, he argues instead that the criminal charges "cannot be lawfully reconciled" with the March 2018 BCU email; that only violent criminal offenses (and still only a certain threshold

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

17

of violence) can justify denying a DACA request; and that there is no evidence that the BCU team adjudicated his renewal request. *See* ECF No. 144 at ¶¶ 99-100.

However, as explained above, the DACA SOP does not limit the BCU team from investigating more than a single RAP sheet when considering a DACA request. In fact, the SOP is clear that the agency must consider more, *see* ECF No. 144-7 at 77, 83, and the record shows that it did. The record makes clear that the DACA BCU team adjudicated the DACA request and made its totality-of-the-circumstances analysis only after considering Mr. Ramirez's response to the NOID and conducting a review of the facts and law with SCOPS. *See* AR 42-49, 56-62.

Furthermore, Mr. Ramirez cites to no authority for his contention that only certain violent criminal offenses can justify denying a DACA request. ECF No. 144 at ¶ 99. Rather, the DACA SOP defines a disqualifying "non-significant misdemeanor" only by the potential term of imprisonment, with no requirement as to the character of the underlying crime. ECF No. 144-7 at 84-85. The SOP also states that even "minor traffic offenses" must be considered in a totality of the circumstances evaluation such as the one that was made in this case. *Id*. at 85.

Where Mr. Ramirez does not dispute that he had the opportunity to respond to the criminal charges in the September 2018 NOID and actually did so, he cannot show that the agency was not permitted to consider his criminal conduct in adjudicating his DACA request. The timing of when USCIS first became aware of the derogatory information and first chose to rely on it in adjudicating his DACA request are irrelevant. The criminal conduct is verified and uncontested and the DACA SOP provides specific guidance for its consideration.

**B.  There is no protected interest in a prospective DACA grant.**

Mr. Ramirez fails to establish a due process right to a grant of DACA, and, in fact, he makes no such effort. Instead, Mr. Ramirez rests his entire due process argument on the incorrect premise that he retained a protected interest in DACA even after it expired. *See* ECF No. 144 at ¶ 107 ("Where, as here, an individual reasonably relies on a *conferred* status to pursue these activities, the government cannot *revoke* that status without adequate procedural due process.")

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

18

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

(emphasis added) (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that once a benefit is granted "continued possession may become essential in the pursuit of a livelihood").

Though the Government maintains its disagreement with the Court's earlier finding that a discretionary grant of DACA creates any protected interest, that finding was limited to DACA recipients. ECF No. 132 at 20 (citing *Torres v. DHS*, 2018 U.S. Dist. LEXIS 62366, *25-26 (S.D. Cal. Apr. 12, 2018).[2] Mr. Ramirez points to no case that supports a liberty interest in a prospective discretionary DACA *grant*, and the Ninth Circuit has found that there is none. *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (underscoring that aliens cannot claim a cognizable due process interest in discretionary immigration relief or benefits); *see also Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). The Ninth Circuit recently held that "a protected property right exists when 'a statute authorizes those benefits and the implementing regulations greatly restrict the discretion of the people who administer those benefits.'" *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1090 (9th Cir. 2019) (quoting *Nozzi*, 806 F.3d at 1191). "If government officials have the discretion to grant or deny a benefit, that benefit is not a protected property interest." *Id.* (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

Though Mr. Ramirez makes multiple claims related to termination of a prior DACA grant, the inchoate NOIT based on suspected gang affiliation, and the subsequent reliance on his criminal conduct in the denial of his latest DACA request, the only relief possible from this Court—a new grant of deferred action—is discretionary, and the Government never expressed a mutual intention to confer a protected benefit in DACA, much less to grant DACA to every individual who may meet the guidance criteria. To the contrary, the DACA SOP and DACA Memo repeatedly disclaim as much. *See, e.g.*, ECF No. 144-7, DACA SOP, at 18, 44, 50, 51, 54,

---

[2] Notably, the *Torres* court ultimately dismissed the plaintiff's Fifth Amendment claims because he received a NOIT and an opportunity to meaningfully respond. *Id* at *26.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

19

55, 60 (a requestor who meets the guidance criteria may be considered for DACA); ECF NO. 144-4 at 3 (DACA "confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.").

Thus, even an individual seeking renewal of an existing DACA grant lacks a protected interest in the continuation of DACA beyond the expiration date of that existing grant. ECF No. 144-2 at 2, DACA FAQ ("Individuals who demonstrate that they meet the guidelines below may request consideration of [DACA] for a period of two years, subject to renewal."); *see Blantz*, 727 F.3d at 922 (government employees under contract can only have a protected property interest in their continued employment "*if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause.") (court's emphasis) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). In the DACA context, the Ninth Circuit found that a state policy denying all DACA *recipients* with valid EAD access to a driver's license violated the Equal Protection Clause, in part because it prevented plaintiffs from utilizing the EAD they had already been granted. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1057-58 (9th Cir. 2014), *cert. denied*, 138 S. Ct. 1279 (2018). The Court did not find that any unlawfully present individual was entitled to receive DACA or continue receiving DACA beyond the established expiration date. *See also Texas v. United States*, 809 F.3d 134, 166 (5th Cir. 2015) (describing benefits conferred on DACA recipients).

### C.  Mr. Ramirez fails to make a retaliation claim under the APA or the Constitution.

To prevail on his First Amendment claims, Mr. Ramirez must first established a protected interest, which he cannot do, and then must show but-for causation; in other words, but for the alleged retaliation, the challenged enforcement action "would [not] have been taken." *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *Watson v. City of Vancouver*, No. C13-5936 RBL, 2015 WL 1137530, at *10 (W.D. Wash. Mar. 12, 2015) (First Amendment retaliation claim rejected where plaintiff "points to no evidence to support his theory that he was arrested and prosecuted" because of his comments to police "and not for any of the other reasons identified by the Defendants.") (citing *Moore,* 547 U.S. at 260).

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

20

Instead, Mr. Ramirez argues only that the denial must be retaliatory "[i]n light of the history of Defendants' treatment of Mr. Ramirez," and because most DACA renewal requests are granted. ECF No. 144 at ¶ 117. However, Mr. Ramirez does not contest the veracity of the criminal conduct relied on in support of the denial decision, nor can he show that reliance was not provided for in the DACA SOP. Thus, even if, *arguendo*, Mr. Ramirez could establish "some retaliatory animus in the official's mind," the claim would still fail. *Moore,* 547 U.S. at 260.[3]

### D.  Mr. Ramirez's estoppel claim is not supported by the record.

As an initial matter, equitable estoppel against the Government is "unavailable where petitioners have not lost any rights to which they were entitled." *Byung Hoon Chung v. Holder*, 312 F. App'x 950, 951 (9th Cir. 2009) (citation omitted). Though Mr. Ramirez makes two claims: that the NOIT issuance based on suspected gang affiliation and the subsequent reliance on his criminal conduct in the denial were both acts of misconduct, the only relief possible—the relief he expressly seeks—is a forced grant of DACA with no expiration and no avenue to termination. ECF No. 144 ¶ 122. Where Mr. Ramirez cannot show entitlement to a favorable exercise of prosecutorial discretion, this claim must fail. Furthermore, "[a] party asserting estoppel against the government bears heavy burdens." *Mauting v. I.N.S.*, 16 F. App'x 788, 791 (9th Cir. 2001) (relief will be denied if a claim "is facially deficient, or cannot be sustained on the undisputed facts"); *see Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1166 (9th Cir. 2005) (to be estopped, the Government must engage in affirmative misconduct, meaning it must know the facts; must intend that its conduct will be acted on; the claimant must be ignorant of the true facts; and the claimant must detrimentally rely on the Government's conduct). "Affirmative misconduct" is

---

[3] In a similar substantive due process claim to DACA termination, the *Torres* court found:

> Here, there is no indication that Defendants engaged in any conscience-shocking or clearly arbitrary and unreasonable conduct, or that factual determinations by duly constituted administrative bodies made in the ordinary and normal course of an administrative proceeding violate the concept of "ordered liberty."

*Torres v. U.S. Dep't of Homeland Sec.*, No. 17CV1840 JM(NLS), 2018 WL 3495830, at *2 (S.D. Cal. July 20, 2018). This case similarly lacks any indicators of conscience-shocking conduct.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

21

more than negligence, it means a "deliberate lie" or "a pattern of false promises." *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001).

Mr. Ramirez makes two bald assertions, neither of which is true and neither of which demonstrates the elements necessary for estoppel: first, that counsel for the Government lied to this Court in asserting that Mr. Ramirez was gang affiliated, ECF No. 144 ¶ 122; and second, that Counsel lied to this Court by falsely presenting Mr. Ramirez's suspected gang affiliation as the only grounds for DACA termination or denial of a renewal request. *Id*. at ¶¶ 123-24.

Both of these claims lack factual support. First, the Government has been clear to the Court that USCIS's NOIT was based on Mr. Ramirez's own statements. *See* ECF No. 123 at 10; ECF No. 131 at 8-9. This is unremarkable, as it was stated by USCIS in its NOIT. *See* ECF No. 144-13. While the Court had concerns with the sufficiency of this evidence—it is inaccurate for the Court to find that there was "no evidence" to support the Government's assertions.[4]

Far from an act of misconduct, the NOIT fairly expressed the same set of facts and conclusions that existed at the time Mr. Ramirez's DACA was terminated, and invited Mr. Ramirez to respond with evidence and arguments to overcome the record before the agency. *See* ECF No. 144-13. Furthermore, after reviewing Mr. Ramirez's NOIT response—and before the Court issued its preliminary injunction—USCIS decided not to terminate his DACA. *See* AR 8-9. This evidence supports the Government's contention that it worked in earnest to consider Mr. Ramirez's evidence, and undercuts his baseless allegation that he is the subject of "an unlawful vendetta based on a fiction." ECF No. 144 at 4.

---

[4] The Government would also make clear that the evidence the Court relied on to enjoin the Government from asserting a suspicion of gang affiliation was impermissible extra-record evidence. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). The Court relied on Mr. Ramirez's evidence developed after the initial DACA termination occurred, *see* ECF NO. 132 at 17-18 ("These conclusory findings have since been contradicted by experts and other evidence"); and before the USCIS adjudicator had the opportunity to consider Mr. Ramirez's new evidence in deciding whether to terminate his reinstated DACA. *Id*. at 20. The record now shows that, although not in time to notify the Court before the preliminary injunction issued, once the USCIS NSC had the chance to consider Mr. Ramirez's NOIT response, it abandoned its decision to terminate his DACA. AR 8-9.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

22

Furthermore, Mr. Ramirez provides no evidence to support his claim that the Government actively concealed an intent to rely on his criminal history. Nor can he establish that he was unaware of his own criminal record or that he relied to his detriment on USCIS not raising this criminal history. In fact, undercutting Mr. Ramirez's estoppel argument is the fact that he himself had a duty to disclose his criminal conduct, and he failed to do so. *See* AR 6; *Johnston v. McLaughlin*, 55 F.2d 1068, 1069 (9th Cir. 1932) ("It is a fundamental principle of law that no person can take advantage of his own wrong."). The record shows that "USCIS was not aware of Mr. Ramirez's prior criminal conduct at the time it adjudicated his 2016 DACA request." ECF No. 144-14 at 3; AR 6. The DACA request instructions are also clear that all renewal requestors must complete the criminal information section under penalty of law. ECF No. 90-3, I-821D Instructions at 4; *id*. at 10 ("If you have been arrested for or charged with any . . . misdemeanor (i.e., a Federal, state, or local criminal offense for which the maximum term of imprisonment authorized is one year or less but greater than five days) in the United States, . . . you must submit evidence demonstrating the results of the arrest or charges brought against you."); *id*. at 13 ("If you knowingly and willfully provide materially false information on Form I-821D, you will be committing a Federal felony punishable by a fine, or imprisonment up to five years, or both, under 18 U.S.C. Section 1001."). "[V]iolation of California Vehicle Code section 14601.2(a) [driving without a valid license] carries a sentence of 'not less than 10 days and more than six months' in jail and a fine of not less than $300 and not more than $1,000." *United States v. Morales*, No. 2:17-PO-0137 DB, 2017 WL 2264853, at *1 (E.D. Cal. May 24, 2017) (citing C.V.C. § 14601.2(d)(1)) (emphasis removed). Mr. Ramirez was cited in 2012 and 2016 for driving without a license in California, AR 59, but failed to disclose these or any of his other crimes in any of his DACA requests. He cannot now seek to estop the Government from relying on the information once he finally disclosed it in another forum. *See* AR 6-7.

Rather than serve as evidence of the Government's animus, Mr. Ramirez's criminal record suggests that he may never have received DACA in the first instance had he disclosed his criminal record as he was required to do by law. *See* ECF No. 144-7 at 160-61 ("USCIS may

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

23

deny your request for consideration of [DACA]" for failure to fully respond to the I-821D question, "Have you EVER been arrested for, charged with, or convicted of a felony or misdemeanor, *including incidents handled in juvenile court,* in the United States? *Do not include minor traffic violations unless they were alcohol or drug-related.*") (emphasis in original).

The fact is Mr. Ramirez received advance notice of the criminal grounds the Government intended to rely on to deny his DACA request and the opportunity to respond. His allegation that the Government should have informed him sooner does not amount to a violation of the DACA SOP, the APA, or any potential due process right.

### E.  Mr. Ramirez cannot establish that the denial of his DACA renewal request violated the Court's preliminary injunction.

Mr. Ramirez argues incorrectly that the DACA denial violated the Court's preliminary injunction by finding him to be a public safety threat. ECF No. 144 at ¶ 85. However, the term "public safety threat" is not in the denial letter, and the denial provides a justification that does not require a finding of a threat to public safety. ECF No. 144-14. The BCU officer also noted that she did not consider Mr. Ramirez to be a public safety threat. AR 46-47.

Mr. Ramirez's central claim here amounts to a charge that the Government was precluded from relying on *any* derogatory information it may have discovered in adjudicating his DACA request. Such a broad and burdensome prohibition is not supported by the plain language of the preliminary injunction. *See* ECF No. 144 at ¶ 85; *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013) (Federal Rule 65(d) requires "[e]very order granting an injunction" to "state its terms specifically" and to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."). Nor does Mr. Ramirez offer any support to show that the criminal conduct, including unpaid traffic citations and possession of marijuana, could (or must) constitute public safety threats.

### CONCLUSION

For the foregoing reasons, the Court should find it lacks jurisdiction over Mr. Ramirez's TAC. In the alternative, the Court should grant Defendants summary judgment because substantial evidence in the AR supports the denial of Mr. Ramirez's DACA request.

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

24

DATED: August 7, 2019                          Respectfully submitted,

JOSEPH H. HUNT                                 JEFFREY S. ROBINS
Assistant Attorney General                     Deputy Director

WILLIAM C. PEACHEY                             */s/ James J. Walker*
Director                                       JAMES J. WALKER
                                               Trial Attorney
                                               U.S. Department of Justice
                                               Civil Division
                                               Office of Immigration Litigation
                                               District Court Section
                                               P.O. Box 868, Ben Franklin Station
                                               Washington, D.C. 20044
                                               Phone: (202) 532-4468
                                               Fax: (202) 305-7000
                                               Email: james.walker3@usdoj.gov

                                               *Attorneys for Defendants-Appellants*

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document should automatically be served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ James J. Walker*
JAMES J. WALKER
Trial Attorney

Motion to Dismiss/Motion for
Summary Judgment on Plaintiff's
Third Amended Complaint
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

26

The Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL RAMIREZ MEDINA,<br>        Plaintiff,<br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br>        Defendants. | Case No. 2:17-cv-00218-RSM-JPD<br><br>**[PROPOSED] ORDER GRANTING<br>DEFENDANTS' MOTION TO DISMISS<br>PLAINTIFF'S THIRD AMENDED<br>COMPLAINT OR MOTION FOR<br>SUMMARY JUDGMENT** |

      This matter came before the Court on Plaintiff's Third Amended Complaint and

Defendants' Motion to Dismiss and Motion for Summary Judgment. The Court, having read and

considered the papers, the supporting declarations and exhibits submitted therewith, and any

argument on the matters, finds itself fully advised and hereby REPORTS AND

RECOMMENDS:

1   Defendants' motion to dismiss is GRANTED.

2   Defendants' motion for summary judgment is GRANTED.

3   DATED: _____ 2019

4                                                    _____
                                                     The Honorable James P. Donohue
5                                                    Chief Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Order
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

2

Presented by:

JEFFREY S. ROBINS
Deputy Director

*/s/ James J. Walker*
JAMES J. WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Defendants*

[Proposed] Order
Case No. 2:17-cv-00218-RSM-JPD

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4468

3