The Honorable Ricardo S. Martinez
Chief United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

DANIEL RAMIREZ MEDINA,

               Plaintiff,

       v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES,

               Defendants.

CASE NO. 2:17-CV-00218-RSM-JPD

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT**

Noted for Consideration: August 30, 2019

ORAL ARGUMENT REQUESTED

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

Attorneys for Plaintiff
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
  mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431), *pro hac vice*
  jlondon@publiccounsel.org
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*
  keidmann@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089


GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR. (CA SBN 132099), *pro hac vice*
  tboutrous@gibsondunn.com
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
  kmarquart@gibsondunn.com
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*
  nbach@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
  edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


ERWIN CHEMERINSKY (DC SBN 289330; IL SBN 3122596), *pro hac vice*
  echemerinsky@law.berkeley.edu
University of California, Berkeley School of Law
*Affiliation for identification purposes only*
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

OPPOSITION TO FEDERAL AGENCY DEFENDANTS'
MOTION TO DISMISS THIRD AMENDED COMPLAINT
AND MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

i

LEAH M. LITMAN (DC SBN 1016310), *pro hac vice*
  llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only*
401 East Peltason Drive
Educ 1095
Irvine, CA 92697
Telephone: (949) 824-7722


LAURENCE H. TRIBE (MA SBN 126736; CA SBN 039441), *pro hac vice*
  larry@tribelaw.com
Harvard Law School
*Affiliation for identification purposes only*
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767


ELIZABETH HAWKINS (SBN 43187)
  ehawkins@hawkinsimmigration.com
Hawkins Law Group
17544 Midvale Avenue, Suite 301
Shoreline, WA 98133
Telephone: (206) 728-4220
Facsimile: (206) 973-5326


IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*
  lcortes@ia-lc.com
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591


NORTHWEST IMMIGRANT RIGHTS PROJECT
MATT ADAMS (SBN 28287)
  matt@nwirp.org
615 Second Ave., Suite 400
Seattle, WA 98104
Telephone:  (206) 957-8611

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

ii

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF RELEVANT FACTS ............................................................. 2

III.   LEGAL STANDARD ........................................................................................... 5

IV.    ARGUMENT ........................................................................................................ 6

    A.    Defendants' Motion Is a Transparent Attempt to Evade Compliance with the Court's PI Order, Which the Court Has Jurisdiction and Authority to Enforce ........... 6

    B.    Mr. Ramirez's Claims Are Not Moot, and This Court Has Jurisdiction to Consider the History of Government Misconduct Against Him .................................... 8

    C.    This Court Has Already Recognized That 8 USC § 1252(g) and 5 U.S.C. § 701(a) Do Not Bar Consideration of Mr. Ramirez's Claims ................................... 10

        1.    Defendants' Factual Challenge to the Court's Jurisdiction Also Fails ........... 12

    D.    Summary Judgment for Defendants Is Improper Because the Current Administrative Record Is Both Incomplete and Actually Supports Plaintiff's Claims ............................................................................................................................ 14

        1.    Defendants' Request for Summary Judgment Is Premature as the Current Administrative Record Is Incomplete ................................................... 15

        2.    The Current and Prior Administrative Records Support Mr. Ramirez's Claims ................................................................................................................ 16

            a.    The Facts in the AR Support Mr. Ramirez's Claims that Defendants Failed to Follow Their Procedures in Denying his DACA Renewal Request .................................................................... 16

            b.    Mr. Ramirez Has a Cognizable Property Interest in his DACA Status ............................................................................................... 18

            c.    The AR Proves Mr. Ramirez's Retaliation Claim .............................. 18

            d.    Mr. Ramirez's Estoppel Claim Is Supported by the Record ............... 19

            e.    Mr. Ramirez Established That the Denial of His DACA Renewal Request Violated This Court's Order .................................. 21

V.     CONCLUSION ................................................................................................... 22

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

i

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Anderson v. Liberty Lobby Inc.*,

5

    477 U.S. 242 (1986) .................................................................................................5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................5

7

8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................5

9

*California v. Azar*,

10

    911 F.3d 558 (9th Cir. 2018) ...................................................................................9

11

*Cardenas v. Lynch*,
    669 F. App'x 354 (9th Cir. 2016) .........................................................................20

12

*Cty. of Sacramento v. Lewis*,

13

    523 U.S. 833 (1998) ...............................................................................................18

14

*Dep't of Commerce v. New York*,

15

    139 S. Ct. 2551 (2019) .......................................................................................1, 17

16

*Does v. Trump*,
    328 F. Supp. 3d 1185 (W.D. Wash. 2018) .............................................................9

17

*Eat Right Foods Ltd. v. Whole Foods Market, Inc.*,

18

    880 F.3d 1109 (9th Cir. 2018).............................................................................5, 6

19

*FCC v. Fox Television Stations, Inc.*,

20

    556 U.S. 502 (2009) ...............................................................................................17

21

*Fla. Power & Light Co., v. Lorion*,
    470 U.S. 729 (1985) ...............................................................................................15

22

*Inland Empire-Immigrant Youth Collective v. Nielsen*,

23

    2018 WL 1061408 (C.D. Cal. Feb. 26, 2018).................................................10, 14

24

*Judulang v. Holder*,
    565 U.S. 42 (2011) .................................................................................................17

25

26

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2005)...............................................................................15

27

28

OPPOSITION TO DEFENDANTS' MOTION TO                    Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014)............................................................................................5

*Ms. L. v. ICE*,
    302 F. Supp. 3d 1149 (S.D. Cal. 2018) ............................................................................18

*Ramirez Medina v. U.S. Dep't of Homeland Sec.*,
    No. C17-0218RSM, 2017 WL 5176720 (W.D. Wash. Nov. 8, 2017) ...........................10

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018), *cert. granted*,
    87 U.S.L.W. 3201 (U.S. June 28, 2019) ...........................................................................9

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .........................................................................................................10

*Salgado-Diaz v. Gonzales*,
    395 F.3d 1158 (9th Cir. 2005)..........................................................................................19

*Shillitani v. United States*,
    384 U.S. 364 (1966) ...........................................................................................................6

*Snyder & Assocs. Acquisitions LLC v. United States*,
    859 F.3d 1152 (9th Cir. 2017)............................................................................................5

*Tolan v. Cotton*,
    134 S. Ct. 1861 (2014) .......................................................................................................6

*Trout Unlimited v. Lohn*,
    C05-1128C, 2006 WL 1207901 (W.D. Wash. May 4, 2006) ..........................................12

*Tyler v. Cuomo*,
    236 F.3d 1124 (9th Cir. 2000)............................................................................................9

*In re United States*,
    875 F.3d 1200 (9th Cir. 2017), *rev'd on other grounds*,
    138 S. Ct. 443 (2017) .......................................................................................................12

*United States v. Goldfine*,
    538 F.2d 815 (9th Cir. 1976)..............................................................................................8

*United States v. Yacoubian*,
    24 F.3d 1 (9th Cir. 1994)....................................................................................................6

*Webster v. Doe*,
    486 U.S. 592 (1988) .........................................................................................................12

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) .........................................................................................................18

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

iii

Gibson, Dunn &
Crutcher LLP

*Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004)..........................................................................................10

**Statutes**

5 U.S.C. § 706(2)(A)..........................................................................................................6, 14

**Rules**

Fed. R. Civ. P. 56(a)..........................................................................................................5, 14

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

iv

## I.     INTRODUCTION

For the last two and a half years, there has been one constant in Mr. Ramirez's life—the United States government's sustained, unlawful campaign to deprive him of his DACA status and work authorization benefits, principally by defaming him as a gang member.  The facts of the government's campaign against Mr. Ramirez are well known to this Court, and have recently been summarized at length in his Third Amended Complaint ("TAC"), Dkt. 144, and Motion for Second Preliminary Injunction or, In the Alternative, To Compel Compliance With Preliminary Injunction Order ("Second PI Motion"), Dkt. 147.  Defendants' jurisdictional argument are also familiar to this Court, as it previously denied these precise arguments when Defendants moved to dismiss Plaintiff's Second Amended Complaint.  *See* Dkt. 116 (Nov. 8, 2017 Order on Mot. to Dismiss SAC).  Defendants' attempt to put a different gloss on their arguments and to bring a factual challenge by relying on an incomplete Administrative Record ("AR"), Dkt. 153, do not compel a different result this time around.

Moreover, both Defendants' jurisdictional and AR-based factual arguments fail for the simple reason that this Court has jurisdiction to enforce its own orders, including the May 15, 2018 Order Granting Plaintiff's Motion for Preliminary Injunction ("PI Order"), and to consider the record on which that order is based.  Defendants' mootness argument fails for this same reason, and because Mr. Ramirez is entitled to a final ruling and damages relating to the government's actions predating its December 2018 denial of his DACA renewal application.  Finally, Defendants' summary judgment arguments are both premature (as the record is incomplete) and factually unsupported in any event.  Indeed, the reviewable facts available to this Court, including the government's history of misconduct toward Mr. Ramirez—which is the lens through which its recent actions must be viewed for pretext, *see Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019)—and even the new AR supplied with this motion, confirm not only that Mr. Ramirez's claims have merit, as set forth in his Second PI Motion, but that the government has again refused him DACA for false and unlawful reasons.  *See, e.g.*, AR 000025 (seeking as pretext "other grounds

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

1

Gibson, Dunn &
Crutcher LLP

1  for considering Ramirez-Medina as an enforcement priority that are completely independent of the

2  gang statements").

3       Therefore, this Court has both jurisdiction and sufficient evidence before it to enforce its

4  own PI Order, deny Defendants' Motion, and grant Mr. Ramirez's Second PI Motion.

5              **II.      STATEMENT OF RELEVANT FACTS**

6       Mr. Ramirez's parents brought him to the United States when he was only 10 years old.

7  Having grown up in this country, Mr. Ramirez became a "Dreamer" in 2014, after he applied for and

8  the government granted him deferred action and work authorization.  Dkt. 144 ¶ 40.  Before he was

9  granted his DACA status, Mr. Ramirez underwent rigorous vetting and criminal background checks.

10 *Id.*  As part of this process, Mr. Ramirez provided the government with his birth certificate, school

11 records, and information about where he lived, and attended a biometrics appointment so that

12 USCIS could take his fingerprints and photographs.  Dkt. 78-15 ¶ 3.  In 2016, the government

13 renewed Mr. Ramirez's DACA for two more years after he had passed another set of background

14 and criminal checks.  Dkt. 144  ¶ 41.  Mr. Ramirez was subject to additional vetting in 2015, when

15 USCIS conducted an additional screening of all DACA beneficiaries.  Dkt. 144-6 at 3–4 (USCIS

16 Letter).

17      Mr. Ramirez benefitted greatly from DACA.  Dkt. 78-15 ¶¶ 5–7.  Beyond deferred action,

18 these benefits include work authorization, eligibility for public benefits such as Social Security,

19 retirement, and disability, and, under Washington law, unemployment insurance, financial aid, and

20 food assistance.  Dkt. 144 ¶¶ 26–28.  DACA also allows beneficiaries access to other important

21 benefits, enabling recipients to open bank accounts, start businesses, purchase homes and cars, and

22 conduct other aspects of daily life that are otherwise often unavailable to them.  *See id.* ¶ 29.

23      But in February 2017, ICE agents detained Mr. Ramirez without cause and held him in

24 detention, even though he presented them with proof of his work authorization papers that

25 confirmed his DACA status.  Dkt. 78-15 ¶¶ 14–17; *see also* Dkt. 93 at 25 (Form I-213).  After

26 unlawfully arresting Mr. Ramirez, the government confiscated his work permit, detained him for 47

27 days, and began a campaign to strip him of his DACA based on unsupported, false claims that he

28

OPPOSITION TO DEFENDANTS' MOTION TO                                    Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1    belonged to a gang.  Dkt. 144 ¶¶ 43–82.  Mr. Ramirez then filed suit in this Court, seeking relief

2    from the government's unlawful actions.  After he filed suit, the government began portraying Mr.

3    Ramirez as a "gang member" in the media.  Dkt. 144 ¶¶ 65–68.

4         Defendants moved to dismiss Mr. Ramirez's second amended complaint, Dkt. 78, using the

5    same arguments that they make here, including on the basis that 8 U.S.C. § 1252(g) and Section

6    701(a) of the Administrative Procedure Act ("APA") strip the Court of jurisdiction.  This Court

7    denied that motion on November 8, 2017, finding that Mr. Ramirez stated plausible claims under

8    Rule 12(b)(6) and that the Court has jurisdiction under Rule 12(b)(1) to determine whether

9    Defendants followed their own non-discretionary procedures in the events leading up to and

10   including termination of his DACA status.  Dkt. 116.

11        Over a year later, in April 2018, after Mr. Ramirez had filed his first Motion for Preliminary

12   Injunction, the government restored Mr. Ramirez's DACA status in "compliance" with the *Inland*

13   *Empire* Order.  But at the very same time, the government issued a Notice of Intent to Terminate

14   ("NOIT") to deprive him of that newly restored status based on the false claim that Mr. Ramirez was

15   in a gang.  Dkt. 144-13.  The government knew that these claims were false at the time, as

16   confirmed by its own internal correspondence from March 20, 2018.  Dkt. 144-1 (Mar. 20, 2018

17   USCIS Email).  Even as the government continued arguing to this Court that Mr. Ramirez was a

18   gang member, its own emails confirmed that Mr. Ramirez has "[n]o criminality on rap sheet"; "there

19   is not sufficient evidence to conclude he is currently a known or suspected gang member"; "if this

20   was a pending case, it would have been further vetted"; and "[t]here is NOT sufficient evidence to

21   conclude [Mr. Ramirez] is an EPS concern."  *Id.*

22        The government's unlawful termination of Mr. Ramirez's DACA status, in early 2017,

23   deprived him of DACA and work authorization *for 14 months*—the majority of his two-year DACA

24   term.  On May 15, 2018, recognizing that this was the day Mr. Ramirez's DACA was set to expire,

25   this Court ordered that the government not terminate Mr. Ramirez's DACA and work authorization

26   pending trial on the merits in this action.  Dkt. 133 at 23 n.7 ("In the instant matter, Plaintiff's

27   DACA status expires today.").  Specifically, the Court's PI Order enjoins the government from

28

OPPOSITION TO DEFENDANTS' MOTION TO                                    Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1    "terminat[ing] [Ramirez's] DACA status and work authorization pending a final decision by this

2    Court on the merits of his claims," and "from asserting, adopting or relying in any proceedings on

3    any statement or record made as of this date purporting to allege or establish that Mr. Ramirez is

4    a gang member, gang affiliated, or a threat to public safety."  Dkt. 133 at 23.  In its pending motion to

5    dismiss, the government argues that part of the Court's order was effectively a nullity because Mr.

6    Ramirez's DACA expired on its own later that same day.  Dkt. 152 at 10.

7         Following the issuance of the PI Order, and in an abundance of caution given that this Court

8    had already enjoined Defendants from terminating his benefits, Mr. Ramirez submitted a request to

9    the government to renew his DACA and work authorization.  Dkt. 144 ¶ 83.  The government

10   violated this Court's PI Order by issuing Mr. Ramirez a Notice of Intent to Deny ("NOID") on

11   September 26, 2018 and a final denial on December 19, 2018.  Both the NOID and the final denial

12   relied on an existing record that "purport[s] to allege or establish that Mr. Ramirez is . . . a threat to

13   public safety"—precisely what the PI Order prohibits.

14        Mr. Ramirez then brought a motion for leave to amend to file a third amended complaint,

15   which this Court granted over Defendants' opposition.  Dkt. 143.  Mr. Ramirez filed his TAC on

16   May 29, 2019, Dkt. 144, and a Second Motion for Preliminary Injunction one week later, Dkt. 147.

17   Defendants filed the instant Motion on August 7, 2019.  In support of its Motion, the government

18   submitted a heavily redacted and incomplete AR, which does not include the March 20, 2018

19   USCIS email that Mr. Ramirez highlighted in his TAC and Second PI Motion.

20        The newly submitted AR does show, however, that only weeks after this Court issued its PI

21   Order, USCIS actively started looking for "other grounds . . . that are completely independent of the

22   gang statements" to deny his application.  AR 000025.  In other words, the government explicitly

23   went searching for reasons to deny Mr. Ramirez's DACA status, after this Court prohibited the

24   government from falsely calling him a gang member.  As the government has conceded, the minor

25   infractions that USCIS used as the basis for denying Mr. Ramirez's DACA renewal were known to

26   the government long before Mr. Ramirez sought his DACA renewal.  Dkt. 152 at 10 (conceding that

27   "ICE had learned of the information from Mr. Ramirez in his removal proceedings and as part of his

28

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

4

Gibson, Dunn &
Crutcher LLP

1   application to the immigration court for cancellation of removal").  The government's denial of Mr.

2   Ramirez's routine DACA renewal application itself was based on the pretext of these minor

3   offenses, which even the USCIS adjudicator assigned to his case did not find sufficient to deny the

4   renewal.  The adjudicating officer observed that "we have approved DACA requests with similar

5   situations" with regard to his consensual relationship; that "traffic fines have never been evaluated

6   as a discretionary factor which has led to . . . denial of a DACA request"; and that "[p]ossession of

7   marijuana citations are generally not disqualifying for DACA . . . ."  *See* AR 000004, 000047,

8   000058.

9                                    **III.    LEGAL STANDARD**

10          In evaluating a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

11   12(b)(6), the court must "accept as true all facts alleged in the complaint and construe them in the

12   light most favorable to plaintiff[], the non-moving party."  *Snyder & Assocs. Acquisitions LLC v.*

13   *United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).  Where a defendant challenges jurisdiction

14   under Rule 12(b)(1) on the ground that plaintiff's allegations are "insufficient on their face . . . the

15   court determines whether the allegations are sufficient as a legal matter to invoke the court's

16   jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal citation and

17   quotation omitted).  The court must deny a motion to dismiss under Rule 12(b)(6) if the complaint

18   contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

19   face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

20   544, 570 (2007)).

21          Summary judgment is appropriate only where "there is no genuine dispute as to any material

22   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material

23   fact is one "'that might affect the outcome of the suit under the governing law.'"  *Eat Right Foods*

24   *Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 1118 (9th Cir. 2018) (citing *Anderson v. Liberty*

25   *Lobby Inc.*, 477 U.S. 242, 247 (1986)).  When evaluating a motion for summary judgment, "the

26   judge's function is not himself to weigh the evidence and determine the truth of the matter but to

27   determine whether there is a genuine issue for trial."  *Id.* (citing *Anderson*, 477 U.S. at 249.)  And

28

OPPOSITION TO DEFENDANTS' MOTION TO                                Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

while making that determination, a judge must view the evidence in the light most favorable to the

nonmoving party and make all reasonable inferences in favor of that party. *Id.* (citing *Tolan v.*

*Cotton*, 134 S. Ct. 1861, 1866–68 (2014)).  Motions for summary judgment brought under the APA

and agency determinations, such as those made by USCIS and ICE, are reviewed for arbitrariness,

capriciousness, and abuse of discretion.  5 U.S.C. § 706(2)(A).  As Mr. Ramirez asserts claims under

both the Constitution and the APA, both standards apply to Defendants' motion.

## IV.    ARGUMENT

Defendants' jurisdictional and summary judgment arguments boil down to (1) a rehash of

arguments this Court previously rejected in denying Defendants' prior motion to dismiss, and

(2) asking this Court to ignore its history of unlawful misconduct toward Mr. Ramirez and telling the

Court it is powerless to do anything about it.  Indeed, the premise of the government's motion is a

radical one—that this Court lacks power to enforce its own PI Order or to consider the record upon

which that Order was based.  That is not the law; Defendants' arguments should all be rejected.  This

Court has jurisdiction and has sufficient evidence before it to deny Defendants' Motion and to grant

Mr. Ramirez's Second PI Motion.

**A.    Defendants' Motion Is a Transparent Attempt to Evade Compliance with the Court's PI Order, Which the Court Has Jurisdiction and Authority to Enforce**

Defendants' jurisdictional arguments are a thinly disguised effort to avoid this Court's

enforcement of its PI Order.  But there is no question that this Court has the authority to enforce its

own order—which Defendants have violated—and jurisdiction is proper for this reason alone.  *See,*

*e.g.*, *United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) ("There [is] no question that courts have

inherent power to enforce compliance with their lawful orders . . . .") (citing *Shillitani v. United*

*States*, 384 U.S. 364, 370 (1966)).

On May 15, 2018, the Court granted Plaintiff's request for preliminary injunction ordering

that (1) "Defendants shall not terminate Plaintiff's DACA status and work authorization pending a

final decision by this Court on the merits of his claims," and (2) "Defendant USCIS is ENJOINED

from asserting, adopting, or relying in any proceedings on any statement or record made as of this

date purporting to allege or establish that Mr. Ramirez is a gang member, gang affiliated, or a threat

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

6

1  to public safety." Dkt. 133 at 23.  The Court's order was specifically designed to preserve Plaintiff's

2  DACA and work authorization "pending a final decision by this Court on the merits of his claims" in

3  recognition of the fact that Mr. Ramirez's DACA was set to expire that very same day.  *Id.* at 23 n.7.

4  Defendants' position—that expiration followed by renewal denial of Mr. Ramirez's DACA was

5  permissible—would eviscerate the protections of the Court's order entirely and render it superfluous.

6  In other words, according to the government, the Court's order lasted only the remainder of the day

7  on which it was issued, May 15.  Defendants' argument is all the more vicious because the

8  government had unlawfully terminated and deprived Mr. Ramirez of his DACA status *for 14 months*

9  before the Court entered its PI Order—the majority of his prior two-year DACA renewal term.

10       Following the PI Order, Mr. Ramirez believed he would be able to get back to his life without

11  harassment from the government and with the use of his restored benefits, including the protections

12  the PI Order afforded him.  Dkt. 144 ¶ 90.  Defendants, however, bulldozed straight through the PI

13  Order without even seeking reconsideration or relief from this Court to do so, and terminated Mr.

14  Ramirez's DACA before adjudication on the merits in this action in unlawful reliance on false claims

15  that Mr. Ramirez is a public safety threat.

16       In denying Mr. Ramirez's renewal, Defendants went to great lengths to attempt to skirt this

17  Court's PI Order:  they made no express mention of the discredited gang affiliation allegations that

18  they advanced for so long in this action and avoided using the term "public safety" in their NOID.

19  But Defendants' denial of Mr. Ramirez's application based on his alleged and long-existing "offense

20  history" is a pretext.  And Defendants also ran afoul of the Court's PI Order by (a) denying him

21  DACA prior to a final decision on the merits, and (b) relying on a pre-existing alleged criminal

22  "offense history" as the sole support for the denial.

23       The justifications described in the NOID clearly portray Mr. Ramirez as a public safety risk.

24  Indeed, the NOID cites the California Penal Code, the criminal U.S. Code, and five traffic safety-

25  related violations in support of its stated conclusion that Mr. Ramirez "do[es] not merit deferred

26  action under the DACA policy."  AR 000072.  There is no daylight between that preexisting "offense

27  history" or "criminal history" that Defendants rely on in denying his renewal and a "record made as

28

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

7

of this date purporting to allege that Mr. Ramirez is a . . . threat to public safety"—which Defendants were barred from relying on.  Dkt. 133 at 23.  Indeed, the criminal laws are specifically designed to ensure public safety.  *See United States v. Goldfine*, 538 F.2d 815, 827 (9th Cir. 1976) ("All would agree that the criminal law seeks to prevent harmful results . . . .").  Defendants cannot avoid violating the Court's PI Order just by leaving the words "public safety" out of the NOID.

Moreover, that "offense history" was known or available to the government when it granted Mr. Ramirez's initial DACA application and when it renewed his DACA in 2016, as all of the alleged offenses occurred prior to May of 2016.  AR 000063–65.  And internal government emails show that these "offenses" are not usually grounds for denying DACA, as Defendants concede that "we have approved DACA requests with similar situations" with regard to his consensual relationship and that "[p]ossession of marijuana citations are generally not disqualifying for DACA . . . ."  AR 000004.  If this "offense history" was truly a legitimate reason for denying Mr. Ramirez's DACA renewal, why is it the first time this Court has heard of it?  The government has not and cannot provide a credible answer—it is merely an attempt to circumvent the Court's Order and continue its vendetta against Mr. Ramirez.

Because the substantive bases cited in the Decision are fundamentally public safety-related and were part of the record that existed long before May 15, 2018, the government's Decision violates the Preliminary Injunction Order.  Defendants violated that Order and cannot avoid its enforcement by claiming this Court now lacks jurisdiction to enforce its own Order or consider Plaintiff's claims.

**B.     Mr. Ramirez's Claims Are Not Moot, and This Court Has Jurisdiction to Consider the History of Government Misconduct Against Him**

Mr. Ramirez advances justiciable claims.  He has brought claims for (1) violation of the APA to set aside agency action that is arbitrary and capricious, (2) violation of the APA to set aside agency action that violates his constitutional rights (under the Due Process Clause and First Amendment), (3) equitable estoppel, and (4) declaratory relief under the Declaratory Judgment Act.  Each of these

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

8

Gibson, Dunn &
Crutcher LLP

1    claims requires the Court's consideration of the government's history of misconduct and campaign of

2    defamation against Mr. Ramirez.

3         Defendants' mootness argument seeks to prevent the Court from considering the

4    government's misconduct that stretched over 14 months of Mr. Ramirez's last two-year DACA term,

5    and to prevent the Court from enforcing its own PI Order.  That history provides critical context for

6    the government's pretextual denial of Mr. Ramirez's DACA renewal based on alleged criminal

7    history already known to Defendants.  That history also specifically relates to the record on which

8    this Court issued the PI Order.  Indeed, the Court confirmed in its May 16, 2019 Order Granting

9    Plaintiff's Motion for Leave to Amend that it "has already found jurisdiction as to the allegations of

10   the Second Amended Complaint"; that "jurisdiction as to any new claims likely turns on factual

11   issues that are interconnected to Mr. Ramirez's previous claims"; and that "[t]he government's

12   mootness argument . . . fails for much the same reason."  Dkt. 143 at 5–6 & n.5.  Defendants' effort

13   to argue otherwise is meant to block this Court from enforcing its PI Order and from considering the

14   record upon which that Order was entered.

15        Where injunctions are involved, questions of mootness are determined "in light of the present

16   circumstances."  *California v. Azar*, 911 F.3d 558, 568 (9th Cir. 2018) (internal citations omitted).

17   The ultimate question is "whether changes in circumstances . . . have forestalled any occasion for

18   meaningful relief."  *Id.*  The party alleging mootness "bears a 'heavy' burden to establish that the

19   court can provide no effective relief."  *Does v. Trump*, 328 F. Supp. 3d 1185, 1196 (W.D. Wash.

20   2018) (internal citations omitted).  Defendants have not met this burden here, and the declaratory

21   judgment Mr. Ramirez requests would constitute such meaningful relief.  Where "changes can still be

22   made to help alleviate any adverse effects" of a governmental entity's action, a case is not moot even

23   if the government alleges "a course of action is mostly completed."  *Id.* (citing *Tyler v. Cuomo*, 236

24   F.3d 1124, 1137 (9th Cir. 2000)).

25        Finally, Defendants cite no authority to contravene this Court's finding that a discretionary

26   grant of DACA creates a protected interest.  *See* Dkt. 133 at 19–20.  The Ninth Circuit has found that

27   DACA recipients may indeed adjudicate the question of whether a right of presumptive renewal

28

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

existed where they allege that "individual DACA renewals were denied for no good reason." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 515 (9th Cir. 2018), *cert. granted*, 87 U.S.L.W. 3201 (U.S. June 28, 2019) (No. 18-587).  Here, Mr. Ramirez has so alleged, including because the government's only basis for seeking to terminate his DACA in the April 2018 NOIT was the discredited, enjoined allegation that he was a gang member or a threat to public safety.  Indeed, Mr. Ramirez seeks adjudication of his rights relating to DACA and damages relating to Defendants' prior violations of Mr. Ramirez's rights in terminating his DACA the first time, a claim this Court has jurisdiction and authority to hear.

C.    **This Court Has Already Recognized That 8 USC § 1252(g) and 5 U.S.C. § 701(a) Do <u>Not</u> Bar Consideration of Mr. Ramirez's Claims**

In seeking to dismiss Mr. Ramirez's complaint, the government has, once again, recycled arguments that were already rejected by this Court when it denied Defendants' prior motion to dismiss.  Dkt. 116 at 10–18.  Defendants argue that while the Court may have jurisdiction to review whether the government complied with its own non-discretionary procedures in terminating Mr. Ramirez's DACA, the government's latest actions in denying Mr. Ramirez's DACA renewal request—a request that he filed in an abundance of caution—are somehow different enough to be outside this Court's jurisdiction because "Mr. Ramirez's claims are nothing more than a challenge to the ultimate exercise of discretion to deny his request for deferred action."  Dkt. 152 at 22.  This is false as a matter of law and fact.

As the Ninth Circuit has recognized on multiple occasions, Section 1252(g) does not deprive this Court of jurisdiction to review Defendants' non-discretionary actions and determinations, and the statute's jurisdictional bar is "narrowly construed" and "'applies only to three discrete actions . . . to *commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Wong v. United States*, 373 F.3d 952, 963–64 (9th Cir. 2004) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), emphasis added in *Reno*); *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *15 (C.D. Cal. Feb. 26, 2018) ("USCIS's separate and independent decision to revoke DACA on the basis of an NTA, [] is independent of the

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGMENT Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

10

Gibson, Dunn & Crutcher LLP

limited category of decisions covered by § 1252(g)," citing *Ramirez Medina v. U.S. Dep't of Homeland Sec.*, No. C17-0218RSM, 2017 WL 5176720, at *6 (W.D. Wash. Nov. 8, 2017)).

Following this Ninth Circuit precedent, this Court has already determined that § 1252(g) does *not* apply to Mr. Ramirez's challenges to non-discretionary agency actions and to his constitutional claims. Dkt. 116 at 12–16. For the same reasons, this Court has "reject[ed] Defendants' argument that § 701(a) of the APA bars this Court from reviewing an agency's non-discretionary review process." *Id.* at 15 (finding that "Defendants' alleged failure to follow the procedures detailed in the DACA SOP does not implicate agency discretion"). And in issuing the PI Order, the Court expressly found that Mr. Ramirez's pleaded claims are not just plausible, but likely meritorious.

In his Third Amended Complaint, Mr. Ramirez challenges the failed process and non-discretionary government actions through which the government has sought to terminate Mr. Ramirez's DACA status on three occasions, culminating with the December 19, 2018 denial of his DACA renewal request. As this Court has observed, Mr. Ramirez's claims regarding the government's latest attempt to strip him of DACA's protections "likely turn[] on factual issues that are interconnected to Mr. Ramirez's previous claims"—claims regarding the government's termination of his DACA on the basis of unsubstantiated gang affiliation information, which even the government, in its own internal correspondence, did not find credible. *See* Dkt. 143 at 5–6; Dkt. 144-1 (Mar. 20, 2018 USCIS Email, confirming that Mr. Ramirez was "NOT . . . a known or suspected gang member" nor "an EPS concern," and that there was "[n]o criminality on [his] rap sheet") (emphasis added).

In addition, Mr. Ramirez has challenged the government's non-discretionary procedures, including whether it violated the *Accardi* doctrine when it denied Mr. Ramirez's renewal request in December 2018. A DACA request that presents "issues of criminality" must be reviewed and adjudicated by the BCU DACA Team, and certain procedures followed. Dkt. 144-7 at 33, 95–97 (DACA Standard Operating Procedures). As noted above, the Decision concludes that Mr. Ramirez no longer warrants favorable consideration under DACA based on his alleged criminal or "offense"

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

11

Gibson, Dunn &
Crutcher LLP

history.  AR 000074.  Mr. Ramirez has alleged that Defendants failed to follow the proper

procedures, an issue over which the Court unquestionably has jurisdiction.  *See* Dkt. 116.  Indeed,

questions for the Court to consider and which have not yet been answered include whether

Defendants' reliance on public safety-related grounds to deny renewal was consistent with the SOP

given the presence of the PI Order barring precisely such a consideration.

Furthermore, reading Sections 8 USC § 1252(g) and 5 U.S.C. § 701(a) to deprive the Court

of jurisdiction would raise serious constitutional concerns.  As the Supreme Court has explained,

"'serious constitutional question[s]' . . . would arise if a federal statute were construed to deny any

judicial forum for a colorable constitutional claim."  *Webster v. Doe*, 486 U.S. 592, 603 (1988)

(citation omitted).  Indeed, this Court has already recognized that DACA applicants are entitled to

due process and that the Court has jurisdiction to review Plaintiff's Due Process claim.  *See* Dkt. 116

at 15-16; *see also id.* at 18 ("While the Court recognizes and acknowledges that DACA does not

confer lawful status upon an individual, the Court also finds that the representations made to

applicants for DACA cannot and do not suggest that no process is due to them . . . .").

### 1.      Defendants' Factual Challenge to the Court's Jurisdiction Also Fails

In a last-ditch attempt to manufacture a factual challenge to this Court's jurisdiction and

attack Mr. Ramirez's claim that the government failed to follow its own procedures in denying his

DACA renewal request, Defendants submitted a heavily redacted administrative record.  But even a

cursory review shows that key documents are missing.  These include, for example, the

government's March 20, 2018 internal email recognizing that there is "[n]o criminality on [Mr.

Ramirez's] rap sheet."  Dkt. 144-1.  The record is also missing critical email discussions between

USCIS and ICE that occurred right after this Court issued the PI Order regarding "other grounds for

considering Ramirez-Medina as an enforcement priority that are completely independent of the gang

statements . . . ."  AR 000025.

Moreover, this heavily redacted and incomplete administrative record,[1] which the

---

[1]  The Court should order the government to provide a privilege log for the AR and to submit an
unredacted copy of the AR to the Court for in camera review.  While the government seeks to
dismiss the case on the basis of its AR, it has redacted large portions of the record on the basis of

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

government provided to Mr. Ramirez's counsel *just one day* before it filed its present dismissal motion, clearly demonstrates that the government was looking for a pretext to deny Mr. Ramirez's DACA renewal, and that it again failed to follow its own procedures in denying Mr. Ramirez this routine renewal.  It also highlights the interconnectedness between the government's denial of the renewal request and its prior arbitrary attempts to take away Mr. Ramirez's DACA status, which were based on the known falsehood that Mr. Ramirez is "a gang member, [or] has associated with gang members."  Dkt. 129, at 20:10-11.

For example, an internal ICE email from June 1, 2018 shows that USCIS had contacted ICE earlier the same week (*i.e.*, in late May 2018) to check "if there are other grounds for considering Ramirez-Medina as an enforcement priority that are completely independent of the gang statements [and] [i]f so, what would the basis of the EP be."  AR 000025.  The timing of this email exchange is less than two weeks after this Court had enjoined USCIS from "asserting, adopting or relying in any proceedings on any statement or record made as [May 15, 2018] that Mr. Ramirez is a gang member [or] gang affiliated."  Dkt. 133 at 23.  In the days and weeks that followed, Defendants developed the series of "offenses"—which have been long known to the government—on which they ultimately denied Mr. Ramirez's renewal request.  AR 000063–65.  These emails confirm Mr. Ramirez's claim that USCIS was actively looking for pretextual reasons to deny his DACA renewal in violation of their own nondiscretionary procedures.  Indeed, looking for "other grounds" to deny his renewal request was simply USCIS's effort to justify, *ex post*, ICE's predetermination that Mr. Ramirez was an "enforcement priority" and should be denied DACA renewal.  AR 000025.  Such a determination is not consistent with an exercise of prosecutorial discretion.

Even from the incomplete AR, it is also clear that the government failed to comply with its

---

deliberative privilege without explaining how and why the privilege applies.  *See In re United States*, 875 F.3d 1200, 1210 (9th Cir. 2017), *rev'd on other grounds*, 138 S. Ct. 443 (2017) (explaining that "many district courts within this circuit have required a privilege log and in camera analysis of assertedly deliberative materials in APA cases"); *see also Trout Unlimited v. Lohn*, C05-1128C, 2006 WL 1207901, at *5 (W.D. Wash. May 4, 2006) (ordering in-camera review of all documents withheld from the administrative record on the basis of the deliberative privilege).

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

nondiscretionary procedures.  *First*, to label Mr. Ramirez an enforcement priority, Defendants relied upon Executive Order 13768, Enhancing Public Safety in the Interior of the United States, issued on January 25, 2017.  AR 000024.  However, the Department of Homeland Security's memorandum implementing Executive Order 13768 explicitly *exempts* DACA recipients from its purview.  *See* Dkt. 78-4 at 2.  *Second*, when conveying its determination that it had designated Mr. Ramirez an enforcement priority, ICE relied upon what USCIS confirmed was a baseless accusation relating to Mr. Ramirez's education, therefore tainting ICE's determination.  *Compare* AR 000430–31 (basing ICE enforcement priority determination on false allegations that he abused a program related to receipt of public benefits); *with* AR 000007 (noting that "facts underlying the assertion that he engaged in fraud in requesting DACA are not accurate").  *Third*, the renewal denial decision cited as a basis that ICE is "actively pursuing" Mr. Ramirez's removal, notwithstanding the fact that ordering a noncitizen removed from the United States based on mere unlawful presence, is not sufficient in and of itself for termination of DACA status, and that lack of lawful immigration status is a *predicate* to DACA eligibility and common among every DACA recipient.  AR 000037; Dkt. 144-4 at 2 (2012 DACA Memorandum); Dkt. 144-2 at 4 (DACA FAQs, Q7).  Moreover, DACA is now and always has been available to individuals subject to orders of removal.  Dkt. 144-2 at 4 (DACA FAQs, Q7) ("All individuals who believe they meet the guidelines, including those in removal proceedings, [or] with a final removal order . . . may affirmatively request consideration of DACA from USCIS . . . .").  Therefore, Mr. Ramirez's unlawful presence, and the order of removal based on that ground, "does not provide a reasoned basis" for terminating his DACA.  *Inland Empire*, 2017 WL 5900061, at *6 (internal quotation marks omitted).

## D. Summary Judgment for Defendants Is Improper Because the Current Administrative Record Is Both Incomplete and Actually Supports Plaintiff's Claims

Defendants' request for summary judgment is premature and fails in any event.  In evaluating Defendants' motion for summary judgment, Fed. R. Civ. P 56 is applicable, despite Defendants' assertion to the contrary.  *See* Dkt. 152 at 9.  Here, Mr. Ramirez asserts claims under the APA, the Constitution, and the Declaratory Judgment Act, which means that summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn & Crutcher LLP

1    as a matter of law."  Fed. R. Civ. P. 56(a).  And, while motions for summary judgment brought under

2    the APA, and agency determinations, such as those made by USCIS and ICE, are reviewed for

3    arbitrariness, capriciousness, and abuse of discretion, 5 U.S.C. § 706(2)(A), even under this more

4    rigorous standard, Defendants' motion fails.

5           **1.      Defendants' Request for Summary Judgment Is Premature as the Current**
            **Administrative Record Is Incomplete**
6

7           Simply put, the current factual record is incomplete, inadequate, and woefully insufficient to

8    form the basis for a summary judgment motion.  Defendants provided the most recent AR only one

9    day before filing a Motion for Summary Judgment based on that record.  Though that has left

10   Plaintiff with little time or ability to analyze the record, it is already clear that the AR is incomplete

11   and, as such, cannot justify summary judgment at this time.

12          While a reviewing court is generally limited to considering only the materials in the

13   administrative record, a number of exceptions exist that permit a plaintiff to seek discovery in order

14   to augment or complete the administrative record.  *Fla. Power & Light Co., v. Lorion*, 470 U.S. 729,

15   743–44 (1985).  Courts "are permitted to admit extra-record evidence: (1) if admission is necessary to

16   determine 'whether the agency has considered all relevant factors and has explained its decision,'

17   (2) if 'the agency has relied on documents not in the record,' . . . or (4) 'when plaintiffs make a

18   showing of agency bad faith.'"  *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)

19   (citation omitted).  Each exception applies here.

20          The AR is over-redacted and does not include key documents, including documents referred

21   to in some portions of the AR and documents that have been included as part of previous ARs in this

22   action.  Most glaring is the absence of the March 20, 2018 USCIS email that confirms that Mr.

23   Ramirez is not a gang member or public safety concern.  The AR also does not include an email from

24   USCIS to ICE that requested non-gang-related reasons to adjudge Mr. Ramirez as a public safety risk

25   unworthy of DACA.  This initial email and ICE's response are mentioned in a correspondence from

26   S. Ortiz to E. Bakken, but the actual email and other related correspondence are missing from the AR.

27

28

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

15

Gibson, Dunn &
Crutcher LLP

1   *See* AR 000025.  These omissions raise serious concerns about both the accuracy of the record and

2   the government's motives in preparing the AR in the manner it has.

3           Additionally, key documents are redacted to hide details most relevant for this case.  For

4   example, the AR contains an email from Jennifer Jenkins regarding her analysis of Mr. Ramirez's

5   DACA eligibility, but the actual analysis is completely redacted.  AR 000004, August 17, 2018 Email

6   from J. Jenkins to B. Robinson ("Possession of marijuana citations are generally not disqualifying for

7   DACA . . . since this was a citation and it does not appear on the requestor's idHS, [redacted].")

8   Similarly, an email from Brandon Robinson in response to Jenkins' August 17, 2018 email is

9   redacted in its entirety.  AR 000003.  Several other emails key to Mr. Ramirez's DACA renewal

10  rejection are also redacted in their entirety.  *See, e.g.*, AR 000006.  The government may not

11  selectively redact the AR to use it both as a sword and shield.  Without information that is currently

12  unavailable due to missing documents and unnecessary redactions, neither this Court nor Mr.

13  Ramirez can adequately respond to and analyze Defendants' claims.

14          **2.        The Current and Prior Administrative Records Support Mr. Ramirez's Claims**

15                  **a.        The Facts in the AR Support Mr. Ramirez's Claims that Defendants**
16                          **Failed to Follow Their Procedures in Denying his DACA Renewal Request**

17          Defendants grossly mischaracterize Mr. Ramirez's claims and the facts supporting them.

18  Furthermore, Defendants' insistence that Mr. Ramirez's "criminal conduct is verified and

19  uncontested" ignores the factual record in this case, not to mention this Court's PI Order, which

20  prevents Defendants "from asserting, adopting, or relying in any proceedings on any statement . . .

21  purporting to allege or establish that Mr. Ramirez is . . . a threat to public safety."  Dkt. 133 at 23.

22  That is precisely what Defendants' decision was based upon, as proven by the AR.  Dkt. 144 ¶ 85;

23  AR 000006, 000052, 000056–62.

24          Since the Court's PI Order, Mr. Ramirez has committed no crimes, has done nothing by

25  which he could be considered a risk to public safety, and has not in any way violated the terms of the

26  DACA program.  Defendants denied his renewal based entirely on a *prior* record supposedly

27  establishing that Mr. Ramirez is a threat to public safety.  But the "criminal conduct" they rely on is,

28

OPPOSITION TO DEFENDANTS' MOTION TO                                              Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1   by their own admission, not the type that would generally rise to the level of a denial.  AR 000047,

2   000432.  It was also known or available to the government when each prior determination about Mr.

3   Ramirez's DACA status was made, including when it issued the April 2018 NOIT.

4            Contrary to the government's prior assertion "that it is allowed to withdraw DACA at any

5   time for no reason at all," the APA requires the government to "exercise its discretion in a reasoned

6   manner" and make discretionary decisions "based on non-arbitrary, 'relevant factors . . . .'"  Dkt. 116

7   at 17; *Judulang v. Holder*, 565 U.S. 42, 53, 55 (2011) (internal citations omitted).  Indeed, the

8   Supreme Court emphasized that, even where agencies exercise discretion, "*courts retain a role*, and

9   an important one, in ensuring that agencies have engaged in reasoned decisionmaking."  *Id.* at 53

10  (emphasis added).  In such circumstances, courts "must assess, among other matters, 'whether the

11  decision was based on a consideration of the relevant factors and whether there has been a clear error

12  of judgment.'"  *Id.* at 42 (citation omitted).  That task "involves examining the reasons for agency

13  decisions—or, as the case may be, the absence of such reasons."  *Id.* at 53 (citing *FCC v. Fox*

14  *Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (noting "the requirement that an agency provide

15  reasoned explanation for its action")).

16           Defendants' submitted AR proves that their denial of Mr. Ramirez's renewal request on

17  "other grounds" was, in fact, a bad-faith pretext.  Where the agency's stated reason for its action was

18  barred by Court order, and where the facts show that the agency did not believe its own proffered

19  reasoning, the Court should disregard that proffered reasoning.  Indeed, the Supreme Court recently

20  found pretext where "the evidence [told] a story that [did] not match the explanation the Secretary

21  gave for his decision."  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019).  As the Court

22  explained, "[t]he reasoned explanation requirement of administrative law . . . is meant to ensure that

23  agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts

24  and the interested public.  Accepting contrived reasons would defeat the purpose of the enterprise."

25  *Id.* at 2575–76.  This rule is critical here, where profound liberty interests are at stake.  Defendants

26  have consistently acted in bad faith, even now tendering a reason that their own internal deliberations

27  disapproved.  Defendants' motive has repeatedly—over the course of two and a half years—been to

28

OPPOSITION TO DEFENDANTS' MOTION TO                                        Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

1   take unlawful action and to rely on falsehoods about Mr. Ramirez's character and history, with this

2   Court, with Mr. Ramirez, and with the public.

3               **b.       Mr. Ramirez Has a Cognizable Property Interest in his DACA Status**

4          Defendants assert that Mr. Ramirez has failed to allege sufficient facts to establish a protected

5   interest in a "prospective" DACA grant.  Defendants again mischaracterize Mr. Ramirez's claims and

6   arguments.  He is not asserting a protected interest in a prospective and uncertain DACA grant, but

7   rather in the grant that he was deprived of when Defendants violated the PI Order.  Moreover, any

8   assertion of a due process right to a particular property interest would be a question of law and not of

9   fact.

10         Mr. Ramirez has a protected liberty interest in not being arrested or detained based solely on

11  his immigration status while he is entitled to DACA status.  Mr. Ramirez also has a protected liberty

12  interest in his reputation, which Defendants have tarnished of with their false claims that he was in a

13  gang.  He also has a protected property interest in his DACA status and the numerous benefits that

14  were provided to him pursuant to that status. Dkt. 144 ¶¶ 106–11.  The fact that his DACA status

15  would have, at some point, possibly expired, does not render those constitutional claims moot.  He is

16  still entitled to a declaration as to his rights and appropriate damages.

17         Moreover, the government violated Mr. Ramirez's substantive due process rights by

18  repeatedly reaching arbitrary determinations regarding his DACA status and work authorization.

19  "[T]he touchstone of due process is protection of the individual against arbitrary action of the

20  government."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*,

21  418 U.S. 539, 558 (1974)).  Substantive due process is violated by governmental conduct that is

22  "arbitrary, or conscience shocking, in a constitutional sense."  *Ms. L. v. ICE*, 302 F. Supp. 3d 1149,

23  1165 (S.D. Cal. 2018).  That is precisely what Mr. Ramirez has been repeatedly subjected to.

24              **c.       The AR Proves Mr. Ramirez's Retaliation Claim**

25         The current AR is replete with evidence from which a factfinder could find that retaliation

26  animated the government's drive to deny Mr. Ramirez's DACA renewal.  This, combined with

27  Defendants' long history of attempting to revoke Mr. Ramirez's DACA status based on false claims

28

OPPOSITION TO DEFENDANTS' MOTION TO                              Counsel Listed on Pages I and II
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Gibson, Dunn &
Crutcher LLP

of gang affiliation, shows the government's improper motivation to reject Mr. Ramirez's most recent DACA renewal request.

*First*, while Defendants were aware of Mr. Ramirez's "offense history" (consisting solely of marijuana possession, Mr. Ramirez's romantic relationship with the mother of his son, and unpaid traffic fines), they did not list *any* of these infractions in the April 2018 NOIT.  AR 000402–03.  It was only after this Court ordered Defendants to stop basing their decisions on false claims that Mr. Ramirez had gang affiliation that Defendants began to express other pretextual concerns about Mr. Ramirez remaining in the United States.  In fact, Defendants specifically searched for non-gang-related reasons to deny Mr. Ramirez deferred action after this Court barred them from relying on such false statements.  *See* AR 000025.

*Second*, the AR shows that Defendants treated Mr. Ramirez uniquely with respect to his continued eligibility for DACA because of this litigation.  In one email, the BCU agent reviewing Mr. Ramirez's files emails ICE to note that "there is national interest in this case, [s]o a lot of people will likely need to weigh in . . . ."  AR 000051.  ICE's particular interest in Mr. Ramirez's case is also noted.  *See* AR 000019 Aug. 20, 2018 Email from J. Jenkins to M. Melendez ("After running all of the required background checks, Ramirez Medina appears to continue to meet the threshold guidelines for DACA.  However, since ICE has interest in this case, my HQ has requested that I reach out to you prior to making any decisions . . . .");  AR 000054–62.  This email importantly demonstrates that even the government's own investigator did not find sufficient grounds to deny Mr. Ramirez's DACA renewal request, as he continued to meet all the requirements.  These documents alone, not to mention the history of this case, give a factfinder more than enough evidence to conclude that the government acted with improper motives in rejecting Mr. Ramirez's DACA renewal, and certainly enough to deny Defendants' Motion.

### d.    Mr. Ramirez's Estoppel Claim Is Supported by the Record

Defendants note that equitable estoppel is "unavailable where petitioners have not lost any rights to which they were entitled."  Dkt. 152 at 28.  But here Mr. Ramirez has lost several protected interests, including liberty and property interests.  Dkt. 144 ¶¶ 106–11.  Furthermore, the government

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

19

Gibson, Dunn &
Crutcher LLP

1  may be subject to equitable estoppel in an immigration case if it has engaged in "affirmative

2  misconduct." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165–66 (9th Cir. 2005).  While Defendants

3  have attempted to whitewash their misconduct toward Mr. Ramirez, they cannot do so here.

4  Defendants repeatedly, intentionally, and falsely asserted that Mr. Ramirez is gang affiliated or

5  otherwise presents a risk to public safety.  They admitted in the April 2018 NOIT and in statements to

6  this Court at the May 1, 2018 hearing that their knowingly false accusation of gang affiliation was the

7  sole basis for seeking to terminate Mr. Ramirez's DACA.  Dkt. 147 at 12.  Mr. Ramirez planned his

8  future based on the government's representations in this regard, including by submitting his DACA

9  renewal application in good faith and paying the renewal fee.  Dkt. 147 at 20–21.  Defendants' about-

10  face on the purported grounds for denial of his renewal—particularly since they violate the PI

11  Order—give rise to an estoppel claim.

12       *First*, the government made false representations to this Court and to the immigration judges

13  who presided over Mr. Ramirez's removal proceedings about his supposed gang affiliation.  Dkt. 133

14  at 19 ("Most troubling to the Court, is the continued assertion that Mr. Ramirez is gang-affiliated,

15  despite providing no evidence specific to Mr. Ramirez to the Immigration Court in connection with

16  his administrative proceedings, and offering no evidence to this Court to support its assertions four

17  months later.").  The government, moreover, concealed its intent to rely on the bases cited in the

18  NOID and the Decision by principally relying on the false allegations of gang membership in the

19  NOIT it transmitted to Mr. Ramirez in April 2018 even though the facts underlying the NOID and the

20  Decision had been known to the government for months if not years.

21       *Second*, Defendants concede that they have known about the "other grounds" for which they

22  supposedly denied Mr. Ramirez's DACA request since at least Mr. Ramirez's removal proceedings.

23  AR 000003.  Their convenient explanation as to why the government never previously relied upon

24  these "other grounds" in any consideration of Mr. Ramirez's DACA status is that Ms. Jenkins, the

25  particular background adjudicator who reviewed Mr. Ramirez's DACA renewal request, was simply

26  not aware of them.  Dkt. 152 at 3–4.  Attempting to limit the government's knowledge of Mr.

27  Ramirez's background as to what the USCIS adjudicator actually knew or did not know on a

28

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

20

Gibson, Dunn &
Crutcher LLP

particular date or time is nonsensical; the AR shows that ICE and USCIS were consistently sharing information about this case, and ICE's knowledge of these facts is imputed to USCIS, and vice versa, particularly given their access to government resources and databases. *See Cardenas v. Lynch*, 669 F. App'x 354, 356 (9th Cir. 2016) (imputing knowledge from USCIS to BIA). Perhaps cognizant of the weakness in trying to cabin USCIS's knowledge to Ms. Jenkins's actual awareness, the government argues that "[t]he timing of when USCIS first became aware of the derogatory information and first chose to rely on it in adjudicating his DACA request are irrelevant." Dkt. 152 at 18. But the fact that USCIS knew the information relied on long before the present shows that its current reliance— particularly in light of internal emails showing those facts are not sufficient to deny Mr. Ramirez's DACA application—is mere pretext and should not be credited.

### e.   Mr. Ramirez Established That the Denial of His DACA Renewal Request Violated This Court's Order

This Court's PI Order enjoins Defendants "from asserting, adopting, or relying in any proceedings on any statement . . . purporting to allege or establish that Mr. Ramirez is . . . a threat to public safety." Dkt. 133 at 23. Defendants' failure to renew Mr. Ramirez's DACA status is clearly based on statements and records that it views as relevant to whether Mr. Ramirez is a threat to public safety. This was apparent even before the AR was produced, and the documents in the AR further support this contention. *See, e.g.,* AR 000006, 000051, 000056–62.

Contrary to Defendants' arguments, Mr. Ramirez does not claim that the government is prohibited from relying on any derogatory information it may have discovered in adjudicating his DACA application. But the government's own records indicate that "there is no derogatory information" about Mr. Ramirez on which it could rely. AR 000003. Mr. Ramirez has not been convicted of any crime since his last successful DACA application, he has never joined a gang, nor is there any other new evidence that he poses a threat to national security or public safety. He has engaged in no conduct since the Court's Preliminary Injunction Order that would justify non-renewal of his DACA status. While the PI Order enjoins defendants from "terminat[ing] [Mr. Ramirez's] DACA status and work authorization pending a final decision by [the] Court on the merits of his claims," that is precisely what the government has done.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGMENT Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn & Crutcher LLP

21

## V.     CONCLUSION

For the reasons set forth herein, Mr. Ramirez respectfully requests that the Court reject the government's continuous efforts to evade judicial review of its unlawful and unconstitutional conduct, as this Court retains jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201 (the Declaratory Judgment Act), and 5 U.S.C. § 701, et seq. (APA), just as it always has over Mr. Ramirez's claims.  Defendants' Motion should be denied.

DATED:  August 26, 2019

Seattle, Washington

Respectfully submitted,

/s/ *Theodore J. Boutrous Jr.*
GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR. (CA SBN 132099), *pro hac vice*
ETHAN D. DETTMER (CA SBN 196046), *pro hac vice*
KATHERINE M. MARQUART (CA SBN 248043), *pro hac vice*
NATHANIEL L. BACH (CA SBN 246518), *pro hac vice*

/s/ *Mark D. Rosenbaum*
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940), *pro hac vice*
JUDY LONDON (CA SBN 149431), *pro hac vice*
KATHRYN A. EIDMANN (CA SBN 268053), *pro hac vice*

/s/ *Luis Cortes Romero*
IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852), *pro hac vice*

Attorneys for Plaintiff

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

22

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document should automatically be served this day on all counsel of record via transmission of Notices of Electronic filing generated by CM/ECF.

/s/ *Theodore J. Boutrous Jr.*

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-00218-RSM-JPD

Counsel Listed on Pages I and II

Gibson, Dunn &
Crutcher LLP

23